**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NORTHWEST AUSTIN MUNICIPAL UTILITY DISTRICT NUMBER ONE,<br>401 W. 15th Street<br>Suite 850<br>Austin, TX 78701<br><br>Plaintiff,<br><br>vs.<br><br>ALBERTO GONZALES,<br>ATTORNEY GENERAL OF THE UNITED STATES,<br>950 Pennsylvania Ave., NW<br>Washington, DC 20530<br><br>Defendant,<br><br>TEXAS STATE CONFERENCE OF NAACP BRANCHES,<br>1107 East 11th Street<br>Austin, TX 78701,<br><br>and<br><br>AUSTIN BRANCH OF THE NAACP,<br>1704 East 12th Street<br>Austin, TX 78702,<br><br>Applicants to Intervene, | CIVIL ACTION<br>1:06CV01384 |

## APPLICANTS' MOTION TO INTERVENE AS DEFENDANTS

Pursuant to Federal Rule of Civil Procedure Rule 24 and Local Rule 7(j),[1] the Texas State Conference of the NAACP Branches and Austin Branch of the NAACP (together, "Applicants") move to intervene as defendants in the above-captioned action.

Applicants each represent the interests of their members, many of whom are minority voters in Texas who have a legally cognizable interest in the continued enforcement of Section 5 of the Voting Rights Act ("VRA") in Texas. One of the remedies Plaintiff requests from the Court is a declaratory judgment striking down Section 5 of the VRA "as unconstitutional . . . on its face." Complaint, at ¶ 23. If granted, this remedy would immediately jeopardize Applicants members' voting rights by erasing the federal government's well-established supervisory role in monitoring electoral changes in Texas, a covered jurisdiction under Section 5.

For the reasons detailed in the accompanying memorandum, Applicants are entitled to intervention as a matter of right under Fed. R. Civ. P. 24(a)(2); in the alternative, this Court should permit Applicants to intervene under Fed. R. Civ P. 24(b)(2).

Pursuant to Local Rule 7(m), counsel for Applicants has conferred with counsel for the parties. Applicants' motion to intervene as defendants is opposed by the Plaintiff. As of the time of this filing, counsel for the defendant has not indicated whether it opposes the motion.

---

[1] Pursuant to Local Rule 7(j), Applicants have attached—as Exhibit B to the accompanying Memorandum in Support of Applicants' Motion to Intervene as Defendants—Applicants' proposed Answer, the pleading setting forth the claim or defense for which intervention is sought.

-2-

DATED:  October 18, 2006

Respectfully submitted,

Intervenor-Applicants Texas State
Conference of NAACP Branches and
Austin Branch of the NAACP

By their Attorneys,

/s/ Seth P. Waxman
Seth P. Waxman (D.C. Bar No. 257337)
John A. Payton (D.C. Bar No. 282699)
Paul R.Q. Wolfson (D.C. Bar No. 414759)
Ariel B. Waldman (D.C. Bar No. 474429)
WILMER CUTLER PICKERING HALE and
DORR LLP
1875 Pennsylvania Ave. N.W.
Washington, D.C.  20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Jon M. Greenbaum (D.C. Bar No. 489887)
Benjamin J. Blustein (D.C. Bar No. 418930)
Jonah H Goldman (D.C. Bar No. 497507)
LAWYERS  COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1401 New York Avenue, NW, Suite 400
Washington, D.C.  20005
Telephone: 202-662-8600
Facsimile: 202-628-2858

Dennis C. Hayes (Indiana Bar No. 7601-49)
(motion to be admitted *pro hac vice* to be
filed)
General Counsel
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
INC.
NAACP National Office
4805 Mt. Hope Drive
Baltimore, MD 21215
Telephone: (410) 580-5777
Facsimile: (410) 358-9350

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of October, 2006, a copy of the foregoing Applicants Motion To Intervene as Defendants was emailed to the Clerk of the Court at dcd_cmecf@dcd.uscourts.gov. The electronic filing prompts automatic service of the filing to all counsel of record in this case who have obtained CM/ECF passwords.

I also hereby certify that on this 18th day of October, 2006, I caused to be served a copy of the foregoing Applicants Motion To Intervene as Defendants through email and first class mail, postage pre-paid, to the following:

Gregory S. Coleman, Esq.
Christian T. Ward, Esq.
Weil Gotshal & Manges LLP
8911 Capital of Texas Highway
Suite 1350
Austin, TX  78759
greg.coleman@weil.com
chris.ward@weil.com

_____ /s Ariel Waldman_____
Ariel B. Waldman

-4-

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| NORTHWEST AUSTIN MUNICIPAL UTILITY DISTRICT NUMBER ONE,<br>401 W. 15th Street<br>Suite 850<br>Austin, TX 78701<br><br>                    Plaintiff,<br><br>        vs.<br><br>ALBERTO GONZALES,<br>ATTORNEY GENERAL OF THE UNITED STATES,<br>950 Pennsylvania Ave., NW<br>Washington, DC 20530<br><br>                    Defendant,<br><br>TEXAS STATE CONFERENCE OF NAACP BRANCHES,<br>1107 East 11th Street<br>Austin, TX 78701,<br><br>                    and<br><br>AUSTIN BRANCH OF THE NAACP,<br>1704 East 12th Street<br>Austin, TX  78702,<br><br>                    Applicants to Intervene, | CIVIL ACTION<br>1:06CV01384 |

---

**MEMORANDUM IN SUPPORT OF**
**APPLICANTS' MOTION TO INTERVENE AS DEFENDANTS**

## TABLE OF CONTENTS

I.    Introduction ................................................................................................ 1

II.   Background ................................................................................................ 2

III.  Applicants are Entitled to Intervention of Right ............................................ 5

    A.    Applicants Have Standing to Intervene as Defendants in this Case ................ 6

        1.    The NAACP Organizations Have Standing Because an Adverse
            Ruling Would Injure Their Members ...................................................... 6

        2.    Applicants Have Standing Because an Adverse Ruling
            on Section 5's Constitutionality Would Injure Them
            as Organizations ................................................................................ 11

    B.    Applicants' Motion Is Timely ........................................................................ 13

    C.    Applicants Have Substantial Interests in the Underlying Litigation ............ 14

    D.    Disposition of this Case Is Likely To Impair Applicants' Interests ................ 14

    E.    The Existing Defendants May Not Adequately Represent Applicants'
        Interests .................................................................................................... 15

IV.   In the Alternative, This Court Should Grant Permissive Intervention
    Under Rule  24(b)(2) ...................................................................................... 19

## TABLE OF AUTHORITIES[♦]

### CASES

*Allen v. State Board of Elections*, 393 U.S. 544 (1969)................................................. 8

*Beer v. United States*, 374 F. Supp. 363 (D.D.C. 1974)................................................ 17

*Bossier Parish Sch. Bd. v. Reno*, 157 F.R.D. 133 (D.D.C. 1994) ................................. 4

*City of Port Arthur, Texas v. United States*, 517 F. Supp. 987 (D.D.C. 1981) ............. 17

*City of Richmond, Virginia v. United States*, 376 F. Supp. 1344 (D.D.C. 1974)......... 17

*Clark v. Putnam County*, 293 F.3d 1261 (11th Cir. 2002)............................................ 20

*Corbett v. Sullivan*, 353 F.3d 628 (8th Cir. 2003)....................................................... 20

*County Council of Sumter County, SC v. United States*, 555 F. Supp. 694 (D.D.C. 1983) .... 14, 17

*Davis v. Bandemer*, 478 U.S. 109 (1986)..................................................................... 4

*Diamond v. Charles*, 476 U.S. 54 (1986)..................................................................... 14

*Dimond v. Dist. of Columbia*, 792 F.2d 179 (D.C. Cir. 1986) ...................................... 16

*Fund for Animals, Inc v. Norton*, 322 F.3d 728 (D.C. Cir. 2003)....... 1, 5, 6, 7, 14, 15, 16, 18, 21

*Georgia v. Ashcroft*, 195 F. Supp. 2d 25 (D.D.C. 2002)................................................ 8

*Georgia v. Ashcroft*, 539 U.S. 461 (2003) .................................................................. 8

*Graham v. Thornburgh*, 207 F. Supp. 2d 1280 (D. Kan. 2002)..................................... 8

*Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) .............................................. 11

*Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333 (1977)......... 7

*Johnson v. De Grandy*, 512 U.S. 997 (1994) .............................................................. 4

---

[♦] Pursuant to Local Rule 7(a), counsel has placed asterisks in the margin to the left of those authorities on which Applicants chiefly rely.

*Johnson v. Mortham*, 915 F. Supp. 1529 (N.D. Fla. 1995)....................................................19, 20

*League of United Latin Am. Citizens v. Perry*, 126 S. Ct. 2594 (2006)...........................................4

*Lee County Branch of NAACP v. City of Opelika*, 748 F.2d 1473 (11th Cir. 1984)......................4

*Lopez v. Monterey County,* 519 U.S. 9 (1996)........................................................................7, 8

*Meek v. Metropolitan Dade County, Fla.*, 985 F.2d 1471 (11th Cir. 1993) ..................................6

*Military Toxics Project v. EPA,* 146 F.3d 948 (D.C. Cir. 1998)....................................................6

*Miller v. Silbermann*, 832 F. Supp. 663 (S.D.N.Y. 1993)...........................................................19

*Moore v. Detroit School Reform Bd.,* 293 F.3d 352 (6th Cir. 2002).............................................15

*Morse v. Republican Party of Virginia*, 517 U.S. 186 (1996)...........................................4, 15

*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958).........................................................9

*NAACP v. Atlanta Indep. Sch. Dist.*, No. 92-CV-41 (E.D. Tex.)...................................................5

*NAACP v. Button*, 371 U.S. 415 (1963)......................................................................................9

*NAACP v. Hampton County Election Commission*, 470 U.S. 166 (1985) .....................................4

*Natural Res. Def. Council v. Costle*, 561 F.2d 904 (D.C. Cir. 1977)............................15, 16, 18

*Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721 (2003) ............................................20

*Prairie View Chapter of the NAACP v. Waller County, Texas*, No. 04-CV-591
(S.D. Tex. 2004).........................................................................................................................4, 13

*Quinn v. City of Boston*, 325 F.3d 18 (1st Cir. 2003).................................................................20

*Roberts v. Wamser*, 883 F.2d 617 (8th Cir. 1989) ......................................................................8

*Roeder v. Islamic Republic of Iran*, 333 F.3d 228 (D.C. Cir. 2003) ..........................................6, 7

*Smuck v. Hobson*, 408 F.2d 175 (D.C. Cir. 1969)......................................................................16

*South Carolina v. Katzenbach*, 383 U.S. 301 (1966)........................................................2, 11

*Southern Co. Services, Inc. v. FERC*, 416 F.3d 39 (D.C. Cir. 2005).............................................6

*Spann v. Colonial Village, Inc.,* 899 F.2d 24 (D.C. Cir. 1990).................................................11

*Telecomm. Research & Action Ctr. v. Allnet Communication Servs., Inc.*, 806 F.2d 1093 .......... 11

*United Food and Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544 (1996) ................................................................................................................. 7, 10

*\*United Jewish Orgs. of Williamsburgh, Inc. v. Carey*, 430 U.S. 144 (1977) ..................... 4, 9, 20

*\*Warth v. Seldin*, 422 U.S. 490 (1975) ................................................................................. 7, 11

## STATUTES

*Fed. R. Civ. P. 24 .......................................................................................................... *passim*

*Pub. L. No. 89-110 (1965) ............................................................................................... *passim*

Pub. L. 109-246 (July 27, 2006).......................................................................................... 2

*42 U.S.C. § 1971 ................................................................................................................. 2

*42 U.S.C. § 1973 ............................................................................................................. 1, 2

## LEGISLATIVE MATERIALS

S. Rep. No. 109-295 (2006) ................................................................................................. 8

## BOOKS

THE FUTURE OF THE VOTING RIGHTS ACT (David L. Epstein *et al.* eds., 2006)............................ 13

v

## I.    Introduction

The Texas State Conference of NAACP Branches ("Texas State Conference") and the

Austin Branch of the NAACP ("Austin Branch") (collectively, "Applicants") submit this

memorandum in support of their motion to intervene as defendants in this case.

Applicants are entitled to intervention as a matter of right under Rule 24(a) of the Federal

Rules of Civil Procedure.  Applicants each represent the interests of their minority voter

members in Texas, each of whom has a cognizable interest in the continued enforcement of

Section 5 of the Voting Rights Act, 42 U.S.C. § 1973, *et seq.*, in Texas.  At least one of the

remedies Plaintiff has requested would strike down Section 5 as unconstitutional on its face.  *See*

Complaint (attached as Exhibit A hereto) ¶ 23; *id.* at page 8 (Prayer For Relief).  If granted, this

remedy would immediately jeopardize the voting rights of Applicants' members by eliminating

the federal government's statutory duty to review voting changes proposed by the State of Texas

and every sub-jurisdiction within the State to make sure that the changes do not have a

discriminatory purpose or effect.  As set forth below, Applicants are entitled to intervene as a

matter of right because they plainly satisfy the applicable requirements: they have Article III

standing, their substantial interests in the enforcement of Section 5 will be impaired by Section

5's facial invalidation, their motion is timely, and their interests may not adequately be

represented by the named defendant.  *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 728-

31 (D.C. Cir. 2003).

Alternatively, Applicants should be permitted to intervene under Rule 24(b)(2).  Courts

have regularly permitted the NAACP to intervene on behalf of its members when, as here, the

action in question threatens to jeopardize the members' right to vote.  Because there is no risk

that permitting Applicants to intervene would delay or prejudice the orderly adjudication of Plaintiff s claims, this Court should permit Applicants to intervene.

## II.    Background

The Voting Rights Act, Pub. L. No. 89-110 (1965) ( VRA ), is one of the most important civil rights measures in the history of the United States. Enacted originally in 1965, the VRA was  designed by Congress to banish the blight of racial discrimination in voting. *South Carolina v. Katzenbach*, 383 U.S. 301, 308 (1966).

The VRA includes powerful remedies intended to eliminate voting discrimination in States where such discrimination has been most flagrant. One critical such remedy is Section 5 of the VRA, which in covered jurisdictions requires  the suspension of all new voting regulations pending review by federal authorities to determine whether their use would perpetuate voting discrimination. *Id.* at 315-16. Section 5 prevents jurisdictions with a history of discrimination from implementing discriminatory voting practices or procedures. On July 27, 2006, after congressional passage with overwhelming bipartisan support, President George W. Bush signed into law the Fannie Lou Hamer, Rosa Parks and Coretta Scott King Voting Rights Act Reauthorization, which extends Section 5 s applicability for 25 years. *See* Pub. L. 109-246, 120 Stat. 577, § 1 (July 27, 2006), codified at 42 U.S.C. §§ 1971 & 1973.

Eight days later, on August 4, 2006, the Northwest Austin Municipal Utility District Number One ( Plaintiff ) filed suit in this case. Plaintiff, a political body located in the City of Austin and Travis County, Texas, alleges that it became subject to Section 5 s pre-clearance requirements on September 23, 1975, as a result of the then Attorney General s determination that the State of Texas was a  covered jurisdiction  under the terms of the VRA. Complaint ¶ 8. According to Plaintiff, the  conditions that caused Texas to be covered by § 5 have long been

2

remedied." Complaint ¶ 10. Plaintiff alleges, moreover, that the conditions that trigger Section

5 coverage have never been present in the Utility District. Complaint ¶¶ 15-17. Plaintiff seeks

two alternate forms of relief. First, Plaintiff seeks to bail out of Section 5 coverage pursuant to

Section 4 of the VRA.[1] Complaint ¶ 18. Second, in the event that "the district is not eligible to

bail out of" Section 5 coverage," Plaintiff seeks a declaratory judgment in which Section 5 is

"struck down as unconstitutional, either on its face, or as applied to the district." *Id.* ¶ 23; *see*

*also id.* at Page 8 ("**PRAYER FOR RELIEF** Plaintiff requests the Court to declare that . . .

[Section] 5 of the Act is an unconstitutional overextension of Congress's enforcement power to

remedy past violations of the Fifteenth Amendment. . . .") (capitalization and bolded font in the

original, spacing altered).

Applicants—the Texas State Conference of NAACP Branches and the Austin Branch of

the NAACP—seek to intervene in this case as defendants in support of Section 5's

constitutionality and continued importance. *See* Ex. C (Affidavit of Declaration of Gary L.

Bledsoe, President, Texas State Conference); Ex. D (Declaration of Nelson Linder, President,

Austin Branch). Applicants are subsidiary organizations of the National Association for the

Advancement of Colored People, Inc. ("NAACP"), a national not-for-profit organization

founded in 1909 that today has more than 375,000 members and associates located throughout

the United States. *See* Ex. C ¶ 3; Ex. D ¶ 3. Applicant Texas State Conference of NAACP

---

[1] "Bail out" is the term generally used to describe the procedure under the VRA by which
"political subdivisions" covered by Section 5 seek exemption from Section 5's preclearance
obligations. To bail out, a political subdivision must obtain a declaratory judgment from this
Court that the political subdivision meets the statutory requirements justifying its removal from
continued coverage by Section 5. *See* 42 U.S.C. § 1973b(a)(1)-(6). Applicants, like the
Defendant, contend that the Plaintiff utility district is not a "political subdivision" under the
VRA for Section 5 bail out purposes. *See* Ex. B (Applicants' proposed Answer) ¶ 6;
Defendant's Answer ¶ 6 (Oct. 16, 2006).

Branches was founded in 1936, is headquartered in Austin, and has many thousands of voter members throughout the State of Texas. *See* Ex. C ¶ 4. Applicant Austin Branch of the NAACP was founded in 1918 and has hundreds of voter members in the Austin area. *See* Ex. D ¶ 4. Nationally, at the state conference level, and at the local branch level, the NAACP s mission objectives include pursuing the removal of all barriers of racial discrimination through democratic processes, seeking enactment and enforcement of federal laws securing civil rights, and taking action to secure the exercise of all persons  constitutional rights. *See* Ex. C ¶¶ 3, 5-6; Ex. D. ¶¶ 3, 5.

For more than 40 years, the NAACP s support of the VRA has been central to this mission. The NAACP lobbied for the VRA when the legislation was first passed in 1965 and when it was extended in 1970, 1975, and 1982. *See* Ex. C ¶ 6; Ex. D ¶ 6. Most recently, the NAACP played a central role in supporting the 2006 VRA reauthorization, including the reauthorization of Section 5. *See* Ex. C ¶ 6. Outside the legislative arena, the NAACP has participated in the litigation of hundreds of cases brought under the VRA   as a party, as an intervenor, and as amicus.[2]

---

[2]     A few examples are: *League of United Latin Am. Citizens v. Perry*, 126 S. Ct. 2594 (2006) (NAACP as plaintiff-intervenor in Texas State redistricting); *Morse v. Republican Party of Virginia*, 517 U.S. 186 (1996) (Section 5 case in which NAACP submitted amicus brief); *Johnson v. De Grandy*, 512 U.S. 997, 1000-01 (1994) (noting participation of  NAACP Branches and individual black voters  as plaintiffs); *Davis v. Bandemer*, 478 U.S. 109, 118 (1986) (Powell, J., concurring) (noting participation of NAACP in earlier suit and in briefing to the Court); *NAACP v. Hampton County Election Comm'n*, 470 U.S. 166, 175-77 (1985) (NAACP as plaintiff arguing that a change of the election date relative to filing deadline must be pre-cleared under § 5); *United Jewish Orgs. of Williamsburgh, Inc. v. Carey*, 430 U.S. 144, 153 (1977) (NAACP allowed to intervene as defendant); *Lee County Branch of NAACP v. City of Opelika*, 748 F.2d 1473 (11th Cir. 1984) (plaintiff in Section 2 vote dilution case); *Bossier Parish Sch. Bd. v. Reno*, 157 F.R.D. 133 (D.D.C. 1994) (order allowing intervention by President of NAACP and other black voters); *Prairie View Chapter of the NAACP v. Waller County, Texas*, No. 04-CV-591 (S.D. Tex.) (NAACP chapter was plaintiff in Section 5 enforcement

Applicants learned of Plaintiff s Complaint in this case on or about August 25, 2006.  *See* Ex. C ¶ 8; Ex. D ¶ 8.  In the interim, Applicants have analyzed the case, secured counsel, and prepared the papers being filed today in support of their motion to intervene.

**III.     Applicants are Entitled to Intervention of Right**

Rule 24 (a)(2) of the Federal Rules of Civil Procedure provides that  [u]pon timely application anyone shall be permitted to intervene in an action . . . when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant s ability to protect that interest, unless the applicant s interest is adequately represented by existing parties.   In the D.C. Circuit, a party seeking to intervene must first satisfy the basic standing requirements of Article III of the Constitution.  *Fund For Animals, Inc. v. Norton,* 322 F.3d 728, 732-33 (D.C. Cir. 2003).  Once the applicant has shown Article III standing, this Court must consider four factors: (1) the timeliness of the motion; (2) whether the applicant  claims an interest relating to the property or transaction which is the subject of the action ; (3) whether  the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant s ability to protect that interest ; and (4) whether  the applicant s interest is adequately represented by existing parties.   *Id.* at 731 (quoting *Mova Pharm. Corp. v. Shalala,* 140 F.3d 1060, 1074 (D.C. Cir. 1998) (internal citations omitted)).  As demonstrated below, Applicants have standing and satisfy all four additional factors required to intervene under Rule 24(a)(2).

---

action where jurisdiction did not seek preclearance for voting change) (settled in 2004); *NAACP v. Atlanta Indep. Sch. Dist.*, No. 92-CV-41 (E.D. Tex.) (plaintiff in Section 2 vote dilution action) (settled in 1995).

A.    **Applicants Have Standing to Intervene as Defendants in this Case**

Generally,  [t]o establish standing under Article III, a prospective intervenor  like any

party  must show: (1) injury-in-fact, (2) causation, and (3) redressability.  *Fund For Animals*,

322 F.3d at 733 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).[3]  When the

prospective intervenor-defendant is an association or organization, it may satisfy Article III s

injury-in-fact requirement by showing a concrete injury to one or more of its members *or* to the

organization itself.

1.    **The NAACP Organizations Have Standing Because an Adverse Ruling Would Injure Their Members**

For an organization to have standing on behalf of its members, the organization must

show

> that its members, *or any one of them*, are suffering immediate or threatened injury
> as a result of the challenged action of the sort that would make out a justiciable
> case had the members themselves brought suit. . . [S]o long as the nature of the
> claim and of the relief sought does not make the individual participation of each

---

[3]    Where, as here, applicants seek to intervene as defendants, the Article III standing
requirements differ from cases in which the applicant seeks to intervene as a plaintiff.  A
prospective intervenor-defendant may satisfy Article III requirements regardless of whether it
has already suffered an injury so long as it demonstrates that the remedy sought by the plaintiff,
if adopted, would cause the intervenor to suffer an injury-in-fact.  *See Military Toxics Project v.
EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) (holding that an association had standing to intervene
as defendant on behalf of its members because the members  would suffer concrete injury if the
court grants the relief the petitioners seek; they would therefore have standing to intervene in
their own right );  *Meek v. Metropolitan Dade County, Fla.*, 985 F.2d 1471, 1480 (11th Cir.
1993) ( The intervenors sought to vindicate important personal interests in maintaining the
election system that governed their exercise of political power, a democratically established
system that the district court s order had altered.  As such, they alleged a tangible actual or
prospective injury. . . . ); *cf. Southern Co. Serv., Inc. v. FERC*, 416 F.3d 39, 44 (D.C. Cir. 2005)
(Article III standing may be satisfied via demonstration of  imminent injury ).  Indeed, the D.C.
Circuit has recently questioned whether prospective defendant-intervenors need satisfy Article
III standing requirements at all.  *See Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C.
Cir. 2003) ( Requiring standing of someone who seeks to intervene as a defendant . . . runs into
the doctrine that the standing inquiry is directed at those who invoke the court s jurisdiction. ).

injured party indispensable to proper resolution of the cause, the association may be an appropriate representative of its members, entitled to invoke the court s jurisdiction.

*Warth v. Seldin,* 422 U.S. 490, 511 (1975) (emphasis added). Under *Hunt v. Washington State Apple Advertising Commission*, 432 U.S. 333, 343 (1977), organizations seeking standing based on their members interests must make three showings: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization s purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit. *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553 (1996) (quoting *Hunt*, 432 U.S. at 343).

**a.    NAACP s Members Would Have Standing To Intervene on Their Own**

Applicants' members would have standing to intervene in this action by themselves. As an initial matter, a party has standing to intervene to prevent the disruption of an existing legal arrangement if that party has a cognizable interest in preserving the status quo. *See, e.g., Roeder v. Islamic Republic of Iran,* 333 F.3d at 233 (holding that the United States had standing to intervene to uphold certain international accords when its interests would be "impaired if plaintiffs obtained a judgment in violation of the Accords"); *Fund For Animals,* 322 F.3d at 733 (holding that where the applicant intervenor-defendant sought to defend a regulation challenged in court, the applicant had standing not because of an injury it had already suffered, but in part because it "would suffer concrete injury if the court were to grant the relief the plaintiffs seek").

In this case, the NAACP's members have a cognizable interest in preserving the current protections guaranteed by Section 5. The NAACP's members are plainly among the intended beneficiaries of the relevant statutory provision. "Congress designed Section [5]'s preclearance procedure 'to forestall the danger that local decisions to modify voting practices will impair

7

minority access to the electoral process.   *Lopez v. Monterey County,* 519 U.S. 9, 23 (1996)

(internal quotations and citations omitted); S. Rep. No. 109-295, at 2 (2006) ( The Act is rightly

lauded as the crown jewel of our civil rights laws because it has enabled racial minorities to

participate in the political life of the nation. ).  This straightforward statutory purpose explains

why, as the Supreme Court has recognized,  [p]rivate parties may intervene in [Section] 5

actions assuming they meet the requirements of Rule 24.   *Georgia v. Ashcroft,* 539 U.S. 461,

477 (2003) (affirming the district court s grant of intervention to African-American voters).

Indeed, under *Allen v. State Board of Elections,* 393 U.S. 544 (1969), aggrieved voters are

entitled to standing where they  seek judicial enforcement of the prohibition  against the

infringement of the right to vote on account of race. *Id.* at 557; *see also Roberts v. Wamser,* 883

F.2d 617, 621 (8th Cir. 1989) (citing *Allen* for this proposition).

     The NAACP s members have a particular interest in this litigation because the Plaintiff

has challenged the constitutionality of Section 5 *on its face.  See* Complaint ¶ 23 (arguing that

Section 5  should now be struck down as unconstitutional, either on its face, or as applied to the

district ); *id.* at page 8 (Prayer for Relief). At a *minimum,* this case implicates the voting rights

of all minority voters in the State of Texas who enjoy the protections of Section 5. *See*

Complaint ¶10 (alleging that  conditions that caused Texas to be covered by [Section] 5 have

long been remedied ).

     The remedy Plaintiff seeks thus threatens a statutory protection currently enjoyed by all

of Applicants  members. Applicants, therefore, have Article III standing. *See, e.g., Georgia v.*

*Ashcroft,* 195 F. Supp. 2d 25, 33 (D.D.C. 2002) (granting intervention by non-district voters

where the redistricting plans at issue were  statewide ); *aff'd* 539 U.S. 461, 477 (2003); *see also*

*Graham v. Thornburgh,* 207 F. Supp. 2d 1280, 1283-85 (D. Kan. 2002) (holding that individuals

registered to vote in Kansas had standing to intervene in a suit challenging constitutionality of statewide redistricting proposal).

### b.     The Interests Applicants Seek To Protect Are Germane to the Organizations Purposes

Germaneness here is evident.  Applicants seek intervention to preserve their members' ability to exercise their voting rights free from discrimination.  These interests are at the core of the NAACP's mission nationwide.  Indeed, courts have repeatedly found the NAACP to be an appropriate intervenor in similar actions.  *See, e.g., United Jewish Orgs.*, 430 U.S. at 153 (noting the NAACP's role as defendant-intervenor); *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459 (1958) ("Petitioner is the appropriate party to assert these rights, because it and its members are in every practical sense identical.  The Association, which provides in its constitution that '(a)ny person who is in accordance with (its) principles and policies . . . may become a member, is but the medium through which its individual members seek to make more effective the expression of their own views."); *NAACP v. Button*, 371 U.S. 415, 443 (1963) ("the aims and interests of NAACP have not been shown to conflict with those of its members and nonmember Negro litigants"); *see also supra* note 2 (describing the NAACP's historic role in voting rights cases).

Moreover, Applicants' desire to intervene in this case is entirely consistent with the NAACP's role in promoting the 2006 reauthorization of Section 5.  The NAACP's advocacy on behalf of its minority members in support of the 2006 reauthorization was extensive, at every level.  Nationally, in 2006, the NAACP's President Bruce Gordon met with President Bush and Attorney General Gonzales to advocate for the importance of reauthorization, and met separately with the Majority and Minority Leaders of the Senate to convey this message.  *See* Ex. C ¶ 6.  In July 2006, with reauthorization pending in the Senate, the NAACP brought approximately 2,000

9

of its members to Capitol Hill on a day the Senate Judiciary Committee was considering the legislation. *See id.* Members nationwide sent thousands of letters and emails to their congressional representatives urging reauthorization. *See id.* Similarly, members of the Texas State Conference sent a 40-person delegation to meet with Senator Cornyn of Texas concerning reauthorization. The State Conference also held hearings on the need for reauthorization and submitted summary reports to Congress during the reauthorization process, including transcripts from the hearings and voter complaints stemming from election problems in Texas. *See id.* Likewise, members of the Austin Branch lobbied their congressional representatives and sent in letters expressing their support. *See* Ex. D ¶ 6. This robust involvement demonstrates the extent of the NAACP and Applicants interest (and those of their members) in the outcome of this litigation: this litigation threatens the important agenda to which they have committed themselves for over 40 years.

**c.    The Relief Requested Does Not Require the Participation of Individual Members in the Lawsuit**

As an initial matter, it is not clear that the participation prong of the associational standing test is even relevant to Applicants ability to intervene. The Supreme Court has explained that the third prong of the associational standing test is best seen as focusing on . . . matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution. *United Food*, 517 U.S. at 557. Thus, once an association has satisfied *Hunt* s first and second prongs assuring adversarial vigor in pursuing a claim for which member Article III standing exists, it is difficult to see a constitutional necessity for anything more. *Id.* at 556. Accordingly, because Applicants satisfy *Hunt* s first two prongs, they have standing to intervene as defendants on behalf of their members.

10

In any event, Applicants easily satisfy the third *Hunt* prong if it does apply. The relief Applicants seek — affirmation of the constitutionality of Section 5 — does not require the participation of the NAACP s individual members. The law of standing for associations recognizes that associations represent their members  relevant interests. Thus, where an  association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.   *Warth*, 422 U.S. at 515. Denying Plaintiff s requested relief will inure to the benefit of the NAACP s members, who depend upon the VRA to safeguard their right to vote free from racial discrimination in elections throughout Texas. *See* Ex. C ¶¶ 6-10. Applicants do not seek any form of affirmative relief — they seek only the preservation of the status quo. Consequently, this case simply does not involve the type of remedy that could plausibly raise the type of questions that would arise if, for instance, Applicants were seeking monetary damages. S*ee Telecomm. Research & Action Center v. Allnet Communication Servs., Inc.*, 806 F.2d 1093, 1094-95 (D.C. Cir. 1986).

> **2.    Applicants Have Standing Because an Adverse Ruling on Section 5 s Constitutionality Would Injure Them as Organizations**

Were this Court to find Section 5 unconstitutional, Applicants each would suffer injury in their own rights as organizations. To demonstrate standing, organizations, like individuals, must show an actual or threatened injury that would result absent a favorable court ruling. *Spann v. Colonial Village, Inc.*, 899 F.2d 24, 27 (D.C. Cir. 1990). The Supreme Court has described the required showing as a  concrete and demonstrable injury to the organization s activities  with the consequent drain on the organization s resources.   *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).

11

A declaratory judgment that Section 5 is unconstitutional would unquestionably injure Applicants and impose a substantial drain on their limited resources. Section 5 was designed to shift the advantage of time and inertia from minority voters to covered jurisdictions. *South Carolina v. Katzenbach*, 383 U.S. at 328. Because of Section 5, a covered jurisdiction must demonstrate to federal authorities that any proposed voting change will not have a discriminatory purpose or effect. If the jurisdiction cannot meet its burden of proof, the statute forbids implementation of the proposed voting change.

Preventing and remedying voting discrimination is at the heart of Applicants mission. Section 5 has allowed the NAACP to further its core mission by filing letters with the Department of Justice objecting to discriminatory voting changes and by filing Section 5 enforcement suits when a jurisdiction fails to submit a proposed change for preclearance. Ex. C. ¶ 7. Often, Section 5 prevents discriminatory voting changes because officials considering changes informally seek out the NAACP s views even before seeking preclearance; thus, Section 5 helps ensure that officials consider and give weight to the interests of minority voters. *Id.* at ¶ 9.

Were Section 5 eliminated, Applicants would be forced to divert significantly increased resources to monitoring and preventing voting discrimination. They would need to scrutinize more closely *all* voting changes in *all* Texas jurisdictions, investigate the effect of such changes on minority voters, and, if necessary, sue to block the implementation of such changes. This entire process would require the dedication of substantial time and money. Ex. C. at ¶¶ 9-10.

An incident in the lead-up to the 2004 primary elections in Waller County, Texas, illustrates the importance of Section 5 to Applicants. Waller County is home to Prairie View A&M University, a historically black institution. In February 2004, a month before the March

12

2004 primary, the Waller County Commissioners  Court reduced the number of days of early

voting from two days to one.  Most Prairie View A&M University students intended to vote

early because the primary election took place during the students  spring break.  The student

chapter of the NAACP filed a Section 5 enforcement action because the county had failed to seek

Section 5 preclearance.  *Prairie View Chapter of the NAACP v. Waller County, Texas*, No. 04-

CV-591 (S.D. Tex. 2004).  Ultimately, the county relented and restored the second day of early

voting.  Ex. C ¶ 7.

     *Waller County* is an apt illustration of how elimination of Section 5 s preclearance

regime would require voters and voter advocates to fight every objectionable voting change on a

case-by-case basis    the  very burden § 5 was designed to relieve.   *Morse*, 517 U.S at 226.  If

Section 5 s preclearance requirements were invalidated, the NAACP would, to protect its

members  voting interests, be required to shoulder the burden of filing and proving a claim under

Section 2 of the VRA, a burden that could be substantial.  *See, e.g.,* THE FUTURE OF THE VOTING

RIGHTS ACT xiii (David L. Epstein, *et al.* eds., 2006) ( [S]ection 2 operates through the ordinary

legal system, rather than the unusual preclearance review process . . . Section 2 is therefore more

costly, more time consuming, and substantively more difficult for those challenging a voting

practice than is section 5 ).

    **B.**    **Applicants  Motion Is Timely**

     Applicants  intervention motion is timely.  Plaintiff filed its Complaint on August 4,

2006.  Applicants learned of the Complaint on or about August 25, 2006.  *See* Ex. C ¶ 8; Ex. D ¶

8.  On October 16, 2006, the Attorney General filed its initial responsive pleading    an Answer.

Thus, this motion is filed less than three months after the filing of the Complaint, less than two

months after Applicants learned of that filing, within two days of the defendant s first responsive

13

pleading, and before any hearing by this Court or even the scheduling of a hearing. Thus,

permitting Applicants to intervene would in no way prejudice either the Plaintiff or the

Defendant. On these facts, Applicants' request is unquestionably timely. *See Fund for Animals*,

322 F.3d at 735 (holding applicants' motion timely because they "moved to intervene less than

two months after the plaintiffs filed their complaint and before the defendants filed an answer");

*County Council of Sumter County, SC v. United States*, 555 F. Supp. 694, 697 (D.D.C. 1983)

(permitting applicants to intervene at the close of discovery and on the eve of argument on

motions for summary judgment).

### C.    Applicants Have Substantial Interests in the Underlying Litigation

To demonstrate a sufficient "interest" in the litigation, prospective intervenors must show

a "direct and concrete interest that is accorded some degree of legal protection." *Diamond v.

Charles*, 476 U.S. 54, 75 (1986). The D.C. Circuit has collapsed this "interest" test into the

requirement that prospective intervenors demonstrate constitutional standing. *See Fund For

Animals*, 322 F.3d at 735 (holding that when an applicant has constitutional standing, that fact

"alone [is] sufficient to establish that [it] has 'an interest relating to the property or transaction

which is the subject of the action'") (quoting Fed. R. Civ. P. 24(a)(2)). Because Applicants have

constitutional standing, *see supra* at 6-13, sufficient "interest" under Rule 24(a)(2) follows *a

fortiori*.

### D.    Disposition of this Case Is Likely To Impair Applicants Interests

Beyond demonstrating an interest in the underlying litigation, intervention applicants

must show that their interest *may* be impaired or impeded by the disposition of the action.

Fed. R. Civ. P. 24(a)(2) (emphasis added). Interpreting this requirement, the D.C. Circuit has

noted that an applicant need not show that it would be bound by a judgment in the action, but

14

need only show that as a practical matter, its interests would likely be "impaired or impeded" in some manner were it not allowed to intervene. *Fund For Animals*, 322 F.3d at 735.

Judgment in favor of Plaintiff's constitutional claim would manifestly impair and impede Applicants' interests. An order facially invalidating Section 5 would immediately enable—and could embolden—jurisdictions to implement extensive and potentially pernicious changes to voting procedures. *See Morse v. Republican Party of Virginia*, 517 U.S. 186, 225 (1996) ("the fundamental purpose of the preclearance system was to 'shift the advantage of time and inertia from the perpetrators of the evil to its victims,' by declaring all changes in voting rules void until they are cleared by the Attorney General or by the District Court for the District of Columbia") (quoting *South Carolina v. Katzenbach*, 383 U.S. at 328); *Moore v. Detroit School Reform Bd.*, 293 F.3d 352, 366 (6th Cir. 2002) ("[Section] 5 was designed to respond to the use of 'the extraordinary stratagem of contriving new rules of various kinds for the sole purpose of perpetuating voting discrimination in the face of adverse federal court decrees.'") (quoting *Katzenbach*, 383 U.S. at 335). The elimination of Section 5's pre-clearance regime would require the NAACP's members to fight every objectionable voting change in "case-by-case litigation . . . to protect the right to vote," resulting in the imposition of the "very burden [Section] 5 was designed to relieve." *Morse*, 517 U.S. at 226. As described earlier, this would unquestionably impair Applicants' interests. *See* Ex. C ¶ 10.

### E.    The Existing Defendants May Not Adequately Represent Applicants Interests

The final prong of Rule 24(a)(2) s test requires Applicants to meet the   minimal burden of showing that existing representation  may be  inadequate to protect their interest. *Natural Res. Def. Council v. Costle*, 561 F.2d 904, 911 (D.C. Cir. 1977) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)). Applicants satisfy this standard because the

15

NAACP s interests differ substantially from those of the Attorney General.  To be sure, the Attorney General represents the interests of the federal government and public at-large in defending the constitutionality of federal statutes.  Applicants, however, have a unique and particularized interest in defending the voting rights of minority voters in Texas.  Similarly, Applicants have a unique experience in monitoring, identifying, recording, reporting and responding to incidents of discrimination against minority voters locally, statewide, and nationwide.

Courts in this Circuit  have often concluded that governmental entities do not adequately represent the interests of aspiring intervenors.   *Fund For Animals*, 322 F.3d at 736; *see also id.* at 736 n.9 (citing cases); *Dimond v. Dist. of Columbia,* 792 F.2d 179, 193 (D.C. Cir. 1986); *Smuck v. Hobson,* 408 F.2d 175, 181 (D.C. Cir. 1969).  This has held true even where the defendant is a federal agency charged with enforcing the underlying law in question and, consequently, representing  the interests of the American people.   *See Fund for Animals*, 322 F.3d at 736.  For instance, in *Costle*, the D.C. Circuit held that the EPA could not be found to represent adequately the NRDC s interests despite the fact that both shared a  general agreement . . . that the [challenged] regulations should be lawful.   561 F.2d at 912.  That general agreement, the court held:

> does not necessarily ensure agreement in all particular respects about what the law requires.  Without calling the good faith of EPA into question in any way, appellants may well have honest disagreements with EPA on legal and factual matters. . . .  Good faith disagreement, such as this, may understandably arise out of the differing scope of EPA and appellants  interests: EPA is broadly concerned with implementation and enforcement of the settlement agreement, appellants are more narrowly focused on the proceedings that may affect their industries. Particular interests, then, always  may not coincide,  thus justifying separate representation.

*Id.* (quoting *Nuesse v. Camp*, 385 F.2d 694, 703 (D.C. Cir. 1967) (footnote omitted)).

16

The same rationale undoubtedly applies here.  Applicants and the Defendant evidently agree that Congress properly exercised its constitutionally enumerated powers in reauthorizing Section 5.  *See* Defendant s Answer at 10 (Oct. 16, 2006) ( Defendant denies that the Plaintiff is entitled to a declaratory judgment that Section Five . . . is unconstitutional. ).  Beyond that basic agreement, Applicants may well have a different perspective than the Defendant regarding (1) the history of discrimination in Texas, the Utility District, and even nationwide; (2) the continuing presence of vote denial and vote dilution in the same; (3) the continuing barriers to language minorities in exercising their franchise in the same; and (4) other subsidiary issues in this case.  The presence of such differences   differences not uncommon between minority voters and the government   has led courts to grant numerous intervention motions in VRA cases.  *See, e.g., County Council of Sumter County*, 555 F. Supp. at 696-97 & n.2 (granting intervention motion based on private parties  local perspective and possibility of inadequate representation by United States); *City of Port Arthur, Texas v. United States*, 517 F. Supp. 987, 991 n.2 (D.D.C. 1981) (permitting African-American residents of Port Arthur to intervene on the side of the United States to prevent pre-clearance of proposed voting changes); *City of Richmond, Virginia v. United States,* 376 F. Supp. 1344, 1349 (D.D.C. 1974), *remanded on other grounds,* 422 U.S. 358 (1975) (noting that an individual voter and a representative organization were allowed to participate in this action as representatives of the black community ); *Beer v. United States*, 374 F. Supp. 363, 367 n.5 (D.D.C. 1974), *remanded on other grounds*, 425 U.S. 130, 133 n.3 (1976) (identifying intervenors as five African-Americans registered to vote in New Orleans).

Even in the absence of an identifiable doctrinal difference, a Rule 24(a)(2) applicant may satisfy the inadequate-representation prong by demonstrating relevant expertise or experience

17

that differs from that of the parties, provided that the expertise or experience might prove useful to the court's resolution of the question presented. In *Costle*, the D.C. Circuit explained that the NRDC's "more narrow and focused" interest would "serve as a vigorous and helpful supplement to EPA's defense." 561 F.2d at 912-13. The court further noted that "on the basis of their experience and expertise in their relevant fields, appellants can reasonably be expected to contribute to the informed resolutions of these questions when, and if, they arise." *Id.* at 913 (footnote omitted). The same is true here. Plaintiff has raised a constitutional challenge that may depend in part upon the factual contention that "conditions that existed thirty years ago [ ] have long since been remedied, and [ ] never existed in the district." Complaint ¶ 21. Applicants have over a generation of experience documenting evidence of discrimination in the relevant region. Even as the Department of Justice faithfully seeks to defend Section 5's constitutionality, Applicants' "more narrow and focused" interest will undoubtedly "serve as a vigorous and helpful supplement to [the Attorney General's] defense." *Costle,* 561 F.2d at 912-13.

Finally, as the overwhelming weight of authority makes plain, it is of no moment that Applicants' interests may in some senses overlap with those of the Attorney General. The D.C. Circuit has explained:

> Although there may be a partial congruence of interests, that does not guarantee the adequacy of representation. As we have recognized, "interests need not be wholly 'adverse' before there is a basis for concluding that existing representation of a 'different' interest may be inadequate." Moreover, even "a shared general agreement …does not necessarily ensure agreement in all particular respects,", and "[t]he tactical similarity of the present legal contentions of the [parties] does not assure adequacy of representation or necessarily preclude the [intervenor] from the opportunity to appear in [its] own behalf…".

*Fund For Animals,* 322 F.3d at 737 (quoting *Nuesse,* 385 F.2d at 703; *Costle,* 561 F.2d at 912; and *Nuesse,* 385 F.2d at 703) (alterations in original). Thus, the fact that Applicants and

Defendant agree as to Section 5 s constitutionality in no way diminishes Applicants  intervention rights under Rule 24(a)(2).

## IV.    In the Alternative, This Court Should Grant Permissive Intervention Under Rule 24(b)(2).

Even were Applicants not entitled to intervention as a matter of right, this Court should exercise its discretion to grant intervention pursuant to Fed. R. Civ. P. 24 (b)(2), which permits intervention upon timely application when  an applicant s claim or defense and the main action have a question of law or fact in common.    Applicants satisfy this test.

Because Applicants propose to defend Section 5 s constitutionality by raising factual arguments and legal defenses in common with those on which the named Defendant will likely rely, Applicants satisfy the baseline requirements of Rule 24(b)(2).  Applicants  perspective on certain factual and legal issues will assuredly be distinct, but the fundamental questions of law and fact present in this litigation will not change if this Court grants permissive intervention. *See, e.g., Miller v. Silbermann*, 832 F. Supp. 663, 673-74 (S.D.N.Y. 1993) (permitting Rule 24(b)(2) intervention where applicants proposed to defend the constitutionality of policies and procedures challenged by plaintiffs because the intervenors  defense raises the same legal questions as the defense of the named defendants    all claims concern the constitutionality of the [challenged] policies and procedures ).

Permissive intervention is particularly warranted where, as here, the applicants may help contribute to the proper development of the factual issues in the litigation. *See, e.g., Johnson v. Mortham*, 915 F. Supp. 1529, 1538-39 (N.D. Fla. 1995) (holding that the NAACP should be permitted to intervene because the organization s  unique perspective  expertise would aid the court s constitutional inquiry); *see also Miller*, 832 F. Supp. at 674 (permitting intervention where applicants,  in light of their knowledge and concern, will greatly contribute to the Court s

19

understanding of this case ). Numerous courts have found that the NAACP is uniquely situated to perform just this type of complementary role in voting rights cases, and consequently the NAACP has been allowed to intervene in similar actions around the country. *Johnson*, 915 F. Supp. at 1539; *see also id.* at 1538 (citing the NAACP s role in *DeGrandy v. Wetherell*, 794 F. Supp. 1076, 1080 (N.D. Fla. 1992), in which the NAACP submitted a redistricting plan that substantially influenced the Special Master in the creation of Plan 308 and District Three ); *United Jewish Orgs*, 430 U.S. at 153 (noting that the NAACP was an intervenor on behalf of minority voters); *Corbett v. Sullivan*, 353 F.3d 628, 630 (8th Cir. 2003) (noting the NAACP s intervention on plaintiffs side of a one-person, one-vote lawsuit); *Quinn v. City of Boston*, 325 F.3d 18, 25 (1st Cir. 2003) (noting intervention of Boston Chapter of the NAACP as a party defendant to defend constitutionality of Boston hiring preferences on behalf of minority members); *Clark v. Putnam County*, 293 F.3d 1261, 1273 (11th Cir. 2002) (noting intervention of the NAACP on behalf of minority voters to defend existence of majority-minority districts). Applicants may well be in a position to supplement the United States defense of Section 5 s constitutionality by providing additional factual information and arguments to augment the defense, adding their many years of experience litigating voting rights matters, and ensuring that the interests of the thousands of minority voters in Texas they together represent the individuals most likely to be affected by the remedies Plaintiff seeks are adequately represented.

The justification for permissive intervention is heightened in the context of a challenge to Congress s power to enact a civil rights statute. In such a context, one critical question may be whether the factual record before Congress sufficiently established a widespread pattern of discrimination. *See, e.g., Nevada Dep't of Human Resources v. Hibbs,* 538 U.S. 721, 729 (2003)

20

(inquiring  whether Congress had evidence of a pattern of constitutional violations on the part of the States in this area  ).  Applicants  expertise in this matter is well-established.  Applicants are intimately familiar with the history of discrimination in Texas.  Applicants  familiarity with the City of Austin and the State of Texas may contribute to this Court s understanding of the jurisdiction in question and supplement the Defendant s defense of the record of discrimination.

Finally, granting Applicants  motion to intervene at this stage would not  delay or prejudice the adjudication of the rights of the original parties.   Fed. R. Civ. P. 24(b).  Defendant filed its Answer only two days ago, and this Court has not conducted or scheduled a hearing. Consequently, granting Applicants  motion would add no delay of any kind to the litigation. Moreover, neither the Plaintiff nor the Defendant can plausibly claim prejudice as a result of this Court s permitting Applicants to intervene.  Applicants do not propose to add a counterclaim, expand the questions presented by the Complaint, or raise any additional affirmative defenses. *See Fund for Animals*, 322 F.3d at 738 n.11.  Rather, as evidenced by the Answer Applicants propose to file, *see* Ex. B, Applicants  participation will enhance the Court s understanding of the factual and legal context necessary to properly dispose of the merits of this case.

## CONCLUSION

For the reasons stated herein, this Court should grant Applicants  motion to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2); in the alternative, this Court should permit Applicants to intervene under Fed. R. Civ. P. 24(b)(2).

21

DATED: October 18, 2006

Respectfully submitted,

Intervenor-Applicants Texas State
Conference of NAACP Branches and
Austin Branch of the NAACP

By their Attorneys,

/s/ Seth P. Waxman

| | |
|---|---|
| Seth P. Waxman (D.C. Bar No. 257337) | Jon M. Greenbaum (D.C. Bar No. 489887) |
| John A. Payton (D.C. Bar No. 282699) | Benjamin J. Blustein (D.C. Bar No. 418930) |
| Paul R.Q. Wolfson (D.C. Bar No. 414759) | Jonah H Goldman (D.C. Bar No. 497507) |
| Ariel B. Waldman (D.C. Bar No. 474429) | LAWYERS COMMITTEE FOR CIVIL |
| WILMER CUTLER PICKERING HALE and | RIGHTS UNDER LAW |
| DORR LLP | 1401 New York Avenue, NW, Suite 400 |
| 1875 Pennsylvania Ave. N.W. | Washington, D.C. 20005 |
| Washington, D.C. 20006 | Telephone: 202-662-8600 |
| Telephone: (202) 663-6000 | Facsimile: 202-628-2858 |
| Facsimile: (202) 663-6363 | |

Dennis C. Hayes (Indiana Bar No. 7601-49)
(motion to be admitted *pro hac vice* to be filed)
General Counsel
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT
OF COLORED PEOPLE, INC.
NAACP National Office
4805 Mt. Hope Drive
Baltimore, MD 21215
Telephone: (410) 580-5777
Facsimile: (410) 358-9350

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of October, 2006, a copy of the foregoing Memorandum in Support of Applicants  Motion To Intervene As Defendants was emailed to the Clerk of the Court at dcd_cmecf@dcd.uscourts.gov.  The electronic filing prompts service of the filing to all counsel of record in this case who have obtained CM/ECF passwords.

I also hereby certify that on this 18th day of October, 2006, I caused to be served a copy of the foregoing Memorandum in Support of Applicants  Motion to Intervene As Defendants through email and first class mail, postage pre-paid, to the following:

Gregory S. Coleman, Esq.
Christian T. Ward, Esq.
Weil Gotshal & Manges LLP
8911 Capital of Texas Highway
Suite 1350
Austin, TX  78759
greg.coleman@weil.com
chris.ward@weil.com

Counsel for Plaintiff


                                            /s/ Ariel B. Waldman_____
                                              Ariel B. Waldman

23