# Exhibit C

**In the United States District Court**
**For the District of Columbia**

---

NORTHWEST AUSTIN MUNICIPAL UTILITY
DISTRICT NUMBER ONE,
401 W. 15th Street
Suite 850
Austin, TX 78701

                          Plaintiff,

       vs.

ALBERTO GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES,
950 Pennsylvania Ave., NW
Washington, DC 20530

                        Defendant,

TEXAS STATE CONFERENCE OF THE
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
1107 East 11th Street
Austin, TX 78701,

                        and

NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
AUSTIN BRANCH
1704 East 12th Street
Austin, TX  78702,

                    Applicants to Intervene,

CIVIL ACTION
1:06CV01384

---

**DECLARATION OF GARY L. BLEDSOE IN SUPPORT OF**
**APPLICANTS' MOTION TO INTERVENE AS DEFENDANTS**

Pursuant to 28 U.S.C. § 1746, I, Gary L. Bledsoe, declare:

1.     I am President of the Texas State Conference of the National Association for the Advancement of Colored People ("NAACP") since 1992. I am over 18 years of age and have personal knowledge of the facts stated herein.

2.     As President of the Texas State Conference of the NAACP, my duties include being the spokesperson of the organization and Chairing the formal meetings of the Executive Committee. I have been a member of the Texas State Conference of the NAACP for over 20 years. In addition to the office of President, I have held the following offices in the NAACP: Legal Redress Chair of the Austin Branch of the NAACP 1986, Austin Branch President from 1987-1992 and Texas State Conference President from 1992-2006. I am currently a member of the National Board of Directors and have been since 2003.

3.     The Texas State Conference is a subsidiary organization of the NAACP, a national not-for-profit organization founded in 1909 that according to national leadership has over 375,000 members and associates throughout the United States. The mission of the NAACP is to ensure the political, educational, social, and economic equality of rights of all persons and to eliminate racial hatred and racial discrimination.

4.     The Texas State Conference was founded in 1936, and is headquartered in Austin. The Texas State Conference currently has many thousands of members in Texas. There are at least 74 local branches of the NAACP in Texas.

USIDOCS 5885040v1

5.    The NAACP's mission objectives, at the national, state conference and branch levels, include the removal of all barriers of racial discrimination through democratic processes, seeking enactment and enforcement of federal, state and local laws securing civil rights, and educating citizens of their constitutional rights and taking all lawful action to secure the exercise of those rights.

6.    A particular focus of the NAACP missions, at the national, state conference, and branch levels has always been combating racial discrimination in voting practices and removing barriers to the exercise of the right t ovote. Indeed, the NAACP's support for the Voting Rights Act has been central to the NAACP's mission since the Act's passage in 1965. The NAACP lobbied for the Voting Rights Act in 1965, and in 1970, 1975, and 1982 when certain of the Act's provisions were extended. The NAACP, including the Texas State Conference, also played a key role in support of the reauthorization of the Voting Rights Act in 2006. NAACP CEO and President Bruce Gordon met with President Bush and Attorney General Gonzales to advocate on behalf of reauthorization. While the reauthorization bill was pending in the Senate in 2006, the NAACP organized a group of approximately 2000 members to converge in Capitol Hill on their elected members' offices on the same day. In addition, NAACP members across the country sent thousands of pieces of correspondence to their congressional representatives urging them to support reauthorization. The Texas State Conference sent a forty-person delegation which I headed to meet

3

with Senator John Cornyn of Texas to emphasize the need for reauthorization of the Act (we were joined by Bruce Gordon and Hilary Shelton, who heads the NAACP's Washington Bureau). The Texas State Conference also held hearings on the need for reauthorization, including transcripts from hearing and voter complaints assembled from election problems in Texas. This evidence was provided to Congress in the VRA Reauthorization hearings. The Texas State Conference invested considerable time and resources into advocating in support of reauthorization of the VRA.

7.    The NAACP's efforts in support of reauthorization -- at the national, state and local levels – reflect the importance of the VRA to the NAACP and its members. The VRA and, in particular, the preclearance provisions of Section 5, have been vital to fighting voting discrimination in Texas. Section 5's preclearance requirements protect minority voters in Texas by monitoring proposed electoral changes to ensure that they do not have unlawful effect on minority voters. Section 5's preclearance requirements have been and remain essential to protecting minority voting rights in Texas, and the NAACP has been involved in using Section 5 to ensure protection of minority voting rights. For example, the State Conference filed objections to the 2003 Congressional Redistricting Plan that was ultimately invalidated by the United States Supreme Court, it filed an objection to the elimination of the Wilmer-Hutchins Independent School District and has filed a number of other letters of objection as well. And many of the units have filed as well and succeeded in stopping elections in Smith

4

County and having a true impact. For example, in 2004, the Prairie View A&M University Chapter of the NAACP, a unit of the Texas State Conference--was able to use Section 5 to prevent a last minute voting change to reduce the number of days of early voting for the spring 2004 primary election, where school was in session during early voting but the students were on spring break on Election Day.

8.    On or about August 25, 2006, I learned of the Complaint filed in the United States District Court for the District of Columbia on behalf of the Northwest Austin Municipal Utility District Number One, which seeks to strike down the preclearance provisions of Section 5 of the VRA as unconstitutional. This case seeks to thwart a federal civil rights law that is of vital importance to the Texas State Conference and its members, because Section Five continues to safeguard our fundamental right to vote. In particular, the lawsuit seeks to eliminate the Section 5 preclearance provision.

9.    The elimination of Section 5's preclearance requirements would severely injure the interests of the Texas State Conference. The prevention of discrimination in voting is a core interest of the Texas State Conference and the NAACP as a whole. Section 5 requires jurisdictions in Texas to demonstrate to federal authorities that all of its voting changes do not have a discriminatory purpose or effect. As a result, if officials making voting changes ignore or disregard the interests of minority voters, they to so at their own peril. If Section 5 were eliminated, the Texas State Conference would have to divert more of its resources to preventing voting discrimination. The Texas State Conference and its

USIDOCS 5885040v1

units would need to more closely monitor voting changes of all jurisdictions in the area, and it would require the Texas State Conference and its units to challenge objectionable voting changes on a case-by-case basis, including filing lawsuits.

        10.    The elimination of Section 5's preclearance requirements would also injure the interests of members of the Texas State Conference because Section 5 protects their right to vote free of discrimination  The Texas State Conference has many thousands of members, the majority of whom are African-American.  Each of these members is protected by the fact that Texas is covered by the preclearance provisions of Section 5.  If Section 5 were invalidated, as plaintiff requests, then the Texas State Conference's members could no longer rely on the Section 5 process, including the Justice Department's review of preclearance submissions, to ensure that Texas and its political subdivisions are not implementing voting changes with the purpose or effect of abridging the right to vote on the basis of race.  Instead, our members would have to much more closely monitor all voting changes in local jurisdictions, investigate the effect of such changes on African-American voters, and, if necessary, sue to block the implementation of such changes, a process that requires dedication of enormous resources of time and money—resources that may well be beyond the reach of many of our members, as well as the Texas State Conference as a whole.  Our perspective on the need for the Voting Rights Act protections in Texas is unique as is our interest, so I do not feel that our interests could be adequately protected or represented by the United States Attorney General.

6

For all of the reasons stated above, the Texas State Conference of NAACP Branches requests permission to intervene in this case as defendants.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this ____ day of October, 2006 in Austin, Texas.

Gary L. Bledsoe

7