# Exhibit D

In the United States District Court
For the District of Columbia

---

NORTHWEST AUSTIN MUNICIPAL UTILITY
DISTRICT NUMBER ONE,
401 W. 15th Street
Suite 850
Austin, TX 78701

        Plaintiff,

vs.

ALBERTO GONZALES,
ATTORNEY GENERAL OF THE UNITED STATES,
950 Pennsylvania Ave., NW
Washington, DC 20530

        Defendant,

TEXAS STATE CONFERENCE OF THE
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
1107 East 11th Street
Austin, TX 78701,

        and

NATIONAL ASSOCIATION FOR THE
ADVANCEMENT OF COLORED PEOPLE,
AUSTIN BRANCH
1704 East 12th Street
Austin, TX  78702,

        Applicants to Intervene,

CIVIL ACTION
1:06CV01384

---

## DECLARATION OF NELSON LINDER IN SUPPORT OF APPLICANTS' MOTION TO INTERVENE AS DEFENDANTS

Pursuant to 28 U.S.C. § 1746, I, Nelson Linder, declare:

1. I have served as President of the Austin, Texas Branch of the National Association for the Advancement of Colored People ("NAACP Austin Branch") since 2000. I am over 18 years of age and have personal knowledge of the facts stated herein.

2. As President of the NAACP Austin Branch, my duties include to address issues of discrimination that affect the Austin area. I have been a member of the NAACP Austin Branch since 1998. In addition to the office of President, I am a member of the NAACP executive committee for the state of Texas.

3. The Austin Branch is a subsidiary organization of the NAACP, a national not-for-profit organization founded in 1909 that today has over 375,000 members and associates throughout the United States. The territory of the Austin Branch includes Travis, Bastrop, and Hayes counties, and includes the area that contains the Northwest Austin Municipal Utility District No. 1. The mission of the NAACP is to ensure the political, educational, social, and economic equality of rights of all persons and to eliminate racial hatred and racial discrimination.

4. The NAACP Austin Branch was founded in 1918, and is headquartered in Austin. The NAACP Austin Branch currently has approximately

400 members, of whom the majority are African-American and many of whom are registered voters. The Austin Branch is one of many branches of the NAACP in the Texas State Conference.

5.  The NAACP's mission objectives, at the national, state conference and branch levels, include the removal of all barriers of racial discrimination through democratic processes, seeking enactment and enforcement of federal, state and local laws securing civil rights, and educating citizens of their constitutional rights and taking all lawful action to secure the exercise of those rights. In particular, the NAACP, at all levels, has fought for the elimination of racial discrimination in voting practices and the elimination of barriers on the exercise of the right to vote that have a racially discriminatory purpose or effect.

6.  The NAACP's support for the Voting Rights Act has been central to the NAACP's mission since the Act's passage in 1965. The NAACP lobbied for the Voting Rights Act in 1965, and in 1970, 1975, and 1982 when certain of the Act's provisions were extended. The NAACP, including the Austin Branch, also played a key role in support of the reauthorization of the Voting Rights Act in 2006. The NAACP Austin Branch worked in conjunction with Texas State Conference of NAACP Branches on the recent reauthorization of the Voting Rights Act: among other things, we visited the office of United States Senators John Cornyn and Kay Bailey Hutchinson to lobby them to support of reauthorization of the VRA.

7. The NAACP's efforts in support of reauthorization -- at the national, state and local levels – reflect the importance of the VRA to the NAACP and its members. The VRA and, in particular, the preclearance provisions of Section 5, have been vital to fighting voting discrimination in Texas, including Austin. Section 5's preclearance requirements protect minority voters by monitoring proposed electoral changes to ensure that they do not have unlawful effect on minority voters. Section 5's preclearance requirements have been and remain essential to protecting minority voting rights in Texas and Austin.

8. On or about August 25, 2006, I learned of the Complaint filed in the United States District Court for the District of Columbia on behalf of the Northwest Austin Municipal Utility District Number One, which seeks to strike down the preclearance provisions of Section 5 of the VRA as unconstitutional. This case seeks to thwart a federal civil rights law that is of vital importance to the Austin Branch and its members, because it continues to safeguard our fundamental right to vote. In particular, the lawsuit seeks to eliminate the Section 5 preclearance provision, which ensures proper monitoring of proposed electoral changes to determine whether they have an unlawful impact on minority voters.

9. The elimination of Section 5's preclearance requirements would severely injure the interests of the Austin Branch. The prevention of discrimination in voting is a core interest of the Austin Branch and the NAACP as a whole. Section 5 requires jurisdictions in the Austin area to demonstrate to federal authorities that all of its voting changes do not have a discriminatory

purpose or effect. As a result, if officials making voting changes ignore or disregard the interests of minority voters, they to so at their own peril. If Section 5 were eliminated, the Austin Branch would have to divert more of its resources to preventing voting discrimination. The Austin Branch would need to more closely monitor voting changes of all jurisdictions in the area, and it would require the NAACP and its branches to challenge every objectionable voting change on a case-by-case basis, including filing lawsuits.

        10. The elimination of Section 5's preclearance requirements would also injure the interests of members of the Austin Branch because Section 5 protects their right to vote free of discrimination. Each of these members is protected by the fact that Texas is covered by the preclearance provisions of Section 5. If Section 5 were invalidated, as plaintiff requests, then the Austin Branch's members could no longer rely on the Section 5 process. Instead, our members would have to much more closely monitor all voting changes in local jurisdictions, investigate the effect of such changes on African-American voters, and, if necessary, sue to block the implementation of such changes, a process that requires dedication of enormous resources of time and money—resources that may well be beyond the reach of many of our members, as well as the Austin Branch as a whole.

For all of the reasons stated above, the Austin Branch of the NAACP requests permission to intervene in this case as defendants.

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED this 14th day of October, 2006 in Austin, Texas.

_____
Nelson Linder