**IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| NORTHWEST AUSTIN MUNICIPAL UTILITY DISTRICT NUMBER ONE | |
| Plaintiff, | Civil Action No. 1:06-CV-01384 (PF, ES, DT) |
| v. | |
| ALBERTO GONZALES, in his official capacity as Attorney General of the United States of America | |
| Defendant, | |
| RODNEY LOUIS, et al. | |
| Applicants for Intervention. | |

## MOTION OF RODNEY LOUIS, ET AL. TO INTERVENE AS DEFENDANTS

Rodney Louis and Nicole Louis, (collectively "Proposed Louis Intervenors"), by their undersigned counsel, hereby submit this motion, the accompanying statement of Points and Authorities, and Answer in accordance with Local Civil Rule 7(j), to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(1) and Section 4(a)(4) of the VRA, or pursuant to Fed. R. Civ. P. 24(a)(2). *See* 42 U.S.C. 1973b. In the alternative, Proposed Louis Intervenors seek permissive intervention pursuant to Fed. R. Civ. P. 24(b). Proposed Louis Intervenors seek to intervene as Defendants in this action in order to assert defenses set forth in their proposed Answer, a copy of which is hereto attached.

Proposed Louis Intervenors aver that if intervention is granted they will, among other things: (i) participate in the action on the schedule which will be established for the

1

existing parties; (ii) avoid delays or unnecessary duplication of effort in areas satisfactorily addressed and represented by the existing Defendant, to the extent possible; and (iii) coordinate any pretrial and trial proceedings with the existing Defendant and any other Defendant-Intervenors, to the extent possible.

The Proposed Louis Intervenors are African-American registered voters who reside within the Northwest Austin Municipal Utility District Number One located in Travis County, Texas.

The grounds for this motion, more fully described in the accompanying Statement of Points and Authorities, are set forth below:

1. Plaintiff brought this declaratory judgment action seeking to terminate the Northwest Austin Municipal Utility District's covered status or to "bailout" under Section 4(a) of the Voting Rights Act of 1965, as amended (VRA). In the alternative, Plaintiff's Complaint challenges the constitutionality of the Section 5 preclearance provision of the VRA.

2. Proposed Louis Intervenors have filed this motion to intervene, along with supporting briefs and pleadings, in a timely manner. Plaintiff filed its Complaint on August 4, 2006. This motion is made just two days after Defendant filed his October 16, 2006, Answer, before the scheduling of any preliminary conference, and before commencement of the discovery period.

3. Proposed Louis Intervenors filed their motion after having had the opportunity to review the Defendant's Answer in order to take into account the first indication of Defendant's position in the litigation.

4.  Intervention, at this early stage of the litigation, will not unduly delay or prejudice the adjudication of the rights of the original parties.  The circumstances support a finding of timeliness.

5.    Proposed Louis Intervenors have an interest in the subject matter of this litigation that supports their intervention.  So long as Plaintiff Utility District is subject to Section 5 preclearance, Proposed Louis Intervenors have an assurance that any changes that Plaintiff may propose affecting voting must take account of the possible impact upon voters from the classes protected by the VRA, and must be reviewed by this Court or the Attorney General to assure that such changes will not have a negative impact upon such voters, including Proposed Intervenors.  Moreover, so long as Plaintiff Utility District is subject to Section 5 preclearance, Proposed Louis Intervenors may also obtain judicial relief from a federal district court in Texas to prevent the implementation of any changes affecting voting that have not been submitted for preclearance and been approved either by the Attorney General or this Court.  However, if Plaintiff is not subject to Section 5 preclearance, then Proposed Louis Intervenors and others similarly situated within the Northwest Austin Municipal Utility District Number One must bear the burden of bringing litigation on their own to protect themselves from measures that may negatively impact them.

6.  Proposed Louis Intervenors also have a strong interest in ensuring that that the statutory provisions of the VRA that protect minority voting rights are vindicated following Congress' recent renewal of its temporary provisions.  In particular, Proposed Louis Intervenors have an interest in ensuring that the bailout process is construed in a

manner that promotes the system of deterrence and incentives that Congress initially established in 1965 and has repeatedly reaffirmed.

7. Proposed Louis Intervenors have direct and legally protectable interests in this action. The questions of interpretation and application of the Section 4(a) bailout provision, and whether Section 5 withstands a constitutional challenge are questions of law and fact that would benefit from the perspective of African-American voters who are members of a class of citizens that the VRA is designed to protect.

8. Furthermore, Plaintiff's constitutional claims would, if successful, cause harm to Proposed Louis Intervenors' federally protected voting rights, and to similarly situated minority voters elsewhere in Texas. Proposed Louis Intervenors have a substantial interest in maintaining the recently renewed Section 5 preclearance provision to address Texas's well-documented and continuing history of voting discrimination against African American and other minority voters.

9. Indeed, this history of discrimination is far from dormant as the Supreme Court recently noted in *LULAC v. Perry,* 548 U.S. 34 (2006)(noting that features of a challenged Texas state redistricting plan "bear[] the mark of intentional discrimination that could give rise to an equal protection violation" and recognizing persistent levels of racially polarized voting throughout state).

10. Accordingly, just last term, the United States Supreme Court recognized that the VRA remains an important and effective tool in safeguarding minority voters in Texas against continuing and new threats in *LULAC v. Perry. Id*.

11. The disposition of this case, therefore, may impair Proposed Louis Intervenors' interests in ensuring the appropriate interpretation and application of the

VRA's Section 4(a) bailout provision, including but not limited to the statutory rationale for permitting only certain governmental entities which bear responsibility for voter registration to bailout out from coverage after satisfying certain prerequistites.

12.  The Voting Rights Act grants aggrieved parties the statutory right to intervene, at any stage, in all matters arising under the Section 4(a) bailout provision.  42 U.S.C. § 1973b.  Here, Proposed Louis Intervenors have interests that are clearly implicated by the claims raised in Plaintiff's Complaint and are thus, entitled to exercise this statutory right of intervention.

13.  This Court and others have recognized the significant impact of voting rights cases on the exercise of fundamental rights, and routinely grant intervention to minority voters in such cases, including declaratory judgment actions, among other matters.  *See*, *e.g.*, *Georgia v. Ashcroft*, 539 U.S. 461 (2003) (upholding D.C. District Court's grant of private parties' motion to intervene on grounds that intervenors' interests were not adequately represented by the existing parties); *Louisiana House of Representatives v. Ashcroft et. al*, Civ. No. 02-62 (D.D.C. June 6, 2002) (granting coalition of African-American and other voters' motion to intervene in a Section 5 declaratory judgment action seeking preclearance of redistricting plan where constitutional claims were asserted and voters were represented by the NAACP Legal Defense and Educational Fund, Inc.); *Bossier Parish Sch. Bd. v. Reno*, 907 F. Supp 434 (D.D.C. 1994) (making extensive reference to arguments presented by Defendant Intervenors, African-American voters, in Section 5 declaratory judgment action); *Busbee v. Smith*, 549 F. Supp. 494 (D.D.C. 1982) (recognizing arguments presented by Intervenors, African-American voters, in Section 5 declaratory judgment action), *aff'd* 459 U.S. 1166 (1983).

14.  Proposed Louis Intervenors' interests may not be adequately represented by Defendant Attorney General Gonzales in light of the nature of the Complaint in this action.  Defendant Attorney General Gonzales is bound by institutional constraints that are likely to shape its litigation strategy; including the type of evidence presented or arguments proffered.  Indeed, it is well-settled that government entities often cannot adequately represent the interests of private parties.  *See*, *e.g.*, *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (private party seeking to protect its financial interest allowed to intervene despite presence of government which represented general public interest); *accord Natural Resources Defense Council, Inc. v. United States Environmental Protection Agency*, 99 F.R.D. 607, 610 n.5 (D.D.C. 1983) (pesticide manufacturers allowed to intervene because even though both EPA and intervenors wanted to uphold regulations, their interest cannot always be expected to coincide -- recognizing that "EPA represents the public interest not solely that of the . . . industry").

15.  While the President pledged that the United States would defend the renewed VRA in court during the signing of the bill on July 27, 2006, there have been a number of circumstances in which the United States has shifted and/or reversed its position in cases that lie at the nexus between civil rights issues and constitutional law. *See United States v. New York City Bd. of Educ.*, No. 96-CV-0374 (FB)(RML) (E.D.N.Y. Sept. 11, 2006), slip op. at 5, 31 (after bringing action challenging "three entry-level examinations that the Board had administered, as well as the recruiting practices that it had used to publicize those exams, [as] violat[ing] Title VII," United States entered into a Settlement Agreement "that awarded employment benefits to a group of 59 individuals (the 'beneficiaries') composed of black, Hispanic and Asian men and women, and non-

6

minority females"; however, "[i]n April, 2002 . . . the United States decided that it would no longer defend the lawfulness of the Agreement's remedies for those beneficiaries who had not taken any of the challenged exams"); *Grutter v. Bollinger*, 539 U.S. 306 (2003) (despite role in prohibiting discrimination of the basis of race, color, or national origin, United States reversed course and took position opposing affirmative action program); *Bob Jones University v. United States*, 461 U.S. 574, n.9 (1983) (after the Court granted certiorari, the Government filed a motion to dismiss, informing the Court that the Department of Treasury intended to revoke a number of pertinent rulings and to recognize § 501(c)(3) exemptions for petitioners. However, the District of Columbia Circuit enjoined the Government from granting § 501(c)(3) tax-exempt status to any school that discriminates on the basis of race in *Wright v. Regan*, No. 80-1124 (D.C. Cir. Feb. 18, 1982) (*per curiam*)); *United States v. Hinds County School Bd.* (5th Cir.), *rev'd sub nom. Alexander v. Holmes County Bd. of Educ.*, 396 U.S. 19 (1969) (Secretary of HEW disowned HEW Title IV Center-drawn plans that had been submitted in consolidated school desegregation cases by delivering to the Fifth Circuit, "by safe-hand courier", a letter indicating that the government now believed the plans were in error and needed to be reconsidered leading to a resulting delay in integration efforts). The issues which may be litigated in this case implicate the legal validity of what is widely regarded as the nation's most effective civil rights statute, and its adjudication should be shielded from any potential vacillations that could undermine the thorough presentation of complex legal questions. More than 40 years of experience teaches that the interests of minority voters in the enforcement of the VRA transcend considerations of partisanship and periodic changes in administrations.

16.   Accordingly, Defendant Attorney General Gonzales does not have the same stake in this matter as African-American or other minority voters who, both historically and more recently, have experienced voting discrimination that has impaired their ability to participate fully and equally in Texas's political process.

17.   The NAACP Legal Defense and Educational Fund, Inc., counsel for the Proposed Louis Intervenors, has substantial experience in VRA litigation generally including, but not limited to, constitutional challenges to the VRA, Section 5 declaratory judgment actions before three-judge panels in this jurisdiction, and with respect to the circumstances that led both to the initial Congressional enactment and subsequent renewals of the VRA.  This experience would aid counsel in its representation of its clients, and very likely the Court in the adjudication of the issues presented in this case.

18.   Intervention here is appropriate as of right pursuant to Fed. R. Civ. P. 24(a)(1) and Section 4(a)(4) of the VRA, or pursuant to Fed. R. Civ. P. 24(a)(2).  See 42 U.S.C. § 1973b.  In the alternative, intervention may also be granted permissively pursuant to Fed. R. Civ. P. 24(b).

19.   Counsel for the Proposed Louis Intervenors have conferred with counsel for the parties in accordance with Local Civil Rule 7(m).  As of the time of this filing, Defendant Attorney General Gonzales has not determined whether he will oppose intervention as of right or permissively.  Plaintiff's counsel has advised that he opposes intervention.

WHEREFORE, Proposed Intervenors respectfully request that this Motion to
Intervene as Defendants be granted.

Respectfully submitted,


/s/ Norman J. Chachkin
_____
Director-Counsel
Theodore Shaw
Jacqueline A. Berrien
Associate Director-Counsel
Norman J. Chachkin (D.C. Bar No.235283)
Debo P. Adegbile
NAACP Legal Defense and
        Educational Fund, Inc.
99 Hudson Street, Suite 1600
New York, New York 10013
(212) 219-1900

Kristen Clarke-Avery
NAACP Legal Defense and
        Educational Fund, Inc.
1444 Eye Street, N.W., 10th Floor
Washington, D.C. 20005
(202) 682-1300

Attorneys for Proposed Defendant-Intervenors


Dated: October 18, 2006.

**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE NORTHWEST AUSTIN MUNICIPAL UTILITY DISTRICT NUMBER ONE<br><br>      Plaintiff,<br>  v.<br><br>ALBERTO GONZALES, in his official capacity as Attorney General of the United States of America<br><br>      Defendant,<br><br>RODNEY LOUIS, ET AL.<br><br>      Applicants    for Intervention. | Civil Action No. 1:06-CV-01384<br>(PF, ES, DT) |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS ON BEHALF OF RODNEY LOUIS, ET AL.**

Theodore Shaw
Director-Counsel
Jacqueline A. Berrien
Associate Director-Counsel
Norman J. Chachkin (D.C. Bar No.235283)
Debo P. Adegbile
NAACP Legal Defense and
  Educational Fund, Inc.
99 Hudson Street, Suite 1600
New York, New York 10013
(212) 219-1900

Kristen M. Clarke
NAACP Legal Defense and
  Educational Fund, Inc.
1444 Eye Street, N.W., 10th Floor
Washington, D.C. 20005
(202) 682-1300

Attorneys for Proposed Louis Defendant-Intervenors

# TABLE OF AUTHORITIES

## FEDERAL CASES

422 U.S. 358 (1975) ..................................................................................................7

425 U.S. 130 (1976) ..................................................................................................7

*Abrams v. Johnson,*
    117 S. Ct. 1925 (1997) .......................................................................................8

*African American Voting Rights Legal Defense Fund, Inc. v. Blunt,*
    507 U.S. 1015 (1993) ........................................................................................22

*Alexander v. Holmes County Board of Education,*
    396 U.S. 19 (1969) ..........................................................................................19

*Allen v. State Board of Elections,*
    393 U.S. 544 (1969) ....................................................................................10, 12

*American Horse Prot. Association, Inc. v. Veneman,*
    200 F.R.D. 153 (D.D.C. 2001) .........................................................................5, 6

*Associated General Contractors of Connecticut, Inc. v. City of New Haven,*
    130 F.R.D. 4 (D.Conn. 1990) .............................................................................18

*Beer v. United States,*
    374 F. Supp. 363 (D.D.C. 1974), *vacated and remanded on other*
    *grounds* .............................................................................................................7

*Blanding v. DuBose,*
    454 U.S. 393 (1982) ..........................................................................................20

*Bob Jones University v. United States,*
    461 U.S. 574 (1983) ..........................................................................................19

*Bossier Parish Sch. Board v. Reno,*
    157 F.R.D. 133 (D.D.C. 1994) ............................................................................7

*Brotherhood of R.R. Trainmen v. Baltimore ¶ O.R. Co.,*
    331 U.S. 519 (1947) ......................................................................................9, 12

*Building ¶ Construction Trades Dep§t v. Reich,*
    40 F.3d 1275 (D.C.Cir. 1994) ............................................................................22

*Busbee v. Smith,*
    549 F. Supp. 494 (D.D.C. 1982)þ(acknowledging intervention of
    African-American voters in Section 5 declaratory judgment actionþ,
    *affd* 459 U.S. 1166 (1983) ............................................................................7

*Chiles v. Thornburg,*
    865 F.2d 1197 (11th Cir. 1989) ...............................................................15

*City of Cleveland v. NRC,*
    17 F.3d 1515 (D.C.Cir. 1994) ...................................................................22

*City of Lockhart v. United States,*
    460 U.S. 125 (1983)...............................................................................7, 20

*City of Petersburg, Virginia v. United States,*
    354 F. Supp. 1021 (D.D.C. 1972), *affd*, 410 U.S. 962 (1973) ......................8

*City of Port Arthur v. United States,*
    517 F. Supp. 987 (D.D.C. 1981) ................................................................7

*City of Richmond, Virginia v. United States,*
    376 F. Supp. 1344 (D.D.C. 1974), *vacated and remanded on otr.*
    *grounds* ..................................................................................................7

*Commack Self-Service Kosher Meats, Inc. v. Rubin,*
    170 F.R.D. 93 (E.D.N.Y. 1996).........................................................21, 24

*Cook v. Boorstin,*
    763 F.2d 1462 (D.C. Cir. 1985) ...............................................................14

*County Council of Sumter County v. United States,*
    555 F. Supp. 694 (D.D.C. 1983) .........................................................7, 20

*Diamond v. Charles,*
    476 U.S. 54 (1986)...................................................................................13

*Dimond v. District of Columbia,*
    792 F.2d 179 (D.C. Cir. 1986)(emphasis added)..................................16, 17

*Donaldson v. United States,*
    400 U.S. 517 (1971)................................................................................12

*Fiandaca v. Cunningham,*
    827 F.2d 825 (1st Cir. 1987)....................................................................21

*Fund for Animals v. Norton*,
    322 F.3d 728 (D.C.Cir. 2003) ...................................................................13, 22

*General Telegraph Co. of the Northwest, Inc. v. EEOC*,
    446 U.S. 318 (1980)..............................................................................................17

*Georgia v. Ashcroft*,
    539 U.S. 461 (2003)..........................................................................................6, 16

*German v. Federal Home Loan Mortgage Corp.*,
    899 F. Supp. 1155 (S.D.N.Y. 1995).....................................................................6

*Grutter v. Bollinger*,
    539 U.S. 306 (2003)..............................................................................................19

*Hirshon v. Republic of Bolivia*,
    979 F. Supp. 908 (D.D.C. 1997) ..........................................................................8

*Huron Environmental Activist League v. United States Environmental Protection
    Agency*,
    917 F. Supp. 34 (D.D.C. 1996) ...........................................................................23

*Jones v. Prince George§s County*,
    348 F.3d 1014 (D.C.Cir. 2003) ...........................................................................13

*LULAC v. Perry*,
    548 U.S. 34 (2006)...........................................................................................2, 14

*Meek v. Metropolitan Dade County*,
    985 F.2d 1471 (11th Cir. 1993) ........................................................................7, 8

*Military Toxics Project v. EPA*,
    146 F.3d 948 (D.C.Cir.1998)...............................................................................22

*Miller v. Blackwell*,
    348 F. Supp. 2d 916 (S.D. Ohio 2004) .................................................................8

*Miller v. Brooks*,
    158 F.3d 1230 (11th Cir. 1998) ..........................................................................20

*Miller v. Johnson*,
    515 U.S. 900 (1995)...............................................................................................8

*Mova Pharm. Corp. v. Shalala*,
    140 F.3d 1060 (D.C.Cir. 1998) .....................................................................13, 22

*NAACP v. Button*,
     371 U.S. 415 (1963)..........................................................................................11

*Nash v. Blunt*,
     140 F.R.D. 400 (W.D.Mo. 1992).......................................................................21

*Nationwide Mutual Insurance Co. v. National REO Management, Inc.*,
     205 F.R.D. 1 (D.D.C. 2000)................................................................................9

*Nationwide Wildlife Federation v. Burford*,
     676 F. Supp. 271 (D.D.C. 1985) ........................................................................9

*Natural Resources Defense Council, Inc. v. United States Environmental*
     *Protection Agency*,
     99 F.R.D. 607 (D.D.C. 1983)...........................................................................17

*Natural Resources Defense Council v. Costle*,
     561 F.2d 904 (D.C. Cir. 1977) ....................................................................16, 17

*New York Public Interest Research Group, Inc. v. Regents of the University of the*
     *State of New York*,
     516 F.2d 350 (2d Cir. 1975).............................................................................17

*New York State v. United States*,
     65 F.R.D. 10 (D.D.C. 1974)................................................................................7

*Nuesse v. Camp*,
     385 F.2d 694 (D.C. Cir. 1967) .............................................................5, 17, 21, 23

*People for the Ethical Treatment of Animals v. Babbitt*,
     151 F.R.D. 6 (D.D.C. 1993)..............................................................................17

*Phar-Mor, Inc. v. Coopers ¶ Lybrand*,
     22 F.3d 1228 (3d Cir. 1994)..............................................................................10

*Rio GrandePipeline Co. v. FERC*,
     178 F.3d 533 (D.C. Cir. 1999) ..........................................................................22

*Roberts v. Wamser*,
     883 F.2d 617 (8th Cir.1989) .............................................................................11

*Roeder v. Islamic Republic of Iran*,
     333 F.3d 228 (D.C.Cir. 2003), *cert. denied*, 542 U.S. 915 (2004) ............................8

*Ruiz v. Estelle*,
     161 F.3d 814 (5th Cir. 1998) ............................................................................10

*S. Christian Leadership Conference v. Kelley,*
    747 F.2d 777 (D.C.Cir. 1984) ......................................................................22

*Sandusky County Democratic Party v. Blackwell,*
    387 F.3d 565 (6th Cir. 2004) ......................................................................21

*Shaw v. Hunt,*
    861 F. Supp. 408 (E.D.N.C. 1994)................................................................8

*In re Sierra Club,*
    945 F.2d 776 (4th Cir. 1991) ......................................................................17

*Smith v. Cobb County Board of Elections and Registration,*
    314 F. Supp. 2d 1274 ..................................................................................7

*Smoke v. Norton,*
    252 F.3d 468 (D.C. Cir. 2001) ....................................................................8

*South Carolina v Katzenbach,*
    383 U.S. 301 ..............................................................................................16

*State of Georgia v. John Ashcroft, et. al.,*
    195 F. Supp. 2d 25 (D.D.C. 2002) ............................................................16

*Tachiona v. Mugabe,*
    186 F. Supp. 2d at 394 (S.D.N.Y. 2002)......................................................5

*Trafficante v. Metropolitan Life Insurance Co.,*
    409 U.S. 205 (1972)..................................................................................11

*Trbovich v. United Mine Workers of America,*
    404 U.S. 528 (1972)..............................................................16, 18, 19, 23

*Turn Key Gaming, Inc. v. Oglala Sioux Tribe,*
    164 F.3d 1080 (8th Cir. 1999) ....................................................................5

*Vera v. Richards,*
    861 F. Supp. 1304 (S.D.Tex. 1994) ............................................................8

*Wilderness Society v. Babbitt,*
    104 F. Supp. 2d 10 (D.D.C. 2000) ..............................................................5

*Wright v. Regan,*
    656 F.2d 820 (D.C. Cir. Feb. 18, 1981) ....................................................19

*Young v. Fordice*,
 520 U.S. 273 (1997) ........................................................................20

## DOCKETED CASES

*Louisiana House of Representatives v. Ashcroft et. al*,
 Civ. No. 02-62 (D.D.C. 2002) ...........................................................7, 20

*United States v. New York City Board of Education*,
 No. 96-CV-0374 (FB)(RML) ...............................................................18

*Wright v. Regan*,
 No. 80-1124 (CADC Feb. 18, 1982) .......................................................19

## FEDERAL STATUTES

11 U.S.C. § 1109(b) ..........................................................................10

42 U.S.C. 1973 .................................................................................2

42 U.S.C. 1973a ...............................................................................10

42 U.S.C. 1973b ................................................................................1

18 U.S.C. § 3626(a)(3)(F) ...................................................................10

1975 - Subsec. (a). Pub. L. 94-73 .........................................................10

Fed, R. Civ. P. 24(a)(1)................................................................9, 10, 14, 17
                                                                                      24

Fed. R. Civ. P. 24(a)(1) and 24(a)(2) ...................................................5, 13

S. Rep. No. 94-295, 94th Cong., 1st Sess., at 40 ....................................11, 12

Section 5 of the Voting Rights Act, 42 U.S.C. 1973c ...................................6

## IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

THE NORTHWEST AUSTIN MUNICIPAL
UTILITY DISTRICT NUMBER ONE

                Plaintiff,

        v.

ALBERTO GONZALES, in his official capacity as
Attorney General of the United States of America

                Defendant,

RODNEY LOUIS, ET AL.

                Applicants for Intervention.

Civil Action No. 1:06-CV-01384
      (PF, ES, DT)

## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS ON BEHALF OF RODNEY LOUIS, ET AL.

Proposed Defendant-Intervenors, Rodney Louis and Nicole Louis, (collectively, "Proposed Intervenors"), by their undersigned counsel, respectfully submit this statement of points and authorities in support of their motion to intervene. This motion seeks intervention as of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, and Section 4(a)(4) of the VRA. *See* 42 U.S.C. § 1973b. In the alternative, Proposed Intervenors seek permissive intervention pursuant to Rule 24(b)(2).

### PRELIMINARY STATEMENT

The Northwest Austin Municipal Utility District Number One (Plaintiff), filed this action on August 4, 2006, seeking to terminate the municipal utility district's covered status under the bailout provision codified within Section 4(a) of the Voting Rights Act of 1965 (VRA). In the

1

alternative, Plaintiff's Complaint challenges the constitutionality of the Section 5 preclearance

provision of the Act.  42 U.S.C. § 1973.  This motion to intervene is filed on behalf of African-

American residents and registered voters in the Northwest Austin Municipal District Number

One.  Proposed Louis Intervenors are aggrieved individuals within the meaning of the statute

who have a direct and substantial stake in the outcome of this action as members of a protected

class that the VRA was designed to protect.  Proposed Louis Intervenors seek to have the VRA's

provisions enforced in accordance with Congressional intent, and its constitutionality upheld.

Indeed, Texas's very recent history of discrimination against minority voters illustrates that

discrimination against minority voters remains a very real threat, that racial polarization

continues to effect the opportunities of minority voters to elect candidates of choice, and that

voting discrimination against minority communities takes root at times when a minority

community is beginning to have the ability to exert political influence.  *LULAC v. Perry,* 548

U.S. 34 (2006).

This motion to intervene is made with the Proposed Louis Intervenors' commitment to

and understanding of this Court's interest in the efficient disposition of the proceedings in this

matter.  To that end, Intervenors are committed to (i) participating in the action on the same

schedule to be established for the existing parties; (ii) avoiding delays or the unnecessary

duplication of effort in those areas satisfactorily addressed and represented by the existing

Defendant to the extent possible; and (iii) coordinating pretrial and trial proceedings with the

Defendants to the extent possible.

Proposed Intervenors have not had an opportunity to offer comment on the issues raised

by Plaintiff's Complaint.  Plaintiff did not elicit or seek the views of minority voters before or as

part of the process of deciding to pursue bailout under the VRA, much less in deciding whether to challenge Section 5's constitutionality. Although Plaintiff is not required to hold public hearings or provide an opportunity for minority voters to participate in the deliberative process leading up to its decision to seek bailout pursuant to Section 4(a) of the Act, these facts underscore the point that the Proposed Louis Intervenors have interests that are not represented by the Plaintiff even though Plaintiff is a governmental subunit. Proposed Louis Intervenors also possess legally direct, substantial and protectable interests in the subject matter of this litigation that will not be adequately represented by Defendant Attorney General Gonzales. Because the Proposed Louis Intervenors meet all requirements for intervention as of right under Rule 24(a) and Section 4(a), this motion should be granted. In the alternative, the facts and circumstances of the case warrant permissive intervention.

## FACTUAL BACKGROUND

The Northwest Austin Municipal Utility District Number One is located in Austin, Texas. The district was created in the late 1980s to provide infrastructural, water and wastewater service to an area known as the Canyon Creek residential subdivision. Because the district falls within the covered State of Texas, it is subject to the Section 5 preclearance requirement of the Act. As a result, the district is required to submit all of its voting changes for administrative or judicial preclearance in order to determine whether the change place minority voters in a worse position or were adopted with impermissible purpose.

Plaintiff alleges that the Section 5 preclearance process is both "costly and burdensome." *See* Comp. at 12. In addition, Plaintiff alleges that it has always supported "full and open voting rights for all residents of the district." *See* Comp. at 7. Moreover, Plaintiff claims that the

preclearance process imposes costs on jurisdictions that are monetary in nature and other costs that can also be measured by the "federal government's infringement on the sovereignty interests of state and local governments." *See* Comp. at 13.

To support its claim of eligibility for bailout, the district alleges that during the past ten years: (a) no test or device has been used with the purpose or with the effect of denying or abridging the right to vote on account of race or color; (b) there have been no adverse final judgments, no consent decrees, settlements or judgments determining that denials or abridgements to the right to vote on account or race, color or membership in a language minority group have occurred in the district; (c) federal examiners have not been assigned to the district; (d) the district has complied with Section 5 and all voting changes have been reviewed under Section 5 prior to their implementation and (e) no change has been subject to an objection by the Attorney General or the denial of a Section 5 declaratory judgment in the District Court for the District of Columbia. *See* Comp. at 15. Further the district alleges that it has made constructive efforts during the past ten years to prevent intimidation or harassment of persons seeking to vote and to expand opportunities for voter participation. *See* Comp. at 16. Finally, the district alleges that there are no pending lawsuits against the district concerning voting discrimination. *See* Comp. at 17.

Defendant Attorney General Gonzales filed his Answer on October 16, 2006. Defendant Attorney General Gonzales denies that the district is eligible for bailout under Section 4(a) of the VRA and denies Plaintiff's claims regarding the unconstitutionality of the VRA's Section 5 preclearance provision.

**ARGUMENT**

A.    <u>Proposed Louis Intervenors Should be Permitted to Intervene as of Right Pursuant to Federal Rule of Civil Procedure 24(a)</u>

Federal Rule of Civil Procedure 24(a), concerning intervention as a matter of right, states:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

Proposed Louis Intervenors satisfy the requirements to intervene as of right pursuant to both Fed. R. Civ. P. 24(a)(1) and 24(a)(2), and to Section 4(a)(4) of the VRA. .  Federal courts, including those in the D.C. Circuit, have emphasized that Rule 24's intervention requirements should be construed flexibly and liberally in favor of intervention.  *See, e.g.*, *Nuesse v. Camp*, 385 F.2d 694, 702-04 (D.C. Cir. 1967) (recognizing need for liberal application of the rules permitting intervention as of right); *American Horse Prot. Ass'n., Inc. v. Veneman,* 200 F.R.D. 153, 157 (D.D.C. 2001) (noting the "liberal and forgiving" nature of the interest prong of the intervention as of right test); *Wilderness Society v. Babbitt*, 104 F. Supp. 2d 10 (D.D.C. 2000) (recognizing D.C. Circuit's liberal approach to intervention).  *See also Tachiona v. Mugabe*, 186 F. Supp. 2d at 394 (S.D.N.Y. 2002) (describing Rule 24 intervention standard as "a flexible and discretionary one"); *Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999) ("Rule 24 should be construed liberally, and doubts resolved in favor if the proposed intervenor.");

5

*German v. Federal Home Loan Mortgage Corp.*, 899 F. Supp. 1155, 1166 (S.D.N.Y. 1995)

(noting "liberal construction" of intervention requirements).

Here, Proposed Louis Intervenors' motion comfortably satisfies both prongs of Rule

24(a)'s requirements for intervention as of right, as well as the statutory intervention right under

§ 4(a). Proposed Louis Intervenors' motion to intervene is timely... In addition, Proposed Louis

Intervenors have direct and significant interests in this action that cannot be adequately protected

by the current parties to the litigation. *See American Horse Prot. Ass'n.,* 200 F.R.D. at 157

(D.D.C. 2001). Taken together, these considerations strongly counsel in favor of granting the

Proposed Louis Intervenors' motion to intervene as of right pursuant to Rule 24(a)(1), § 4(a) or,

alternatively, pursuant to Rule 24(a)(2).

**B.      As a General Matter, Courts Recognize the Particular Significance of Rule 24
Intervention in Voting Rights Cases**

This Court, and others, routinely grant intervention in voting rights cases to African-

American and other minority voters, recognizing the that the interests of the intended

beneficiaries of the VRA may well add necessary perspectives and arguments to legal

proceedings involving interpretations of the Act, or that those interests may diverge from the

positions of institutional parties such as the United States. Indeed, intervention has been

permitted in a broad range of voting rights matters including declaratory judgment actions and

matters challenging the constitutionality of Section 5 of the Voting Rights Act, 42 U.S.C. §

1973c. *See*, *e.g.*, *Georgia v. Ashcroft*, 539 U.S. 461, 477 (2003)(upholding D.C. District Court's

grant to private parties' motion to intervene on grounds that intervenors' interests were not

adequately represented by the existing parties and finding that, as general matter, private parties

6

may intervene in § 5 declaratory judgment actions where they meet the requirements of Rule 24);

*Louisiana House of Representatives v. Ashcroft et. al*, Civ. No. 02-62 (D.D.C. June 6, 2002)

(granting coalition of African-American and other voters' motion to intervene in a Section 5

declaratory judgment action seeking preclearance of redistricting plan where constitutional

claims were asserted; voters were represented by the NAACP Legal Defense and Educational

Fund, Inc.); *Smith v. Cobb County Bd. of Elections and Registration*, 314 F. Supp. 2d 1274, 1311

(N.D. Ga. 2002) (African-American voters were entitled to intervene in suit concerning

reapportionment of districts since they asserted a legitimate interest that was not adequately

represented by any of the parties); *Bossier Parish Sch. Bd. v. Reno*, 157 F.R.D. 133 (D.D.C.

1994) (granting intervention to African-American voters from Texas in declaratory judgment

action concerning Section 5 of the Act); *Meek v. Metropolitan Dade County*, 985 F.2d 1471,

1478 (11th Cir. 1993) (ruling that voters are entitled to intervene in voting rights suit concerning

at-large system); *City of Lockhart v. United States*, 460 U.S. 125, 129 (1983) (noting

intervention of Hispanic voters); *County Council of Sumter County v. United States*, 555 F.

Supp. 694, 697 (D.D.C. 1983) (granting intervention to African-American voters in Section 5

declaratory judgment action); *Busbee v. Smith*, 549 F. Supp. 494 (D.D.C. 1982) (acknowledging

intervention of African-American voters in Section 5 declaratory judgment action), *aff'd*

459 U.S. 1166 (1983); *accord City of Port Arthur v. United States*, 517 F. Supp. 987, 991 n.2

(D.D.C. 1981); *New York State v. United States*, 65 F.R.D. 10, 12 (D.D.C. 1974); *City of*

*Richmond, Virginia v. United States*, 376 F. Supp. 1344, 1349 n.23 (D.D.C. 1974), *vacated and*

*remanded on other grounds*, 422 U.S. 358 (1975); *Beer v. United States*, 374 F. Supp. 363, 367

n.5 (D.D.C. 1974), *vacated and remanded on other grounds*, 425 U.S. 130, 133 n.3 (1976); *City*

*of Petersburg, Virginia v. United States*, 354 F. Supp. 1021, 1024 (D.D.C. 1972), *aff'd*,

410 U.S. 962 (1973).[1]

**C.    Proposed Louis Intervenors' Motion to Intervene Is Timely**

Regardless of whether this court grants this motion to intervene pursuant to Rule 24(a)(1)

and the VRA's § 4(a) or Rule 24(a)(2), as a threshold matter Proposed Intervenors must

demonstrate that their motion is timely.  Timeliness is measured from when the prospective

intervener "knew or should have known that any of its rights would be directly affected by the

litigation."  *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C.Cir. 2003), *cert. denied*,

542 U.S. 915 (2004).  Courts generally assess timeliness by considering other factors including:

the applicant's interest in the case, the need for intervention to preserve the applicant's rights, the

extent of prejudice to the existing parties, the extent of prejudice to the proposed intervenor if the

application is denied, and any unusual circumstances in favor of or opposed to intervention.  *See*

*Smoke v. Norton,* 252 F.3d 468, 470-471 (D.C. Cir. 2001) (setting forth timeliness factors);

*Hirshon v. Republic of Bolivia*, 979 F. Supp. 908, 913 n.5 (D.D.C. 1997) (same).  Here, Plaintiff

filed its complaint on August 4, 2006.  On September 11, 2006, this Court issued an Order

designating the members of the three-judge panel that has been convened to hear this matter.

---

[1]  District courts have also regularly permitted intervention in other voting rights cases, including those in which the United States has been a party.  For example, in *Miller v. Blackwell*, 348 F. Supp. 2d 916 (S.D. Ohio 2004), the court permitted intervention in a suit arising under the National Voter Registration Act after determining that claimants' interest in avoiding dilution of their votes was different from the interests of state election officials, thus, reducing likelihood that those officials could adequately represent interests of the intervenors.  *See, e.g.*, *Shaw v. Hunt*, 861 F. Supp 408, 420 (E.D.N.C. 1994); *Vera v. Richards*, 861 F. Supp. 1304, 1310 (S.D.Tex. 1994); *Miller v. Johnson*, 515 U.S. 900, 909 (1995); *Abrams v. Johnson*, 117 S. Ct. 1925, 1930 (1997); *see also Meek v. Metropolitan Dade County,* 985 F.2d at 1478 ("as proposed intervenors observe, voters have been permitted to intervene in a large number -- if not all -- of the actions involving a *Shaw v. Reno* claim.")

Finally, Defendant filed his Answer to the Complaint just two days ago, on October 16, 2006.

       Proposed Louis Intervenors' motion plainly satisfies this timeliness standard. Specifically, Proposed Louis Intervenors have submitted their motion in advance of the court's preliminary hearing and well before commencement of discovery.  In addition, Proposed Louis Intervenors timed their intervention to take cognizance of Defendant's answer, and no motions or briefs of any kind have yet been filed, thus neutralizing any argument that the Proposed Louis Intervenors' entry into the matter would result in any undue prejudice or delay.  Moreover, Proposed Louis Intervenors seek to participate in the case on the same schedule as the other parties.  *Cf. Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt., Inc.,* 205 F.R.D. 1, 6 (D.D.C. 2000) (memorandum opinion) (intervention motion six months after filing of action is timely); *Nationwide Wildlife Fed'n v. Burford,* 676 F. Supp. 271 (D.D.C. 1985) (intervention motion three months after filing of suit is timely).  *But see Crow Tribe of Indians v. Norton,* Slip. Op. 2006 WL 908048 (D.D.C. 2006) (rejecting motion to intervene filed 4 years after filing of Complaint and 2 months after execution of settlement agreement).  Under these circumstances, this motion is timely and granting intervention pursuant to Rule 24(a)(1), § 4(a) or Rule 24(a)(2) would not prejudice the existing parties or alter the court's discovery or pre-trial schedule.

**D.**    **<u>Proposed Louis Intervenors Possess a Statutorily Created Right to Intervene Under Section 4(a) of the Voting Rights Act</u>**

       Fed. R. Civ. P. 24(a)(1) permits intervention as of right when a statute of the United States confers an unconditional right to intervene.  This type of intervention recognizes the validity of unconditional rights to intervene granted by federal statutes.  *See, e.g.*, *Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 526, 67 (1947) (statute conferred right to

intervene by stating that "[r]epresentatives of employees of a carrier, duly designated as such, may intervene and be heard in any proceeding arising under this Act affecting such employees"); *Sixty-Three Strategic Investment Funds v. United States*, No. C 05- 1123 VRW, 2005 WL 2467743 (N.D. Cal. Oct. 6, 2005) (finding that intervenors had an unconditional statutory right to intervene under FRCP 24(a)(1)); *Ruiz v. Estelle*, 161 F.3d 814, 816 (5th Cir. 1998) (petitioners had right to intervene under 18 U.S.C. § 3626(a)(3)(F), which provides a "right to intervene in any proceeding relating to such relief"); *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1230-31 (3d Cir. 1994) (11 U.S.C. § 1109(b) provides creditors with an unconditional right to intervene in bankruptcy proceedings pursuant to Rule 24(a)(1), because it provides that a creditors' committee "may raise and may appear and be heard on any issue in a case [under Chapter 11]").  Indeed, § 4(a), the bailout provision of the VRA, grants aggrieved parties an unconditional statutory right to intervene in these matters.

The statutorily created right of intervention under Section 4(a) of the VRA is informed by the Court's holding in *Allen v. State Board of Elections*, 393 U.S. 544, 557 (1969), which found an implied cause of action for private citizens to bring suits to enforce provisions of the Voting Rights Act that "might [otherwise] prove an empty promise." *Id.*  In *Allen,* the Court reasoned that private litigants attempting to protect their voting rights were also proper parties to fulfill the goals of the VRA, and recognized the need for aggrieved voters to "seek[] judicial enforcement of the prohibition" against infringements upon the right to vote based on race.  *Id.* at 557. Congress responded to the Court's holding in *Allen v. State Board of Elections* by amending the VRA to expressly confer standing upon "aggrieved persons" to enforce their rights. 42 U.S.C. 1973a.  *See* 1975 - Subsec. (a). Pub. L. 94-73 (substituting "Attorney General or an aggrieved

10

person" for "Attorney General" in several sections of the statute). The legislative history underlying the resulting 1975 amendments to the VRA makes clear that both the Attorney General and private persons were to be vested with the responsibility to ensure enforcement of the Act's provisions. Congress noted that this "dual enforcement mechanism" is a common feature in remedial legislation that gives "enforcement responsibility to a governmental agency" and "to private persons acting as a class or on their own behalf." S. Rep. No. 94-295, 94th Cong., 1st Sess., at 40. In creating a comparable statutory right to intervene under Section 3 of the Act, Congress reasoned that such rights are "sound policy to [help] … assist the process of enforcing voting rights." *Id.*

Section 4(a)(4) of the Voting Rights Act provides that "[a]ny aggrieved party may as of right intervene at any stage in such action." Thus, as a threshold matter, Proposed Intervenors must demonstrate that they are "aggrieved" within the meaning of the statute. *See Roberts v. Wamser,* 883 F.2d 617, 621 (8th Cir.1989)(standing under the Voting Rights Act for private litigants - those other than the United States Attorney General - is limited to "aggrieved persons" seeking to enforce their voting rights). The legislative history underlying the Act defines an "aggrieved person" as "any person injured by an act of discrimination" including any "individual or organization representing the interests of injured persons." S. Rep. No. 94-295, 94th Cong., 1st Sess., at 40, *citing Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205 (1972); *NAACP v. Button,* 371 U.S. 415 (1963). Congress recognized that the vast majority of these cases would involve parties seeking to affirmatively enforce their rights under the Act as plaintiffs or plaintiff-intervenors but also recognized that the procedural posture of some cases, including declaratory judgment suits, would involve aggrieved parties in the role of defendant or

11

defendant-intervenors.  S. Rep. No. 94-295, 94th Cong., 1st Sess., at 40 n. 42.  *See also Hynson*

*v. Thomas,* (defining aggrieved person under the Act as one who has experienced an " invasion

of [some] 'concrete and particularized' legally protected interest which has been infringed.")

      Determining whether one is "aggrieved" within the meaning of the statute requires

considerations that mirror the analysis conducted under Rule 24(a)(2) in that the inquiry focuses

on the particular interests at stake and the potential for impairment of those interests.  Here,

Proposed Louis Intervenors have a legally protectable interest in the outcome of the action.  In

particular, Louis Intervenors have a vested interest in retaining the protections against

discriminatory voting changes that they enjoy through the prophylactic Section 5 preclearance

process, as well as in ensuring that this Court appropriately interprets and applies the bailout

provision, and upholds the constitutionality of the Section 5 preclearance provision.  Proposed

Louis Intervenors risk injury to their federally protected voting rights and potential harm to their

status as minority voters if an adequate defense is not mounted against Plaintiff's claims, in this

case which represents the first legal challenge to the recently renewed Sections 4 and 5 of the

VRA.  Moreover, Proposed Louis Intervenors have a "significantly protectable interest" in the

outcome of this matter given their status as minority voters who reside in the covered jurisdiction

at issue in this case.  *Donaldson v. United States*, 400 U.S. 517, 531 (1971).  As Proposed Louis

Intervenors could suffer impairment of rights that clearly fall within the zone of rights protected

under the VRA, their status as "aggrieved parties" is evident.  Like the private parties in *Allen*,

these aggrieved individuals now seek to intervene in this declaratory judgment suit to defend the

status of their federally protected voting rights.  *See, e.g.*, *Brotherhood of R.R. Trainmen v.*

*Baltimore & Ohio R.R. Co*., 331 U.S. at 529, 531 (Where Congress has provided an

"unmistakable" and "unconditional" right to intervene, "there is no room for the operation of a court's discretion.")

E.     **Alternatively, Proposed Louis Intervenors Satisfy the Requirements to Intervene as of Right Pursuant to Rule 24(a)(2)**

Parsing the language of Rule 24(a)(2), qualification for intervention as of right depends on the following four factors: (1) the timeliness of the motion; (2) whether the applicant "claims an interest relating to the property or transaction which is the subject of the action"; (3) whether "the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"; and (4) whether "the applicant's interest is adequately represented by existing parties." *Fund for Animals v. Norton*, 322 F.3d 728, 731 (D.C.Cir. 2003); *Jones v. Prince George's County,* 348 F.3d 1014, 1017 (D.C.Cir. 2003); *Mova Pharm. Corp. v. Shalala*, 140 F.3d 1060, 1074 (D.C.Cir. 1998) (quoting Fed. R. Civ. P. 24(a)(2)) (citations omitted).   In addition to establishing its qualification for intervention under Rule 24(a)(2), a party seeking to intervene as of right must demonstrate that it has standing under Article III of the Constitution.[2]

1.     **Proposed Intervenors' Motion is Timely**

*See* discussion *supra* § C.

2.     **Intervenors Have Direct, Substantial, and Legally Protectable Interests**

---

2  It should be noted that the Supreme Court has strongly suggested that an intervenor need not have an independent Article III controversy with the plaintiff simply in order to intervene and participate in litigation in support of a party such as Defendant Attorney General Gonzales, so long as there is a live controversy between the named parties and the named defendant remains engaged in the action.   *See Diamond v. Charles*, 476 U.S. 54, 62-64 (1986).

The standard to determine the sufficiency of intervenors' interest is not stringent, and it "is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Cook v. Boorstin*, 763 F.2d 1462, 1466 (D.C. Cir. 1985) (internal citations omitted). Indeed, Proposed Louis Intervenors have direct, substantial, and legally protectable interests in this action. Proposed Louis Intervenors seek to retain the protections against discriminatory voting changes that they enjoy through the prophylactic Section 5 preclearance process, to ensure that this Court appropriately interprets and applies the standards governing the Section 4(a) bailout process, and also to ensure that, should the court reach the issue, the constitutionality of Section 5 is upheld.

Proposed Louis Intervenors have a direct interest in ensuring that the Section 4(a) bailout provision and Section 5 preclearance provision are interpreted in a way that does not undermine the incentive for compliance with constitutional guarantees of the right to vote, and that promotes the provisions' deterrence aspects. In addition, Proposed Louis Intervenors have an interest in ensuring that Section 5 of the VRA is upheld. The statute guards against dangers to constitutional guarantees that Congress recently examined in great detail over a period of many months, and specifically against the type of practices that are still in evidence in Texas. *LULAC v. Perry* (noting that features of a challenged Texas state redistricting plan "bear[] the mark of intentional discrimination that could give rise to an equal protection violation" and recognizing persistent levels of racially polarized voting throughout state). With respect to Plaintiff's constitutional challenge, Proposed Louis Intervenors seek to ensure that this Court's analysis of Plaintiff's claims takes into account the relevant history of voting discrimination against African American and other minority voters and the extensive evidence of this discrimination that was

14

compiled by Congress during the recent hearings preceding the reauthorization of Section 5 of the VRA. The experience and perspective of Proposed Louis Intervenors is relevant to this Court.

Courts have held that in those cases involving constitutional challenges to a particular statutory scheme, "the interests of those who are governed by those schemes are sufficient to support intervention." *Chiles v. Thornburg,* 865 F.2d 1197, 1214 (11th Cir. 1989) (*quoting* 7C Charles Alan Wright, Arthur Miller and Mary Kay Kane, *Federal Practice and Procedure §* 1908, at 285 (2d ed.1986)). Thus, for all of the reasons identified above, Proposed Louis Intervenors have a cognizable interest in this action as the issues presented bear directly on their federally protected voting rights.

3.     **Proposed Louis Intervenors' Interests May Be Impaired By The Disposition Of The Litigation**

The disposition of this action will depend, among other things, upon whether this Court finds that the Northwest Austin Municipal District is eligible for bailout under Section 4(a) of the VRA; if so, whether or not Plaintiff satisfies the requirements for bailout; and if not, whether or not Section 5 is unconstitutional. All three of these questions have a substantial impact on Proposed Louis Intervenors' voting rights.

This bailout action, the first test since the recent renewal of the expiring provisions of the VRA, could have far reaching implications on future bailout matters, as well as upon any future constitutional challenges.[3] African-American voters, whose voting rights are tied to continued

---

3  The first tests of the VRA after initial passage are seminal case that have been cited by Courts in virtually eevery constitutional challenge to the Act and in other civil rights cases. *See e.g., South Carolina v Katzenbach,* 383 U.S.

enforcement of the VRA's provisions, should be permitted to intervene so that they will not be subject to the uncertainties associated with whether, and how, the United States and its agencies will present arguments interpreting the VRA's § 4(a) bailout provision and how vigorously the United States will defend the constitutionality of Section 5.

4. **Intervenors' Interests May Not Be Adequately Represented By The Present Parties**

Because Proposed Louis Intervenors have significant protectable interests that may be impaired by the disposition of this litigation, they have the right to intervene as long as their interests *may* not be "adequately represented by the existing parties." Fed. R. Civ. P. 24(a)(2) (emphasis added). Proposed Louis Intervenors's burden on this point is not onerous, and is satisfied by a showing that the representation of their interests by the present parties *may* be inadequate. *See Dimond v. District of Columbia,* 792 F. 2d 179, 192 (D.C. Cir. 1986) (emphasis added); *see also Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972) (showing burden should be treated as minimal); *accord Natural Resources Defense Council v. Costle*, 561 F.2d 904, 911 (D.C. Cir. 1977); *see also State of Georgia v. John Ashcroft, et. al.*, 195 F. Supp. 2d 25 (D.D.C. 2002) (where three-judge panel in state redistricting declaratory judgment action granted intervention pursuant to African-American voters pursuant to Fed. R. Civ. Proc. 26(a)(2)). Proposed Louis Intervenors easily meet that burden here.

The interests of Proposed Louis Intervenors may not be adequately protected by the existing Defendant Attorney General Gonzales. The Defendant simply does not have the same stake as do Proposed Louis Intervenors, the intended beneficiaries of the VRA, whose voting rights could be adversely impacted by a negative ruling in this matter. Further, courts --

---

301 (1966).

recognizing that the government must necessarily address the needs of diverse, and sometimes conflicting, groups of citizens -- have frequently found that the United States and other governmental entities cannot, within the meaning of Rule 24(a)(2), adequately represent the interests of a particular subset of the general public.  In particular, the District of Columbia Circuit has often recognized that government agencies are an inadequate representative of the interests of private parties.  *See, e.g.*, *People for the Ethical Treatment of Animals v. Babbitt*, 151 F.R.D. 6 (D.D.C. 1993); *Natural Resources Defense Council v. Costle*, 561 F.2d at 912 n.41; *Nuesse v. Camp*, 385 F.2d at 702-04 ; *Gen. Tel. Co. of the Northwest, Inc. v. EEOC*, 446 U.S. 318, 331 (1980) (granting individual aggrieved party's motion to intervene in order to protect their personal interests, which may at times be in conflict with those of the EEOC); *accord Dimond v. District of Columbia*, 792 F.2d at 192 (private party seeking to protect its financial interest allowed to intervene despite presence of government which represented general public interest); *Natural Resources Defense Council, Inc. v. United States Environmental Protection Agency*, 99 F.R.D. 607, 610 n.5 (D.D.C. 1983) (pesticide manufacturers allowed to intervene because even though both EPA and intervenors wanted to uphold regulations, their interest cannot always be expected to coincide -- recognizing that "EPA represents the public interest not solely that of the . . . industry"); *In re Sierra Club*, 945 F.2d 776, 780 (4th Cir. 1991) (state "cannot be an adequate representative of environmental groups"); *New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York*, 516 F.2d 350, 352 (2d Cir. 1975) (pharmacists allowed to intervene in challenge by consumer group to enjoin the Regents' enforcement of statewide regulation because "there is a likelihood that the pharmacists will make a more vigorous presentation of the economic side of the argument than would the

17

Regents"); *Associated General Contractors of Connecticut, Inc. v. City of New Haven*, 130

F.R.D. 4, 11 (D.Conn. 1990) (minority contractors allowed to intervene in challenge to minority

set-aside program because it was "sufficiently shown that as a minority contractor, its interest in

the set-aside is compelling economically and thus distinct from that of the City" also defending

the program).

      In *Trbovich v. United Mine Workers of America*, the United States Supreme Court

allowed intervention by a union member in an action brought by the Secretary of Labor even

though the Secretary was broadly charged with protecting the public interest.  The Court

reasoned that the Secretary of Labor protects not only the rights of individual union members but

also the public interest, two functions which "may not always dictate precisely the same

approach to the conduct of the litigation." *Id*. at 539.  Therefore, under the prevailing standard

set forth by the Court in *Trbovich*, the adequacy of representation requirement of Rule 24 is

satisfied by a mere showing that representation of one's interest 'may be' inadequate; and the

burden of making that showing should be treated as minimal. *Id*. at 538 n.10.

      Moreover, it is not unusual for federal agencies to adopt a mid-course revision it its

litigation strategy or theory of the case, or to abandon a prior institutional position altogether in

matters that implicate the nexus between civil rights and constitutional guarantees.  *See United

States v. New York City Bd. of Educ.*, No. 96-CV-0374 (FB)(RML) (E.D.N.Y. Sept. 11, 2006),

slip op. at 5, 31 (after bringing action challenging "three entry-level examinations that the Board

had administered, as well as the recruiting practices that it had used to publicize those exams,

[as] violat[ing] Title VII," United States entered into a Settlement Agreement "that awarded

employment benefits to a group of 59 individuals (the 'beneficiaries') composed of black,

18

Hispanic and Asian men and women, and non-minority females"; however, "[i]n April, 2002 . . . the United States decided that it would no longer defend the lawfulness of the Agreement's remedies for those beneficiaries who had not taken any of the challenged exams"); *Grutter v. Bollinger*, 539 U.S. 306 (2003) (despite role in prohibiting discrimination of the basis of race, color, or national origin, United States reversed course and took position opposing affirmative action program); *Bob Jones University v. United States*, 461 U.S. 574, n.9 (1983) (after the Court granted certiorari, the Government filed a motion to dismiss, informing the Court that the Department of Treasury intended to revoke a number of pertinent rulings and to recognize § 501(c)(3) exemptions for petitioners. However, the District of Columbia Circuit enjoined the Government from granting § 501(c)(3) tax-exempt status to any school that discriminates on the basis of race in *Wright v. Regan*, 656 F.2d 820 (D.C. Cir. Feb. 18, 1981) (*per curiam*)); *United States v. Hinds County School Bd.* (5th Cir.), *rev'd sub nom. Alexander v. Holmes County Bd. of Educ.*, 396 U.S. 19 (1969) (Secretary of HEW disowned HEW Title IV Center-drawn plans that had been submitted in consolidated school desegregation cases by delivering to the Fifth Circuit, "by safe-hand courier," a letter indicating that the government now believed the plans were in error and needed to be reconsidered leading to a resulting delay in integration efforts). This risk makes it difficult for the VRA's intended beneficiaries to rely exclusively on Defendant Attorney General Gonzales to both consistently and adequately defend their cognizable interests.

Proposed Louis Intervenors easily meet the "minimal" burden, *Trbovich*, of showing inadequacy of representation. The United States and private minority voters have often disagreed on the proper application of various provisions of the Voting Rights Act and have

19

diverged on the appropriate strategies for ensuring the protection of voting rights. In *Louisiana House of Representatives v. Ashcroft et. al*, (Civ. No. 02-62 D.D.C.), for example, Attorney General John Ashcroft opposed a declaratory judgment on grounds far more narrow than those advanced by Defendant Intervenors. In particular, there, intervenors argued that the redistricting plan at issue evidenced retrogression in four distinct areas of the state going well beyond the single district deemed to evidence retrogression within the meaning of Section 5 by Defendant Ashcroft. In *City of Lockhart v. United States*, 460 U.S. at 130, the minority intervenors presented the sole argument in the Supreme Court on behalf of the appellees while the United States stood in support of the appellants. In *Blanding v. DuBose*, 454 U.S. 393, 398 (1982), the minority plaintiffs, but not the United States, appealed and prevailed in a voting rights suit in the Supreme Court. In *County Council of Sumter County v. U.S.*, 555 F. Supp. at 696, the United States and African-American intervenors took conflicting positions regarding the application of Section 2 in the Section 5 preclearance process. In *Miller v. Brooks*, 158 F.3d 1230, 1233 (11th Cir. 1998), both minority plaintiffs and the United States filed similar actions challenging Georgia's adoption of a statewide majority-vote requirement. Although the cases were consolidated, the United States unilaterally dismissed its action prior to trial. In *Young v. Fordice*, 520 U.S. 273, 281 (1997), the United States opted not to appeal a lower court's adverse ruling, leaving only the private plaintiffs to appeal to the U.S. Supreme Court and win reversal. When this experience is viewed through the lens of the statutory intervention requirement that such motions be made in timely fashion, a denial of intervention now could prejudice the rights of intended beneficiaries of the VRA to defend a seminal piece of civil rights legislation all the way through any appellate review.

Minority voters who reside within the area that lies at the heart of Plaintiff's Complaint inevitably bring to litigation a "[l]ocal perspective on the current and historical facts at issue" which could not otherwise be presented and which could benefit the court's understanding of the claims. *See Sandusky County Democratic Party v. Blackwell*, 387 F.3d 565 (6th Cir. 2004) (granting individual voters' motion to intevene in HAVA suit); *Commack Self-Service Kosher Meats, Inc. v. Rubin,* 170 F.R.D. 93 (E.D.N.Y. 1996) (noting that intervenors would bring a different perspective to case that might assist court, and intervention came early in the action); *Fiandaca v. Cunningham*, 827 F.2d 825, 835 (1st Cir. 1987) (likelihood that applicants would introduce additional evidence favors intervention). While Defendant Attorney General Gonzales's obligation is to represent the broad interests of the United States, Proposed Louis Intervenors are concerned specifically with the interests of African-American voters. Although Defendant Gonzales would likely take these concerns into account as his Answer suggests, the cases cited above make clear that the interests of intended beneficiaries and the agencies responsible for administering the statutes designed to protect them are not coextensive and this divergence often affects the course of litigation.

As Proposed Louis Intervenors have demonstrated above, even if Defendant Attorney General Gonzales appropriately interprets Section 4(a) bailout provision and aggressively defends the constitutionality of Section 5, the effort to represent Proposed Louis Intervenors' distinct interests "may", nevertheless, ultimately prove inadequate. Indeed, "interests need not be wholly 'adverse' before there is a basis for concluding that existing representation of a 'different' interest may be inadequate." *Nuesse v. Camp*, 385 F.2d at 703; *Nash v. Blunt,* 140 F.R.D. 400, 402 (W.D. Mo. 1992) ("it is normal practice in reapportionment controversies to

allow intervention of voters . . . supporting a position that could theoretically be adequately represented by public officials"), *aff'd mem. sub nom. African American Voting Rights Legal Defense Fund, Inc. v. Blunt,* 507 U.S. 1015 (1993). For all of the reasons stated above, the Proposed Louis Intervenors have made a sufficient showing that the existing Defendant "may" not be adequate representatives of their interests.

5.       **Proposed Louis Intervenors Satisfy the Requirements of Article III Standing**

Because Proposed Louis Intervenors seek to participate on "an equal footing with the original parties to the suit" they must satisfy the standing requirements imposed on all parties. *City of Cleveland v. NRC,* 17 F.3d 1515, 1517 (D.C. Cir. 1994). As set forth above, Proposed Louis Intervenors indeed have a concrete and cognizable interest in this litigation that, under circuit precedent, satisfies Article III's demands. *Cf. S. Christian Leadership Conference v. Kelley*, 747 F.2d 777, 779 (D.C. Cir. 1984) (stating that Article III's "gloss" on Rule 24 requires an intervenor to have a "legally protectable" interest). *See also Military Toxics Project v. EPA*, 146 F.3d 948, 953 (D.C.Cir.1998); *Mova Pharm.*, 140 F.3d at 1074; *Building & Constr. Trades Dep't v. Reich,* 40 F.3d 1275, 1282 (D.C. Cir. 1994); *Rio Grande Pipeline Co. v. FERC*, 178 F.3d 533, 539-40 (D.C. Cir. 1999) (*quoting City of Cleveland v. NRC,* 17 F.3d 1515, 1517 (D.C. Cir. 1994) (per curiam)). Proposed Louis Intervenors clearly suffer from an imminent threat to their federally protected voting rights that is the direct and proximate result of the form of Plaintiff's bailout request and their constitutional challenge to Section 5. A favorable ruling from this court denying Plaintiff's requested relief would remedy this injury. Proposed Louis Intervenors thus have standing to participate in this suit.

As the Rule's plain text indicates, intervenors of right need only an "interest" in the litigation-not a "cause of action" or "permission to sue." See Fed. R. Civ. P. 24(a)(2). *See also Trbovich* (Court permitted a union member to intervene in a suit brought by the Secretary of Labor even though the applicable federal statute expressly prohibited union members from initiating such actions on their own). *Id*. at 531-32 (*citing* 29 U.S.C. § 483). Here, Proposed Louis Intervenors not only have a statutorily conferred right to intervene but also satisfy the requirements to intervene as of right pursuant to Rule 24(a)(2).

**F.      In the Alternative, Permissive Intervention is aAppropriate in this Case**

Rule 24(b) of the Federal Rules of Civil Procedure provides an alternative basis for the Proposed Louis Intervenors' intervention in this action. Rule 24(b) provides that permissive intervention may be granted "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). When assessing a motion for permissive intervention, the primary consideration is "whether the intervention will unduly delay or prejudice the existing parties." *Commack Self-Service Kosher Meats,* 170 F.R.D. at 106. Courts do not interpret this provision strictly. *Nuesse*, 385 F.2d at 704. The decision to allow permissive intervention is within the discretion of the court, and the court is to consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties. Fed. R. Civ. P. 24(b)(2). *Huron Envt'l. Activist League v. United States Envt'l. Protection Agency,* 917 F. Supp. 34, 43 (D.D.C. 1996) (permissive intervention was granted where plaintiffs' claims have both questions of law and fact in common with the main action and the court concluded that the intervention would not unduly delay the adjudication of the rights of the original parties).

Here, given the unique perspective of Proposed Louis Intervenors with respect to the experience of minority voters, their intervention in this matter would very likely aid or enhance the Court's understanding of the underlying legal and factual issues and, thereby, assist in the efficient resolution of this action.  As a result, there will be commonality between the questions of law and fact presented in the Complaint, and the claims and defenses presented by the Proposed Louis Intervenors.  In addition, intervention will not delay the litigation, as the action has just commenced and no scheduling, discovery conferences have been set nor any motions filed, and Proposed Louis Intervenors have averred that they will participate on the same schedule that will be established for the existing parties.  Taken together, these considerations plainly demonstrate the propriety of the Proposed Louis Intervenors' permissive intervention request.   This Court should, therefore, grant the Proposed Louis Intervenors' alternative request for permissive intervention in the event that the Court declines to grant intervention as of right.