IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NORTHWEST AUSTIN MUNICIPAL UTILITY DISTRICT NUMBER ONE, | § § § | |
| *Plaintiff*, | § § | |
| vs. | § § | Civil Action No. 1:06cv1384 |
| ALBERTO GONZALES, ATTORNEY GENERAL OF THE UNITED STATES, | § § § | Three-judge court (PLF, DST, EGS) |
| *Defendant*, | § § § | |
| TRAVIS COUNTY, TEXAS 314 W. 11th Street Austin, Texas 78701 | § § § § | |
| *Applicant to Intervene*. | § § § | |

**TRAVIS COUNTY'S MOTION TO INTERVENE AS DEFENDANT, WITH SUPPORTING POINTS AND AUTHORITIES**

Under Federal Rule of Civil Procedure 24 and Local Rule 7(j), Travis County, Texas, a political subdivision of the State of Texas, moves to intervene as a defendant in the above-referenced action.

## I. INTRODUCTION

### A. The County seeks intervention of right and permissively to oppose both of the MUD's claims for relief.

The plaintiff , the Northwest Austin Municipal Utility District Number One ("NW Austin MUD" or, simply, "MUD"), seeks either a bailout (under Section 4 of the Voting Rights Act) from the preclearance requirements of Section 5 of the Voting Rights Act or, if bailout is not forthcoming, a declaration that Section 5 is unconstitutional. Travis County, within whose boundaries the MUD lies in its entirety, opposes both forms of

relief that the MUD seeks.  The County moves here for intervention of right or, alternatively, permissive intervention to oppose the MUD's legal effort.

**B.     The County, not the MUD, has the key responsibilities that are involved in this lawsuit.**

The County is in a unique – in fact, a *critically* unique – position in terms of the issues raised in the MUD's lawsuit.

- The County conducts all elections for the NW Austin MUD.[1]

- Because counties are the unit of Texas government responsible for registering voters for national, state, and local elections, *see* TEX. ELEC. CODE §§ 12.001, 13.002(a), Travis County is responsible for registering all the voters in the NW Austin MUD, even if those voters choose to vote only in MUD elections.

- Because counties are the political subdivisions responsible under Texas law for registering voters, Travis County is the *only* local political subdivision lying within Travis County[2] with authority under Section 4 of the Voting Rights Act to file a lawsuit with this Court seeking a bailout from the requirements of Section 5.

- The County itself must comply with Section 5 of the Voting Rights Act with respect to its many electoral responsibilities and activities.

**C.     The County is not seeking a bailout from Section 5 Voting Rights Act coverage and, indeed, supports the continued existence of Section 5.**

In addition to conducting elections for its own offices and for NW Austin MUD board seats, the County is responsible for conducting elections for *over one hundred*

---

[1] The contractual agreement between the County and the NW Austin MUD is detailed in the "Election Agreement Between Travis County and Northwest Austin Municipal Utility District No. 1," dated March 8, 2006.  Rather than burdening the Court's record at this point with numerous exhibits and declarations that substantiate the factual statements in this intervention motion's text, the County relies on the well-established principle that "[a]ll nonconclusory allegations supporting a motion to intervene are taken as true, absent sham, frivolity, or other objections."  *See Central States, Southeast and Southwest Areas Health and Welfare Fund v. Old Security Life Insurance Co.*, 600 F.2d 671, 679 (7th Cir. 1979); *see also Cook v. Boorstin*, 763 F.2d 1462, 1470 (D.C. Cir. 1985) (quoting principle favorably).

[2] The State of Texas also has authority to seek bailout under Section 4.

*other political subdivisions* in the County.   The continued existence of Section 5's preclearance requirements carries with it valuable educational and deterrent effects that aid the County officials – primarily, the Travis County Clerk and the Travis County Tax Assessor Collector – in administering their many electoral duties for the many political subdivisions in the County.   The preclearance requirement, the substantive standards that must be surmounted in order to satisfy it, and the threat of disruption if the Section 5 rules are not meticulously observed all play a continuing, valuable role in helping to ensure that minority voters in the County are afforded full and equal access to the electoral system for every government entity in the area.   While there admittedly are administrative costs associated with Section 5 compliance, those costs currently are outweighed by the valuable benefits to the County and its voters that come with the continued existence and application of Section 5.

Furthermore, the standards for bailout under Section 4 are detailed, and determining whether the facts on the ground are sufficient to satisfy the bailout rules requires careful and thoughtful examination.   The time may come when the County is comfortable that the facts warrant seeking bailout from Section 5, but, given the detailed investigation that would be required and the large of number of jurisdictions whose circumstances would have to be evaluated, not to mention the current value of Section 5, that time is not yet here, as far as Travis County is concerned.   It is not for the NW Austin MUD – an entity that does not even conduct its own elections – to unilaterally usurp the County's decisionmaking authority on when and whether bailout might be advisable. Nor should the MUD be enabled to seek elimination, over the County's objection, of a major current-day bulwark of American democracy – Section 5 of the Voting Rights Act.

The Supreme Court of Texas has described special water districts of a category akin to the NW Austin MUD as "low down in the scale or grade of corporate existence," *Tri-City Fresh Water Supply Dist. No. 2 of Harris County v. Mann*, 142 Tex. 280, 285, 142 S.W.2d 945, 948 (1940), and has warned about the private nature of "small conservation and reclamation districts ... often organized primarily for private purposes," *Brazos River Conservation and Reclamation Dist. v. McCraw*, 126 Tex. 505, 506, 91 S.W.2d 665, 670 (1936). An entity such as this has no business being the vehicle for such a major disruption of such a major federal law.[3]

For these reasons, the County opposes the MUD's litigation efforts here and seeks intervention to protect vital County interests.

## II.    TRAVIS COUNTY IS ENTITLED TO INTERVENE AS A MATTER OF RIGHT.

Under FED. R. CIV. PROC. 24(a)(1), a party may intervene of right when a federal statute confers an "unconditional right to intervene." Under FED. R. CIV. PROC. 24(a)(2), a party has an alternative avenue for intervening of right if the putative intervenor claims an interest relating to the matter that is the subject of the action and is so situated that disposition of the action may, as a practical matter, impair or impede the movant's ability to protect that interest (unless the applicant's interest already is adequately represented). Travis County satisfies both these alternative ways of qualifying to intervene of right.

---

[3] The authority of these kinds of special purpose local governmental entities is severely circumscribed under state law. *See, e.g., Tri-City, supra,* 142 S.W.2d at 946-47 (local water conservation districts have only such powers as are clearly granted by the legislature and necessarily implied to effectuate the express powers). Under this standard, there remains a significant question whether the NW Austin MUD even has state law authority to seek either bailout or a declaration of Section 5's unconstitutionality.

### A.     Section 4 of the Voting Rights Act confers on the County an unconditional right to intervene.

Under Section 4 of the Voting Rights Act, 42 U.S.C. § 1973b, the only parties authorized to seek bailout from Section 5 of the Act, 42 U.S.C. § 1973c, are:  (i) a covered state; or (ii) a political subdivision that is authorized to register voters.  The NW Austin MUD falls into neither category, and, hence, is not authorized to seek bailout. The County falls into the latter category and, hence, *is* authorized to seek bailout.  The MUD lies entirely within the boundaries of Travis County.  Thus, its suit to obtain bailout is an effort to displace the County as the sole local governmental authority for making the determination whether to initiate a bailout effort and, if so, when and how to press it.

In the last sentence of 42 U.S.C. § 1973b(a)(4), Congress expressly authorizes "[a]ny aggrieved party" to intervene "of right" in a bailout action.  There is no condition attached to this statutory intervention right, and, in parallel circumstances, the courts have construed statutory rights of intervention for "aggrieved persons" as falling within the purview of Rule 24(a)(1).  *See, e.g., United States v. Presidio Investments*, 4 F.3d 805, 808 n.1 (9th Cir. 1993) (construing 42 U.S.C. § 3612(o)(2)).

The only remaining question, therefore, is whether the County in the circumstances of this case is an "aggrieved party."  When one party has federal statutory responsibility for initiating a particular action, and another party seeks to judicially usurp that authority, the statutory rights of the party whose duties are being usurped are being invaded.  And, the party whose statutory sphere of rights and duties is invaded is surely "aggrieved" by the other party's actions.

In fact, case law suggests that, to come within the definition of an "aggrieved party," a party needs only to establish Article III standing.  *See, e.g., Trafficante v. Metro.*

*Life Ins. Co.*, 409 U.S. 205, 209 (1972).  Further, this Circuit requires a putative intervenor to satisfy Article III standing requirements.  *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 732-33 (D.C. Cir. 2003).  The County satisfies such requirements.[4] It is injured in fact by the MUD's effort to displace it as the local governmental authority for making determinations concerning bailout from Section 5 coverage.  The MUD's efforts are the direct cause of this injury.  And, finally, this Court can redress the injury through a judicial decree consistent with the legal arguments that the County makes here.

Given the foregoing, Travis County should be allowed to intervene of right under Rule 24(a)(1).

**B.    The County has a right to intervene under Rule 24(a)(2).**

Four factors must be considered in determining whether intervention of right is appropriate under Rule 24(a)(2), the alternative intervention of right provision:  (i) the timeliness of the motion; (ii) whether the applicant "claims an interest relating to the ... transaction which is the subject of the action"; (iii) whether the applicant is in a position such that disposition of the action may "as a practical matter" impair or impede its ability to protect that interest; and (iv) whether the applicant's interest is adequately represented by existing parties.  *Fund for Animals, supra*, 322 F.3d at 731.  Application of the four factors here supports the County's intervention.

**1.    Timeliness**

Measuring timeliness of an intervention effort requires as a first step determining when the putative intervenor knew or should have known its rights might be directly affected by the litigation.  *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 223 (D.C.

---

[4] The essential Article III standing prerequisites are:  (i) injury in fact; (ii) causation; and (iii) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Cir. 2003), *cert. denied*, 542 U.S. 915 (2004).  This lawsuit was filed about three months ago, in August.  It was filed, as the Voting Rights Act requires, in the District of Columbia, not in Travis County, the local area most directly affected by the litigation. Moreover, the litigation, filed as it was by a comparatively small, low-profile entity such as the MUD, received little to no local publicity.  It took at least a couple of months for local elected County officials to even become aware of the litigation's existence.  Once some County officials became aware of the litigation, it then took more time for the primary governing body for the County – the five-member Travis County Commissioners Court – to, first, be advised of the litigation's existence and import and then, second, to take formal action within the framework of the state's open government requirements on retaining legal representation and determining whether to formally seek party status in the case.[5]

To date, the Court has not taken any substantive steps in the litigation, beyond the designation of a three-judge court.  Moreover, the current parties also have not taken any substantive steps that would have to be re-traced were the County's intervention granted. Instead, the parties and the Court are in the midst of sorting through the various intervention motions, all of which are still pending with the Court.

Under these circumstances – and with the County's clear understanding that it will be bound to the same schedule as the other parties who are afforded party status – no disruption would flow from granting party status to the County, which has acted with reasonable alacrity in seeking to protect its interests through this intervention effort.

---

[5] The formal, unanimous vote of the Travis County Commissioners Court to seek intervention in this lawsuit occurred on October 31st.

## 2.    Protectable interest in the subject matter of the litigation

Intervention determinations under Rule 24(a)(2) should consider the litigation's implications for those who are "practically disadvantaged" by its potential outcomes. Wright, Miller & Kane, *Federal Practice & Procedure: Civil 2d* § 1908, at 301 (1986); *see also Nuesse v. Camp*, 385 F.2d 694, 700 (D.C. Cir. 1967) (Rule 24(a)(2) serves as a "practical guide" to disposition of suits by involving within reason those who are concerned). The leading commentary on federal court practice explains that, in cases challenging the constitutionality of statutory schemes, courts recognize that the interests of those governed by the scheme suffice to support intervention. Wright, Miller & Kane, *Federal Practice & Procedure: Civil 2d* § 1908, at 285 (1986).

Under these standards, it follows that the County's interests are significantly implicated by the MUD's efforts to seek either bailout or an invalidation of the entire preclearance scheme of the Voting Rights Act. The County's responsibility as the only local political subdivision which can seek bailout, and, further, as the pivot point for voter registration which benefits from the continued existence and application of Section 5's preclearance rules would be undermined were the MUD successful in its lawsuit.[6]

In *Nuesse v. Camp, supra*, this Court allowed a state to intervene of right because the litigation (by a local bank against the United States) concerned a statute whose construction by the courts implicated state interests, even though some of those interests might overlap to some degree with other parties' interests. The Court determined it notable in this regard that Congress had been historically deferential to state's interests

---

[6] These interests are independent of any *parens patriae* power and interest the County might assert on behalf of the many minority (and other) voters in the County whose interests, too, may be significantly affected by this lawsuit. The County is not relying on any such *parens patriae* powers to assert its right to intervene.

and tried to take them into account in connection with the federal legislation.  *Id.*, 385 F.2d at 703.  Other appellate courts have authorized local governments to intervene of right in litigation which might alter their relationship with the federal government, either monetarily (in terms of revenue flow) or otherwise.[7]

Travis County in this case is so situated that its particularly strong interest in ensuring that the electoral system for itself and the more than a hundred other political subdivisions for which it conducts elections is directly threatened by the NW MUD's maverick effort to undo Voting Rights Act protections, not only for the MUD's own voters, but for all voters in the County.  Thus, the second factor concerning a legally protectable interest is satisfied.

### 3.    County's interests may be implicated as a "practical matter"

The foregoing discussion – in Part II.B.2 – canvasses the practical implications this litigation might have for Travis County in terms of its responsibilities for the many electoral systems for which it carries responsibilities.  Granting a bailout to the MUD (or not)[8] would usurp the County's statutory authority under Section 4 of the Voting Rights Act.  And, declaring Section 5 unconstitutional would have major practical implications for the County in the way it administers all aspects of its electoral duties.  This factor easily favors the County's intervention.

---

[7] *See, e.g., Kleissler v. United States Forest Service*, 157 F.3d 964, 972-73 (3d Cir. 1998) (approving intervention by local school districts and municipalities whose revenues could be affected by litigation); *Mille Lacs Band of Chippewa Indians v. Minnesota*, 989 F.2d 994, 1001 (8th Cir. 1993) (counties allowed intervention; their interests *not* subsumed by state's involvement).

[8] Were the Court to allow the MUD's bailout effort to go forward, and in the event there were a judicial determination that there had in fact been violations of minority voting rights by the MUD, the County would be stymied for the next ten years even if it decided to seek a bailout in the future.  42 U.S.C. § 1973b(a)(1) (B).

4.    **The federal government is not an adequate representative of the County's interests in this matter.**

This fourth factor imposes only a minimal burden on the County for establishing that existing parties do not adequately represent its interests. *See Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972). The representation of the NW Austin MUD obviously is not adequate to represent the County's interests here. The question, then, is whether the United States Attorney General's representation suffices to protect the County's interests. No denigration of the Attorney General's representation is intended, implied, or necessarily implicated in the conclusion that his representation is not adequate to protect the special interests of Travis County in this case.

The United States Department of Justice is in the role of overseer of sorts to the County. That is, in the common situation in which administrative preclearance of electoral changes is the route taken (instead of judicial preclearance), the County must turn to DOJ for approval. The County must prepare and submit the proposed electoral changes, along with supporting material to show that there would be no retrogression with respect to minority voting rights, to DOJ for review. While the process has historically run smoothly as between these particular two levels of government, it nonetheless is plain that DOJ's interests in electoral issues do not precisely coincide with the County's. In a sense, the County is caught between DOJ and the local MUD.

The situation's implication for this case is that the federal government necessarily comes at the issues in this case from a completely different perspective than the County. One party (DOJ) comes at the issues as an enforcer of the Act at issue. The County, by contrast, is an administrator of the details of the Act at the local level, as well as a beneficiary of its salutary effects in terms of deterrence and aspirational benefits.

Therefore, the Court should conclude that, however vigorous the Attorney General may be in defense of the Voting Rights Act in this case, its defense does not implicate the full range of interests the County seeks to protect.

**III.   ALTERNATIVELY, THE COURT SHOULD GRANT THE COUNTY PERMISSIVE INTERVENTION.**

Under FED. R. CIV. PROC. 24(b)(2), the Court may exercise its discretion to grant intervention if the application is timely and the applicant's claim or defense and the main action have a question of law or fact in common.  Such permissive intervention is warranted especially in situations where those seeking intervention may help contribute special perspectives and insights to aid in the proper development of the factual issues in the litigation.  *See, e.g., Johnson v. Mortham*, 915 F.Supp. 1529, 1538-39 (N.D. Fla. 1995).

The County's defense in this lawsuit, as addressed earlier in the text of this motion, will add the special perspective of the entity with the principal electoral responsibilities in the geographic area encompassing the MUD.  No other party, or even putative intervenor, occupies a position equivalent to the County's in this case.  It has an intimate familiarity with electoral activities and the wide range of voter involvement in the area.  It has the special perspective of the principal administrator of voter registration and elections in the area.  And, it has long played the special role of the local governmental body which must ensure that its local electoral changes (when they happen) satisfy the Department of Justice and its understandings of Section 5 of the Voting Rights Act.[9]

---

[9] Additionally, the County has been actively involved in Voting Rights Act and redistricting litigation, most recently as a party opposing the state's congressional redistricting actions in *LULAC v.Perry*, 126 S.Ct. 2594 (2006).

Therefore, even were the Court to reject the County's two arguments that it be allowed to intervene of right, the Court should exercise its discretion to allow Travis County to intervene permissively.  This Court would greatly benefit from the evidence added by the County's special and unique perspective on this issues in this case.

### CONCLUSION

The Court should grant Travis County intervention as a party-defendant in this lawsuit,[10] preferably as of right, but, alternatively, by permission.

Respectfully submitted,

_/s/ Renea Hicks_____
Max Renea Hicks
Attorney at Law

1250 Norwood Tower
114 West 7th Street
Austin, Texas 78701
(512) 480-8231
fax:  (512) 480-9105
e-mail: rhicks@renea-hicks.com

_/s/ J. Gerald Hebert_____
J. GERALD HEBERT
Attorney at Law
5019 Waple Lane
Alexandria, VA 22304
(703) 567-5873 (O)
(703) 567-5876 (fax)
DC Bar No. 447676
e-mail: jghebert@comcast.net

ATTORNEYS FOR TRAVIS COUNTY

---

[10] The County's Answer to the MUD's Complaint is submitted simultaneously with this motion.

CERTIFICATE OF CONFERENCE

I certify that, on November 1, 2006, I conferred by e-mail with Gregory S. Coleman, counsel for Plaintiff, and T. Christian Herren, Jr., Counsel for Defendant, on the position of their respective clients with respect to this motion to intervene by the County. Mr. Coleman informed me that his client would oppose the motion. Mr. Herren informed me that his client has not yet formulated a position on the motion and would defer doing so until receipt of it once it is filed.

_/s/ Renea Hicks_____
Max Renea Hicks


CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of November, 2006, a copy of the foregoing pleading was e-mailed to the Clerk of the Court at dcd_cmecf@dcd.uscourts.gov. The electronic filing constitutes service of the filing to all counsel of record in this case who have obtained CM/ECF passwords. I also certify that on this 5th day of November, 2006, I copy of the foregoing pleading was served through e-mail on the following:

Gregory S. Coleman
Christian T. Ward
Weil, Gotshal, & Manges LLP
8911 Capital of Texas Highway
Suite 1350
Austin, Texas 78756
greg.coleman@weil.com
chris.ward@weil.com


_/s/ J. Gerald Hebert_____
J. Gerald Hebert