**IN UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THE NORTHWEST AUSTIN MUNICIPAL UTILITY DISTRICT NUMBER ONE<br><br>     Plaintiff,<br>  v.<br><br>ALBERTO GONZALES, in his official capacity as Attorney General of the United States of America<br><br>     Defendant,<br><br>RODNEY LOUIS, ET AL.<br><br>     Applicants  for Intervention. | Civil Action No. 1:06-CV-01384<br>(PF, ES, DT) |

**CONSOLIDATED REPLY BRIEF IN SUPPORT OF LOUIS INTERVENORS'
MOTION TO INTERVENE**

**TABLE OF AUTHORITIES**

**CASES**

*Allen v. State Bd. of Elections,*
   393 U.S. 544 (1969)……………………………………………………………….8

*American Horse Prot. Ass'n., Inc. v. Veneman,*
   200 F.R.D. 153 (D. D.C. 2001)……………………………………………....……5

*\*Apache Country v. United States,*
   256 F. Supp. 903 (D. D.C. 1966)……………………………………………………9

*Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.,*
   331 U.S. 519 (1947)………………………………………………………………...12

*Diamond v. Charles,*
   476 U.S. 54 (1986)………………………………………………………………...7

*Dimond v. District of Columbia,*
   792 F.2d 179 (D.C. Cir. 1986)…………………………………………………...10

*EEOC v. Nat'l Children's Ctr., Inc.,*
   146 F.3d. 1042 (D.C. Cir. 1995)………………………………………………....…11

*\*Fund for Animals v. Norton,*
   322 F.2d 728 (D.C. Cir. 2003)……………………………………………4, 5, 6

*Georgia v. Ashcroft,*
   539 U.S. 461 (2003)………………………………………………………….4, 7

*\*In re Vitamins Antitrust Class Actions*
   215 F.3d 26 (D.C. Cir. 2000)……………………………………………………11

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555 (1992)………………………………………………………….....…6

*\*McConnell v. FEC*
   2004 U.S. Dist. LEXIS 22469 (D.C. Cir. 2004)…………………………5, 6, 10

*Natural Res. Def. Council v. Costle,*
   561 F.2d 904 (D.C. Cir. 1977)……………………………………….…….….4

*\*Nuesse v. Camp,*
   385 F.2d 694 (D.C. Cir. 1967)……………………………………....…5, 10

*Reno v. Bossier Parish Sch. Bd.,*
    528 U.S. 320 (2000)………………………………………………...……..7

*\*Trobovich v. United Mine Workers,*
    404 U.S. 528 (1972)…………………………………………………...…10

*United States v. Hays,*
    515 U.S. 737 (1995)……………………………………………………7, 8

*Wilderness Society v. Babbitt,*
    104 F. Supp. 2d 10 (D. D.C. 2000)…………………………..…………6

**STATUTES AND RULES**

42 U.S.C. §1973*b* (a)(4)……………………………………...……………………1, 3

FED. R. CIV. P. 24(a)(1)……………………………………………………1, 2, 3, 6

FED. R. CIV. P. 24(a)(2)…………………………………………….……...…..1,2, 6, 11

FED. R. CIV. P. 24(b)……………………………………………………...…11

FED. R. CIV. P. 24(b)(2)……………………………………………….......…1, 2, 11

"Voting Rights Act Amendments of 1982," PUB. L. NO. 97-205…………………...…9

**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| THE NORTHWEST AUSTIN MUNICIPAL UTILITY DISTRICT NUMBER ONE |
| Plaintiff, |
| v. |
| ALBERTO GONZALES, in his official capacity as Attorney General of the United States of America |
| Defendant, |
| RODNEY LOUIS, ET AL. |
| Applicants for Intervention. |

Civil Action No. 1:06-CV-01384
(PF, ES, DT)

**CONSOLIDATED REPLY BRIEF IN SUPPORT OF LOUIS INTERVENORS' MOTION TO INTERVENE**

Proposed Defendant-Intervenors, Rodney Louis and Nicole Louis, (collectively, "Louis Intervenors"), by their undersigned counsel, respectfully submit this consolidated reply to Plaintiff's and Defendant's Response to their motion to intervene. Plaintiff opposes Louis Intervenors' Motion arguing that they fail to satisfy the requirements for intervention as of right pursuant to Rule 24(a)(1), 24(a)(2) and 24(b)(2). Plaintiff seeks to downplay the significance of the unconditional right to intervene which the Louis Intervenors possess in this case. Instead, Plaintiff advances a cramped reading of the operative bailout provision, which ignores the importance of the 1982 amendment to Section 4(a)(4) of the Voting Rights Act ("VRA") that

---

1 *See* 42 U.S.C. 1973b.

1

was designed to allow people such as the Louis Intervenors to participate as parties in actions such as this.

In sharp contrast, and in recognition of both the purpose and application of the governing statutes, and the familiar practice in voting cases in this circuit, Defendant does not oppose the Louis Intervenors' Motion under Rules 24(a)(1) or 24(b)(2).   Defendant notes its opposition, however, to the request for intervention pursuant to Rule 24(a)(2) because the Attorney General unsurprisingly deems himself an adequate representative of the Louis Intervenors' interests.  The cases and recent experience, however, call even this seemingly modest assertion into question. Although Plaintiff seeks to conflate the applicable analysis, by giving short shrift to the unconditional right to intervene that the Louis Intervenors possess under the bailout provision, movant asserts three distinct bases for intervention in an action involving two separate claims. Moreover, while the legal standards for intervention are fairly well established in this circuit, the nature and posture of the claims and defenses also inform the inquiry.  Plaintiff's complaint does not arise in the context of a specific voting change -- the impact of which could be debated and weighed by affected parties -- but rather in the context of a statutory bailout and constitutional challenge to the VRA's Section 5 prophylactic protections.  Accordingly, the interests and possible remedies at issue are properly viewed through that lens. As Congress recognized when it renewed §§4 and 5 in 1982, it would be incongruous to allow jurisdictions to seek to remove themselves from coverage while the beneficiaries of the VRA are walled off from the proceedings. Congress altered the structure of the bailout provision to avoid this result.

As Louis Intervenors explain below, they are aggrieved individuals within the meaning of the governing statutes and cases, with a direct and substantial stake in this legal challenge,

2

who could stand to lose prophylactic protection of their right to vote if Plaintiff prevails on either

claim.  Moreover, the Louis  Intervenors are members of a class that Section 5 was designed to

protect, and whose interests Congress intended to recognize in Section 4(a)(4) of the VRA. *See*

42 U.S.C. 1973b.  The Louis Intervenors satisfy the prerequisites for intervention under

Rule 24(a)(1), (a)(2), and (b)(2), and intervention should be granted.

## I. ARGUMENT

### A.    The Louis Intervenors Satisfy the Requirements for Intervention as of Right Pursuant to Rule 24(a)

Federal Rule of Civil Procedure 24(a)(1), intervention as a matter of right, states that

"[u]pon timely application **anyone** shall be permitted to intervene in an action: (1) when a statute

of the United States confers an unconditional right to intervene."  Here, Section 4(a)(4) of the

VRA's bailout provisions provides that "any aggrieved party may as of right intervene at any

stage in such action."  *See* 42 U.S.C. 1973b.  The Louis Intervenors, African-American

registered voters in the Northwest Austin Municipal Utility District ("NAMUD"), are within the

class of persons that Section 4 was amended to recognize.

The essence of the grievance is that the judgment in this case could strip the Louis

Intervenors of substantial prophylactic protections designed for their benefit.  Plaintiff's

complaint seeks statutory bailout from Section 5's prophylactic protections, and asserts a

constitutional claim against Section 5 in the alternative.  Plaintiff does not complain of a

hardship with respect to any present voting change, and indeed has had relatively few during the

entire period of its Section 5 coverage.  Instead, the Plaintiff seeks to escape from coverage

generally and advances several general reasons why it should be relieved of its Section 5

obligations.  In support of its allegations Plaintiff alleges that Section 5 imposes unnecessary

3

burdens and  compliance costs on the NAMUD.  (Cplt. at  12).  In its opposition to the Louis Intervenors' Motion Plaintiff argues that Intervenors can address any future danger of voting discrimination by identifying counsel to file a complex and costly Section 2 lawsuit -- presumably after a voting change was already in effect.  (Pl. Mem. at 8, 10)

A judgment in favor of the Plaintiff would impair the Louis Intervenors' rights in three significant ways.  First, in contrast to Section 2, Section 5 places the burden of demonstrating that voting changes are free from retrogressive effect or discriminatory intent squarely upon the covered jurisdiction.  *See e.g. Georgia v. Ashcroft,* 539 U.S. 461, 493-94 (2003), *superceded by statute on other grounds,* Fannie Lou Hamer, Rosa Parks, and Coretta Scott King Voting Rights Act Reauthorization and Amendments Act of 2006, Pub. L. No. 109-246; 120 Stat. 577 (amending 42 U.S.C. §.1973)**.**  This burden shifting difference is not simply conjectural but real and potentially outcome determinative.  *Cf. Fund for Animals v. Norton,* 322 F.2d 728, 735 (D.C.Cir. 2003)("It is not enough to deny intervention under *24(a)(2)* because applicants may vindicate their interests in some later, albeit more burdensome, litigation." *quoting, Natural Res. Def. Council v. Costle,* 561 F2d. 904, 910 (D.C. Cir. 1977 )).

Second, Section 2 cases typically arise in the context of a challenge to statutes that are already in place, and thus already tangibly and at times adversely, affecting the rights of voters. In contrast, the Section 5 prophylaxis is effective, in part, precisely because it deters or blocks voting discrimination <u>before</u> it can adversely affect the voters right to participate fully in the political process.

Third, the judgment that Plaintiff seeks could be fairly characterized as a cost shifting remedy because whereas the NAMUD bears the cost of VRA compliance under the Section 5

4

status quo that cost would be entirely shifted to the Louis Intervenors, or to all those similarly situated minority voters within the NAMUD, if §5 coverage was stripped away from the minority residents of the NAMUD or Texas.

Accordingly, the impact of an adverse judgment in this case would clearly impair the rights of the Louis Intervenors. The impact of the future pecuniary and opportunity costs associated with the fundamental reconfiguration of VRA protections that Plaintiff seeks would visit the type of injury upon Louis Intervenors that is more than sufficient to satisfy the standing inquiry. Significantly, it is an injury that would be caused by an adverse judgment and would be redressed by the rejection of Plaintiff's claims. *See Fund for Animals,* 322 F.2d at 732-33 (setting forth a three-prong standing test for intervenors under Rule 24(a)(2), requiring injury-in-fact; causation, and redressabilty, and reversing denial of intervention as of right); *but see McConnell* v. *FEC,* 2004 U.S. Dist. LEXIS 22469, *7 (D.C. Cir. 2004)("To date, neither the Supreme Court nor the D.C. Circuit has specifically addressed whether an Article III standing analysis is appropriate in the *Rule 24(a)(1)* context as it is in the *Rule 24(a)(2)* context.") The Louis Intervenors seek intervention under a clear statutory grant, possess standing as beneficiaries of the statue at issue, could be harmed by an adverse ruling, and should receive the benefit of this circuit's liberal intervention standards. *See, e.g.*, *Nuesse v. Camp*, 385 F.2d 694, 702-04 (D.C. Cir. 1967) (recognizing need for liberal application of the rules permitting intervention as of right); *American Horse Prot. Ass'n., Inc. v. Veneman,* 200 F.R.D. 153, 157 (D.D.C. 2001) (noting the "liberal and forgiving" nature of the interest prong of the intervention as of right test); *Wilderness Society v. Babbitt*, 104 F.Supp.2d 10 (D.D.C. 2000) (recognizing D.C. Circuit's liberal approach to intervention.)

For the reasons expressed above the result is no different under Rule 24(a)(2).  The Louis Intervenors have pled a tangible interest in the outcome of this litigation, and an adverse disposition of the action would impair their rights.  *See McConnell*, 2004 U.S. Dist. LEXIS 22469 at *8-9 (examining standing of members of Congress in action involving campaign finance challenge under Rule 24(a)(1) and (a)(2), and finding threat of injury from possible invalidation of underlying statute sufficient); *cf. Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561 (1992) ("At the pleading stage, general factual allegations of injury … may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim.")

   1.   <u>The Authorities Relied Upon by Plaintiff Do Not Undermine the Louis Intervenors'</u>
<u>Intervention Motion</u>

The authorities relied upon by Plaintiff do not undermine the Louis Intervenors' Motion to Intervene. For example, the Plaintiff cites *Fund for Animals*, 322 F.3d at 732-33 merely for its articulation of the standing requirements. It is noteworthy that that case reversed the denial of a grant of intervention as of right where, as here, intervenors satisfied the statutory prerequisites. Indeed, the Rule 24(a)(1) arguments that the Louis Intervenors asserted in their Intervention Motion place them in a stronger position than the applicants in *Fund*.

The Plaintiff cites several cases to support its contention that the Louis Intervenors' interest in this litigation is not substantial or tangible enough to warrant a grant of intervention. However, these cases can be easily distinguished.  Plaintiff suggests that the Louis Intervenors' Motion to Intervene is little more than a "desire to vindicate value interests," *Diamond v. Charles*, 476 U.S. 54, 66-67 (1986). *Diamond* involved a motion to intervene in a class-action

6

lawsuit challenging the constitutionality of an Illinois law that imposed criminal sanctions on abortion providers who failed to furnish their patients with certain information. *Id.* at 57-58. In that case Mr. Diamond claimed that he had an interest in the outcome of the litigation because of his "conscientious objection to abortions, and…his status as a pediatrician…" *Id.* Rejecting that claim, the court held that Article III " 'requires an 'injury in fact' that distinguishes a 'person with a direct stake in the outcome of a litigation – even though small – from a person with a mere interest in the problem'...Mr. Diamond has an interest, but no direct stake, in the abortion process. This 'abstract concern does not substitute for the concrete injury required by Art. III.'" *Id.* at 66-67. In contrast to the abstract concern advanced by Diamond, the Louises are the intended beneficiaries of §§4 and 5 of the VRA.

Still other cases relied upon by Plaintiff in its brief lend support to the Louis Intervenors' Motion to Intervene in this case. Indeed, *Georgia v. Ashcroft*, 539 U.S. at 477-78, and *Reno* v. *Bossier Parish Sch. Bd.*, 528 U.S. 320, 335-36 (2000), are cases in which intervenors were permitted to step in to defend their rights in the context of declaratory judgment proceedings before this court.2

Plaintiff also puts its misplaced reliance on *United States v. Hays,* 515 U.S. 737, 745 (1995), to support its assertion that the Louis Intervenors must show that they have suffered particularized or "special harms" from discrimination in order to satisfy standing requirements under the VRA's bailout provision. In *Hays*, a group of intervenors sought to challenge Louisiana's congressional districting plan as an Equal Protection violation. The *Hays* Court found that the plaintiff there lacked standing to bring the lawsuit, in part, because they did not

---

2. Significantly, Defendant cites numerous examples of cases in which this court and others in voting cases have

7

live in the district in question. *Hays* lends no support to Plaintiff. Here, the Louis Intervenors are residents of the district and their federally protected voting rights are threatened by Plaintiff's claims.

      2.   <u>Plaintiff Seeks a Result Inconsistent with the Prevailing Liberal Intervention Rule and Congressional Intent to Allow Protected Citizens to Participate in Bailout Cases</u>

The statutorily created right of intervention under Section 4(a) of the VRA is informed by the Court's ruling in *Allen v. State Board of Elections* 393 U.S. 544 (1969), which recognized the role of private parties in fulfilling the goals of the VRA. Here too, Plaintiff is silent regarding the legislative history underling the VRA's statutorily conferred right of intervention. Indeed, this history makes clear that both the Attorney General and private persons, such as Louis Intervenors, were vested with the responsibility to ensure enforcement of the VRA's provisions.

In asserting that the Louis Intervenors do not have standing to intervene in these cases, plaintiffs are asking the court to return to the 1966 holding of *Apache County v. United States*, 256 F. Supp. 903, 906 (D. D.C. 1966) (In rejecting the Navajo Indians' motion for intervention as of right, the Court emphasized that Rule 24(a)(1) "provides for intervention as of right when a statute confers an unconditional right to intervene, (but that) the Voting Rights Act of 1965 makes no express provision for intervention, (and) rather contemplates that the Attorney General will protect the public interest in defending section 4(a) actions.") However, almost two decades after the decision in that case, Congress amended the VRA to confer the right to intervene on "any aggrieved party," effectively vitiating the reasoning in *Apache*. *See* "Voting Rights Act Amendments of 1982", Pub. L. No. 97-205. Under the amended version of the VRA, the

---

recognized the role of voter intervenors in VRA litigation (Def. Mem. At 7, n. 8).

Navajos would have standing to intervene on the basis of their argument that the Attorney General's cursory investigation into the discriminatory application of literacy tests did not adequately protect their rights. *Id.* at 907. Plaintiff's urging of a return to the rule of *Apache,* where voters were forced to passively observe as the DOJ by itself determined the contours of the defense of minority voting rights, cannot be reconciled with the 1982 amendment conferring a right to participate or the numerous cases cited by the Defendant in its brief. (Def. Mem. at 7, n. 8)

Proposed Louis Intervenors clearly suffer from an imminent threat to federally protected voting rights that lie within the zone of rights protected by the VRA.

**B.    The Parties Assertion that Defendant is an Adequate Representative of Louis Intervenors' Interest Does Not Undermine Their Intervention Right**

Despite the fact that Defendant is charged with generally representing the broad public interest in discharging his duty to enforce the VRA, the Defendant simply does not have the same stake as do Louis Intervenors in this matter. The Supreme Court and courts of this circuit recognize that the adequacy of representation showing is minimal. *See McConnell,* 2004 U.S. Dist. LEXIS 22469 at *8-9; *Trobovich v. United Mine Workers,* 404 U.S. 528, 538 (1972) (the requirement of the Rule is satisfied if the applicant shows that the representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal."); *accord Dimond v. District of Columbia,* 792 F.2d 179, 192 (D.C. Cir. 1986) (inadequacy showing is "not onerous"); *Nuesse v. Camp,* 385 F.2d 694, 703 (D.C. Cir. 1967)("interests need not be wholly 'adverse' before there is a basis for concluding that existing representation of a

9

'different' interest may be inadequate.").3   Viewed in this light, Plaintiff's suggestion that any elaborate disquisition on differences in litigation strategy between Defendant and the Louis Intervenors is necessary at this stage (Pl. Mem at 16) is wholly unpersuasive.

For all of the reasons stated above, the Louis Intervenors have made a sufficient showing that the existing Defendant "may" not be adequate representatives of their interests and intervention as of right pursuant to 24(a)(2) would be appropriate.

## C.    In the Alternative, Permissive Intervention Should Be Granted Because Louis Intervenors Will Not Prejudice the Parties Already Participating In This Suit

Rule 24(b) makes clear that permissive intervention can be granted "when an applicant's claim or defense and the main action have a question of law or fact in common."  Fed. R. Civ. P. 24(b)(2).  In contrast to the standing requirement for intervention as of right, in this circuit a grant of permissive intervention does not follow the same strict rule. *See e.g. In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 31 (D.C. Cir. 2000); *EEOC v. Nat'l Children's Ctr., Inc.* 146 F.3d 1042, 1045 (D.C. Cir. 1995) (recognizing flexible rule). In response to the Louis Intervenors request for permissive intervention, Plaintiff asserts prejudice to support its cause. Despite the early stage of the litigation and an absence of any evidence, Plaintiff presumes that Louis Intervenors will advance arguments and proffer evidence that will be merely "cumulative or extraneous."  (Pl. Mem. at 16.)  However, the Louis Intervenors explicitly committed to avoiding delays or the unnecessary duplication of effort in those areas satisfactorily addressed and represented by Defendant, and also to coordinating proceedings with the Defendants to the extent possible.  (Louis Mem. at 2.)

---

3 At best the Defendant's recent Section 5 enforcement efforts have been the subject of substantial controversy, and

Where Louis Intervenors have committed to coordinating with Defendant, to the extent possible, and to participating on the same schedule established for the existing parties, Plaintiff is without any good faith basis to suggest that the Louis Intervenors will cause unnecessary delay in these proceedings. Therefore, this Court should grant the alternative request for permissive intervention in the event that it declines to grant intervention as of right.

## CONCLUSION

For all the reasons stated in the moving brief, as well as this reply brief, the Louis Intervenors' Motion to Intervene should be granted. *See Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 529, 531 (1947) (Where Congress has provided an "unmistakable" and "unconditional" right to intervene, "there is no room for the operation of a court's discretion.")

Respectfully submitted,

/s/ Norman J. Chachkin

_____

| | |
|---|---|
| Theodore Shaw | Kristen Clarke-Avery |
| Director-Counsel | NAACP Legal Defense and Educational |
| NAACP Legal Defense and Educational | Fund, Inc. |
| Fund, Inc. | 1444 Eye St., N.W., 10th Fl. |
| Jacqueline A. Berrien | Washington D.C. 20005 |
| Associate Director-Counsel | (202) 682-1300 |
| Norman J. Chachkin (D.C. Bar No. 235283) | |
| Debo P. Adegbile | |
| 99 Hudson Street, Suite 1600 | |
| New York, New York 10013 | |

_____

in one recent example 5 courts have enjoined the Georgia photo ID provision under various legal theories though the various iterations of the statute have given DOJ no pause under its Section 5 responsibility.

11

(212) 219-1900


                    Attorneys for Proposed Louis Defendant-Intervenors

Date:  November 6, 2006

## CERTIFICATE OF SERVICE

I, Debo P. Adegbile, hereby certify that on November 6, 2006, I caused to be served a copy of the foregoing Consolidated Reply Brief in Support of the Louis Intervenors' Motion was e-mailed to the Clerk of the Court at dcd_cmecf@dcd.uscourts.gov.  The electronic filing prompts service of the filing to all counsel of record in this case who have obtained CM/ECF passwords.

I also hereby certify that on November 6, 2006, I caused to be served a copy of the foregoing Consolidated Reply Brief in Support of the Louis Intervenors' Motion through e-mail to (where known) to the following:

Ferdose al-Taie
Ferdose.al-Taie@weil.com
Adam Strochak
Weil, Gotshal & Manges LLP
1300 Eye Street, N.W.
Washington, D.C. 20005
Tel: 202-682-7000
Fax: 202-857-0940

Gregory S. Coleman, Esq.
Greg.coleman@weil.com
Christian T. Ward, Esq.
Chris.ward@weil.com
Weil, Gotshal & Manges LLP
8911 Capital of Texas Highway
Suite 1350
Austin, TX 78759

Eric Scott Jaffe
jaffe@esjpc.com
ERIK S. JAFFEE, P.C.
5101 34th Street, N.W.

1

Washington D.C.

Counsel for Plaintiff

Wan Kim
Assistant Attorney General
Civil Rights Division
John K. Tanner
Chief, Voting Section
H. Christopher Coates
Principal Deputy Chief
T. Christian Herren
Special Counsel
Chris.herren@usdoj.gov
Christy A. McCormick
Christy.mccormick@usdoj.gov
Attorneys, Civil Rights Division
U.S. Department of Justice
Room 7254 –NWB
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
Fax: 202-307-3961

Counsel for Defendant

Nina Perlaes,Esq.
nperlaes@maldef.org
MALDEF
110 Broadway, Ste. 300
San Antonio, Tx. 78205

Joseph E. Sandler
sandler@sandlerreiff.com
Sandler, Reiff & Young, P.C.
50 E. Street, SE Ste. 300
Washington D.C. 2003

Counsel for Applicants David and Lisa Diaz

Seth P. Waxman, Esq.
John A. Payton (DC No. 282699)
Paul R.Q. Wolfson (DC No. 414759)
Ariel B. Waldman (DC No. 474429)
Wilmer Cutler Pickering Hale & Dorr LLP

2

1875 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 663-6000
(202) 663-6363 - Fax
seth.waxman@wilmerhale.com
Jon M. Greenbaum, Esq.
Benjamin J. Blustein (DC No. 418930)
Jonah H. Goldman (DC No. 497507)
Lawyers Committee for Civil Rights Under Law
1401 New York Avenue, NW, Suite 400
Washington, DC 20005
(202) 662-8600
(202) 628-2858 - fax
jgreenbaum@lawyerscommittee.org
Counsel for movant-intervenors Texas State Conference
of NAACP Branches and Austin Branch of the NAACP

Elliot M. Mincberg
emincberg@pfaw.org
David J. Becker
dbecker@pfaw.org
People for the American Way Foundation
2000 M Street NW, Ste. 400
Washington, DC 20036