IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
NORTHWEST AUSTIN MUNICIPAL UTILITY )
DISTRICT NUMBER ONE,               )
401 W. 15th Street                 )
Suite 850                          )
Austin, TX 78701                   )
                                   )
     Plaintiff,                    )
                                   )
vs.                                )  Case 1:06-cv-01384-PLF
                                   )
ALBERTO GONZALES, ATTORNEY GENERAL )
OF THE UNITED STATES,              )
950 Pennsylvania Ave., NW          )
Washington, DC  20530              )
                                   )
     Defendant,                    )
                                   )
and,                               )
                                   )
NATHANIEL LESANE,                  )
                                   )
     Defendant-Intervenor.         )
_____)
```

## BRIEF IN SUPPORT OF MOTION FOR LEAVE TO INTERVENE AS DEFENDANT

I. Introduction

This action was brought by Northwest Austin Municipal Utility District Number One to bail out from coverage under the preclearance requirements of Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, or in the alternative secure a declaratory judgment that Section 5 is unconstitutional. Applicant is members of racial minority, and is a residents and voter of Northwest Austin Municipal Utility District Number One. He has moved the Court for leave to intervene as of right and for permissive intervention pursuant to Rules 24(a)(1) and (2) and (b)(1) and (2), F.R.Civ.P. The Supreme Court has held that "[p]rivate parties may intervene in §5 actions," and that such intervention is controlled by Rule 24.

<u>Georgia v. Ashcroft</u>, 539 U.S. 461, 477 (2003). <u>Accord</u>, <u>NAACP v. New York</u>, 413 U.S. 345, 367 (1973).

II. <u>Intervention As of Right Is Warranted</u>

Rule 24(a) provides:

> Upon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

As an initial matter, the application for intervention is timely. The answer of the United States is due for filing on October 16, 2006. No discovery has been undertaken, no dispositive orders have been entered in the case, and no trial has been set or held. Granting intervention would not, therefore, cause any delay in the trial of the case nor prejudice the rights of any existing party. See <u>Bossier Parish School Board v. Reno</u>, 157 F.R.D. 133, 135 (D. D.C. 1994) (intervention granted as timely where motion was filed on the same day the court held its first status conference).

The most important factor in determining whether intervention is timely is whether any delay in seeking intervention will prejudice the existing parties to the case. See, e.g., <u>McDonald v. E.J. Lavino Co.</u>, 430 F.2d 1065, 1073 (5th Cir. 1970) ("[i]n fact, this may well be the <u>only</u> significant consideration when the proposed intervenor seeks intervention of right").[1] Where

---

[1] Prejudice should not, of course, be confused with the convenience of the parties. <u>See</u> McDonald v. E.J. Lavino Co., 430 F.2d at 1073 ("mere inconvenience is not in itself a sufficient

intervention will not delay resolution of the litigation, intervention should be allowed. Texas v. United States, 802 F. Supp. 481, 482 n.1 (D. D.C. 1992) (affirming the propriety of granting intervention); Cummings v. United States, 704 F.2d 437, 441 (9th Cir. 1983) (it was an abuse of discretion for the trial court to deny intervention in the absence of a showing of prejudice to the government).

A. Intervention under 24(a)(1)

A statute of the United States, 42 U.S.C. § 1973b(a)(4), provides that "[a]ny aggrieved party may as of right intervene at any stage in such action [to bail out from Section 5 coverage]." Intervention in this action, accordingly, should be granted of right.

B. Intervention under 24(a)(2)

Movant also meets the standards for intervention of right under Rule 24(a)(2).

1. Applicant Has a Direct Interest in Bailout and the Constitutionality of Section 5

As a racial minority protected by Section 5 of the Voting Rights Act, and as a registered voter who resides in Northwest Austin Municipal Utility District Number One, applicant plainly has a direct, substantial, and legally protectable interest in the "transaction which is the subject of the action," Rule 24(a)(2), i.e., the constitutionality of Section 5 and whether the plaintiff

---

reason to reject as untimely a motion to intervene as of right"); Clark v. Putnam County, 168 F.3d 458, 462 (11th Cir. 1999) (same).

should be allowed to bail out from Section 5 coverage. Because of the importance of that interest, intervention in Section 5 cases is favored, and the courts have routinely allowed it. See Georgia v. Ashcroft, 539 U.S. at 477; Busbee v. Smith, 549 F.Supp. 494 (D. D.C. 1982); City of Lockhart v. United States, 460 U.S. 125, 129 (1983); City of Port Arthur, Texas v. United States, 517 F.Supp. 987, 991 n.2 (D. D.C. 1981); New York State v. United States, 65 F.R.D. 10, 12 (D. D.C. 1974); City of Richmond, Virginia v. United States, 376 F.Supp. 1344, 1349 n.23 (D. D.C. 1974); Beer v. United States, 374 F.Supp. 363, 367 n.5 (D. D.C. 1974); Commonwealth of Virginia v. United States, 386 F.Supp. 1319, 1321 (D. D.C. 1974); City of Petersburg, Virginia v. United States, 354 F.Supp. 1021, 1024 (D. D.C. 1972).[2] See also Clark v. Putnam County, 168 F.3d 458, 462 (11th Cir. 1999) ("black voters had a right to intervene" in action challenging county redistricting, and listing recent voting cases allowing intervention); Burton v. Sheheen, 793 F.Supp 1329, 1338 (D. S.C. 1992); Brooks v. State Board of Elections, 838 F.Supp. 601, 604 (S.D. Ga. 1993); Johnson v. Mortham, 915 F.Supp. 1529, 1536 (D.C. Fla. 1995) (registered voters had "a sufficiently substantial interest to intervene" in a suit challenging congressional redistricting); Baker v. Regional High School District No. 5, 432 F.Supp. 535, 537 (D. Conn. 1977) (residents of school district had an interest in method of electing

---

[2] In some of the cases cited above intervenors played not merely an important but a crucial role. In City of Lockhart, for example, the intervenors presented the sole argument in the Supreme Court on behalf of the appellees. No argument was presented on behalf of the United States. 460 U.S. at 130.

school board that entitled them to intervene in apportionment challenge).

The Eleventh Circuit, in reversing a district court denial of intervention to county residents in a voting rights case, articulated the substantial, legally protected interests of voters in their election system:

> intervenors sought to vindicate important personal interest in maintaining the election system that governed their exercise of political power . . . As such, they alleged a tangible actual or prospective injury.

Meek v. Metropolitan Dade County, 985 F.2d 1471, 1480 (11th Cir. 1993).

Intervention is particularly appropriate in this case because applicant, unlike the United States, includes a resident and voter of Northwest Austin Municipal Utility District Number One and is therefore in a special position to provide the Court with a local appraisal of the facts and circumstances involved in the litigation. In County Council of Sumter County v. United States, 555 F.Supp. 694, 697 (D. D.C. 1983), the court allowed African American citizens to intervene in a Section 5 preclearance action in part specifically because of their "local perspective on the current and historical facts at issue."

Applicant has an interest in the subject matter of this action sufficient to warrant intervention. Indeed, as a voter of Northwest Austin Municipal Utility District Number One, no individuals or entity could have a greater interest in the subject matter of the litigation.

2. <u>Applicant's Ability to Protect His Interests Will Be Impaired or Impeded if Intervention Is Denied</u>

The outcome of this action may as a legal and practical matter impair or impede applicant's ability to protect his interests. Rule 24(a)(2). If plaintiff is allowed to bail out, or Section 5 is found to be unconstitutional, intervenor would be denied the protection of Section 5. Plaintiff would then be free to enact changes in its voting practices and procedures without first showing that they did not have the purpose or effect of discriminating on the basis of race or color or membership in a language minority.

3. <u>Applicant's Interests Cannot Be Adequately Represented by the Existing Parties</u>

Applicant can satisfy Rule 24(a)(2)'s inadequate representation requirement by showing merely that representation of his interests "'<u>may be</u>' inadequate" and "the burden of making this showing should be treated as 'minimal.'" <u>United Guaranty Residential Insurance Co. v. Philadelphia Sav. Fund</u>, 819 F.2d 473, 475 (4th Cir. 1987) (quoting <u>Trbovich v. United Mine Workers of America</u>, 404 U.S. 528, 538 n. 10 (1972)). <u>See also</u> <u>In re Sierra Club</u>, 945 F.2d 776, 779 (4th Cir. 1991) (same). This Court has held that Rule 24 "underscores both the burden of those opposing intervention to show the adequacy of the existing representation and the need for a liberal application in favor of permitting intervention." <u>Nuesse v. Camp</u>, 385 F.2d 694, 702 (D.C. Cir. 1967). <u>See also</u> <u>Smuck v. Hobson</u>, 408 F.2d 175, 181 (D.C. Cir. 1969) (same).

6

Although the United States and the applicant for intervention "may share some objectives" with respect to bail out and the constitutionality of Section 5, In re Sierra Club, 945 F.2d at 780, that does not mean that the United State's interests and applicant's interests are identical or that their approaches to litigation would be the same. As City of Lockhart demonstrates, the government and minorities have sometimes disagreed on the proper application of the Voting Rights Act and what constitutes adequate protection of voting rights. See also Blanding v. DuBose, 454 U.S. 393, 398-399 (1982) (minority plaintiffs, but not the United States, appealed and prevailed in the Supreme Court in voting rights case); County Council of Sumter County, 555 F.Supp. at 696 (United States and minority intervenors took opposite positions regarding the application of Section 2 to Section 5 preclearance).

The Supreme Court has "recognized that when a party to an existing suit is obligated to serve two distinct interests, which, although related, are not identical, another with one of those interests should be entitled to intervene." United Guaranty Residential Insurance, 819 F.2d at 475 (referring to Trbovich, 404 U.S. at 538-539). In Trbovich, the Supreme Court allowed a union member to intervene in an action brought by the Secretary of Labor to set aside union elections for violation of the Labor-Management Reporting and Disclosure Act of 1959, even though the Secretary was broadly charged with protecting the public interest. The Court reasoned that the Secretary of Labor could not adequately

represent the union member because the Secretary had a "duty to serve two distinct interests," 404 U.S. at 539, a duty to protect both the public interest and the rights of union members.

In a similar case, the Fourth Circuit allowed an environmental group to intervene as a party defendant in an action where the South Carolina Department of Health and Environmental Control (DHEC) was defending the constitutionality of a state regulation governing the issuance of permits for hazardous waste facilities. The court reasoned that DHEC could not adequately represent the environmental group because "in theory, [DHEC] should represent all of the citizens of the state, including the interests of those citizens who may be . . . proponents of new hazardous waste facilities," In re Sierra Club, 945 F.2d at 780, while the environmental group "on the other hand, appears to represent only a subset of citizens concerned with hazardous waste—those who would prefer that few or no new hazardous waste facilities receive permits." Id.

Applicant's interests in this litigation are, in like fashion, sufficiently different from those of the United States to justify intervention. The United States must represent the interests of its citizenry generally - including the interests of the defendants. Trbovich, 404 U.S. at 538-39; In re Sierra Club, 945 F.2d at 780. Where a party represents such dual interests in litigation, the "test" of whether that party will adequately represent the interests of potential intervenors is "whether each of the dual interests [of the party] may 'always dictate precisely

8

the same approach to the conduct of the litigation.' 404 U.S. 539." <u>United Guaranty Residential Insurance Co.</u>, 819 F.2d at 475 (holding that the largest mortgage holder could intervene of right in case brought after collapse of real estate firm because the trustee could not adequately protect the interests of such holder given the trustee's duty to represent all holders with equal vigor). Consequently, even if the United States vigorously performs its duty to represent its citizenry, representation of applicant's distinct interests may still be inadequate because the United States must balance the competing interests presented by the proposed intervenor as well as those individuals or entities, like the plaintiff, who oppose it. While the interests of the United States and applicant may converge on issues such as the constitutionality of Section 5 and bailout, they may diverge when it comes to arguments to be made and appealing any adverse decisions. For other decisions holding that government parties could not adequately represent the interests of a subset of the general public, see <u>Chiles v. Thornburgh</u>, 865 F.2d 1197, 1214-15 (11th Cir. 1989) (federal prison detainees' interests may not be adequately represented by county); <u>Dimond v. District of Columbia</u>, 792 F.2d 179, 192 (D.C. Cir. 1986) (private party seeking to protect narrow financial interest allowed to intervene despite presence of government which represented general public interest); <u>Natural Resources Defense Council, Inc. v. United States Environmental Protection Agency</u>, 99 F.R.D. 607, 610 n.5 (D. D.C. 1983) (pesticide manufacturers and industry representatives allowed

9

to intervene even though EPA was a party); <u>New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York</u>, 516 F.2d 350, 352 (2nd Cir. 1975) (pharmacists and pharmacy association allowed to intervene where "there is a likelihood that the pharmacists will make a more vigorous presentation of the economic side of the argument than would" the state Regents); <u>Associated General Contractors of Connecticut, Inc. v. City of New Haven</u>, 130 F.R.D. 4, 11-12 (D. Conn. 1990) (minority contractors allowed to intervene because "its interest in the set-aside is compelling economically and thus distinct from that of the City").

Applicant meets the standards for intervention as of right, and his motion should be granted.

III. <u>Permissive Intervention Is Also Appropriate</u>

Even if this Court should determine that applicant does not satisfy the requirements for intervention of right, it should grant permissive intervention under Rules 24(b)(1) and (2). As noted above, 42 U.S.C. § 1973b(a)(4) provides that any aggrieved party may intervene at any stage of an action to bail out from Section 5 coverage.

Rule 24(b)(2) also permits intervention upon timely application "when an applicant's claim or defense and the main action have a question of law or fact in common." As discussed above, applicant seeks to defend the constitutionality of Section 5 and dispute whether plaintiff should be allowed to bail out from Section 5 coverage, which claims and defenses share common factual

and legal questions with the main action. Also as discussed above, intervention will not "unduly delay or prejudice the adjudication of the rights of the original parties." Rule 24(b)(2).

In <u>Arizona v. California</u>, 460 U.S. 605 (1983), Indian tribes were permitted to intervene in a water rights action between states, despite intervention by the United States on behalf of the tribes. The Court reasoned that "the Indian's participation in litigation critical to their welfare should not be discouraged." <u>Id</u>. at 615. The pending litigation is no less critical to movant's welfare, and accordingly intervention should be granted.

<u>Conclusion</u>

For the above and foregoing reasons, the Court should permit the applicant to intervene in this action as party defendants.

Respectfully submitted,

*/s/ Laughlin McDonald*

LAUGHLIN McDONALD
NEIL BRADLEY
American Civil Liberties
  Union Foundation, Inc.
2600 Marquis One Tower
245 Peachtree Center Avenue
Atlanta, GA 30303-1227
(404) 523-2721

*/s/ Michael Kator*

Michael Kator
D.C. Bar No. 366936
Kator, Parks & Weiser, P.L.L.C.
1020 19th St., NW
Suite 350
Washington, DC 20036-3804

*Jeremy Wright/MK*

Jeremy Wright
Kator, Parks & Weiser, P.L.L.C.
812 San Antonio St., Suite 100
Austin, Texas 78701
(512) 322-0600

*Lisa Graybill/MK*

Lisa Graybill
Legal Director
ACLU Foundation of Texas
1210 Rosewood Ave.
Austin, TX 78702

*Art Spitzer/MK*

Art Spitzer
Legal Director
ACLU of the National Capital Area
1400 20th Street N.W., Suite 119
Washington, D.C. 20036

Attorneys for Applicant