IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NORTHWEST AUSTIN MUNICIPAL UTILITY DISTRICT NUMBER ONE, <br><br> Plaintiff, <br><br> v. <br><br> ALBERTO GONZALES, Attorney General of the United States, <br><br> Defendant, <br><br> and <br><br> ANGIE GARCIA, JOVITA CASARES, and OFELIA ZAPATA, <br><br> Applicants for Intervention. | No. 1:06-cv-01384 <br><br> Three-judge court (PLF, DST, EGS) |

**MEMORANDUM IN SUPPORT OF
APPLICANTS' MOTION TO INTERVENE AS DEFENDANTS**

I.   Introduction

This action was brought by Northwest Austin Municipal Utility District Number One to bail out from coverage under the preclearance requirements of Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c, or, in the alternative, to secure a declaratory judgment that Section 5 is unconstitutional. Applicants are language minorities and residents and voters of Bexar County, Val Verde County, and Travis County, Texas. Applicants have moved to intervene as of right or for permissive intervention pursuant to Fed. R. Civ. P. 24(a) and (b). The Supreme Court has held that "[p]rivate parties may intervene in § 5 actions," and that such intervention is controlled by Rule 24. *Georgia v. Ashcroft*, 539 U.S. 461, 477 (2003); *accord NAACP v. New York*, 413 U.S. 345, 367 (1973).

II.  Applicants Are Entitled to Intervention As of Right.

Fed. R. Civ. P. 24(a) provides:

Upon timely application anyone shall be permitted to intervene in an action: . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

A.  Applicants' Motion to Intervene is Timely.

As an initial matter, the application for intervention is timely. The answer of the United States was filed on October 16, 2006. There has been no discovery, no dispositive orders have been entered, and no trial has been set. Granting intervention would not, therefore, cause any delay in the trial of the case or prejudice the rights of any existing party. *See Bossier Parish School Board v. Reno*, 157 F.R.D. 133, 135 (D.D.C. 1994) (intervention granted as timely where motion was filed on the same day the court held its first status conference).

The most important factor in determining whether intervention is timely is whether any delay in seeking intervention will prejudice the existing parties. *See, e.g., McDonald v. E.J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970) ("In fact, this may well be the only significant consideration when the proposed intervenor seeks intervention of right").[1] Where intervention will not delay resolution of the litigation, intervention should be allowed. *Texas v. United States*, 802 F. Supp. 481, 482 n.1 (D.D.C. 1992) (affirming the propriety of granting intervention); *Cummings v. United States*, 704 F.2d 437, 441 (9th Cir. 1983) (it was an abuse of discretion for the trial court to deny intervention in the absence of a showing of prejudice to the government).

---

[1] Prejudice should not, of course, be confused with the convenience of the parties. *See McDonald*, 430 F.2d at 1073 ("mere inconvenience is not in itself a sufficient reason to reject as untimely a motion to intervene as of right"); *Clark v. Putnam County*, 168 F.3d 458, 462 (11th Cir. 1999) (same).

B. Applicants Meet the Standards for Intervention Under Rule 24(a)(2)

1. Applicants Have a Direct Interest in the Constitutionality of Section 5.

As language minorities protected by Section 5 of the Voting Rights Act, and as registered voters who reside in three different counties of Texas including Travis County, where Northwest Austin Municipal Utility District Number One is located, applicants have a direct, substantial, and legally protectable interest in the "transaction which is the subject of the action," Rule 24(a)(2), *i.e.*, in the constitutionality of Section 5, and its ongoing protection of their fundamental right to vote. Because of the importance of that interest, intervention by minority voters in Section 5 cases is favored, and the courts have routinely allowed it. *See Georgia v. Ashcroft*, 539 U.S. at 477; *City of Lockhart v. United States*, 460 U.S. 125, 129 (1983); *Busbee v. Smith*, 549 F. Supp. 494 (D.D.C. 1982); *City of Port Arthur, Texas v. United States*, 517 F. Supp. 987, 991 n.2 (D.D.C. 1981); *New York State v. United States*, 65 F.R.D. 10, 12 (D.D.C. 1974); *City of Richmond, Virginia v. United States*, 376 F.Supp. 1344, 1349 n.23 (D.D.C. 1974); *Beer v. United States*, 374 F. Supp. 363, 367 n.5 (D.D.C. 1974); *Commonwealth of Virginia v. United States*, 386 F. Supp. 1319, 1321 (D.D.C. 1974); *City of Petersburg, Virginia v. United States*, 354 F. Supp. 1021, 1024 (D. D.C. 1972). In cases involving both statutory and constitutional challenges to electoral laws and practices, courts have also frequently granted registered voters intervenor status, as voters, to protect their fundamental voting rights. *See, e.g., Clark v. Putnam County*, 168 F.3d 458, 462 (11th Cir. 1999) ("black voters had a right to intervene" in *Shaw v. Reno* action challenging county redistricting, and listing recent voting cases allowing intervention); *Burton v. Sheheen*, 793 F. Supp 1329, 1338 (D.S.C. 1992) (allowing voters to intervene in challenge to apportionment plan making constitutional and preclearance claims); *Brooks v. State Board of Elections*, 838 F. Supp. 601, 604 (S.D. Ga. 1993) (registered voters allowed to intervene to protect their "state constitutional right to elect judges and their federal constitutional rights to due process and equal protection of the laws"); *Johnson v. Mortham*, 915 F. Supp. 1529, 1536 (N.D. Fla. 1995) (registered voters had "a sufficiently substantial interest to intervene" in a suit challenging congressional redistricting); *Baker v. Regional High*

3

*School District No. 5*, 432 F. Supp. 535, 537 (D. Conn. 1977) (residents of school district had an interest in method of electing school board that entitled them to intervene in apportionment challenge).[2]

The Eleventh Circuit, in reversing a district court's denial of intervention to registered voters and county residents in a case under Section 2 of the Voting Rights Act, articulated the substantial, legally protected interests of voters in their election system:

> [I]ntervenors sought to vindicate important personal interests in maintaining the election system that governed their exercise of political power . . . . As such, they alleged a tangible actual or prospective injury.

*Meek v. Metropolitan Dade County*, 985 F.2d 1471, 1480 (11th Cir. 1993).

Intervention is particularly appropriate in this case because applicants, unlike the United States, include residents and language minority voters of Texas explicitly protected by Section 5 of the Voting Rights Act. Applicants are in a special position to provide the Court with a local appraisal of the facts and circumstances involved in the litigation. 42 U.S.C. § 1973b(f), Pub. L. 94-73, title I, Sec. 101, title II, Sec. 201-203, 206, Aug. 6, 1975, 89 Stat. 400-402 (extending Section 5 to include protection for members of a "language minority group"); *see also* § 1973l(c)(3) (defining "language minorities" or "language minority group" as "persons who are American Indian, Asian American, Alaskan Natives or of Spanish heritage"). As Congress recognized in 1975, and again in the recent reauthorization amendments of Section 5 of the Voting Rights Act, "voting discrimination against . . . language minorities is pervasive and national in scope." § 1973b(f)(1); *see also* S. Rep. 109-295 (Comm. on the Judiciary) (describing congressional findings of discrimination against language minority voters in recent years accompanying PL 109-246, The Fannie Lou Hamer, Rosa Parks, and Coretta Scott King Voting Rights Act Reauthorization and Amendments Act of 2006, H.R. 9); H. Rep. 109-478 (Comm. on the Judiciary) (same). Language

---

[2]In some of the cases cited above, intervenors played a crucial role. In *City of Lockhart*, for example, the intervenors presented the sole argument in the Supreme Court on behalf of the appellees. No argument was presented on behalf of the United States. 460 U.S. at 130.

minority voters such as the applicants have a direct interest in ensuring that Section 5 and its preclearance protection, enacted by Congress specifically to protect their rights and remedy ongoing voting discrimination against them, continues in full force. In *County Council of Sumter County v. United States*, 555 F. Supp. 694, 697 (D.D.C. 1983), the court allowed African American citizens to intervene in a Section 5 preclearance action in part because of their "local perspective on the current and historical facts at issue."

Applicants have a similarly local perspective and unique interest in the subject matter of this action sufficient to warrant intervention. Applicants are Mexican American voters of Texas. As language minority voters protected by the Act, who have been receiving the benefit of its protection to become able to participate in the political process and elect candidates of their choice, no individuals or entity could have a greater interest in the litigation. If the lawsuit were allowed to proceed without their involvement, and the plaintiff achieved its objective—eliminating Section 5—that would "undermine[] the progress of a racial group that has been subject to significant voting-related discrimination and that was becoming increasingly politically active and cohesive." *See LULAC v. Perry*, 126 S. Ct. 2594, 2621 (2006) (Section 2 case). Indeed, applicant Casarez is a voter and resident of Texas Congressional District 23, and is among the Texas voters recently found to have been discriminated against in violation of the Voting Rights Act. *See Id.* at 2623. Applicant Garcia is also a registered language minority voter, as well as an active member and officer of the League of United Latin American Citizens (LULAC), an organization that often litigates to protect its members' voting rights under the Voting Rights Act and the U.S. Constitution, and regularly advocates for Latino voters' interests locally and around the state. Finally, applicant Zapata is a registered language minority voter and an active member of a number of community service organizations involved in the political process.

      2.    <u>Applicants' Ability to Protect Their Interests Will Be Impaired or Impeded if Intervention Is Denied.</u>

The outcome of this action may, as a legal and practical matter, impair or impede applicants' ability to protect their interests. Fed. R. Civ. P. 24(a)(2). If Section 5 is found to be unconstitutional,

intervenors would be denied its protections. Plaintiff and other covered jurisdictions would then be free to enact changes in their voting practices and procedures without first showing that the changes did not have the purpose or effect of discriminating on the basis of race, color, or membership in a language minority group.

### 3. Applicants' Interests Cannot Be Adequately Represented by the Existing Parties.

Applicants can satisfy Rule 24(a)(2)'s inadequate representation requirement by showing merely that representation of their interests "'may be' inadequate" and "the burden of making this showing should be treated as 'minimal.'" *United Guaranty Residential Insurance Co. v. Philadelphia Sav. Fund*, 819 F.2d 473, 475 (4th Cir. 1987) (quoting *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n. 10 (1972)); *see also In re Sierra Club*, 945 F.2d 776, 779 (4th Cir. 1991) (same). This Court has held that Rule 24 "underscores both the burden of those opposing intervention to show the adequacy of the existing representation and the need for a liberal application in favor of permitting intervention." *Nuesse v. Camp*, 385 F.2d 694, 702 (D.C. Cir. 1967); *see also Smuck v. Hobson*, 408 F.2d 175, 181 (D.C. Cir. 1969).

Although the United States and applicants "may share some objectives" with respect to defending the constitutionality of Section 5, *In re Sierra Club*, 945 F.2d at 780, that does not mean that the United States's interests and applicants' interests are identical or that their approaches to litigation would be the same. As *City of Lockhart* demonstrates, the government and minorities have sometimes disagreed on the proper application of the Voting Rights Act and what constitutes adequate protection of voting rights. 460 U.S. at 130; *See also Blanding v. DuBose*, 454 U.S. 393, 398-99 (1982) (minority plaintiffs, but not the United States, appealed and prevailed in the Supreme Court in voting rights case); *County Council of Sumter County*, 555 F. Supp. at 696 (United States and minority intervenors took opposite positions regarding the application of Section 2 to Section 5 preclearance).

The Supreme Court has "recognized that when a party to an existing suit is obligated to serve two distinct interests, which, although related, are not identical, another with one of those interests

should be entitled to intervene." *United Guaranty Residential Insurance*, 819 F.2d at 475 (citing *Trbovich*, 404 U.S. at 538-539). In *Trbovich*, the Supreme Court allowed a union member to intervene in an action brought by the Secretary of Labor to set aside union elections for violation of the Labor-Management Reporting and Disclosure Act of 1959, even though the Secretary was broadly charged with protecting the public interest. The Court reasoned that the Secretary of Labor could not adequately represent the union member because the Secretary had a "duty to serve two distinct interests," 404 U.S. at 539, a duty to protect both the public interest and the rights of union members.

In a similar case, the Fourth Circuit allowed an environmental group to intervene as a party defendant in an action where the South Carolina Department of Health and Environmental Control (DHEC) was defending the constitutionality of a state regulation governing the issuance of permits for hazardous waste facilities. The court reasoned that DHEC could not adequately represent the environmental group because "in theory, [DHEC] should represent all of the citizens of the state, including the interests of those citizens who may be . . . proponents of new hazardous waste facilities," while the environmental group "on the other hand, appears to represent only a subset of citizens concerned with hazardous waste—those who would prefer that few or no new hazardous waste facilities receive permits." *In re Sierra Club*, 945 F.2d at 780.

Similarly, applicants' interests in this litigation are, in like fashion, sufficiently different from those of the United States to justify intervention. The United States must represent the interests of its citizenry generally—including the interests of the plaintiff. *Trbovich*, 404 U.S. at 538-39; *In re Sierra Club*, 945 F.2d at 780. Where a party represents such dual interests in litigation, the "test" of whether that party will adequately represent the interests of potential intervenors is "whether each of the dual interests [of the party] may 'always dictate precisely the same approach to the conduct of the litigation.' 404 U.S. 539." *United Guaranty Residential Insurance Co.*, 819 F.2d at 475 (holding that the largest mortgage holder could intervene of right in case brought after collapse of

real estate firm because the trustee could not adequately protect the interests of such holder given the trustee's duty to represent all holders with equal vigor).

Consequently, even if the United States vigorously performs its duty to represent its citizenry, representation of applicants' distinct interests may still be inadequate because the United States must balance the competing interests presented by the proposed intervenors as well as those individuals or entities, like the plaintiff, who oppose it. As the Eleventh Circuit noted in a case where it allowed voters to intervene even though there was a government body arguably representing the intervenors' interests, "[t]he [government] cannot adequately represent the proposed defendants while simultaneously representing the plaintiffs' interests....The [government's] pledge to represent all citizens has another component, as well, that reflects an interest distinct from the proposed interveners': the [government] has a duty to consider the expense of defending [the lawsuit] out of [government] coffers." *Clark v. Putnam County*, 168 F.3d 458, 461-62 (11th Cir. 1999) (citing *Meek*, 985 F.2d at 1478). Although the interests of the United States and applicants may converge on issues such as the constitutionality of Section 5 and bailout, they may diverge when it comes to arguments to be made and appealing any adverse decisions.[3]

Moreover, recent enforcement of Section 5 raises doubts about the commitment of the Attorney General to the defense of this action. For example, the Attorney General precleared the

---

[3]For other decisions holding that government parties could not adequately represent the interests of a subset of the general public *see Chiles v. Thornburgh*, 865 F.2d 1197, 1214-15 (11th Cir. 1989) (federal prison detainees' interests may not be adequately represented by county); *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (private party seeking to protect narrow financial interest allowed to intervene despite presence of government which represented general public interest); *Natural Resources Defense Council, Inc. v. United States Environmental Protection Agency*, 99 F.R.D. 607, 610 n.5 (D.D.C. 1983) (pesticide manufacturers and industry representatives allowed to intervene even though EPA was a party); *New York Public Interest Research Group, Inc. v. Regents of the University of the State of New York*, 516 F.2d 350, 352 (2nd Cir. 1975) (pharmacists and pharmacy association allowed to intervene where "there is a likelihood that the pharmacists will make a more vigorous presentation of the economic side of the argument than would" the state Regents); *Associated General Contractors of Connecticut, Inc. v. City of New Haven*, 130 F.R.D. 4, 11-12 (D. Conn. 1990) (minority contractors allowed to intervene because "its interest in the set-aside is compelling economically and thus distinct from that of the City" ).

Texas Congressional redistricting plan, against the strong recommendation of the staff of the Voting Section of the Justice Department's Civil Rights Division, and of minority citizens of Texas. The Supreme Court subsequently found that the Texas Congressional plan violated the Voting Rights Act, highlighting the basis for applicants' belief that the Attorney General will not adequately represent their interests in this case. *See LULAC v. Perry*, 126 S. Ct. 2594, 2623 (2006) (Kennedy, J.); *see also* 126 S. Ct. at 2645 (Stevens, J., concurring in part and dissenting in part) (discussing Attorney General's rejection of the unanimous opinion of Voting Section staff attorneys and questioning Attorney General's commitment to vigilant enforcement of the Act).

Applicants meet the standards for intervention as of right, and their motion should be granted.

III.  Permissive Intervention Is Also Appropriate.

Even if applicants did not satisfy the requirements for intervention of right, the Court should allow permissive intervention under Fed. R. Civ. P. 24(b), which provides:

> Upon timely application anyone may be permitted to intervene in an action: . . . (2) when an applicant's claim or defense and the main action have a question of law or fact in common. . . . In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.

As noted above, applicants seek to defend the constitutionality of Section 5. Thus, applicants' claims and defenses share common factual and legal questions with the main action. As also discussed above, applicants' intervention here will not unduly delay or prejudice the resolution of this case.

In *Arizona v. California*, 460 U.S. 605 (1983), Indian tribes were permitted to intervene in a water rights action between states, despite intervention by the United States on behalf of the tribes. The Court reasoned that "the Indians' participation in litigation critical to their welfare should not be discouraged." *Id.* at 615. The pending litigation is no less critical to applicants' welfare, and accordingly intervention should be granted.

9

IV.     Conclusion

For the above and foregoing reasons, the Court should permit applicants to intervene in this action as party defendants.

Dated: November 8, 2006                                         Respectfully submitted,

                                                                                                     */s/ Jose Garza*  
Jose Garza  
Judith A. Sanders-Castro  
George Korbel  
(Local Rule 83.2(g) certificates to be filed)  
Texas RioGrande Legal Aid, Inc.  
1111 N. Main Street  
San Antonio, Texas  78212  
210-212-3700  
210-212-3772 (fax)

Alpha Hernandez  
Eloy Padilla  
(Local Rule 83.2(g) certificates to be filed)  
Texas RioGrande Legal Aid, Inc.  
309 Cantu Street  
Del Rio, Texas 78840  
830-775-1535  
830-768-0997 (fax)


*/s/ Michael T. Kirkpatrick*  
Michael T. Kirkpatrick (DC Bar No. 486293)  
Brian Wolfman (DC Bar No. 427491)  
Public Citizen Litigation Group  
1600 20th Street NW  
Washington, DC  20009  
202-588-7728  
202-588-7795 (fax)

Attorneys for Applicants