## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NORTHWEST AUSTIN MUNICIPAL UTILITY
DISTRICT NUMBER ONE,
401 W. 15th Street
Suite 850
Austin, Texas 78701,

        *Plaintiff*,

v.

ALBERTO GONZALES,
Attorney General of the United States,
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C.  20530,
        *Defendant*.

Civil Action No. 1:06-CV-01384
(DST, PLF, EGS)

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION BY ANGIE GARCIA, JOVITA CASARES, AND OFELIA ZAPATA TO INTERVENE AS DEFENDANTS

TABLE OF CONTENTS

Table of Contents ........................................................................................................... i

Table of Authorities ...................................................................................................... ii

Introduction ................................................................................................................... 1

Background .................................................................................................................... 2

Argument ....................................................................................................................... 3

I.      Applicants Lacks Standing to Intervene. ........................................................... 5

        A.      Applicants Cannot Show Injury-in-Fact From the District's Attempt to
                Bail Out of §5 Preclearance. ................................................................... 6

        B.      Applicants Cannot Show Causation Because No Injury Is Fairly Traceable
                to Actions of the District. ........................................................................ 8

        C.      Applicants Cannot Show That Any Cognizable Injury Would Be
                Redressed by a Judgment Against the District. ....................................... 8

II.     Applicants Are Not So Situated That the Disposition of This Case May Impair or
        Impede Their Interests. ...................................................................................... 9

III.    Applicants Cannot Show That the Attorney General or Other Intervenors Will Not
        Adequately Represent Their Interests. ............................................................ 10

IV.     Applicants Should Be Denied Permissive Intervention Because Their Duplicative
        Participation Would Cause Undue Delay and Prejudice. ................................ 13

V.      At a Minimum, the Court Should Attempt to Minimize Inherent Delay and
        Prejudice by Requiring All Intervenors-Defendants to Consolidate Their Efforts .......... 14

Conclusion ................................................................................................................. 14

Certificate of Service ................................................................................................. 16

TABLE OF AUTHORITIES

CASES

*Allen v. Wright*,
    468 U.S. 737, 104 S.Ct. 3315 (1984).................................................................8

*Blake v. Pallan*,
    554 F.2d 947 (9th Cir. 1977) ......................................................................12

*City of Cleveland v. NRC*,
    17 F.3d 1515 (D.C. Cir. 1994) .................................................................4, 10

*Diamond v. Charles*,
    476 U.S. 54, 106 S.Ct. 1697 (1986)........................................................6, 10

*Dimond v. District of Columbia*,
    792 F.2d 179 (D.C. Cir. 1986) ......................................................................11

*Envtl. Def. Fund, Inc. v. Higginson*,
    631 F.2d 738 (D.C. Cir. 1979) .................................................................11, 12

*Fund for Animals, Inc. v. Norton*,
    322 F.3d 728 (D.C. Cir. 2003) ............................................................. *passim*

*Georgia v. Ashcroft*,
    539 U.S. 461, 123 S.Ct. 2498 (2003)...........................................................7, 8

*Humane Soc'y of United States v. Clark*,
    109 F.R.D. 518 (D.D.C. 1985).......................................................................11

*In re Vitamins Antitrust Class Action*,
    215 F.3d 26 (D.C. Cir. 2000) ..........................................................................4

*Indep. Democratic Party v. Rokita*,
    No. 1:05-CV-0634-SEB-VSS, 2006 U.S. Dist. LEXIS 20321
    (S.D. Ind. April 14, 2006) ..............................................................................13

*Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*,
    378 F.3d 774 (8th Cir. 2004) ....................................................................11, 12

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 112 S.Ct. 2130 (1992)......................................................5, 6, 8

*Massachusetts Sch. of Law at Andover, Inc. v. United States*,
    118 F.3d 776 (D.C. Cir. 1997) .................................................................13, 14

*Nuesse v. Camp*,
    385 F.2d 694 (D.C. Cir. 1967) .......................................................................11

*Reno v. Bossier Parish Sch. Bd.*,
    528 U.S. 320, 120 S.Ct. 866 (2000).....................................................7, 8, 9, 10

*Rio Grande Pipeline Co. v. FERC*,
    178 F.3d 533 (D.C. Cir. 1999) ...................................................................4, 10

*Roeder v. Islamic Rep. of Iran*,
    333 F.3d 228 (D.C. Cir. 2003) .....................................................................4, 5

*SEC v. Prudential Sec. Inc.*,
    136 F.3d 153 (D.C. Cir. 1998) .........................................................................4

*Smuck v. Hobson*,
    408 F.2d 175 (D.C. Cir. 1969) .......................................................................12

*Snyder v. FCC*,
    No. 04-1022, 2004 U.S. App. LEXIS 11272 (D.C. Cir. June 7, 2004) ...............4

*Sweet Home Chapter of Cmtys. for Great Or. v. Lujan*,
    No. 91-1468, 1991 U.S. Dist. LEXIS 17449 (D.D.C. Dec. 10, 1991).............11

*Trbovich v. United Mine Workers*,
    404 U.S. 528, 92 S.Ct. 630 (1972).................................................................10

*United States v. Hays*,
    515 U.S. 737, 115 S.Ct. 2431 (1995)...........................................................5, 6

*United States v. Philip Morris USA Inc.*,
    No. 99-2496 (GK), 2005 U.S. Dist. LEXIS 16196 (D.D.C. July 25, 2005) ......4

**STATUTES & RULES**

42 U.S.C. §1973*b* ..............................................................................................2

42 U.S.C. §1973*c* ..............................................................................................2

FED. R. CIV. P. 24(a)(1) ......................................................................................4

FED. R. CIV. P. 24(a)(2) ...............................................................................4, 9, 10

FED. R. CIV. P. 24(b) ....................................................................................5, 13

## INTRODUCTION

The plaintiff, a small utility district in Texas that does not register voters and that has no history of discrimination in voting, seeks to bail out from the burdensome requirement that it submit any proposed change affecting voting—no matter how tiny or tangential—for preliminary clearance by the United States Attorney General.   The district has always complied with the Voting Rights Act and the Constitution, and does not challenge one jot of the substantive provisions of the Voting Rights Act that guarantee full access to the ballot box and the political process for every one of its citizens.   Instead, the district merely seeks to demonstrate that its longtime commitment to ensuring full voting rights for all its citizens is precisely what entitles this local political subdivision to relief from the preclearance requirement.   The district's residents, who participate in the open and fair elections for the district's board members, have the right to sound local government that is free to make local decisions without the undue interference of the federal government.

Three individuals—who all reside *outside the district*—have filed what is now one of seven motions by organizations or individuals to intervene as defendants opposing the district's effort to terminate its preclearance obligations, three of which have already been granted. Applicants assert no particularized injury to themselves, only a generalized interest in stopping the district from getting the remedy it seeks.

The motion should be denied.   Applicants have no cognizable stake in the outcome of this proceeding between the district and the Attorney General.   They have no standing because they do not reside in the district and cannot demonstrate that they have suffered or are about to suffer an injury-in-fact.   They are not so situated that anything in this action, as a practical consequence, will impair or impede any cognizable interests they possess.   The Attorney General—a governmental entity obliged to act in the public interest—is presumed to adequately

1

represent any actual interest applicants might have, and applicants provide nothing to overcome that presumption.   Moreover, seven additional parties have already been permitted to intervene professing to represent interests identical to those applicants profess.   Further, permitting the duplicative and cumulative participation that applicants propose would unnecessarily complicate these proceedings, resulting in undue delay and prejudice that makes permissive intervention improper.

### BACKGROUND

Northwest Austin Municipal Utility District Number One, the plaintiff in this action, seeks a declaratory judgment relieving it from the burden of subjecting changes affecting voting in the district to preclearance by the Attorney General under §5 of the Voting Rights Act, 42 U.S.C. §1973*c*.   The district, which has never engaged in discrimination in any form, believes that it is entitled to bail out of the §5 preclearance requirement because it satisfies the requirements for a declaratory judgment under §4 of the Act.   42 U.S.C. §1973*b*.   In the alternative, the district believes that if §4 does not entitle it to bail out of §5's preclearance requirement, then the continued application of §5 against the district is unconstitutional.

Texas became covered by §5 as of September 23, 1975, when the United States Attorney General determined that: (a) election materials in Texas had been offered only in English; (b) more than 5% of Texas's voting age population was Spanish speaking; and (c) less than 50% of Texas's voting age population voted in the 1972 presidential election.   The district does now and always has supported full and open voting rights for all its residents.   The district did not exist when Texas became covered by §5; it was formed in 1987.   Nevertheless, the district is a covered political subdivision that must presently submit any proposed voting changes for §5 preclearance.

2

The §5 preclearance process is costly and burdensome.   To comply with §5, before any "change in practices or procedures affecting voting"—even the most minute of changes—the district must submit such changes to the Attorney General for approval.   In addition to the cost of the submission itself, most proposed changes are presumptively delayed by at least 60 days awaiting the Attorney General's approval.

In July 2006, Congress reauthorized §5, relying on generalized findings that do not specifically identify evidence of continuing discrimination in covered jurisdictions nor take into account that discriminatory conditions may now exist in jurisdictions that are not covered by §5. While Congress was considering that reenactment, proponents of reauthorizing §5 repeatedly stressed that the availability of bail-out for jurisdictions that could demonstrate a history of compliance with the Voting Rights Act is intended to minimize the burdens on constitutionally compliant political subdivisions and that this escape clause made §5 a congruent and proportional remedy for the evils Congress sought to address.

Applicants do not live in the district and do not allege that they have suffered or are in imminent danger of suffering any concrete injury from any discriminatory voting practice. Instead, they assert merely a generalized interest in continued application of §5.   The Attorney General, in his answer to the district's complaint, has indicated that he will vigorously defend that interest.   And seven other parties already have intervened to assert identical purported interests.   Because applicants lack standing and cannot satisfy other requirements for intervention, the district opposes the motion.

## ARGUMENT

Applicants cannot state a legally cognizable stake in the outcome of this action and cannot satisfy the requirements for intervention as of right or permissive intervention.   There is no indication that the Attorney General is inadequate to defend the application and

constitutionality of §5.    At most, applicants have articulated interests in influencing the Court's

determination of the case that could be fully served by participation as an *amici curiae*.

The D.C. Circuit has made clear that "because a Rule 24 intervenor seeks to participate

on an equal footing with the original parties to the suit, he must satisfy the standing requirements

imposed on those parties."    *City of Cleveland v. NRC*, 17 F.3d 1515, 1517 (D.C. Cir. 1994);

*accord Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731-32 (D.C. Cir. 2003); *Rio Grande

Pipeline Co. v. FERC*, 178 F.3d 533, 538 (D.C. Cir. 1999).[1]    The D.C. Circuit has been resolute

in insisting that standing be established.    *See Roeder v. Islamic Rep. of Iran*, 333 F.3d 228, 233

(D.C. Cir. 2003).

Additionally, a motion to intervene as of right under rule 24(a)(1) requires the applicant

to show that "a statute of the United States confers an unconditional right to intervene."    FED. R.

CIV. P. 24(a)(1).    A motion to intervene under rule 24(a)(2) requires the Court to consider four

factors:

> (1) the timeliness of the motion; (2) whether the applicant "claims an interest relating to
> the property or transaction which is the subject of the action"; (3) whether "the
> applicant is so situated that the disposition of the action may as a practical matter impair
> or impede the applicant's ability to protect that interest"; and (4) whether "the
> applicant's interest is adequately represented by existing parties."

*Fund for Animals*, 322 F.3d at 731.    The requirement that an intervenor demonstrate "'an

interest relating to the property or transaction which is the subject of the action' . . . impliedly

refers not to any interest the applicant can put forward, but only to a legally protectable one."

*City of Cleveland*, 17 F.3d at 1517.    Permissive intervention under rule 24(b)(2) requires the

---

[1] *In re Vitamins Antitrust Class Action*, 215 F.3d 26 (D.C. Cir. 2000), expressed "uncertainty over whether standing
is necessary for permissive intervention."    *Id.* at 31.    But other decisions by the court of appeals and this Court
suggest that it is.    *See, e.g.*, *Snyder v. FCC*, No. 04-1022, 2004 U.S. App. LEXIS 11272, at *1-*3 (D.C. Cir. June 7,
2004) (unpublished) ("[A]lthough the court has allowed interested parties to intervene where the party expected to
press the public interest does not appeal, intervenors themselves are required to have standing."); *SEC v. Prudential
Sec. Inc.*, 136 F.3d 153, 156 n.7 (D.C. Cir. 1998) (affirming a denial of permissive intervention when the applicants'
"intervention would have no effect because they have no standing to enforce the consent decree"); *United States v.
Philip Morris USA Inc.*, No. 99-2496 (GK), 2005 U.S. Dist. LEXIS 16196, at *27 (D.D.C. July 25, 2005)
(unpublished) (granting permissive intervention after finding, *inter alia*, that applicants had standing).

applicant to establish, in addition to timeliness, that the "applicant's claim or defense and the main action have a question of law or fact in common" and requires the Court to "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." FED. R. CIV. P. 24(b).

Applicants' motion to intervene should be denied because they lack standing, they have no legally cognizable interests that would be impaired as a practical consequence of this action, and they have made no showing that the Attorney General is inadequate to represent their asserted interest in defending §5. Moreover, permitting a multiplicity of parties—each of whom seeks to duplicate the Attorney General's efforts, inject extraneous matters irrelevant to the issues in this case, or both—would necessarily unduly prejudice the parties and delay judicial resolution of their respective rights.

## I. APPLICANTS LACKS STANDING TO INTERVENE.

Applicants do not even acknowledge their burden to show standing, let alone attempt to meet it. "To establish standing under Article III, a prospective intervenor—like any party—must show: (1) injury-in-fact, (2) causation, and (3) redressability." *Fund for Animals*, 322 F.3d at 732-33; *accord, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136 (1992). And those elements are merely "the irreducible constitutional minimum." *Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136. Rule 24(a)(2)'s requirement that an applicant demonstrate a legally protectable interest is effectively subsumed in the standing inquiry. *Fund for Animals*, 322 F.3d at 735; *see also Roeder*, 333 F.3d at 233.

Further to establish standing in a case allegedly affecting voting rights, individuals must show that they have suffered particularized, "special harms" from alleged discrimination. *United States v. Hays*, 515 U.S. 737, 745, 115 S.Ct. 2431, 2436 (1995). "[A] generalized grievance against allegedly illegal governmental conduct" is not "sufficient for standing to

invoke the federal judicial power." *Id.* at 743, 115 S.Ct. at 2435. Applicants live in Texas, but *not in the district.* To establish standing in a case allegedly affecting voting rights, individuals must—at a minimum—live in the district that is the primary focus of the suit, at least absent specific evidence showing particularized harm. *See United States v. Hays*, 515 U.S. 737, 745, 115 S.Ct. 2431, 2436 (1995) ("[W]here a plaintiff does not live in [a racially gerrymandered] district, he or she does not suffer those special harms, and any inference that the plaintiff has personally been subjected to a racial classification would not be justified absent specific evidence tending to support that inference.").

### A.    Applicants Cannot Show Injury-in-Fact From the District's Attempt to Bail Out of §5 Preclearance.

Injury-in-fact consists of "an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 743, 115 S.Ct. at 2435; *accord Lujan*, 504 U.S. at 560-61, 112 S.Ct. at 2130. Applicants cannot allege such an injury.

Any judgment in this case would be binding only as between the district and the Attorney General. That is, the remedy that the district seeks—exemption from §5—will, if granted, apply only to the district, regardless of the reasoning behind the Court's judgment. Applicants, who all reside outside the district, have no legally protectable interest in this Court's application of particular reasoning in fixing the legal rights of the original parties before it.

"Article III requires more than a desire to vindicate value interests." *Diamond v. Charles*, 476 U.S. 54, 66-67, 106 S.Ct. 1697, 1706 (1986) (holding that the plaintiff physician's "expression of a desire that the Illinois Abortion Law as written be obeyed" was merely an "abstract concern," insufficient to confer standing). Even if applicants lived in the relevant district—which they do not—the remedy that the district seeks could cause them no injury.

Section 5 coverage is not itself a substantive voting right.   Substantive voting rights are those rights that directly implicate voters' participation in the political and electoral processes, and those rights are enshrined for all voters in the Constitution and in §2 of the Voting Rights Act.   *See Georgia v. Ashcroft*, 539 U.S. 461, 477-78, 123 S.Ct. 2498, 2510 (2003) (noting that "Section 5 of the Voting Rights Act has a limited substantive goal: to insure that no voting-procedure changes would be made that would lead to a retrogression in the position of racial minorities with respect to their effective exercise of the electoral franchise," and that §2 requires substantive protections of voting rights not reached by the §5 preclearance inquiry (internal quotation marks omitted)).

Indeed, if there were a substantive right to live under local governmental units that are covered by §5—and thus required to seek permission from the federal government before implementing any local voting change—the vast majority of our nation's citizens would be suffering infringement of that right.   Most American voters, even many in localities with recent histories of voting discrimination, do not live in areas covered by §5.

All local political subdivisions are required to comply with the Constitution and §2. And no relief the district seeks could exempt the district from complying with the substantive provisions of the Voting Rights Act that are designed to fully implement the protection of voting rights enshrined in the Constitution, nor does the district challenge the Act's protection of substantive voting rights.   Neither preclearance nor exemption from preclearance insulates a political subdivision from an action under §2 to enforce substantive voting rights.   *See Georgia*, 539 U.S. at 477-78, 123 S.Ct. at 2510; *Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 335-36, 120 S.Ct. 866, 875-76 (2000).

**B.    Applicants Cannot Show Causation Because No Injury Is Fairly Traceable to Actions of the District.**

To satisfy the causation element of the standing inquiry, applicants must show not just that some cognizable injury exists but also that it is "fairly traceable" to conduct of the district. *E.g.*, *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324 (1984).   Applicants allege no injury-in-fact at all, so none is traceable to actions of the district.

Moreover, any conceivable future injury-in-fact—which, at this time, would be groundless conjecture and hypothesis—would not be caused by the district's terminating §5 coverage but by separate, future conduct *by other jurisdictions* that would, in any event, continue to be prohibited by §2 and the Constitution.   Later, substantive violations of voting rights, if any, will always be subject to challenge under §2, regardless whether they receive preclearance before implementation.   *See Georgia*, 539 U.S. at 477-78, 123 S.Ct. at 2510 (2003); *Bossier Parish Sch. Bd.*, 528 U.S. at 335-36, 120 S.Ct. 866, 875-76 (2000).

**C.    Applicants Cannot Show That Any Cognizable Injury Would Be Redressed by a Judgment Against the District.**

Someone asserting standing must demonstrate, in addition to an actual injury caused by the opposing litigant, that the relief sought is likely to redress that injury.   *E.g., Lujan*, 504 U.S. at 561, 112 S.Ct. at 2136.   And "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"   *Id.*   Applicants cannot establish that any cognizable injury would be redressed by a judgment against the district.

Challenging a "generalized level of Government action" presents "obvious difficulties insofar as proof of causation or redressability is concerned."   *Lujan*, 504 U.S. at 568, 112 S.Ct. at 2140; *accord Allen*, 468 U.S. at 759-60, 104 S.Ct. at 3329 ("[S]uits challenging, not specifically identifiable Government violations of law, but the particular programs agencies establish to carry out their legal obligations . . . are rarely if ever appropriate for federal-court

adjudication.").   As discussed above, living in a covered jurisdiction cannot be a federally protected substantive voting right because, if it is, then most Americans live in areas where that right is violated.   As further discussed above, speculative future injuries of actual substantive voting rights are not redressable by continued §5 coverage but by the continued—and here unchallenged—protections of §2 and the Fifteenth Amendment.   *See Bossier Parish Sch. Bd.*, 528 U.S. at 335-36, 120 S.Ct. at 875-76 (2000) (explaining that existing practices that violate substantive voting rights "cannot be stopped in advance under the extraordinary burden-shifting procedures of § 5, but must be attacked through the normal means of a § 2 action").

## II.    APPLICANTS ARE NOT SO SITUATED THAT THE DISPOSITION OF THIS CASE MAY IMPAIR OR IMPEDE THEIR INTERESTS.

In addition to lacking standing, which is required for intervention of any type, applicants cannot demonstrate that the disposition of this case may impair or impede their ability to protect their interests, as rule 24(a)(2) further requires.   The inquiry for this element of intervention as of right focuses on the "practical consequences" that denying intervention would have for the prospective intervenor.   *Fund for Animals*, 322 F.3d at 735.

As discussed above, applicants have no legally protectable interest in preserving the district's §5 coverage because that coverage, in and of itself, has no direct effect on preservation of substantive voting rights, either inside the district or outside, where applicants reside.   The only practical consequence of a judgment in the district's favor is relief for the district from the burdensome preclearance process; the district must still maintain full compliance with §2 and the Constitution, and it is firmly committed to doing so.   The jurisdictions in which applicants reside will also be required to maintain full compliance with substantive voting rights, regardless of the outcome of this case.   Should any violations of substantive voting rights arise in the

future, they can be challenged under §2, just as they must be now.  *See Bossier Parish Sch. Bd.*, 528 U.S. at 335-36, 120 S.Ct. 866, 875-76 (2000).

Applicants' stated desire to influence the Court's decision in this action is not an intervenor's interest, but merely the type of interest that can be served by participation as an *amicus curiae*.  *See Rio Grande*, 178 F.3d at 539 ("On the record here, there is no doubt that Longhorn is not a proper intervenor.   It appears that Longhorn is really seeking to appear as an amicus."); *City of Cleveland*, 17 F.3d at 1518 (denying the motion for intervention but permitting the applicant to participate as *amicus curiae*); *see also Diamond*, 476 U.S. at 78, 106 S.Ct. at 1711.  One "lacking Article III standing can do no more than that."  *Rio Grande*, 178 F.3d at 539.

### III.    APPLICANTS CANNOT SHOW THAT THE ATTORNEY GENERAL OR OTHER INTERVENORS WILL NOT ADEQUATELY REPRESENT THEIR INTERESTS.

In addition to establishing that they have a cognizable stake in the litigation sufficient to show standing and that the disposition may impair or impede their interests, intervenors under rule 24(a)(2) must show that their interests are not adequately represented by anyone who is already a party to the action.   FED. R. CIV. P. 24(a)(2); *Fund for Animals*, 322 F.3d at 735. Applicants do not and cannot show that the Attorney General is inadequate to defend their claimed interest in keeping the district covered by §5.

Although the burden of establishing inadequate representation has been described as "minimal," *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10, 92 S.Ct. 630, 636 n.10 (1972), "the fact that the government is a party makes it more difficult for movants for intervention in this Circuit to meet that minimal burden."  S*weet Home Chapter of Cmtys. for Great Or. v. Lujan*, No. 91-1468, 1991 U.S. Dist. LEXIS 17449, at *7 (D.D.C. Dec. 10, 1991) (unpublished); *see Envtl. Def. Fund, Inc. v. Higginson*, 631 F.2d 738, 740 (D.C. Cir. 1979);

*Humane Soc'y of United States v. Clark*, 109 F.R.D. 518, 521 (D.D.C. 1985); *cf. Nuesse v. Camp*, 385 F.2d 694, 702-04 (D.C. Cir. 1967) (state banking commissioner was permitted to intervene when his more general interest in the competitive equality of state and national banks was not adequately represented by a single state bank).   That is because a governmental entity, under the principle of *parens patriae*, "is presumed to represent the interests of all its citizens." *Higginson*, 631 F.2d at 740; *accord Sweet Home Chapter*, 1991 U.S. Dist. LEXIS 17449, at *6 ("Certainly federal agencies are parts of a government body, and as such, are charged with enforcing the public interest.   The parens patriae doctrine would thus seem to apply equally well to government agencies as to states.").

Indeed, the office of the Attorney General—which already adequately represents applicants' interests in this case—is the very government agency that applicants is best situated to protect their substantive voting rights through the preclearance process.   *Cf. Little Rock Sch. Dist. v. N. Little Rock Sch. Dist.*, 378 F.3d 774, 780-81 (8th Cir. 2004) (denying intervention by a group of voters when "the state directly represented the Bollen Group's asserted interest by seeking to proceed with the election pursued by its citizens under state law and by specifically adopting the positions advanced by the Bollen Group").   There is more than a little irony in applicants' assertion that they need to intervene because the Attorney General cannot adequately defend the very procedure that the statute charges the Attorney General with enforcing.   Any finding that the Attorney General is inadequate to represent applicants' interests would be inconsistent with the very disposition applicants seeks for this case.

The Attorney General is presumed adequate to represent applicants' asserted interest in defending the enforceability of §5, and applicants show nothing sufficient to overcome that presumption.   Any particularized interest they have can "be subsumed within the shared interest of the citizens" represented by the Attorney General.   *Dimond v. District of Columbia*, 792 F.2d

179, 193 (D.C. Cir. 1986); *see* *Higginson*, 631 F.2d at 740 (holding that, although applicants may have had more direct economic interest than did the state, they could not overcome the presumption of adequate representation when "there appear[ed] to be no possible divergence between their position and the state's position on the primary issue").

"[P]artial congruence of interests" may "not guarantee the adequacy of representation." *Fund for Animals*, 322 F.3d at 737.    But there is complete congruence in this case.    Comparing the Attorney General's answer with applicants' motion papers and proposed answer demonstrates no divergence in the objective each hopes to achieve and the defenses each proposes to raise.    *Cf. Blake v. Pallan*, 554 F.2d 947, 954-55 (9th Cir. 1977) (considering whether the interests of an original party would lead it to make all of the prospective intervenor's arguments).    Inadequacy has not been shown when, as in this case, arguments "would be merely cumulative."    *Higginson*, 631 F.2d at 740.    And "[i]t is not sufficient that the party seeking intervention merely disagrees with the litigation strategy or objectives of the party representing its interests."    *Little Rock Sch. Dist.*, 378 F.3d at 780.

Nothing has yet occurred that might indicate inadequacy of representation, for example, the Attorney General's deciding to drop a meritorious defense or not to appeal an adverse ruling. *See, e.g.*, *Smuck v. Hobson*, 408 F.2d 175, 181 (D.C. Cir. 1969).[2]    There is simply no indication that the Attorney General will compromise the full and vigorous defense of §5 by any act or failure to act.

In addition, this Court has already granted motions to intervene by five residents of the district and two organizations—Texas State Conference of NAACP and Austin Branch of the NAACP—all of whom profess interests identical to those applicants profess.    Even if applicants

---

[2] A motion to intervene may still be timely following a new development, like failure to appeal an adverse judgment, that, for the first time, demonstrates inadequacy.    *Smuck*, 408 F.2d at 181-82.

could show that their interests were not adequately represented by the Attorney General, they are more than adequately represented by those intervenors who have already been made parties to this litigation. Clearly, a needless multiplicity of parties asserting indistinguishable interests is the very problem that the inadequacy requirement is intended to avoid.

## IV.    APPLICANTS SHOULD BE DENIED PERMISSIVE INTERVENTION BECAUSE THEIR DUPLICATIVE PARTICIPATION WOULD CAUSE UNDUE DELAY AND PREJUDICE.

Even if applicants had standing and established that their "claim or defense and the main action have a question of law or fact in common," FED. R. CIV. P. 24(b), the Court should deny permissive intervention because it "will unduly delay or prejudice the adjudication of the rights of the original parties." *Id.* Applicants essentially propose to duplicate the efforts of the Attorney General to defend the application of §5 and, particularly, those of the several other parties who have already been permitted to intervene.

The inefficiencies inherent in duplicative and cumulative effort are precisely the type of danger that the undue delay and prejudice standard is designed to avert. The standard "presumably captures all the possible drawbacks of piling on parties." *Massachusetts Sch. of Law at Andover, Inc. v. United States*, 118 F.3d 776, 782 (D.C. Cir. 1997). When parties multiply unnecessarily through permissive intervention, "the concomitant issue proliferation and confusion will result in delay as parties and court expend resources trying to overcome the centrifugal forces springing from intervention, and prejudice will take the form not only of the extra cost but also of an increased risk of error." *Id.* When a court permits full participation by parties who "only marginally satisfy the standing requirements" and are not yet "truly aggrieved" it will be "repeatedly required to respond to vague hypotheticals and speculation rather than concrete and actual harms." *Indep. Democratic Party v. Rokita*, No. 1:05-CV-0634-SEB-VSS, 2006 U.S. Dist. LEXIS 20321, at *129 n.75 (S.D. Ind. April 14, 2006) (unpublished).

13

## V.    AT A MINIMUM, THE COURT SHOULD ATTEMPT TO MINIMIZE INHERENT DELAY AND PREJUDICE BY REQUIRING ALL INTERVENORS-DEFENDANTS TO CONSOLIDATE THEIR EFFORTS.

Applicants' motion to intervene as a defendant is one of at least seven such motions filed in this case so far.   Two entities and five individuals have already been granted intervention, at least four motions remain pending before the Court, and counsel for the district has been advised that additional motions to intervene may soon be filed.   This mushrooming of parties clearly prejudices the district, a small public entity with limited resources, and unavoidably generates delay and complexity in administering this litigation.   *See Massachusetts Sch. of Law*, 118 F.3d 776 at 782.   The Court, particularly if it is inclined to permit this applicant to also intervene as defendants, should, at the very least, order all intervenors-defendants to consolidate their efforts so as to minimize delay, prejudice, and complexity.

Specifically, the Court should require those intervenors to appoint or have appointed a single counsel as the liaison to the Court and the original parties and to consolidate discovery, motion practice, and briefing and, whenever possible, to coordinate their activities and filings with those of the Attorney General.   Requiring multiple intervenors to establish a unitary point of communication and conduct a unified effort would at least relieve the district, the Attorney General, and the Court of some of the burden of coordinating the conduct of this litigation with a legion of counsel and responding to numerous redundant filings and discovery requests, reducing the drain on scarce litigation and judicial resources.

### CONCLUSION

For these reasons, the Court should deny applicants' motion to intervene and, at a minimum, require all intervenors-defendants to consolidate their litigation efforts.

DATED:    November 13, 2006              Respectfully submitted:

                                         /s/ Gregory S. Coleman

Gregory S. Coleman
(admitted *pro hac vice*)
Christian J. Ward
(admitted *pro hac vice*)
PROJECT ON FAIR REPRESENTATION
8911 Capital of Texas Hwy., Ste. 1350
Austin, Texas  78759
[Tel.] (512) 349-1930
[Fax] (512) 527-0798

/s/ Erik S. Jaffe
Erik S. Jaffe
D.C. Bar No. 440112
ERIK S. JAFFE, P.C.
5101 34th Street N.W.
Washington, D.C .20008
[Tel.] (202) 237-8165
[Fax]  (202) 237-8166

*Attorneys for Plaintiff*
*Northwest Austin Municipal*
*Utility District No. One*

CERTIFICATE OF SERVICE

I hereby certify that I served true copies of Plaintiff's Memorandum of Points and Authorities in Opposition to Motion by Angie Garcia, Jovita Casares, and Ofelia Zapata and the proposed Order denying the motion upon counsel for the parties and for applicants to intervene by United States First Class postage-paid mail and by e-mail to the parties indicated below on November 13, 2006.

Wan J. Kim
Jeffrey A. Taylor
John K. Tanner
H. Christopher Coates
T. Christian Herren Jr
chris.herren@usdoj.gov
Sarah E. Harrington
Christy A. McCormick
Christy.mccormick@usdoj.gov
Civil Rights Division
UNITED STATES DEPARTMENT OF JUSTICE
Room 7254 – NWB
950 Pennsylvania Ave., N.W.
Washington, D.C.    20530

*Counsel for Defendant*

Jon M. Greenbaum
jgreenbaum@lawyerscommittee.org
Benjamin J. Blustein
bblustein@lawyerscommittee.org
Jonah H. Goldman
jgoldman@lawyerscommittee.org
LAWYERS COMMITTEE FOR CIVIL RIGHTS
    UNDER LAW
1401 New York Avenue, NW, Suite 400
Washington, D.C. 20005

*Counsel for Intervenors-Defendants Texas
State Conference of NAACP and Austin
Branch of the NAACP*

Seth P. Waxman
seth.waxman@wilmerhale.com
John A. Payton
john.payton@wilmerhale.com
Paul R.Q. Wolfson
paul.wolfson@wilmerhale.com
Ariel B. Waldman
ariel.waldman@wilmerhale.com
WILMER CUTLER PICKERING HALE &
    DORR LLP
1875 Pennsylvania Ave. N.W.
Washington, D.C. 20006

*Counsel for Intervenors-Defendants Texas State
Conference of NAACP and Austin Branch of the
NAACP*

Dennis C. Hayes
General Counsel
NATIONAL ASSOCIATION FOR THE
    ADVANCEMENT OF COLORED PEOPLE, INC.
NAACP National Office
4805 Mt. Hope Drive
Baltimore, Maryland    21215

*Counsel for Intervenors-Defendants Texas State
Conference of NAACP and Austin Branch of the
NAACP*

16

Nina Perales
nperales@maldef.org
MEXICAN AMERICAN LEGAL DEFENSE &
   EDUCATIONAL FUND
110 Broadway, Suite 300
San Antonio, Texas    78205

*Counsel for Intervenors-Defendants Lisa
and Gabriel Diaz*

Theodore Shaw
Jacqueline A. Berrien
Norman J. Chachkin
nchachkin@naacpldf.org
Debo P. Adegbile
NAACP LEGAL DEFENSE AND
   EDUCATIONAL FUND, INC.
99 Hudson Street, Suite 1600
New York, New York    10013

*Counsel for Intervenors-Defendants Rodney
and Nicole Louis*

Elliott M. Mincberg
emincberg@pfaw.org
David J. Becker
People for the American Way Foundation
2000 M Street NW, Suite 400
Washington, D.C.    20036

*Counsel for Applicant People for the
American Way*

J. Gerald Hebert
jghebert@comcast.net
5019 Waple Lane
Alexandria, Virginia    22304

*Counsel for Applicant Travis County*

Joseph E. Sandler
sandler@sandlerreiff.com
SANDLER REIFF & YOUNG PC
50 E St. SE #300
Washington, D.C.    20003

*Counsel for Intervenors-Defendants Lisa and
Gabriel Diaz*

Kristen M. Clarke
NAACP LEGAL DEFENSE AND EDUCATIONAL
   FUND, INC.
1444 Eye Street, N.W., 10th Floor
Washington, D.C.    20005

*Counsel for Intervenors-Defendants Rodney and
Nicole Louis*

Max Renea Hicks
rhicks@renea-hicks.com
1250 Norwood Tower
114 West 7th Street
Austin, Texas    78701

*Counsel for Applicant Travis County*

Laughlin McDonald
Neil Bradley
courtfilings@aclu-nca.org
AMERICAN CIVIL LIBERTIES
   UNION FOUNDATION, INC.
2600 Marquis One Tower
245 Peachtree Center Avenue
Atlanta, Georgia    30303

*Counsel for Applicant Nathaniel Lesane*

17

Lisa Graybill
Legal Director
courtfilings@aclu-nca.org
ACLU FOUNDATION OF TEXAS
1210 Rosewood Ave.
Austin, Texas    78702

*Counsel for Applicant Nathaniel Lesane*

Art Spitzer
artspitzer@aol.com
courtfilings@aclu-nca.org
Legal Director
ACLU OF THE NATIONAL CAPITAL AREA
1400 20th Street N.W., Suite 119
Washington, D.C.    20036

*Counsel for Applicant Nathaniel Lesane*

Jose Garza
jgarza@trla.org
Judith A. Sanders-Castro
George Korbel
Texas RioGrande Legal Aid, Inc.
1111 N. Main Street
San Antonio, Texas    78212

*Counsel for Applicants Angie Garcia,*
*Jovita Casarez and Ofelia Zapata*

Alpha Hernandez
ahernandez@trla.org
Eloy Padilla
epadilla@trla.org
Texas RioGrande Legal Aid, Inc.
309 Cantu Street
Del Rio, Texas    78212

*Counsel for Applicants Angie Garcia,*
*Jovita Casarez and Ofelia Zapata*

Michael T. Kilpatrick
mkirkpatrick@citizen.org
Brian Wolfman
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC    20009

*Counsel for Applicants Angie Garcia,*
*Jovita Casarez and Ofelia Zapata*

/s/ Christian J. Ward
Christian J. Ward