# IN UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NORTHWEST AUSTIN MUNICIPAL
UTILITY DISTRICT NUMBER ONE      :

             Plaintiff,      :

               v.          :

ALBERTO GONZALES, in his official      :
capacity as Attorney General of the United
States of America      :

             Defendant,      :

WINTHROP GRAHAM, et al.      :
           Applicants for Intervention.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

Civil Action No. 1:06-CV-01384
(PF, ES, DT)

## STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE AS DEFENDANTS ON BEHALF OF WINTHROP GRAHAM, YVONNE GRAHAM, WENDY RICHARDSON, JAMAL RICHARDSON AND MARISA RICHARDSON

Theodore Shaw
Director-Counsel
Jacqueline A. Berrien
Norman J. Chachkin (D.C. Bar
No.235283)
Debo P. Adegbile
NAACP Legal Defense and
    Educational Fund, Inc.
99 Hudson Street, Suite 1600
New York, New York 10013
(212) 219-1900

Kristen M. Clarke
NAACP Legal Defense and
    Educational Fund, Inc.
1444 Eye Street, N.W., 10th Floor
Washington, D.C. 20005
(202) 682-1300

Danielle C. Gray
Four Times Square
New York, NY 10036-6522

Samuel Spital
Holland & Knight
195 Broadway, 24th Floor
New York, NY 10007
(212) 513-3454

## TABLE OF CONTENTS

<u>Page</u>

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT .................................................................................................1

FACTUAL BACKGROUND .......................................................................................................3

ARGUMENT ...................................................................................................................................4

      A.    Proposed Defendant Intervenors Should be Permitted to Intervene
            as of Right Pursuant to Federal Rule of Civil Procedure 24(a) .............................4

      B.    As a General Matter, Courts Recognize the Particular Significance
            of Rule 24 Intervention in Voting Rights Cases ......................................................5

      C.    Proposed Defendant Intervenors' Motion to Intervene Is Timely .........................7

      D.    Proposed Defendant Intervenors Possess a Statutorily Created
            Right to Intervene Under Section 4(a) of the Voting Rights Act ...........................8

      E.    Proposed Defendant Intervenors Satisfy the Requirements of
            Article III Standing ...................................................................................................12

      F.    In the Alternative, Permissive Intervention is Appropriate in this
            Case ............................................................................................................................13

CONCLUSION ..............................................................................................................................15

## TABLE OF AUTHORITIES

### CASES

Abrams v. Johnson, 117 S. Ct. 1925 (1997) ....................................................................7

Allen v. State Board of Elections, 393 U.S. 544 (1969) ...............................................9

American Horse Prot. Association, Inc. v. Veneman, 200 F.R.D. 153
    (D.D.C. 2000) ............................................................................................................5

Beer v. United States, 374 F. Supp. 363 (D.D.C. 1974), vacated and
    remanded on other grounds, 425 U.S. 130 (1976)...........................................7

Bossier Parish Sch. Bd. v. Reno, 157 F.R.D. 133 (D.D.C. 1994)....................................6

Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co., 331 U.S. 519
    (1947)...................................................................................................................8. 12

Building & Construction Trades Department v. Reich,
    40 F.3d 1275 (D.C. Cir. 1994)................................................................................12

Busbee v. Smith, 549 F. Supp. 494 (D.D.C. 1982), aff'd 459 U.S. 1166
    (1983) ........................................................................................................................7

Nationwide Mutual Insurance Co. v. National REO Management, Inc.,
    205 F.R.D. 1 (D.D.C. 2000)......................................................................................8

S. Christian Leadership Conference v. Kelley, 747 F.2d 777 (D.C. Cir.
    1984) .......................................................................................................................12

City of Cleveland v. NRC, 17 F.3d 1515 (D.C. Cir. 1994) ..............................................12

City of Lockhart v. United States, 460 U.S. 125 (1983)....................................................7

City of Petersburg, Virginia v. United States, 354 F. Supp. 1021 (D.D.C.
    1972), aff'd, 410 U.S. 962 (1973) ............................................................................7

City of Port Arthur v. United States, 517 F. Supp. 987 (D.D.C. 1981)............................7

City of Richmond, Virginia v. United States, 376 F. Supp. 1344 (D.D.C.
    1974), vacated and remanded on other grounds, 422 U.S. 358 (1975).......................7

Clark v. Putnam County, 168 F.3d 458 (11th Cir. 1999).................................................7

Commack Self-Service Kosher Meats, 170 F.R.D 93, 106 (E.D.N.Y 1996) ...................13

County Council of Sumter County v. United States,
    555 F. Supp. 694 (D.D.C. 1983) ..........................................................................7

Crow Tribe of Indians v. Norton, Slip. Op., 2006 WL. 908048 (D.D.C.
    2006) ........................................................................................................................8

Diamond v. Charles, 476 U.S. 54 (1986) ..........................................................................12

Donaldson v. United States, 400 U.S. 517 (1971) ...........................................................11

Georgia v. Ashcroft, 539 U.S. 461 (2003) ..........................................................................6

German v. Federal Home Loan Mortgage Corp.,
    899 F. Supp. 1155 (S.D.N.Y. 1995) ....................................................................5

Hirshon v. Republic of Bolivia, 979 F. Supp. 908 (D.D.C. 1997) .....................................8

Huron Environmental Activist League v. United States Environmental
    Protection Agency, 917 F. Supp. 34 (D.D.C. 1996) ............................................13

LULAC v. Perry, 548 U.S. 34 (2006) .................................................................................2

Louisiana House of Representatives v. Ashcroft et. al,
    Civ. No. 02-62 (D.D.C. June 6, 2002) .................................................................6

Meek v. Metropolitan Dade County, 985 F.2d 1471 (11th Cir. 1993) ...............................6

Military Toxics Project v. EPA, 146 F.3d 948 (D.C.Cir.1998) ........................................12

Miller v. Blackwell, 348 F. Supp. 2d 916 (S.D. Ohio 2004) .............................................7

Miller v. Johnson, 515 U.S. 900 (1995) .............................................................................7

Mova Pharm.,Corp. v. Shalala, 140 F.3d 1060, 1074  (D.C. Cir. 1998) ..........................12

New York State v. United States, 65 F.R.D. 10 (D.D.C. 1974) .........................................7

Northwest Austin Municipal Utility District Number One v. Gonzales,
    No. 06-01384 (D.D.C. Nov. 9, 2006) .................................................................13

Nuesse v. Camp, 385 F.2d 694 (D.C. Cir. 1967) .........................................................5, 13

Phar-Mor, Inc. v. Coopers & Lybrand, 22 F.3d 1228 (3d Cir. 1994) ................................9

Rio Grande Pipeline Co. v. FERC, 178 F.3d 533 (D.C. Cir. 1999) .................................12

Roberts v. Wamser, 883 F.2d 617 (8th Cir.1989)................................................................10

Ruiz v. Estelle, 161 F.3d 814 (5th Cir. 1998) .......................................................................9

Shaw v. Hunt, 861 F. Supp. 408 (E.D.N.C. 1994)...............................................................7

Sixty-Three Strategic Investment Funds v. United States, No. C 05- 1123
       VRW, 2005 WL 2467743 (N.D. Cal. Oct. 6, 2005) ....................................................9

Smith v. Cobb County Board of Elections and Registration,
       314 F. Supp. 2d 1274 (N.D. Ga. 2002) ......................................................................6

Smoke v. Norton, 252 F.3d 468 (D.C. Cir. 2001)................................................................8

Turn Key Gaming, Inc. v. Oglala Sioux Tribe, 164 F.3d 1080 (8th Cir.
       1999) ...........................................................................................................................5

Vera v. Richards, 861 F. Supp. 1304 (S.D.Tex. 1994) ......................................................7

Wilderness Society v. Babbitt, 104 F. Supp. 2d 10 (D.D.C. 2000) ....................................5

**STATUTES**

11 U.S.C. § 1109(b) ............................................................................................................9

42 U.S.C. 1973a ................................................................................................................10

42 U.S.C. § 1973b(a)(4)...................................................................................1, 4, 5, 7, 9, 10

42 U.S.C. § 1973c .........................................................................................................1, 6

Fed. R. Civ. P. 24(a)(1).................................................................................4, 8,9, 11, 13

Pub. L. 94-73, §401 (1975)...............................................................................................10

S. Rep. No. 94-295, 94th Cong., 1st Sess. ...................................................................10, 11

Proposed Defendant-Intervenors, Winthrop Graham, Yvonne Graham, Wendy Richardson, Jamal Richardson and Marisa Richardson, (collectively "Proposed Defendant Intervenors"), by their undersigned counsel, respectfully submit this statement of points and authorities in support of their motion to intervene. This motion seeks intervention as of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure, and Section 4(a)(4) of the Voting Rights Act of 1965 ("VRA" or "the Act"). *See* 42 U.S.C. § 1973b(a)(4). In the alternative, Proposed Defendant Intervenors seek permissive intervention pursuant to Rule 24(b)(2).

## PRELIMINARY STATEMENT

The Northwest Austin Municipal Utility District Number One (Plaintiff), filed this action on August 4, 2006, seeking to terminate the municipal utility district's covered status under the bailout provision codified within Section 4(a) of the Voting Rights Act, 42 U.S.C. §1973b(a). In the alternative, Plaintiff's Complaint challenges the constitutionality of the Section 5 preclearance provision of the Act, 42 U.S.C. § 1973c. This motion to intervene is filed on behalf of five African-American residents of the Northwest Austin Municipal District Number One who are similarly situated to, and represented by the same counsel as, the Louis Defendant Intervenors. Proposed Defendant Intervenors are aggrieved individuals within the meaning of the statute who have a direct and substantial stake in the outcome of this action as members of a protected class that the VRA was designed to protect. Proposed Defendant Intervenors seek to have the VRA's provisions enforced in accordance with Congressional intent, and its constitutionality upheld. Indeed, Texas's very recent history of discrimination against minority voters illustrates that discrimination against minority voters remains a very real

threat, that racial polarization continues to affect the opportunities of minority voters to elect candidates of choice, and that voting discrimination against minority communities takes root at times when a minority community is beginning to have the ability to exert political influence. *See LULAC v. Perry*, 548 U.S. 34 (2006).

This motion to intervene is made with the Proposed Defendant Intervenors' commitment to and understanding of this Court's interest in the efficient disposition of the proceedings in this matter. To that end, Proposed Defendant Intervenors are committed to (i) participating in the action on the same schedule established for the existing parties; (ii) avoiding delays or the unnecessary duplication of effort in those areas satisfactorily addressed and represented by the existing Defendant to the extent possible; (iii) coordinating pretrial and trial proceedings with the Defendants to the extent possible; and (iv) working with Plaintiff's counsel to be available for depositions on a schedule that is convenient.

Plaintiff did not elicit or seek the views of minority voters such as Proposed Defendant Intervenors before or as part of the process of deciding to pursue bailout under the VRA, much less in deciding whether to challenge Section 5's constitutionality. Although Plaintiff is not required to hold public hearings or provide an opportunity for minority voters to participate in the deliberative process leading up to its decision to seek bailout pursuant to Section 4(a) of the Act, these facts underscore the point that the Proposed Defendant Intervenors have interests that are not represented by the Plaintiff even though Plaintiff is a governmental subunit. Proposed Defendant Intervenors also possess legally direct, substantial and protected interests in the subject matter of this litigation that will not be adequately represented by Defendant Attorney General

Gonzales.  Because the Proposed Defendant Intervenors meet all of the requirements for intervention as of right under Rule 24(a) and Section 4(a), this motion should be granted. In the alternative, the facts and circumstances of the case warrant permissive intervention.

## FACTUAL BACKGROUND

The Northwest Austin Municipal Utility District Number One is located in Austin, Texas.  The district was created in the late 1980s to provide infrastructural, water and wastewater service to an area known as the Canyon Creek residential subdivision. Because the district falls within the covered State of Texas, it is subject to the Section 5 preclearance requirement of the Act.  As a result, the district is required to submit all of its voting changes for administrative or judicial preclearance in order to determine whether the changes place minority voters in a worse position or were adopted with impermissible purpose.

Plaintiff alleges that the Section 5 preclearance process is both "costly and burdensome." *See* Cplt. at 12.   In addition, Plaintiff alleges that it has always supported "full and open voting rights for all residents of the district." *See* Cplt. at 7.  Moreover, Plaintiff claims that the preclearance process imposes costs on jurisdictions that are monetary in nature and other costs that can also be measured by the "federal government's infringement on the sovereignty interests of state and local governments." *See* Cplt. at 13.

To support its claim of eligibility for bailout, the district alleges that during the past ten years: (a) no test or device has been used with the purpose or with the effect of denying or abridging the right to vote on account of race or color; (b) there have been no adverse final judgments, no consent decrees, settlements or judgments determining that

denials or abridgements to the right to vote on account or race, color or membership in a language minority group have occurred in the district; (c) federal examiners have not been assigned to the district; (d) the district has complied with Section 5 and all voting changes have been reviewed under Section 5 prior to their implementation; and (e) no change has been subject to an objection by the Attorney General or the denial of a Section 5 declaratory judgment in the District Court for the District of Columbia. *See* Cplt. at 15. Further, the district alleges that it has made constructive efforts during the past ten years to prevent intimidation or harassment of persons seeking to vote and to expand opportunities for voter participation. *See* Cplt. at 16. Finally, the district alleges that there are no pending lawsuits against the district concerning voting discrimination. *See* Cplt. at 17.

Defendant Attorney General Gonzales filed his Answer on October 16, 2006. Defendant Attorney General Gonzales denies that the district is eligible for bailout under Section 4(a) of the VRA and denies Plaintiff's claims regarding the unconstitutionality of the VRA's Section 5 preclearance provision.

## ARGUMENT

### A.     Proposed Defendant Intervenors Should be Permitted to Intervene as of Right Pursuant to Federal Rule of Civil Procedure 24(a)

Federal Rule of Civil Procedure 24(a), concerning intervention as a matter of right, states: "[u]pon timely application anyone shall be permitted to intervene in an action: (1) when a statute of the United States confers an unconditional right to intervene . . . ." Proposed Defendant Intervenors satisfy the requirements to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(1) and Section 4(a)(4) of the VRA, 42 U.S.C. §1973b(a)(4). Federal courts, including those in the D.C. Circuit, have emphasized that Rule 24's

intervention requirements should be construed flexibly and liberally in favor of intervention. *See*, *e.g.*, *Nuesse v. Camp*, 385 F.2d 694, 702-04 (D.C. Cir. 1967) (recognizing need for liberal application of the rules permitting intervention as of right); *American Horse Prot. Ass'n., Inc. v. Veneman*, 200 F.R.D. 153, 157 (D.D.C. 2001) (noting the "liberal and forgiving" nature of the interest prong of the intervention as of right test); *Wilderness Society v. Babbitt*, 104 F. Supp. 2d 10 (D.D.C. 2000) (recognizing D.C. Circuit's liberal approach to intervention). *See also Turn Key Gaming, Inc. v. Oglala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999) ("Rule 24 should be construed liberally, and doubts resolved in favor if the proposed intervenor."); *German v. Federal Home Loan Mortgage Corp.*, 899 F. Supp. 1155, 1166 (S.D.N.Y. 1995) (noting "liberal construction" of intervention requirements).

Here, Proposed Defendant Intervenors' motion comfortably satisfies both prongs of Rule 24(a)(1)'s requirements for intervention as of right. Section 4(a)(4) of the VRA expressly states: "Any aggrieved party may as of right intervene at any stage in [a bailout] action." 42 U.S.C. §1973b(a)(4). As discussed further below, Proposed Defendant Intervenors are "aggrieved part[ies]" within the meaning of the statute. In addition, as also discussed below, Proposed Defendant Intervenors' motion to intervene is timely. Taken together, these considerations establish that the Proposed Defendant Intervenors' may intervene as of right pursuant to Rule 24(a)(1) and § 4(a) of the Act.

**B.      As a General Matter, Courts Recognize the Particular Significance of Rule 24 Intervention in Voting Rights Cases**

This Court, and others, routinely grant intervention in voting rights cases to African-American and other minority voters, recognizing the that the interests of the intended beneficiaries of the VRA may well add necessary perspectives and arguments to

legal proceedings involving interpretations of the Act, or that those interests may diverge

from the positions of institutional parties such as the Department of Justice.  The Court

has granted intervention to the similarly situated Louis Intervenors, represented by the

same counsel as Proposed Defendant Intervenors, in this action, and intervention has

been permitted in a broad range of other voting rights matters, including declaratory

judgment actions and matters challenging the constitutionality of Section 5 of the Voting

Rights Act, 42 U.S.C. § 1973c.  *See*, *e.g.*, *Georgia v. Ashcroft*, 539 U.S. 461, 477 (2003)

(upholding D.C. District Court's grant of private parties' motion to intervene on grounds

that intervenors' interests were not adequately represented by the existing parties and

finding that, as general matter, private parties may intervene in § 5 declaratory judgment

actions where they meet the requirements of Rule 24); *Louisiana House of

Representatives v. Ashcroft et. al*, Civ. No. 02-62 (D.D.C. June 6, 2002) (granting

coalition of African-American and other voters' motion to intervene in a Section 5

declaratory judgment action seeking preclearance of redistricting plan where

constitutional claims were asserted; voters were represented by the NAACP Legal

Defense and Educational Fund, Inc.); *Smith v. Cobb County Bd. of Elections and

Registration*, 314 F. Supp. 2d 1274, 1311 (N.D. Ga. 2002) (African-American voters

were entitled to intervene in suit concerning reapportionment of districts since they

asserted a legitimate interest that was not adequately represented by any of the parties);

*Bossier Parish Sch. Bd. v. Reno*, 157 F.R.D. 133 (D.D.C. 1994) (granting intervention to

African-American voters from Louisiana in declaratory judgment action concerning

Section 5 of the Act); *Meek v. Metropolitan Dade County*, 985 F.2d 1471, 1478 (11th Cir.

1993) (ruling that voters are entitled to intervene in voting rights suit concerning at-large

system); *City of Lockhart v. United States*, 460 U.S. 125, 129 (1983) (noting intervention

of Hispanic voters); *County Council of Sumter County v. United States*, 555 F. Supp. 694,

697 (D.D.C. 1983) (granting intervention to African-American voters in Section 5

declaratory judgment action); *Busbee v. Smith*, 549 F. Supp. 494 (D.D.C. 1982)

(acknowledging intervention of African-American voters in Section 5 declaratory

judgment action), *aff'd* 459 U.S. 1166 (1983); *accord City of Port Arthur v. United States*,

517 F. Supp. 987, 991 n.2 (D.D.C. 1981); *New York State v. United States*, 65 F.R.D. 10,

12 (D.D.C. 1974); *City of Richmond, Virginia v. United States*, 376 F. Supp. 1344, 1349

n.23 (D.D.C. 1974), *vacated and remanded on other grounds*, 422 U.S. 358 (1975); *Beer

v. United States*, 374 F. Supp. 363, 367 n.5 (D.D.C. 1974), *vacated and remanded on

other grounds*, 425 U.S. 130, 133 n.3 (1976); *City of Petersburg, Virginia v. United

States*, 354 F. Supp. 1021, 1024 (D.D.C. 1972), *aff'd*, 410 U.S. 962 (1973).[1]

**C.    Proposed Defendant Intervenors' Motion to Intervene Is Timely**

Proposed Defendant Intervenors must demonstrate that their motion is timely.

However, in considering timeliness pursuant to Rule 24(a)(1), it is important to note that

Section 4(a)(4) of the Voting Rights Act provides that aggrieved parties may intervene as

of right "at any stage in [a bailout] action," 42 U.S.C. §1973b(a)(4).

---

[1]    District courts have also regularly permitted intervention in other voting rights cases, including those in which the United States has been a party. For example, in *Miller v. Blackwell*, 348 F. Supp. 2d 916 (S.D. Ohio 2004), the court permitted intervention in a suit arising under the National Voter Registration Act after determining that claimants' interest in avoiding dilution of their votes was different from the interests of state election officials, thus reducing likelihood that those officials could adequately represent interests of the intervenors. *See also, e.g., Shaw v. Hunt*, 861 F. Supp 408, 420 (E.D.N.C. 1994); *Vera v. Richards*, 861 F. Supp. 1304, 1310 (S.D.Tex. 1994); *Miller v. Johnson*, 515 U.S. 900, 909 (1995); *Abrams v. Johnson*, 117 S. Ct. 1925, 1930 (1997); *Clark v. Putnam County*, 168 F.3d 458, 462 (11th Cir. 1999) ("As proposed intervenors observe, voters have been permitted to intervene in a large number – if not all – of the actions involving a *Shaw v. Reno* claim.")

In general, courts assess timeliness by considering factors such as the applicant's interest in the case, the need for intervention to preserve the applicant's rights, the extent of prejudice to the existing parties, the extent of prejudice to the proposed intervenor if the application is denied, and any unusual circumstances in favor of or opposed to intervention. *See Smoke v. Norton*, 252 F.3d 468, 470-471 (D.C. Cir. 2001) (setting forth timeliness factors); *Hirshon v. Republic of Bolivia*, 979 F. Supp. 908, 913 n.5 (D.D.C. 1997) (same).

Proposed Defendant Intervenors' motion satisfies this timeliness standard. Here, the discovery period has not yet concluded (indeed, depositions have not even begun), no dispositive motions have yet been filed and oral argument has not been heard. Moreover, Proposed Defendant Intervenors seek to participate in the case on the same schedule as the other parties. *Cf. Nationwide Mut. Ins. Co. v. Nat'l REO Mgmt., Inc.*, 205 F.R.D. 1, 6 (D.D.C. 2000) (memorandum opinion) (intervention motion six months after filing of action is timely); *But cf. Crow Tribe of Indians v. Norton*, Slip. Op. 2006 WL 908048 (D.D.C. 2006) (rejecting motion to intervene filed 4 years after filing of Complaint and 2 months after execution of settlement agreement). Under these circumstances, this motion is timely and granting intervention pursuant to Rule 24(a)(1) and § 4(a) would not prejudice the existing parties or alter the court's existing scheduling order.

**D.      Proposed Defendant Intervenors Possess a Statutorily Created Right to Intervene Under Section 4(a) of the Voting Rights Act**

Fed. R. Civ. P. 24(a)(1) permits intervention as of right when a statute of the United States confers an unconditional right to intervene. This type of intervention recognizes the validity of unconditional rights to intervene granted by federal statutes. *See*, *e.g.*, *Brotherhood of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 526, 67

(1947) (statute conferred right to intervene by stating that "[r]epresentatives of employees of a carrier, duly designated as such, may intervene and be heard in any proceeding arising under this Act affecting such employees"); *Sixty-Three Strategic Investment Funds v. United States*, No. C 05- 1123 VRW, 2005 WL 2467743 (N.D. Cal. Oct. 6, 2005) (finding that intervenors had an unconditional statutory right to intervene under FRCP 24(a)(1)); *Ruiz v. Estelle*, 161 F.3d 814, 816 (5th Cir. 1998) (petitioners had right to intervene under 18 U.S.C. § 3626(a)(3)(F), which provides a "right to intervene in any proceeding relating to such relief"); *Phar-Mor, Inc. v. Coopers & Lybrand*, 22 F.3d 1228, 1230-31 (3d Cir. 1994) (11 U.S.C. § 1109(b) provides creditors with an unconditional right to intervene in bankruptcy proceedings pursuant to Rule 24(a)(1), because it provides that a creditors' committee "may raise and may appear and be heard on any issue in a case [under Chapter 11]").  Similarly, as discussed above, § 4(a), the bailout provision of the VRA, grants aggrieved parties an unconditional statutory right to intervene in these matters.  *See* 42 U.S.C. § 1973b(a)(4).

The statutorily created right of intervention under Section 4(a) of the VRA is informed by the Court's holding in *Allen v. State Board of Elections*, 393 U.S. 544, 557 (1969), which found an implied cause of action for private citizens to bring suits to enforce provisions of the Voting Rights Act that "might [otherwise] prove an empty promise." *Id.*  In *Allen*, the Court reasoned that private litigants attempting to protect their voting rights were also proper parties to fulfill the goals of the VRA, and recognized the need for aggrieved voters to "seek[] judicial enforcement of the prohibition" against infringements upon the right to vote based on race.  *Id.* at 557.  Congress responded to the Court's holding in *Allen v. State Board of Elections* by amending the VRA to expressly

confer standing upon "aggrieved persons" to enforce their rights.  42 U.S.C. 1973a. *See* Pub. L. 94-73, §401 (1975) (substituting "Attorney General or an aggrieved person" for "Attorney General" in several sections of the statute). The legislative history underlying the resulting 1975 amendments to the VRA makes clear that both the Attorney General and private persons were to be vested with the responsibility to ensure enforcement of the Act's provisions. Congress noted that this "dual enforcement mechanism" is a common feature in remedial legislation that gives "enforcement responsibility to a governmental agency" and "to private persons acting as a class or on their own behalf." S. Rep. No. 94-295, 94th Cong., 1st Sess., at 40. In creating a comparable statutory right to intervene under Section 3 of the Act, Congress reasoned that such rights are "sound policy to [help] … assist the process of enforcing voting rights." *Id*.

Section 4(a)(4) of the Voting Rights Act provides that "[a]ny aggrieved party may as of right intervene at any stage in such action." 42 U.S.C. §1973b(a)(4).  Thus, as a threshold matter, Proposed Intervenors must demonstrate that they are "aggrieved" within the meaning of the statute. *See Roberts v. Wamser*, 883 F.2d 617, 621 (8th Cir.1989) (standing under the Voting Rights Act for private litigants - those other than the United States Attorney General – is limited to "aggrieved persons" seeking to enforce their voting rights).  The legislative history underlying the Act defines an "aggrieved person" as "any person injured by an act of discrimination" including any "individual or organization representing the interests of injured persons." S. Rep. No. 94-295, 94th Cong., 1st Sess., at 40 (citing *Trafficante v. Metropolitan Life Ins. Co*., 409 U.S. 205 (1972); *NAACP v. Button*, 371 U.S. 415 (1963)).  Congress recognized that the vast majority of these cases would involve parties seeking to affirmatively enforce their rights

10

under the Act as plaintiffs or plaintiff intervenors but also recognized that the procedural posture of some cases, including declaratory judgment suits, would involve aggrieved parties in the role of defendant or defendant intervenors.  S. Rep. No. 94-295, 94th Cong., 1st Sess., at 40 n. 42.

Determining whether one is "aggrieved" within the meaning of the statute requires consideration of the particular interests at stake and the potential for impairment of those interests.  Here, Proposed Defendant Intervenors have a legally protectable interest in the outcome of the action.  In particular, Defendant Intervenors have a vested interest in retaining the protections against discriminatory voting changes that they enjoy through the prophylactic Section 5 preclearance process, as well as in ensuring that this Court appropriately interprets and applies the bailout provision, and upholds the constitutionality of the Section 5 preclearance provision.  Proposed Defendant Intervenors risk injury to their federally protected voting rights and potential harm to their status as minority voters if an adequate defense is not mounted against Plaintiff's claims, in this case which represents the first legal challenge to the recently renewed Sections 4 and 5 of the VRA.  Moreover, Proposed Defendant Intervenors have a "significantly protectable interest" in the outcome of this matter given their status as minority voters who reside in the covered jurisdiction at issue in this case.  *Donaldson v. United States*, 400 U.S. 517, 531 (1971).  As Proposed Defendant Intervenors could suffer impairment of rights that clearly fall within the zone of rights protected under the VRA, their status as "aggrieved parties" is evident.  Like the private parties in Allen, these aggrieved individuals now seek to intervene in this declaratory judgment suit to defend the status of their federally protected voting rights.  *See, e.g., Brotherhood of R.R.*

11

*Trainmen*, 331 U.S. at 529, 531 (holding that, where Congress has provided an "unmistakable" and "unconditional" right to intervene, "there is no room for the operation of a court's discretion.").

**E.     Proposed Defendant Intervenors Satisfy the Requirements of Article III Standing**

Because Proposed Defendant Intervenors seek to participate on "an equal footing with the original parties to the suit," they must satisfy the standing requirements imposed on all parties.  *City of Cleveland v. NRC*, 17 F.3d 1515, 1517 (D.C. Cir. 1994).  As set forth above, Proposed Defendant Intervenors indeed have a concrete and cognizable interest in this litigation that, under circuit precedent, satisfies Article III's demands. *Cf. S. Christian Leadership Conference v. Kelley*, 747 F.2d 777, 779 (D.C. Cir. 1984) (stating that Article III's "gloss" on Rule 24 requires an intervenor to have a "legally protectable" interest).  *See also Military Toxics Project v. EPA*, 146 F.3d 948, 953 (D.C.Cir.1998); *Mova Pharm.,Corp. v. Shalala*, 140 F.3d 1060, 1074  (D.C. Cir. 1998); *Building & Constr. Trades Dep't v. Reich*, 40 F.3d 1275, 1282 (D.C. Cir. 1994); *Rio Grande Pipeline Co. v. FERC*, 178 F.3d 533, 539-40 (D.C. Cir. 1999) (*quoting City of Cleveland v. NRC*,17 F.3d 1515, 1517 (D.C. Cir. 1994) (per curiam)).  Proposed Defendant Intervenors clearly suffer from an imminent threat to their federally protected voting rights that is the direct and proximate result of the form of Plaintiff's bailout request and their constitutional challenge to Section 5.  A favorable ruling from this Court denying Plaintiff's requested relief would remedy this injury.  Proposed Defendant Intervenors thus have standing to participate in this suit; indeed, this Court has already implicitly held

that similarly situated minority voters who, like the Proposed Defendant Intervenors, reside in the Northwest Austin Municipal Utility District Number One, have standing to participate in this suit. *See Northwest Austin Municipal Utility District Number One v. Gonzales*, No. 06-01384 (D.D.C. Nov. 9, 2006) (order granting motions to intervene of, *inter alia*, Rodney and Nicole Louis).

**F.    In the Alternative, Permissive Intervention is Appropriate in this Case**

Rule 24(b) of the Federal Rules of Civil Procedure provides an alternative basis for the Proposed Defendant Intervenors' intervention in this action. Rule 24(b) provides that permissive intervention may be granted "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b)(2). When assessing a motion for permissive intervention, the primary consideration is "whether the intervention will unduly delay or prejudice the existing parties." *Commack Self-Service Kosher Meats*, 170 F.R.D 93, 106 (E.D.N.Y 1996). Courts do not interpret this provision strictly. *Nuesse*, 385 F.2d at 704. The decision to allow permissive intervention is within the discretion of the court, and the court is to consider whether intervention will unduly delay or prejudice the adjudication of the rights of the original parties. Fed. R. Civ. P. 24(b)(2). *Huron Envt'l. Activist League v. United States Envt'l. Protection Agency*, 917 F. Supp. 34, 43 (D.D.C. 1996) (permissive intervention was granted where plaintiffs' claims have both questions of law and fact in common with the main action and the court concluded that the intervention would not unduly delay the adjudication of the rights of the original parties).

Here, given the unique perspective of Proposed Defendant Intervenors, their intervention in this matter would very likely aid or enhance the Court's understanding of the underlying legal and factual issues and, thereby, assist in the efficient resolution of

13

this action.  As a result, there will be commonality between the questions of law and fact presented in the Complaint, and the claims and defenses presented by the Proposed Defendant Intervenors.  In addition, intervention will not delay the litigation, as no dispositive motions have yet been filed and no oral argument has yet been heard. Moreover, Proposed Defendant Intervenors have averred that they will participate on the same schedule that will be established for the existing parties.  Taken together, these considerations plainly demonstrate the propriety of the Proposed Defendant Intervenors' permissive intervention request.  This Court should, therefore, grant the Proposed Defendant Intervenors' alternative request for permissive intervention in the event that the Court declines to grant intervention as of right.

## CONCLUSION

For the reasons set forth above, the motion to intervene should be granted and the

accompanying Answer should be deemed filed and served as of the date of entry of this

Court's order granting leave to intervene.

Respectfully submitted,
/s/ Debo P. Adegbile
_____

Theodore Shaw
Director-Counsel
Jacqueline A. Berrien
Norman J. Chachkin (D.C. Bar
No.235283)
Debo P. Adegbile
NAACP Legal Defense and
    Educational Fund, Inc.
99 Hudson Street, Suite 1600
New York, New York 10013
(212) 219-1900

Kristen M. Clarke
NAACP Legal Defense and
    Educational Fund, Inc.
1444 Eye Street, N.W., 10th Floor
Washington, D.C. 20005
(202) 682-1300

Danielle C. Gray
Four Times Square
New York, NY 10036-6522

Samuel Spital
Holland & Knight
195 Broadway, 24th Floor
New York, NY 10007
(212) 513-3454

*Attorneys for Proposed Defendant
Intervenors*

Dated: February 14, 2007

15