## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NORTHWEST AUSTIN MUNICIPAL UTILITY
DISTRICT NUMBER ONE,
401 W. 15th Street
Suite 850
Austin, Texas 78701,

*Plaintiff*,

v.

ALBERTO GONZALES,
Attorney General of the United States,
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530,

*Defendant*.

Civil Action No. 1:06-CV-01384
(DST, PLF, EGS)

## PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION BY WINTHROP GRAHAM, YVONNE GRAHAM, WENDY RICHARDSON, JAMAL RICHARDSON, AND MARISA RICHARDSON TO INTERVENE AS DEFENDANTS

# TABLE OF CONTENTS

**Page**

Table of Authorities .................................................................................................. ii

Introduction ............................................................................................................... 1

Background ................................................................................................................ 2

Argument ................................................................................................................... 5

I.      In This Expedited Case, Applicants' Motion Is Untimely .................................. 6

II.     Applicants Lack Standing to Intervene**.** ........................................................... 8

    A.      Applicants Cannot Show Injury-in-Fact From the District's
        Attempt to Bail Out of §5 Preclearance. ...................................... 9

    B.      Applicants Cannot Show Causation Because No Injury Is Fairly
        Traceable to Actions of the District. ........................................... 12

    C.      Applicants Cannot Show That Any Cognizable Injury Would Be
        Redressed by a Judgment Against the District. .......................... 12

III.    Applicants Are Not So Situated That the Disposition of This Case May
    Impair or Impede Their Interests ....................................................... 13

IV.     Applicants Cannot Show That the Attorney General or Other Intervenors
    Will Not Adequately Represent Their Interests**.** .................................. 14

V.      Applicants Should Be Denied Permissive Intervention Because Their
    Duplicative Participation Would Cause Undue Delay and Prejudice ................. 15

Conclusion ............................................................................................................... 17

Certificate of Service ............................................................................................... 18

# TABLE OF AUTHORITIES

## CASES

*Allen v. Wright*,
468 U.S. 737, 104 S.Ct. 3315 (1984)................................................................12

*Briscoe v. Bell*,
432 U.S. 404, 97 S.Ct. 2428 (1977)................................................................11

*City of Boerne v. Flores*,
521 U.S. 507, 117 S.Ct. 2157 (1997)................................................................11

*City of Cleveland v. NRC*,
17 F.3d 1515 (D.C. Cir. 1994)................................................................5, 6

*City of Rome v. United States*,
446 U.S. 156, 100 S.Ct. 1548 (1980)................................................................11

*Diamond v. Charles*,
476 U.S. 54, 106 S.Ct. 1697 (1986)................................................................10

*Envtl. Def. Fund, Inc. v. Higginson*,
631 F.2d 738 (D.C. Cir. 1979)................................................................14

*Fund for Animals, Inc. v. Norton*,
322 F.3d 728 (D.C. Cir. 2003)................................................................ *passim*

*Georgia v. Ashcroft*,
539 U.S. 461, 123 S.Ct. 2498 (2003)................................................................10, 11, 12

*Hodgson v. United Mine Workers of Am.*,
473 F.2d 118 (D.C. Cir. 1972)................................................................6

*Humane Soc'y of United States v. Clark*,
109 F.R.D. 518 (D.D.C. 1985)................................................................14

*Indep. Democratic Party v. Rokita*,
No. 1:05-CV-0634-SEB-VSS, 2006 U.S. Dist. LEXIS 20321
(S.D. Ind. April 14, 2006)................................................................16

*In re Vitamins Antitrust Class Action*,
215 F.3d 26 (D.C. Cir. 2000)................................................................5

*Lujan v. Defenders of Wildlife*,
504 U.S. 555, 112 S.Ct. 2130 (1992)................................................................9, 12

*Massachusetts Sch. of Law at Andover, Inc. v. United States*,
    118 F.3d 776 (D.C. Cir. 1997) ...................................................................15, 16

*Nuesse v. Camp*,
    385 F.2d 694 (D.C. Cir. 1967) ..............................................................................14

*Reno v. Bossier Parish Sch. Bd.*,
    528 U.S. 320, 120 S.Ct. 866 (2000).............................................11, 12, 13, 14

*Rio Grande Pipeline Co. v. FERC*,
    178 F.3d 533 (D.C. Cir. 1999) .................................................................................5

*Roeder v. Islamic Rep. of Iran*,
    333 F.3d 228 (D.C. Cir. 2003) ..........................................................................5, 9

*SEC v. Prudential Sec. Inc.*,
    136 F.3d 153 (D.C. Cir. 1998) .................................................................................5

*Snyder v. FCC*,
    No. 04-1022, 2004 U.S. App. LEXIS 11272 (D.C. Cir. June 7, 2004) ...............5

*Sweet Home Chapter of Cmtys. for Great Or. v. Lujan*,
    No. 91-1468, 1991 U.S. Dist. LEXIS 17449 (D.D.C. Dec. 10, 1991)...............14

*Trafficante v. Metro. Life Ins. Co.*,
    409 U.S. 205, 93 S.Ct. 364 (1972)....................................................................8, 9

*Trbovich v. United Mine Workers*,
    404 U.S. 528, 92 S.Ct. 630 (1972)........................................................................14

*United States v. Am. Tel. & Tel. Co.*,
    642 F.2d 1285 (D.C. Cir. 1980) .....................................................................6, 7, 8

*United States v. Hays*,
    515 U.S. 737, 115 S.Ct. 2431 (1995)......................................................................9

*United States v. Philip Morris USA Inc.*,
    No. 99-2496 (GK), 2005 U.S. Dist. LEXIS 16196 (D.D.C. July 25, 2005) .......5

**STATUTES**

42 U.S.C. §1973*b* ................................................................................................2, 9, 11

42 U.S.C. §1973*b*(a) ...............................................................................................7, 8

42 U.S.C. §1973*c* ......................................................................................................2

Fed. R. Civ. P. 24 .......................................................................................................7

Fed. R. Civ. P. 24(a)(1) ..............................................................................................6

Fed. R. Civ. P. 24(a)(2) ............................................................................................14

Fed. R. Civ. P. 24(b) ............................................................................................6, 15

# INTRODUCTION

The plaintiff, a small utility district in Texas that has no history of discrimination in voting, seeks to bail out from the burdensome requirement that it submit any proposed change affecting voting—no matter how tiny or tangential—for preliminary clearance by the United States Attorney General. The district has always complied with the Voting Rights Act and the Constitution, and does not challenge one jot of the substantive provisions of the Voting Rights Act that guarantee full access to the ballot box and the political process for every one of its citizens. Instead, the district merely seeks to demonstrate that its longtime commitment to ensuring full voting rights for all its citizens is precisely what entitles this local political subdivision to relief from the preclearance requirement. The district's residents, who participate in the open and fair elections for the district's board members, have the right to sound local government that is free to make local decisions without the undue interference of the federal government.

At the instigation of the thirteen individuals and entities that have already been permitted to intervene as defendants opposing the district's effort to terminate its preclearance obligations, the Court has imposed an expedited schedule for discovery and the briefing of dispositive motions in this case. Now, as the clock runs out on the period of fact discovery dictated by the compressed schedule defendants demanded, five additional individuals apply to intervene, although they acknowledge that their asserted interests are completely duplicative of at least one group of intervenors—the Louis intervenors—already parties to this case. The Grahams' and Richardsons' untimely intervention should be rejected because, among other reasons, their participation would prejudice the district, which would be unable to take fact discovery from those five new parties at this late stage in the discovery period.

Further, although applicants claim to reside in the district, they assert no particularized injury to themselves, only a generalized interest in stopping the district from getting the remedy it seeks. They have no cognizable stake in the outcome of this proceeding. They have no standing because they do not allege that they have suffered or are about to suffer any injury-in-fact. Applicants are not so situated that anything in this action, as a practical consequence, will impair or impede any cognizable interests they possess. The Attorney General—a governmental entity obliged to act in the public interest—is presumed to adequately represent any actual interest applicants might have, and applicants provide nothing to overcome that presumption. Moreover, thirteen additional parties have already been permitted to intervene professing to represent interests identical to those applicants profess. In particular, applicants expressly align their interests with and are represented by the same counsel as the Louis intervenors. Permitting the untimely, duplicative, and cumulative participation that applicants propose would unnecessarily complicate these proceedings, resulting in undue delay and prejudice that makes permissive intervention improper.

## BACKGROUND

### This Lawsuit and §5

Northwest Austin Municipal Utility District Number One, the plaintiff in this action, seeks a declaratory judgment relieving it from the burden of subjecting changes affecting voting in the district to preclearance by the Attorney General under §5 of the Voting Rights Act, 42 U.S.C. §1973*c*. The district, which has never engaged in discrimination in any form, believes that it is entitled to bail out of the §5 preclearance requirement because it satisfies the requirements for a declaratory judgment under §4 of the Act. 42 U.S.C. §1973*b*. In the alternative, the district believes that if §4 does not entitle it to bail out of §5's preclearance requirement, then the continued application of §5 against the district is unconstitutional.

2

Texas became covered by §5 as of September 23, 1975, when the United States Attorney General determined that: (a) election materials in Texas had been offered only in English; (b) more than 5% of Texas's voting age population was Spanish speaking; and (c) less than 50% of Texas's voting age population voted in the 1972 presidential election.  The district does now and always has supported full and open voting rights for all its residents.  The district did not exist when Texas became covered by §5; it was formed in 1987.  Nevertheless, the district is a covered political subdivision that must presently submit any proposed voting changes for §5 preclearance.

The §5 preclearance process is costly and burdensome.  To comply with §5, before any "change in practices or procedures affecting voting"—even the most minute of changes—the district must submit such changes to the Attorney General for approval.  In addition to the cost of the submission itself, most proposed changes are presumptively delayed by at least 60 days awaiting the Attorney General's approval.

In July 2006, Congress reauthorized §5, relying on generalized findings that do not specifically identify evidence of continuing discrimination in covered jurisdictions nor take into account that discriminatory conditions may now exist in jurisdictions that are not covered by §5. While Congress was considering that reenactment, proponents of reauthorizing §5 repeatedly stressed that the availability of bail-out for jurisdictions that could demonstrate a history of compliance with the Voting Rights Act is intended to minimize the burdens on constitutionally compliant political subdivisions and that this escape clause made §5 a congruent and proportional remedy for the evils Congress sought to address.

**Proceedings and Applicants' Untimely Intervention**

In a joint report and a proposed scheduling order dated November 28, 2006, defendants urged a tightly compressed schedule for this case.  Defendants' expedited schedule would

include, among other provisions, a deadline of March 1, 2007, for fact discovery; requiring expert discovery to proceed simultaneously with fact discovery; requiring rebuttal experts to be designated before nonrebuttal experts' reports came due; and a deadline of April 16, 2007, a week after close of expert discovery, for filing all dispositive motions. D.48-3; D.49. The district proposed a more realistically paced schedule that would have, among other things, permitted expert discovery to commence and conclude after fact discovery was complete and provided a sufficient interval between the close of all discovery and filing of dispositive motions. D.48-2. The Court adopted defendants' proposed schedule, D.52, and all defendants—including the thirteen who have already intervened in this case—must live by it.

By the time applicants filed their motion to intervene on February 14, 2007, no depositions had yet taken place and none had been noticed, in part because most of the intervenors—including the Louis intervenors—had thus far refused to confirm dates when they were available to be deposed despite the district's repeated requests that they do so. Thus, by the time applicants filed their motion, there were only ten business days (eleven counting the federal holiday on February 19) remaining in which to complete fact discovery. And only three days remain after the due date for this response.

In addition to the untimeliness of their motion, applicants do not allege that they have suffered or are in imminent danger of suffering any concrete injury from any discriminatory voting practice. Instead, they assert merely a generalized interest in continued application of §5. The Attorney General, in his answer to the district's complaint, has indicated that he will vigorously defend that interest. And thirteen other parties already have intervened to assert identical purported interests. Because applicants' motion is untimely and because applicants lack standing and cannot satisfy other requirements for intervention, the district opposes the motion.

4

**ARGUMENT**

An application to intervene, whether as of right or permissively, must be timely made. In the circumstances of this expedited case, applicants' motion on the eve of the close of fact discovery is not timely. Adding these applicants as parties will necessarily prejudice the district, depriving it of the right to take fact discovery from these new defendants. Moreover, applicants have no serious need to intervene because existing parties—in particular, the Louis intervenors—already concededly represent interests identical to those applicants assert. In any event, applicants cannot state a legally cognizable stake in the outcome of this action and cannot satisfy the requirements for intervention as of right or permissive intervention.

The D.C. Circuit has made clear that "because a Rule 24 intervenor seeks to participate on an equal footing with the original parties to the suit, he must satisfy the standing requirements imposed on those parties." *City of Cleveland v. NRC*, 17 F.3d 1515, 1517 (D.C. Cir. 1994); *accord Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731-32 (D.C. Cir. 2003); *Rio Grande Pipeline Co. v. FERC*, 178 F.3d 533, 538 (D.C. Cir. 1999).[1] The D.C. Circuit has been resolute in insisting that standing be established. *See Roeder v. Islamic Rep. of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003).

---

[1] *In re Vitamins Antitrust Class Action*, 215 F.3d 26 (D.C. Cir. 2000), expressed "uncertainty over whether standing is necessary for permissive intervention." *Id.* at 31. But other decisions by the court of appeals and this Court suggest that it is. *See, e.g.*, *Snyder v. FCC*, No. 04-1022, 2004 U.S. App. LEXIS 11272, at *1-*3 (D.C. Cir. June 7, 2004) (unpublished) ("[A]lthough the court has allowed interested parties to intervene where the party expected to press the public interest does not appeal, intervenors themselves are required to have standing."); *SEC v. Prudential Sec. Inc.*, 136 F.3d 153, 156 n.7 (D.C. Cir. 1998) (affirming a denial of permissive intervention when the applicants' "intervention would have no effect because they have no standing to enforce the consent decree"); *United States v. Philip Morris USA Inc.*, No. 99-2496 (GK), 2005 U.S. Dist. LEXIS 16196, at *27 (D.D.C. July 25, 2005) (unpublished) (granting permissive intervention after finding, *inter alia*, that applicants had standing).

Additionally, a motion to intervene as of right under rule 24(a)(1) requires the applicant to show that "a statute of the United States confers an unconditional right to intervene." FED. R. CIV. P. 24(a)(1). A motion to intervene under rule 24(a)(2) requires the Court to consider four factors:

> (1) the timeliness of the motion; (2) whether the applicant "claims an interest relating to the property or transaction which is the subject of the action"; (3) whether "the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"; and (4) whether "the applicant's interest is adequately represented by existing parties."

*Fund for Animals*, 322 F.3d at 731. The requirement that an intervenor demonstrate "'an interest relating to the property or transaction which is the subject of the action' . . . impliedly refers not to any interest the applicant can put forward, but only to a legally protectable one." *City of Cleveland*, 17 F.3d at 1517. Permissive intervention under rule 24(b)(2) requires the applicant to establish, in addition to timeliness, that the "applicant's claim or defense and the main action have a question of law or fact in common" and requires the Court to "consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." FED. R. CIV. P. 24(b).

Applicants' motion to intervene should be denied because it is untimely, applicants lack standing, applicants have no legally cognizable interests that would be impaired as a practical consequence of this action, and applicants have made no showing that the Attorney General or existing intervenors are inadequate to represent their asserted interest in defending §5.

## I.   IN THIS EXPEDITED CASE, APPLICANTS' MOTION IS UNTIMELY.

"[A]n untimely motion for intervention, whether of right or permissive, must be denied." *United States v. Am. Tel. & Tel. Co.*, 642 F.2d 1285, 1294 (D.C. Cir. 1980); *accord, e.g.*, *Hodgson v. United Mine Workers of Am.*, 473 F.2d 118, 126 n.36 (D.C. Cir. 1972). Applicants' assertion that §4 of the Voting Rights Act permits an "aggrieved party" to "intervene at any stage

in [a bail-out] action," 42 U.S.C. §1973*b*(a)(4), cannot change the express timeliness requirement imposed by FED. R. CIV. P. 24.[2]  An application for intervention coming at any stage might be timely or untimely in the context of a particular case.  *See AT&T*, 642 F.2d at 1294 (an application to intervene at the appellate stage for the limited purpose of appealing a ruling that an existing party chose not to appeal was timely under those particular circumstances).  Determining whether a motion to intervene is timely involves "consideration of all the circumstances," in particular, "time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *Id.*

In the circumstances of this case, applicants' motion is untimely.  Applicants' motion was filed more than six months after this lawsuit began.  Although fact discovery is ongoing, it is almost over and will end on March 1 because of the fast track urged by existing defendants, including the Louis intervenors with whom applicants align themselves.  Indeed, fact discovery is set to end before applicants' reply briefing in support of their motion is due.  Particularly in light of the delays by existing intervenors including the Louises in making themselves available for depositions, it is clear that the district will be unable to depose these applicants by the March 1 deadline.  It is thus impossible for applicants to participate in this action "on the same schedule established for the existing parties," as they claim they will,  Points & Authorities in Support of Motion 2, because they are already off that schedule.  The prejudice to the district from the denial of its right to take discovery from opposing parties is obvious.

Even if it were possible to conduct five additional depositions by the Court's March 1 deadline—or even after that deadline pursuant to an extension—adding these new parties will

---

[2] As discussed further below, applicants' reliance on 42 U.S.C. §1973*b*(a)(4) also fails for the fundamental reason that applicants are not aggrieved parties.

create unreasonable time pressure. Scarcely six weeks remain for the parties to brief all potentially dispositive issues in this case by April 16. And, in the meantime, expert discovery must be completed by April 9. (Existing intervenors have designated or attempted to designate three experts, one of whom has yet to serve a report and is the subject of a motion to strike by the district.)

Moreover, applicants have no need to intervene to preserve their rights. Their purported interest as minority residents of the district in keeping the district covered by §5 is already being pursued by several existing parties. *Cf. AT&T*, 642 F.2d at 1294 (intervention on appeal was timely when necessary for the intervenor to preserve a right that no existing party would pursue). In particular, applicants expressly align their interests with the Louis intervenors and are represented by the same counsel. Applicants' interests are also aligned with those of the already numerous similarly situated individual intervenors and coincide with those of defendant Attorney General and the entity intervenors, all of whom seek to keep the district covered by §5, the precise result applicants seek. In short, applicants face no danger that their asserted rights will go unpreserved in this action if their untimely intervention is denied.

## II.    APPLICANTS LACK STANDING TO INTERVENE.

Even if their application were timely, applicants are not entitled to intervene for several further reasons, including a lack of standing. Applicants' primary purported basis for intervention is the assertion that they have an unconditional right to intervene under a statutory provision: "Any aggrieved party may as of right intervene at any stage in such [a §4] action." 42 U.S.C. §1973*b*(a)(4). An "aggrieved party" is a party with standing. *See Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 93 S.Ct. 364, 366-67 (1972) (concluding that the words "person claiming to be aggrieved" in the Civil Rights Act of 1968 "showed 'a congressional intention to

define standing as broadly as is permitted by Article III of the Constitution'"). Applicants allege nothing to indicate that they have standing as an "aggrieved party."

"To establish standing under Article III, a prospective intervenor—like any party—must show: (1) injury-in-fact, (2) causation, and (3) redressability." *Fund for Animals*, 322 F.3d at 732-33; *accord, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136 (1992). And those elements are merely "the irreducible constitutional minimum." *Lujan*, 504 U.S. at 560, 112 S.Ct. at 2136. Rule 24(a)(2)'s requirement that an applicant demonstrate a legally protectable interest is effectively subsumed in the standing inquiry. *Fund for Animals*, 322 F.3d at 735; *see also Roeder*, 333 F.3d at 233.

Further, to establish standing in a case allegedly affecting voting rights, individuals must show that they have suffered particularized, "special harms" from alleged discrimination. *United States v. Hays*, 515 U.S. 737, 745, 115 S.Ct. 2431, 2436 (1995). "[A] generalized grievance against allegedly illegal governmental conduct" is not "sufficient for standing to invoke the federal judicial power." *Id.* at 743, 115 S.Ct. at 2435.

## A. Applicants Cannot Show Injury-in-Fact From the District's Attempt to Bail Out of §5 Preclearance.

Injury-in-fact consists of "an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id*. at 743, 115 S.Ct. at 2435; *accord Lujan*, 504 U.S. at 560-61, 112 S.Ct. at 2130. Applicants do not allege such an injury.

The elements of the bail-out procedure are set out in §4 itself, 42 U.S.C. §1973*b*, and applicants do not allege that they specifically posses any information relevant to the analysis of whether the district meets the bail-out criteria. More generally, they do not allege that they have been subject to or are in imminent fear of any discriminatory practice. *Cf. Trafficante*, 409 U.S.

at 209-10, 93 S.Ct. at 367 (finding standing to exist when "[i]ndividual injury or injury in fact to petitioners, the ingredient found missing in *Sierra Club v. Morton*, 405 U.S. 727, is alleged here").  They assert no concrete and particularized injury, actual or imminent.

"Article III requires more than a desire to vindicate value interests."  *Diamond v. Charles*, 476 U.S. 54, 66-67, 106 S.Ct. 1697, 1706 (1986) (holding that the plaintiff physician's "expression of a desire that the Illinois Abortion Law as written be obeyed" was merely an "abstract concern," insufficient to confer standing).  Section 5 coverage is not itself a substantive voting right.  Substantive voting rights are those rights that directly implicate voters' participation in the political and electoral processes, and those rights are enshrined for all voters in the Constitution and in §2 of the Voting Rights Act.  *See Georgia v. Ashcroft*, 539 U.S. 461, 477-78, 123 S.Ct. 2498, 2510 (2003) (noting that "Section 5 of the Voting Rights Act has a limited substantive goal: to insure that no voting-procedure changes would be made that would lead to a retrogression in the position of racial minorities with respect to their effective exercise of the electoral franchise," and that §2 requires substantive protections of voting rights not reached by the §5 preclearance inquiry (internal quotation marks omitted)).

Indeed, if there were a substantive right to live under local governmental units that are covered by §5—and thus required to seek permission from the federal government before implementing any local voting change—the vast majority of our nation's citizens would be suffering infringement of that right.  Most American voters, even many in localities with recent histories of voting discrimination, do not live in areas covered by §5.

All local political subdivisions are required to comply with the Constitution and §2.  And no relief the district seeks could exempt the district from complying with the substantive provisions of the Voting Rights Act that are designed to fully implement the protection of voting rights enshrined in the Constitution, nor does the district challenge the Act's protection of

10

substantive voting rights.  Neither preclearance nor exemption from preclearance insulates a political subdivision from an action under §2 to enforce substantive voting rights.  *See Georgia*, 539 U.S. at 477-78, 123 S.Ct. at 2510; *Reno v. Bossier Parish Sch. Bd.*, 528 U.S. 320, 335-36, 120 S.Ct. 866, 875-76 (2000).

Indeed, the district always has been and remains committed to full implementation of substantive voting protections for all its citizens.  For the Court to determine that the district is entitled to bail out under §4, it will need to be satisfied that the district affirmatively proved at least a ten-year history of compliance with the Voting Rights Act and the Constitution.  42 U.S.C. §1973*b*; *see Briscoe v. Bell*, 432 U.S. 404, 411, 97 S.Ct. 2428, 2432 (1977).  For the Court to grant the district the remedy of exemption from §5 on the alternative rationale that it is unconstitutional to apply the preclearance requirement to the district, the Court will need to determine that §5 is not a congruent and proportional exercise of Congress's power to enforce constitutional voting rights when it sweeps in the district, an entity with no history of discrimination, and provides no escape clause.  *See City of Boerne v. Flores*, 521 U.S. 507, 533, 117 S.Ct. 2157, 2170 (1997) (noting that *City of Rome v. United States*, 446 U.S. 156, 100 S.Ct. 1548 (1980), upheld the 1975 reenactment of §5 as constitutional because "[t]he [preclearance] requirement was placed only on jurisdictions with a history of intentional racial discrimination in voting"); *Briscoe*, 432 U.S. at 411, 97 S.Ct. at 2432 ("Congress was well aware . . . that the simple formula of § 4(b) might bring within its sweep governmental units not guilty of any unlawful discriminatory voting practices.  It afforded such jurisdictions immediately available protection in the form of an action to terminate coverage under § 4(a) of the Act."); *cf. City of Rome*, 446 U.S. at 177, 100 S.Ct. at 1562 ("Congress could rationally have concluded that, because electoral changes *by jurisdictions with a demonstrable history of intentional racial*

*discrimination in voting* create the risk of purposeful discrimination, it was proper to prohibit changes that have a discriminatory impact." (emphasis added, footnote omitted)).

**B. Applicants Cannot Show Causation Because No Injury Is Fairly Traceable to Actions of the District.**

To satisfy the causation element of the standing inquiry, applicants must show not just that some cognizable injury exists but also that it is "fairly traceable" to conduct of the district. *E.g.*, *Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 3324 (1984). Applicants allege no injury-in-fact at all, so none is traceable to actions of the district.

Moreover, any conceivable future injury-in-fact—which, at this time, would be groundless conjecture and hypothesis—would not be caused by the district's terminating §5 coverage but by separate, future conduct that would continue to be prohibited by §2 and the Constitution. Later, substantive violations of voting rights, if any, will always be subject to challenge under §2, regardless whether they receive preclearance before implementation. *See Georgia*, 539 U.S. at 477-78, 123 S.Ct. at 2510 (2003); *Bossier Parish Sch. Bd.*, 528 U.S. at 335-36, 120 S.Ct. 866, 875-76 (2000).

**C. Applicants Cannot Show That Any Cognizable Injury Would Be Redressed by a Judgment Against the District.**

Someone asserting standing must demonstrate, in addition to an actual injury caused by the opposing litigant, that the relief sought is likely to redress that injury. *E.g., Lujan*, 504 U.S. at 561, 112 S.Ct. at 2136. And "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* Applicants cannot establish that any cognizable injury would be redressed by a judgment against the district.

Challenging a "generalized level of Government action" presents "obvious difficulties insofar as proof of causation or redressability is concerned." *Lujan*, 504 U.S. at 568, 112 S.Ct. at 2140; *accord Allen*, 468 U.S. at 759-60, 104 S.Ct. at 3329 ("[S]uits challenging, not specifically

identifiable Government violations of law, but the particular programs agencies establish to carry out their legal obligations . . . are rarely if ever appropriate for federal-court adjudication.").  As discussed above, living in a covered jurisdiction cannot be a federally protected substantive voting right because, if it is, then most Americans live in areas where that right is violated.  As further discussed above, speculative future injuries of actual substantive voting rights are not redressable by continued §5 coverage but by the continued—and here unchallenged—protections of §2 and the Fifteenth Amendment.  *See Bossier Parish Sch. Bd.*, 528 U.S. at 335-36, 120 S.Ct. at 875-76 (2000) (explaining that existing practices that violate substantive voting rights "cannot be stopped in advance under the extraordinary burden-shifting procedures of § 5, but must be attacked through the normal means of a § 2 action").

### III.     APPLICANTS ARE NOT SO SITUATED THAT THE DISPOSITION OF THIS CASE MAY IMPAIR OR IMPEDE THEIR INTERESTS.

In addition to lacking standing, which is required for intervention of any type and for applicants to be "aggrieved parties" entitled to rule 24(a)(1) intervention, applicants cannot demonstrate that the disposition of this case may impair or impede their ability to protect their interests, as rule 24(a)(2) further requires.  The inquiry for this element of intervention as of right focuses on the "practical consequences" that denying intervention would have for the prospective intervenor.  *Fund for Animals*, 322 F.3d at 735.

As discussed above, applicants have no legally protectable interest in preserving the district's §5 coverage because that coverage, in and of itself, has no direct effect on preservation of substantive voting rights.  The only practical consequence of a judgment in the district's favor is relief for the district from the burdensome preclearance process; the district must still maintain full compliance with §2 and the Constitution, and it is firmly committed to doing so.  Should any violations of substantive voting rights arise in the future, they can be challenged under §2, just as

they must be now.  *See Bossier Parish Sch. Bd.*, 528 U.S. at 335-36, 120 S.Ct. 866, 875-76 (2000).

## IV.    APPLICANTS CANNOT SHOW THAT THE ATTORNEY GENERAL OR OTHER INTERVENORS WILL NOT ADEQUATELY REPRESENT THEIR INTERESTS.

In addition to establishing that they have a cognizable stake in the litigation sufficient to show standing and that the disposition may impair or impede their interests, intervenors under rule 24(a)(2) must show that their interests are not adequately represented by anyone who is already a party to the action.  FED. R. CIV. P. 24(a)(2); *Fund for Animals*, 322 F.3d at 735. Applicants do not and cannot show that their claimed interest in keeping the district covered by §5 is not adequately represented by the Attorney General and the thirteen intervenors already parties to this case.

Although the burden of establishing inadequate representation has been described as "minimal," *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10, 92 S.Ct. 630, 636 n.10 (1972), "the fact that the government is a party makes it more difficult for movants for intervention in this Circuit to meet that minimal burden." S*weet Home Chapter of Cmtys. for Great Or. v. Lujan*, No. 91-1468, 1991 U.S. Dist. LEXIS 17449, at *7 (D.D.C. Dec. 10, 1991) (unpublished); *see Envtl. Def. Fund, Inc. v. Higginson*, 631 F.2d 738, 740 (D.C. Cir. 1979); *Humane Soc'y of United States v. Clark*, 109 F.R.D. 518, 521 (D.D.C. 1985); *cf. Nuesse v. Camp*, 385 F.2d 694, 702-04 (D.C. Cir. 1967) (state banking commissioner was permitted to intervene when his more general interest in the competitive equality of state and national banks was not adequately represented by a single state bank).  That is because a governmental entity, under the principle of *parens patriae*, "is presumed to represent the interests of all its citizens." *Higginson*, 631 F.2d at 740; *accord Sweet Home Chapter*, 1991 U.S. Dist. LEXIS 17449, at *6 ("Certainly federal agencies are parts of a government body, and as such, are charged with

enforcing the public interest.  The parens patriae doctrine would thus seem to apply equally well to government agencies as to states.").  The Attorney General is presumed adequate to represent applicants' asserted interest in defending the enforceability of §5, and applicants show nothing sufficient to overcome that presumption.

In addition, this Court has already granted motions to intervene by thirteen intervenors, including several individual asserted residents of the district, all of whom profess interests identical to those applicants profess.  Indeed, as noted above, applicants expressly purport to share the same interests as the Louis intervenors.  Because applicants profess the same interests as the Louis intervenors and are represented by the same counsel, there can be no question that at least those existing parties will adequately represent applicants' interests.  A needless multiplicity of parties asserting indistinguishable interests is the very problem that the inadequacy requirement is intended to avoid.

## V.    APPLICANTS SHOULD BE DENIED PERMISSIVE INTERVENTION BECAUSE THEIR DUPLICATIVE PARTICIPATION WOULD CAUSE UNDUE DELAY AND PREJUDICE.

Even if applicants had standing and established that their "claim or defense and the main action have a question of law or fact in common," FED. R. CIV. P. 24(b), the Court should deny permissive intervention because it "will unduly delay or prejudice the adjudication of the rights of the original parties."  *Id.*  As noted, in this untimely motion, applicants essentially propose to duplicate the efforts of the Attorney General to defend the application of §5 and, particularly, those of the several other parties who have already been permitted to intervene.

The inefficiencies inherent in duplicative and cumulative effort are precisely the type of danger that the undue delay and prejudice standard is designed to avert.  The standard "presumably captures all the possible drawbacks of piling on parties."  *Massachusetts Sch. of Law at Andover, Inc. v. United States*, 118 F.3d 776, 782 (D.C. Cir. 1997).  When parties

multiply unnecessarily through permissive intervention, "the concomitant issue proliferation and confusion will result in delay as parties and court expend resources trying to overcome the centrifugal forces springing from intervention, and prejudice will take the form not only of the extra cost but also of an increased risk of error." *Id.* When a court permits full participation by parties who "only marginally satisfy the standing requirements" and are not yet "truly aggrieved" it will be "repeatedly required to respond to vague hypotheticals and speculation rather than concrete and actual harms." *Indep. Democratic Party v. Rokita*, No. 1:05-CV-0634-SEB-VSS, 2006 U.S. Dist. LEXIS 20321, at *129 n.75 (S.D. Ind. April 14, 2006) (unpublished).

Coming as it does at the close of fact discovery, applicants' intervention could not help but cause delay and prejudice. The district will necessarily be prejudiced either by having to forgo any fact discovery from these five additional parties or by having to squeeze five additional depositions into an already compressed discovery and briefing schedule. The only alternative would be to delay adjudication of the parties' rights by extending deadlines for the remaining proceedings in the case. Thus, the untimeliness of applicants' motion—in addition to being independently sufficient to warrant denial of their motion—also threatens the delay and prejudice that make permissive intervention improper.

## CONCLUSION

For these reasons, the Court should deny applicants' motion to intervene.

DATED:  February 26, 2007          Respectfully submitted:

/s/ Gregory S. Coleman
Gregory S. Coleman
(admitted *pro hac vice*)
Christian J. Ward
(admitted *pro hac vice*)
PROJECT ON FAIR REPRESENTATION
8911 Capital of Texas Hwy., Ste. 1350
Austin, Texas  78759
[Tel.] (512) 349-1930
[Fax] (512) 527-0798

/s/ Erik S. Jaffe
Erik S. Jaffe
D.C. Bar No. 440112
ERIK S. JAFFE, P.C.
5101 34th Street N.W.
Washington, D.C .20008
[Tel.] (202) 237-8165
[Fax]  (202) 237-8166

*Attorneys for Plaintiff*
*Northwest Austin Municipal*
*Utility District No. One*

17

## CERTIFICATE OF SERVICE

I hereby certify that I served Plaintiff's Memorandum of Points and Authorities in Opposition to Motion by Winthrop Graham, Yvonne Graham, Wendy Richardson, Jamal Richardson, and Marisa Richardson to Intervene as Defendants upon counsel for the parties indicated below through the Court's electronic case filing system on February 26, 2007.

Wan J. Kim
Jeffrey A. Taylor
John K. Tanner
H. Christopher Coates
T. Christian Herren Jr
chris.herren@usdoj.gov
Sarah E. Harrington
Christy A. McCormick
Christy.mccormick@usdoj.gov
Civil Rights Division
UNITED STATES DEPARTMENT OF JUSTICE
Room 7254 – NWB
950 Pennsylvania Ave., N.W.
Washington, D.C.  20530

*Counsel for Defendant*


Jon M. Greenbaum
jgreenbaum@lawyerscommittee.org
Benjamin J. Blustein
bblustein@lawyerscommittee.org
Jonah H. Goldman
jgoldman@lawyerscommittee.org
LAWYERS COMMITTEE FOR CIVIL RIGHTS
   UNDER LAW
1401 New York Avenue, NW, Suite 400
Washington, D.C. 20005

*Counsel for Intervenors-Defendants Texas State Conference of NAACP and Austin Branch of the NAACP*

Seth P. Waxman
seth.waxman@wilmerhale.com
John A. Payton
john.payton@wilmerhale.com
Paul R.Q. Wolfson
paul.wolfson@wilmerhale.com
Ariel B. Waldman
ariel.waldman@wilmerhale.com
WILMER CUTLER PICKERING HALE &
   DORR LLP
1875 Pennsylvania Ave. N.W.
Washington, D.C. 20006

*Counsel for Intervenors-Defendants Texas State Conference of NAACP and Austin Branch of the NAACP*


Dennis C. Hayes
General Counsel
NATIONAL ASSOCIATION FOR THE
   ADVANCEMENT OF COLORED PEOPLE, INC.
NAACP National Office
4805 Mt. Hope Drive
Baltimore, Maryland  21215

*Counsel for Intervenors-Defendants Texas State Conference of NAACP and Austin Branch of the NAACP*

Nina Perales
nperales@maldef.org
MEXICAN AMERICAN LEGAL DEFENSE &
    EDUCATIONAL FUND
110 Broadway, Suite 300
San Antonio, Texas  78205

*Counsel for Intervenors-Defendants Lisa
Diaz, Gabriel Diaz, and David Diaz*

Theodore Shaw
Jacqueline A. Berrien
Norman J. Chachkin
nchachkin@naacpldf.org
Debo P. Adegbile
NAACP LEGAL DEFENSE AND
    EDUCATIONAL FUND, INC.
99 Hudson Street, Suite 1600
New York, New York  10013

*Counsel for Intervenors-Defendants Rodney
and Nicole Louis for Applicants Winthrop
Graham, Yvonne Graham, Wendy
Richardson, Jamal Richardson, and Marisa
Richardson*

David J. Becker
dbecker@pfaw.org
People for the American Way Foundation
2000 M Street NW, Suite 400
Washington, D.C.  20036

*Counsel for Intervenor-Defendant People
for the American Way*

J. Gerald Hebert
jghebert@comcast.net
5019 Waple Lane
Alexandria, Virginia  22304

*Counsel for Intervenor-Defendant Travis
County*

Joseph E. Sandler
sandler@sandlerreiff.com
SANDLER REIFF & YOUNG PC
50 E St. SE #300
Washington, D.C.  20003

*Counsel for Intervenors-Defendants Lisa Diaz,
Gabriel Diaz, and David Diaz*

Kristen M. Clarke
NAACP LEGAL DEFENSE AND EDUCATIONAL
    FUND, INC.
1444 Eye Street, N.W., 10th Floor
Washington, D.C.  20005

*Counsel for Intervenors-Defendants Rodney and
Nicole Louis and for Applicants Winthrop Graham,
Yvonne Graham, Wendy Richardson, Jamal
Richardson, and Marisa Richardson*

Max Renea Hicks
rhicks@renea-hicks.com
1250 Norwood Tower
114 West 7th Street
Austin, Texas  78701

*Counsel for Intervenor-Defendant Travis County*

Laughlin McDonald
Neil Bradley
courtfilings@aclu-nca.org
AMERICAN CIVIL LIBERTIES
    UNION FOUNDATION, INC.
2600 Marquis One Tower
245 Peachtree Center Avenue
Atlanta, Georgia  30303

*Counsel for Intervenor-Defendant Nathaniel Lesane*

Lisa Graybill
Legal Director
courtfilings@aclu-nca.org
ACLU FOUNDATION OF TEXAS
1210 Rosewood Ave.
Austin, Texas  78702

*Counsel for Intervenor-Defendant Nathaniel Lesane*

Art Spitzer
artspitzer@aol.com
courtfilings@aclu-nca.org
Legal Director
ACLU OF THE NATIONAL CAPITAL AREA
1400 20th Street N.W., Suite 119
Washington, D.C.  20036

*Counsel for Intervenor-Defendant Nathaniel Lesane*

Jose Garza
jgarza@trla.org
Judith A. Sanders-Castro
George Korbel
Texas RioGrande Legal Aid, Inc.
1111 N. Main Street
San Antonio, Texas  78212

*Counsel for Intervenors-Defendants Angie Garcia, Jovita Casarez and Ofelia Zapata*

Alpha Hernandez
ahernandez@trla.org
Eloy Padilla
epadilla@trla.org
Texas RioGrande Legal Aid, Inc.
309 Cantu Street
Del Rio, Texas  78212

*Counsel for Intervenors-Defendants Angie Garcia, Jovita Casarez and Ofelia Zapata*

Michael T. Kilpatrick
mkirkpatrick@citizen.org
Brian Wolfman
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC  20009

*Counsel for Intervenors-Defendants Angie Garcia, Jovita Casarez and Ofelia Zapata*

Michael J. Kator
KATOR, PARKS & WEISER, PLLC
1020 19th Street, N.W., Suite 350
Washington, D.C.  20036

*Counsel for Intervenor-Defendant Nathaniel Lesane*

Jeremy Wright
KATOR, PARKS & WEISER, PLLC
812 San Antonio Street, Suite 100
Austin, Texas  78701

*Counsel for Intervenor-Defendant Nathaniel Lesane*

/s/ Christian J. Ward
Christian J. Ward