IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NORTHWEST AUSTIN MUNICIPAL UTILITY DISTRICT NUMBER ONE,<br><br>Plaintiff,<br><br>v.<br><br>ALBERTO GONZALES, Attorney General of the United States, et al.,<br><br>Defendants. | Civil Action No. 1:06-CV-01384<br>(DST, PLF, EGS) |

**DEFENDANT-INTERVENORS TEXAS STATE CONFERENCE OF NAACP BRANCHES AND AUSTIN BRANCH OF THE NAACP'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE EXPERT DESGINATION**

Defendant-Intervenors Texas State Conference of NAACP Branches and Austin Branch of the NAACP ("NAACP Defendants") submit this memorandum in opposition to Northwest Austin Municipal Utility District Number One's ("Plaintiff" or "the District") motion to strike the expert designation of Terry L. Musika. [Dkt. No. 68]. Plaintiff's motion to strike should be denied because: (1) Plaintiff violated the express requirements of the Court's December 6, 2006 Order by filing the motion without first contacting Judge Friedman's chambers; (2) the NAACP Defendants' omission of Mr. Musika's report from its initial Rule 26(a)(2) disclosures was substantially justified because Mr. Musika's report necessarily depends upon a review of financial records that the District did not produce until well after the expert disclosure due date, and the NAACP Defendants otherwise complied with Rule 26(a) to the maximum extent possible; and (3) Plaintiff would not be prejudiced by the NAACP Defendants' serving the report on or before March 9, 2007 because it was on notice as early as January 12, 2007 that the

1

NAACP Defendants intended to designate an accounting expert, and Plaintiff will have ample opportunity to review Mr. Musika's report and conduct a deposition before the close of expert discovery in this case.

## BACKGROUND

Section 5 of the Voting Rights Act of 1965 forbids certain covered jurisdictions from implementing any change affecting voting unless either the Department of Justice or this Court has concluded that the change does not have the purpose and will not have the effect of discriminating on the basis of race or language-minority status. The central issue in this case is whether Section 5 is constitutional. In its currently operative Complaint, Plaintiff relies on the allegedly excessive financial burden to the District caused by the need to comply with Section 5 to argue that Section 5 is unconstitutional. *See, e.g.,* Compl. [Dkt. No. 1] ¶ 7 ("The district . . . does not believe that continued submission to the burdensome and costly preclearance provisions is either necessary or constitutionally proper."); *see also id.* ¶¶ 12, 13, 20, 25.

In response to the allegation in the Complaint that compliance with Section 5 is "costly" (*see, e.g., id.* ¶ 12), the NAACP Defendants retained an accounting expert, Terrry L. Musika, to assess the actual financial burden, if any, that Section 5 imposes on the District.[1] On January

---

[1]    The District has since moved in this Court for leave to amend its Complaint. *See* Pl.'s Mot. for Leave to File Am. Compl. [Dkt. No. 65]. In its proposed Amended Complaint, the District had removed all specific references to the *financial* burden it purportedly faces in complying with Section 5, but nevertheless alleges broadly that the preclearance process is burdensome. *Compare, e.g.,* Am. Compl. ¶ 12 ("The § 5 preclearance process is burdensome.") *with* Compl. [Dkt. No. 1] ¶ 15 ("The § 5 preclearance process is costly and burdensome."). Given that the Amended Complaint still claims a burden (of some nature not clearly articulated), the NAACP Defendants do not read the Amended Complaint as having abandoned an argument that Section 5 is unconstitutional because compliance is financially costly to the District. For that reason, the NAACP Defendants still perceive a need for their expert to examine the actual financial burden, if any, that the District faces in complying with Section 5. If, however, the District is willing to stipulate that its monetary burden in complying with Section 5 is not

12, 2007, the NAACP Defendants notified Plaintiff's counsel by telephone that they intended to designate an accounting expert to assess the District's financial burden resulting from compliance with Section 5. The NAACP Defendants informed Plaintiff's counsel that they would not be able to provide a full expert report by January 16, 2007, the date set by the Court for Rule 26(a)(2) expert disclosures, because Mr. Musika's report would necessarily depend upon a detailed review of the District's documents, which the District had yet to produce.[2/] Counsel for the NAACP Defendants further assured Plaintiff's counsel that they would disclose the expert report as soon as possible after receiving the District's documents and that they did not intend to deprive the District of a reasonable opportunity to depose Mr. Musika. Although Plaintiff's counsel declined to "waive" its right under the Court's scheduling order to disclosure of the full expert report by January 16, he did not indicate at that time that he would object or move to strike if the report were not produced by January 16.

Pursuant to the deadline established in the Court's Scheduling Order and in substantial compliance with Rule 26(a), the NAACP Defendants disclosed the expert testimony of Mr. Musika on January 16, 2007. *See* Scheduling Order [Dkt. No. 52]; Disclosure of Expert Testimony of Terry L. Musika attached as Exhibit A to the Declaration of Paul R.Q. Wolfson in Support of the NAACP Defendants' Memorandum in Opp. to Pl.'s Mot. to Strike Expert Designation ("Wolfson Decl."). In that document, the NAACP Defendants disclosed that Mr.

---

significant, either constitutionally or otherwise, and that it will not in any way rely on a *financial* burden to argue that Section 5 is unconstitutional, then the NAACP Defendants would be willing to withdraw their designation of Mr. Musika as an expert witness.

[2/]     Private Defendant-Intervenors, including the NAACP Defendants, collectively served Plaintiff with a Request for Production of Documents on December 29, 2006. *See* Wolfson Decl., Ex. B. Under Rule 34, Plaintiff were required to respond to this request by no later than January 29, 2007. *See* Fed. R. Civ. P. 34. On January 31, 2007, Plaintiff produced 10,661 pages of documents in response to the discovery requests.

Musika would "provide expert testimony on the absolute financial burdens on the MUD of complying with Section 5, and also on the financial burdens of compliance relative to the MUD's total financial obligations." Wolfson Decl., Ex. A at 2. The NAACP Defendants also specified the data on which Mr. Musika would rely in formulating his expert report, "principally the District's responses to the Document Requests and Interrogatories served on the District by counsel for the NAACP Defendants on December 29, 2006." *Id.* Finally, the NAACP Defendants disclosed that, upon receiving and reviewing the District's discovery responses, "Mr. Musika will prepare an expert report, which Defendants will provide to the District sufficiently in advance of the April 9, 2007 date for the close of expert discovery to review and conduct a deposition of Mr. Musika should the District elect to do so." *Id.*[3/]

As required by the Court's December 6, 2006 Order, all parties to this action—*including the District*—submitted a Joint Report on January 19, 2007. The Joint Report stated that "Defendant-Intervenors plan to designate and use experts in this case, and Plaintiff reserves the right to designate and use rebuttal experts if necessary." Joint Report in Resp. to Order of Dec. 6, 2006 [Dkt. No. 64]. At no time did Plaintiff object to the NAACP's disclosure or suggest that the disclosure was improper. Instead, Plaintiff simply indicated in the Joint Report that it "reserve[d] the right to designate and use rebuttal experts if necessary." *Id.*

Plaintiff's counsel had thus been informed as of January 12, 2007 that the NAACP Defendants would be unable to disclose Mr. Musika's actual report until after the District

---

[3/]  The NAACP Defendants' expert disclosure also described in detail Mr. Musika's professional and educational qualifications, business experience, expected compensation, all publications he authored since 1985, and all testimony, affidavits and expert reports he provided since 2002. *See generally* Wolfson Decl., Ex. A.

responded to the discovery requests and Mr. Musika had time to analyze the produced documents. On January 31, 2007, Plaintiff produced more than 10,000 pages of documents to all Defendants in this case in response to document requests and interrogatories served by the Private Defendant-Intervenors.[4/] In their discovery requests, including the discovery requests concerning cost data, Private Defendant-Intervenors had specifically requested that Plaintiff identify which documents were responsive to which document requests as well as to which interrogatories.[5/] Plaintiff utterly failed to do so, and instead delivered a "document dump" of more than 10,000 pages to the Defendants in this case, with the documents completely unindexed or otherwise correlated to specific document requests. Similarly, in response to the Defendant-Intervenors' interrogatory on the cost of compliance with Section 5, the District's answer was essentially to refer Defendants to the documents produced.[6/] Accordingly, the NAACP

---

[4/] In its Rule 26(a)(1) disclosures served December 15, 2006, Plaintiff declined to produce a "copy of" all or any documents that it might "use to support its claims." Fed. R. Civ. P. 26(a)(1)(B).

[5/] *See, e.g.,* Private Defendant-Intervenors' Joint First Set of Requests for Production of Documents to Plaintiff Northwest Austin Municipal Utility District No. 1 (dated December 29, 2006), Wolfson Decl., Ex. B at 2; *id.* at 6-7 (Requests 17-18); Private Defendant-Intervenors' Joint First Set of Interrogatories to Plaintiff Northwest Austin Municipal Utility District No. 1 (dated December 29, 2006), Wolfson Decl., Ex. C at 3-4 (Instruction No. 14); *id.* at Interrogatory No. 5.

[6/] The NAACP Defendants asked in Interrogatory No. 5: "State all facts relating to the District's costs and expenses associated with administering all activities related to voting since the District's inception, including, but not limited to, stating the basis for the District's contention that the Section 5 preclearance process is 'costly and burdensome' and 'represents a vast waste of public monies and resources.'" (Complaint at ¶¶ 12-13). *See* Plaintiff Northwest Austin Municipal Utility District No. 1's Answers to Private Defendant-Intervenors' Joint First Set of Interrogatories (Jan. 31, 2007), Wolfson Decl., Ex. D at 5. The District answered in relevant part that "detailed information regarding costs and expenses associated with administering activities related to voting is contained within the information being provided by the Private Defendant-Intervenors and other parties. In particular, the minutes of various board meetings over the years and bills an invoices attached thereto contain all relevant and discoverable information regarding such costs and expenses." *Id.* Scattered throughout its document production, the District

Defendants have had to review the District's 10,000-plus page production to determine which documents might be relevant for Mr. Musika's analysis.

Meanwhile, the District waited until February 13, 2007—nearly a month after the NAACP Defendants' Rule 26(a) disclosure—to inform the NAACP Defendants that it objected to the designation of Mr. Musika. Moreover, prior to filing the motion to strike, Plaintiff's counsel violated the express terms of the Court's Scheduling Order by failing to contact Judge Friedman's chambers to arrange a telephone conference. [Dkt. No. 52] at ¶ 11 ("If counsel are unable to resolve the discovery dispute, counsel shall arrange a telephone conference with the Court by contacting the chambers of Judge Friedman."). Instead, Plaintiff's counsel e-mailed counsel for the NAACP Defendants asking whether the NAACP Defendants would object to their motion to strike; counsel for the NAACP Defendants, who was then in a meeting on another matter, emailed back immediately that they would object. The motion to strike was filed only hours later that same day.

## ARGUMENT

### A. By Filing A Discovery Motion Without First Arranging A Conference With The Court, The District Violated The Court's Scheduling Order.

The Court's Scheduling Order provides that: "If counsel are unable to resolve the discovery dispute, counsel shall arrange a telephone conference with the Court by contacting the chambers of Judge Friedman. Counsel shall not file a discovery motion without a prior conference with the Court and opposing counsel." [Dkt. No. 52] at ¶ 11. Although Plaintiff's counsel contacted counsel for the NAACP Defendants prior to filing the motion to strike to see

---

produced over 200 minutes to Board meetings, each of which contains many pages, rendering its identification of the minutes rather meaningless guidance as to which documents were responsive to the interrogatory.

whether NAACP Defendants would object (a consultation that was perfunctory in light of the circumstances), Plaintiff's counsel failed to arrange a "telephone conference with the Court"—as *expressly required* by the Court's scheduling order—before filing its motion to strike. *Id.* Such a failure has unnecessarily forced the parties to waste their resources, and the resources of the Court, by briefing this discovery issue.

This waste of resources is only exacerbated by the fact that Plaintiff waited almost a month after the date for disclosure of expert reports to file this motion. If Plaintiff had definitively indicated, before that disclosure date, that it would object to the NAACP's proposal to disclose Mr. Musika's report after his review of the documents was completed, the NAACP Defendants could have moved to extend the expert disclosure deadline. Instead, Plaintiff took a "wait and see" attitude and then, only after NAACP Defendants and Mr. Musika expended time and resources reviewing the documents, moved to strike. This procedural gamesmanship on the part of Plaintiff, culminating in its violation of the Court's Scheduling Order, alone provides a sufficient basis for the Court to deny Plaintiff's motion to strike.

**B.     The NAACP Defendants' Offer To Provide Mr. Musika's Expert Report After A Review Of The District's Financial Documents Produced In Discovery Is Substantially Justified And Causes No Harm To The Plaintiffs.**

Although Federal Rule 37(c)(1) permits the Court to exclude information improperly omitted from a party's Rule 26(a) disclosure, it is clear that such a sanction should not be imposed if substantial justification exists for the failure to disclose, or if the failure to disclose is harmless. *See, e.g., Michelone v. Desmarais*, No. 00-2451, 2002 WL 18766, at *2 (4th Cir. Jan. 8, 2002) ("Rule 37(c)(1) thus does not require witness preclusion for untimely disclosure if there is a substantial justification or if missing the deadline is harmless."); *Newman v. GHS Osteopathic, Inc., Parkway View Hosp. Div.*, 60 F.3d 153, 156 (3d Cir. 1995) ("[Rule 37(c)(1)] expressly provides that sanctions should not be imposed if substantial justification exists for the

failure to disclose, or if the failure to disclose was harmless. Thus, the rule does not leave district courts without discretion."). Despite Plaintiff's claims to the contrary, the NAACP Defendants' offer to provide Mr. Musika's expert report after Mr. Musika had reviewed the documents produced by the District was substantially justified and has not resulted in any harm to Plaintiff.

> 1. *Under the circumstances, the NAACP Defendants have substantially complied with the Rule 26(a) expert disclosure requirements.*

The NAACP Defendants have complied with this Court's Scheduling Order for Rule 26(a)(2) disclosures to the maximum extent possible given the circumstances of this case. First, it was impossible for Mr. Musika to provide his full report on January 16, 2007 because the District did not produce the documents for Mr. Musika to review until nearly two weeks *after* that date had passed. Despite this problem, the NAACP Defendants diligently attempted to comply at all times with the Court's Scheduling Order and the Rule 26(a)(2) requirements. To this end, the NAACP Defendants have disclosed as much information regarding Mr. Musika's report as possible and have worked diligently to assure that Mr. Musika's report will be provided as soon as possible.

As noted above, Private-Intervenors filed joint discovery requests on December 29, 2006. In their discovery requests, the NAACP Defendants specifically requested the District's financial records—particularly the District's budgets and records of expenditures relating to elections in the District—on which an accounting expert would likely rely in analyzing the costs of the District's Section 5 compliance. *See* Wolfson Decl., Ex. B at 6-7 (Document Requests Nos. 13-18). On January 12, 2007, counsel for the NAACP Defendants informed counsel for the District that they intended to retain an expert on accounting issues to assess the District's allegation that it is "costly and burdensome" for the District to comply with Section 5. Compl. [Dkt. No. 1] ¶

12. At that time, the NAACP Defendants notified Plaintiff's counsel that (1) they were prepared to disclose the expert's identity, qualifications, experience and compensation prior to the deadline; and (2) that disclosure of the expert's report by January 16, 2007 would be impossible because the expert's opinion would depend on a review of the District's discovery responses which the District had yet to produce.

On January 16, 2007, the NAACP Defendants served all parties with notice that they had retained Mr. Musika to review the allegations of the District's "cost" and "burden" of compliance with Section 5. *See* Wolfson Decl., Ex. A at 2. Further, the NAACP Defendants' disclosure expressly stated, "[Mr. Musika's] expert testimony will be based on [his] review of data produced by the District in discovery, principally the District's responses to the Document Requests and Interrogatories served on the District by counsel for the NAACP Defendants on December 29, 2006." *Id.* No party objected to the NAACP Defendants' proposed course of action.[2/] Instead, three days later, as required by the Court, the parties filed a Joint Report informing the Court of the parties' respective intents regarding the use of experts. Once again, no parties objected to Mr. Musika or to the NAACP Defendants' intentions concerning the production of his report and opinion. Because the District failed to object in a timely manner, despite it having been on notice regarding the timing of the expert option, its motion to strike should be dismissed. *Benson v. Tocco*, 113 F.3d 1203, 1209 (11th Cir. 1997) (denying

---

[2/] In its motion to strike, Plaintiff alleges that the NAACP Defendants requested that the District "waive compliance with Rule 26(a) to allow the NAACP to designate its expert witness without disclosure of an expert report because it would be difficult to prepare a report without having completed fact discovery." *See* Mot. to Strike at 2 [Dkt. No. 68]. That assertion is incorrect; the NAACP Defendants did not ask the District to "waive" compliance with Rule 26(a). Rather, the NAACP Defendants informed counsel for the District that they would, to the maximum extent possible, meet the Court's Scheduling Order and satisfy the requirements of

defendant's motion to strike where defendant "was on notice as to the plaintiffs' intention to call an expert pending the evaluation of certain information that [defendant] had delayed in producing").

Importantly, the NAACP Defendants complied with Rule 26(a) to the fullest extent possible despite not having access to the District's discovery responses until January 31, 2007. Indeed, on January 16, 2007, the NAACP Defendants disclosed in good faith as much of the expected expert testimony of Mr. Musika as possible at the time, including: (1) his educational and professional qualifications; (2) his 32 years of experience as a CPA; (3) his expected compensation; (4) all publications he authored since 1985; (5) all testimony, affidavits and expert reports he provided since 2002; (6) the subject matter of his testimony (*i.e.*, the District's absolute and relative financial burdens in complying with Section 5); (7) the specific types of documents on which he would rely in forming his opinion; and (8) the NAACP Defendants' intention to disclose the expert report sufficiently in advance of the deadline for completion of expert discovery and depositions.[8/] *See generally* Wolfson Decl., Ex. A.

Upon receiving more than 10,000 pages of documents from the District on January 31, 2007, counsel for the NAACP Defendants promptly began a thorough review of the documents, in part to ascertain which documents would be initially relevant for Mr. Musika to review. That review was complicated by the fact that the District failed to provide an index of the documents or otherwise connect them in any way to the individual document requests, despite the

---

Rule 26(a), but that Mr. Musika's report could not be produced until after the District's documents had been produced and reviewed.

[8/]    *See Thomas v. Consol. Rail Corp.*, 169 F.R.D. 1, 2 (D. Mass. 1996) (in declining to exclude the testimony of a party's several expert witnesses, noting that the party had "made full disclosure of all reports and other written materials related to these [] witnesses").

requirements of the Federal Rules of Civil Procedure and the Private Defendant-Intervenors' express request that they do so.[9/] Immediately upon completing this review, the NAACP Defendants provided Mr. Musika with the documents relevant to the purposes for which he has been retained.

The NAACP Defendants' substantial compliance with Rule 26(a) provided sufficient information for the District to retain a rebuttal expert and prepare for the expected cross-motions for summary judgment. Based on the circumstances surrounding the parties' discovery and the NAACP Defendants' substantial compliance with the Court's Scheduling Order and the Rule 26(a) disclosure requirements, the Court should deny Plaintiff's motion to strike. *See McClain v. Metabolife Int'l., Inc.*, 193 F. Supp. 2d 1252, 1259 (N.D. Ala. 2002) ("Without a finding of bad faith or gamesmanship . . . many courts are loath to invoke the strong medicine of precluding expert testimony."); *Croom v. W. Conn. State Univ.*, 218 F.R.D. 15, 18 (D. Conn. 2002) (accepting late-filed expert report where there was no evidence that the late filing was "willful" and concluding that "[t]he remedy of preclusion is not to be employed as a 'paper tiger' with parties capitalizing on technical mistakes in discovery, but rather should be employed sparingly when the circumstances demand such a drastic measure."); *Benson*, 113 F.3d at 1209 (accepting late-filed expert report where the court failed to find neither "subterfuge nor deliberate delay

---

[9/]   Federal Rule of Civil Procedure 33(d) provides that, where a party seeks to answer an interrogatory by specifying "the records from which the answer may be derived or ascertained," such specification must be "in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained." The District provided no such detail.

In addition, Federal Rule 34(b) mandates that a party who produces documents for inspection "shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the request[.]" The District's disorganized, unlabeled production is not consistent with this standard.

11

attributable to the plaintiffs" and any delay in submission of expert affidavit "was caused in large part by [defendant's] conduct").

> 2. *Permitting the NAACP Defendants to submit Mr. Musika's expert report by March 9, 2007 would not prejudice the District.*

In addition to its failure to recognize the NAACP Defendants' substantial justification for its omission of Mr. Musika's report, Plaintiff's motion to strike exaggerates the alleged prejudice that it might suffer from the report. The District alleges in conclusory fashion that "intervenor's failure to comply with the rules and scheduling order has prejudiced the district by making it impossible for the district to retain an expert witness, analyze Mr. Musika's as-yet-nonexistent expert opinions, and prepare a rebuttal expert report that could then be disclosed by trial." Mot. to Strike at 3 [Dkt. No. 68]. Notwithstanding this claim, the District fails to explain why it could not retain a rebuttal expert during the month between the NAACP Defendants' detailed expert disclosure and the District's own deadline. Rather, Plaintiffs were well-situated to retain an expert witness to provide a rebuttal report to Mr. Musika's clearly identified areas of analysis and likely nature of his conclusions.

*First,* Plaintiffs were fully aware of the subject matter of Mr. Musika's expected report. In its expert disclosure, the NAACP Defendants stated that Mr. Musika "will provide expert testimony on the absolute financial burdens on the MUD of complying with Section 5, and also on the financial burdens of compliance relative to the MUD's total financial obligations." Wolfson Decl., Ex. A at 2. This information, along with Mr. Musika's *curriculum vitae* and expert qualifications, should have been sufficient for the District to pursue retaining an appropriate expert for rebuttal purposes. The NAACP Defendants' Rule 26(a) disclosures thus foreclose any possibility that Mr. Musika's testimony is "unexpected" by the District or that that the District has been left "without adequate opportunity to prepare for it." *Michelone*, 2002 WL

12

18766, at *3; *see also Thibeault v. Square D. Co.*, 960 F.2d 239, 246 (1st Cir. 1992) (noting that "the focus of a preclusion inquiry is mainly upon surprise and prejudice, including the opponent's ability to palliate the ill effects stemming from the late disclosure").[10]

*Second,* the NAACP Defendants remain committed to producing Mr. Musika's expert report "sufficiently in advance of the April 9, 2007 date for the close of expert discovery" so that the District may review his report, depose Mr. Musika, and retain an expert to prepare a rebuttal report. Wolfson Decl., Ex. A at 2. The NAACP Defendants anticipate producing Mr. Musika's report on or before March 9, 2007. Under the Court's scheduling order, expert discovery in this case does not close until April 9, 2007, dispositive motions are due on April 16, 2007, and oral argument is not scheduled until September 17, 2007. [Dkt. No. 52]. The District will therefore have ample opportunity to take Mr. Musika's deposition and to produce a rebuttal report, if necessary.[11] The District has not been prejudiced by the NAACP Defendants' inability to provide Mr. Musika's report on January 16, 2007.

---

[10]   On the other hand, refusing to allow the NAACP Defendants to submit Mr. Musika's report after the initial expert disclosures would not be appropriate under these circumstances. *See Orjias v. Stevenson*, 31 F.3d 995, 1005 (10th Cir. 1994) ("Notwithstanding Rule 37(c), the district court may be found to have abused its discretion if the exclusion of the testimony results in fundamental unfairness in the trial of the case."); *see also DAG Enters., Inc. v. Exxon Mobil Corp.*, 226 F.R.D. 95, 105 (D.D.C. 2005). Here, the NAACP Defendants would not have an expert opinion to address the factual underpinnings of one of the District's central–and highly technical–allegations: "The District... does not believe that continued submission to the burdensome and costly preclearance provisions is either necessary or constitutionally proper." Compl. ¶ 7 [Dkt. No. 1]; *see also id.* ¶¶ 12, 12, 20, & 25; *supra* n. 1.

[11]   The NAACP Defendants would not oppose a modest extension of the expert discovery deadline if Plaintiffs believe it is necessary for completion of any rebuttal expert report and for expert depositions.

## CONCLUSION

For the reasons set forth above, Plaintiff's motion to strike the expert designation of Terry L. Musika should be denied.

Respectfully submitted,

/s/ Seth P. Waxman

Seth P. Waxman (D.C. Bar No. 257337)
John A. Payton (D.C. Bar No. 282699)
Paul R.Q. Wolfson (D.C. Bar No. 414759)
Ariel B. Waldman (D.C. Bar No. 474429)
Michael J. Gottlieb (admitted *pro hac vice*)
Daniel A. Zibel (D.C. Bar No. 491377)
WILMER CUTLER PICKERING HALE and
    DORR LLP
1875 Pennsylvania Ave. N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Dennis C. Hayes (admitted *pro hac vice*)
General Counsel
NATIONAL ASSOCIATION FOR THE
ADVANCEMENT
OF COLORED PEOPLE, INC.
NAACP National Office
4805 Mt. Hope Drive
Baltimore, MD 21215
Telephone: (410) 580-5777
Facsimile: (410) 358-9350

Jon M. Greenbaum (D.C. Bar No. 489887)
Benjamin J. Blustein (D.C. Bar No. 418930)
Jonah H Goldman (D.C. Bar No. 497507)
LAWYERS' COMMITTEE FOR CIVIL
RIGHTS UNDER LAW
1401 New York Avenue, NW, Suite 400
Washington, D.C. 20005
Telephone: 202-662-8600
Facsimile: 202-628-2858

*Counsel for Defendant-Intervenors*
*Texas State Conference of NAACP Branches and Austin Branch of the NAACP*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of February 2007, I caused to be served a copy of the foregoing DEFENDANT-INTERVENORS TEXAS STATE CONFERENCE OF NAACP BRANCHES AND AUSTIN BRANCH OF THE NAACP'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE EXPERT DESGINATION to all counsel of record via the Court's ECF/CM filing system.

*/s/Ariel B. Waldman*
Ariel Waldman