IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NORTHWEST AUSTIN MUNICIPAL UTILITY DISTRICT NUMBER ONE,<br><br>        Plaintiff,<br><br>    v.<br><br>ALBERTO GONZALES,<br>Attorney General of the United States,<br><br>        Defendant. | Civil Action No. 1:06-cv-1384<br><br>Three-judge court (PLF, DST, EGS) |

### DECLARATION OF T. CHRISTIAN HERREN JR

I, T. Christian Herren Jr, declare as follows:

1. I am currently employed as an attorney in the Voting Section, Civil Rights Division, United States Department of Justice in Washington, D.C.

2. During my time in the Voting Section, I have done considerable work on administrative and litigation matters relating to Section 5 of the Voting Rights Act of 1965, 42 U.S.C. 1973c.

3. I serve as one of the attorneys of record for the Defendant in this action.

4. The Voting Section has the responsibility for civil enforcement of the Voting Rights Act of 1965, and for administration of the Attorney General's preclearance responsibilities under Section 5 of the Act.  42 U.S.C. 1973j(d), 28 C.F.R. 0.50(a),(h), 51.3.

5. On November 26, 1986, the Attorney General received the Plaintiff's first submission under Section 5 of the Voting Rights Act.  In that submission, the Plaintiff sought preclearance under § 5 for its creation; for the procedures for

conducting its December 13, 1986, confirmation, director, bond, and maintenance tax election; for bilingual election procedures; for its implementation schedule; and for the establishment of a polling place. The Attorney General notified the Plaintiff that he interposed no objection to the submitted voting changes on January 26, 1987. The attached is a true and correct copy of the Plaintiff's submission and the Attorney General's letter in response from the Attorney's General's Submission File 1986-1537. *See* Government Exhibit 1.

6. On April 11, 1988, the Attorney General received the Plaintiff's second submission under Section 5 of the Voting Rights Act. In that submission, the Plaintiff sought preclearance for its re-creation; for the procedures for conducting its May 7, 1988, confirmation, director, bond, and maintenance tax election; for the establishment of a polling place, for bilingual election procedures; and for the use of paper ballots. The Attorney General notified the Plaintiff that he interposed no objection to the submitted voting changes on June 10, 1988. The attached is a true and correct copy of the Plaintiff's submission and the Attorney General's letter in response from the Attorney's General's Submission File 1988-1404. *See* Government Exhibit 2.

7. On April 10, 1990, the Attorney General received the Plaintiff's third submission under Section 5 of the Voting Rights Act. In that submission, the Plaintiff sought preclearance for changes in its polling place and absentee voting location. The Attorney General notified the Plaintiff that he interposed no objection on June 11, 1990. The attached is a true and correct copy of the Plaintiff's submission and the Attorney General's letter in response from the Attorney's General's Submission

File 1990-1423. *See* Government Exhibit 3.

8. On April 5, 1996, the Attorney General received the Plaintiff's fourth submission under Section 5 of the Voting Rights Act. In that submission, the Plaintiff sought preclearance for a change in its polling place. The Attorney General notified the Plaintiff that she interposed no objection on June 3, 1996. The attached is a true and correct copy of the Plaintiff's submission and the Attorney General's letter in response from the Attorney's General's Submission File 1996-1732. *See* Government Exhibit 4.

9. On June 10, 1996, the Attorney General received its fifth submission from the Plaintiff under Section 5 the Voting Rights Act. In that submission, the Plaintiff sought preclearance for its general election notice procedures and for the cancellation of its general election. The Attorney General notified the Plaintiff that she interposed no objection on August 1, 1996. The attached is a true and correct copy of the Plaintiff's submission and the Attorney General's letter in response from the Attorney's General's Submission File 1996-2595. *See* Government Exhibit 5.

10. On March 27, 1998, the Attorney General received the Plaintiff's sixth submission under Section 5 the Voting Rights Act. In that submission, the Plaintiff sought preclearance for an annexation into the Plaintiff (of approximately 2.486 acres) and for a polling place change. The Attorney General notified the Plaintiff that she interposed no objection on May 19, 1998. The attached is a true and correct copy of the Plaintiff's submission and the Attorney General's letter in response from the Attorney's General's Submission File 1998-

    1264.  *See* Government Exhibit 6.

11. On March 27, 2002, the Attorney General received the Plaintiff's seventh submission under Section 5 of the Voting Rights Act.  In that submission, the Plaintiff sought preclearance for a polling place change.  The Attorney General notified the Plaintiff that he interposed no objection on May 24, 2002.  The attached is a true and correct copy of the Plaintiff's submission and the Attorney General's letter in response from the Attorney's General's Submission File 2002-1980.  *See* Government Exhibit 7.

12. On February 27, 2004, the Attorney General received the Plaintiff's eighth submission under Section 5 of the Voting Rights Act.  In that submission, the Plaintiff sought preclearance for joint election procedures with Travis County, Texas, including the use of the county's early voting locations, hours and voting method.  The Attorney General notified the Plaintiff that he interposed no objection on April 8, 2004.  The attached is a true and correct copy of the Plaintiff's submission and the Attorney General's letter in response from the Attorney's General's Submission File 2004-0946.  *See* Government Exhibit 8.

13. Attached is a true and correct copy of the results of the Plaintiff's December 13, 1986, confirmation, director, bond and maintenance tax election. This document was obtained by the undersigned from the files of the Texas Commission on Environmental Quality and duplicates the last two pages of the document that appears as Ex. 35 to the deposition of Sharlene Collins.  *See* Government Exhibit 9.

14. Attached is a true and correct copy of the results of the Plaintiff's May 7, 1988,

confirmation, director, bond and maintenance tax election. This document was obtained from the Plaintiff in discovery. *See* Government Exhibit 10.

15. Attached is a true and correct copy of the results of the Plaintiff's May 5, 1990, director election. This document was obtained from the Plaintiff in discovery. *See* Government Exhibit 11.

16. Attached is a true and correct copy of the results of the Plaintiff's May 2, 1992, director election. This document was obtained from the Plaintiff in discovery. *See* Government Exhibit 12.

17. Attached are true and correct copies of the register of official ballots and ballot style for the Plaintiff's May 2, 1992, director election. These documents were obtained from the Plaintiff in discovery. *See* Government Exhibit 13.

18. Attached is a true and correct copy of the results of the Plaintiff's May 7, 1994, director election. This document was obtained from the Plaintiff in discovery. *See* Government Exhibit 14.

19. Attached are true and correct copies of the register of official ballots and ballot style for the Plaintiff's May 7, 1994, director election. These documents were obtained from the Plaintiff in discovery. *See* Government Exhibit 15.

20. Attached is a true and correct copy of an order by the Plaintiff cancelling its May 4, 1996 director election pursuant to state law because the two candidates were unopposed in this election. This document was obtained from the Plaintiff in discovery. *See* Government Exhibit 16.

21. Attached is a true and correct copy of an order by the Plaintiff cancelling its May 2, 1998 director election pursuant to state law because the three candidates were

unopposed. This document was obtained from the Plaintiff in discovery. *See* Government Exhibit 17.

22. Attached is a true and correct copy of an order by the Plaintiff cancelling its May 6, 2000 director election pursuant to state law because the two candidates were unopposed. This document was obtained from the Plaintiff in discovery. *See* Government Exhibit 18.

23. Attached is a true and correct copy of the results of the Plaintiff's May 4, 2002, director election. This document was obtained from the Plaintiff in discovery. *See* Government Exhibit 19.

24. Attached are true and correct copies of the register of official ballots and ballot style for the Plaintiff's May 4, 2002, director election. These documents were obtained from the Plaintiff in discovery. See Government Exhibit 20.

25. Attached is a true and correct copy of the results of the Plaintiff's May 15, 2004, director election. This document was obtained from the Plaintiff in discovery. *See* Government Exhibit 21.

26. Attached is a true and correct copy of the results of the Plaintiff's May 13, 2006 director election. This document was obtained from the Plaintiff in discovery. *See* Government Exhibit 22.

27. Attached is a true and correct copy of excerpts from the Official Statement Dated June 14, 2006, Northwest Austin Municipal Utility District No. 1, Unlimited Tax Refunding and Improvement Bonds Series 2006. This document was included in the disclosures with the expert report of Terry Musika. See Gov. Exhibit 23.

28. Attached is a true and correct copy of Travis County's report of voter registration

totals for the Plaintiff as of May 10, 2007. This document was obtained from counsel for Travis County. *See* Government Exhibit 24.

29. Attached is a true and correct copy of the complaint dated June 27, 1986, filed by the City of Austin challenging the Texas Water Commission's creation of the Plaintiff district. This document was copied by the undersigned from the files of the Texas Commission on Environmental Quality. *See* Government Exhibit 25.

30. Attached are true and correct copies of the written agreement in which the City of Austin consented to the creation and operation of the Plaintiff, and the three amendments thereto. These documents were obtained from Plaintiff in discovery. *See* Government Exhibit 26.

31. Attached is a true and correct copy of excerpts of the submission made to the Attorney General under Section 5 by the City of Austin of the annexation of the land that includes the Plaintiff district, and the Attorney General's letter in response from the Attorney's General's Submission File 1988-1376. *See* Government Exhibit 27.

32. Attached is a true and correct copy of excerpts of the submission made to the Attorney General under Section 5 by the City of Austin of a polling place change for Precinct 219, that included the Plaintiff district in the May 7, 1994 election, and the Attorney General's letter in response from the Attorney's General's Submission File 1994-1636. *See* Government Exhibit 28.

33. Attached is a true and correct copy of excerpts of the submission made to the Attorney General under Section 5 by Travis County of a polling place change for the Precinct 219 that included the Plaintiff district as of the November 1998

election to the Canyon Creek Elementary School, and the Attorney General's letter in response from the Attorney's General's Submission File 1998-3639.  *See* Government Exhibit 29.

34. Attached is a true and correct copy of excerpts of the submission made to the Attorney General under Section 5 by Travis County of a change in the designation of the polling place at the Canyon Creek Elementary School from Precinct 219 to Precinct 333, and the Attorney General's letter in response from the Attorney's General's Submission File 2001-3832.  *See* Government Exhibit 30.

35. Attached is a true and correct copy of excerpts of the submission made to the Attorney General by the City of Austin of a polling place consolidation for Precincts 333 and 343 at the Canyon Creek Elementary School for the May 13, 2006 election, and the Attorney General's letter in response from the Attorney's General's Submission File 2006-4281.  *See* Government Exhibit 31.

36. Attached is a true and correct copy of a map printed out by the undersigned from Google maps of the distance between two polling places used in the May 1994 elections in Travis County.  *See* Government Exhibit 32.

37. Attached is a true and correct copy of a map printed out by the undersigned from Google maps of the distance between two polling places used in the May 2002 elections in Travis County.  *See* Government Exhibit 33.

38. Attached is a true and correct copy of an except of Plaintiff's Response to the Private Defendant-Intervenors' Joint First Set of Interrogatories, at #15.  *See* Government Exhibit 34.

39. The Attorney General endeavors to make the administrative review process for administrative submissions under Section 5 of the Voting Rights Act as efficient, convenient and reasonable as possible for jurisdictions covered by its requirements.

40. The Attorney General has long-standing published procedures that describe many aspects of the Section 5 review process. *See Procedures for the Administration of Section 5 of the Voting Rights Act of 1965, As Amended*, 28 C.F.R. Part 51. These procedures were first promulgated in 1971. *See* 36 Fed. Reg. 18186 (Sept. 10, 1971).

41. The Attorney General also provides a website that discusses the Section 5 process. *See* http://www.usdoj.gov/crt/voting/

42. Section 5 itself allows submissions to be made by the "chief legal officer" or "other appropriate official" of a jurisdiction. 42 U.S.C. 1973c.

43. The Attorney General's procedures likewise provide that submissions can be made by the "chief legal officer," "other appropriate official of the submitting authority," or "any other authorized person on behalf of the submitting authority." 28 C.F.R. 51.23.

44. Hence, neither Section 5 nor the Attorney General's Procedures require that submissions for preclearance be made by attorneys. Many of the submissions received by the Attorney General under Section 5 are in fact neither prepared nor submitted by attorneys. Moreover, based on the Attorney General's experience in administering the Section 5 process, the vast majority of submissions do not require an attorney in order to prepare the submission.

45. The Attorney General provides a toll-free telephone number that submitting officials can call to speak with Department of Justice staff members, who are available to walk persons through what needs to be done to make a submission under Section 5.

46. The Attorney General has a long-established procedure, dating from 1971, for jurisdictions to request expedited consideration of voting changes. *See* 28 C.F.R. 51.34, 36 Fed. Reg. 18186 (September 10, 1971). The Attorney General makes every effort to accommodate covered states and local jurisdictions that experience emergencies prior to elections and that need expedited consideration of submissions of voting changes as a consequence. Situations calling for expedited consideration can include events such as fires or natural disasters that affect which polling places can be used in an election, or pre-election litigation that threatens to stop the conduct of an election. The Attorney General not infrequently makes emergency preclearance decisions within 24 hours on submissions in such situations.

47. The Attorney General has long accepted submissions from jurisdictions via overnight delivery. The Plaintiff availed itself of this option in a 1996 submission, which it sent by overnight delivery to the Attorney General (USDOJ File 1996-1732).

48. For some years, the Attorney General has provided a means for jurisdictions to make submissions for preclearance via facsimile. The Plaintiff availed itself of this option in a 2002 submission, which it faxed to the Attorney General (USDOJ File 2002-1980).

49. For some time, the Attorney General has also provided jurisdictions a means to submit additional information on pending Section 5 submissions through sending attachments to an email address.

50. Recently, the Attorney General has expanded his internet website to allow jurisdictions to make Section 5 submissions entirely by means of an entirely internet-based format. *See* http://wd.usdoj.gov/crt/voting/sec_5/evs/

51. The Attorney General's submission records show that the last submission the Plaintiff made under Section 5 to the Attorney General seeking preclearance of voting changes was on February 26, 2004, in connection with its 2004 director election, and that the Plaintiff has made no submissions in the more than three years since.

52. The Attorney General's records show that the Plaintiff made no submissions under Section 5 to the Attorney General seeking preclearance of voting changes in connection with its most recent May 13, 2006 election, nor in connection with its next election, scheduled for May 10, 2008.

53. The Attorney General's records do not reflect that as of May 15, 2007, the Plaintiff has any submissions under Section 5 pending before the Attorney General seeking preclearance of any voting changes.

54. The Attorney General's records do not reflect any evidence that Section 5 has prevented Plaintiff from implementing any proposed voting changes.

55. The Attorney General's records do not reflect any evidence that either of the two 2006 election agreements between Travis County and the Plaintiff was submitted for review under Section 5 of the Voting Rights Act by either Travis County or

the Plaintiff.

56. Prior to the 1982 amendments to Section 4(a) of the Voting Rights Act, that went into effect in 1984, there were approximately 91 jurisdictions that were eligible to file actions under Section 4(a) seeking to bail out of the temporary provisions of the Voting Rights Act.  The jurisdictions eligible to file such actions were those that had individual determinations published in the Federal Register that they were covered by the temporary provisions of the Voting Rights Act.  *See* 46 Fed. Reg. 870-01 (Jan. 5, 1981).

57. The 1982 amendments to Section 4(a) of the Voting Rights Act, that went into effect in August 1984, broadened the number of jurisdictions that could file actions seeking to bail out under Section 4(a) to at least 896 jurisdictions.  These jurisdictions break down as follows -- there are 9 states covered as a whole by Section 5; there are at least 821 counties, parishes and independent cities that supervise voter registration within those 9 states; and there are 66 jurisdictions that are separately covered by Section 5 in 7 other states.  *See* 28 C.F.R. Part 51 Appendix (listing jurisdictions).

58. To date, 14 of these 896 jurisdictions have successfully bailed out under Section 4(a) since 1984, with the agreement of the Attorney General.  All of these 14 jurisdictions were counties and independent cities in Virginia (the counties of Augusta, Botetourt, Essex, Frederick, Greene, Pulaski, Roanoke, Rockingham, Shenandoah, and Warren and the independent cities of Fairfax, Harrisonburg, Salem and Winchester).  *See Essex County v. Gonzales*, No. 1:06CV01631 (D.D.C. Jan. 31, 2007); *Botetourt County v. Gonzales*, No. 1:06CV01052 (D.D.C.

Aug. 30, 2006); *City of Salem v. Gonzales*, No. 1:06CV00977 (D.D.C. July 27, 2006)*; Augusta County v. Gonzales*, No. 1:05CV01885 (D.D.C. Nov. 30, 2005); *Pulaski County v. Gonzales*, No. 1:05CV01265 (D.D.C. Sept. 27, 2005)*; Greene County v. Ashcroft*, No. 1:03CV01877 (D.D.C. Jan. 19, 2004)*; Warren County v. Ashcroft*, No. 1:02CV01736 (D.D.C. Nov. 26, 2002); *Rockingham County v. Reno*, No. 1:02CV00391 (D.D.C. May 24, 2002); *City of Harrisonburg v. Reno*, No. 1:02CV00289 (D.D.C. Apr. 17, 2002)*; City of Winchester v. Reno*, No. 1:00CV03073 (D.D.C. June 1, 2001)*; Roanoke County v. Reno*, No. 1:00CV01949 (D.D.C. Jan. 24, 2001)*; Shenandoah County v. Reno*, No. 1:99CV00992 (D.D.C. Oct. 15, 1999)*; Frederick County v. Reno*, No. 1:99CV00941 (D.D.C. Sept. 10, 1999)*; City of Fairfax v. Reno*, No. 1:97CV02212 (D.D.C. Oct. 21, 1997).

59. If the opportunity to seek bailout under Section 4(a) was extended to the smallest political subjurisdictions in every covered state and covered county, like the Plaintiff, then more than 10,000 jurisdictions in those covered States and counties could file bailout actions in this Court. This estimate is based on the fact that the Attorney General's Section 5 records reflect the receipt of submissions from well more than 10,000 jurisdictions that conduct elections in currently covered jurisdictions.

Pursuant to 28 U.S.C. 1746, I declare under the laws of the United States of America that the foregoing is true and correct.

Executed this 15th day of May 2007, in Washington, D.C.

*/s/ T. Christian Herren Jr*
_____