NORTHWEST AUSTIN
MUNICIPAL UTILITY DISTRICT NO. 1

November 25, 1986

Assistant Attorney General
Civil Rights Division
Department of Justice
Washington, D.C. 20530

SUBMISSION UNDER SECTION 5, VOTING RIGHTS ACT

Re:  Northwest Austin Municipal Utility District No. 1

Ladies and Gentlemen:

The Undersigned is the President of the Board of Directors and Chief Executive Officer of Northwest Austin Municipal Utility District No. 1 (the "District"). This submission pursuant to Section 5, Voting Rights Act of 1965, as amended, is made under the provisions of 28 CFR 51: Procedures for the administration of Section 5 of the Voting Rights Act of 1965.

Background and History of the District.

The District is a municipal utility district which was created pursuant to Article 16, Section 59 of the Constitution on the State of Texas on April 18, 1986, by the Texas Water Commission, an agency of the State of Texas exercising the judicial functions of the Texas Water Commission, pursuant to the provisions of Chapter 54 of the Texas Water Code.

The District is governed by a board of five (5) directors elected for two (2) or four (4) year staggered terms on a District-wide basis by the qualified voters within the District. The initial board of directors was appointed by the Texas Water Commission when the District was created.

The District proposes to hold a Confirmation and Director Election, Bond Election and Maintenance Tax Election on December 7th, 1986. Chapter 54 of the Texas Water Code requires that a confirmation and director election be held before a municipal utility district issues any bonds or other obligations. Until the proposed election is held, the District is not a functioning legal entity.

There are two (2) people of voting age residing within the District.

There is one black family residing in the District and 0 families with Spanish surnames.

<u>Changes Affecting Voting</u>.

A.    Creation. As noted above, the District was created on April 18, 1986. A map of the District, which I certify to be true and correct, is attached hereto as Exhibit "A".

    1.    Information called for in Paragraph (a) of 28 CFR 51.10:

        (a)    The legislative or administrative enactment or order embodying the change affecting voting (i.e., the creation of the District) is the Order of the Texas Water Commission dated April 18, 1986, a copy of which is attached hereto as Exhibit "B". I certify that such attachment is a true and correct copy of such order.

        (b)    The Order was adopted on April 18, 1986.

        (c)    The authority responsible for the Order is the Texas Water Commission. The mode of decision was by vote of the Commission in formal open meeting.

        (d)    The difference between the submitted change affecting voting and the law or practice existing prior to the change (i.e., the creation of the District) is that the District was created where no utility district existed previously. The change will affect the entire District, the boundaries of which are shown on Exhibit "A". I hereby certify that the change affecting voting has not yet been enforced or administered.

        (e)    I hereby certify that the Confirmation and Director Election, Bond Election, and Maintenance Tax Election to be held on December 13, 1986, will be the first enforcement of the change affecting voting.

    2.    Information called for in Paragraph (b) of 28 CFR 51.10:

        (a)    The District was created in order to supply municipal utility services to the land shown on Exhibit "A".

        (b)    The effect of the change affecting voting is that there now exists a voting unit, with taxing authority;, where none previously existed.

(c)  There is no past or pending litigation concerning the change.

(d)  No other changes in law or administration relating to the April 18, 1986, creation of the District have been put into effect since the time when coverage under Section 4 of the Voting Rights Act began.

(e)  A map of the area affected, which shows the boundaries of the District, is attached hereto as Exhibit "A". There have been no other changes in the voting unit boundaries or in the geographical makeup of the constituency of the District since the time coverage under Section 4 of the Voting Rights Act began. All available information regarding population distribution by race is contained in the introductory statement. There are no natural boundaries or geographical features which influenced the creation of the District. The location of the proposed polling place is indicated on Exhibit "A".

(f)  Population information:

(i)  information concerning the population of the District, voting-age population and the number of registered voters, by race, before creation is not available. Present population information is set forth in the introductory statement;

(ii)  No population estimates, by race, were made in connection with the creation of the District;

(iii)  no particular office or offices are involved in the change; the creation of the District will affect all elections held in the District.

(g)  Evidence of public notice or opportunity for the public to be heard concerning the creation of the District is contained in Exhibit "B".

(h)  None of the information furnished herein reflects any estimation other than my own.

(i)  The information contained herein, to the extent it is not of my own personal knowledge, is contained in the books and records of the District.

B.  <u>Polling Place</u>. The District will use only one polling place in its elections. The Confirmation and Director Election, Bond Election and Maintenance Tax Election to be held on December 13th, 1986, will be the first elections held since the District's creation, and the polling place for said

elections will be 11403 Boulder Lane, Austin, Texas, 78726 which location is within the boundaries of the District.

1.  Information called for in Paragraph (a) of 28 CFR 51.10:

    (a) The order embodying the change in voting (i.e., the establishment of a polling place) is the Order Calling Confirmation and Director Election, Bond Election, and Maintenance Tax Election for December 13, 1986, a certified copy of which order is attached hereto as Exhibit "C". I certify that the attachment is a true and correct copy of such Order.

    (b) The Order was adopted on October 7, 1986.

    (c) The order has been adopted by the Board of Directors of the District. The mode of decision was by vote of the Directors in formal open meeting.

    (d) The differences between the submitted change (i.e., the establishment of a polling place) and the prior situation is that there was no polling place within the District prior to the designation of the polling place to be used at the December, 1986, elections.

    (e) I hereby certify that the Confirmation and Director Election, Bond and Maintenance Tax Election to be held on December 13, 1986, will be the first enforcement of the submitted change affecting voting.

2.  Information called for in Paragraph (b) of 28 CFR 51.10:

    (a) No polling place within the District existed prior to the designation of the polling place submitted herein for approval. There is no public building within the District which could serve as a polling place. The polling place for which such approval is sought is the (home of the election judge) for the confirmation and director election, bond election and maintenance tax election.

    (b) There is no anticipated effect of the change.

    (c) There is no past or pending litigation concerning the change.

    (d) There have been no other changes in law or administration relating to the location of the district's polling place since the time when

coverage under Section 4 of the Voting Rights Act began, because no polling place previously existed within the District.

(e) The change did not revise the constituency which elects any office or affect the boundaries of any geographic unit or units employed or defined for voting purposes. The location of the polling place is indicated on Exhibit "A".

(f) Population information:

(i) There has been no change in the population of the District, the voting age population, or the number of registered voters by race, caused by the establishment of the polling place for District elections.

(ii) See A(2)(f)(ii) and (iii), above,

(g) The establishment and location of the polling place for the District elections will be decided upon by the Board of Directors of the District at an open meeting held pursuant to the Texas Open Meetings law, at which meeting the public was given the opportunity to be heard. No public comment concerning the above-described change was received at the meeting.

(h) To the best of my knowledge, there is no information relevant to the establishment and location of the polling place for the district elections which is not available.

(i) None of the information furnished reflects any estimation other than my own.

(j) The information contained herein, to the extent it is not of my own personal knowledge, comes from the books and records of the District.

C. Bilingual Election Procedures. The minority language group which brought Texas under the Voting Rights Act of 1965, as amended, is Spanish-speaking. The Board of Directors of the District has adopted an Order Adopting and Implementing Bilingual Election Requirements in formal open meeting on October 7th, 1986. At the meeting, which was held in accordance with the Texas Open Meetings law, the public comment was received. A certified copy of the Order Adopting and Implementing Bilingual Election Requirements is attached hereto as Exhibit "D". I certify that the attachment is a true and correct copy of such Order. The bilingual election procedures which the District follows are:

1.  Those set forth in Chapter 213, Acts of the 64th Legislature, 1975 (S.B. 165), previously submitted by the State of Texas, which submission is incorporated herein by reference;

2.  Those set forth in the Voting Rights Act of 1965, as amended, 42 U.S.C. 1973 et. seq. (1975).

3.  Those set forth in 28 CFR 55 - Implementation of the Provisions of the Voting Rights Act Regarding Language Minority Groups, Subpart D-Minority Language Material and Assistance, §§55.14-55.21, as published in the Federal Register on April 21, 1976. The following information is keyed to §§55.19 and 55.20:

1.  Written Materials

    (a) Types of Materials:

        (i) Notice of Board Meetings Dealing with Elections - Notices of Board meetings concerning elections are posted at the places required by State law in Spanish and in English.

        (ii) Notices of Elections - all notices of elections required to be published by state law are published in Spanish and in English in a newspaper of general circulation in the county in which the District is located.

        (iii) Ballots and Other Election Materials Which will be used by the Voter - all ballots and other election materials are printed in Spanish and in English.

        (iv) Absentee Voting Materials - packets of voting materials printed in English and in Spanish are made available to all persons voting absentee.

    (b) Accuracy and completeness: All materials, other than those prepared as standard forms, are translated into Spanish by Fred Lee Castro. Mr. Castro is bilingual in English and in Spanish. It is anticipated that the bilingual election procedures adopted an implemented by the District will allow voters of Spanish heritage to be as informed as and to participate in voting related activities as fully as English speaking voters.

(c)  Ballots: See (a)(iii) and (iv) above.

(d)  Voting machines: Not applicable.

2.  Oral assistance and Publicity

(a) Publicity of Availability of Minority Language Materials: As noted above, all publications and postings required by law relating to elections are made in both English and Spanish and all election materials are supplied both in English and Spanish, resulting in complete availability of minority language printed materials.

(b) Oral assistance will be provided for the District's general and absentee balloting by means of telecommunication with election assistants fluent in both Spanish and English, pursuant to 28 CFR 55.20.

(c) It is the District's intention, pursuant to Section 61.031, 61.032, 61.033, 61.034, 61.035 and 61.036 of the Texas Election Code, to allow any voter unable to read or speak English to be assisted at the polls by any individual of the voter's choice.

D.  Legislative Changes.  There have been numerous changes in Texas statutory law affecting elections since November 1, 1972.  We have been advised that it is the responsibility of the Secretary of State of the State of Texas to make all submissions of Statutory changes on behalf of the State; therefore, no submission of statutory changes affecting voting is made herewith, whether or not previously submitted by the Secretary of State.

The foregoing are the only "changes affecting voting", as such is defined in 28 CFR 51.2, relating to the District.

Clearances Requested.

We hereby respectfully request that the Attorney General make an executive determination that denial or abridgment of the right to vote on account of race or color or in contravention of the guarantees set forth in Section 4(f)(2) of P.L. 89-110 as amended by P.L. 94-73 was not the purpose and is not the effect of the voting changes set forth herein as they relate to:

(a)  the existence of the District;

(b)  the Confirmation and Director Election, Bond Election and Maintenance Tax Election, to be held by the District on December 13, 1986; and

(c)    subsequent elections to be held by the District.

Procedural Matters.

    This is the first submission by the District under Section 5 of the Voting Rights Act. In the event that further information would be helpful or required for any reason connected with this request for clearances, please telephone the District's counsel, Sharlene Collins at (512) 499-3604. Correspondence regarding this submission should be sent, c/o Sharlene Collins, to the following address: 2600 One American Center, 600 Congress Avenue, Austin, Texas 78701.

    Pursuant to 28 CFR 51.22, the District further requests that this submission be given expedited consideration in order that the executive determination requested above be made prior to the December 13, 1986, elections.

    A conference is respectfully requested in the event clearance is not anticipated by the Attorney General or in the event that such a conference would be of assistance in the consideration of this request for clearances.

                      Very truly yours,

                      NORTHWEST AUSTIN MUNICIPAL UTILITY
                      DISTRICT NO. 1

                      By:_____
                        Ted R. Hendricks, President
                        Board of Directors



ESPEY, HUSTON & ASSOCIATES, INC.
ENGINEERING & ENVIRONMENTAL CONSULTANTS

NORTHWEST AUSTIN MUDS
LOCATION MAP

MAY, 1985

EXHIBIT A

# Austin American-Statesman

Armbrust & Brown

### AFFIDAVIT OF PUBLICATION

THE STATE OF TEXAS
COUNTY OF TRAVIS

Before me, the undersigned authority, a Notary Public in and for the County of Travis, State of Texas, on this day personally appeared:

Henry Guerra

Classified Advertising Agent of the Austin American-Statesman, a daily newspaper published in said County and State, who being duly sworn by me, states that the attached advertisement was published in said newspaper on the following dates, to wit:

November 18th & 25th, 1985

and that the attached is a true copy of said advertisement.

SWORN AND SUBSCRIBED TO BEFORE ME, this the _____ 26th

Day of ____November____ A.D. 198 5.

Notary Public in and for
TRAVIS COUNTY, TEXAS

Denise Stegall                              3/3/86
(Type or Print Name of Notary)      (My Commission Expires:)

166 EAST RIVERSIDE, P. O. BOX 670, AUSTIN, TEXAS 78767, 512-445-3500

EXHIBIT B

# TEXAS WATER COMMISSION



AN ORDER granting the Petition for Creation
of Northwest Austin Municipal
Utility District No. 1 and Appointing
Temporary Directors

On December 18, 1985, the Texas Water Commission considered the petition of Nash Phillips/Copus, Inc. (NPC) for creation of Northwest Austin Municipal Utility District No. 1. The Texas Water Commission remanded the matter to the Office of Hearings Examiner in order that a full evidentiary record on the proposal be made. On January 14, 15, 16, 17, and 20, 1986, Claire Patterson, Attorney, a Commission Hearings Examiner, conducted a public hearing concerning the petition for creation.

The Hearings Examiner designated the following as parties to the proceeding: the applicant, Nash Phillips/Copus, Inc.; the Executive Director of the Texas Water Commission; the Public Interest Advocate of the Texas Water Commission; and the protestant, City of Austin.

After considering the Hearings Examiner's Proposal for Decision, and the evidence and argument presented, the Texas Water Commission makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1.  Nash Phillips/Copus, Inc. a Texas corporation, has petitioned the Texas Water Commission for creation of a municipal utility district, pursuant to Chapter 54 of the Texas Water Code.

2.  Proper notice of the public hearing was given pursuant to Section 54.019 of the Texas Water Code, as amended.

    a.  Notice of the hearing was published on November 18, 1985 and November 25, 1985 in the Austin-American Statesman, a newspaper regularly published and

EXHIBIT B

generally circulated in Travis County, the county in which the District is to be located.

b.  Notice of the public hearing was mailed on November 15, 1985, by the Chief Clerk of the Texas Water Commission to every city in whose extraterritorial jurisdiction any portion of the District is located and to the commissioner's court of the county in which the District is located;

c.  All property owners in the proposed District were signatories to the petition.

3.  Petitioner paid a deposit of $600.00 as required by Section 54.017, Texas Water Code, as amended, and a filing fee of $60.00 as required by 31 TAC §311.11(2).

4.  The affidavits of five (5) proposed temporary directors of the proposed District have been received, as required by 31 TAC §311.11.  They are as follows:

    Theodore R. Hendricks
    James H. Hillyer
    Homer D. Reed
    Robert James Liverman
    Timothy Emile Jamail

5.  The five persons named above are qualified to serve as temporary directors of the proposed District.

6.  The documents required pursuant to 31 TAC §311.11(1) have been received by the Texas Water Commission.

7.  The entire proposed District will be situated within the exclusive extraterritorial jurisdiction of the City of Austin, Texas, and wholly within the boundaries of Travis County, Texas.

8.  The petition contains the matters required by Section 54.015, Texas Water Code, as amended, and has been executed by the duly authorized officers of the petition-ers representing a majority in value of the holders of title to the land being included within the proposed District, as indicated by the tax rolls of Travis County, Texas.

2

EXHIBIT B

9.  The metes and bounds description of the proposed District has been checked by the Texas Water Commission's Water Districts Division and was found to form an acceptable closure.

10. Pursuant to Section 54.016, Texas Water Code, as amended, the City of Austin did not consent to the creation of this District nor did the parties come to a mutually acceptable agreement for service during the six-month negotiation period prior to the deliverance of this petition to the Texas Water Commission.

    a.  During the negotiation period, NPC negotiated in good faith.

    b.  Although there are differences in NPC's petition for consent to the City of Austin, its petition for creation to the Texas Water Commission, and the alternative service plan offered at the hearing, the differences are not so substantial as to preclude the City from having an opportunity to give consent.

11. The proposal as set out in the petition for creation is feasible and practical if the City of Austin provides long range service or if the district acquires service from an alternate source.

    a.  The water and wastewater facilities will be designed according to sound engineering principles at reasonable cost.

    b.  There is a reasonable expectancy of adequate market demand for the development which will generate tax revenues.

    c.  The projected tax and utility rates will not unreasonably burden the prospective property owners.

    d.  The projected tax rate is such that bond issuances will be marketable.

12. The proposal is feasible and practical even if the District must provide permanent water and wastewater service.

EXHIBIT B

a.  In the event that the City does not allow water service to be provided to the area, the District's water needs will be provided by River Place Water Treatment Plant, a portion of which is presently owned by NPC and which will be transferred to the District.

b.  In the event that the City does not allow wastewater service to be provided to the area, the District's wastewater needs will be provided by a wastewater treatment plant owned by the District with disposal of effluent on site.

c.  There is a market demand for the proposed development on which to base tax revenues.

d.  The water, wastewater, and drainage facilities will be designed according to sound engineering principles at reasonable cost.

e.  The projected tax and utility rates will not unreasonably burden the prospective property owners.

f.  The projected tax rate is such that bond issuances will be marketable.

g.  NPC will absorb some of the capital cost of the project if necessary to keep the bonds marketable.

13. The creation of the District is necessary in order that the property may be developed to its full potential within the time frame desired by the developer, NPC.

a.  NPC's plans for developing the area include amenities, such as greenbelts and park areas, which will be reduced if the developer does not have the financial benefit which will accrue when NPC conveys the service facilities to the District.

b.  NPC has contractual obligations and development schedules which could be delayed if it waits on the City of Austin to provide service.

4

EXHIBIT B

    (1) Long range water and wastewater service will not be available from the City for three to five years.

    (2) NPC cannot rely upon the City of Austin for interim wastewater service in the near future because financing of interim wastewater service facilities has not been arranged and because Austin has in the past been delinquent in meeting its wastewater service obligations.

14. Creation of the District will be a benefit to the land.

    a. The District will provide utility services to the presently undeveloped area in which utilities are unavailable.

    b. Landowners will have more direct representation over operation and maintenance of the utilities than if the City provides service.

    c. The landowners will pay the capital costs of constructing facilities with deductible tax revenues rather than with nondeductible capital recovery fees or surcharges.

    d. Prospective landowners can utilize the land more quickly if the District is created than if they wait for the City to provide services.

15. The District and its system and subsequent development within the District will not have an unreasonable effect on land elevation, subsidence, groundwater level within the region, recharge capability of a groundwater source, natural runoff rates and drainage, and water quality.

16. The utility rates and the total tax assessment on the District residents will not be unreasonable.

    a. Utility rates are projected to be the same as those which the City charges.

    b. Combined tax assessments on landowners in the area, under the original proposal and under the Exhibit 40 plan, will not unduly burden the taxpayers.

EXHIBIT B

CONCLUSIONS OF LAW

1.  The public hearing regarding this petition was held under
    the authority of and in accordance with Chapter 54 of the
    Texas Water Code, as amended, and the applicable pro-
    visions of the Texas Department of Water Resources
    Permanent Rules and the Emergency Rules of the Texas
    Water Commission.

2.  The Texas Water Commission has jurisdiction to consider
    this petition and is authorized to make and enter its
    Findings of Fact, Rulings, and Orders in respect to the
    creation of the proposed District;

3.  All of the lands and properties proposed may properly be
    included within the District.

4.  All of the requirements of Section 54.016 of the Texas
    Water Code, as amended, have been fully complied with.

5.  The petition should be granted by the Texas Water
    Commission.

6.  The five persons named above who have requested to be
    appointed as temporary directors of the proposed District
    should be appointed temporary directors of Northwest
    Austin MUD No. 1.

    NOW, THEREFORE, BE IT ORDERED BY THE TEXAS WATER COMMIS-
SION THAT:

1.  The petition for creation of Northwest Austin Municipal
    Utility District No. 1 is hereby granted.

2.  Said District is created under the terms and conditions
    of Article XVI, Section 59 of the Constitution of Texas
    and Chapter 54 of the Texas Water Code, as amended.

3.  Said District shall have all the rights, powers, privi-
    leges, authority, and functions conferred and shall be
    subject to all duties imposed by the Texas Water
    Commission and the General Laws of the State of Texas
    relating to municipal utility districts.

4.  Said District shall be composed of the area situated
    wholly within Travis County, Texas, described by metes

6

and bounds in Exhibit "A" attached hereto and incorporated herein for all purposes.

5. The following five persons are hereby named and appointed as temporary directors of said District to serve until their successors are elected or have been appointed in accordance with applicable law:

> Theodore R. Hendricks
> James H. Hillyer
> Homer D. Reed
> Robert James Liverman
> Timothy Emile Jamail

6. The foregoing temporary directors shall, as soon as practical after the date of entry of this Order, execute their official bonds and take their official oath of office, and all such bonds shall be approved by the Board of Directors of the District, and each bond and oath shall be filed with the District and retained in its records.

7. This Order shall in no event be construed as an approval of any proposed agreements or of any particular items in any documents provided in support of the creation petition, nor as a commitment or requirement of the Texas Water Commission in the future to approve or disapprove any particular items or agreements in future applications submitted by the District for Texas Water Commission consideration.

8. The proposed Findings of Fact Nos. 1.1, 1.2, 1.3, 2.1, 2.2, 2.3, 3.1, 3.2, 3.3, 3.4, 4.1, 4.2, 4.3, 4.4, 4.5, 4.6, 4.7, 4.8, 4.9, 5.1, 5.2, 5.3, 5.4, 5.5, 6.1, 6.2, 6.3, 6.4, 6.5, 6.6, 6.7, 7.1, 7.2, 7.3, 7.4, 7.5, 7.6, 7.7, 7.8, 7.9, 7.10, 8.1, 8.2, 9.1, 9.2, 9.3, 9.4, 9.5, 10.1, 10.2, 10.3, 10.4, 10.5, 10.6, 10.7, 10.8 submitted by protestant City of Austin are hereby overruled.

9. The proposed Conclusions of Law Nos. 1, 2, 3, 4, and 5 submitted by protestant City of Austin are hereby overruled.

7

EXHIBIT B

Signed this ___18th___ day of ___April___, 1986.


TEXAS WATER COMMISSION


_Paul Hopkins_

Paul Hopkins, Chairman


_Ralph Roming_

Ralph Roming, Commissioner


_John O. Houchins_

John O. Houchins, Commissioner


ATTEST:


_Mary Ann Hefner_

Mary Ann Hefner, Chief Clerk

8

EXHIBIT B

671.65 Acres
MUD No. 1

FN 1380 R (DS)
January 10, 1984
EH&A Job No. 4322-04

## NORTHWEST AUSTIN MUD NO. 1

A FIELD NOTE DESCRIPTION OF 671.65 ACRES OF LAND OUT OF THE A. E. LIVINGSTON SURVEY NO. 155, A. E. LIVINGSTON SURVEY NO. 455, W. P. MOORE SURVEY NO. 708 AND JOHN T. SMITH SURVEY NO. 154 IN TRAVIS COUNTY, TEXAS, BEING ALL OF THAT CERTAIN TRACT OF LAND DESCRIBED IN A DEED TO TRIPLE CREEK VENTURE, OF RECORD IN VOLUME 8155, PAGE 602 OF THE DEED RECORDS OF TRAVIS COUNTY, TEXAS, ALL OF THAT CERTAIN TRACT OF LAND DESCRIBED IN A DEED TO HARRY E. MONTANDON OF RECORD IN VOLUME 1597, PAGE 172 OF THE DEED RECORDS OF TRAVIS COUNTY, TEXAS, ALL OF THAT CERTAIN TRACT OF LAND DESCRIBED IN A DEED TO TRIPLE CREEK VENTURE, OF RECORD IN VOLUME 8155, PAGE 608 OF THE DEED RECORDS OF TRAVIS COUNTY, TEXAS, A PORTION OF THAT CERTAIN TRACT OF LAND DESCRIBED IN A DEED TO TRIPLE CREEK VENTURE, OF RECORD IN VOLUME 8155, PAGE 614 OF THE DEED RECORDS OF TRAVIS COUNTY, TEXAS, A PORTION OF THAT CERTAIN TRACT OF LAND DESCRIBED IN A DEED TO TRIPLE CREEK VENTURE OF RECORD IN VOLUME 8155, PAGE 628 OF THE DEED RECORDS OF TRAVIS COUNTY, TEXAS, A PORTION OF THAT CERTAIN 92.28 ACRE TRACT OF LAND DESCRIBED IN A DEED TO TRIPLE CREEK VENTURE OF RECORD IN VOLUME 8155, PAGE 619 OF THE DEED RECORDS OF TRAVIS COUNTY, TEXAS, AND A PORTION OF THAT CERTAIN 19.61 ACRE TRACT OF LAND DESCRIBED IN A DEED TO TRIPLE CREEK VENTURE OF RECORD IN VOLUME 8155, PAGE 582 OF THE DEED RECORDS OF TRAVIS COUNTY, TEXAS, SAID 671.65 ACRES BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING at a point at the intersection of east right-of-way line of FM Highway 620 and the south right-of-way line of Boulder Lane, at the northwest corner of that certain tract of land described as "Tract 1" in a deed to Triple Creek Venture of record in Volume 8155, Page 602 of the Deed Records of Travis County, Texas, for a northwest corner of this tract;

THENCE with the south right-of-way line of said Boulder Lane and the north line of said "Tract 1", S 61° 10' E, a distance of 1934.23 feet to a point at the southeast corner of the right-of-way of said Boulder Lane, said point being also in the west line of that certain tract of land described as "Tract 3" in a deed to Triple Creek Venture, of record in Volume 8155, Page 602 of the Deed Records of Travis County, Texas, and at the northeast corner of said "Tract 1" for an interior corner of this tract;

THENCE with the east right-of-way line of said Boulder Lane and the east line of 620 Oaks, a subdivision or record in Book 76, Page 239 of the Plat Records of Travis County, Texas, being also the west line of said "Tract 3" the five, (5) courses and distances which follow:

1.  N 29° 44' E, a distance of 283.51 feet to a point,

2.  N 30° 30' E, a distance of 265.32 feet to a point,

3.  N 30° 42' E, a distance of 278.44 feet to a point,

4.  N 30° 34' E, a distance of 167.39 feet to a point, and

5.  N 29° 28' E, a distance of 294.43 feet to a point in the east line of Lot 1 of said 620 Oaks, said point being also at the southwest corner of that certain 65.65 acre tract of land described in a deed to James H. Arnold, Jr., of record in Volume 3274, Page 2101 of the Deed Records of Travis County, Texas, and at the northwest corner of said "Tract 3", for the most northerly northwest corner of this tract;

Page 1 of 7

EXHIBIT A                    EXHIBIT B

671.65 Acres                                    FN 1380 R (DS)
MUD No. 1                                       January 10, 1984
                                                EH&A Job No. 4322-04


THENCE with the south line of said Arnold tract and the north line of said "Tract 3" the five (5) courses and distances which follow:

1.  S 58° 37' E, a distance of 370.00 feet to a point,

2.  S 58° 26' E, a distance of 199.98 feet to a point,

3.  S 58° 40' E, a distance of 511.82 feet to a point,

4.  S 60° 14' E, a distance of 399.16 feet to a point, and

5.  S 58° 54' E, a distance of 346.05 feet to a point in the west line of Anderson Mill Estates Section 3, a subdivision of record in Book 75, Page 117 of the Plat Records of Travis County, Texas, said point being also at the southeast corner of said Arnold Tract and at the most northerly northeast corner of said "Tract 3", for a corner of this tract;

THENCE with the west line of said Anderson Mill Estates Section 3 and an east line of said "Tract 3", S 30° 17' W, a distance of 150.21 feet to a point at the southwest corner of said Anderson Mill Estates, Section 3, being also an interior corner of said "Tract 3" for an interior corner of this tract;

THENCE with the south line of said Anderson Mill Estates Section 3 and the north line of said "Tract 3" the two (2) courses and distances which follow:

1.  S 59° 16' E, a distance of 89.94 feet to a point, and

2.  S 59° 24' E, a distance of 41.94 feet to a point at the northeast corner of said "Tract 3", being also at the northwest corner of that certain tract of land described as "Tract 2" in a deed to Triple Creek Venture, of Record in Volume 8155, Page 602 of the Deed Records of Travis County, Texas;

THENCE continuing with the south line of said Anderson Mill Estates Section 3 and the north line of said "Tract 2" the sixteen (16), courses and distances which follow:

1.  S 59° 40' E, a distance of 169.68 feet to a point,

2.  S 59° 19' E, a distance of 248.70 feet to a point,

3.  S 59° 02' E, a distance of 100.25 feet to a point,

4.  S 59° 20' E, a distance of 96.78 feet to a point,

5.  S 59° 09' E, a distance of 309.13 feet to a point,

6.  S 59° 16' E, a distance of 63.80 feet to a point,

7.  S 57° 40' E, a distance of 19.69 feet to a point,

8.  S 65° 04' E, a distance of 86.51 feet to a point,

9.  S 72° 28' E, a distance of 298.26 feet to a point,

10. S 68° 55' E, a distance of 96.05 feet to a point,

11. S 47° 32' E, a distance of 28.06 feet to a point,

EXHIBIT A

EXHIBIT B

671.65 Acres
MUD No. 1

FN 1380 R (DS)
January 10, 1984
EH&A Job No. 4322-04

12.  S 44° 30' E, a distance of 156.12 feet to a point,

13.  S 40° 08' E, a distance of 38.56 feet to a point,

14.  S 38° 17' E, a distance of 143.73 feet to a point,

15.  S 53° 55' E, a distance of 138.27 feet to a point, and

16.  N 88° 41' E, a distance of 62.11 feet to a point at the southeast corner of said Anderson Mill Estates Section 3, said point being also at the southwest corner of that certain 18.75 acre tract of land described in a deed to Luther E. Smith, et al., of record in Volume 7093, Page 397 of the Deed Records of Travis County, Texas;

THENCE with the south line of said Smith Tract and the north line of said "Tract 2" the two (2) courses and distances which follow:

1.  S 59° 11' E, a distance of 67.25 feet to a point, and

2.  N 72° 58' E, a distance of 51.26 feet to a point at the most northerly corner of that certain 0.14 acre tract of land described in a deed to Homer Reed, et al., of record in Volume 7902, Page 396 of the Deed Records of Travis County, Texas, for a northeast corner of this tract;

THENCE with the west line of said 0.14 acre tract, being also the east line of said "Tract 2", S 17° 05' E, a distance of 337.34 feet to a point at the most northerly corner of that certain 57.17 acre tract of land described in a deed to Triple Creek Venture, of record in Volume 8155, Page 608 of the Deed Records of Travis County, Texas, said point being also at the most easterly northeast corner of said "Tract 2" and the most southerly corner of said 0.14 acre tract, and being also at an angle point in the west line of that certain 5.80 acre tract of land described in a deed to Homer D. Reed, et al., of record in Volume 7902, Page 396 of Deed Records of Travis County, Texas, for a corner of this tract;

THENCE with the west line of said 5.80 acre tract and the east line of said 57.57 acre Triple Creek Venture tract, the eleven (11) courses and distances which follow:

1.  S 17° 02' E, a distance of 200.58 feet to a point,

2.  S 09° 01' E, a distance of 630.81 feet to a point,

3.  S 02° 44' W, a distance of 538.63 feet to a point,

4.  S 03° 23' W, a distance of 504.33 feet to a point,

5.  S 45° 03' W, a distance of 565.76 feet to a point,

6.  S 00° 31' W, a distance of 247.33 feet to a point,

7.  S 30° 17' E, a distance of 616.59 feet to a point,

8.  S 47° 10' E, a distance of 166.89 feet to a point,

9.  S 17° 00' W, a distance of 269.29 feet to a point,

10.  S 17° 57' W, a distance of 201.07 feet to a point, and

EXHIBIT A

EXHIBIT B

671.65 Acres
MUD No. 1

FN 1380 R (DS)
January 10, 1984
EH&A Job No. 4322-04

11.  S 13° 50' W, a distance of 435.83 feet to a point at the southwest corner of said 5.80 acre Reed Tract, said point being also in the north line of that certain 113.006 acre tract of land described in a deed to Roger S. Hanks, of record in Volume 6958, Page 2381 of the Deed Records of Travis County, Texas, and at the southeast corenr of said 57.57 acre Triple Creek Venture Tract, for the southeast corner of this tract;

THENCE with the north line of said Hanks Tract and the south line of said 57.57 acre Triple Creek Venture tract, the eleven (11) courses and distances which follow:

1.  N 62° 16' W, a distance of 60.82 feet to a point,

2.  N 32° 12' W, a distance of 94.26 feet to a point,

3.  N 66° 14' W, a distance of 100.39 feet to a point,

4.  N 88° 51' W, a distance of 83.69 feet to a point,

5.  N 63° 53' W, a distance of 37.98 feet to a point,

6.  N 63° 52' W, a distance of 222.82 feet to a point,

7.  N 63° 04' W, a distance of 161.97 feet to a point,

8.  N 61° 01' W, a distance of 261.01 feet to a point,

9.  N 61° 30' W, a distance of 380.69 feet to a point,

10.  N 62° 02' W, a distance of 325.16 feet to a point, and

11.  N 63° 42' W, a distance of 206.22 feet to a point at the northwest corner of said Hanks Tract, said being also at the southwest corner of said 57.57 acre Triple Creek Venture Tract; and in the east line of that certain 130.77 acre tract of land described in a deed to Triple Creek Venture of record in Volume 8155, Page 614 of the Deed Records of Travis County, Texas;

THENCE, over and across said 130.77 acre tract, N 88° 42' 18" W, a distance of 2466.22 feet to a point at the southeast corner of that certain tract of land described in a deed to Harry E. Montandon, of record in Volume 1597, Page 172 of the Deed Records of Travis County, Texas, said point being also in the north line of that certain 708.76 acre tract of land described in a deed to Triple Creek Venture, of record in Volume 8155, Page 628 of the Deed Records of Travis County, Texas;

THENCE with the north line of said 708.76 acres and the south line of said Montandon Tract, N 61° 00' W, a distance of 714.22 feet to a point;

THENCE over and across both the Montandon tract and the Triple Creek Venture Property the eight (8) courses and distances which follow:

1.  S 30° 50' W, a distance of 70.00 feet to a point,

2.  N 66° 10' W, a distance of 560.00 feet to a point,

3.  S 23° 50' W, a distance of 365.00 feet to a point,

EXHIBIT B

671.65 Acres                                           FN 1380 R (DS)
MUD No. 1                                              January 10, 1984
                                                       EH&A Job No. 4322-04

4.   S 49° 10' W, a distance of 325.00 feet to a point,

5.   S 63° 50' W, a distance of 555.00 feet to a point,

6.   N 58° 15' W, a distance of 275.00 feet to a point,

7.   N 29° 25' W, a distance of 250.00 feet to a point, and

8.   N 57° 45' W, a distance of 110.00 feet to a point in that certain
     92.28 acre tract of land described in a deed to Triple Creek
     Venture, of record in Volume 8155, Page 619 of the Deed
     Records of Travis County, Texas;

THENCE over and across said 92.28 acre tract the seven (7) courses and distances
which follow:

1.   N 64° 15' W, a distance of 505.00 feet to a point,

2.   N 68° 20' W, a distance of 470.00 feet to a point,

3.   S 82° 56' 21" W, a distance of 262.75 feet to a point,

4.   N 81° 57' W, a distance of 220.00 feet to a point in the
     centerline of a curve to the left of a proposed road,

5.   a distance of 396.75 feet along the arc of a curve to the left,
     the radius of which is 1218.64 feet, the central angle of which
     is 18° 39' 13", and the chord of which bears S 20° 03' W, a
     distance of 395.00 feet to a point,

6.   leaving proposed road, N 72° 17' W, a distance of 365.00 feet to
     a point, and

7.   S 23° 58' W, a distance of 233.11 feet to a point in that certin
     19.61 acre tract of land described in a deed to the Triple Creek
     Venture, of record in Volume 8155, Page 582 of the Deed
     Records of Travis County, Texas;

THENCE, N 72° 17' W, a distance of 298.98 feet to a point in the west line of said
19.61 acre tract, being also a point in the east right-of-way line of FM Highway 620;

THENCE with the west line of said 19.61 acre tract and the east line of said
FM 620, N 17° 43' E, a distance of 174.71 feet pass a point for the northwest corner
of said 19.61 acre tract, being also the southeast corner of a 92.28 acre tract of land
as described previously in a deed to Triple Creek Venture; continuing with the west
line of said 92.28 acre tract for a total distance of 1635.56 feet to a point for the
northwest corner of said 92.28 acre tract, being also the southwest corner of that
certain 32.57 acre tract of land described in a deed to Samir N. Maamary, of record
in Volume 7651, Page 913 of the Deed Records of Travis County, Texas;

THENCE with the north line of said 92.28 acre tract, and the south line of said
32.57 acre tract the three (3) courses and distances which follow:

1.   S 80° 25' E, a distance of 1153.69 feet to a point,

2.   S 80° 24' E, a distance of 597.66 feet to a point, and

3.   S 80° 27' E, a distance of 710.40 feet to a point in the west line
     of said Montandon Tract being also the southeast corner of said
     32.57 acre tract;

EXHIBIT A

EXHIBIT B

671.65 Acres
MUD No. 1

FN 1380 R (DS)
January 10, 1984
EH&A Job No. 4322–04

THENCE with the west line of said Montandon Tract, the nineteen (19) courses and distances which follow:

1. N 31° 09' E, a distance of 335.53 feet to a point,
2. N 30° 47' E, a distance of 185.12 feet to a point,
3. N 28° 22' E, a distance of 131.72 feet to a point,
4. N 28° 21' E, a distance of 47.69 feet to a point,
5. N 31° 45' E, a distance of 213.63 feet to a point,
6. N 30° 51' E, a distance of 80.16 feet to a point,
7. N 31° 20' E, a distance of 178.69 feet to a point,
8. N 37° 07' E, a distance of 153.80 feet to a point,
9. N 27° 23' E, a distance of 111.62 feet to a point,
10. N 23° 32' E, a distance of 256.37 feet to a point,
11. N 34° 31' E, a distance of 307.22 feet to a point,
12. N 31° 19' E, a distance of 151.56 feet to a point,
13. N 28° 58' E, a distance of 172.05 feet to a point,
14. N 29° 42' E, a distance of 25.25 feet to a point,
15. N 34° 15' E, a distance of 333.78 feet to a point,
16. N 32° 33' E, a distance of 128.33 feet to a point,
17. N 33° 09' E, a distance of 257.81 feet to a point,
18. N 27° 08' E, a distance of 49.75 feet to a point, and
19. N 28° 23' E, a distance of 178.49 feet to a point at the northeast corner of that certain 4.0 acre tract of land described in a deed to Vicki T. Griffin, of record in Volume 6579, Page 1492 of the Deed Records of Travis County, Texas, said point being also at the northwest corner of said Montandon Tract, and being also at the southwest corner of said 76.20 acre "Tract 3" and at the southeast corner of said 15.25 acre "Tract 1", for an interior corner of this tract;

THENCE with the south line of said "Tract 1, the four (4) courses and distances which follow:

1. N 57° 55' 14" W, a distance of 654.39 feet to a point,
2. N 58° 04' W, a distance of 424.33 feet to a point,
3. N 58° 14' W, a distance of 410.59 feet to a point, and
4. N 58° 15' W, a distance of 416.60 feet to a point in the east right-of-way line of FM Highway 620, said point being at the

EXHIBIT A

EXHIBIT B

671.65 Acres
MUD No. 1

FN 1380 R (DS)
January 10, 1984
EH&A Job No. 4322-04

northwest corner of that certain 4.979 acre tract of land described in a deed to Anderson Mill Church of Nazarene of record in Volume 7844, Page 125 of the Deed Records of Travis County, Texas, and at the southwest corner of said "Tract 1" for the most westerly southwest corner of this tract;

THENCE, with the east right-of-way line of FM Highway 620 and the west line of said "Tract 1", N 24° 11' E, a distance of 300.03 feet to the POINT OF BEGINNING containing 671.65 acres of land, more or less.

THE STATE OF TEXAS    I
                      I    KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF TRAVIS      I

That I, Carlos M. Jimenez, a Registered Public Surveyor, do hereby certify that the above description was prepared from public records and not from an on the ground survey under my direction and supervision and is true and correct to the best of my knowledge.

WITNESS MY HAND AND SEAL AT Austin, Travis County, Texas this the _13 th_ day of _January_, 1984, A.D.

ESPEY, HUSTON & ASSOCIATES, INC.
Engineering & Environmental Consultants          Carlos M. Jimenez
916 South Loop 360    P.O. Box 519               Registered Public Surveyor
Austin, Texas 78767                              No. 3950 - State of Texas

CARLOS M. JIMENEZ
3950
REGISTERED
PUBLIC SURVEYOR

Page 7 of 7

EXHIBIT A

EXHIBIT B

STATE OF TEXAS          )(
                        )(
COUNTY OF TRAVIS        )(

    I, Mary Ann Hefner, Chief Clerk of the Texas Water Commission, do hereby certify that the attached and foregoing is a true and correct copy of an Order of the Commission dated April 18, 1986, granting the petition for creation of Northwest Austin Municipal Utility District No. 1 and appointing temporary directors, the original of which is on file in the office of the Commission.

    Given under my hand and the seal of the Texas Water Commission, this the 18th day of April, 1986.


_____
Mary Ann Hefner, Chief Clerk
Texas Water Commission

EXHIBIT B