```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF COLUMBIA

NORTHWEST AUSTIN              )
MUNICIPAL UTILITY DISTRICT    )
NUMBER ONE,                   )
401 W. 15th Street            )    CIVIL ACTION NO.
Suite 850                     )
Austin, Texas 78701           )    1:06-CV-01384
         Plaintiff,           )    (DST,PLF,EGS)
                              )
v.                            )
                              )
ALBERTO GONZALES,             )
ATTORNEY GENERAL OF THE       )
UNITED STATES,                )
U.S. Department of Justice    )
950 Pennsylvania Avenue NW    )
Washington, D.C. 20530        )
```

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
ORAL DEPOSITION OF
DAVID DIAZ
Wednesday, February 28, 2007
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ORAL DEPOSITION OF DAVID DIAZ, produced as a witness at the instance of the Plaintiff and duly sworn, was taken in the above-styled and numbered cause on the 28th day of February, 2007, from 1:37 p.m. to 2:11 p.m., before RANDALL N. FINCH, Certified Shorthand Reporter in and for the State of Texas, reported by computerized stenotype machine at the offices of Weil, Gotshal & Manges, LLP, 8911 Capital of Texas Highway, Suite 1350, Austin, Texas 78759, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

Page 2

```
 1        APPEARANCES
 2  FOR THE PLAINTIFF NORTHWEST AUSTIN MUNICIPAL UTILITY
    DISTRICT NO. ONE:
 3
      Mr. Gregory S. Coleman
 4        -and-
      Mr. Christian J. Ward
 5   WEIL, GOTSHAL & MANGES, LLP
     8911 Capital of Texas Highway
 6   Building One, Suite 1350
     Austin, Texas 78759  (512) 349-1937
 7          (512) 527-0698 Fax
 8  FOR THE MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATION
    FUND (MALDEF):
 9
      Ms. Nina Perales
10        -and-
      Mr. Diego M. Bernal
11    110 Broadway, Suite 300
      San Antonio, Texas 78205  (210) 224-5476
12          (210) 224-5382 Fax
13  FOR TEXAS RIO GRANDE LEGAL AID, INC.:
14    Mr. George Korbel (By telephone)
      Attorney at Law
15    1111 N. Main Avenue
      San Antonio, Texas 78212  (210) 212-3700
16          (210) 212-3772 Fax
17  FOR THE U.S. DEPARTMENT OF JUSTICE, CIVIL RIGHTS
    DIVISION:
18
      Mr. Chris Herren
19        -and-
      Ms. Christy A. McCormick
20    950 Pennsylvania Avenue, N.W., Room 7246
      Washington, D.C. 20530  (202) 305-0609
21          (202) 327-3961 Fax
22  FOR THE LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW:
23    Mr. Benjamin Blustein (By telephone)
      Staff Attorney, Voting Rights Project
24    1401 New York Avenue, NW, Suite 1400
      Washington, D.C. 20005  (202) 662-8320
25          (202) 628-2858 Fax
```

Page 3

```
 1    Mr. Daniel A. Zibel (By telephone)
      WILMER, CUTLER, PICKERING, HALE & DORR, LLP
 2    1875 Pennsylvania Ave., N.W.
      Washington, D.C. 80006  (202) 603-6053
 3          (202) 663-6363 Fax
 4  FOR INTERVENOR TRAVIS COUNTY:
 5    Mr. Max Renea Hicks
      Attorney at Law
 6    1250 Norwood Tower
      114 West 7th Street
 7    Austin, Texas 78701
 8  FOR THE NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.:
 9    Mr. Debo P. Adegbile (By telephone)
      Attorney at Law
10    99 Hudson Street, Suite 1600
      New York, New York 10013
11
12              INDEX
13  Appearances........................ 2
14  Stipulations.......................
15
16  DAVID DIAZ
17    Examination by Mr. Coleman.......... 4
18
19  Signature and Changes.............. 23
20  Reporter's Certificate............. 25
21
22
23
24
25
```

Page 4

 1                    DAVID DIAZ,
 2   having been first duly sworn, testified as follows:
 3                    EXAMINATION
 4   BY MR. COLEMAN:
 5       Q.  Good afternoon.  I'm Greg Coleman.  I
 6   represent the district in this litigation.  Would you
 7   explain for the court reporter your name -- full name
 8   and address.
 9       A.  David Alan Diaz.  10424 Ember Glen Drive,
10   Austin, Texas 78726.
11       Q.  Thank you for being here this afternoon.  How
12   long have you lived in the district?
13       A.  13 years.
14       Q.  That would make you one of the earlier
15   residents of the district, wouldn't it?
16       A.  The neighborhood is a little older than that.
17   I think it's about 10 years older than that.
18       Q.  Okay.  Have you lived in the same house --
19       A.  Yes.
20       Q.  -- the entire time?  Where did you move from?
21       A.  We were in an apartment off of Shepherd
22   Mountain for a year before that.
23       Q.  Okay.
24       A.  Here in Austin.
25       Q.  And before that?

Page 5

 1       A.  We lived for three years in Pueblo, Colorado.
 2       Q.  Okay.  And before that?
 3       A.  We were in Dallas -- or I was in Dallas for
 4   four years before that.
 5       Q.  Okay.  And before that?
 6       A.  Indiana, going to college for four years.
 7       Q.  Okay.  And where did you grow up?
 8       A.  In Albuquerque, New Mexico.
 9       Q.  All right.  Would you consider yourself to be
10   fairly involved in the community?
11       A.  Could you define involved?
12       Q.  I was actually going to ask you, if you said
13   yes, to define -- tell me a little bit about what you
14   do.  What sorts of activities do you do in the
15   community?
16       A.  In Canyon Creek?
17       Q.  Anywhere.  In --
18       A.  Anywhere?  We're involved in a local church
19   community, but otherwise, Canyon Creek is where I live
20   and raise my children.
21       Q.  What church community are you involved in?
22       A.  St. Thomas More.
23       Q.  Are you involved in any nonprofit
24   organizations?
25       A.  No.

2 (Pages 2 to 5)

Page 6

1    Q.  By involved, I mean either sitting on a board
2  or -- or donating time, doing things like that.
3    A.  No.
4    Q.  Are you politically involved?  Do you
5  participate in elective politics in some form or
6  another, whether with an outreach group or a political
7  party or anything like that?
8    A.  No.
9    Q.  Do you consider yourself to be an active
10 voter?
11   A.  I vote in state and federal elections, yes.
12   Q.  Okay.  Do you tend to also -- when you say
13 state, do you also vote in local elections?  May -- a
14 level under the state, city, county?
15   A.  Yes.
16   Q.  Did you vote in the 2006 congressional
17 elections?
18   A.  Yes.
19   Q.  Did you vote in the 2006 May elections, the
20 local elections?
21   A.  I believe I did, yes.
22   Q.  And did you vote on that ballot in the MUD --
23 the district's election?
24   A.  Yes, I did.
25   Q.  Okay.

Page 7

1    A.  Mm-hmm.
2    Q.  Going back to 2004, did -- did you vote in the
3  local elections in 2004?  The county -- the county -- I
4  think there was some sort of hospital district.
5    A.  I believe I did, yes.
6    Q.  And would you have voted in the district
7  election that year?  On the same ballot?
8    A.  I -- I am not sure.  I can't remember.
9    Q.  Okay.  It is unfair of me, I know, to go back
10 further in your memory with each question, but in 2002,
11 do you recall voting in the district elections that
12 year?
13   A.  I don't remember.
14   Q.  And -- and let me -- let me ask for years
15 previous to that, do you recall one way or the other
16 whether you voted in district elections?
17   A.  I really don't remember.
18   Q.  Have you attended meetings of the homeowner
19 association or the district board meetings?
20   A.  I have not attended a homeowners' association
21 meeting.  I have attended one MUD district meeting.
22   Q.  Do you recall when that was?
23   A.  I believe it was in the fall of last year.  I
24 don't know the date.
25   Q.  Do you recall why you went to that district

Page 8

1  meeting?
2    A.  I went to the district meeting to find out
3  what the MUD was doing involved in this lawsuit.
4    Q.  Do you recall whether that was before or after
5  you intervened in the lawsuit?
6    A.  I believe it was after.
7    Q.  Did you get answers to your questions at that
8  meeting?
9    A.  I received a response.
10   Q.  When -- and when you say received a response,
11 I just want to be clear, does that mean that you
12 received an answer but that you didn't feel it was the
13 right answer?
14   A.  I did not receive a clear answer of why we
15 were involved.
16   Q.  Okay.  Let me go back to some of these
17 district elections.  Have -- have you been involved in
18 any of the campaigning relating to local or district
19 elections?
20   A.  No.
21   Q.  Do you know any of the members of the board?
22   A.  I have met Mr. Zimmerman at the MUD meeting
23 that I went to.  And I believe I ran into him once
24 outside of the polling place.
25   Q.  Do you recall when that might have been?

Page 9

1    A.  I believe it was with -- when he was going for
2  the state legislature.  I believe he was polling
3  outside for that.
4    Q.  So that was when he was running for the state
5  house and not when --
6    A.  Correct.
7    Q.  Sorry.  And not when he was running for the
8  district.
9    A.  Correct.
10   Q.  Did you speak to him at that -- when you ran
11 into him there?
12   A.  No, not really.
13   Q.  Did he speak to you?
14   A.  He tried.
15   Q.  Was he encouraging people who came by to vote
16 for him?
17   A.  He was encouraging people to vote.
18   Q.  When you say he tried, did he -- did he
19 encourage you to vote?  He was --
20   A.  Yes.
21   Q.  As you came by and --
22   A.  Correct.
23   Q.  Okay.  And did you talk back to him or -- or
24 respond to him in any way or --
25   A.  I just -- I'm on my way to vote.

3 (Pages 6 to 9)

Page 10

1  Q. Do you know any other members of the board?
2  A. No.
3  Q. If I gave you names would you recognize any of
4  them?
5  A. I'd probably recognize names.
6  Q. Bill Ferguson?
7  A. I know the name.
8  Q. Have you met Mr. Ferguson?
9  A. I believe he was at the MUD meeting that I
10 went to, but I did not personally meet him.
11 Q. Have you met or know him outside of that MUD
12 meeting at all?
13 A. No.
14 Q. Ed Swarthout?
15 A. I know the name, but I'm not --
16 Q. Same question, have you met or talked to him
17 outside that one meeting?
18 A. No.
19 Q. George Frederickson?
20 A. No.
21 Q. Alan Wiese?
22 A. No.
23 Q. Karen Timborius?
24 A. No.
25    SPEAKER: Join.

Page 11

1     MR. COLEMAN: Who's joining?
2     MR. BLUSTEIN: Hi, it's Ben.
3     MR. COLEMAN: Okay. Hey, Ben. We're
4  underway here with Dr. Diaz.
5  Q. (By Mr. Coleman) Let me ask you a little
6  about how you came to be involved in the litigation. I
7  think you mentioned that you attended the district
8  meeting after you had intervened in the lawsuit.
9  A. Correct.
10 Q. Were you contacted by individuals about
11 possibly intervening in this -- this suit?
12 A. Yes.
13 Q. Did they call you on the phone, come to your
14 door? Can you tell me how they contacted you?
15 A. Came to my door.
16 Q. Did you know these individuals before that
17 time?
18 A. No.
19 Q. Do you recall the names of the individuals who
20 came to your door?
21 A. Unfortunately, no.
22 Q. Okay. Which may answer my next question:
23 Did -- did you know or have any relationship with these
24 individuals before that?
25 A. No.

Page 12

1  Q. Do you know, were these individuals attorneys?
2  A. Yes.
3  Q. Without disclosing the content of any of your
4  discussions, you had a conversation with them at your
5  home? One or --
6  A. They came to my front door.
7  Q. Okay. How many conversations did you have
8  before you decided to join the lawsuit?
9  A. Two, I believe.
10 Q. And both in person?
11 A. Yes.
12 Q. Let me ask you in your own words why you
13 intervened in this lawsuit.
14 A. I am concerned about an attack on the Voting
15 Rights Act in the United States.
16 Q. When you say the Voting Rights Act, do you
17 understand that this lawsuit only involves one
18 particular section of the Voting Rights Act?
19 A. Yes.
20 Q. And you -- do you understand that to be what
21 we call alternatively Section 5 or the preclearance
22 provisions?
23 A. Yes.
24 Q. Do you understand what preclearance is?
25 A. I believe so.

Page 13

1  Q. Can you describe for me just briefly what your
2  understanding of preclearance is?
3     MS. PERALES: Objection to the extent
4  that it calls for legal knowledge.
5  Q. (By Mr. Coleman) Just your understanding.
6  A. My understanding is that there are regulations
7  involving the change of a voting location.
8  Q. And is it your belief that the district has
9  improperly moved a voting location?
10 A. I don't believe -- or I don't think that
11 anything has been improperly moved.
12 Q. Okay. How does your understanding of, you
13 know, what we're calling Section 5 or preclearance link
14 to voting locations?
15    MS. PERALES: Objection; vague.
16 Q. (By Mr. Coleman) Just your -- what you
17 understand.
18    MS. PERALES: You can answer.
19    THE WITNESS: By my understanding, if
20 there is to be a change of an election location, a
21 letter must be filed with the Department of Justice to
22 change that voting location.
23 Q. (By Mr. Coleman) Okay. And it's -- and
24 that's your understanding of preclearance, is that
25 there's a submission asking permission?

Page 14

1   A. That is my understanding.
2   Q. Okay. Let me go back. You had indicated that
3   you have voted in a number of state, federal and local
4   elections over the years. You are -- and I just want
5   to be clear: You are not here complaining about the
6   way any particular election was operated or run, are
7   you?
8   A. No.
9   Q. Whenever you have chosen to exercise your
10  right to vote, you have been able to exercise that in
11  full --
12  A. Correct.
13  Q. -- have you not?
14      In connection with the -- with the
15  district itself, you've not suffered any form of
16  discrimination or anything like that in exercising your
17  right to vote, have you?
18  A. No.
19  Q. Would it be safe to say that because you are
20  not here to -- or your presence in the lawsuit is not
21  to suggest any propriety in the elections themself, but
22  that you have a strong philosophical objection to the
23  district's seeking of a bailout or challenge to
24  Section 5. Is that --
25  A. Could you repeat the question, please.

Page 15

1   Q. Yeah, it's too long. We established -- you're
2   not complaining about the way elections have been run.
3   A. Correct.
4   Q. What you are complaining about is the
5   district's decision to try to exclude itself from the
6   preclearance framework. You don't want the district to
7   remove itself from the preclearance obligations.
8   A. Correct.
9   Q. Do you understand what the term bailout means?
10      MS. PERALES: Objection to the extent
11  that it calls for legal knowledge.
12  Q. (By Mr. Coleman) Just if -- if you have an
13  understanding.
14  A. Not a good understanding.
15  Q. Let -- without going into a great deal of
16  detail, let me represent to you that there's a
17  provision in the Voting Rights Act that allows certain
18  governmental entities to demonstrate that they have
19  lived up to their obligations under the Voting Rights
20  Act for a period of years and that when it does so, it
21  then obtains the right to be exempted from preclearance
22  in the future. If the district could show that it has
23  done that, would you object to it exempting itself from
24  preclearance under the statute?
25      MS. PERALES: Objection to the extent

Page 16

1   that it calls for legal knowledge or legal conclusions
2   regarding bailout.
3       THE WITNESS: Could you rephrase? I'm...
4   Q. (By Mr. Coleman) I'm not asking you to agree
5   with me what the statute says, but if you will just
6   agree with me or assume for the moment that there is a
7   statutory provision that allows some governmental
8   entities to say, "We have -- we have fulfilled our
9   obligations under the Voting Rights Act for a period of
10  years," and that if you show that, then the statute
11  will exempt you from preclearance. Will you assume
12  that with me for a moment? That there's an exemption
13  procedure under the statute?
14  A. Okay.
15  Q. If the district were to demonstrate that it
16  could fall -- that it could satisfy that -- that
17  statutory exemption, would you still object to it doing
18  that?
19      MS. PERALES: Objection; speculative.
20  You may answer.
21      THE WITNESS: If it follows current
22  regulations?
23  Q. (By Mr. Coleman) If it shows that it has
24  followed regulations.
25  A. If it follows the regulations as written?

Page 17

1   Q. Yes.
2   A. I guess, if it follows current regulations.
3   Q. Based -- and based on our discussion thus far,
4   you don't have any reason to believe that the district
5   hasn't followed the requirements of the Voting Rights
6   Act, do you?
7   A. No.
8       MS. PERALES: Objection; it calls for a
9   legal evaluation and conclusion regarding the
10  district's compliance with the Voting Rights Act.
11  Q. (By Mr. Coleman) But your answer was no.
12  Right?
13  A. I'm not sure.
14      MS. PERALES: I think we were talking
15  over each other, just to make the record clear.
16  Q. (By Mr. Coleman) My question, Dr. Diaz,
17  wasn't necessarily a conclusion. I think what I said
18  was you don't have any reason to believe that it
19  hasn't. Nothing in your experience leads you to
20  believe that the district hasn't fulfilled its
21  obligations under the Voting Rights Act.
22      MS. PERALES: Objection to the extent
23  that it calls for a legal conclusion regarding whether
24  or not the district has fulfilled its obligations under
25  the Voting Rights Act.

5 (Pages 14 to 17)

Page 18

1  Q. (By Mr. Coleman) She -- as an attorney --
2      MS. PERALES: You may answer.
3  Q. (By Mr. Coleman) -- she puts the objection
4  on the record, but the question still stands. Based on
5  your experience, you don't have any reason to believe
6  that it hasn't.
7  A. I don't know.
8  Q. Did you attend high school in Albuquerque?
9  A. Yes, I did.
10 Q. Do you recall what high school you went to?
11 A. The Albuquerque Academy.
12 Q. Do you know whether these regulations apply in
13 Albuquerque?
14 A. I don't know.
15 Q. How about Colorado?
16 A. I'm not sure.
17 Q. Before the attorneys came to your door, did
18 you know that Section 5 or preclearance even existed?
19 A. I knew something of the Voting Rights Act, but
20 not all the different subsections.
21 Q. Do you have any specific recollection -- and
22 again, there are many provisions of the Voting Rights
23 Act that apply everywhere. With respect solely to the
24 pre -- preclearance, the idea that you have to ask the
25 Justice Department's permission, do you have any

Page 19

1  recollection that you knew that that applied prior to
2  the attorneys coming to your door?
3  A. No.
4  Q. You had mentioned to me that the reason for
5  you getting into the lawsuit was that you -- you
6  disagree with the district's desire to exempt itself
7  from -- from the preclearance requirements. Is that --
8      MS. PERALES: Objection; mischaracterizes
9  the testimony.
10 Q. (By Mr. Coleman) Yeah, actually, I -- what
11 was following is does that accurately state your view
12 or could you state it more succinctly for me?
13 A. Could you repeat the question, please?
14 Q. Is the reason that you were in the lawsuit
15 because you object to the district's desire to exempt
16 itself from the preclearance requirements?
17 A. I object to the district's actions against the
18 Voting Rights Act.
19 Q. You understand that the only provision of the
20 Voting Rights Act at issue here is the preclearance
21 requirement. Do you understand that?
22 A. Yes.
23 Q. And I want to make that very clear, Dr. Diaz.
24 It's very important to the district that everyone
25 understand that it is fully supportive and believes it

Page 20

1  complies with every other provision of the Voting
2  Rights Act, that it is committed to doing that, but
3  that it wants to exempt itself from preclearance. Is
4  that consistent with your understanding of what the
5  district is seeking to do, is to exempt itself just
6  from the preclearance requirements of the act?
7      MS. PERALES: Objection to the extent
8  that counsel is testifying, but otherwise, you may
9  answer.
10     THE WITNESS: Could you repeat the
11 question, please?
12     MR. COLEMAN: It was too long.
13     MS. PERALES: I believe the question has
14 also been asked and answered. With respect to his
15 understanding of the preclearance provision being at
16 issue.
17 Q. (By Mr. Coleman) I thought it was --
18 Dr. Diaz, you -- your answer to one of the prior
19 questions talked about -- it -- it talked about the
20 Voting Rights Act as a whole. And what I want to make
21 sure that you understand as -- is that the district --
22 the Voting Rights Act is a very large thing, and I want
23 to make sure you understand that the only provision
24 that is at issue here is the preclearance provision or
25 the provision that you get the Department of Justice's

Page 21

1  permission before you make any change.
2      MS. PERALES: Objection; not a question.
3  Q. (By Mr. Coleman) Do you -- that -- is that
4  your understanding? Do you understand that?
5  A. Yes.
6  Q. If I told you that Albuquerque doesn't have
7  to -- that no governmental entity in or around
8  Albuquerque has to seek preclearance, would -- would
9  that make any difference to you about whether the
10 district should remain subject to preclearance?
11 A. I believe the district should remain.
12 Q. Is that simply because it is subject to it and
13 therefore it should remain subject to it?
14 A. One more time.
15 Q. Is the reason that the district should remain
16 subject to preclearance the fact that it is currently
17 subject to preclearance?
18 A. Yes.
19 Q. Could you see -- foresee -- could you foresee
20 any circumstances under which you believe that the
21 district should be exempted from preclearance?
22     MS. PERALES: Objection to the extent
23 that it calls for speculation.
24 Q. (By Mr. Coleman) You -- you can answer the
25 question. I don't know if you're still thinking or

6 (Pages 18 to 21)

Page 22

```
 1  waiting.
 2      A.  Repeat it again, please.
 3          MS. PERALES:  You can take your time with
 4  the thinking, too, if you need to.
 5          MR. COLEMAN:  Yes.  Absolutely.
 6      Q.  (By Mr. Coleman)  Are there any circumstances
 7  under which you would agree that the district should be
 8  exempted from preclearance?
 9          MS. PERALES:  And same objection.
10          THE WITNESS:  No.
11      Q.  (By Mr. Coleman)  Dr. Diaz, did you bring any
12  documents today in response to the deposition notice
13  that you received?
14      A.  No.
15          MR. COLEMAN:  I'll pass the witness.
16          MS. PERALES:  I have no questions.
17  Anybody on the phone have questions?
18          MR. KORBEL:  No questions.
19          MR. BLUSTEIN:  No questions.
20          (Deposition concluded at 2:11 p.m.)
21
22
23
24
25
```

Page 23

```
 1            CHANGES AND CORRECTIONS
 2  WITNESS NAME: DAVID DIAZ       DATE: _____
 3  Reason Codes: (1) to clarify the record; (2) to
    conform to the facts; (3) to correct a transcription
 4  error; (4) other (please explain).
 5  PAGE  LINE  CHANGE              REASON CODE
 6  _____
 7  _____
 8  _____
 ...
```

Page 24

```
 1  PAGE  LINE  CHANGE              REASON CODE
 2  _____
 ...
 9  _____
    DAVID DIAZ
10
11
12  THE STATE OF _____)
                        )
13  COUNTY OF _____)
14      Before me, _____, on this day personally
    appeared DAVID DIAZ, known to me (or proved to me under
15  oath or through
    _____
16  (description of identity card or other document)) to be
    the person whose name is subscribed to the foregoing
17  instrument and acknowledged to me that they executed
    the same for the purposes and consideration therein
18  expressed.
19      Given under my hand and seal of office this
    _____ day of March 2007.
20
21
    _____
22  NOTARY PUBLIC IN AND FOR
    THE STATE OF _____
```

Page 25

```
 1         IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLUMBIA
 2
    NORTHWEST AUSTIN        )
 3  MUNICIPAL UTILITY DISTRICT )
    NUMBER ONE,             )
 4  401 W. 15th Street      )    CIVIL ACTION NO.
    Suite 850               )
 5  Austin, Texas 78701     )    1:06-CV-01384
            Plaintiff,      )    (DST,PLF,EGS)
 6  v.                      )
                            )
 7  ALBERTO GONZALES,       )
    ATTORNEY GENERAL OF THE )
 8  UNITED STATES,          )
    U.S. Department of Justice )
 9  950 Pennsylvania Avenue NW )
    Washington, D.C. 20530  )
10
             REPORTER'S CERTIFICATION
11          DEPOSITION OF DAVID DIAZ
           Wednesday, February 28, 2007
12
13      I, RANDALL N. FINCH, Certified Shorthand
14  Reporter in and for the State of Texas, hereby certify
15  to the following:
16      That the witness, DAVID DIAZ, was duly sworn
17  by the officer and that the transcript of the oral
18  deposition is a true record of the testimony given by
19  the witness;
20      That the deposition transcript was submitted
21  on March 3, 2007 to the witness or to the attorney for
22  the witness for examination, signature and return to me
23  by _____, 2007.
24      That the amount of time used by each party at
25  the deposition is as follows:
```

Page 26

```
 1      Mr. Gregory S. Coleman - 00 minutes
 2      Ms. Nina Perales - 0 minutes
 3      That pursuant to information given to the
 4  deposition officer at the time said testimony was
 5  taken, the following includes counsel for all parties
 6  of record:
 7      Mr. Gregory S. Coleman and Mr. Christian J.
 8  Ward, attorneys for Plaintiff
 9      Ms. Nina Perales, attorney for MALDEF
10      Mr. George Korbel, attorney for Texas Rio
11  Grande Legal Aid, Inc.
12      Mr. Chris Herren and Ms. Christy A. McCormick,
13  attorneys for U.S. Department of Justice
14      Mr. Benjamin Blustein and Mr. Daniel A. Zibel,
15  attorneys for Lawyers' Committee for Civil Rights Under
16      Mr. Max Renea Hicks, attorney for Travis
17  County
18      Mr. Debo Adegbile, attorney for the NAACP
19  Legal Defense and Educational Fund, Inc.
20      I further certify that I am neither counsel
21  for, related to, nor employed by any of the parties or
22  attorneys in the action in which this proceeding was
23  taken, and further that I am not financially or
24  otherwise interested in the outcome of the action.
25      Certified to by me this 28th day of February, 2007.
```

Page 27

```
 1
 2      RANDALL N. FINCH, Texas CSR #504
        Expiration date: 12/31/2008
 3      Fredericks-Carroll Reporting
        Firm Registration No. 82
 4      7800 Shoal Creek Blvd., Suite 200-W
        Austin, Texas 78757 (512) 477-9911
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

8 (Pages 26 to 27)