IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| NORTHWEST AUSTIN MUNICIPAL UTILITY DISTRICT NUMBER ONE, 401 W. 15th Street Suite 850 Austin, Texas 78701       Plaintiff, v. ALBERTO GONZALES, ATTORNEY GENERAL OF THE UNITED STATES, U.S. Department of Justice 950 Pennsylvania Avenue NW Washington, D.C. 20530 | CIVIL ACTION NO. 1:06-CV-01384 (DST,PLF,EGS) |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
ORAL DEPOSITION OF
LISA DIAZ
Wednesday, February 28, 2007
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ORAL DEPOSITION OF LISA DIAZ, produced as a witness at the instance of the Plaintiff and duly sworn, was taken in the above-styled and numbered cause on the 28th day of February, 2007, from 2:19 p.m. to 2:46 p.m., before RANDALL N. FINCH, Certified Shorthand Reporter in and for the State of Texas, reported by computerized stenotype machine at the offices of Weil, Gotshal & Manges, LLP, 8911 Capital of Texas Highway, Suite 1350, Austin, Texas 78759, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

Page 2

```
 1          APPEARANCES
 2  FOR THE PLAINTIFF NORTHWEST AUSTIN MUNICIPAL UTILITY
    DISTRICT NO. ONE:
 3
       Mr. Gregory S. Coleman
 4         -and-
       Mr. Christian J. Ward
 5     WEIL, GOTSHAL & MANGES, LLP
       8911 Capital of Texas Highway
 6     Building One, Suite 1350
       Austin, Texas 78759 (512) 349-1937
 7              (512) 527-0698 Fax
 8  FOR THE MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATION
    FUND (MALDEF):
 9
       Ms. Nina Perales
10         -and-
       Mr. Diego M. Bernal
11     110 Broadway, Suite 300
       San Antonio, Texas 78205 (210) 224-5476
12              (210) 224-5382 Fax
13  FOR TEXAS RIO GRANDE LEGAL AID, INC.:
14     Mr. George Korbel (By telephone)
       Attorney at Law
15     1111 N. Main Avenue
       San Antonio, Texas 78212 (210) 212-3700
16              (210) 212-3772 Fax
17  FOR THE U.S. DEPARTMENT OF JUSTICE, CIVIL RIGHTS
    DIVISION:
18
       Mr. Chris Herren
19         -and-
       Ms. Christy A. McCormick
20     950 Pennsylvania Avenue, N.W., Room 7246
       Washington, D.C. 20530 (202) 305-0609
21              (202) 327-3961 Fax
22  FOR THE LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW:
23     Mr. Benjamin Blustein (By telephone)
       Staff Attorney, Voting Rights Project
24     1401 New York Avenue, NW, Suite 1400
       Washington, D.C. 20005 (202) 662-8320
25              (202) 628-2858 Fax
```

Page 3

```
 1     Mr. Daniel A. Zibel (By telephone)
       WILMER, CUTLER, PICKERING, HALE & DORR, LLP
 2     1875 Pennsylvania Ave., N.W.
       Washington, D.C. 80006 (202) 603-6053
 3              (202) 663-6363 Fax
 4  FOR INTERVENOR TRAVIS COUNTY:
 5     Mr. Max Renea Hicks
       Attorney at Law
 6     1250 Norwood Tower
       114 West 7th Street
 7     Austin, Texas 78701
 8  FOR THE NAACP LEGAL DEFENSE AND EDUCATIONAL FUND, INC.:
 9     Mr. Debo P. Adegbile (By telephone)
       Attorney at Law
10     99 Hudson Street, Suite 1600
       New York, New York 10013
11
12            INDEX
13  Appearances......................  2
14  Stipulations.....................
15
16  LISA DIAZ
17     Examination by Mr. Ward........  4
18
19  Signature and Changes............  22
20  Reporter's Certificate...........  24
21
22
23
24
25
```

Page 4

```
 1          LISA DIAZ,
 2  having been first duly sworn, testified as follows:
 3              EXAMINATION
 4  BY MR. WARD:
 5     Q. Mrs. Diaz, thank you for coming here today.
 6  As I introduced myself to you earlier, I am Chris Ward
 7  here representing Northwest Austin MUD No. 1, which for
 8  the record I'll refer to as the district or the MUD.
 9     A. Okay.
10     Q. Throughout the deposition. For the record,
11  will you please state your full name and address.
12     A. Lisa Acevedo Diaz. And I live -- live at
13  10424 Ember Glen Drive, Austin, Texas 78726.
14     Q. And how long have you lived at that address?
15     A. It will be 13 years in May.
16     Q. Okay. And Dr. Diaz, David Diaz, is your
17  husband?
18     A. Yes, sir.
19     Q. So you all moved into the district, into that
20  house, at the same time?
21     A. Yes.
22     Q. And before that were you also living with him
23  in Austin but outside the district?
24     A. Yes.
25     Q. Okay. And where did you live before that?
```

Page 5

```
 1  Before -- before --
 2     A. Before Austin?
 3     Q. Before Austin. Right.
 4     A. We lived in Pueblo, Colorado.
 5     Q. Okay. And -- and did you live in Dallas with
 6  him or --
 7     A. Not with him, no, but --
 8     Q. Like he did before?
 9     A. -- I did live in Dallas.
10     Q. Okay. Okay. I'm just... And where did you
11  live before you lived in Dallas?
12     A. It was -- well, a short while in San Antonio.
13  Want me to keep going back?
14     Q. Okay. I think that's fine.
15     A. Okay.
16     Q. I think that's far enough. Did you bring any
17  documents today?
18     A. No, sir.
19     Q. Okay. Did you do anything to prepare for the
20  deposition today?
21     A. I -- not today.
22     Q. Oh -- well, have you done anything to prepare
23  for this deposition?
24     A. Just making sure I -- I understood the
25  preclearance section.
```

2 (Pages 2 to 5)

## Page 6

```
 1   Q.  Okay.  Did you review any documents to help
 2  you gain that understanding?
 3   A.  Just Google.
 4   Q.  Okay.
 5   A.  That's it.
 6   Q.  Would you say you're involved in your
 7  community?
 8   A.  I'm involved in the school community and the
 9  church community.
10   Q.  What kind of involvement do you have in the
11  school community?
12   A.  I volunteer in my children's classrooms and I
13  help with fundraisers.  Just those sorts of activities.
14   Q.  Okay.  Would you say that you're involved in
15  political activities?
16   A.  No.
17   Q.  Okay.  But do you vote?
18   A.  Yes.
19   Q.  Do you consider yourself to be an active
20  voter?
21   A.  I do vote in the elections.
22   Q.  Okay.  Do you vote in local elections?
23   A.  Yes.
24   Q.  And have you voted in elections for the
25  district before?
```

## Page 7

```
 1   A.  Just one that I can recall.
 2   Q.  Just one?
 3   A.  Mm-hmm.
 4   Q.  What year was that?
 5   A.  This past year.
 6   Q.  Okay.  2006?
 7   A.  Six.  Spring.
 8   Q.  And the May election in 2006?
 9   A.  Mm-hmm.
10   Q.  And that -- that was the first MUD election
11  that you voted in since you've lived in the district?
12   A.  I believe so.
13   Q.  Okay.  That you recall?
14   A.  Yes.
15   Q.  Okay.  Did you vote in the fall elections that
16  year?  2006?  Not for the MUD; the congressional
17  elections.
18   A.  Yes.
19   Q.  Did you vote in any federal or state elections
20  in 2004?
21   A.  I believe so.
22   Q.  Okay.  Did you vote -- I know you've -- you
23  said you do not -- you don't recall voting in the MUD
24  election in 2004, but do you recall voting in any other
25  local elections in 2004?
```

## Page 8

```
 1   A.  I don't remember.
 2   Q.  Okay.  What about 2002?
 3   A.  I believe I did, yes.
 4   Q.  Okay.  When you voted in the May 2006 MUD
 5  election, do you recall where that election took place?
 6   A.  At the -- the Canyon Creek elementary school.
 7   Q.  Okay.  And there were other elections at the
 8  same location.  Is that correct?
 9   A.  Yes.
10   Q.  And did you vote -- on your ballot did you
11  vote in other elections that were being held there?
12   A.  Yes.
13   Q.  Okay.  Just to clarify, I think it's one
14  ballot, but it's for multiple --
15   A.  Mm-hmm.
16   Q.  -- elections, different offices.
17   A.  Right.
18   Q.  Do you attend board meetings of the MUD?
19   A.  No, sir.
20   Q.  Have you ever attended any --
21   A.  No, sir.
22   Q.  -- board meetings?  Do you attend any of the
23  homeowners' association meetings in Canyon Creek?
24   A.  No.
25   Q.  Do you get the Canyon Creek homeowners'
```

## Page 9

```
 1  association newsletter?
 2   A.  Yes.
 3   Q.  Do you read that --
 4   A.  Actually, I do.
 5   Q.  Okay.  Do you know any members of the MUD's
 6  board?
 7   A.  Not personally, no.
 8   Q.  Have you -- have you met any of them?
 9   A.  I've met Mr. Zimmerman once.
10   Q.  Do you recall where that was?
11   A.  Actually, it was outside our house.  He was
12  running for -- I believe it was state rep, and he was
13  putting up signs.
14   Q.  Mm-hmm.  And have you met any other members of
15  the board that you recall?
16   A.  Well, just right now, Mr. Ferguson.
17   Q.  Okay.
18   A.  But I had not met him before.
19   Q.  But not before?
20   A.  Uh-uh.
21   Q.  Just outside the deposition today?
22   A.  Yes.
23   Q.  I'm just -- I'm going to just ask you briefly
24  the names of some of the board members and just ask if
25  you have any familiarity with these individuals, even
```

FREDERICKS-CARROLL REPORTING
AUSTIN (512) 477-9911 - HOUSTON (713) 572-8897 - SAN ANTONIO (210) 222-9161

2d7a8d1c-fd51-4fc5-9714-6896977b523f

## Page 10

1  though maybe -- you might know them but maybe you
2  didn't know they were on the board. Do you have any
3  familiarity with Ed Swarthout?
4      A.  No.
5      Q.  How about George Frederickson?
6      A.  No.
7      Q.  How about Alan Wiese?
8      A.  I know his name.
9      Q.  Okay. Do you recall how you know his name?
10     A.  Actually, no.
11     Q.  Okay. What about Karen Timborius?
12     A.  I recognize her name.
13     Q.  Okay. Okay. And how did you come to be
14 involved as an intervenor in this litigation?
15     A.  MALDEF came to our door.
16     Q.  And were these the -- the same attorneys that
17 David Diaz testified came by your door and spoke with
18 both of you?
19     A.  Yes.
20     Q.  Okay. And without going into the content of
21 any discussions you might have had with those attorneys
22 or with any other attorneys representing you, what is
23 your understanding of what this lawsuit is about?
24     A.  That the MUD district filed a lawsuit deeming
25 Section 5 to be unconstitutional.

## Page 11

1      Q.  Okay. And what is your understanding of
2  Section 5?
3          MS. PERALES: Objection to the extent
4  that it calls for legal knowledge or conclusion. You
5  may answer.
6      Q.  (By Mr. Ward) Yeah. And I'm -- and just to
7  be clear, I'm not asking you as -- to speak as a
8  lawyer. I just want to know what -- what do you think
9  that Section 5 means when you say the lawsuit is
10 challenging Section 5?
11     A.  From what I've read, certain states who are --
12 who have a history of discrimination are required, if
13 there's any change to the voting -- the poll or the
14 ballot, that they need to submit those changes to be
15 reviewed by the Department of Justice --
16     Q.  Okay.
17     A.  -- first.
18     Q.  Okay. And you understand that that process is
19 also referred to as preclearance?
20     A.  Yes.
21     Q.  Okay. And you understand that in addition to
22 applying to states, that the requirement also applies
23 to smaller local governments like the MUD?
24     A.  Yes.
25     Q.  Okay. Are you familiar with the term bailout

## Page 12

1  in this context?
2      A.  I -- I remember the term, yes.
3      Q.  Okay. And do you -- you said that you are
4  concerned that the district is challenging the
5  constitutionality of Section 5. Do you also understand
6  that the district is requesting what's called a bailout
7  from Section 5?
8      A.  I remember reading that they were requesting a
9  bailout but did not qualify to -- to bail out.
10     Q.  Okay. When you say they did not qualify to
11 bail out and you read that, do you recall where you
12 read that?
13     A.  On the Internet. I don't remember exactly,
14 but --
15     Q.  Okay. Do you -- I mean, was -- just to be
16 clear on that, that -- that wasn't someone saying that
17 a court had decided that the district does not qualify
18 for bailout?
19     A.  It was just -- had something to do with its --
20 the entity, it was not able to.
21     Q.  Okay. Was that --
22     A.  That's all I remember.
23     Q.  Okay. Do you recall, was that someone's
24 opinion, saying an article may be saying in my opinion
25 the district does not qualify for bailout?

## Page 13

1      A.  I don't remember.
2      Q.  Okay. But you understand that by bailout, the
3  district is basically saying we -- we want to get an
4  exemption from Section 5 or ruling that we're no longer
5  covered by it, and that if the district gets that
6  ruling, the constitutionality of Section 5 will not be
7  an issue?
8          MS. PERALES: Objection; calls for a
9  legal conclusion.
10     Q.  (By Mr. Ward) I'm just -- I'm just asking if
11 you understand.
12     A.  Right. Repeat that, please.
13     Q.  Okay. I'm sorry. Let me try to -- try to be
14 more clear. Do you understand that if the district
15 gets a bailout, that that means that the district is no
16 longer covered by Section 5, but there's no ruling that
17 Section 5 is unconstitutional?
18         MS. PERALES: Objection; speculative and
19 calls for a legal conclusion. You may answer.
20         THE WITNESS: I don't think I understand.
21     Q.  (By Mr. Ward) Okay. Do you understand that
22 if the district gets a bailout, it simply means the
23 district no longer has to submit preclearance forms to
24 the --
25     A.  Okay.

FREDERICKS-CARROLL REPORTING
AUSTIN (512) 477-9911 - HOUSTON (713) 572-8897 - SAN ANTONIO (210) 222-9161

2d7a8d1c-fd51-4fc5-9714-6896977b523f

Page 14

1   Q. You understand that?
2   A. I think I understand what you're saying.
3   Q. Okay. And -- and that -- do you understand
4   that in the district's lawsuit, if the court says the
5   district can have that bailout, that that's the end of
6   the lawsuit?
7       MS. PERALES: Objection; calls for a
8   legal conclusion.
9   Q. (By Mr. Ward) Okay, is -- is that a no
10  answer? You shook your head. Is that -- the -- the
11  reporter needs you to say yes or no.
12  A. Would you repeat it one more time? Sorry.
13  Q. Okay. Basically -- let me try to rephrase it
14  a little bit. And I am -- I just want to make clear I
15  know you're not a lawyer and you're not answering this
16  as a lawyer, so the question is just do you understand
17  what I'm about to say, that the district is asking for
18  bailout and if the court says, "District, you are
19  allowed to bail out," then that's the end of the
20  lawsuit? That's --
21  A. Okay.
22  Q. That's all the district wants. If it gets it,
23  the lawsuit ends.
24      MS. PERALES: Same objection. You may
25  answer.

Page 15

1       THE WITNESS: Okay.
2   Q. (By Mr. Ward) Okay. Did that --
3   A. I -- I understand what you are saying, yes.
4   Q. Okay. Do you understand that Section 5, the
5   preclearance section, is one section of the Voting
6   Rights Act and that there are other sections of the
7   Voting Rights Act that do different things?
8   A. To a certain extent, yes.
9   Q. Okay. And do you understand that the rest of
10  the Voting Rights Act is what forbids local districts
11  to discriminate against people in voting?
12  A. Repeat that. The rest...
13  Q. Do you understand that the -- that Section 5,
14  preclearance, is just the part which says that a
15  district has to submit something to the Department of
16  Justice, but the rest of the Voting Rights Act is what
17  makes it illegal for a district to discriminate against
18  people when they're voting?
19      MS. PERALES: Objection to the extent
20  that it mischaracterizes Section 5 and the rest of the
21  Voting Rights Act. You may answer.
22      THE WITNESS: From what I remember
23  reading, though, the -- Section 5 protects people from
24  being discriminated against as well.
25  Q. (By Mr. Ward) Okay. But do you -- do you

Page 16

1   understand that if a district is -- any district is not
2   covered by Section 5, that it still is illegal for that
3   district to discriminate?
4   A. Yes.
5   Q. Okay. Do you know if there are parts of the
6   United States that are not covered by Section 5?
7   A. I don't know which states.
8   Q. Okay. But you know that there are parts of
9   the United States that are not covered.
10  A. Yes.
11  Q. Without -- without having to name the specific
12  ones.
13  A. (Nods head)
14  Q. Okay. Do you know if that's most states or a
15  minority of states?
16  A. I don't know.
17  Q. Okay. Do you believe that the district has
18  improperly made any change affecting voting?
19  A. Not that I'm aware of.
20  Q. Okay. And when you voted in the May 2006
21  district election, did you have any problem going to
22  vote in that election?
23  A. No, sir.
24  Q. Okay. So you're not making any complaint here
25  about the conduct of any particular election in the

Page 17

1   district. Is that correct?
2   A. That's correct.
3   Q. Okay. So your interest here is primarily
4   philosophically you want to protect Section 5. Is that
5   correct?
6   A. Yes, sir.
7   Q. Back a little bit to the bailout procedure.
8   If a community -- I am going to start over because
9   this -- this may draw a legal conclusion objection from
10  your counsel if I go the way I started.
11      MR. COLEMAN: Can't imagine that.
12  Q. (By Mr. Ward) If I say there -- would you
13  allow me to say to you that the bailout procedure which
14  we talked about requires the community to show that it
15  meets certain requirements?
16  A. Okay.
17  Q. Okay. Without -- without expecting you to
18  have legal knowledge of what those specific
19  requirements are. Can we -- would you allow me to say
20  to you that in general, the requirements are, "We've
21  behaved fine for a period of years. We've complied
22  with the Voting Rights Act and with Section 5"?
23  That --
24  A. Okay.
25  Q. And if a local community can satisfy those

Page 18

1  requirements, do you think that community should be
2  allowed to bail out of Section 5 coverage?
3      MS. PERALES: Objection to the extent
4  that it calls for a legal conclusion.
5      THE WITNESS: I don't know.
6  Q. (By Mr. Ward) Okay. I mean -- let me -- let
7  me try it from this way: If a -- if the law says, you
8  know, "If you satisfy these requirements, you can get
9  out," and a community does satisfy those requirements,
10 would you say that even if they satisfy the
11 requirements, they should stay covered by Section 5?
12 A. Yes.
13 Q. Yes, they -- they should --
14 A. Mm-hmm.
15 Q. -- even if they -- they satisfy the
16 requirements --
17 A. Mm-hmm.
18 Q. -- for getting out?
19 A. Yes.
20     MS. PERALES: Objection to the extent
21 that it requires her to make some kind of legal
22 evaluation about the requirements and whether they have
23 been met.
24     MR. WARD: Okay. I --
25     MS. PERALES: But you got your yes, so...

Page 19

1      MR. COLEMAN: Yeah, keep going. I've got
2  like 15 legal speculation objections and you only got
3  seven.
4      MS. PERALES: He's asking better
5  questions.
6      MR. COLEMAN: Well, we knew that
7  because...
8      MR. WARD: I -- I learned.
9  Q. (By Mr. Ward) Okay. And you -- you've said
10 that you don't have any particular complaint about any
11 election and the conduct of any particular election in
12 the MUD, but do you have any information giving you
13 reason to believe that the MUD has discriminated in
14 regard to voting in any way?
15 A. No.
16 Q. Do you know -- other than in the context of
17 voting, do you know of any other area in which the MUD
18 has to go to the federal government and ask permission
19 before it makes a decision, before it changes
20 something?
21 A. No.
22 Q. Do you think that there -- there should be any
23 areas other than the -- the area of voting in which
24 your local MUD should have to go to the federal
25 government and ask permission before it can do

Page 20

1  something?
2  A. I don't know.
3  Q. Okay. Before you learned about this lawsuit,
4  did you know anything about the Section 5 preclearance
5  requirement?
6  A. No.
7  Q. Okay. So you've -- you had no views on this
8  issue before -- before you heard about this lawsuit and
9  were -- were asked to consider intervening.
10     MS. PERALES: Objection to the extent
11 that it requires the witness to characterize her
12 communications with MALDEF.
13 Q. (By Mr. Ward) Okay. Don't -- please don't
14 tell me anything that you communicated with -- not your
15 lawyer, but be -- before the lawyers came to your door,
16 you did not know about Section 5 and you weren't
17 concerned about it. Is that correct?
18 A. I was aware of the Voting Rights Act. That
19 particular section, I -- I was not --
20 Q. Not the preclearance requirement?
21 A. I was not aware of the -- the preclearance,
22 but once I read, I -- I was concerned. After.
23 Q. Okay.
24     MR. WARD: Okay, that's all I have,
25 Ms. Diaz. And I'll pass the witness.

Page 21

1      MS. PERALES: I have no questions.
2      MR. HERREN: I have no questions.
3      MS. PERALES: Anybody still on the phone?
4      MR. KORBEL: I have no questions. George
5  Korbel, no questions.
6      MR. BLUSTEIN: No questions from the
7  NAACP intervenors.
8      MR. WARD: Okay. Then I think we're
9  done.
10     (Deposition concluded at 2:46 p.m.)

Page 22

```
1       CHANGES AND CORRECTIONS
2  WITNESS NAME: LISA DIAZ        DATE: _____
3  Reason Codes: (1) to clarify the record; (2) to
   conform to the facts; (3) to correct a transcription
4  error; (4) other (please explain).
5  PAGE  LINE  CHANGE              REASON CODE
6  _____
7  _____
8  _____
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20 _____
21 _____
22 _____
23 _____
24 _____
25 _____
```

Page 23

```
1  PAGE  LINE  CHANGE              REASON CODE
2  _____
3  _____
4  _____
5  _____
6  _____
7  _____
8
9  _____
      LISA DIAZ
10
11
12 THE STATE OF _____)
                        )
13 COUNTY OF _____)
14    Before me, _____, on this day personally
   appeared LISA DIAZ, known to me (or proved to me under
15 oath or through
   _____
16 (description of identity card or other document)) to be
   the person whose name is subscribed to the foregoing
17 instrument and acknowledged to me that they executed
   the same for the purposes and consideration therein
18 expressed.
19    Given under my hand and seal of office this
      _____ day of March 2007.
20
21 _____
   NOTARY PUBLIC IN AND FOR
22 THE STATE OF _____
23
24
25
```

Page 24

```
1      IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF COLUMBIA
2
   NORTHWEST AUSTIN        )
3  MUNICIPAL UTILITY DISTRICT )
   NUMBER ONE,             )
4  401 W. 15th Street      )   CIVIL ACTION NO.
   Suite 850               )
5  Austin, Texas 78701     )   1:06-CV-01384
           Plaintiff,      )   (DST,PLF,EGS)
6  v.                      )
                           )
7  ALBERTO GONZALES,       )
   ATTORNEY GENERAL OF THE )
8  UNITED STATES,          )
   U.S. Department of Justice )
9  950 Pennsylvania Avenue NW )
   Washington, D.C. 20530  )
10
11     REPORTER'S CERTIFICATION
       DEPOSITION OF LISA DIAZ
12     Wednesday, February 28, 2007
13     I, RANDALL N. FINCH, Certified Shorthand
14 Reporter in and for the State of Texas, hereby certify
15 to the following:
16     That the witness, LISA DIAZ, was duly sworn by
17 the officer and that the transcript of the oral
18 deposition is a true record of the testimony given by
19 the witness;
20     That the deposition transcript was submitted
21 on March 3, 2007 to the witness or to the attorney for
22 the witness for examination, signature and return to me
23 by _____, 2007.
24     That the amount of time used by each party at
25 the deposition is as follows:
```

Page 25

```
1      Mr. Christian J. Ward - 00 minutes
2      Ms. Nina Perales - 0 minutes
3      That pursuant to information given to the
4  deposition officer at the time said testimony was
5  taken, the following includes counsel for all parties
6  of record:
7      Mr. Christian J. Ward and Mr. Gregory S.
8  Coleman, attorneys for Plaintiff
9      Ms. Nina Perales, attorney for MALDEF
10     Mr. George Korbel, attorney for Texas Rio
11 Grande Legal Aid, Inc.
12     Mr. Chris Herren and Ms. Christy A. McCormick,
13 attorneys for U.S. Department of Justice
14     Mr. Benjamin Blustein and Mr. Daniel A. Zibel,
15 attorneys for Lawyers' Committee for Civil Rights Under
16     Mr. Max Renea Hicks, attorney for Travis
17 County
18     Mr. Debo Adegbile, attorney for the NAACP
19 Legal Defense and Educational Fund, Inc.
20     I further certify that I am neither counsel
21 for, related to, nor employed by any of the parties or
22 attorneys in the action in which this proceeding was
23 taken, and further that I am not financially or
24 otherwise interested in the outcome of the action.
25     Certified to by me this 28th day of February, 2007.
```

7 (Pages 22 to 25)

1
2  RANDALL N. FINCH, Texas CSR #504
   Expiration date: 12/31/2008
3  Fredericks-Carroll Reporting
   Firm Registration No. 82
4  7800 Shoal Creek Blvd., Suite 200-W
   Austin, Texas 78757 (512) 477-9911
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25