```
        IN THE UNITED STATES DISTRICT COURT
          FOR THE DISTRICT OF COLUMBIA

NORTHWEST AUSTIN            )
MUNICIPAL UTILITY DISTRICT  )
NUMBER ONE,                 )
401 W. 15th Street          )      CIVIL ACTION NO.
Suite 850                   )
Austin, Texas 78701         )      1:06-CV-01384
            Plaintiff,      )      (DST,PLF,EGS)
                            )
v.                          )
                            )
ALBERTO GONZALES,           )
ATTORNEY GENERAL OF THE     )
UNITED STATES,              )
U.S. Department of Justice  )
950 Pennsylvania Avenue NW  )
Washington, D.C. 20530      )
```

```
        * * * * * * * * * * * * * * *
              ORAL DEPOSITION OF
                ANGELA GARCIA
          Wednesday, February 28, 2007
        * * * * * * * * * * * * * * *
```

ORAL DEPOSITION OF ANGELA GARCIA, produced as

a witness at the instance of the Plaintiff and duly

sworn, was taken in the above-styled and numbered cause

on the 28th day of February, 2007, from 9:33 a.m. to

9:45 a.m., before RANDALL N. FINCH, Certified Shorthand

Reporter in and for the State of Texas, reported by

computerized stenotype machine at the offices of Weil,

Gotshal & Manges, LLP, 8911 Capital of Texas Highway,

Suite 1350, pursuant to the Federal Rules of Civil

Procedure and the provisions stated on the record or

attached hereto.

Page 2

1      APPEARANCES
2  FOR THE PLAINTIFF NORTHWEST AUSTIN MUNICIPAL UTILITY
   DISTRICT NO. ONE:
3
       Mr. Gregory S. Coleman
4    WEIL, GOTSHAL & MANGES, LLP
     8911 Capital of Texas Highway
5    Building One, Suite 1350
     Austin, Texas 78759  (512) 349-1937
6        (512) 527-0698 Fax
7  FOR TEXAS RIO GRANDE LEGAL AID, INC.:
8    Mr. Jose Garza
     Attorney at Law
9    1111 N. Main Avenue
     San Antonio, Texas 78212  (210) 212-3700
10       (210) 212-3772 Fax
11 FOR THE U.S. DEPARTMENT OF JUSTICE, CIVIL RIGHTS
   DIVISION:
12
     Mr. Chris Herren
       -and-
13   Ms. Christy A. McCormick
14   950 Pennsylvania Avenue, N.W., Room 7246
     Washington, D.C. 20530  (202) 305-0609
15       (202) 327-3961 Fax
16
17
18
19
20
21
22
23
24
25

Page 3

1          ANGELA GARCIA,
2  having been first duly sworn, testified as follows:
3            EXAMINATION
4  BY MR. WARD:
5      Q.  Ms. Garcia, thank you very much for coming
6  here today. I am Chris Ward. I represent the district
7  that's the plaintiff in this lawsuit. Do you know the
8  name of the district that's the plaintiff?
9      A.  No. I was going to ask you that. What
10 district?
11     Q.  It's called the Northwest Austin Municipal
12 Utility District or MUD No. 1. And if I -- if I refer
13 to the district or the MUD --
14     A.  Okay.
15     Q.  -- that's what I'll be referring to. Have you
16 ever been to the district?
17     A.  No, sir.
18     Q.  Do you know where it is?
19     A.  No, sir. I'm from San Antonio.
20     Q.  Okay. Where in San Antonio do you have a --
21     A.  I live in 2731 West Mistletoe 78228.
22     Q.  Okay. And how long have you lived there?
23     A.  30 years.
24     Q.  Okay. And did you live somewhere else in San
25 Antonio before that?

Page 4

1      A.  I was born in Gonzalez, Texas.
2      Q.  Okay.
3      A.  And I lived there until I was 19.
4      Q.  Have you spent time in Austin at all?
5      A.  Oh, yes, I've been here. I -- I've been here
6  several times. I -- I belong to an organization, the
7  LULAC organization. And so I've been here a lot of
8  times and, of course, with the Legislatures.
9      Q.  Lobbying at the Capitol?
10     A.  Well, talking to the --
11     Q.  Not lobbying but talking --
12     A.  Talking, yes.
13     Q.  So you've -- you've had a lot of community
14 involvement?
15     A.  Yes.
16     Q.  And did you do anything to prepare for this
17 deposition today?
18     A.  No.
19     Q.  Okay. Did you bring any documents with you?
20     A.  No.
21     Q.  In response to the notice?
22     A.  No.
23     Q.  Okay. And you have intervened in this
24 lawsuit. Do you understand what it means to be an
25 intervenor?

Page 5

1      A.  To be part of the case.
2      Q.  And that you're participating essentially as a
3  party in the case?
4      A.  Right.
5      Q.  Okay. Now, without going into the content of
6  any conversations you might have had with your lawyers,
7  can you tell me a little bit about how you came to be
8  in this lawsuit?
9      A.  Well, Mr. Garza, you know, interviewed me to
10 see if I qualified for this and since I do a lot of
11 work with -- with Legal Aid on -- on certain issues and
12 the Voting Rights Act, I agreed to come, since I am
13 acquainted with a lot of issues pertaining to the
14 Voting Rights Act.
15     Q.  Okay. And what in particular interested you
16 in intervening in this case?
17     A.  Well, of course, Section 5, the protection of
18 Section 5.
19     Q.  And can you tell me what -- as you understand
20 it what protections Section 5 provides?
21     A.  Well, I think it's a good process to go
22 through the Department of Justice and that way
23 there's -- there's -- there's a checkbook there that if
24 something is not -- is not presented, then it can go
25 against you or it can go for you. So I think it's --

2  (Pages 2 to 5)

FREDERICKS-CARROLL REPORTING
AUSTIN (512) 477-9911 - HOUSTON (713) 572-8897 - SAN ANTONIO (210) 222-9161

**Page 6**

1  it should be and it should stay as -- as it is.
2      Q.  Okay.  Do you know if there are other parts of
3  the Voting Rights Act besides Section 5 which require
4  minority voting rights to be protected?
5      A.  Well, yes, Section 2, of course.  I mean, of
6  course, I just learned today about the bailout.
7      Q.  Okay.
8      A.  I wasn't aware of it.
9      Q.  And, you know, after -- after listening today
10  you understand that bailout permits a community that
11  might be covered by Section 5 to get out of the Section
12  5 preclearance process.  Do you understand that?
13      A.  Right.  I understood the lawsuit.
14      Q.  And do you understand that even if the
15  community does that, it is still under Section 2, it
16  has to comply with Section 2?
17      A.  I understand -- do understand that.
18  The only thing is my opinion is that I -- you know,
19  the -- the fact remains is -- the State of Texas has a
20  very bad record of -- of -- in that section, so that's
21  one of the reasons that we -- that was created, Section
22  5 or Section 2, so I think it should stay.
23      Q.  So --
24      A.  And if you bail out, well, it should provide
25  it, because it's in there.  But then, you know, that's

**Page 7**

1  why it's been challenged.
2      Q.  Okay.  So -- so you think that in Texas,
3  generally, there's a history --
4      A.  Of course, I'm a Texan.  I know what's going
5  on in Texas and, of course, nationally there's other
6  problems, too, but...
7      Q.  If a -- if a particular community in Texas
8  that were able to show that in that one community they
9  had a history of complying with Section 2 and the
10  Voting Rights Act, would you be opposed to that
11  particular community bailing out, even if the rest of
12  the state remains covered?
13      A.  I don't think I would be opposed, but I don't
14  think you could ever show me a community that has done
15  a good job.  So that's my opinion.
16      Q.  Okay.  And you've -- you said you'd never been
17  in the district, so I guess it's fair to say you've
18  never voted in the district?
19      A.  No, I have never voted in this district.
20      Q.  And do you know anyone who lives there that
21  you know of?
22      A.  No, not really.  I would have to -- no, I know
23  a lot of people in Austin, but most of them live in the
24  south part of Austin.  But I imagine I -- I would know
25  someone.  I know a lot of people, but, no, I don't.

**Page 8**

1      Q.  Okay.  So you might know someone, but you
2  don't know --
3      A.  Right.
4      Q.  -- that they live in the district?
5      A.  Right.
6      Q.  So you don't -- you're not complaining of any
7  particular problems with voting --
8      A.  Not in your district.
9      Q.  -- in the district?
10      A.  Not in your district.  I can give testimony in
11  other districts.
12      Q.  Okay.  And do you know anything about the
13  district's views on participation by voters in the
14  district?
15      A.  No, sir.  No, sir.  I don't.
16      Q.  Okay.  And what -- what is your understanding
17  of what the district is trying to do in this lawsuit?
18      A.  Well, I think that the district is seeking not
19  to go through preclearance, and like in Section 5 and
20  so that's the reason that I think it's being
21  challenged.
22      Q.  Okay.  So you understand that the district is
23  asking for bailout for itself?
24      A.  Right.  Right.
25      Q.  And that the district would stay --

**Page 9**

1      A.  And it would be a very dangerous precedent for
2  the community.
3      Q.  Okay.
4      A.  And that's my opinion.
5      Q.  Okay.  Why do you think it would be dangerous?
6      A.  Because then, you know, you set a precedence
7  and anybody else can use it all over the nation.
8      Q.  Okay.  But you also understand that the
9  district, if it were able to bail out, would still be
10  covered by Section 2?
11      A.  Oh, yeah.
12      Q.  And the rest of the Voting Rights Act?
13      A.  I do.
14      Q.  Can we go off the record?
15          (Discussion off the record)
16      Q.  (By Mr. Ward)  Okay.  We can go back on.  Do
17  you know if any other communities around the country
18  have ever bailed out?
19      A.  No, sir.
20      Q.  Okay.
21      A.  I've done a -- I've gone with other
22  communities that's gone to Section 5 and been very
23  successful.  I can give testimony to that.
24      Q.  So you've -- you've participated in the
25  Section 5 process for other communities?

3  (Pages 6 to 9)

## Page 10

1    A.  Yeah.  The aquifer, for instance.
2    Q.  And how did you participate in that?
3    A.  We were -- really, the course we're advocating
4  as -- as the organization, the LULAC organization, that
5  we felt we needed to have the preclearance for
6  redistricting and -- and then have it by districts
7  instead of at large.
8    Q.  Okay.  Going back a little bit, you said
9  you're not aware that other communities have used the
10  bailout process?
11    A.  No.
12    Q.  But if I were to tell you there are, I think,
13  about a dozen counties, mostly in Virginia, counties
14  and cities who have taken advantage of bailout, would
15  that concern you?
16    A.  Yes.
17    Q.  That they've already done it?
18    A.  If they've already done it, yeah.  It would
19  concern me.  12 counties in --
20    Q.  About.  Mostly in Virginia.
21    A.  In Virginia?
22    Q.  And would it surprise you, though, if I said
23  that those are the only counties, just about 12 or 13,
24  communities that have taken advantage of bailout for --
25  in the last 25 years that it's been available to them?

## Page 11

1    A.  No, it wouldn't surprise me.  It's --
2    Q.  It would not surprise you?
3    A.  The United States is a big -- big country.
4  And you have only 12 counties in Virginia that have
5  bailed out, and it must mean involvement in community
6  so it's -- it's not surprising.
7    Q.  Okay.  So you -- you would --
8    A.  I am shocked, maybe, but it's not surprising.
9    Q.  You're shocked that there are that few?
10    A.  Yes.
11    Q.  Okay.  Do you think maybe that indicates
12  that --
13    A.  I don't know.  You tell me.
14    Q.  Let me -- let me start that question over.  If
15  there are only about 12 or so counties that have done
16  it in 25 years, does that relieve any of your concern
17  about a bad precedent?
18    A.  Well, certainly it would -- I mean, it's very
19  few, so it shows that Section 5 was -- is very
20  important and probably has not been utilized as it
21  should in those 12 counties.  So I don't think it's a
22  good record.
23    Q.  Okay.  But it -- but it doesn't indicate that
24  there are -- there are hundreds and hundreds of
25  communities --

## Page 12

1    A.  No, of course not.
2    Q.  -- waiting to do this?
3    A.  From -- it must be a good process.
4    Q.  Okay.  I think that's all I have, then.  Thank
5  you so much --
6    A.  You're very welcome.
7    Q.  -- for coming up here.
8    A.  You're very welcome.
9        MR. WARD:  And we can go off the record.
10  Thanks.
11        (Deposition concluded at 9:45 a.m.)

## Page 13

1        CHANGES AND CORRECTIONS
2  WITNESS NAME: ANGELA GARCIA  DATE: _____
3  Reason Codes:  (1) to clarify the record; (2) to
  conform to the facts; (3) to correct a transcription
4  error; (4) other (please explain).
5  PAGE LINE  CHANGE          REASON CODE
6  _____
7  _____
8  _____
9  _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
20  _____
21  _____
22  _____
23  _____
24  _____
25  _____

4  (Pages 10 to 13)

## Page 14

```
   PAGE LINE  CHANGE              REASON CODE
 1 _____
 2 _____
 3 _____
 4 _____
 5 _____
 6 _____
 7 _____
 8
 9                _____
              ANGELA GARCIA
10
11
12 THE STATE OF _____ )
13 COUNTY OF _____ )
14   Before me, _____, on this day personally
     appeared ANGELA GARCIA, known to me (or proved to me
15   under oath or through
     _____
16 (description of identity card or other document)) to be
     the person whose name is subscribed to the foregoing
17 instrument and acknowledged to me that they executed
     the same for the purposes and consideration therein
18 expressed.
19   Given under my hand and seal of office this
     _____ day of March 2007.
20
21              _____
              NOTARY PUBLIC IN AND FOR
22            THE STATE OF _____
23
24
25
```

## Page 15

```
 1        IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF COLUMBIA
 2
   NORTHWEST AUSTIN        )
 3 MUNICIPAL UTILITY DISTRICT )
   NUMBER ONE,             )
 4 401 W. 15th Street      )    CIVIL ACTION NO.
   Suite 850               )
 5 Austin, Texas 78701     )    1:06-CV-01384
        Plaintiff,  )    (DST,PLF,EGS)
 6 v.                      )
                           )
 7 ALBERTO GONZALES,       )
   ATTORNEY GENERAL OF THE )
 8 UNITED STATES,          )
   U.S. Department of Justice )
 9 950 Pennsylvania Avenue NW )
   Washington, D.C. 20530  )
10
         REPORTER'S CERTIFICATION
11      DEPOSITION OF ANGELA GARCIA
          Wednesday, February 28, 2007
12
13    I, RANDALL N. FINCH, Certified Shorthand
14 Reporter in and for the State of Texas, hereby certify
15 to the following:
16    That the witness, ANGELA GARCIA, was duly
17 sworn by the officer and that the transcript of the
18 oral deposition is a true record of the testimony given
19 by the witness.
20    That the deposition transcript was submitted
21 on March 2, 2007 to the witness or to the attorney for
22 the witness for examination, signature and return to me
23 by _____, 2007.
24    That the amount of time used by each party at
25 the deposition is as follows:
```

## Page 16

```
 1    Mr. Christian J. Ward - 12 minutes
 2    Mr. Jose Garza - 0 minutes
 3    That pursuant to information given to the
 4 deposition officer at the time said testimony was
 5 taken, the following includes counsel for all parties
 6 of record:
 7    Mr. Christian J. Ward, attorney for Plaintiff
 8    Mr. Jose Garza, attorney for Texas Rio Grande
 9 Legal Aid, Inc.
10    Mr. Chris Herren and Ms. Christy A. McCormick,
11 attorneys for U.S. Department of Justice
12    I further certify that I am neither counsel
13 for, related to, nor employed by any of the parties or
14 attorneys in the action in which this proceeding was
15 taken, and further that I am not financially or
16 otherwise interested in the outcome of the action.
17    Certified to by me this 1st day of March, 2007.
18            _____
            RANDALL N. FINCH, Texas CSR #504
19          Expiration date: 12/31/2008
            Fredericks-Carroll Reporting
20          Firm Registration No. 82
            7800 Shoal Creek Blvd., Suite 200-W
21          Austin, Texas 78757 (512) 477-9911
22
23
24
25
```

5  (Pages 14 to 16)

cc80d82c-b56a-4c70-8ce9-ba6dd68e0512