Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NORTHWEST AUSTIN | ) | |
| MUNICIPAL UTILITY DISTRICT | ) | |
| NUMBER ONE, | ) | |
| 401 W. 15th Street | ) | CIVIL ACTION NO. |
| Suite 850 | ) | |
| Austin, Texas 78701 | ) | 1:06-CV-01384 |
| Plaintiff, | ) | (DST,PLF,EGS) |
| | ) | |
| v. | ) | |
| | ) | |
| ALBERTO GONZALES, | ) | |
| ATTORNEY GENERAL OF THE | ) | |
| UNITED STATES, | ) | |
| U.S. Department of Justice | ) | |
| 950 Pennsylvania Avenue NW | ) | |
| Washington, D.C. 20530 | ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*
ORAL DEPOSITION OF
NATHANIEL LESANE
Monday, February 26, 2007
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

ORAL DEPOSITION OF NATHANIEL LESANE, produced as a witness at the instance of the Plaintiff and duly sworn, was taken in the above-styled and numbered cause on the 26th day of February, 2007, from 3:28 p.m. to 4:01 p.m., before RANDALL N. FINCH, Certified Shorthand Reporter in and for the State of Texas, reported by computerized stenotype machine at the offices of Weil, Gotshal & Manges, LLP, 8911 Capital of Texas Highway, Suite 1350, pursuant to the Federal Rules of Civil Procedure and the provisions stated on the record or attached hereto.

Page 2

```
 1         APPEARANCES
 2 FOR THE PLAINTIFF NORTHWEST AUSTIN MUNICIPAL UTILITY
   DISTRICT NO. ONE:
 3
      Mr. Gregory S. Coleman
 4       -and-
      Mr. Christian J. Ward
 5   WEIL, GOTSHAL & MANGES, LLP
      8911 Capital of Texas Highway
 6    Building One, Suite 1350
      Austin, Texas 78759  (512) 349-1937
 7           (512) 527-0698 Fax
 8 FOR THE MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATION
   FUND (MALDEF):
 9
      Ms. Nina Perales
10       -and-
      Mr. Diego Bernal
11    Attorney at Law
      110 Broadway, Suite 300
12    San Antonio, Texas 78205  (210) 224-5476
             (210) 224-5382 Fax
13
   FOR THE U.S. DEPARTMENT OF JUSTICE, CIVIL RIGHTS
14 DIVISION:
15    Mr. Chris Herren
         -and-
16    Ms. Christy A. McCormick
      950 Pennsylvania Avenue, N.W., Room 7246
17    Washington, D.C. 20530  (202) 305-0609
             (202) 327-3961 Fax
18
   FOR THE LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW:
19
      Mr. Benjamin Blustein
20    Staff Attorney, Voting Rights Project
      1401 New York Avenue, NW, Suite 1400
21    Washington, D.C. 20005  (202) 662-8320
             (202) 628-2858 Fax
22
23
24
25
```

Page 3

```
 1 FOR THE LEWIS INTERVENORS:
 2    Mr. Samuel Spital
      HOLLAND & KNIGHT, LLP
 3    195 Broadway, 24th Floor
      New York, New York  10007-3189  (212) 513-3454
 4           (212) 385-9010 Fax
 5 FOR THE WITNESS NATHANIEL LESANE:
 6    Mr. Jeremy Wright
      KATOR, PARKS & WEISER, P.L.L.C.
 7    812 San Antonio Street, Suite 100
      Austin, Texas 78701  (512) 312-0600
 8           (512) 477-2828 Fax
 9
10
...
25
```

Page 4

```
 1              NATHANIEL LESANE,
 2 having been first duly sworn, testified as follows:
 3                  EXAMINATION
 4 BY MR. COLEMAN:
 5    Q.  Mr. Lesane, thank you for coming here this
 6 afternoon.  Have you had a deposition taken before?
 7    A.  First time.
 8    Q.  All right.  It's like skydiving.  It's -- you
 9 know, it's always good to do something once.
10    A.  Sure.
11    Q.  Go through it.  You live in the district right
12 now?
13    A.  Yes.
14    Q.  Can you tell me where you live?
15    A.  My address is 9529 Corbe Drive, Austin, Texas,
16 in the Canyon Creek subdivision.
17    Q.  Okay.  How do you like living in Canyon Creek?
18    A.  It's quiet.  I like it.
19    Q.  How long have you been there?
20    A.  We actually moved into the home in July of
21 2000.  So almost seven years, six and a half years or
22 so.
23    Q.  Okay.  Where did you move from?
24    A.  Portland, Oregon.
25    Q.  Okay.  How long did you live in Portland,
```

Page 5

```
 1 Oregon?
 2    A.  About 13 and a half years.
 3    Q.  And before that?
 4    A.  Phoenix, Arizona.
 5    Q.  How long were you in Phoenix?
 6    A.  Three and a half years.
 7    Q.  What did you do in Phoenix?
 8    A.  I was an engineer with Intel Corporation.
 9    Q.  Does that also explain Portland, then?
10    A.  Yeah.
11    Q.  The whole time?
12    A.  Yeah.
13    Q.  Okay.  And before Phoenix?
14    A.  Austin.
15    Q.  All right.  Also Intel?
16    A.  Intel, Texas Instruments, and I went to
17 college at St. Edward's University.
18    Q.  Okay.  So your college and adult life has been
19 Austin, Phoenix, Portland and Austin?
20    A.  Correct.
21    Q.  Did -- did you grow up in the Austin area or
22 come here before --
23    A.  I grew up in south Florida.
24    Q.  Do you remember what county?
25    A.  St. Lucie County.
```

2 (Pages 2 to 5)

Page 6

1    Q.  Okay.  Do you consider yourself to be somebody
2  who is pretty involved in the community?
3    A.  Not really.  The only involvement I've had
4  since I've been here, since -- I voluntarily left Intel
5  and -- is with my kids' schools.
6    Q.  Okay.  So you're no longer with Intel now?
7    A.  Correct.
8    Q.  What are you doing now?
9    A.  I'm basically retired.
10   Q.  Basking in the glow of --
11   A.  Basking in the glow of.
12   Q.  All right.  Now, are you active now in your
13  kids' schools?
14   A.  Not at this particular moment.
15   Q.  Okay.  Say in the -- in the past 10 years have
16  you been active in any nonprofit organizations?
17   A.  No.
18   Q.  Elected politics?
19   A.  No.
20   Q.  Okay.  Let's see.  You moved in you say in
21  July of 2000?
22   A.  Correct.
23   Q.  Okay.  That would have been after the 2000 MUD
24  elections.  You don't recall?
25   A.  I don't.

Page 7

1    Q.  Okay.  In the 2006 district elections, did you
2  participate in those elections?
3    A.  Yes.
4    Q.  Okay.  And what was your participation?
5    A.  I voted in the general elections for local
6  politicians as well as national.
7    Q.  And you voted at that elementary school?
8    A.  There are a number of places that you can
9  vote.  And I voted early at one of the locations near
10  the HEB at 2222 and 620, near our home.
11   Q.  How did that -- voting early, is that
12  convenient?
13   A.  Yes.
14   Q.  Okay.  There weren't any problems with being
15  able to vote at the -- at the grocery store?
16   A.  No.
17   Q.  Okay.  How about the 2004 election?
18   A.  The presidential election?
19   Q.  Well, that would have been in the fall of
20  2004, so I am asking -- I guess right now more the
21  May --
22   A.  You mean the --
23   Q.  Yes, the May election, which would have been
24  more local, including the MUD elections.
25   A.  I don't recall voting in -- particularly for

Page 8

1  any MUD related items.
2    Q.  Do you recall whether you did vote in that
3  particular election?
4    A.  I don't recall.
5    Q.  Did you vote in the presidential election?
6    A.  Yes.
7    Q.  Okay.  And did you early vote then?
8    A.  I don't recall.
9    Q.  But again, no -- no issues or problems with --
10   A.  No issues.
11   Q.  -- the election?  I'm cheating and doing this
12  in reverse order, sort of get -- going backwards, but
13  let me take you back to the 2002 election.  Did you
14  vote in the district election?
15   A.  Yes.
16   Q.  Okay.  And that would have been the one at
17  Mr. Stuber's house?  Do you recall?
18   A.  No.
19   Q.  Let me -- let me get some clarification, then.
20  You voted that year in a -- in a local election?
21   A.  I voted in a local election.  I don't
22  recall -- when I voted I think it was at the elementary
23  school.
24   Q.  Okay.
25   A.  Canyon Creek Elementary.

Page 9

1    Q.  Okay.  So -- and then you did not separately
2  go to the Stubers' house for the district election?
3    A.  I don't recall doing that.
4    Q.  Do you recall knowing about it or --
5    A.  No.
6    Q.  Okay.  Are you familiar with the tax issue
7  that the district has had with the City of Austin?
8        MR. WRIGHT:  Objection.  That's kind of
9  vague.
10   Q.  (By Mr. Coleman)  I'm sorry.  Are you familiar
11  with the lawsuit, that the district sued against the
12  City of Austin over tax issues?
13   A.  I'm familiar with a lawsuit.
14   Q.  Okay.  What -- what can you tell me or what is
15  your knowledge of that lawsuit?
16   A.  It's -- it has to do with some MUD related
17  fees from a while ago, so I'm not really up on the
18  details of it all, but I know there is something going
19  on and what is going on.
20   Q.  Okay.  And you are obviously aware of this
21  lawsuit.
22   A.  Mm-hmm.
23   Q.  Having intervened into it.  Tell me a little
24  bit about how you came to be associated with this
25  lawsuit.

3 (Pages 6 to 9)

Case 1:06-cv-01384-PLF-EGS-DST    Document 99-28    Filed 05/15/2007    Page 4 of 8

Page 10

1    A.  Can I mention Lisa's name?
2        MR. WRIGHT:  I object to anything that's
3    covered by the attorney-client privilege.
4        MR. COLEMAN:  Well, I'm entitled to know
5    who he has spoken to and when, without knowing the --
6    necessarily the content of that conversation.  So if...
7        MR. WRIGHT:  I -- I can direct the
8    deponent to answer with regard to which attorneys he
9    spoke to.
10       THE WITNESS:  Okay.  I spoke to Lisa
11   Graybill, and I think it was the end of October,
12   beginning of November of last year, 2006.
13   Q.  (By Mr. Coleman) Okay.  And did these
14   individuals call you on the telephone?  Again, without
15   what any individual said, but did they call on the
16   telephone, come to the house?
17   A.  They came to my home.
18   Q.  All right.  And again, without disclosing the
19   conversations themselves, after some discussion you
20   made a determination to come into this lawsuit as an
21   intervenor?
22   A.  Correct.
23   Q.  Okay.  Okay.  Again, in your own words, you --
24   tell me why you joined this lawsuit.
25   A.  Basically, the right to vote has been

Page 11

1    long-fought, hard-fought.  And after listening to Lisa
2    explaining the situation, I came to the conclusion that
3    any changes in the Voting Rights Bill, or that section
4    of the Voting Rights Bill that the MUD is looking to
5    have removed, just doesn't seem right under the --
6    under any circumstance.
7    Q.  And can you tell me to the best of your
8    ability what -- what your understanding is of what the
9    district wants to do with -- with the lawsuit?
10   A.  All that I understand is that there is a
11   section of the Voting Rights Bill that basically
12   requires a district to have -- as I recall, to have --
13   let's see, I guess Section 5 that -- that requires
14   review by the federal government if they want to have
15   that section removed.
16   Q.  When you say to have -- to have that section
17   removed, I'm -- I'm not sure I understood that.
18   A.  There's a -- I think it's Section 5 of the
19   Voting Rights Bill.
20   Q.  Okay.
21   A.  Well, my understanding is that that section
22   requires review by federal government if there are
23   changes to be made within the district.
24   Q.  Okay.  Do you happen to know whether that was
25   something that was in force when you lived in Portland,

Page 12

1    Oregon?
2    A.  I don't remember any -- any specific things
3    going on in Portland related to voting rights.
4    Q.  Okay.  How about Phoenix?
5    A.  That was a long time ago.  I don't remember
6    anything.
7    Q.  Okay.  Let me go back to your understanding of
8    Section 5 just a little bit.  Do you understand that
9    the Voting Rights Act may have, you know, a variety of
10   sections in it that do different things?
11   A.  I'm sure.
12   Q.  And do you understand that some of those
13   sections require governmental entities to -- to make
14   sure that the voting is available for everybody, that
15   there's no discrimination in voting, that is separate
16   from the -- what we call Section 5, the federal
17   government review?
18   A.  As much as I can understand, yes.
19   Q.  Okay.  And I -- and I just want to make sure
20   and ask, do you understand that what the -- what the
21   district is seeking to do doesn't affect any of those
22   other sections that re -- that require, you know, that
23   all -- these governmental entities to -- to be fair in
24   their elections and to not discriminate against
25   anybody, to make sure that everybody can exercise their

Page 13

1    right to vote?
2    A.  The only thing that I understand is what
3    appears to be related to Section 5 of the Voting
4    Rights -- Voting Rights Act.
5    Q.  Okay.  So you do, then, understand the
6    difference between some sections and the -- the Section
7    5 that's at issue here?
8    A.  I am not an expert on that -- on the voting --
9    on the Voting Rights Bill, but, you know, just specific
10   to this particular section.
11   Q.  Okay.  Mr. Lesane, did you bring any documents
12   today with you?
13   A.  No.
14       MR. COLEMAN:  Do you know -- did we --
15   are there any?
16       MR. WRIGHT:  He was provided with a --
17   the notice and there are no responsive documents.
18       MR. COLEMAN:  Okay.  I just wanted to
19   check.  Thank you.
20   Q.  (By Mr. Coleman) Mr. Lesane, I would like to
21   just follow up a little bit with my questioning.  And
22   I -- you voted in several recent elections.
23   A.  Mm-hmm.
24   Q.  And I want to make sure that I understand the
25   basis of why you're in the lawsuit.  And you've

FREDERICKS-CARROLL REPORTING
AUSTIN (512) 477-9911 - HOUSTON (713) 572-8897 - SAN ANTONIO (210) 222-9161

83d8bfcc-c813-48ea-a59c-ff394efcc8c0

Page 14

1  indicated that you have a feeling that Section 5 should
2  not be changed or there shouldn't be any changes
3  relating to Section 5. Setting that aside, I want to
4  talk a little bit, just to make sure, when you voted in
5  2006, you felt you were able to vote fine, there were
6  no problems with the -- with voting that year. Right?
7     A.  Correct.
8     Q.  And you've not -- you've not alleged any
9  discrimination or improper voting procedures with
10 regard to that election. Is that right?
11    A.  Correct.
12    Q.  Is the same true of 2004?
13    A.  Correct.
14    Q.  And 2002?
15    A.  Correct.
16    Q.  2000, if -- I know -- if you voted in an
17 election in 2000?
18    A.  I tend to vote in every general election. So,
19 yes.
20    Q.  And if I may, I know you were in Portland in
21 1998, but is the same true there?
22    A.  Correct.
23    Q.  Okay. Do you know any of the members of the
24 board of the district, of the --
25    A.  The MUD?

Page 15

1     Q.  The -- the MUD district?
2     A.  No, I do not.
3     Q.  Have you been to any board meetings?
4     A.  I have not been to any board meetings. I've
5  only been to homeowners' association meetings where
6  board issues -- I mean MUD issues have been discussed.
7     Q.  What -- what homeowner meetings have you been
8  to? Back -- let me back up. About how many -- in the
9  nearly seven years you've been in the district, about
10 how many homeowner meetings have you been to?
11    A.  Probably at most three or four.
12    Q.  Okay. Have you been any -- to any in the last
13 year or two?
14    A.  Within the last two years, but not -- I don't
15 think in the last year, no.
16    Q.  So maybe in like 2005?
17    A.  Yes.
18    Q.  What -- do you have any recollection of that
19 meeting or what the issues might have been?
20    A.  In particular it had to do with the -- the
21 lawsuit. One of the items on -- on the agenda was
22 discussion about what was happening with the lawsuit.
23    Q.  Mm-hmm.
24    A.  Against the MUD.
25    Q.  Against them?

Page 16

1     A.  Against the -- against Austin.
2     Q.  Against the City of Austin?
3     A.  Yes.
4     Q.  Do you know why that would have been on the
5  homeowners' association agenda?
6     A.  No, I don't.
7     Q.  Is it -- would it have just been because
8  people in the district are interested in what's
9  happening to that?
10    A.  I would believe so.
11    Q.  Do most of the homeowners hope that the
12 district wins that lawsuit?
13    A.  I -- I can't tell you.
14    Q.  It would be a good thing to get a thousand
15 dollars off your taxes each year, though. Right?
16    A.  Sure.
17    Q.  Okay. Any of the prior homeowners meetings
18 that you went to, were -- were there other district --
19 MUD district issues in those or is that the one you're
20 talking about?
21    A.  This is the one -- this is the only one that I
22 recall.
23    Q.  Okay. I want to go back. You've not attended
24 any of the district meetings. I think you said that.
25 Is that right?

Page 17

1     A.  Correct.
2     Q.  And do you know the names of or know by sight
3  any of the members of the district board of directors?
4     A.  No, I do not.
5     Q.  Okay. And to your knowledge have not had any
6  interaction with any of those individuals?
7     A.  Not to my knowledge, I have not.
8     Q.  You -- do you know Don Zimmerman?
9     A.  Yeah, I know Don.
10    Q.  Okay. Don is on the board.
11    A.  Okay.
12    Q.  Do you know Bill Ferguson?
13    A.  I don't know him.
14    Q.  Do you know Ed Swarthout?
15    A.  No, I do not. Can I clarify?
16    Q.  Sure. Of course.
17    A.  Don Zimmerman, I know of him. I think he ran
18 for an election, or was running for --
19    Q.  The House --
20    A.  Not related to MUD.
21    Q.  The House District 50?
22    A.  Yes.
23    Q.  Okay.
24    A.  And I met him. I think he was walking through
25 the neighborhood.

5 (Pages 14 to 17)

Page 18

1   Q.  Okay.  Is that the only time --
2   A.  Yes.
3   Q.  -- you would have met him?
4   A.  That's the only time.
5   Q.  Only time you would have talked to him or had
6   any communications with him?
7   A.  Correct.
8   Q.  Do you know George Frederickson?
9   A.  No, I do not.
10  Q.  Do you know Alan Weiss?
11  A.  No.
12  Q.  Karen Temborius?
13  A.  No.
14  Q.  If we can go off the record for a few
15  minutes...
16       (Recess from 3:53 to 3:55 p.m.)
17  Q.  (By Mr. Coleman)  Mr. Lesane, I'm -- in just
18  reviewing my notes, we talked a little bit about
19  elections and things like that.
20  A.  Mm-hmm.
21  Q.  And I just want to clarify the record on this.
22  Given your involvement in elections and absence of any
23  complaint about the way that they've been done and --
24  here or in other places where you've lived, would it be
25  safe to say that your involvement in this suit is not a

Page 19

1   disagreement with anything that's happened in elections
2   in the district, but is a -- a philosophical feeling
3   that Section 5 ought to be left alone?
4   A.  Correct.
5   Q.  Let me follow up.  With respect to Section 5,
6   are you familiar with a part of the law that allows a
7   governmental entity to say, "We have been living up to
8   the Voting Rights Act, and so at some point we should
9   not have to submit to the federal government for review
10  anymore"?  Are you familiar with that section
11  generally?
12  A.  That is Section 5.
13  Q.  Okay.
14  A.  As I understand it.
15  Q.  Okay.  And so let -- let me clarify.  Is -- is
16  your feeling that an entity like the district, if it
17  could show that it's acted responsibly for a period of
18  years, that it should not be exempted from further
19  federal review?
20  A.  Could you re --
21       MR. WRIGHT:  I'm going to object.  Sort
22  of a vague question.
23       MR. COLEMAN:  Well, I'm just asking --
24  okay.
25       MR. WRIGHT:  I mean, he's not an

Page 20

1   attorney.  I don't think he --
2       MR. COLEMAN:  No, I --
3       MR. WRIGHT:  -- could follow that
4   question.
5   Q.  (By Mr. Coleman)  You understand that there is
6   a section that lets government entities out from
7   federal review after a period of time.  At all -- are
8   you -- are you or are you not --
9   A.  I'm not.
10  Q.  -- at all familiar with --
11  A.  Not familiar.
12  Q.  Okay.
13      MR. COLEMAN:  Okay.  Could we go back?  I
14  just wanted to see his answer to the question before
15  that.
16      (Discussion off the record)
17  Q.  (By Mr. Coleman)  Okay.  You don't know
18  whether a governmental entity can stop submitting
19  things for review by the federal government after a
20  period of time or after making some showing to the
21  federal government or not?
22  A.  I do not know that.
23  Q.  Okay.  If I were to tell you that a procedure
24  like that exists, that an entity could go and say,
25  "Here's some paperwork.  We've been doing things okay,"

Page 21

1   is -- would you object to entities being allowed to do
2   that or is your objection simply to trying to get out
3   from under the federal review at all?
4       MR. WRIGHT:  Objection.  It's vague and
5   calls for speculation.
6   Q.  (By Mr. Coleman)  You can answer that if you
7   can understand it.
8   A.  I understand.  And my answer would be the
9   latter.
10  Q.  And the latter being...
11  A.  Object to the ability to get out of that
12  review.
13  Q.  At all?
14  A.  At all.
15  Q.  Under any circumstances?
16  A.  Under any circumstance.
17      MR. COLEMAN:  I pass the witness.
18      MR. WRIGHT:  No questions.
19      MS. PERALES:  I have no questions.
20      MR. HERREN:  No questions.
21      MR. COLEMAN:  Mr. Lesane, thanks for
22  coming today.
23      THE WITNESS:  Sure.
24      (Deposition concluded at 4:01 p.m.)
25

6 (Pages 18 to 21)

Page 22

(blank page, lines 1–25)

Page 23

```
            CHANGES AND CORRECTIONS
1
2  WITNESS NAME: NATHANIEL LESANE    DATE: _____
3  Reason Codes:  (1) to clarify the record; (2) to
   conform to the facts; (3) to correct a transcription
4  error; (4) other (please explain).
5  PAGE  LINE  CHANGE                   REASON CODE
6  _____
7  _____
8  _____
9  _____
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20 _____
21 _____
22 _____
23 _____
24 _____
25 _____
```

Page 24

```
1  PAGE  LINE  CHANGE              REASON CODE
2  _____
3  _____
4  _____
5  _____
6  _____
7
8
9           _____
            NATHANIEL LESANE
10
11
12  THE STATE OF _____)
                          )
13  COUNTY OF _____)
14    Before me, _____, on this day personally
    appeared NATHANIEL LESANE, known to me (or proved to me
15  under oath or through
    _____
16  (description of identity card or other document)) to be
    the person whose name is subscribed to the foregoing
17  instrument and acknowledged to me that they executed
    the same for the purposes and consideration therein
18  expressed.
19    Given under my hand and seal of office this
    _____ day of March 2007.
20
21      _____
        NOTARY PUBLIC IN AND FOR
22      THE STATE OF _____
23
24
25
```

Page 25

```
1         IN THE UNITED STATES DISTRICT COURT
2           FOR THE DISTRICT OF COLUMBIA
3
    NORTHWEST AUSTIN         )
4   MUNICIPAL UTILITY DISTRICT )
    NUMBER ONE,              )
5   401 W. 15th Street       )   CIVIL ACTION NO.
    Suite 850                )
6   Austin, Texas 78701      )   1:06-CV-01384
            Plaintiff,  )       (DST,PLF,EGS)
7   v.                       )
                             )
8   ALBERTO GONZALES,        )
    ATTORNEY GENERAL OF THE  )
9   UNITED STATES,           )
    U.S. Department of Justice )
10  950 Pennsylvania Avenue NW )
    Washington, D.C. 20530   )
11
            REPORTER'S CERTIFICATION
12         DEPOSITION OF NATHANIEL LESANE
            Monday, February 26, 2007
13
14    I, RANDALL N. FINCH, Certified Shorthand
15  Reporter in and for the State of Texas, hereby certify
16  to the following:
17    That the witness, NATHANIEL LESANE, was duly
18  sworn by the officer and that the transcript of the
19  oral deposition is a true record of the testimony given
20  by the witness;
21    That the deposition transcript was submitted
22  on March 1, 2007 to the witness or to the attorney for
23  the witness for examination, signature and return to me
24  by _____, 2007.
25    That the amount of time used by each party at
```

Page 26

1  the deposition is as follows:
2         Mr. Gregory S. Coleman - 29 minutes
3         Ms. Nina Perales - 0 minutes
4         Mr. Samuel Spital - 0 minutes
5         Mr. George Korbel - 0 minutes
6         That pursuant to information given to the
7  deposition officer at the time said testimony was
8  taken, the following includes counsel for all parties
9  of record:
10        Mr. Gregory S. Coleman, attorney for Plaintiff
11        Ms. Nina Perales, attorney for MALDEF
12        Mr. George Korbel, attorney for Texas Rio
13 Grande Legal Aid, Inc.
14        Mr. Chris Herren, attorney for USDJ
15        Mr. Benjamin Blustein, attorney for Lawyers'
16 Committee for Civil Rights Under Law
17        I further certify that I am neither counsel
18 for, related to, nor employed by any of the parties or
19 attorneys in the action in which this proceeding was
20 taken, and further that I am not financially or
21 otherwise interested in the outcome of the action.
22    Certified to by me this 1st day of March, 2007.
23    _____
       RANDALL N. FINCH, Texas CSR #504
24     Expiration date:  12/31/2008
       Fredericks-Carroll Reporting
25     Firm Registration No. 82
       7800 Shoal Creek Blvd., Suite 200-W

Page 27

1         Austin, Texas 78757 (512) 477-9911

2

FREDERICKS-CARROLL REPORTING
AUSTIN (512) 477-9911 - HOUSTON (713) 572-8897 - SAN ANTONIO (210) 222-9161

83d8bfcc-c813-48ea-a59c-ff394efcc8c0