IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

NORTHWEST AUSTIN MUNICIPAL

UTILITY DISTRICT NUMBER ONE,

401 W. 15th Street, Suite 850

Austin, Texas 78701,                      Civil Action No.

      Plaintiff                        1:06-CV-01384

  vs.

ALBERTO GONZALES, ATTORNEY

GENERAL OF THE UNITED STATES,

U.S. Department of Justice

950 Pennsylvania Avenue, NW

Washington, DC 20530,

      Defendant

_____/

      The deposition of NICOLE LOUIS was held on Thursday, March 1st, 2007, commencing at 10:10 a.m. at the Law Offices of Weil, Gotshal, & Manges, LLP, 1300 Eye Street, N.W., Suite 900, Washington, D.C., before Steven Poulakos, Notary Public.


REPORTED BY: Steven Poulakos

Page 2

```
 1   APPEARANCES:
 2
 3      On behalf of Plaintiff:
 4         GREGORY S. COLEMAN, ESQUIRE
 5         Weil, Gotshal & Manges, LLP
 6         8911 Capital of Texas Highway
 7         Building One, Suite 1350
 8         Austin, Texas 78759
 9         512-349-1937
10         greg.coleman@weil.com
11
12      On behalf of The Lewis':
13         SAMUEL SPITAL, ESQUIRE
14         Holland & Knight
15         195 Broadway
16         24th Floor
17         New York, New York 10007-3189
18         212-513-3454
19         samuel.spital@hklaw.com
20
21   (Appearances continued on next page.)
```

Page 3

```
 1   APPEARANCES continued:
 2
 3      On behalf of Intervenors:
 4         KRISTEN CLARKE, ESQUIRE
 5         LDF
 6         1444 Eye Street, N.W.
 7         10th Floor
 8         Washington, D.C. 20005
 9         202-682-1300
10
11   BY TELEPHONIC COMMUNICATION:
12
13      On behalf of Defendant:
14         RICHARD DELLHEIM, ESQUIRE
15         Department of Justice
16         950 Pennsylvania Avenue, N.W.
17         Washington, D.C. 20530
18         richard.dellheim@usdoj.gov
19
20
21
```

Page 4

```
 1   Whereupon,
 2              NICOLE LOUIS,
 3   called as a witness, having been first duly sworn to
 4   tell the truth, the whole truth and nothing but the
 5   truth, was examined and testified as follows:
 6         EXAMINATION BY MR. COLEMAN:
 7   Q    Good morning, Ms. Louis.  How are you?
 8   A    Good morning.
 9   Q    Thank you for taking time out of your
10   schedule to come down today.
11        You live inside the Northwest Austin
12   Municipal Utility District Number One; is that correct?
13   A    That is.
14   Q    Your husband gave your address.  How long
15   have you been all been married?
16   A    We've been married, it will be ten years in
17   on September the 27th of this year.
18   Q    I asked your husband to kind of walk
19   through some of the places you've lived.  Mr. Louis
20   testified that you've lived in the district since about
21   I believe June of 1998.
```

Page 5

```
 1        Does that sound about right?
 2   A    Yes, that is correct.
 3   Q    And before that San Jose, California?
 4   A    Yes.
 5   Q    Before that Colorado Springs?
 6   A    Right.  At that time Rodney lived -- those
 7   cities that he's mentioning is where he lived.  I did
 8   not live in those cities.  At the time we were not
 9   married.
10   Q    That's actually what I was trying to get is
11   where the paths diverge and go back.
12        Where did you live before?
13   A    Prior to living in Austin I lived in
14   Louisiana.
15   Q    Where in Louisiana?
16   A    Mararo, which is a city about 10 to
17   15 miles outside of New Orleans.
18   Q    Before that?
19   A    That's it.
20   Q    That's where you grew up?
21   A    I grew up right pretty much a suburb of New
```

Page 6

1  Orleans.
2  Q  I talked with Mr. Louis a little bit about
3  how the two of you came to be involved in the lawsuit.
4  I wanted to ask you a couple of questions about that
5  again. I don't want to ask about any content of any of
6  your conversations with your attorneys, but I'm going
7  to ask you a couple of questions just about the
8  conversations that happened.
9      So if you will be careful not to disclose
10 to me anything that was said between you and your
11 attorneys in these questions.
12 A  Okay.
13 Q  Is it correct to say that you became
14 involved in this lawsuit as a result of a telephone
15 call or telephone calls that you received from
16 attorneys?
17 A  That is correct.
18 Q  And do you recall the name of the person
19 you spoke with first?
20 A  Kristen Avery-Clarke.
21 Q  And Ms. Avery-Clarke is in the room?

Page 7

1  A  Yes.
2  Q  Also your recollection, and I believe your
3  husband testified, that you spoke with Ms. Avery-Clarke
4  first?
5  A  When the call -- yes, initially when she
6  called the house I spoke with her.
7  Q  Do you consider yourself active in the
8  community?
9  A  In the community, which community are you
10 referring to?
11 Q  Where you live inside the district in the
12 Austin area in the community.
13 A  Somewhat.
14 Q  Are you also active with the Holy Cross
15 Catholic Church?
16 A  Yes, I am.
17 Q  Are you active in any schools or entities
18 like that?
19 A  No, I am not.
20 Q  Are you active with any nonprofit
21 organizations or other things like that?

Page 8

1  A  No.
2  Q  Are you active with elective politics for
3  particular candidates or political parties or anything
4  like that?
5  A  No.
6  Q  Do you consider yourself an active voter?
7  Do you tend to more often than not vote during
8  elections that come up?
9  A  Yes, I do vote during the elections.
10 Q  Did you vote in the 2006 Congressional
11 elections?
12 A  I believe so.
13 Q  Did you vote in the 2006 local elections
14 which I think were in May of 2006?
15 A  May of 2006, I believe so.
16 Q  Did you vote on the district board member
17 ballot during that election?
18 A  I cannot recall the district -- can you
19 repeat that question?
20 Q  There were individuals that were running
21 for the board of directors for the district itself who

Page 9

1  would have been on that ballot?
2  A  I'm not sure.
3  Q  Do you recall where that election was or
4  where the polling place would have been that you would
5  have gone to?
6  A  In our neighborhood in the I believe it's
7  Canyon Creek Elementary.
8  Q  You have some recollection of going to the
9  elementary school and voting?
10 A  Yes, that's where they had been. The most
11 recent have been at that location.
12 Q  Did you vote in the 2004 Presidential
13 election?
14 A  Yes, I did.
15 Q  Did you also vote in the 2004 local
16 elections in the spring?
17 A  Yes.
18 Q  Were those also at the Canyon Creek
19 Elementary School?
20 A  I don't think so. I want to say that one
21 of those elections I recall voting at HEB, but I'm not

Towson Reporting Company    GORE BROTHERS    Whitman Reporting-Rockville
410-828-4148                 410-837-3027     301-279-7599

5d82d1b7-8eb7-4a44-ba95-cdfd4e2040f4

Page 10

1  absolute certain of that.
2      Q    And by HEB -- are you talking about --
3      A    That was --
4      Q    -- the early vote?
5      A    That probably was the early voting.
6      Q    Did you vote in the 2002 Congressional
7  election?
8      A    2002, I'm really not sure of that. I can't
9  say I didn't. I may have. I just can't recall.
10     Q    Do you recall voting in the 2002 local
11 elections in the spring?
12     A    I probably did.
13     Q    Did you vote in the district board member
14 elections that spring as well?
15     A    I want to say I did.
16     Q    Do you recall where you voted?
17     A    I believe it was Canyon Creek Elementary.
18     Q    Did you vote anywhere else in 2002, in the
19 spring of 2002?
20     A    2002, I don't recall there being any other
21 location.

Page 11

1      Q    Would you have voted on your own or would
2  you have gone together with Mr. Louis?
3      A    It all depends on what was going on that
4  particular day. Our schedules vary. Sometime he was
5  in town and sometime he wasn't. Not necessarily.
6      Q    Do you recall ever voting in the MUD
7  district board member elections in a private residence?
8      A    No, I do not.
9      Q    You mentioned in one of the elections being
10 able to early vote at the HEB?
11     A    Yes.
12     Q    Is that something that you find to be a
13 convenience to be able to go and vote before election
14 day?
15     A    Yes, most definitely.
16     Q    Would you briefly describe for me again, in
17 your own words, why you decided to join this lawsuit?
18     A    Once I learned what the lawsuit was about I
19 felt that it was necessary for me to take part in it
20 because I am a minority African-American woman.
21          I felt the need to do so simply because I

Page 12

1  didn't want my voting rights or any other minority's
2  voting rights violated or infringed upon. So I felt it
3  was necessary to do so.
4      Q    Do you know what I mean by the term
5  pre-clearance?
6      A    No.
7      Q    Do you know what section 5 of the Voting
8  Rights Act is?
9          MR. SPITAL: Objection, calls for a legal
10 conclusion.
11         BY MR. COLEMAN:
12     Q    When your attorney, unless they
13 specifically instruct you not to answer a question,
14 they're preserving something for the record, but you
15 can still answer.
16     A    Can you repeat the question, please?
17     Q    I'll probably rephrase it.
18     A    Okay.
19     Q    Do you understand what is meant by section
20 5 of the Voting Rights Act?
21     A    I think I have a general understanding of

Page 13

1  it. I may not understand it the same extent that you
2  as an attorney does, but I think have I have a general
3  understanding of it.
4      Q    Would you mind sharing that general
5  understanding?
6      A    That as an American citizen with the voting
7  rights you all have a responsibility to disclose or to
8  report any changes that may be made to any particular
9  voting -- with any particular voting cycle would have.
10         So those changes would need to be brought
11 to my or any other person's attention. We need to be
12 notified of those changes.
13     Q    Is it your understanding that that
14 notification is sent to the Department of Justice when
15 changes are proposed?
16         MR. SPITAL: Same objection.
17         You may answer.
18         BY MR. COLEMAN:
19     Q    If you know.
20     A    I'm not sure. I'm not an attorney. So I'm
21 not clear on whether or not they're reported or not.

Page 14

1  Q  Have you done some independent research by
2  yourself or read up on section 5 of the Voting Rights
3  Act, read things about how that pre-clearance section
4  works?
5  A  No, I have not, not recently.
6  Q  Can you tell me, is it consistent with your
7  understanding that the district is only seeking to
8  exclude itself from this reporting requirement, what I
9  call section 5?
10     MR. SPITAL: Objection, calls for a legal
11 conclusion.
12     You can answer.
13     THE WITNESS: Could you repeat the
14 question, please?
15     BY MR. COLEMAN:
16  Q  Let me back up.
17     The Voting Rights Act, you'll agree with
18 me, has a lot of different things in it?
19  A  Exactly.
20  Q  And most of them, most of the provisions
21 say you can't discriminate in elections, you can't

Page 15

1  discriminate in campaigning and things like that.
2     Do you understand that there are a lot of
3  things like that in Voting Rights Act?
4     MR. SPITAL: For purposes of clarification,
5  this is your description of the Voting Rights Act?
6     MR. COLEMAN: That's fine. I'm just asking
7  if the witness understands that there's a lot of things
8  like that in the Voting Rights Act.
9     THE WITNESS: Yes.
10     BY MR. COLEMAN:
11  Q  Do you understand that the district's
12 lawsuit doesn't try to exempt itself from any of those
13 provisions, but only from the reporting requirement to
14 the Department of Justice?
15     MR. SPITAL: Objection, calls for a legal
16 conclusion.
17     THE WITNESS: I am aware of that.
18     BY MR. COLEMAN:
19  Q  That's consistent with your understanding
20 of the lawsuit?
21  A  Yes.

Page 16

1  Q  And your decision to join the lawsuit, is
2  it correct that it is based on your feeling that the
3  district should not be exempted from the reporting
4  requirement?
5  A  Right.
6  Q  What I call pre-clearance?
7  A  Exactly.
8  Q  Are there other reasons that you have
9  joined the lawsuit or is that the primary or only
10 reason?
11  A  That's the primary reason.
12  Q  And to be more specific, in joining the
13 lawsuit you are not bringing any complaint about the
14 way the district has performed its elections in 2006 or
15 2004 or any of the other previous elections that it has
16 held for its board members; is that correct?
17  A  No, I don't have any complaints.
18  Q  Do you know whether the statute has a
19 provision in it that allows some governmental entities
20 to show that they have followed the provisions of the
21 Voting Rights Act for a period of years and that if

Page 17

1  they could show that then they could exclude themselves
2  from the pre-clearance requirement?
3     Do you know whether there's anything like
4  that in the Voting Rights Act?
5  A  I'm not sure. I'm not an attorney, so.
6  Q  I'm going to ask you just for a moment to
7  assume that there is something like that in the Voting
8  Rights Act.
9     If the district could show that it fits
10 within that statute, would you still oppose them
11 seeking to exclude themselves from pre-clearance?
12     MR. SPITAL: Just to clarify. Are you
13 asking Ms. Louis to assume that the district is
14 eligible?
15     MR. COLEMAN: No. I'm just saying if.
16     MR. SPITAL: If the district were eligible?
17     MR. COLEMAN: If the district could fit
18 itself within that, would she still oppose the district
19 asking to be excluded from pre-clearance?
20     MR. SPITAL: By that you mean the
21 provisions of the Voting Rights Act that you referred

Page 18

1  to previously?
2       MR. COLEMAN: From pre-clearance.
3       THE WITNESS: Yes, I would still oppose it.
4       BY MR. COLEMAN:
5   Q   Can you tell me why you would still oppose
6  it even in those circumstances?
7   A   I feel as though even though they would I
8  guess meet those standards, I still feel as though as a
9  citizen you would still be responsible to inform me of
10 any changes or make any changes known, and I hope I'm
11 clear on that.
12  Q   I think so.
13      Let me ask you one question about that.
14      Do you believe that informing the residents
15 of possible changes is the same as or different from
16 its obligation to ask for pre-clearance from the
17 Department of Justice?
18      MR. SPITAL: Objection, calls for legal
19 conclusion.
20      BY MR. COLEMAN:
21  Q   I'm sorry, I didn't hear you.

Page 19

1   A   I'm not a lawyer, but I don't believe it's
2  the same. I think it's different.
3   Q   If the district had a policy of making sure
4  that all of the residents knew about any changes that
5  were being made and then could fit itself under that
6  statute, would you be opposed to the district seeking
7  to exclude itself from the pre-clearance requirements
8  as long as it made sure that all of the residents were
9  aware of any changes that were being made?
10      MR. SPITAL: For clarification purposes,
11 you said it fit the statutory criteria for bailout.
12      MR. COLEMAN: For bailout, I'm sorry.
13      THE WITNESS: I don't think I would have a
14 problem if they were to do it like that.
15      BY MR. COLEMAN:
16  Q   Ms. Louis, did you or Mr. Louis bring any
17 documents to today's deposition?
18  A   No, I don't have any documents.
19      MR. COLEMAN: I pass the witness. Any
20 questions from DOJ?
21      MR. DELLHEIM: No questions.

Page 20

1       MR. SPITAL: No questions.
2              - - -
3       (Reading and signature not waived.)
4  (Whereupon, at 10:45 a.m., deposition was adjourned.)
5              - - -

Page 21

CERTIFICATE OF DEPONENT

   I hereby certify that I have read and
examined the foregoing transcript, and the same is a
true and accurate record of the testimony given by me.

   Any additions or corrections that I feel are
necessary, I will attach on a separate sheet of paper
to the original transcript.


_____

NICOLE LOUIS

6 (Pages 18 to 21)

Page 22

1  CERTIFICATE OF SHORTHAND REPORTER - NOTARY PUBLIC
2       I, Steven Poulakos, registered Professional
3  Reporter, the officer before whom the foregoing
4  proceedings were taken, do hereby certify that the
5  foregoing transcript is a true and correct record of
6  the proceedings; that said proceedings were taken by me
7  stenographically and thereafter reduced to typewriting
8  under my supervision; and that I am neither counsel
9  for, related to, nor employed by any of the parties to
10 this case and have no interest, financial or otherwise,
11 in its outcome.
12      IN WITNESS WHEREOF, I have hereunto set my
13 hand and affixed my notarial seal this 6th day of March,
14 2007.
15
16      _____
17           STEVEN POULAKOS
18             Notary Public
19
20 My commission expires:
21 June 17, 2009

Page 23

1            INDEX
2       Deposition of NICOLE LOUIS
3            March 1, 2007
4
5  EXAMINATION BY:                 Page
6  Mr. Coleman ................  4
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21

7 (Pages 22 to 23)

Towson Reporting Company    GORE BROTHERS   Whitman Reporting-Rockville
410-828-4148                410-837-3027              301-279-7599

5d82d1b7-8eb7-4a44-ba95-cdfd4e2040f4