# Exhibit 3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NORTHWEST AUSTIN MUNICIPAL UTILITY DISTRICT NUMBER ONE, | § § § | |
| *Plaintiff,* | § § | |
| vs. | § § | Civil Action No. 1:06cv1384 |
| ALBERTO GONZALES, ATTORNEY GENERAL OF THE UNITED STATES, | § § § | Three-judge court (PLF, DST, EGS) |
| *Defendant,* | § § | |
| TRAVIS COUNTY, TEXAS, *et al.,* | § § | |
| *Defendant-Intervenors.* | § | |

**TRAVIS COUNTY'S DISCLOSURE OF EXPERT TESTIMONY OF RYAN ROBINSON**

Pursuant to Rule 26(a)(2) of the Federal Rules of Civil Procedure, Local Rule 26, and the Court's Scheduling Order of December 1, 2006, Defendant-Intervenor Travis County ("County") makes the following disclosures concerning the expert opinion to be provided by Mr. Ryan Robinson. Mr. Robinson is the City Demographer for the City of Austin, Texas.

Mr. Robinson will testify to the basic racial demographics of the Northwest Austin MUD No. 1 and its surrounding areas under the 1990 and 2000 decennial censuses and to the basic socioeconomic profile of the plaintiff MUD under the 2000 decennial census.

Mr. Robinson will not receive any separate compensation for his testimony; he is a salaried employee of the City of Austin, Texas. Mr. Robinson testified on behalf of the City of Austin and Travis County through a declaration admitted as an exhibit in *LULAC v. Perry*, Civ. No. 2:03-CV-354 (United States District Court for the Eastern District of Texas, Marshall Division). His resumé is Attachment A to this disclosure. Mr. Ryan's report is Attachment B to this disclosure.

Respectfully submitted,

Max Renea Hicks
Attorney at Law
101 West 7th Street
Suite 504
Austin, Texas 78701
(512) 480-8231
fax: (512) 480-9105
e-mail: rhicks@renea-hicks.com


/s/ J. Gerald Hebert
J. GERALD HEBERT
Attorney at Law
5019 Waple Lane
Alexandria, VA 22304
(703) 628-4673 (O)
DC Bar No. 447676
e-mail: jghebert@comcast.net

Counsel for Defendant-Intervenor Travis County

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of January, 2007, a copy of the foregoing pleading was served in pdf format by electronic mail to counsel for all parties and, also, by fax to:

Gregory S. Coleman
WEIL, GOTSHAL, & MANGES LLP
8911 Capital of Texas Highway
Suite 1350
Austin, Texas 78756
greg.coleman@weil.com


/s/ J. Gerald Hebert
J. Gerald Hebert

<u>Attachment A</u>

# Ryan Folmar Robinson

4612 Horseshoe Bend
Austin, Texas 78731-5325
(512) 454-4961

<u>EDUCATION</u>

May 1986          Master of Arts, University of Georgia, Athens.
                  Geography. Emphases: population dynamics, quantitative methods, spatial
                  analysis, GIS and research design. GPA: 3.85

May 1983          Bachelor of Arts, University of Texas, Austin.
                  Geography. Graduated Cum Laude.

<u>EXPERIENCE</u>

**City Demographer**, Department of Planning, City of Austin. 1990 to present.

Supervise and manage the City's Demographics and Forecasting work program. Serve as lead
demographic analyst for the City, performing a wide variety of demographic, economic, spatial
analysis, and forecasting tasks. Duties and projects include:

- Worked as primary demographic analyst for City's 2002 examination of changing the Charter
  and moving to a single-member district system for electing council members. Designed, wrote
  and implemented district creation tool (model dependent on Arc/INFO, SAS and Excel
  macros). Presented model's findings to City Council and public.
- Performed extensive analysis of Census 2000 data for the Austin region; looked at growth
  patterns, ethnicity changes, age shifts, housing trends, socioeconomic dynamics and linguistic
  isolation.
- LUCA 1998 program, created and implemented GIS address matching and verification model.
  Created and submitted new Travis County Census 2000 census tract geography. Maintain
  census jurisdiction geography; perform annual boundary and annexation surveys, conduct
  spatial analysis to identify emerging ethnicity and population trends to specify "difficult to
  enumerate" populations.
- Serve as City's Census 2000 Liaison. Submitted over 28,000 address points to Bureau during
  LUCA 1998 program, created and implemented GIS address matching and verification model.
  Created and submitted new Travis County Census 2000 census tract geography. Maintain
  census jurisdiction geography; perform annual boundary and annexation surveys, conduct
  spatial analysis to identify emerging ethnicity and population trends to specify "difficult to
  enumerate" populations.
- Represented City before the US Department of Justice concerning ethnicity patterns and trends,
  presented persuasive arguments based on quantitative, cartographic, and narrative data that led
  to DOJ approval of massive 1997 annexation program.

- Perform spatial analysis for the Division using all components of City's GIS, geocoding pointal data, point-in-polygon analysis, data aggregation, build translation tables, areal data transformations, read and process raw data using SAS, UNIX, and ARC/INFO, design and construct cartographic output.
- Produced eight booklet series of 1990 Census data analysis. Used ARC/INFO to perform spatial analysis to determine demographic and socioeconomic regional-scale changes at the census tract-level.
- Developed and maintain data processing techniques and routines that support the publication of <u>Growth Watch</u>. Specifying and writing SAS routines that extract building permit, site plan, and subdivision data. Designed and maintain a comprehensive development trends database and associated metadata. Use ARC/INFO to map and track spatially referenced development data.
- Produce annual population forecasts for the City, Travis County, and the Austin MSA. Forecasts are used by Budget Office and several other City, County, State government, and private sector entities. Frequently produce small area population and ethnicity estimates and forecasts for a wide variety of uses.
- Represent the City before national and local media; interviewed and quoted by National Public Radio, the New York Times, the Wall Street Journal, Dallas Morning News, American-Statesman. Present demographic, economic, and development trends data to City Council and Planning Commission. Maintain high level of interaction with public, conduct data seminars, public presentations and in-depth spatial analysis for customers.

**Coordinator of Planning**, Gwinnett County Public Schools, suburban Atlanta. 1986 to 1990.

Acted as the chief enrollment forecaster and boundary planner for a large, rapidly growing public school
system in suburban Atlanta. Duties included:

* Designed and implemented a PC-based enrollment forecasting model that accurately predicted
   system-wide enrollment to within .05% for four consecutive years. Gwinnett County was the fastest
   growing large county in the US from 1985 to 1989.
* Developed and implemented a facility utilization forecast model that resulted in the construction of
   over 1000 classrooms—half in the form of new schools, and half in additions to existing facilities.
* Designed, implemented, and maintained a boundary planning and enrollment forecasting GIS.
   developed a small area geographic zone system that works in conjunction with student addresses
   and individual school attendance areas. Used the GIS to design new school attendance areas, alter
   existing ones, and plan for future facilities expansions.
* Conducted large public hearings, made presentations of maps and data products to large audiences,
   maintained a high level of customer service and contact.

<u>SOFTWARE AND ANALYSIS</u>

* Extensive experience using ARC/INFO. Have worked with all aspects and modules including
    topology creation, attribute building, spatial analysis, map generation, metadata creation, and spatial
    data transformations.
* Extensive experience using SAS. Specifying and writing forecasting models, designing and writing
    spatial analysis support models for use with ARC/INFO, performing quantitative analysis of spatial
    and non-spatial datasets.
* Extensive experience with UNIX and VMS.
* Extensive experience with spreadsheet applications and manipulation.
* Extensive experience in demographic and spatial analysis, analytic research design, dataset design,
    creation, and manipulation.


**Maps Portfolio and References Available on Request**

## ATTACHMENT B

### Report of Mr. Ryan Robinson

The 1990 and 2000 census data included in this report for the Northwest Austin MUD No. 1 were generated using a GIS system that contains 1990 and 2000 Census population data, political boundaries for jurisdictions in the City of Austin area (such as municipal utility districts), and detailed aerial photos of the Austin area from several different time periods. We have uploaded these data to the City's FTP website: ftp://coageoid01.ci.austin.tx.us. The data are in a zipped file that may be located in the following directory: /GIS-Data/planning/temp/

The boundaries of the NW Austin MUD No. 1 and the Census block boundaries for 1990 and 2000 do not perfectly align with each other. In particular, the outer edges of the NW Austin MUD No. 1 boundaries do not coincide with the Census block boundaries. To determine the population of the MUD No. 1, I overlaid Census block boundaries, the NW Austin MUD No. 1 boundaries and aerial photographs of the area showing housing development at various points in time. As a result, I determined, for 1990 and 2000, which Census blocks had population in the MUD and which did not. In other words, it is clear for some populated Census blocks that lie partially within the NW Austin MUD No. 1 in 1990 and 2000 that the population was in the MUD, and is also clear for other Census blocks that the population in a particular Census block was entirely outside the MUD.

The 1990 and 2000 Census population estimates for the MUD included in this report are based on detailed review of all available information, including the information and data described above.

# Northwest Austin MUD No. 1
## ~Canyon Creek
Demographic Data, 1990

| Data Item | Study Area 1990 | 1990 ZIP Code 78726 | City of Austin 1990 |
|---|---|---|---|
| **Population Data** | | | |
| Total Population | **12** | **842** | **465,622** |
| White | 12 | 781 | 287,289 |
| African American | 0 | 17 | 55,409 |
| Hispanic--Latino | 0 | 30 | 106,162 |
| Asian | 0 | 13 | 15,366 |
| Other | 0 | 1 | 1,397 |
| | | | |
| Percent White | 100.0% | 92.8% | 61.7% |
| Percent African American | 0.0% | 2.0% | 11.9% |
| Percent Hispanic--Latino | 0.0% | 3.6% | 22.8% |
| Percent Asian | 0.0% | 1.5% | 3.3% |
| Percent Other | 0.0% | 0.1% | 0.3% |

SOURCES: 1990 Census, SF1 Dataset, Tables P1, P4 and P6.
Report produced by: Ryan Robinson, City Demographer, Department of Planning, City of Austin.

## Northwest Austin MUD No. 1
### ~Canyon Creek
Demographic Data, 2000

| Data Item | Study Area 2000 | 2000 ZIP Code 78726 | City of Austin 2000 | Travis County 2000 |
|---|---|---|---|---|
| **Population Data** | | | | |
| Total Population | **3,586** | **6,480** | **656,562** | **812,280** |
| White | 2,872 | 5,226 | 347,554 | 457,817 |
| African American | 54 | 155 | 64,259 | 73,242 |
| Hispanic--Latino | 197 | 427 | 200,579 | 229,048 |
| Asian | 416 | 543 | 30,915 | 36,232 |
| Other | 47 | 129 | 13,255 | 15,941 |
| | | | | |
| Percent White | 80.1% | 80.6% | 52.9% | 56.4% |
| Percent African American | 1.5% | 2.4% | 9.8% | 9.0% |
| Percent Hispanic--Latino | 5.5% | 6.6% | 30.5% | 28.2% |
| Percent Asian | 11.6% | 8.4% | 4.7% | 4.5% |
| Percent Other | 1.3% | 2.0% | 2.0% | 2.0% |
| | | | | |
| **Median Family Income** | **$103,200** | **$99,950** | **$54,091** | **$58,555** |

SOURCES: 2000 Census, SF1 Dataset, Tables P1, P4 and P6.

*Report produced by: Ryan Robinson, City Demographer, Department of Planning, City of Austin.*

# Northwest Austin MUD No. 1
## ~Canyon Creek
Demographic Data, 2000

| Data Item | Study Area 2000 | 2000 ZIP Code 78726 | City of Austin 2000 | Travis County 2000 |
|---|---|---|---|---|
| **Population Data** | | | | |
| Total Population | **3,586** | **6,480** | **656,562** | **812,280** |
| White | 2,872 | 5,226 | 347,554 | 457,817 |
| African American | 54 | 155 | 64,259 | 73,242 |
| Hispanic--Latino | 197 | 427 | 200,579 | 229,048 |
| Asian | 416 | 543 | 30,915 | 36,232 |
| Other | 47 | 129 | 13,255 | 15,941 |
| Percent White | 80.1% | 80.6% | 52.9% | 56.4% |
| Percent African American | 1.5% | 2.4% | 9.8% | 9.0% |
| Percent Hispanic--Latino | 5.5% | 6.6% | 30.5% | 28.2% |
| Percent Asian | 11.6% | 8.4% | 4.7% | 4.5% |
| Percent Other | 1.3% | 2.0% | 2.0% | 2.0% |
| **Median Family Income** | **$103,200** | **$99,950** | **$54,091** | **$58,555** |

SOURCES: 2000 Census, SF1 Dataset, Tables P1, P4 and P6.

*Report produced by: Ryan Robinson, City Demographer, Department of Planning, City of Austin. November 2006.*





DEPOSITION EXHIBIT 2

PENGAD 800-631-6989

RNF 4-4-07

# Northwest Austin MUD No. 1
~Canyon Creek
Demographic Data, 1990

| Data Item | Study Area 1990 | 1990 ZIP Code 78726 | City of Austin 1990 | Travis County 1990 |
|---|---|---|---|---|
| **Population Data** | | | | |
| Total Population | **12** | **842** | **465,622** | **576,407** |
| White | 12 | 781 | 287,289 | 375,279 |
| African American | 0 | 17 | 55,409 | 60,998 |
| Hispanic--Latino | 0 | 30 | 106,162 | 121,689 |
| Asian | 0 | 13 | 15,366 | 15,883 |
| Other | 0 | 1 | 1,397 | 2,558 |
| Percent White | 100.0% | 92.8% | 61.7% | 65.1% |
| Percent African American | 0.0% | 2.0% | 11.9% | 10.6% |
| Percent Hispanic--Latino | 0.0% | 3.6% | 22.8% | 21.1% |
| Percent Asian | 0.0% | 1.5% | 3.3% | 2.8% |
| Percent Other | 0.0% | 0.1% | 0.3% | 0.4% |
| Unadjusted Median Family Income | **$60,453** | **$72,002** | **$33,481** | **$35,350** |
| Adjusted Median Family Income (2000 dollars) | **$80,964** | **$96,431** | **$44,840** | **$47,344** |

SOURCES: 1990 Census, SF1 Dataset, Tables P1, P4 and P6.

Report produced by: Ryan Robinson, City Demographer, Department of Planning, City of Austin, November 2006.

**Census 2000 blocks intersecting with NW Austin MUD 1**

| MUD Intersection? | TRACT | BLOCK | TOTPOP | WHITE | BLACK | HISP | ASIAN | OTHER |
|---|---|---|---|---|---|---|---|---|
| Partial, open edge not populated | 17.14 | 1005 | 1,611 | 1,280 | 44 | 114 | 156 | 17 |
| Small piece inside MUD | 17.14 | 1011 | 8 | 6 | 2 | 0 | 0 | 0 |
| Small piece inside MUD | 17.14 | 1012 | 19 | 15 | 0 | 0 | 4 | 0 |
| Small piece inside MUD | 17.14 | 1013 | 11 | 10 | 0 | 1 | 0 | 0 |
| Completely within MUD | 17.14 | 1023 | 183 | 138 | 1 | 5 | 32 | 7 |
| Completely within MUD | 17.14 | 1024 | 79 | 62 | 0 | 10 | 5 | 2 |
| Completely within MUD | 17.14 | 1025 | 44 | 36 | 0 | 3 | 5 | 0 |
| Completely within MUD | 17.14 | 1026 | 88 | 70 | 0 | 3 | 14 | 1 |
| Partial | 17.14 | 1027 | 214 | 176 | 4 | 11 | 18 | 5 |
| Partial | 17.14 | 1028 | 6 | 6 | 0 | 0 | 0 | 0 |
| Partial, open edge not populated | 17.14 | 1029 | 41 | 39 | 2 | 0 | 0 | 0 |
| Small piece inside MUD | 17.14 | 1030 | 0 | 0 | 0 | 0 | 0 | 0 |
| Completely within MUD | 17.14 | 1039 | 0 | 0 | 0 | 0 | 0 | 0 |
| Completely within MUD | 17.14 | 1040 | 163 | 122 | 0 | 7 | 32 | 2 |
| Completely within MUD | 17.14 | 1041 | 50 | 43 | 0 | 0 | 7 | 0 |
| Completely within MUD | 17.14 | 1042 | 32 | 32 | 0 | 0 | 0 | 0 |
| Completely within MUD | 17.14 | 1043 | 79 | 54 | 0 | 7 | 15 | 3 |
| Completely within MUD | 17.14 | 1044 | 112 | 93 | 0 | 4 | 12 | 3 |
| Completely within MUD | 17.14 | 1045 | 52 | 42 | 0 | 0 | 10 | 0 |
| Completely within MUD | 17.14 | 1046 | 42 | 38 | 0 | 3 | 1 | 0 |
| Completely within MUD | 17.14 | 1047 | 118 | 99 | 0 | 4 | 14 | 1 |
| Completely within MUD | 17.14 | 1048 | 128 | 97 | 1 | 4 | 25 | 1 |
| Completely within MUD | 17.14 | 1049 | 59 | 54 | 0 | 2 | 3 | 0 |
| Completely within MUD | 17.14 | 1050 | 69 | 43 | 1 | 3 | 18 | 4 |
| Completely within MUD | 17.14 | 1051 | 82 | 71 | 0 | 4 | 7 | 0 |
| Completely within MUD | 17.14 | 1052 | 93 | 76 | 4 | 5 | 8 | 0 |
| Completely within MUD | 17.14 | 1053 | 20 | 15 | 0 | 5 | 0 | 0 |
| Completely within MUD | 17.14 | 1054 | 70 | 54 | 0 | 6 | 9 | 1 |
| Completely within MUD | 17.14 | 1055 | 96 | 71 | 0 | 4 | 16 | 5 |
| Completely within MUD | 17.14 | 1056 | 54 | 47 | 0 | 0 | 7 | 0 |
| Completely within MUD | 17.14 | 1057 | 0 | 0 | 0 | 0 | 0 | 0 |
| Partial, open edge not populated | 17.14 | 1062 | 14 | 11 | 2 | 0 | 0 | 1 |
| Small piece inside MUD | 17.14 | 2009 | 570 | 484 | 12 | 26 | 35 | 13 |
| | | | 4,207 | 3,384 | 73 | 231 | 453 | 66 |
| | | | | 80.4% | 1.7% | 5.5% | 10.8% | 1.6% |



# Northwest Austin MUD No. 1

## with Census 2000 blocks in Tract 17.14, Travis County



Legend

Northwest Austin MUD No. 1

census blocks

census tracts



# Northwest Austin MUD No. 1

## with Census 2000 blocks in
## Tract 17.14, Travis County

Williamson County
Travis County

Northwest Austin MUD No. 1

Lake Travis

Travis County
Hays County

N

# Northwest Austin MUD No. 1

## Zoomed-out view

**Legend**

☐ Northwest Austin MUD No. 1

City of Austin

▭ County Line



# Northwest Austin MUD No. 1

## Zoomed-in view

0   0.25  0.5          1 Miles

N

**Legend**

ZIP Codes

Northwest Austin MUD No. 1

# Exhibit 4

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ) | |
| ) | |
| ) | |
| **NORTHWEST AUSTIN MUNICIPAL** ) | |
| **UTILITY DISTRICT NUMBER ONE,** ) | |
| ) | |
| **Plaintiff,** ) | Civil Action No. 1:06-CV-01384 |
| ) | (DST, PLF, EGS) |
| **v.** ) | |
| ) | |
| **ALBERTO GONZALES,** ) | |
| **Attorney General of the** ) | |
| **United States, <u>et al.</u>,** ) | |
| ) | |
| ) | |
| **Defendants.** ) | |
| ) | |
| ) | |

## <u>EXPERT REPORT</u>

## <u>OF TERRY L. MUSIKA</u>

**March 9, 2007**

**NORTHWEST AUSTIN MUNICIPAL
UTILITY DISTRICT NUMBER ONE,**

**v.**

**ALBERTO GONZALES,
Attorney General of the
United States, <u>et al.</u>**

**EXPERT WITNESS REPORT OF**

<u>**TERRY L. MUSIKA**</u>

<u>**QUALIFICATIONS**</u>

1.　　I am the CEO of Invotex Group as well as a CPA with over thirty-two years of business experience. I am a former audit and consulting partner for the international accounting firm of Coopers & Lybrand (now PricewaterhouseCoopers), former Managing Director for Navigant Consulting, Inc. and I have previously formed, owned and operated a proprietary database company, a national financial and economic consulting firm, and a merger and acquisition company. Additionally, I have frequently served the Federal Court system as a Court Appointed Chapter 11 Operating Trustee, Liquidating Chapter 7 Trustee, Operating Chapter 7 Trustee, Examiner, and Paying Agent. Finally, I previously served as the partner in charge of Coopers & Lybrand's state and local government practice and have audited and provided consulting services to numerous units of local government (including but not limited to the city and county of Los Angeles, CA, the city and county of San

2

Francisco, CA, Orange County Sanitation District of Orange County, CA, Long Beach, CA, Huntington Beach, CA, Beverly Hills, CA, Boston, MA, and Anne Arundel County, MD) numerous state governments (including but not limited to the State of Indiana, Commonwealth of Virginia and the State of Maryland) and various agencies of the federal government (including but not limited to the FBI, SEC, State Department, FDIC, and Department of Justice).

2.    My business address is 1637 Thames Street, Baltimore, MD 21231.  **Exhibit A** is a copy of my current *curriculum vitae* that lists my work experience, academic degrees, and publications.

3.    During the past thirty-three years I have provided expert testimony in over one hundred and fifty separate proceedings before forty-one different Federal District Courts throughout the U.S., eight separate state courts, numerous proceedings before the U.S. Court of Federal Claims, four separate U.S. Bankruptcy Courts, numerous arbitration matters and the United States International Trade Commission.  I was accepted as a designated expert in all cases.  **Exhibit B** lists the cases in which I have testified as an expert witness in deposition and at trial from 2002 to the present.

4.    My standard hourly billing rate is $450 per hour for services performed in this matter.  In addition, I will be reimbursed for all reasonable out-of-pocket expenses incurred in connection with my analyses and testimony in this case.


## ASSIGNMENT

5.    I have been retained by Wilmer Cutler Pickering Hale and Dorr LLP on behalf of the Texas State Conference of NAACP Branches and the Austin Branch of the

NAACP to review and evaluate the extent of the financial burden of compliance with Section 5 of the Voting Rights Act ("VRA") imposed on the Northwest Austin Municipal Utility District Number 1 (the "District") – the absolute financial burden, as well as the financial burden relative to the District's total financial burden.

## **BACKGROUND**

6.    I am advised by counsel that Section 5 of the VRA, in covered jurisdictions, requires the suspension of all new voting regulations pending review by federal authorities – either the United States Department of Justice or a three-judge federal court in Washington, DC – to determine whether the use of proposed voting changes would perpetuate voting discrimination.  Under Section 5, any voting change with respect to a covered jurisdiction, or any political sub-unit within the jurisdiction, cannot be legally enforced until and unless it receives the required determination by the Department of Justice or by a federal court in Washington, DC, a process known as pre-clearance.  Texas became covered by Section 5 as of September 22, 1975, when Section 5 was broadened to address additional voting discrimination against members of "single language minority" groups, in this case the group of persons of Spanish heritage.[1]  The District conducts periodic elections for the selection of its board members, which are required to be conducted in compliance with the VRA.

---

[1] http://www.usdoj.gov/crt/voting/sec_5/about.htm; http://www.usdoj.gov/crt/voting/sec_5/covered.htm; Federal Register, Vol. 40, No. 185.

7.  The District is a political body located in the City of Austin, Travis County, Texas. The District was formed on March 16, 1988 by order of the Texas Water Commission, predecessor to the Texas Commission on Environmental Quality ("TCEQ"), which has supervisory jurisdiction over the District. The District is empowered, among other things, to purchase, construct, operate and maintain all works, improvements, facilities and plants necessary for the supply and distribution of water; the collection, transportation and treatment of wastewater; and the control and diversion of storm water.[2]

8.  "The District was created to provide water, wastewater and storm drainage to the approximately 709.7 acres within its boundaries, all of which lays within Travis County, Texas and within the city limits of the City of Austin, Texas."[3]  The District was formed to facilitate development by private home builders.  To accomplish this mission, the District borrowed money in the municipal bond market, used the bond proceeds to complete the necessary water, wastewater and storm drainage construction and established a property tax on District residents to provide revenue to retire the debt and cover annual operations during the period of the District's existence.  The repayment of debt principal and annual interest costs is accounted for in the District's Debt Service Fund.  The water, wastewater and storm drainage construction is accounted for in the District's Capital Projects Fund.  Finally, the District's General Fund accounts for annual property tax proceeds and general operating expenses of the District.  There is virtually no activity left in the District's Capital Projects Fund as the construction is now

---

[2] Official Statement, Unlimited Tax Refunding and Improvement Bonds, Series 2006, p28.
[3] Official Statement dated June 14, 2006, p5.

complete.  **Exhibit G** indicates that as of the fiscal year ended September 30, 2005, the District had $12,239,187 of bonds still outstanding.  The District incurred $760,583 of interest expense in the same year.  The District's interest expense is its single largest expense category.  The interest expense will continue until the District's bonds are retired.  The General Fund of the District has had average annual expenditures of $219,424.  General Fund expenditures were generally higher during the early stage of the District's existence.  Because construction is complete, once the bonds are retired, the District's activities will be reduced to a maintenance level.

## SUMMARY OF OPINIONS

Based on my review of the facts of this matter and on my analysis, I have reached the following conclusions:

9.    The estimated absolute financial burden of compliance with Section 5's pre-clearance requirement on the District has been an average of $223 per year. (**Exhibit F**).

10.    The estimated financial burden on the District of compliance with Section 5's pre-clearance requirement has been less than one-tenth of one percent (less than 0.1%) of the District's average annual expenditures.[4] (**Exhibits E and F**). Further, the District has reported no material expenditure with respect to its compliance with Section 5 in the audited financial statements.

11.    The future financial burden on the District of compliance with Section 5 is likely

---

[4] Average annual expenditures are defined as average annual general fund expenditures/expenses plus the average annual interest expense on outstanding bonds for the period 1989 through 2005.

to be zero or close to zero as a consequence of an agreement between the District and Travis County pursuant to which Travis County will conduct joint elections with the District.

## OPINIONS

### Past Absolute Financial Burden on the District

**The estimated absolute financial burden of compliance with Section 5's pre-clearance requirement on the District has been an average of $223 per year.**

12.    The minimal financial burden imposed on the District by compliance with Section 5 is illustrated in **Exhibit F**. **Exhibit F** shows that over the *entire* life of the District through 2005, the District's total estimated expenditure on compliance with Section 5 has been $4,479, an average annual estimated expenditure of $223.

13.    In determining the absolute and relative financial burden of the District caused by compliance with Section 5, my first step was to identify any actual costs incurred by the District in connection with its compliance with the provisions of Section 5. **Exhibit C** is a compilation of the financial reporting history of the District from its inception on March 16, 1988 through the most recent reporting period. This compilation is based on the financial reporting documents produced by the District and on publicly available information.[5] **Exhibit D** is a compilation of the District's Section 5 submissions. I reviewed the financial reporting information contained in **Exhibit C** with the Section 5 submissions in **Exhibit D** to determine the nature and extent of any and all identified expenditures associated with the District's Section 5 submissions.

---

[5] Official Statement, Unlimited Tax Bonds, Series 1992, p7.

14.    I also relied upon testimony and billing records of the District's past and present outside general counsels, as well as District board members. A good source of information relating to the actual costs in connection with its compliance with Section 5 is the sworn testimony of the District's former general counsel from inception to 2002, Ms. Sharlene Collins. Ms. Collins testified that election-related work constituted approximately "5 percent"[6] of total general counsel work performed by her office for the District. Pre-clearance work is just one of a number of the District's election-related expenses. Therefore, it amounts to a very small part of the total legal expenses of the District and an even smaller part of the District's total expenditure.

15.    Ms. Collins testified that a typical Section 5 submission related to moving a polling location took her "probably two hours."[7]

16.    Ms. Collins testified that the typical Section 5 submission including annexation "probably ends up being more, three to six hours' worth of work."[8] Only one of the eight Section 5 submissions ever made by the District has related to annexation.

17.    Ms. Collins testified that "I don't think I ever had one of the board members take a look at the submission."[9] In his deposition, Mr. Zimmerman, who was on the board of directors at the time of the 2004 submission, testified that he spent "probably ten minutes" reviewing the submission and that would be about the

---

[6] Deposition transcript of Collins (rough draft), p28.
[7] Deposition transcript of Collins (rough draft), p34.
[8] Deposition transcript of Collins (rough draft), p34.
[9] Deposition transcript of Collins (rough draft), p113.

same time the other four Directors spent as well.[10] Thus, other than the time spent by the outside general counsel, minimal, if any, time was spent on a Section 5 pre-clearance submission by the District.

18.    **Exhibit F** lays out my analysis with respect to estimating the cost of the eight Section 5 pre-clearance submissions over the life of the District.    Based on deposition testimony and billing records of former and current general counsels to the District, I estimated the expenditures related to the eight pre-clearance submissions.  This totals to $4,463.  Over a 20-year period, from 1986 through 2005, the District's average annual estimated expenditures on pre-clearance compliance was $223.

**Past Financial Burden Relative to the District's Total Financial Burden**

**The District has reported no material expenditures/expenses in connection with its compliance with the pre-clearance provisions of Section 5 of the VRA.**

19.    Based on a review of the District's annual financial statements from 1989 – 2005 (**Exhibit E**), the District's auditors have concluded that the District has incurred no material expenditure in connection with the District's compliance with Section 5.  The essence of the concept of materiality is "the omission or misstatement of an item in a financial report is material if, in light of surrounding circumstances, the magnitude of the item is such that it is probable that the judgment of a reasonable person relying upon the report would have been changed or influenced by the inclusion or correction of the item."[11]

---

[10] Deposition transcript of Zimmerman (rough draft), p49.
[11] Statement of Financial Accounting Concepts issued by the Financial Accounting Standards Board, CON

20.     The District's financial statements include no entry for any material costs for Section 5 compliance, indicating that the presence or absence of costs associated with Section 5 compliance would not change or influence a reasonable person reviewing the report. Although there are individual line item expenses reported as low as $819 (lab fees in 1991), there are no specified pre-clearance expenses deemed material enough to be separately reported.

21.     The District annual financial year end is September 30th of each calendar year. Many of the annual financial statements listed on **Exhibit C** have been audited by an outside independent CPA firm. For example, the District financial statements for the year ended September 30, 2005 were audited by Maxwell Locke & Ritter LLP.[12] The Maxwell Locke & Ritter LLP auditor's opinion states that "In our opinion the financial statements referred to above present fairly, in all material respects, the respective financial position of the governmental activities and each major fund of the District as of September 30, 2005, and the respective changes in financial position and the respective budgetary comparison for the General Fund for the year then ended in conformity with accounting principles generally accepted in the United States of America."[13]

**The estimated financial burden on the District of compliance with Section 5's pre-clearance requirement has been less than 0.1% of the District's average annual expenditures.**

22.     **Exhibit F** lays out my analysis of the estimated cost of the eight Section 5 pre-clearance submissions over the life of the District. Based on the deposition

---

2: Qualitative Characteristics of Accounting Information, Para 132.
[12] P007778 – P007818 at P007780.
[13] P007780.

testimony and billing records of the former and current outside general counsels to the District, I estimated the total cost to the District of the eight pre-clearance submissions. This amount totals to $4,463. Over a 20-year period, from 1986 through 2005, the average annual estimated pre-clearance cost was thus $223. I divided this amount by the District's average annual expenditure of $548,338 (**Exhibit E**). Using those figures, I calculated that the District's estimated average Section 5 expenditure has been 0.04% of the District's average annual total expenditures.

**A Section 5 pre-clearance submission efficiently and effectively establishes an internal control to aid in ensuring that the District has complied with applicable laws and regulations including civil rights, thereby helping avoid excess interest costs on bond debt.**

23. The nature and scope of the audits performed by the District's outside auditors include the determination of whether the District has generally complied with applicable laws and regulations including civil rights. The outside auditors indicated that failure to comply would be material to major federal assistance programs.

24. In a January 3, 1996 opinion letter to the Board of Directors, the outside auditors, Pena Swayze & Co., L.L.P. stated "We conducted our audit in accordance with generally accepted auditing standards; *Government Auditing Standards*, issued by the Comptroller General of the United States; and Office of Management and Budget Circular A-128, *Audits of State and Local Governments*. Those standards and OMB Circular A-128 require that we plan and perform the audit to obtain

reasonable assurance about whether the general purpose financial statements are free of material misstatement and about whether Northwest Austin Municipal District No. 1 complied with laws and regulations, noncompliance with which would be material to a major federal financial assistance program."[14]

25.    In another letter, also dated January 3, 1996 to the Board of Directors from the same outside auditors, the auditors stated "We have applied procedures to test Northwest Austin Municipal District No. 1's compliance with the following requirements applicable to its federal financial assistance programs, which are identified in the Schedule of Federal Financial Assistance, for the year ended September 30, 1995:  Political Activity, Davis-Bacon Act, Civil Rights, Real Property Acquisition, Federal Financial Reports, Allowable Costs/Cost Principles, Drug-Free Workplace Act, and Administrative Requirements."[15]

26.    Accordingly, the District's minimal expenses associated with obtaining the Section 5 pre-clearance submission are an efficient and effective means of establishing an internal control to help ensure that the District has complied with the VRA.  Removing the Section 5 pre-clearance submission option would not remove the District's requirement to comply with the VRA and would not remove the District's responsibility to establish that they have complied with the VRA. Without the pre-clearance procedure, the District would have to incur some other expense to help satisfy the auditor's requirement that the District has complied.

27.    **Exhibit G** identifies the amount of District's outstanding indebtedness, principal retirement, interest expense and other debt service expenses on an annual basis

---

[14] P002479.

[15] P002484 (emphasis added).

since the inception of the District.  The annual interest expense has been the largest single expense for the District in most years.  The annual interest expense is even larger than total general fund's expenditures for most years.  Further, in certain years the District incurs significant fiscal agent fees to facilitate the issuance of District bonds at the best rate possible.  For example, the District paid "fiscal agent fees and other" of $122,684 in 2005.[16]  The amount of interest expense paid on the District's bonded indebtedness is based on the bond's interest rate.  The bond's interest rate is largely determined by the credit rating assigned to the District's bonds.  Based on the size of the District's indebtedness and the length of the time such bonds remain outstanding, a slight change in the District's bond rating and interest rate could have a significant impact on the District's interest expense and overall financial health.

28.    WM Financial Strategies ("WM") is an independent municipal bond consultant that provides advice and assistance to bond issuers concerning ways in which they can support a favorable bond rating and minimize interest costs.  WM indicated that rating agencies consider the following factors in rating general obligation bonds.

- "Economy"

- "Debt Structure"

- "Financial Condition"

- "Demographic Factors"

---

[16] Northwest Austin Municipal Utility District No. 1 annual financial statements for the year ended September 30, 2005.

- "Management practices of the governing body and administration"[17]

29. The periodic cost of a Section 5 pre-clearance submission (see **Exhibit F**) is a fraction of the annual average interest cost of $328,914 (**Exhibit G**). One way of viewing the Section 5 pre-clearance submission cost is as an insurance policy to ensure a favorable debt rating. Removing the nominal cost and allowing the District to establish an internal control over its compliance on a voluntary basis could subject the District to an imprudent risk.

**Future Financial Burden**

**The future financial burden on the District of compliance with Section 5 is likely to be zero or close to zero as a consequence of an agreement between the District and Travis County pursuant to which Travis County will conduct joint elections with the District.**

30. Based on my review of documents from the District, future costs of the District for compliance with Section 5 appear likely to be zero or near zero. The District entered into two Election Agreements with Travis County in 2004 and 2006. The 2006 agreement is valid through July 1, 2011 and renews automatically for two additional three-year terms unless one of the parties notifies to terminate.[18] According to the testimony of Ms. Qualtrough, "this agreement was going to be very beneficial for the MUD and the voters" and "it ended up saving the District quite a bit of money."[19] The Election Agreement provided that the District was not responsible for compliance with Section 5 pre-clearance submission related to

---

[17] http://www.munibondadvisor.com/rating.htm.
[18] P009731.
[19] Deposition transcript of Qualtrough (rough draft), p46.

14

the joint election that directly affected Travis County.[20]  In addition, the District does not have any plans to propose voting changes that would require pre-clearance submissions.[21]

## DOCUMENTS AND INFORMATION CONSIDERED

31.     **Exhibit H** contains a list of information that I have considered in forming my opinions in this matter.  In the event additional information becomes available, I may supplement my opinions expressed herein.

---

[20] P009711.
[21] Deposition transcript of Zimmerman (rough draft), p58-59.

**POSSIBLE REVISIONS TO THIS REPORT**

I intend to review and consider any additional information provided to me after the production of this report and will supplement my analysis and conclusions if asked to do so, and if appropriate.

Terry L. Musika                                    Date:   March 9, 2007



**EXHIBIT A**

# Terry L. Musika, CPA, MPA

Terry L. Musika
CEO

Invotex Group
1637 Thames Street
Baltimore, Maryland 21231
Tel 410 824-0145
Fax 410 752-7227

tmusika@invotexgroup.com

**Education and professional**

- BS, 1970, Indiana University
- Master of Public Affairs in Public Finance, 1974, Indiana University Graduate School of Public and Environmental Affairs
- Certified Public Accountant (CPA), licensed in MD

**Employment**

- Invotex Group
- Maryland First Financial Services Corp. and Intellectual Property Management & Finance, LLC
- Navigant Consulting, Inc.
- PENTA Advisory Services, LLC
- C.W. Amos & Company, LLC
- Maryland First Financial Services Corp.
- Coopers & Lybrand
- Peat Marwick & Mitchell

**Professional associations**

- American Institute of Certified Public Accountants
- Association of Insolvency and Restructuring Advisors
- Association of University Technology Managers
- Maryland Association of Certified Public Accountants
- Licensing Executives Society
- Intellectual Property Owners' Damages Committee
- Maryland Court-Appointed Special Advocate
- Health Technology Assessment International

## Current Position

Mr. Musika is the Chief Executive Officer of Invotex Group. As CEO, Mr. Musika has overall responsibility for the management and strategic direction of the firm. In addition to his duties as CEO, Mr. Musika serves a broad range of client engagements involving matters of accounting, finance, valuation and general business planning and restructuring.

## Professional Experience

Mr. Musika has served the accounting profession in a variety of roles and responsibilities for over 30 years. His experience includes every level of the accounting and auditing profession from staff level auditor to National Audit Partner in one of the world's largest international accounting firms. Mr. Musika's experience includes 15 years as an auditor and consultant in a wide range of industries for two international accounting firms and one regional accounting firm. Mr. Musika's prior "Big 4" public accounting background includes five years with Peat, Marwick and Mitchell (predecessor of KPMG) as auditor and consultant and seven years with Coopers & Lybrand (predecessor of PricewaterhouseCoopers) as a national research consultant, audit partner and Partner-In-Charge of the Firm's Baltimore Business Investigative Services Practice. Mr. Musika's audit and consulting experience includes both private and public companies from various industries and numerous governmental entities. Mr. Musika also established and served as the Member-in-Charge of the consulting practice for C.W. Amos & Company, a regional accounting firm.

## Federal And State Court Appointments

Mr. Musika has been appointed by both Federal and State Court Judges on numerous occasions to provide the court systems with a range of trustee duties and services. Mr. Musika has served the Federal Court system as a Court Appointed Chapter 11 Operating Trustee, Liquidating Chapter 7 Trustee, Operating Chapter 7 Trustee, Examiner, Liquidating and Paying Agent. Mr. Musika has served the state court system as Receiver, Special Master and Court Appointed Special Advocate. Mr. Musika also served as a member of the Panel of Chapter 7 Trustees for the U.S. Trustee in Maryland for eight years.

Terry L. Musika, CPA, MPA                                        Page 2

### Business Founder, Owner And Operator

Mr. Musika has formed, owned and operated four separate companies. Mr. Musika founded both Maryland First Financial Services Corp. and Intellectual Property Management & Finance, LLC, which were combined and now operate as Invotex Group. Previously, Mr. Musika owned and operated Central Data Technologies, a proprietary database company that maintained a private database of financial information and regional economic data on Chapter 11 bankruptcies. Mr. Musika also founded and served as President and CEO of PENTA Advisory Services ("PENTA"), a national financial and economic consulting firm. Mr. Musika began PENTA as the first employee and eventually built the company into 125 accounting, economic and legal professionals with offices in Washington DC, Baltimore, Richmond, Wilmington, New York and Atlanta. Mr. Musika eventually sold PENTA to Navigant Consulting, Inc.

### Expert Testimony

During the past 33 years Mr. Musika has provided expert testimony in over 150 separate proceedings before 41 different Federal District Courts throughout the U.S., eight separate state courts, numerous proceedings before the U.S. Court of Federal Claims, four separate U.S. Bankruptcy Courts, numerous arbitration matters and the United States International Trade Commission. Mr. Musika's intellectual property experience encompasses patent, trademark, trade secret and copyright matters. He has performed numerous damage analyses including both reasonable royalty and lost profit calculations. Mr. Musika's antitrust damage opinion and expert qualifications were recently cited in a published opinion by The United States Court of Appeals for the Third Circuit.

### Papers, Publications, And Presentations

- "IP Valuation," November 16, 2004, presentation to the UMBC Technology Center (with Debora R. Stewart, CPA).

- "Strategic Valuation Issues Related to the Sale and Purchase of IP Out of Bankruptcy," September 18, 2003, presentation to the BioAlliance Network of the Tech Council of Maryland (with Charles R. Goldstein, CPA).

- "Tax Implications of Intellectual Asset Management," March 12, 2002, Kilpatrick Stockton LLP's IP Masters Teleconference Series (with John K. Lyons, CPA).

- "Valuation of Intellectual Property," May 22, 2001, presentation at the Licensing Intellectual Property Conference of the American Conference Institute.

- "Don't Shoot the Messenger! A Response to the Bankruptcy

Terry L. Musika, CPA, MPA                                    Page 3

Information on the Internet Debate," <u>Bankruptcy Court Decisions Weekly News & Comment</u>, September 15, 1998.

- "Creating A Company to Capitalize on Your Technology," January 14, 1998, presentation to the Washington, DC Chapter of the Licensing Executives Society.

- "How Creditors Can Use Regional Bankruptcy Data," <u>Business Credit</u>, October 1997. (with Charles R. Goldstein, CPA).

- "Valuation of Intellectual Properties – Case Studies," 1997, Licensing Executives Society (LES) Annual Meeting.

- "Approaches to Prejudgment Interest Awards Vary by Court," <u>Legal Times Special Report on Intellectual Property</u>, April 7, 1997 (with Gregory E. Smith, CPA).

- "Valuation of Intellectual Property Assets," 1996, presentation to the Greater Richmond Intellectual Property Law Association (GRIPLA).

- "Prejudgment Interest in Patent Damage Decisions, A Quantitative Analysis," <u>ALI-ABA Trial of A Patent Case Study Materials</u>, September 1995.

- "Trial of A Patent Case," 1993-1995, faculty member and presenter for the American Law Institute — American Bar Association (ALI-ABA), sponsored with the cooperation of the Intellectual Property Law Association of Chicago.

- "Implementing SOP 90-7 for Bookkeeping and Financial Reporting of Companies in Chapter 11." <u>The Journal of Professional Bookkeeping and Management</u>, May 1992 (with Jalal Soroosh, Ph.D.).

- "Financial Reporting Under Chapter 11," <u>The CPA Journal</u>, December 1991.

- "AICPA's Statement of Position on 'Financial Reporting By Entities in Reorganization Under Bankruptcy Code'" <u>NABTALK</u> 1991, pp. 15-20.

- "Montgomery's Auditing - Tenth Edition," 1985 (contributing author).



### TERRY L. MUSIKA, CPA, MPA
### TESTIMONY, AFFIDAVITS AND EXPERT REPORTS
### 2002 - PRESENT

**Litigation Cases**

- Expert Report in Cheryl Clevenger v. Dillard's Department Stores, Inc., et al. v. Towers, Perrin, Forster & Crosby, Inc. v. Friday Eldridge & Clark, LLP, Case No. C-1-02-558, U.S. District Court for the Southern District of Ohio, Western Division (report filed in 2007).

- Expert Report in A.S. Kleeman & Associates, Inc. v. ICT Group, Inc., Case No. 30 181 Y 00368 06, before the American Arbitration Association of Atlanta, Georgia (report filed in 2007).

- Expert Report in Elite Logistics Services, Inc., Elite Logistics, Inc., and Harold Pace, II v. ATX Technologies, Inc., and Bobby Ford, Inc., Civil Action No. G-22-866, U.S. District Court for the Southern District of Texas (Galveston Division) (report filed in 2006).

- Deposition Testimony and Expert Reports in United States of America, Ex. rel. Richard F. Miller v. Philipp Holzmann A.G., et al., Case No. 1:95-cv-01231, U.S. District Court for the District of Columbia (deposition testimony given and reports filed in 2006).

- Deposition Testimony and Expert Reports in G. David Jang, M.D. v. Boston Scientific Corporation; Scimed Life Systems, Inc., Case No. EDCV 05-00426 VAP (CTx), U.S. District Court for the Central District of California (Eastern Division – Riverside) (deposition testimony given and reports filed in 2006).

- Expert Reports in Brighton Pharmaceuticals, Inc. v. Atley Pharmaceuticals, Inc., Civil Action No. 3:06CV301, U.S. District Court for the Eastern District of Virginia (reports filed in 2006).

- Expert Report in TRPB LLC v. Seacoast Capital Partners II, L.P. and Patriot Capital, L.P., Chancery No. 193095, Circuit Court for Fairfax County, Virginia (report filed in 2006).

- Deposition Testimony and Expert Reports in Rasterex Holdings, LLC v. Research in Motion, Ltd., Arizan Corporation, Darrell Knight, and Olav A. Sylthe, Case No. 2003-cv-76785, Superior Court of Fulton County, State of Georgia (deposition testimony given and reports filed in 2006).

- Deposition Testimony and Expert Report in Telcordia Technologies, Inc. v. CISCO Systems, Inc., Case No. 04-876-GMS, U.S. District Court for Delaware (Wilmington) (deposition testimony given and report filed in 2006).

- Testimony in the arbitration between Syngenta Crop Protection, Inc. (Claimant) and Oxon Italia, S.p.A. and Sipcam Agro USA, Inc. (Respondents), Docket No. AAA 16 171 00180 05 before the American Arbitration Association (arbitration testimony given in 2007; direct testimony filed in 2006).

- Trial and Deposition Testimony and Expert Report in Talisman Capital Talon Fund, Ltd. v. Rudolf W. Gunnerman and SulphCo, Inc., Case No. 3:05-cv-00354-BES-RAM, U.S. District Court for the District of Nevada (Reno) and EcoEnergy Systems, Inc. v. Rudolf W. Gunnerman, Peter Gunnerman, SulphCo, Inc., RWG, Inc. and DOES I-X, Case No. CV-05-01346, Dept. 9, in the Second Judicial District Court of the State of Nevada in and for the County of Washoe (trial and deposition testimony given and report filed in 2006).

- Deposition Testimony and Expert Report in Charles Schwab & Co., Inc. v. Brian D. Carter, et al., Case No. 1:04-cv-07071, U.S. District Court for the Northern District of Illinois (Eastern Division) (deposition testimony given and report filed in 2006).

- Arbitration Testimony and Expert Testimony Statement in Makhteshim Agan of North America, Inc. in an arbitration against BASF Corporation (arbitration testimony given and statement filed in 2006).

- Expert Reports in Wilmington Trust Company, et al. v. Michael L. Strauss, Index No. 601192/03, State Supreme Court of New York (reports filed in 2005 and 2006).

- Deposition Testimony and Expert Reports in Warrior Lacrosse, Inc. v. STX LLC, Inc., Case No. 2:04-cv-70363-JAC-WC, U.S. District Court for the Eastern District of Michigan (Detroit) (deposition testimony given and reports filed in 2005).

- Expert Reports in Joseph Farda and Ann C. Farda, Farda Outlets, LLC, Farda Realty Associates, LP v. Chelsea Property Group, Inc., CPG Partners, LP and William G. Reddinger, Case No. 000926, Philadelphia County Court of Common Pleas, Trial Division (reports filed in 2005 and 2006).

- Expert Report in Maden Tech Consulting, Inc. v. Pappas et al., Case No. 1:05-cv-00777-CMH-TCB, U.S. District Court for the Eastern District of Virginia (Alexandria) (report filed in 2005).

- Deposition Testimony and Expert Report in Windy City v. America Online, Inc., Case No. 1:04-cv-04240, U.S. District Court for the Northern District of Illinois (Chicago) (deposition testimony given and report filed in 2005).

- Deposition Testimony and Expert Reports in MedPointe Healthcare, Inc. v. Hi-Tech Pharmacal Co., Inc. dba Health Care Products, Case No. 3:03-cv-05550-MLC-JJH, U.S. District Court for the District of New Jersey (Trenton) (deposition testimony given in 2006; reports filed in 2005 and 2006).

- Expert Report in Ole K. Nilssen and Geo Foundation, Ltd. v. Universal Lighting Technologies, Inc., Case No. 3:04-cv-00080, U.S. District Court for the Middle District of Tennessee (Nashville) (report filed in 2005).

- Deposition Testimony and Expert Reports in Steri-Lube Intl. Ltd., et al. v. Western Phase Change, et al., Case No. 99-CV-127, U.S. District Court for the District of Arizona (Phoenix) (deposition testimony given and reports filed in 2005).

- Expert Report in Joseph A. Robinson and Motorworks, Inc. and AR22, Inc. v. Berwind Financial, LP and Berwind Securities Corp., Case No. 000220, Philadelphia County Court of Common Pleas (report filed in 2005).

- Expert Report in Chase Mortgage Corp. v. Advanta Corp., Case No. 1:04-cv-00113-KAJ, U.S. District Court of Delaware (Wilmington) (report filed in 2005).

- Deposition Testimony and Expert Report in Kaiser Tool Company, Inc. v. Thomas K. Weaver, Circle Machine Company and Kennametal, Inc., Cause No. 02D01-0210-PL-498, Circuit and Superior Courts, 38th Judicial Court, Allen County, Indiana (deposition testimony given and report filed in 2005).

- Deposition Testimony and Expert Report in Mangosoft, Inc., et al. v. Oracle Corporation, Case No. 1:02-cv-00545-SM, U.S. District Court for the District of New Hampshire (Concord) (deposition testimony given and report filed in 2005).

- Deposition Testimony and Expert Reports in Softcard Systems v. Target Corporation, et al., Case No. 1:03-cv-03585-ODE, U.S. District Court for the Northern District of Georgia (Atlanta) (deposition testimony given and reports filed in 2005).

- Deposition Testimony and Expert Reports in C. Graham Berwind, Jr. v. Royal Van Lent Shipyard B.V., Case No. 2:03-cv-03576-RB, U.S. District Court for the Eastern District of Pennsylvania (Philadelphia) (deposition testimony given and reports filed in 2005).

- Deposition Testimony, Declaration and Expert Report in Solvay Pharmaceuticals, Inc. v. Global Pharmaceuticals and Impax Laboratories, Inc., Case No. 03-2854 DWF/SRN, U.S. District Court for the District of Minnesota (declaration filed in 2006; deposition testimony given and report filed in 2005).

- Deposition Testimony and Expert Report in MMI Products, Inc. v. Long et al., Case No. 1:03-cv-02711-PJM, U.S. District Court for the District of Maryland (Baltimore) (deposition testimony given and report filed in 2005).

- Arbitration and Deposition Testimony and Expert Report in the Matter of the Arbitration between TurboChef Technologies, Inc. and Maytag Corporation, No. 71 133 00185 02 (arbitration and deposition testimony given and report filed in 2005).

- Expert Report in Melea Ltd. et al v. Alliance Gas Systems Inc. et al., Case No. 2:04-cv-70530-GER-DAS, U.S. District Court for the Eastern District of Michigan (Detroit) (report filed in 2005).

- Deposition Testimony in Charles A. Stanziale, Jr. v. Ernst & Young LLP, Case No. C-03-2201, Circuit Court for Baltimore County, Maryland (deposition testimony given in 2005).

- Deposition Testimony and Expert Report in T. Rowe Price Group, Inc. v. Charles Schwab & Co., Inc., Civil Action No. 03-03396 (MJG), U.S. District Court for the District of Maryland (Greenbelt) (deposition testimony given and report filed in 2004).

- Expert Report in Dow Agrosciences LLC v. Crompton Corporation and Uniroyal Chemical Co., Inc., Case No. 1:03-CV-0654-SEB-JPG, U.S. District Court for the Southern District of Indiana, Indianapolis Division (report filed in 2004).

- Declarations in Warner-Lambert Company, et al. v. Purepac Pharmaceuticals, et al., Case No. 2:00-cv-02931-JCL-MF, U.S. District Court for the District of New Jersey (declarations filed in 2004).

- Deposition Testimony and Expert Report in Metropolitan Medical Services of NC, Inc., et al. v. Draegerwerk AG, et al., Case No. 1:04CV266, U.S. District Court for the Eastern District of Texas, Beaumont Division (deposition testimony given and report filed in 2004).

- Deposition Testimony and Expert Report in Syngenta Seeds, Inc. v. Monsanto Company; DeKalb Genetics Corp.; Pioneer Hi-Bred International, Inc.; Dow Agrosciences, LLC; Mycogen Plant Science, Inc. and Agrigenetics, Inc., Civil Action No. 02-1331-SLR, U.S. District Court for the District of Delaware (deposition testimony given and report filed in 2004).

- Deposition Testimony and Expert Report in Modern Engineering, Inc. v. CDI Corporation, Civil Action No. 03-5504, U.S. District Court for the Eastern District of Pennsylvania (deposition testimony given and report filed in 2004).

- Deposition Testimony and Expert Reports in Simon Wagman, Ruth Wagman and Richard S. Cohen v. Ronald J. Cohen, et al., Case No. 205147 consolidated with Case No. 206441, Circuit Court of Montgomery County, Maryland (deposition testimony given and reports filed in 2004).

- Expert Reports in Agere Systems, Inc. v. Broadcom Corporation, Case No. 03-3138-BMS, U.S. District Court for the Eastern District of Pennsylvania (reports filed in 2004).

- Expert Report in N. Douglas Fluke v. Heidrick & Struggles, Inc., Civil Action No. 02-8385, U.S. District Court for the Eastern District of Pennsylvania (report filed in 2004).

- Deposition Testimony and Expert Reports in Globe Savings Bank and Phoenix Capital Group v. United States, Civil Action No. 91-1550 C, U.S. Court of Federal Claims (deposition testimony given and reports filed in 2004).

- Trial and Deposition Testimony and Expert Report in Naturopathic Laboratories International, Inc. v. Dermal Research Laboratories, Inc., Case No. 4-02-00604-GAF, U.S. District Court, Western District of Missouri, Western Division (trial and deposition testimony given in 2005; report filed in 2004).

- Deposition Testimony and Expert Report in Capital Funding VI, LP v. Chase Manhattan Bank USA, National Association, Civil Action No. 01-CV-6093, U.S. District Court for the Eastern District of Pennsylvania (deposition testimony given and report filed in 2004).

- Trial and Deposition Testimony and Expert Reports in Immersion Corporation v. Sony Computer Entertainment America et al., Case No. C-02-0710 CW (WDB), U.S. District Court, Northern District of California, Oakland Division (trial and deposition testimony given and reports filed in 2004).

- Deposition Testimony and Expert Report in Alfred Dana III v. E.S. Originals, Inc. et al., Case No.: 96-6688-CIV-Huck-Turnoff, U.S. District Court, Southern District of Florida (deposition testimony given and report filed in 2004).

- Expert Report in Mylan Pharmaceuticals, Inc. and Esteve Quimica, S.A. v. Kremers Urban Development Company et al., C.A. No. 02-1628-GMS, U.S. District Court for the District of Delaware (report filed in 2004).

- Expert Report in AAI Corporation v. SRN, Inc. et al., Civil No. 03-C-02-012880, Circuit Court for Baltimore County, Maryland (report filed in 2004).

- Deposition Testimony and Expert Report in Sunbeam Products, Inc. v. 148977 Canada, Inc., and Robert Hale, Civil No. C-2002-85666DJ, Circuit Court for Anne Arundel County, Maryland (deposition testimony given and report filed in 2003).

- Expert Report in Ned Bade, et al. v. Lincoln National Corp. and Swiss RE Life & Health America, Inc., Cause No. 02D01-02060CT-258, Allen County Superior Court, State of Indiana (report filed in 2003).

- Trial and Deposition Testimony and Expert Report in Brine, Inc. and Sports Licensing, Inc. v. STX, Inc. and Warrior Lacrosse, Inc., Civil Action No. 99-40167, U.S. District Court, District of Massachusetts, Worcester Division (trial and deposition testimony given and report filed in 2003).

- Trial and Deposition Testimony and Expert Report in Imagexpo LLC v. Microsoft Corporation, Case No. 3:02CU751, U.S. District Court for the Eastern District of Virginia, Richmond Division (trial and deposition testimony given and report filed in 2003).

- Trial and Deposition Testimony in Transcore Holdings v. Rocky Mountain Mezzanine Fund II LP et al., Case No. 1410003193, JAMS Arbitration (trial and deposition testimony given in 2003).

- Expert Report in Pacific International Tool & Shear v. CertainTeed Corporation, Civil Action Case No. CV-020839Z, U.S. District Court, Western District of Washington at Seattle (report filed in 2003).

- Trial and Deposition Testimony and Expert Reports in II-VI, Inc. v. Saint-Gobain Industrial Ceramics, Inc., dba Bicron, Case No. 00-1794 (related to Civil Action No. 98 CV 1528H (CGA), U.S. District Court, Southern District of California), U.S. District Court, Western District of Pennsylvania (trial and deposition testimony given and reports filed in 2003).

- Expert Report in The City of Philadelphia Board of Pensions and Retirement et al. v. Ballard Spahr Andrews & Ingersoll LLP, Confidential Mediation (report filed in 2003).

- Deposition Testimony and Expert Report in Air Turbine Technology, Inc. v. Atlas Copco Tools and Assembly Systems AB, et al., Case No. 01-8288-CIV, U.S. District Court, Southern District of Florida (deposition testimony given and report filed in 2003).

- Deposition Testimony and Expert Report in Turbocare Division of Demag Delaval Turbomachinery Corp. v. General Electric Company, Civil Action No. 95-30069-MAP, U.S. District Court, District of Massachusetts (deposition testimony given in 1996, 1997 and 2003; report filed in 1997).

- Trial Testimony and Expert Report in Brown Manufacturing Corporation v. Alpha Lawn & Garden et al., Case No. 4:02-cv-02951-TLW-TER, U.S. District Court, District of South Carolina, Florence Division (trial testimony given in 2005; report filed in 2003).

- Trial and Deposition Testimony and Expert Report in Sigma Tool & Machine v. Nagayama Electronic Industry Company, Ltd., Case No. 01-cv-02936, U.S. District Court, District of Columbia (trial and deposition testimony given in 2003; report filed in 2002).

- Deposition Testimony and Expert Report in Oklahoma Medical Research Foundation v. Eli Lilly and Company, Case No. CIV-01-456-C, U.S. District Court, Western District of Oklahoma (deposition testimony given and report filed in 2003).

- Deposition Testimony and Expert Report in Genlyte Thomas Group, LLC v. NSI Enterprises, Inc., d/b/a Lithonia Lighting Co., Civil Action No. 3:00-CV-174-S, U.S. District Court, District of Delaware (deposition testimony given in 2003; report filed in 2002).

- Expert Report in Ecompex, Inc. v. Radian Systems, Inc., Case No. 02-1084-A, U.S. District Court, Eastern District of Virginia (report filed in 2002).

- Trial and Deposition Testimony and Expert Report in NTP, Inc. v. Research in Motion, Ltd., Case No. 3:01cv767, U.S. District Court, Eastern District of Virginia, Richmond Division (trial and deposition testimony given and report filed in 2002).

- Deposition Testimony and Expert Report in Datacom Warranty Corporation v. ABC Communications Corp, d/b/a ABC Telephone Systems, Case No. 1:01-CV-2303-TWT, U.S. District Court, Northern District of Georgia, Atlanta Division (deposition testimony given and report filed in 2002).

- Expert Report in Honeywell International, Inc. and Honeywell Intellectual Properties, Inc. v. Solutia, Inc., Case No. 01-423, U.S. District Court, District of Delaware (report filed in 2002).

- Trial and Deposition Testimony and Expert Report in Accucorp, Inc. and J.W.S. Delavau Company, Inc. v. Kalish, Inc., Case No. 01-cv-592, U.S. District Court, Eastern District of Pennsylvania (trial and deposition testimony given in 2002; report filed in 2001).

- Deposition Testimony and Expert Report in Structural Preservation Systems, Inc. v. Gerald Valente, Case No. C-1999-60027CN, Circuit Court of Maryland for Anne Arundel County (deposition testimony given and report filed in 2002).

- Deposition Testimony and Expert Report in D&N Bank, et al. v. United States of America, Civil Action No. 95-539-C, U.S. Court of Federal Claims (deposition testimony given in 2002; report filed in 2001).

- Deposition Testimony and Expert Report in Hill-Rom, Inc. and Hill-Rom Services, Inc. v. Ohmeda Medical and Datex-Ohmeda, Inc., Civil Action No. IP00-1500-C Y/G, U.S. District Court, Southern District of Indiana (deposition testimony given and report filed in 2002).

- Trial and Deposition Testimony and Expert Reports in Granite Management Corporation v. United States of America, Civil Action No. 95-515-C, U.S. Court of Federal Claims (trial and deposition testimony given and supplemental report filed in 2006; deposition testimony given and report filed in 2002).

- Expert Report in Becton Dickinson and Company v. Inverness Medical Technology, Inc., Civil Action No. 00-001-RRM, U.S. District Court, District of Delaware (report filed in 2002).

- Deposition Testimony and Expert Report in Superguide Corporation v. Directv Enterprises, Inc., Echostar Communications Corporation, et al., Case No. 00-144T, U.S. District Court, Western District of North Carolina, Asheville Division (deposition testimony given in 2002; report filed in 2001).

- Deposition Testimony and Expert Report in David Cain, et al. and the Federal Deposit Insurance Corporation (FDIC) v. United States, Case No. 95-499C, U.S. Court of Federal Claims (deposition testimony given in 2002; report filed in 2001).

- Trial Testimony and Expert Report in Nisus Corporation v. Perma-Chink Systems, Inc., Case No 3:98-CV-433, U.S. District Court, Eastern District of Tennessee, Knoxville Division (trial testimony given in 2005; report filed in 2001).

**Bankruptcy Cases**

- Trial Testimony, Expert Report and Declaration in re: Bob Nicholas Enterprises, Inc. (Debtor), W. Steve Smith, Trustee of the Estate of Bob Nicholas Enterprises, Inc. v. Nicholas/Earth Printing, LLC, et al., Bankruptcy Case No. 03-39036-H1-7, U.S. Bankruptcy Court, Southern District of Texas (Houston Division) (trial testimony given and declaration and report filed in 2006).

- Hearing Testimony and Declaration in re: Medical Technology, Inc., d/b/a Bledsoe Brace Systems (Debtor), Bankruptcy Case No. 05-47377-RFN-11, U.S. Bankruptcy Court, Northern District of Texas, Fort Worth Division (hearing testimony given and declaration filed in 2005).

- Deposition Testimony and Expert Reports in re: Merry-Go-Round Enterprises, Inc., MGR Distribution Corporation, MGRR, Inc. and Almeda Chess King, Inc., et al., Bankruptcy Case Nos. 94-50161 through 94-50163 and 94-53774; Deborah H. Devan, Chapter 7 Trustee v. AEI Music Networks, Inc., Adversary No. 98-5336, U.S. Bankruptcy Court, District of Maryland, Northern Division (deposition testimony given in 2004; reports filed in 2003).

- Deposition Testimony and Expert Report in re: Nelco, Ltd.; Estate of Nelco, Ltd. v. KPMG Peat Marwick, LLP, Adversary Proceeding No. 99-3109-T, U.S. Bankruptcy Court, Eastern District of Virginia, Richmond Division (deposition testimony given in 2002; report filed in 2001).

*Last updated 3.5.07*

Exhibit C

Prepared by Invotex Group

**NW Austin Municipal Utility District No.1 v. Alberto Gonzales, Attorney General of the US, et al.**
Financial Reporting History of the District From 1989 Through 2005

| Year | Type of Financial Document Available | Source |
|---|---|---|
| 1989 (Sep-30) | Audited general purpose financial statements and Supplemental Information | P009522-60 |
| 1990 (Sep-30) | General Fund and Debt Service Fund Revenues & Expenditures | Note 1 |
| 1991 (Sep-30) | Audited general purpose financial statements and Supplemental Information | Attachment to Official Statement, Series 1992 |
| 1992 (Oct-20) | Schedule of Costs and Independent Accountant's Report Concerning $2.7 Series 1992 Bonds | P000349-58 |
| 1993 (Sep-30) | Audited general purpose financial statements and Supplemental Information | P000714-46 |
| 1994 (Sep-30) | General Fund and Debt Service Fund Revenues & Expenditures | Note 2 |
| 1995 (Sep-30) | Audited general purpose financial statements, Supplemental Information and Single Audit Section | P002440-98 |
| 1996 (Sep-30) | Audited general purpose financial statements, Supplemental Information and Single Audit Section | Attachment to Official Statement, Series 1997 |
| 1997 (Sep-30) | Audited general purpose financial statements and Supplemental Information | P003499-541 |
| 1998 (Sep-30) | Audited general purpose financial statements and Supplemental Information | P003195-236 |
| 1999 (Sep-30) | Audited general purpose financial statements and Supplemental Information | P002828-68 |
| 2000 (Sep-30) | Audited general purpose financial statements and Supplemental Information | P004536-75 |
| 2001 (Sep-30) | Audited general purpose financial statements and Supplemental Information | P008400-40 |
| 2002 (Sep-30) | Audited general purpose financial statements and Supplemental Information | P005170-217 |
| 2003 (Sep-30) | Audited general purpose financial statements and Supplemental Information | Attachment to Official Statement, Series 2004 |
| 2004 (Sep-30) | General Fund and Debt Service Fund Revenues & Expenditures | Note 3 |
| 2005 (Sep-30) | Audited general purpose financial statements and Supplemental Information | P007778-818 |

Notes:
1/ Audited financial statements not available but General Fund and Debt Service Fund Revenues & Expenditure available as an attachment to the
   Official Statement for issuing Unlimited Tax Bonds, Series 1994.
2/ Audited financial statements not available but General Fund and Debt Service Fund Revenues & Expenditure available as an attachment to the
   Official Statement for issuing Unlimited Tax Refunding Bonds, Series 1998.
3/ Audited financial statements not available but General Fund and Debt Service Fund Revenues & Expenditure available as a comparative schedule
   in the Audited financial statements for 2005 (P007815).

Exhibit D

# NW Austin Municipal Utility District No.1 v. Alberto Gonzales, Attorney General of the US, et al.

District's Pre-Clearance Submissions under Section 5 of the VRA

| Pre-Clearance Submission # | Date Submitted | Type of Submission |
|---|---|---|
| 1986-1537 | 11/25/1986 | Creation, Polling place, Bilingual Election Procedure |
| 1988-1404 | 3/21/1988 | Polling place |
| 1990-1423 | 3/6/1990 | Polling place |
| 1996-1732 | 4/4/1996 | Polling place |
| 1996-2595 | 6/6/1996 | Notice & Cancellation of Election |
| 1998-1264 | 3/26/1998 | Polling place, Annexation |
| 2002-1980 | 3/27/2002 | Polling place |
| 2004-0946 | 2/26/2004 | Polling place, Early voting, Electronic ballot |

Source:
NW Austin MUD No.1 submissions to Civil Rights Division, DOI.

Prepared by Invotex Group

Exhibit E

**NW Austin Municipal Utility District No.1 v. Alberto Gonzales, Attorney General of the US, et al.**
Revenues and Expenditures of the District - 1989 through 2005

| | 1989 | 1990 | 1991 | 1992 | 1993 | 1994 | 1995 | 1996 | 1997 | 1998 | 1999 | 2000 | 2001 | 2002 | 2003 | 2004 | 2005 | 1989-2005 Average |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **General Fund Revenues** | | | | | | | | | | | | | | | | | | |
| Water and wastewater services, including penalties | $ 31,594 | $ 91,010 | $ 107,479 | 102,150 | 146,034 | 21,537 | 135,898 | 117,725 | 125,032 | 116,543 | 160,234 | 123,503 | 141,505 | 161,683 | 138,211 | 175,645 | 135,782 | 113,534 |
| Tax revenue, including penalties | 112,775 | 182,450 | 166,825 | 45,100 | 56,950 | 49,975 | 38,859 | 40,425 | 40,069 | 63,175 | 53,025 | 72,450 | 5,250 | 22,575 | 18,900 | 25,200 | 48,825 | 61,342 |
| Tap fees | 3,006 | 24,418 | 29,510 | 13,994 | 12,675 | | 11,965 | 12,552 | 10,522 | 13,458 | 19,768 | 30,417 | 31,401 | 14,051 | 9,645 | 9,811 | 22,481 | 16,681 |
| Interest | 70,408 | 19,103 | | | | 14,709 | | | | | | | | | | | | 18,571 |
| Developer contribution | | | | | 224,000 | | 391,678 | 108,322 | | | | | | | | | | 29,412 |
| Intergovernmental | | | | | | | | | | 50,000 | | 8,500 | | | | | | 3,441 |
| Sale of easement | | | 952 | | | | | | | | 750 | | | | | | | 813 |
| Miscellaneous | 330 | 5,249 | | | | | | | 883 | | | | | 1,984 | 928 | 900 | 1,849 | 10,984 |
| Other Financing Sources | | 39,224 | | | | | | 24,624 | | | | | | | | | | |
| Total General Fund Revenues | 218,113 | 361,454 | 369,378 | 162,196 | 439,659 | 86,221 | 731,328 | 313,648 | 176,586 | 263,176 | 233,777 | 234,870 | 178,156 | 200,293 | 167,684 | 210,756 | 208,937 | 268,000 |
| **General Fund Expenditures** | | | | | | | | | | | | | | | | | | |
| **Current** | | | | | | | | | | | | | | | | | | |
| Water and wastewater purchases | 43,298 | 31,178 | 60,177 | 16,498 | 20,300 | 52,325 | 38,850 | 99,050 | 9,450 | 3,850 | 17,507 | 23,949 | 27,937 | 39,466 | 34,751 | 36,276 | 39,998 | 31,817 |
| Sewer tap | 42,000 | 66,750 | 63,600 | 39,725 | | | | | | | | | | | | | | 25,641 |
| Inspection fees | 5,123 | 8,891 | 6,842 | 331 | | | | | | | | | | | | | | 1,246 |
| Repairs and maintenance | 665 | 40,057 | 46,111 | 24,319 | 24,794 | 33,334 | 33,609 | 53,428 | 46,995 | 17,676 | 17,507 | 23,949 | 27,917 | 39,466 | 34,751 | 36,276 | 39,998 | 31,817 |
| Joint review facility | | | | 48,320 | | | | | | | | | | | | | | 9,582 |
| Legal fees | 4,388 | 41,004 | 22,445 | 27,862 | 21,246 | 24,672 | 26,384 | 29,478 | 25,078 | 29,485 | 25,117 | 25,401 | 29,239 | 33,388 | 49,088 | 45,807 | 50,405 | 30,956 |
| Engineering fees | | 33,365 | 7,519 | 17,688 | 16,446 | 11,458 | 11,486 | 10,231 | 13,252 | 10,867 | 13,268 | 15,086 | 15,923 | 13,645 | 4,187 | 3,389 | 2,996 | 11,803 |
| Management services | 5,000 | 13,877 | 16,283 | 10,129 | 10,444 | 10,264 | 10,181 | 10,256 | 10,256 | 10,352 | 12,935 | 13,634 | 13,698 | 13,781 | 13,545 | 13,838 | 11,682 |
| Auditing fees | | 6,000 | 7,292 | 6,036 | 5,571 | 6,200 | 8,250 | 9,000 | 11,000 | 7,000 | 7,000 | 7,400 | 7,800 | 7,800 | 7,800 | 7,500 | 10,000 | 7,173 |
| Insurance | | 4,207 | 3,892 | 3,982 | 3,976 | 3,981 | 3,976 | 3,857 | 3,823 | 3,700 | 4,535 | 4,790 | 4,790 | 2,710 | 2,771 | 2,772 | 1,523 | 3,487 |
| Miscellaneous | 638 | 3,552 | 3,188 | 1,168 | 1,619 | 2,517 | 2,074 | 12,027 | 2,577 | 3,290 | 668 | 834 | 2,059 | 7,231 | 5,007 | 5,625 | 1,484 | 3,268 |
| Director fees | 800 | 1,950 | 2,450 | 2,950 | 3,100 | 3,150 | 3,950 | 6,700 | 5,900 | 7,400 | 5,700 | 7,105 | 5,813 | 6,800 | 5,529 | 5,521 | 8,720 | 4,843 |
| Election expense | | | | | | | | | | | | | | | | | | 127 |
| Electricity | | 1,546 | 1,844 | 2,166 | | | | | | | | | | | | | | 202 |
| Other professional fees | 1,589 | | | | | | | | | | | | 1,389 | | 14,650 | 5,233 | | 1,242 |
| Lab fees | 1,546 | | 839 | | | | | | | | | | | | | | | 48 |
| Bad debt | | | 2,186 | | | | | | | | | | | | | | | 129 |
| Tax appraisal / collection fees | | | 715 | 1,036 | 1,316 | 646 | 1,204 | 1,568 | 933 | 959 | 1,101 | 848 | 989 | 1,108 | 910 | 3,924 | 704 | 1,055 |
| Capital Outlay | | | | 14,569 | 73,885 | 41,027 | 562,723 | 232,822 | | 1,729 | 22,504 | | | 8,021 | 1,973 | | 23,235 | 57,778 |
| Transfer out | | | | | | | 11,004 | | | | | | | | | | | 9,152 |
| Total General Fund Expenditure | 101,912 | 319,625 | 294,486 | 216,633 | 327,677 | 189,564 | 714,111 | 468,344 | 129,264 | 96,050 | 107,552 | 98,268 | 107,934 | 135,346 | 140,647 | 130,092 | 152,903 | 219,424 |
| Excess (Deficiency) of General Fund Revenues Over Expenditures | 116,201 | 42,029 | 74,892 | (54,437) | 111,982 | (103,343) | 17,217 | (154,666) | 47,242 | 167,126 | 126,225 | 136,602 | 70,222 | 64,942 | 27,037 | 80,664 | 56,034 | 48,585 |
| Annual Debt Service Interest Expense (Exhibit G) | | | | | 166,910 | 182,080 | 286,375 | 321,140 | 321,140 | 389,628 | 284,255 | 379,896 | 402,561 | 634,751 | 730,247 | 731,967 | 760,583 | 329,914 |
| District's Total Expenditure (Total General Fund Expenditure & Debt Service Interest Expense 1989 - 2005) | | | | | | | | | | | | | | | | | | $ 3,548,338 |

Source: General Fund Revenues and Expenditures compiled from the Attachments to Official Statements for bond issuance.

Prepared by Investex Group

Exhibit F

Prepared by Invotex Group

**NW Austin Municipal Utility District No.1 v. Alberto Gonzales, Attorney General of the US, et al.**
Estimated Section 5 Expenditure for the 8 Submissions Since 1986

| Year | Pre-Clearance Submission # [1] | Date Submitted [1] | Type of Submission [1] | Est. Sec. 5 Expenditure | |
|---|---|---|---|---|---|
| 1986 | 1986-1537 | 11/25/1986 | Creation, Polling place, Bilingual Election Procedure | $ 340 | [2] |
| 1987 | n/a | n/a | n/a | - | |
| 1988 | 1988-1404 | 3/21/1988 | Polling place | 340 | [2] |
| 1989 | n/a | n/a | n/a | - | |
| 1990 | 1990-1423 | 3/6/1990 | Polling place | 340 | [2] |
| 1991 | n/a | n/a | n/a | - | |
| 1992 | n/a | n/a | n/a | - | |
| 1993 | n/a | n/a | n/a | - | |
| 1994 | n/a | n/a | n/a | - | |
| 1995 | n/a | n/a | n/a | - | |
| 1996 | 1996-1732 | 4/4/1996 | Total [3] | 764 | [2] |
| 1997 | n/a | n/a | n/a | - | |
| 1998 | 1998-1264 | 3/26/1998 | Polling place, Annexation | 1,242 | [2] |
| 1999 | n/a | n/a | n/a | - | |
| 2000 | n/a | n/a | n/a | - | |
| 2001 | n/a | n/a | n/a | - | |
| 2002 | 2002-1980 | 3/27/2002 | Polling place | 484 | [2] |
| 2003 | n/a | n/a | n/a | - | |
| 2004 | 2004-0946 | 2/26/2004 | Polling place, Early voting, Electronic ballot | 953 | [4] |
| 2005 | n/a | n/a | n/a | | |

Total Estimated Section 5 Expenditure                    $ 4,463

Average Annual Section 5 Expenditure Over the Life of the District          $ 223 [5]

Average Estimated Sec.5 Expense as a % of Average General Fund Expenditure
Plus Debt Service Interest from Inception Through 2005          0.04% [6]

Source & Notes:
[1] NW Austin MUD No.1 submissions to Civil Rights Division, United States DOJ.
[2] Estimate of time spent on the first seven Section 5 pre-clearance submissions based on deposition testimony of Sharlene Collins of 2 hours for polling place submissions and 6 hours when it included annexation work. Ms. Collins actual billing rate in an invoice dated March 11, 1993 was $170. She testified that "I charge most of my MUD clients at least my older ones, $295 an hour." (Collins deposition Volume 2 at p83) This represents an annual rate of increase in Collins' billing rate of 4.02%. For submissions after 1993, I arrived at her billing rate using the derived rate of increase. For the first three submissions before 1993, I have conservatively used the $170 rate without any downward adjustment.
[3] Total of two submissions made in 1996 is $768:
   #1996-1732 submitted on 4/4/96 for Polling Place change - $384
   #1996-2595 submitted on 6/6/96 for Notice & Cancellation of Election - $384
[4] Estimate of the cost of the 2004 submission based on the February 29, 2004 invoice submitted by Potts & Reilly, LLP. Ms. Qualtrough and Mr. Reilly's time spent on Sec. 5 submissions each day have been estimated from their total time billed to the District on those days using the descriptions provided by them in the invoice:
   Ms. Qualtrough - 2/10 - 1 hour; 2/11 - 0.5 hours; 2/16 - 1.6 hours; 2/22 - 0.5 hours; 2/24 - 0.65 hours; 2/25 - 0.3 hours; 2/26 - 0.45;
   Total - 4.65 hours; Actual billing rate - $195. Therefore, cost of Ms. Qualtrough's time = $875
   Mr. Reilly - 2/16 - 0.4 hours; Actual billing rate - $195. Therefore, cost of Mr. Reilly's time - $78
   Total cost of Section 5 submissions = $875 + $78 = $953
   Even if Ms. Qualtrough's and Mr. Reilly's time was overstated by considering all their time spent on the specific days, it would only be a total of 17.5 and 0.8 hours respectively i.e. $3,218.5 or 8.59% of Average of General Fund Expenditure Plus Debt Service Interest Expense over the 1989-2005 period.
[5] 1986 - 2005 (20 years).
[6] $629 (Exhibit F) / $548,338 (Exhibit E).

Exhibit G

Prepared by Invotex Group

# NW Austin Municipal Utility District No.1 v. Alberto Gonzales, Attorney General of the US, et al.
## Annual Outstanding Debt and Debt Service from 1989 through 2005

| Year | Outstanding Debt | Annual Debt Service | | | Source |
|------|------------------|---------------------|--------|-------|--------|
| | | Principal Retirement | Interest | Other | |
| 1989 | - | - | - | - | 1/ |
| 1990 | - | - | - | - | 2/ |
| 1991 | - | - | - | - | 3/ |
| 1992 | - | - | - | - | 4/ |
| 1993 | 2,700,000 | - | 166,910 | 600 | 4/ |
| 1994 | 2,700,000 | - | 182,080 | 600 | 5/ |
| 1995 | 4,700,000 | - | 286,375 | 1,712 | 5/ |
| 1996 | 4,700,000 | - | 321,140 | 1,465 | 6/ |
| 1997 | 6,040,000 | 60,000 | 321,140 | 700 | 7/ |
| 1998 | 6,532,899 | 90,000 | 389,628 | 1,552 | 8/ |
| 1999 | 8,244,352 | 225,000 | 284,255 | 4,886 | 9/ |
| 2000 | 7,988,941 | 295,000 | 379,896 | 1,434 | 10/ |
| 2001 | 13,430,304 | 310,000 | 402,561 | 2,034 | 11/ |
| 2002 | 12,972,898 | 340,000 | 634,751 | 1,834 | 12/ |
| 2003 | 12,143,029 | 245,745 | 730,247 | 1,834 | 13/ |
| 2004 | 12,492,772 | 232,457 | 731,967 | - | 14/ |
| 2005 | 12,239,187 | 216,476 | 760,583 | 122,684 | 14/ |

Source:
1/ P009540.
2/ Financial statements not available but presumed to be Zero based on 1992 amounts.
3/ Attachment to Official Statement, Series 1992.
4/ P000718, P000719 and P000726.
5/ P002446, P002447.
6/ Attachment to Official Statement, Series 1997.
7/ P003504 - P003506.
8/ P003200 - P003201.
9/ P002833 - P002834.
10/ P004541 - P004542.
11/ P008404 - P008405.
12/ P005178 - P005180.
13/ Attachment to Official Statement, Series 2004.
14/ P007787 - P007788, P007796 and P007815.

Exhibit H

**NW Austin Municipal Utility District No.1 v. Alberto Gonzales, Attorney General of the US, et al.**
List of Documents Relied Upon

| Title | Date | Alpha | Low | High |
|---|---|---|---|---|
| Deposition transcript of Sharlene Collins (rough draft) | | | | |
| Deposition transcript of Sharlene Collins Volume 2 (rough draft) | | | | |
| Deposition transcript of Donald Shelly Zimmerman (rough draft) | | | | |
| Deposition transcript of Kerrie Jo Qualtrough (rough draft) - 02/26/07 | | | | |
| Deposition transcript of Mr. Reilly (rough draft) | | | | |
| Deposition transcript of Dana Debeauvoir - 02/26/07 | | | | |
| Deposition transcript of William Ferguson - 02/20/07 | | | | |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | July 16, 1991 | P | 158 | 185 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | September 10, 1991 | P | 98 | 148 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | October 15, 1991 | P | 64 | 97 |
| Statement of Revenue and Expenses - 12/1/90 to 12/31/90 | | P | 260 | 282 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | October 20, 1992 | P | 341 | 358 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | February 16, 1993 | P | 999 | 1014 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | March 23, 1993 | P | 941 | 998 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | December 21, 1993 | P | 702 | 770 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | February 15, 1994 | P | 1422 | 1460 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | September 26, 1994 | P | 1202 | 1221 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | November 15, 1994 | P | 1130 | 1162 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | January 5, 1995 | P | 1729 | 1843 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | July 18, 1995 | P | 2018 | 2055 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | November 14, 1995 | P | 1863 | 1900 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | January 16, 1996 | P | 2432 | 2508 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | April 8, 1997 | P | 4041 | 4076 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | October 14, 1997 | P | 3774 | 3795 |
| Exhibits C-F Financial Statements | | P | 3489 | 3559 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | July 14, 1998 | P | 3693 | 3730 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | September 15, 1998 | P | 3603 | 3624 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | January 12, 1999 | P | 3186 | 3250 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | January 11, 2000 | P | 2820 | 2881 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | March 14, 2000 | P | 2711 | 2792 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | June 13, 2000 | P | 2630 | 2653 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | July 11, 2000 | P | 2621 | 2629 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | January 9, 2001 | P | 4528 | 4601 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | September 11, 2001 | P | 4256 | 4280 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | March 21, 2003 | P | 5121 | 5237 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | August 14, 2003 | P | 5518 | 5582 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | November 13, 2003 | P | 5356 | 5398 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | February 19, 2004 | P | 6127 | 6209 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | May 6, 2004 | P | 4879 | 4961 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | July 8, 2004 | P | 4757 | 4815 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | September 9, 2004 | P | 4603 | 4689 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | October 14, 2004 | P | 6494 | 6558 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | March 21, 1988 | P | 8581 | 8658 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | January 9, 1990 | P | 9510 | 9560 |

Prepared by Invotex Group

Exhibit H

**NW Austin Municipal Utility District No:1 v. Alberto Gonzales, Attorney General of the US, et al.**
List of Documents Relied Upon

| Title | Date | Alpha | Low | High |
|---|---|---|---|---|
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | July 17, 1990 | P | 9287 | 9313 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | August 14, 1990 | P | 9255 | 9286 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | January 8, 2002 | P | 8386 | 8455 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | November 21, 2002 | P | 7920 | 7967 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | November 11, 2004 | P | 6329 | 6493 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | January 13, 2005 | P | 6826 | 6925 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | February 15, 2005 | P | 6667 | 6825 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | March 10, 2005 | P | 6571 | 6666 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | May 19, 2005 | P | 7148 | 7198 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | June 23, 2005 | P | 7060 | 7139 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | July 14, 2005 | P | 7017 | 7059 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | August 18, 2005 | P | 6927 | 7016 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | September 15, 2005 | P | 7472 | 7524 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | November 27, 2005 | P | 7343 | 7378 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | January 18, 2006 | P | 7758 | 7877 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | May 23, 2006 | P | 7526 | 7633 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | | P | 10319 | 10411 |
| Minutes of Meeting of Board of Directors of NW Austin MUD NO. 1 | | P | 9708 | 9751 |
| Joint Election Agreement dated March 8, 2006 | n/a | n/a | n/a | n/a |
| Complaint | n/a | n/a | n/a | n/a |
| Scheduling Order | n/a | n/a | n/a | n/a |
| Private Defendant-Intervenors' Joint First Set of Requests for Production of Documents to Plaintiff | n/a | n/a | n/a | n/a |
| Private Defendant-Intervenors' Joint First Set of Interrogatories to Plaintiff | n/a | n/a | n/a | n/a |
| 11/25/86 Section 5 Submission No 1986-1537 | n/a | n/a | n/a | n/a |
| 03/21/88 Section 5 Submission No 1988-1404 | n/a | n/a | n/a | n/a |
| 03/06/90 Section 5 Submission No 1990-1423 | n/a | n/a | n/a | n/a |
| 04/04/96 Section 5 Submission No 1996-1732 | n/a | n/a | n/a | n/a |
| 05/30/96 Phone Commission Memo between Collins and DOJ | n/a | n/a | n/a | n/a |
| 06/03/96 letter from DOJ to Collins re 04/05/96 Section 5 Submission | n/a | n/a | n/a | n/a |
| 06/06/96 Section 5 Submission No. 1996-2595 | n/a | n/a | n/a | n/a |
| 06/27/96 Phone Communication Memo between Collins and DOJ | n/a | n/a | n/a | n/a |
| 08/01/96 letter from DOJ to Collins re 06/10/96 Section 5 Submission | n/a | n/a | n/a | n/a |
| 03/26/98 Section 5 Submission no 1998-1264 | n/a | n/a | n/a | n/a |
| 05/19/98 Letter from DOJ to Amburst re Annexation adopted 04/14/97 | n/a | n/a | n/a | n/a |
| 03/21/02 Section 5 Submission No 2002-1980 | n/a | n/a | n/a | n/a |
| 05/24/02 Letter from DOJ to Amburst re Polling Place Change | n/a | n/a | n/a | n/a |
| 02/26/04 Section 5 Submission No 2004-0946 | n/a | n/a | n/a | n/a |
| 03/18/04 Phone Communication Memo between Qualtrough and DOJ | n/a | n/a | n/a | n/a |
| 04/08/04 Letter from DOJ to Qualtrough re Polling Place Change | n/a | n/a | n/a | n/a |
| Invoice dated February 29, 2004 from Potts & Reilly, L.L.P. | n/a | n/a | n/a | n/a |
| Northwest Austin MUD #1 - Approved Budget 2005 - 2006 | n/a | n/a | n/a | n/a |
| Federal Register, Vol. 40, No. 185. | n/a | n/a | n/a | n/a |
| Official Statement, Northwest Austin Municipal Utility District, Unlimited Tax Bonds, Series 1992 | n/a | n/a | n/a | n/a |
| Official Statement, Northwest Austin Municipal Utility District, Unlimited Tax Bonds, Series 1994 | n/a | n/a | n/a | n/a |

Prepared by Invotex Group

Exhibit H

**NW Austin Municipal Utility District No:1 v. Alberto Gonzales, Attorney General of the US, et al.**
List of Documents Relied Upon

| Title | Date | Alpha | Low | High |
|---|---|---|---|---|
| Official Statement, Northwest Austin Municipal Utility District, Unlimited Tax Bonds, Series 1997 | n/a | n/a | n/a | n/a |
| Official Statement, Northwest Austin Municipal Utility District, Unlimited Tax Refunding Bonds, Series 1998 | n/a | n/a | n/a | n/a |
| Official Statement, Northwest Austin Municipal Utility District, Unlimited Tax Bonds, Series 1999 | n/a | n/a | n/a | n/a |
| Official Statement, Northwest Austin Municipal Utility District, Unlimited Tax Bonds, Series 2001 | n/a | n/a | n/a | n/a |
| Official Statement, Northwest Austin Municipal Utility District, Unlimited Tax Refunding Bonds, Series 2004 | n/a | n/a | n/a | n/a |
| Official Statement, Northwest Austin Municipal Utility District, Unlimited Tax Refunding and Improvement Bonds, Series 2006 | n/a | n/a | n/a | n/a |
| "The Politicization of Justice Department/Decisionmaking Under Section 5 of the Voting Rights Act: Is it a Problem and What should Congress Do?", By Mark A. Posner | n/a | n/a | n/a | n/a |
| "Public Citizen Fights for Minority Rights, Defends Voting Rights Act Against Texas Legal Challenge", By Emma Cheuse | n/a | n/a | n/a | n/a |
| Statement of Bradley Schlozman of Acting Asst. Attorney Gen. Civil Right Division Department of Justice Before The Subcommittee On The Constitution Committee On The Judiciary U.S. House of Representatives Concerning The Voting Rights Act: Section 5 Of The Act-History, Scope, and Purpose | n/a | n/a | n/a | n/a |
| Oversight Hearing on "Voting Rights Act: An Examination of the Scope and Criteria for Coverage Under the Special Provisions of the Act", Statement of J. Gerald Hebert | n/a | n/a | n/a | n/a |
| U.S. Commission on Civil Rights Briefing Report April 2006: Reauthorization of the Temporary Provisions of the Voting Rights Act | n/a | n/a | n/a | n/a |
| Congressional Power to Extend Pre-clearance Under the Voting Rights Act, By Pamela S. Karlan | n/a | n/a | n/a | n/a |
| 446 U.S. 156, 100 S.Ct.1548 | n/a | n/a | n/a | n/a |
| NW MUD District No. 1 Fact Sheet Budget Year 2005/2006 from www.nwamud.com | n/a | n/a | n/a | n/a |
| Congressional Power to Renew the Pre-clearance Provisions of the Voting Rights Act After Tennessee v. Lane by Richard L. Hasen | n/a | n/a | n/a | n/a |
| "Voting Wrongs", By Quin Hillyer <http://www.spectator.org> | n/a | n/a | n/a | n/a |
| H.R. 9 To Amend the Voting Rights Act of 1965 | n/a | n/a | n/a | n/a |
| http://www.usdoj.gov/crt/voting/notices/vnote032902.html | n/a | n/a | n/a | n/a |
| http://judiciary.senate.gov/print_testimony.cfm?id=1955&wit_id=5464 | n/a | n/a | n/a | n/a |
| http://www.aclu.org/votingrights/gen/26259pcs20060727.html | n/a | n/a | n/a | n/a |
| http://www.usdoj.gov/crt/voting/sec_5/making.htm | n/a | n/a | n/a | n/a |
| http://www.usdoj.gov/crt/voting/sec_5/about.htm | n/a | n/a | n/a | n/a |
| http://voteflaw.com/press08312006.htm | n/a | n/a | n/a | n/a |
| http://www.votingrights.org/states/ | n/a | n/a | n/a | n/a |
| http://www.votingrights.org/more.php | n/a | n/a | n/a | n/a |

Prepared by Invotex Group