# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| **LEAGUE OF UNITED LATIN AMERICAN CITIZENS, ET AL.** | § | |
| **vs.** | § | **CIVIL ACTION NO. 2:03-CV-354** |
| **RICK PERRY, ET AL.** | § | **Consolidated** |

## MOTION OF THE JACKSON PLAINTIFFS AND DEMOCRATIC CONGRESSIONAL INTERVENORS FOR AN AWARD OF ATTORNEYS' FEES AND COSTS[1]

The Jackson Plaintiffs and the Democratic Congressional Intervenors (the "Movants")[2] hereby move for an award of attorneys' fees and costs as prevailing parties under 42 U.S.C. § 1973*l*(e), 42 U.S.C. § 1988, 28 U.S.C. § 1920, and Fed. R. Civ. P. 54(d). As explained below, Movants prevailed on one of the three claims they made in this case: They sought and won a judgment invalidating and replacing the State's 2003 congressional redistricting plan (the "2003 Plan" or "Plan 1374C") in South and West Texas because it illegally injured Latino voters.[3] Consequently, Movants seek fees representing one-third of the time reasonably expended on this case. Movants also have taken other steps to assure that their fee request is conservative and reasonable. They

---

[1] In three-judge court cases, a motion for an award of attorneys' fees and expenses is heard and determined by a single judge. *See* 28 U.S.C. § 2284(b)(3).

[2] The term "Jackson Plaintiffs" as used in this motion also includes the Democratic Congressional Intervenors. The Democratic Congressional Intervenors took the identical positions as the Jackson Plaintiffs on all matters relating to the Latino claims in South and West Texas, and thus Democratic Congressional Intervenors are entitled to recover fees and costs to the same extent as the Jackson Plaintiffs. The Jackson Plaintiffs and the Democratic Congressional Intervenors nearly always filed joint pleadings and briefs throughout this litigation to avoid duplication. In keeping with that approach, they have jointly submitted this motion for attorneys' fees and costs.

[3] Other parties also played a role in producing this favorable outcome, but the role of the Jackson Plaintiffs was certainly central enough to justify full compensation for the one-third of their time that they conservatively estimate was devoted to the issues on which they prevailed.

Perales Decl.
00330

**EX. 12**

have excluded all time billed during a phase of the case focused on the mid-decade partisan-gerrymandering claim; they also have excluded certain other time in the exercise of sound billing judgment; and they have not sought fees and expenses for two of their co-counsel (Mr. Carroll and Mr. Jones).

## I.     The Standards Governing Awards of Attorneys' Fees and Costs

The enforcement of federal civil-rights laws depends upon "private litigation as a means of securing compliance with the law." *Newman v. Piggie Park Enters., Inc.*, 390 U.S. 400, 401-02 (1968). The availability of fee awards is critical if private parties are to undertake litigation to vindicate our Nation's civil-rights laws. *See id.*

A plaintiff "prevails" by obtaining "actual relief on the merits of his claim that 'materially alters the legal relationship between the parties by modifying defendants' behavior in a way that directly benefits the plaintiff.'" *Dean v. Riser*, 240 F.3d 505, 508-09 (5th Cir. 2001) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111 (1992)). Thus, if "the plaintiff has succeeded on 'any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit,' the plaintiff has crossed the threshold to a fee award." *State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989) (citation omitted).

Failure to prevail on all claims does not affect entitlement to attorneys' fees but may affect the amount to which the plaintiff is entitled. When a plaintiff succeeds on only some of the claims for relief, the court must determine the extent to which the claims are separate and distinct from one another. If the claims "involve a common core of facts or [are] based on related legal theories," then a plaintiff who prevails on some claims will likely be entitled to full attorneys' fees covering his work on all claims.

Perales Decl.
00331

*Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983). But if the claims are unrelated, they must be "treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim." *Id.* Here, all the claims did involve a common core of facts; but in an abundance of caution, the Jackson Plaintiffs propose to reduce the lodestar amount of attorneys' fees and expenses to reflect the fact that they prevailed only on their claims on behalf of Latino voters in South and West Texas.

The fees and costs that Plaintiffs seek are reasonable for litigation of this scope. A fee award is calculated using the lodestar method, which involves multiplying "the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Blum v. Stenson*, 465 U.S. 886, 888 (1984). The lodestar "is presumed to be the reasonable fee," *id.*, and "includes most, if not all, of the relevant factors constituting a reasonable attorneys' fee," *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 566 (1986).

## II. Movants Prevailed on Their Latino Claims in South and West Texas.

The Jackson Plaintiffs sought three types of relief in this lawsuit. *First*, they sought a judgment invalidating and replacing the State's 2003 Plan in South and West Texas because it illegally injured Latino voters. *Second*, they sought a judgment invalidating the 2003 Plan in Dallas-Fort Worth because it illegally injured African-American voters. *Third*, they sought a judgment invalidating and replacing the entire 2003 Plan because it was an unconstitutional partisan gerrymander that illegally injured Democratic voters. Plaintiffs ultimately prevailed only on the first claim and therefore seek attorneys' fees and costs to cover only the work addressing Latino voters in South and West Texas. Because this case has involved multiple parties and claims and a long

period of time, we recount the Jackson Plaintiffs' role in some detail. By highlighting the Jackson Plaintiffs' role, we do not mean to suggest that other plaintiffs did not make valuable contributions to this litigation or are not entitled to their own awards of attorneys' fees and costs.

## A.     The Jackson Plaintiffs' Complaint

The Jackson Plaintiffs include 13 Latino registered voters, 7 of whom reside in South and West Texas — specifically, in Districts 15, 21, 23, 25, and 28. *See* Am. Compl. ¶¶ 10-45 (filed Nov. 7, 2003). They alleged, *inter alia*, that the 2003 Plan left "[m]ore than three hundred thousand Hispanics" in District 23, "where they will have no chance to elect their preferred candidates." *Id.* ¶ 63. They further alleged that the "bacon strip" districts — including District 25, which the State hoped would "compensate" for loss of District 23 as a Latino opportunity district — illegally ran from "the Mexico border . . . more than 300 miles north, grabbing just enough Hispanics to satisfy the State's self-imposed quota for 'Hispanic districts.'" *Id.* ¶ 6.

Count I of the amended complaint therefore alleged a violation of Section 2 of the Voting Rights Act, 42 U.S.C. § 1973. *Id.* ¶ 65. Count II alleged that the 2003 Plan violated the Equal Protection Clause because it "intentionally discriminate[d] against . . . Hispanic citizens." *Id.* ¶ 67. Count III alleged a further equal-protection violation under the "*Shaw* doctrine" because District 25 (as well as its "bacon strip" neighbors to the east and west, Districts 15 and 28) was an unconstitutional racial gerrymander "drawn with excessive and unjustified use of race and racial data." *Id.* ¶ 69.

**Perales Decl.**
**00333**

## B. The Joint Final Pretrial Order

Following a month of intensive discovery, on December 3, 2003, the parties filed pretrial briefs and a Joint Final Pretrial Order. The Order noted the Jackson Plaintiffs' claims with regard to South and West Texas and stipulated that the Jackson Plaintiffs had standing to raise those claims. Order at 7, 13-16. Other than the Jackson Plaintiffs and the Democratic Congressional Intervenors, no other party raised a racial-gerrymandering claim at any point in this litigation. And no other party raised any claim whatsoever against District 25, the bizarrely elongated McAllen-to-Austin "bacon strip" district.

## C. The Jackson Plaintiffs' Trial Brief

The Jackson Plaintiffs devoted 27 of the 41 pages of their trial brief to laying out the law and facts applicable to their South and West Texas claims. *See* Trial Br. at 1-11, 18-33. The trial brief's introduction set out the facts underlying those claims:

> Republican Congressman Henry Bonilla in District 23 was rapidly heading toward defeat, having won only 8 percent of the Hispanic vote in 2002. The only solution was to eliminate the Hispanic voting majority in that district by excising half of Webb County and replacing Hispanics with Republican-voting Anglos from suburban Bexar County and the Hill Country northwest of San Antonio. . . .
>
> . . . Because of the transformation of Congressman Bonilla's District 23 into one dominated by Anglos, there was an apparent need to produce new electoral opportunities for Hispanics elsewhere. This was accomplished by insertion into the border region of one more majority-Hispanic district, new District 25. But because District 23 would still contain about 350,000 "wasted" Hispanic voters, the addition of a new Hispanic district could only be accomplished by drawing District 25 as linking part of McAllen with the heavily Hispanic portion of Travis County 300 miles to the north — and comparably elongating the adjoining districts. Because of their peculiar shapes, Districts 15, 25, and 28 have been termed the new "bacon strip" districts.

**Perales Decl.
00334**

*Id.* at 4-5; *see also id.* at 18-23 (describing how the 2003 Plan illegally "cracked" Latino voters in the Rio Grande region); *id.* at 30-33 (describing how the 2003 Plan illegally classified South and West Texas voters on the basis of their ethnicity).

### D.     The Trial

At trial, the Jackson Plaintiffs' expert and lay witnesses explained in detail how the 2003 Plan injured Latino voters in South and West Texas. Their leadoff witness, Professor Allan J. Lichtman , testified that the 2003 Plan would dilute Latino voter opportunities in the area of the State covered by District 23. *See* Jackson Pls.' Ex. 1, at 49-64; Tr., Dec. 11, 2003, 1:00 p.m., at 58-59, 140-56, 164-71 (testimony of Prof. Lichtman). Professor Lichtman's report and testimony presented 20 charts and tables of data directly relating to the Jackson Plaintiffs' South and West Texas claims. *See* Jackson Pls.' Exs. 7, 9-11, 25-32, 34-35, 39-43. Professor Lichtman also testified that the 2003 Plan's redrawing of South and West Texas intentionally discriminated against Latinos and could not be justified by traditional, nonracial districting principles such as compactness, preservation of communities of interest, or respect for county or municipal lines. *See* Tr., Dec. 11, 2003, 1:00 p.m., at 148-49 (testimony of Prof. Lichtman). Finally, Professor Lichtman testified that Latino electoral opportunities would be significantly weakened in "bacon strip" District 15 and that, in the neighboring "bacon strip" District 25, a Latino-preferred candidate might well lose to "a heavily funded Anglo incumbent" because the district stretched across parts of "four media markets." *Id.* at 150-51, 154-56.

The Jackson Plaintiffs' second expert witness, Professor John R. Alford, testified that the bizarre "bacon strip" districts, especially District 25, reflected excessive attention

Perales Decl.
00335

to ethnicity, and that the differential treatment of incumbents based on their ethnicity was apparent and openly admitted in the State's treatment of District 23 and Congressman Bonilla. *See* Jackson Pls.' Ex. 44, at 2, 11-19; Tr., Dec. 15, 2003, 8:30 a.m., at 40-106 (testimony of Prof. Alford). Professor Alford also reported that Latino-preferred candidates had failed to carry the 2003 Plan's District 23 in each of the last 42 statewide general-election contests.

The Jackson Plaintiffs also presented lay testimony regarding the harms that the 2003 Plan would inflict upon Latino voters in South and West Texas. For example, Richard Raymond, a Latino state representative from Laredo (and himself one of the Jackson Plaintiffs), testified that the 2003 Plan had bisected Webb County, the most Latino county in the United States, "so that [District] 23 is no longer a minority opportunity district. . . . You've got 350,000 Hispanics in [District] 23 who will have no voice and no chance to elect who they want to elect to represent them." *See* Tr., Dec. 15, 2003, 1:00 p.m., at 83, 86 (testimony of Rep. Raymond). Representative Raymond also testified that "this crazy District 25 from the Valley to Austin" could not possibly bridge the sharp cultural, educational, and economic differences separating the two Latino communities at opposite ends of the district. *Id.* at 84-85.

Another Jackson Plaintiff witness, Congressman Charlie Gonzalez, testified that District 23 had been "transformed" from "a Hispanic opportunity district" to one that was no longer so. *See* Tr., Dec. 11, 2003, 1:00 p.m., at 120-21 (testimony of Cong. Gonzalez). As for the "bacon strip" districts, he also commented on the cultural misfits they created: Constituents at one end of the district "will be celebrating Oktoberfest,"

**Perales Decl.**
**00336**

7

while those at the other end "will be celebrating Cinco de Mayo. . . . [W]hen you shoot down 300 miles, it's a totally different world." *Id.* at 123.

### E.     The Jackson Plaintiffs' Post-Trial Brief

On December 22, 2003, the Jackson Plaintiffs filed their post-trial brief. Again, their South and West Texas claims figured prominently, consuming 39 of the brief's 73 pages. *See* Post-Trial Br. at 1-20, 34-35, 47-63. The brief laid out each of the three "*Gingles* requirements" for the Jackson Plaintiffs' Section 2 claim against District 23 — numerosity/compactness, Latino political cohesion, and Anglo bloc voting. *Id.* at 48-53. The Jackson Plaintiffs summarized the evidence showing that, under the Court-drawn 2001 Plan (Plan 1151C), Latinos in District 23 had the potential to elect their preferred candidates and that this potential had been thwarted by Defendants' enactment of the 2003 Plan. *Id.* The evidence was based primarily on Professor Lichtman's and Professor Alford's expert analyses. *See id.* (citing Tr., Dec. 11, 2003, 1:00 p.m., at 102-03, 142-48 (testimony of Prof. Lichtman); Jackson Pls.' Exs. 1 (Lichtman expert report, at pp. 49-64), 10, 25-26, 28-29, 41-43, 44 (Alford expert report, at p. 15), 72, 76, 79, 81-82, 85, 89); *see also id.* at 50-51 (citing Tr., Dec. 11, 2003, 1:00 p.m., at 120-22, 133-34, 137 (testimony of Cong. Gonzalez)). Congressman Bonilla's new District 23, the brief explained, "had to be majority-Hispanic in total population yet sufficiently Anglo and Republican to thwart Hispanic voters' desire to replace him with a Hispanic Democrat." *Id.* at 60 (citing Tr., Dec. 15, 2003, 8:30 a.m., at 64 (testimony of Prof. Alford)). The brief also cited evidence that the dilution of Latino voting strength in District 23 was intentional. *See id.* at 53 (citing Tr., Dec. 11, 2003, 1:00 p.m., at 102-03 (testimony of Prof. Lichtman); Jackson Pls.' Exs. 1, 26, 30-32).

**Perales Decl.**
**00337**

Turning to the "totality of circumstances" inquiry under Section 2 of the Voting Rights Act, the Jackson Plaintiffs' brief cited evidence that (1) voting in Texas is polarized between Latinos and non-Latinos; (2) Texas Latinos are under-represented in public office when compared with their percentage of the citizen voting-age population; (3) Members of Congress elected from Anglo-controlled districts are less responsive to the needs of Latino communities; and (4) Texas Latinos' relatively poor socioeconomic status correlates with low levels of turnout and participation in the political process. *Id.* at 58 (citing Tr., Dec. 11, 2003, 1:00 p.m., at 160-61, 167-68 (testimony of Prof. Lichtman); Jackson Pls.' Ex. 1 (at pp. 74-76), 39-40, 128, 138).

The post-trial brief rebutted the State's argument that the Jackson Plaintiffs' Section 2 claim failed under the proportionality standard that the Supreme Court had enunciated in the *De Grandy* case. *Id.* at 9-10, 55-58 (citing *Johnson v. De Grandy*, 512 U.S. 997, 1017-20, 1024 (1994)). As we will show below, the Jackson Plaintiffs' counter-argument was the very one adopted by the Supreme Court on appeal:

> Defendants will argue that they maintained a proportional share of districts for [Hispanics] by "replacing" District 23 with new District 25 . . . . The problem with this analysis is that it ignores the fact that [the 2003 Plan] leaves about 359,000 Hispanics submerged in the new Anglo-controlled District 23. This has two effects. First, of course, it means that a large and compact Hispanic population is excluded from electing its preferred candidates, even though the previous lines afforded that opportunity. Second, it means that the "Valley" districts (15, 25, 27, and 28) have lower Hispanic population percentages than the equivalent districts in [the Court-drawn 2001 Plan]. Although Professor Lichtman testified that these districts remain barely effective, some of them become marginal. As he further explained, the need to draw District 25 to [pass] through four media markets all the way to Austin to pick up Hispanic population there left that district vulnerable to being carried by well-funded Congressman Doggett even if he gets only a minority of the Hispanic vote. As for District 15, . . . the Hispanic share of actual turnout there is reduced from more than 50% to about 37% and the district as redrawn would no longer have been won by the Hispanic-preferred Presidential candidate (Al Gore)

Perales Decl.
00338

in 2000. . . . The marginalizing of the Hispanic districts in South Texas,
done solely to protect Congressman Bonilla while leaving him in a district
that is technically majority-Hispanic, thus clearly denies Hispanics an
*equal* opportunity to elect candidates of choice.

*Id.* at 56-58 (emphasis in the original; footnotes omitted) (citing Tr., Dec. 11, 2003, 1:00

p.m., at 151-53, 166-67 (testimony of Prof. Lichtman); Jackson Pls.' Exs. 11, 140).

At trial, the State's defense had been to point to District 25 as an "offset" or for

the destruction of District 23 as a Latino district. So the Jackson Plaintiffs' post-trial

brief addressed District 25 in detail. *See id.* at 59-63. For example, we stated:

Having "stranded" more than 350,000 Hispanics in a district where
Hispanic voters could not elect their preferred candidates, [the 2003
Plan's] designers then set out to squeeze an extra, compensatory district
out of South Texas. . . . [T]he new District 25 . . . starts in McAllen, in
Hidalgo County, slides over to Starr County, and then snakes up through
six barely contiguous and very sparsely populated counties before
reaching into Travis County and pulling out Austin's most Hispanic
neighborhoods. Demographically, the district is like a barbell, with
253,000 residents in the northern end in Travis County, 301,000 at the
southern end in Hidalgo and Starr Counties, and less than 96,000 in the six
intervening counties. . . .

[District 25 and the other two] "bacon strip" districts [15 and 28]
trigger strict scrutiny because, in each case, ethnicity predominated over
traditional principles of compactness, respect for counties and
municipalities, and respect for communities defined by actual shared
interests (as opposed to "communities" defined by nothing but ethnicity).
Furthermore, these districts could not possibly survive strict scrutiny
because the Voting Rights Act did not require their creation. Indeed, [the
Court-drawn 2001 Plan (unlike the 2003 Plan)] complies with the Voting
Rights Act because it does not strand 359,000 Hispanics in an utterly
ineffective District 23. Thus, there was no compelling state interest that
drove the odd formations of the three long, skinny districts emanating
from South Texas.

*Id.* at 60-62 (citing Tr., Dec. 15, 2003, 8:30 a.m., at 71 (testimony of Prof. Alford); Tr.,

Dec. 11, 2003, 1:00 p.m., at 121 (testimony of Cong. Gonzalez); *id.* at 148-49 (testimony

Perales Decl.
00339

of Prof. Lichtman); Tr., Dec. 15, 2003, 1:00 p.m., at 86-87 (testimony of Rep. Raymond);

Jackson Pls.' Ex. 82).

In addition to their factual critique of District 25, the Jackson Plaintiffs argued

that Section 2 protects the voting rights of individuals, not groups:

> The Supreme Court has rejected the argument that a State may dilute
> minority voting strength in one region so long as it "offsets" that dilution
> by creating new minority districts in another region. In *Shaw v. Hunt*, 517
> U.S. 899 (1996), the Court held that "[i]f a § 2 violation is proved for a
> particular area, . . . [t]he vote-dilution injuries suffered by these persons
> are not remedied by creating a safe majority-black district somewhere else
> in the State." *Id.* at 917. . . . After all, "the claim, and hence the
> coordinate right to an undiluted vote (to cast a ballot equal among
> voters)," belongs *not* to the minority as a group, but rather to its individual
> members. *Id.*
>
> In *De Grandy*, the Court went further in rejecting a flat rule,
> proposed by the Florida defendants in that case, that "as a matter of law no
> dilution occurs whenever the percentage of single-member districts in
> which minority voters form an effective majority mirrors the minority
> voters' percentage of the relevant population." 512 U.S. at 1017. In doing
> so, Justice Souter, writing for a seven-Justice majority, attacked the
> premise that "the rights of some minority voters under § 2 may be traded
> off against the rights of other members of the same minority class." *Id.* at
> 1018. . . . Thus, even if a State does create a substantially proportional
> number of districts for each minority group statewide, it cannot
> discriminate, intentionally or unintentionally, against the minority group
> members in one region of the State under a theory of "offset." To do so
> would treat . . . Hispanic voters as fungible units defined primarily by the
> color of their skin, rather than as individual voters rooted in territorially
> defined communities.

*Id.* at 9-10. This argument became the linchpin to the Supreme Court's holding.

## F.     This Court's January 2004 Ruling

On January 6, 2004, in a divided decision, this Court upheld the 2003 Plan in full.

*Session v. Perry*, 298 F. Supp. 2d 451 (E.D. Tex. 2004) (three-judge court) *(per curiam)*.

Judge Ward dissented in part on two alternative bases, both focused on the various

plaintiffs' Section 2 claims in South and West Texas. *Id.* at 517-28. *First*, Judge Ward

**Perales Decl.
00340**

agreed with the GI Forum and other plaintiffs (not including the Jackson Plaintiffs) that there should be seven, rather than six, Latino districts in South and West Texas. *See id.* at 522-28. *Second*, Judge Ward agreed with the Jackson Plaintiffs that, even if Latinos in South and West Texas were entitled to only six districts, the 2003 Plan violated Section 2 by disempowering the "359,000 Latinos who continue to reside in new District 23," which had been altered "to the point where it has no hope of functioning as an effective Latino opportunity district." *Id.* at 519; *see id.* at 519-22. Judge Ward explained that "the majority errs when it holds that the State may permissibly 'trade off' the rights of minority voters in former District 23 for those in new District 25." *Id.* at 517. It was the latter "anti-tradeoff" theory that ultimately prevailed in the Supreme Court.

### G. The Jackson Plaintiffs' Jurisdictional Statements

The Jackson Plaintiffs appealed to the Supreme Court raising three sets of issues, including the 2003 Plan's treatment of South and West Texas. *See* J.S., No. 03-1391 (filed Apr. 5, 2004). The Supreme Court vacated the judgment and remanded for further consideration of the partisan-gerrymandering issues. 543 U.S. 941 (2004). When this Court again upheld the 2003 Plan, the Jackson Plaintiffs filed another appeal, raising essentially the same issues. *See* J.S., No. 05-276 (filed Aug. 31, 2005). Both jurisdictional statements explained that the 2003 Plan had "dismantled . . . District 23 in South Texas, while adding a new majority-Latino district running from McAllen (on the Mexican border) 300 miles north to Austin." J.S., No. 05-276, at 7; *accord* J.S., No. 03-1391, at 7. Indeed, the second jurisdictional statement clearly laid out the problem:

> [T]he mapmakers redrew District 23, a majority-Latino border district
> previously won narrowly by a Republican, to assure its future control by
> Anglo [voters] . . . . [S]eeking to avoid Voting Rights Act liability for the
> new version of District 23, the Legislature inserted an absurd new

**Perales Decl.
00341**

majority-Latino District 25 connecting the Latino portions of Austin with a chunk of McAllen, 300 miles away.

J.S., No. 05-276, at 3; *see id.* at 8-9 (providing greater detail).

### H.    The Jackson Plaintiffs' Merits Briefs

On December 12, 2005, the Supreme Court noted probable jurisdiction over four appeals from this Court's judgment (including the Jackson Plaintiffs' appeal). In their 2006 merits brief, the Jackson Plaintiffs again vigorously attacked the District 23/District 25 "trade off." *See* Br. for Appellants, No. 05-276, at 1-3, 7-10, 13-14, 16, 43-50. Citing Judge Ward's dissent, the Jackson Plaintiffs argued that (1) Defendants "violated the Voting Rights Act by intentionally stranding 359,000 Latinos in District 23, where they have virtually no hope of influencing, much less controlling, electoral outcomes"; and (2) District 23's supposed "replacement," District 25, was unconstitutional because it "uses a long, thin corridor of largely empty counties to connect two far-flung urban pockets of dense Latino population that are 300 miles apart" and "lack common needs and interests." *Id.* at 16, 44 n.36, 45 (citations omitted). As the only parties who had ever attacked District 25, the Jackson Plaintiffs focused on that district, while the GI Forum Plaintiffs focused on District 23.

### I.    The Supreme Court's Ruling

The Supreme Court affirmed this Court's judgment in part, but reversed the judgment as to the Voting Rights Act claim against District 23 and vacated the judgment as to the racial-gerrymandering claim against District 25. 126 S. Ct. 2594, 2605, 2623, 2626 (2006). The Court's discussion of District 23 tracked the part of Judge Ward's dissent that was based on the Jackson Plaintiffs' arguments. *Compare id.* at 2612-23 *with* 298 F. Supp. 2d at 517-22 (Ward, J., dissenting in part). The Supreme Court disagreed,

Perales Decl.
00342

however, with Judge Ward's opinion to the extent that he had suggested that seven reasonably compact Latino opportunity districts could or should be drawn in South and West Texas, as the GI Forum and other plaintiffs (but not the Jackson Plaintiffs) had persistently contended. *Compare* 126 S. Ct. at 2616 *with* 298 F. Supp. 2d at 523-24 (Ward, J., dissenting in part). Furthermore, the "demonstration" or "illustrative" plan on which the Supreme Court relied was the Court-drawn 2001 map (Plan 1151C) that the Jackson Plaintiffs had always promoted. *See* 126 S. Ct. at 2615-16 (holding that the 2001 Plan's District 23 was an effective Latino opportunity district that would have elected a Latino-preferred candidate had it not been redrawn in 2003).

The key evidence that the Supreme Court cited on several critical issues was evidence that had been introduced at trial by the Jackson Plaintiffs. For example, the Supreme Court repeatedly cited Professor Lichtman to show that racial polarization in District 23's elections was "especially severe"; that Latino voters in District 23 believed Congressman Bonilla "was 'unresponsive to [their] particularized needs'"; and that by 2003 those voters were "poised to elect their candidate of choice." 126 S. Ct. at 2615, 2621-22 (citing Prof. Lichtman's report, at Jackson J.S. App. 134, 142-43).

Likewise, in determining that District 25 was fatally non-compact, the Court relied on evidence introduced at trial by the Jackson Plaintiffs. *Id.* at 2613, 2619. *First*, the Court found that District 25 "is a long, narrow strip that winds its way from McAllen and the Mexican border towns in the south to Austin, in the center of the State and 300 miles away." *Id.* at 2613 (citation omitted). *Second*, the Court found that "[t]he Latino communities at the opposite ends of District 25 have divergent 'needs and interests,'

**Perales Decl.**
**00343**

14

owing to 'differences in socio-economic status, education, employment, health, and other characteristics.'" *Id.* (citations omitted); *see id.* at 2618.

Moreover, the Supreme Court squarely adopted the linchpin legal argument initially raised by the Jackson Plaintiffs — that the State may not "trade off" the rights of minority voters in District 23 for those in the new "offset" District 25. *See id.* at 2616-19. Relying on the same passages from *Shaw II* and *De Grandy* that the Jackson Plaintiffs had cited, the Supreme Court reiterated that rights guaranteed by Section 2 are held not by minority groups but by individuals. *See id.* at 2616-21 Therefore, "the State's creation of an opportunity district for those without a § 2 right offers no excuse for its failure to provide an opportunity district for those with a § 2 right." *Id.* at 2617. Because there is no right to a non-compact majority-minority district, the creation of an elongated, excessively race-conscious district District 25 cannot "compensate for the dismantling of a compact opportunity district" like the 2001 Plan's District 23. *Id.* at 2617-19.

On the "totality of circumstances," the Court found that the 2003 Plan (1) did not provide Latinos with proportionality, (2) "undermined the progress" of a group that previously was subjected to significant voting-related discrimination and continues to lag in its ability to participate in the political process, and (3) "bears the mark of intentional discrimination." *Id.* at 2619-23.

The Supreme Court's conclusion, holding that the 2003 Plan violated the Voting Rights Act, echoed the arguments that the Jackson Plaintiffs made throughout this litigation:

> The State chose to break apart a Latino opportunity district to protect the incumbent congressman from the growing dissatisfaction of the cohesive and politically active Latino community in the district. The State then purported to compensate for this harm by creating an entirely new district

**Perales Decl.
00344**

that combined two groups of Latinos, hundreds of miles apart, that represent different communities of interest. Under § 2, the State must be held accountable for the effect of these choices in denying equal opportunity for Latino voters.

*Id.* at 2623.

### J.     The Jackson Plaintiffs' July 2006 Remand Briefs

On remand, the Jackson Plaintiffs proffered a remedial map (the "Jackson Plan" or Plan 1406C) and argued against alternative maps. In so doing, the Jackson Plaintiffs made seven key arguments that this Court ultimately adopted.

*First*, the Jackson Plaintiffs argued that the Court should order implementation of a remedial redistricting map for the upcoming November 2006 election. *See* Remedial Br. at 4-5 (filed July 14, 2006); Remedial Response Br. at 3 (filed July 21, 2006).

*Second*, the Jackson Plaintiffs argued that the Court should draw a map containing six — and only six — reasonably compact Latino opportunity districts in South and West Texas. *See* Remedial Br. at 6-9, 12-13; Remedial Response Br. at 3, 13 n.16.

*Third*, the Jackson Plaintiffs argued that the Court should redraw District 23 not only to restore it as a majority-Latino district in terms of citizen voting-age population (CVAP) and registered voters, but also to restore fully its effectiveness as a Latino opportunity district. The Jackson Plaintiffs thus advocated redrawing District 23 so that it would be ***more*** favorable to Latino-preferred candidates in general elections than was the version of District 23 in the Court-drawn 2001 Plan. To effectuate the voting rights recognized by the Supreme Court, the Jackson Plaintiffs explained, the remedial District 23 should be a "solidly Hispanic, . . . competitive district in general elections," though not "a 'safe' district." Remedial Br. at 9; *see id.* at 6-9; Remedial Response Br. at 6-12.

**Perales Decl.
00345**

*Fourth*, the Jackson Plaintiffs argued that District 25 should recede from the Mexican border and become (like its 2001 Plan predecessor, old District 10) a district overwhelmingly based in the Austin metropolitan area and media market, with a supermajority of its population residing in Travis County, and thus containing a representative mix of the Anglo, African-American, and Latino voters who historically have worked together in the Austin area. The Jackson Plaintiffs sharply criticized Defendants' Perry Plan for continuing to extend District 25 nearly 300 miles from Hidalgo County (in the Valley) all the way to the Travis County line. *See* Remedial Br. at 9-10; Remedial Response Br. at 4, 12-16.

*Fifth*, the Jackson Plaintiffs asked the Court to avoid dividing counties that were intact under the 2003 Plan and dividing previously split counties into more pieces than in the 2003 Plan. *See* Remedial Br. at 14, 23; Remedial Response Br. at 23, 26-27.

*Sixth*, the Jackson Plaintiffs asked the Court to make only those changes necessary to correct the legal flaws in the 2003 Plan. Specifically, most of the constituents in the altered districts should be left with their current Representatives. *See* Remedial Br. at 5-6, 10-12; Remedial Response Br. at 4-7, 16-19.

*Seventh*, the Jackson Plaintiffs urged the Court to maintain partisan neutrality and reject any map (including Defendants' plan) that sought to maintain a fixed quota of "safe" Republican seats. *See* Remedial Br. at 13; Remedial Response Br. at 8-12, 19.

### K.    This Court's Oral Argument on Remedy

At the August 3 remedy argument, the Jackson Plaintiffs focused on five points:

*First*, the key to remedying the Voting Rights Act violation was to assure that District 23 had a track record of voting for Latino-preferred candidates in general

**Perales Decl.
00346**

elections. The Jackson Plaintiffs argued that a district could be an effective Latino opportunity district — and thus remedy the violation — only if a decent number of Latino-preferred statewide candidates had recently prevailed within the district. *See* Aug. 3, 2006 Tr. at 43-54, 60-64, 127-28.

*Second*, the Jackson Plaintiffs argued that beefing up the general-election performance of Latino-preferred candidates in District 23 above the levels found in the 2001 version of that district was important given that the 2003 Plan had diminished District 15's effectiveness when it was stretched northward into Central Texas. *Id.* at 49-51, 62-63.

*Third*, the Jackson Plaintiffs argued that placing Webb County wholly in District 28 while restoring District 23 as an effective Latino opportunity district would require (1) removing from District 23 the heavily Anglo (and Republican) Hill Country counties that the 2003 Legislature had placed in District 23; and (2) adding to District 23 the heavily Latino (and Democratic) South Side of San Antonio and Bexar County, in a configuration roughly resembling that of Texas State Senate District 19. *Id.* at 43-45, 64-68, 125-26.

*Fourth*, the Jackson Plaintiffs suggested that a District 28 anchored in Webb County could extend into Wilson and Guadalupe Counties and thus include little or no population from San Antonio, reflecting the Supreme Court's admonition to avoid connecting geographically distant Latino communities with divergent needs and interests. *Id.* at 126.

*Fifth*, the Jackson Plaintiffs noted that making these changes in Webb County, the Hill Country, and Bexar County was consistent with redrawing District 25 as a compact Austin-centered district — a goal that was obtainable if the Court did not try to squeeze a

18

seventh Latino district into the region, as other plaintiffs were advocating. Certainly there was no justification for removing a single Travis County resident from District 25. *Id.* at 53-54, 58-59, 126-27.

### L. This Court's Remedial Opinion and Order

On August 4, 2006, this Court issued its opinion and order adopting Plan 1438C, which redrew Districts 15, 21, 23, 25, and 28 — the very districts where seven Latino voters belonging to the Jackson Plaintiffs reside. The Court ordered that special elections be held in those districts this year, as the Jackson Plaintiffs had requested.

Moreover, the Court redrew District 23 to effectuate the Jackson Plaintiffs' federally guaranteed voting rights. The Latino percentages of the district's citizen voting-age population and of the district's registered-voter population were restored to the levels present in District 23 under the 2001 Plan. *See* Opinion at 6; Order, Appendix C, at 5-6. And as the Jackson Plaintiffs had requested, the actual electoral performance for Latino-preferred candidates is now significantly higher in District 23 under the Court's Plan than it was in District 23 under the 2001 Plan. Indeed, the Court noted that "the underlying data from the statewide elections supports the conclusion that new District 23 will perform as an effective Latino opportunity district." Opinion at 6. As page 6 of Appendix C to this Court's Order shows, in statewide general elections over the last four election cycles (1998, 2000, 2002, and 2004), Latino-preferred (*i.e.*, Democratic) candidates have garnered, on average, 48.4% of the votes cast in District 23 under the Court's new plan. That 48.4% figure compares very favorably with the equivalent figures under the 2001 Plan (46.1%) and the 2003 Plan (39.5%); indeed, it nearly matches the equivalent figure under the Jackson Plan. Looking at these same election

Perales Decl.
00348

contests individually (office by office), the Latino-preferred candidates have carried the new Court-drawn District 23 in 20 of the last 37 statewide general elections; by contrast, these same candidates carried the 2001 Plan's District 23 in less than half of those contests. *See* RED-M205 (General Election Analysis, for 1998, 2000, 2002, and 2004 General Elections, for Plan 1438C and Plan 1151C), *attached hereto as* Ex. 1. Under the Court's map, even those Latino-preferred candidates who lost statewide by 12 or 13 percentage points have routinely carried the new District 23. *See id.* The new Court-drawn District 23 is solidly Latino and politically competitive in general elections, but not "safe" for any one candidate or party.

Furthermore, the Court adopted the approach specifically suggested by the Jackson Plaintiffs at oral argument. The Court (1) removed from District 23 "the Hill Country counties of Kerr, Kendall, Bandera, and Real"; and (2) kept the heavily Latino community of South Side San Antonio whole, "[p]lacing the southern part of Bexar County in . . . congressional District 23 [in a configuration] very similar to the current State Senate District 19." Opinion at 2-3 & n.2. As the Jackson Plaintiffs argued, "[t]hese changes restore Latino voting strength to District 23 without dividing communities of interest." *Id.* at 3.

Consistent with the Jackson Plaintiffs' long-standing opposition to the "bacon strip" districts, the Court redrew all three of those districts, making each far shorter and more compact. As the Jackson Plaintiffs had repeatedly argued, the districts' elongation in the 2003 Plan was "a consequence of the decision to redraw District 23 to make Congressman Bonilla's reelection more likely." Opinion at 5. Fixing District 23 to comply with the Supreme Court's mandate "made it necessary to change Districts 28 and

Perales Decl.
00349

20

25, which in turn require[d] modest changes to District 15." *Id.* So "Districts 28, 25, and 15 regain[ed] the compactness they lost in the 2003 legislative effort to enhance Republican strength in District 23, which the Supreme Court found violated Section 2." *Id.* at 7.

Specifically, District 15's effectiveness as a Latino opportunity district was fully restored, as the district lost its four northernmost counties and replaced that Central Texas population by taking in a larger portion of Hidalgo County, where new "District 15 remains anchored." *Id.* District 28 is now anchored in Webb County, extends to Wilson and Guadalupe Counties, barely touches San Antonio, and stays entirely out of the Austin metropolitan area and media market — this latter point being exactly what the Jackson Plaintiffs had requested in their remedial filings. And District 25 becomes "a compact, Austin-based district," with nearly 150,000 Travis County residents added to the district's existing base of 253,000 Travis County constituents — again, comporting with the Jackson Plaintiffs' express requests. *Id.* at 4; *see id.* at 4-5. Even with these changes, however, most residents of the five altered districts remain with their current incumbent Representatives, as the Jackson Plaintiffs had recommended. *See* RED-M340 (Plan Overlap Analysis, Plan 1438C Compared with Plan 1374C), *attached hereto as* Ex. 2. And the Court's plan avoided dividing counties that were whole under the 2003 Plan and dividing previously split counties into more pieces than in the 2003 Plan. *See* Order, Appendices A (at pp. 2-4) & C (at pp. 2-4).

Finally, the Court expressly rejected efforts to draw a seventh majority-Latino district in South and West Texas. Opinion at 6.

**Perales Decl.**
**00350**

21

In sum, throughout this litigation the Jackson Plaintiffs sought a map creating six compact, effective Latino districts in South and West Texas. Because they got what they sought, they are entitled to fees. See *State Teachers Ass'n*, 489 U.S. at 791-92.

## III.    The Movants' Fees and Expenses Are Reasonable.

Because the Jackson Plaintiffs prevailed in this case, the only remaining question is whether the fees and expenses sought are reasonable. As noted above, attorneys' fees are calculated using the lodestar method (multiplying the number of hours by the hourly rate), which is presumed to be reasonable. Here, the Jackson Plaintiffs seek the lodestar figure, with a two-thirds downward adjustment to reflect that they prevailed on only one of three claims. Moreover, we do not seek fees for two attorneys (Mr. Otis Carroll and Mr. Franklin Jones) or for a period in the case when partisan gerrymandering was the sole focus, and we have made other reasonable reductions.

The only question therefore is whether the hourly rates are reasonable. The usual hourly rates for Mr. Gerald Hebert, for the Jenner & Block attorneys and paralegal staff, and for the Susman Godfrey LLP attorneys reflect, among other things, their years of practice and experience. The declarations of Messrs. Smith, Hebert, and Godfrey support that assertion. The hourly rates are the same as those charged by these counsel in other cases, and are similar to prevailing market rates charged by attorneys of comparable experience and expertise. *See* Hebert Decl. ¶ 10; Smith Decl. ¶ 10; Godfrey Decl. ¶ 3.

The Jackson Plaintiffs' lawyers leanly staffed this case, especially considering the emergency basis on which it went to trial. Smith Decl. ¶ 3, 13-15; Hebert Decl. ¶¶ 11-

**Perales Decl.
00351**

13.[4]  The overall fees and disbursements sought in this case are reasonable and well within the range of what would be expected for this complex and specialized litigation.

Plaintiffs' attorneys are seeking compensation for the hours and legal work listed in the edited invoices attached to the Declarations of J. Gerald Hebert, Paul Smith, and Lee Godfrey.  These fees pertain to work performed by Plaintiffs' attorneys throughout the course of this intensive litigation, which included, among other things:  preparing and filing a complaint; engaging in intensive discovery; preparing and filing a proposed Joint Final Pretrial Order; preparing and filing a 41-page trial brief; taking a lead role in a two-week trial before the three-judge District Court; preparing and filing a 73-page post-trial brief; filing two jurisdictional statements and two appeal-stage reply briefs in the Supreme Court; filing two merits briefs in the Supreme Court; arguing the case before the Supreme Court; developing and filing a proposed remedial map responding to the Supreme Court's mandate; preparing and filing two briefs as to remedy; arguing the remedial case before the three-judge District Court.

As for expenses and costs, they are detailed in the attachments to the declarations. These expenses were necessarily incurred and are the type of out-of-pocket expenses normally billed to fee-paying clients.  As such, they are recoverable as part of plaintiffs' attorneys' fees.  *See West Virginia Univ. Hosp., Inc. v. Casey*, 499 U.S. 83, 87 n.3 (1991). Also included are "costs" recoverable under 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d)(1).

---

[4] The Susman Godfrey firm played a key role at the 2003 trial but was not involved thereafter.

**Perales Decl.**
**00352**

In summary, counsel for the Jackson Plaintiffs and the Democratic Congressional Intervenors seek fees based on the following hours spent working on this case:

| ATTORNEYS | TOTAL HOURS | TOTAL DOLLARS |
|---|---|---|
| Otis W. Carroll | None | $          0 |
| Franklin Jones, Jr. | None | 0 |
| Susman Godfrey LLP (3 attys.) | 405.05 | 278,110 |
| Jenner & Block LLP (4 attys.) | 1294.00 | 552,269 |
| Jenner & Block LLP (9 non-attys.) | 139.00 | 27,770 |
| J. Gerald Hebert PC (1 atty.) | 573.40 | 200,690 |

**Total Amount of Legal Fees for These Hours = $1,058,839.**
**Total Amount of Legal Fees times one-third (1/3) = $352,946.**

The total amount of expenses and costs is as follows:

| ATTORNEYS | TOTAL DOLLARS |
|---|---|
| Otis W. Carroll | $          0 |
| Franklin Jones, Jr. | 0 |
| Susman Godfrey LLP | 7,663.75 |
| Jenner & Block LLP | 74,768.69 |
| J. Gerald Hebert PC | 8,848.91 |

**Total Amount of Legal Expenses and Costs = $91,281.35.**
**Total Amount of Legal Expenses and Costs times one-third (1/3) = $30,427.11.**

Thus the total amount of fees, expenses, and costs being sought by the Jackson Plaintiffs and Democratic Congressional Intervenors in this case is **$383,373.11**.

WHEREFORE, the Jackson Plaintiffs and Democratic Congressional Intervenors respectfully pray that this Court will grant this motion and award the requested fees, expenses, and costs.

**Perales Decl.**
**00353**

Respectfully submitted,

/s/ J. Gerald Hebert

J. Gerald Hebert – *Attorney-in-Charge for the Democratic Congressional Intervenors*
J. GERALD HEBERT P.C.
ATTORNEY AT LAW
5019 Waple Lane
Alexandria, VA 22304
Telephone: (703) 628-4673

/s/ Otis W. Carroll

Otis W. Carroll – *Attorney-in-Charge for the Jackson Plaintiffs*
Bar No. 038 957 00
IRELAND, CARROLL & KELLEY, P.C.
6101 South Broadway, Suite 500
Tyler, Texas 75703
Telephone: (903) 561-1600
Fax: (903) 581-1071

Franklin Jones, Jr.
Bar No. 000 000 55
JONES & JONES
201 West Houston Street
Marshall, Texas 75761
Telephone: (903) 938-4395
Fax: (903) 938-3360

Paul M. Smith
Sam Hirsch
JENNER & BLOCK LLP
601 Thirteenth Street, N.W.
Washington, D.C. 20005
Telephone: (202) 639-6000
Fax: (202) 639-6066

## CERTIFICATE OF CONFERENCE

Counsel for the Movants has conferred with counsel for the State Defendants in this case pursuant to the Local Rule CV-7(a). Counsel for the State Defendants has indicated that they oppose this motion.

/s/ J. Gerald Hebert
J. Gerald Hebert

Perales Decl.
00354

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of August, 2006, I served a copy of the foregoing Motion of the Jackson Plaintiffs and Democratic Congressional Intervenors for an Award of Attorneys' Fees and Costs, and all Exhibits attached hereto, on counsel in this case by filing the document electronically in the case file of this Court.

/s/ J. Gerald Hebert
J. Gerald Hebert

Perales Decl.
00355

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

| | | |
|---|---|---|
| LEAGUE OF UNITED LATIN<br>AMERICAN CITIZENS, ET AL. | § | |
| vs. | § | CIVIL ACTION NO. 2:03-CV-354 |
| RICK PERRY, ET AL. | § | Consolidated |

## [PROPOSED] ORDER

On this day, the Court considered the Motion of the Jackson Plaintiffs and Democratic Congressional Intervenors for an Award of Attorneys' Fees and Costs in the above captioned and numbered cause. Having considered the Motion, the Court is of the opinion that the Motion should be GRANTED in full.

IT IS SO ORDERED.

SIGNED this _____ day of _____, 2006.

_____

Perales Decl.
00356

EXHIBIT 1 TO THE JACKSON PLAINTIFFS' FEES MOTION

Perales Decl.
00357

Texas Legislative Council
08/04/06   10:12 AM
Page 1 of 2

RED-A205
Date: 2004 General Election
PLAN 01438C   08/04/06   9 53 48

## GENERAL ELECTION ANALYSIS
## CONGRESSIONAL DISTRICTS - PLAN 01438C
### 2004 General Election - Selected Statewide Contests*

| DIST | VOTER REG TOTAL | %SPAN | TURNOUT TOTAL | TO/VR | STATEWIDES** %Dem | %Rep | PRESIDENT Bush-R | Kerry-D | RAILROAD COMMISSIONER 3 Carrillo-R | Starborne-D | CT CRIMINAL APPEALS 2 Meyers-R | Parker-L | CT CRIMINAL APPEALS 5 Johnson-R | Oxford-L |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| State Totals | 11,002,018 | 20.7 | 7,469,203 | 67.9 | 40.9 | 59.1 | 4,526,094 61.5% | 2,832,468 38.5% | 3,891,632 57.5% | 2,872,597 42.5% | 4,417,697 84.0% | 843,773 16.0% | 4,504,291 85.8% | 746,358 14.2% |
| 15 | 306,187 | 69.0 | 159,408 | 52.1 | 54.4 | 45.6 | 81,280 51.3% | 77,011 48.7% | 59,932 43.7% | 77,164 56.3% | 73,977 83.8% | 14,324 16.2% | 74,724 84.8% | 13,375 15.2% |
| 21 | 436,809 | 15.4 | 327,885 | 75.1 | 34.8 | 65.2 | 212,196 65.8% | 110,288 34.2% | 191,651 64.3% | 106,264 35.7% | 214,717 84.2% | 40,208 15.8% | 218,314 85.8% | 36,116 14.2% |
| 25 | 363,356 | 54.2 | 213,906 | 58.9 | 46.3 | 53.7 | 90,057 42.7% | 120,672 57.3% | 99,301 52.8% | 88,608 47.2% | 119,399 83.3% | 23,983 16.7% | 121,984 85.3% | 21,056 14.7% |
| 28 | 369,248 | 20.3 | 267,784 | 72.5 | 55.5 | 44.5 | 140,065 46.3% | 140,063 53.7% | 103,002 43.4% | 134,515 56.6% | 123,172 83.7% | 55,993 31.3% | 126,158 70.6% | 52,423 29.4% |
|  | 318,542 | 66.3 | 169,840 | 53.3 | 51.2 | 48.8 | 90,730 54.0% | 77,349 46.0% | 71,551 48.1% | 77,167 51.9% | 89,777 82.9% | 18,459 17.1% | 90,375 84.0% | 17,212 16.0% |

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.
** Statewides is a weighted average of the results of all general election statewide contested contests.

Request: 29310

Perales Decl.
00358

RED-M205
Data: 2004 General Election
PLAN 01438C 08/04/06 9:53:48

GENERAL ELECTION ANALYSIS
CONGRESSIONAL DISTRICTS - PLAN 01438C
2004 General Election - Selected Statewide Contests*

| DIST | JUSTICE SUPREME CT 9 | | | | CT CRIMINAL APPEALS 6 | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Brister -R | | Van Os -D | | Keasler -R | | Molina -D | |
| State Totals | 4,094,025 | 59.2% | 2,817,566 | 40.8% | 3,990,353 | 57.9% | 2,906,692 | 42.1% |
| 15 | 63,312 | 44.9% | 77,740 | 55.1% | 59,362 | 41.7% | 82,862 | 58.3% |
| 21 | 201,123 | 65.6% | 105,395 | 34.4% | 198,294 | 65.0% | 106,626 | 35.0% |
| 23 | 102,238 | 53.5% | 89,804 | 46.5% | 98,210 | 50.7% | 95,386 | 49.3% |
| 25 | 111,172 | 44.7% | 137,465 | 55.3% | 107,250 | 43.4% | 139,966 | 56.6% |
| 28 | 73,864 | 48.1% | 79,575 | 51.9% | 68,758 | 44.5% | 85,835 | 55.5% |

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.
** "Statewide" is a weighted average of the results of all general election statewide contested contests.

Request: 29310

Perales Decl.
00359

RED-M205
Date: 2002 General Election
PLAN 01438C  08/04/06  9:53:48

Texas Legislative Council
08/04/06    10:17 AM
Page  1  of  4

# GENERAL ELECTION ANALYSIS
## CONGRESSIONAL DISTRICTS - PLAN 01438C
### 2002 General Election - Selected Statewide Contests*

| DIST | VOTER REG TOTAL | %SPAN | TURNOUT TOTAL | TO%R | STATEWIDES** %Dem | %Rep | U.S. SENATOR Cornyn-R | Kirk-D | GOVERNOR Perry-R | Sanchez-D | LT. GOVERNOR Dewhurst-R | Sharp-D | ATTORNEY GENERAL Abbott-R | Watson-D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 15 | 294,508 | 67.4 | 105,981 | 36.0 | 61.3 | 38.7 | 36,230 36.2% | 63,942 63.8% | 41,059 39.4% | 63,041 60.6% | 35,506 35.7% | 63,911 64.3% | 38,142 39.0% | 59,537 61.0% |
| 21 | 395,771 | 14.7 | 198,813 | 50.2 | 31.6 | 68.4 | 129,599 66.4% | 65,502 33.6% | 134,541 70.0% | 57,751 30.0% | 116,890 60.5% | 76,446 39.5% | 126,525 65.8% | 65,789 34.2% |
| 23 | 342,107 | 54.7 | 131,556 | 38.5 | 50.7 | 49.3 | 61,807 49.5% | 63,009 50.5% | 63,582 49.8% | 64,163 50.2% | 55,908 44.9% | 68,655 55.1% | 61,302 49.9% | 61,443 50.1% |
| 25 | 331,440 | 20.5 | 164,578 | 49.7 | 52.9 | 47.1 | 71,060 44.2% | 89,721 55.8% | 79,877 51.1% | 76,438 48.9% | 61,833 39.2% | 95,996 60.8% | 66,163 41.6% | 92,849 58.4% |
| 28 | 302,274 | 66.0 | 120,320 | 39.8 | 63.4 | 36.6 | 39,322 35.0% | 73,082 65.0% | 40,652 34.5% | 77,174 65.5% | 38,296 34.3% | 73,342 65.7% | 40,055 36.4% | 69,991 63.6% |
| State Totals | 10,333,426 | 20.4 | 4,592,829 | 44.4 | 42.1 | 57.9 | 2,495,605 56.1% | 1,955,300 43.9% | 2,632,067 59.1% | 1,818,492 40.9% | 2,343,300 52.9% | 2,081,825 47.1% | 2,541,715 58.0% | 1,841,504 42.0% |

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.
** "Statewides" is a weighted average of the results of all general election statewide contested contests.

Request: 29311

Perales Decl.
00360

RED-M205
Data: 2002 General Election
PLAN 01438C 08/04/06 9:53:48

**GENERAL ELECTION ANALYSIS**
**CONGRESSIONAL DISTRICTS - PLAN 01438C**
2002 General Election - Selected Statewide Contests*

Texas Legislative Council
08/04/06   10:17 AM
Page   2  of  4

| DIST | COMPTROLLER | | LAND COMMISSIONER | | AGRICULTURE COMMISSIONER | | RAILROAD COMMISSIONER 3 | | CHIEF JUST SUPREME CT | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Rylander-R | Akins-D | Patterson-R | Bernsen-D | Combs-R | Ramsay-D | Williams-R | Boyles-D | Phillips-R | Baker-D |
| State Totals | 2,878,271 66.1% | 1,477,213 33.9% | 2,331,537 56.2% | 1,819,291 43.8% | 2,636,082 61.2% | 1,674,308 38.8% | 2,407,110 56.9% | 1,821,578 43.1% | 2,525,438 58.7% | 1,774,082 41.3% |
| 15 | 44,265 46.9% | 50,188 53.1% | 33,169 36.7% | 57,130 63.3% | 41,365 42.9% | 55,076 57.1% | 34,432 37.8% | 56,728 62.2% | 37,295 39.3% | 57,530 60.7% |
| 21 | 145,881 76.5% | 44,843 23.5% | 122,771 67.9% | 58,051 32.1% | 137,206 73.6% | 49,238 26.4% | 122,562 66.4% | 61,980 33.6% | 132,963 70.6% | 55,250 29.4% |
| 23 | 69,919 57.9% | 50,751 42.1% | 55,144 48.3% | 58,980 51.7% | 65,655 54.1% | 55,793 45.9% | 55,840 47.8% | 61,088 52.2% | 60,336 49.8% | 60,737 50.2% |
| 25 | 90,775 59.2% | 62,574 40.8% | 65,990 45.3% | 79,570 54.7% | 81,382 53.8% | 69,800 46.2% | 68,461 46.3% | 79,516 53.7% | 75,566 49.1% | 78,212 50.9% |
| 28 | 48,863 46.0% | 57,399 54.0% | 36,137 35.6% | 65,379 64.4% | 44,204 40.7% | 64,511 59.3% | 37,016 35.7% | 66,694 64.3% | 39,465 36.4% | 69,004 63.6% |

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.
** "Statewide" is a weighted average of the results of all general election statewide contested contests.

Perales Decl.
00361

RED-M205
Date: 2002 General Election
PLAN 01438C  08/04/06  9:53:48

**GENERAL ELECTION ANALYSIS**
**CONGRESSIONAL DISTRICTS - PLAN 01438C**
2002 General Election - Selected Statewide Contests*

Texas Legislative Council
08/04/06   10:17 AM
Page  3  of  4

| DIST | SUPREME CT 1 Wainwright-R | Parsons-D | SUPREME CT 2 Schneider-R | Yanez-D | SUPREME CT 4 Smith-R | Mirabal-D | SUPREME CT 8 Jefferson-R | Moody-D | CT CRIMINAL APPEALS 1 Cochran-R | Molina-D |
|---|---|---|---|---|---|---|---|---|---|---|
| State Totals | 2,440,657 57.4% | 1,814,231 42.6% | 2,441,799 57.4% | 1,815,242 42.6% | 2,330,978 54.1% | 1,977,939 45.9% | 2,442,037 56.8% | 1,860,011 43.2% | 2,512,666 59.3% | 1,725,007 40.7% |
| 15 | 35,679 37.8% | 58,720 62.2% | 34,992 36.1% | 61,863 63.9% | 35,029 36.8% | 60,260 63.2% | 36,069 38.1% | 58,634 61.9% | 37,133 38.9% | 58,401 61.1% |
| 21 | 128,179 68.9% | 57,795 31.1% | 123,345 66.3% | 62,585 33.7% | 118,005 62.2% | 71,724 37.8% | 130,499 68.9% | 58,932 31.1% | 131,545 71.5% | 52,493 28.5% |
| 23 | 58,831 48.8% | 61,627 51.2% | 55,993 46.1% | 65,464 53.9% | 54,474 44.7% | 67,419 55.3% | 58,866 48.3% | 63,014 51.7% | 59,861 49.8% | 60,425 50.2% |
| 25 | 68,971 46.4% | 79,729 53.6% | 69,808 45.9% | 82,164 54.1% | 66,684 42.6% | 89,820 57.4% | 71,331 45.7% | 84,610 54.3% | 73,447 49.2% | 75,894 50.8% |
| 28 | 38,989 36.1% | 69,049 63.9% | 37,307 34.0% | 72,401 66.0% | 37,580 34.5% | 71,355 65.5% | 39,738 36.5% | 69,203 63.5% | 39,351 36.2% | 69,330 63.8% |

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.
** "Statewide" is a weighted average of the results of all general election statewide contested contests.

Request: 29311

Perales Decl.
00362

GENERAL ELECTION ANALYSIS
CONGRESSIONAL DISTRICTS - PLAN 01438C
2002 General Election - Selected Statewide Contests*

RED-M205
Data: 2002 General Election
PLAN 01438C  08/04/06  9:53:48

| DIST | CT CRIMINAL APPEALS 2 | | CT CRIMINAL APPEALS 3 | |
| --- | --- | --- | --- | --- |
| | Womack -R | Montgomery -D | Price -R | Bull -D |
| State Totals | 2,462,859  57.4% | 1,828,171  42.6% | 2,493,356  59.6% | 1,692,494  40.4% |
| 15 | 36,609  38.4% | 58,614  61.6% | 37,096  39.8% | 56,179  60.2% |
| 21 | 127,904  68.1% | 59,943  31.9% | 129,178  71.1% | 52,465  28.9% |
| 23 | 58,332  48.1% | 62,844  51.9% | 60,022  50.7% | 58,324  49.3% |
| 25 | 70,799  45.5% | 84,792  54.5% | 70,395  48.9% | 73,510  51.1% |
| 28 | 39,560  36.0% | 69,832  64.0% | 39,950  37.5% | 66,627  62.5% |

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.
** "Statewide" is a weighted average of the results of all general election statewide contested contests.

Request: 29311

Perales Decl.
00363

RED-M205
Data: 2000 General Election
PLAN 01438C  08/04/06  9:53:48

## GENERAL ELECTION ANALYSIS
## CONGRESSIONAL DISTRICTS - PLAN 01438C
### 2000 General Election - Selected Statewide Contests*

Texas Legislative Council
08/04/06  10:07 AM
Page 1 of 1

| DIST | VOTER REG TOTAL | %SPAN | TURNOUT TOTAL | TOVR | STATEWIDE** %Dem | %Rep | PRESIDENT Bush-R | | Gore-D | | U.S. SENATOR Hutchison-R | | Kelly-D | | CT CRIMINAL APPEALS PRES Keller-R | | Vance-D | | CT CRIMINAL APPEALS 8 Hervev-R | | Barr-D | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| State Totals | 10,267,143 | 19.5 | 6,503,637 | 63.3 | 39.7 | 60.3 | 3,798,855 | 61.0% | 2,433,042 | 39.0% | 4,083,676 | 66.8% | 2,029,229 | 33.2% | 3,311,928 | 56.1% | 2,590,533 | 43.9% | 3,333,925 | 56.9% | 2,525,221 | 43.1% |
| 15 | 291,198 | 66.0 | 147,350 | 50.6 | 54.2 | 45.8 | 65,409 | 45.6% | 78,001 | 54.4% | 70,446 | 52.4% | 64,033 | 47.6% | 54,198 | 42.5% | 73,270 | 57.5% | 53,697 | 42.3% | 73,360 | 57.7% |
| 21 | 398,445 | 13.8 | 278,431 | 69.9 | 30.6 | 69.4 | 182,551 | 69.4% | 80,610 | 30.6% | 198,713 | 76.4% | 61,401 | 23.6% | 164,826 | 64.5% | 90,854 | 35.5% | 169,556 | 67.1% | 83,156 | 32.9% |
| 23 | 334,815 | 53.5 | 182,621 | 54.5 | 46.5 | 53.5 | 94,736 | 53.6% | 82,173 | 46.4% | 103,535 | 60.8% | 66,746 | 39.2% | 81,507 | 49.3% | 83,663 | 50.7% | 82,049 | 50.0% | 81,913 | 50.0% |
| 25 | 340,515 | 19.8 | 221,201 | 65.0 | 48.2 | 51.8 | 105,867 | 53.3% | 92,698 | 46.7% | 120,387 | 60.9% | 77,336 | 39.1% | 94,091 | 46.8% | 107,160 | 53.2% | 92,258 | 46.3% | 106,955 | 53.7% |
| 28 | 293,735 | 65.4 | 141,047 | 48.0 | 50.2 | 49.8 | 69,190 | 50.0% | 69,143 | 50.0% | 74,567 | 56.5% | 57,331 | 43.5% | 58,936 | 46.5% | 67,919 | 53.5% | 57,857 | 45.7% | 68,701 | 54.3% |

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.

** "Statewide" is a weighted average of the results of all general election statewide contested contests.

Request: 29312

Perales Decl.
00364

RED-M205
Data: 1998 General Election
PLAN 01438C   08/04/06   9:53:48

Texas Legislative Council
08/04/06
10:12 AM
Page 1 of 3

## GENERAL ELECTION ANALYSIS
## CONGRESSIONAL DISTRICTS - PLAN 01438C
### 1998 General Election - Selected Statewide Contests*

| DIST | VOTER REG TOTAL | %SPAN | TURNOUT TOTAL | %TOVR | STATEWIDES** %Dem | %Rep | GOVERNOR Bush-R | | Mauro-D | | LT GOVERNOR Perry-R | | Sharp-D | | ATTORNEY GENERAL Cornyn-R | | Mattox-D | | COMPTROLLER Rylander-R | | Hobby-D | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| State Totals | 9,587,025 | 18.7 | 3,791,352 | 39.5 | 43.1 | 56.9 | 2,550,783 | 68.6% | 1,165,458 | 31.4% | 1,858,568 | 50.9% | 1,789,868 | 49.1% | 2,002,226 | 55.1% | 1,630,639 | 44.9% | 1,820,868 | 50.3% | 1,800,545 | 49.7% |
| 15 | 277,261 | 65.1 | 84,752 | 30.6 | 43.8 | 56.2 | 47,228 | 57.3% | 35,188 | 42.7% | 29,792 | 37.3% | 49,989 | 62.7% | 31,275 | 39.4% | 48,030 | 60.6% | 28,656 | 36.6% | 49,744 | 63.4% |
| 21 | 359,651 | 12.9 | 164,752 | 45.8 | 32.0 | 68.0 | 126,115 | 77.7% | 36,170 | 22.3% | 93,045 | 58.0% | 67,465 | 42.0% | 110,313 | 69.4% | 48,622 | 30.6% | 96,384 | 60.7% | 62,348 | 39.3% |
| 23 | 306,429 | 53.0 | 105,507 | 34.4 | 50.2 | 49.8 | 63,679 | 62.5% | 38,153 | 37.5% | 42,173 | 43.3% | 55,165 | 56.7% | 48,040 | 48.9% | 50,239 | 51.1% | 43,707 | 44.8% | 53,867 | 55.2% |
| 25 | 301,057 | 19.3 | 134,119 | 44.5 | 52.6 | 47.4 | 79,080 | 60.8% | 50,938 | 39.2% | 50,597 | 39.5% | 77,490 | 60.5% | 56,376 | 44.3% | 70,752 | 55.7% | 51,251 | 40.2% | 76,142 | 59.8% |
| 28 | 267,338 | 64.6 | 78,784 | 29.5 | 44.3 | 55.7 | 45,464 | 59.1% | 31,427 | 40.9% | 27,199 | 36.9% | 46,527 | 63.1% | 29,965 | 40.7% | 43,709 | 59.3% | 27,959 | 38.2% | 45,268 | 61.8% |

Request: 29313

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.
** "Statewides" is a weighted average of the results of all general election statewide contested contests.

Perales Decl.
00365

Request: 29313

RED-M205
Date: 1998 General Election
PLAN 01438C  08/04/06  9:53:48

GENERAL ELECTION ANALYSIS
CONGRESSIONAL DISTRICTS - PLAN 01438C
1998 General Election - Selected Statewide Contests*

| DIST | LAND COMMISSIONER | | | | AGRICULTURE COMMISSIONER | | | | RAILROAD COMMISSIONER 3 | | | | SUPREME CT 1 | | | | SUPREME CT 3 | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Dewhurst -R | | Bernsen -D | | Combs -R | | Patterson -D | | Garza -R | | Henderson -D | | Hankinson -R | | Starbrough -D | | Enoch -R | | Westergren -D |
| State Totals | 2,072,146 | 59.0% | 1,438,155 | 41.0% | 2,020,675 | 57.2% | 1,510,822 | 42.8% | 2,050,712 | 58.3% | 1,464,022 | 41.7% | 1,995,391 | 56.9% | 1,511,179 | 43.1% | 2,049,176 | 58.2% | 1,473,010 | 41.8% |
| 15 | 33,073 | 43.6% | 42,751 | 56.4% | 35,562 | 45.7% | 41,932 | 54.3% | 39,520 | 50.3% | 39,086 | 49.7% | 32,749 | 43.1% | 43,263 | 56.9% | 32,825 | 42.7% | 44,069 | 57.3% |
| 21 | 108,397 | 69.9% | 46,780 | 30.1% | 111,595 | 71.6% | 44,174 | 28.4% | 108,094 | 70.6% | 45,047 | 29.4% | 109,343 | 70.9% | 44,853 | 29.1% | 107,217 | 69.4% | 47,367 | 30.6% |
| 23 | 48,016 | 51.4% | 45,422 | 48.6% | 49,464 | 51.5% | 46,519 | 48.5% | 51,155 | 53.4% | 44,664 | 46.6% | 48,054 | 50.3% | 47,465 | 49.7% | 47,236 | 49.6% | 48,020 | 50.4% |
| 25 | 59,151 | 48.3% | 63,417 | 51.7% | 64,199 | 51.7% | 59,948 | 48.3% | 60,409 | 49.7% | 61,187 | 50.3% | 59,078 | 48.2% | 63,453 | 51.8% | 59,872 | 48.8% | 62,932 | 51.2% |
| 28 | 31,215 | 44.0% | 39,763 | 56.0% | 32,766 | 45.4% | 39,387 | 54.6% | 36,117 | 49.9% | 36,299 | 50.1% | 32,061 | 44.7% | 39,625 | 55.3% | 31,966 | 44.5% | 39,914 | 55.5% |

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.
** "Statewide" is a weighted average of the results of all general election statewide contested contests.

Perales Decl.
00366

Request: 29313

RED-M205
Data: 1998 General Election
PLAN 01438C   08/04/06   9:53:48

**GENERAL ELECTION ANALYSIS**
**CONGRESSIONAL DISTRICTS - PLAN 01438C**
1998 General Election - Selected Statewide Contests*

| DIST | SUPREME CT 4 | | | | SUPREME CT 5 | | | | CT CRIMINAL APPEALS 4 | | | | CT CRIMINAL APPEALS 5 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Abbott -R | | Van Os -D | | O'Neill -R | | Sractor -D | | Johnson -R | | Cochran -D | | Keasler -R | | Baird -D | |
| State Totals | 2,104,233 | 60.1% | 1,395,718 | 39.9% | 1,890,912 | 53.5% | 1,641,985 | 46.5% | 2,013,582 | 57.8% | 1,469,841 | 42.2% | 1,888,604 | 54.0% | 1,611,228 | 46.0% |
| 15 | 35,645 | 46.7% | 40,606 | 53.3% | 30,797 | 40.2% | 45,782 | 59.8% | 33,170 | 43.8% | 42,552 | 56.2% | 31,906 | 42.0% | 43,992 | 58.0% |
| 21 | 110,640 | 72.0% | 43,123 | 28.0% | 92,212 | 58.8% | 64,610 | 41.2% | 106,851 | 69.9% | 45,927 | 30.1% | 100,404 | 65.6% | 52,766 | 34.4% |
| 23 | 49,534 | 52.2% | 45,276 | 47.8% | 40,347 | 41.8% | 56,185 | 58.2% | 47,597 | 50.2% | 47,303 | 49.8% | 44,560 | 46.7% | 50,776 | 53.3% |
| 25 | 61,281 | 50.0% | 61,183 | 50.0% | 52,035 | 42.1% | 71,662 | 57.9% | 58,997 | 48.6% | 62,438 | 51.4% | 53,925 | 44.2% | 68,013 | 55.8% |
| 28 | 33,333 | 46.7% | 38,101 | 53.3% | 27,855 | 38.6% | 44,266 | 61.4% | 32,160 | 45.0% | 39,290 | 55.0% | 29,903 | 41.7% | 41,769 | 58.3% |

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.
** "Statewide" is a weighted average of the results of all general election statewide contested contests.

Perales Decl.
00367

Texas Legislative Council
07/17/06    10:51 AM
Page  1 of 2

RED-M205
Date 2004 General Election
PLAN 01151C  11/13/01  10:56:42

## GENERAL ELECTION ANALYSIS
## CONGRESSIONAL DISTRICTS - PLAN 01151C
### 2004 General Election - Selected Statewide Contests*

| DIST | --VOTER REG-- TOTAL | %SPAN | --TURNOUT-- TOTAL | TO/VR | STATEWIDES** %Dem | %Rep | PRESIDENT Bush-R | | Kerry-D | | RAILROAD COMMISSIONER 3 Carrillo-R | | Scarborough-D | | CT CRIMINAL APPEALS 2 Meyers-R | | Parker-L | | CT CRIMINAL APPEALS 5 Johnson-R | | Oxford-L | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| State Totals | 11,002,018 | 20.7 | 7,469,303 | 67.9 | 40.9 | 59.1 | 4,526,694 | 61.5% | 2,832,468 | 38.5% | 3,891,622 | 57.5% | 2,872,597 | 42.5% | 4,417,697 | 84.0% | 843,773 | 16.0% | 4,504,291 | 85.8% | 746,358 | 14.2% |
| 10 | 339,123 | 18.9 | 254,622 | 75.1 | 63.8 | 36.2 | 89,589 | 36.3% | 156,918 | 63.7% | 84,474 | 37.3% | 141,784 | 62.7% | 97,822 | 59.8% | 65,624 | 40.2% | 100,374 | 61.6% | 62,692 | 38.4% |
| 14 | 373,567 | 20.9 | 248,145 | 66.4 | 37.7 | 62.3 | 164,269 | 66.9% | 81,176 | 33.1% | 125,238 | 56.9% | 94,824 | 43.1% | 154,827 | 85.4% | 26,443 | 14.6% | 156,965 | 86.9% | 23,608 | 13.1% |
| 20 | 311,790 | 62.0 | 173,794 | 55.7 | 58.1 | 41.9 | 78,018 | 45.7% | 92,515 | 54.3% | 65,139 | 42.2% | 89,345 | 57.8% | 81,344 | 76.6% | 24,855 | 23.4% | 84,031 | 79.2% | 22,027 | 20.8% |
| 21 | 458,036 | 11.8 | 356,509 | 77.8 | 31.9 | 68.1 | 240,474 | 68.7% | 109,505 | 31.3% | 216,023 | 66.8% | 107,318 | 33.2% | 240,424 | 84.8% | 42,968 | 15.2% | 244,277 | 86.4% | 38,439 | 13.6% |
| 23 | 369,089 | 54.2 | 226,638 | 61.4 | 43.6 | 56.4 | 134,192 | 60.0% | 89,509 | 40.0% | 111,923 | 56.6% | 86,557 | 43.6% | 134,729 | 84.2% | 25,363 | 15.8% | 136,610 | 85.7% | 22,823 | 14.3% |
| 28 | 326,966 | 60.7 | 170,930 | 52.3 | 59.1 | 40.9 | 76,668 | 45.6% | 91,330 | 54.4% | 60,268 | 39.8% | 91,114 | 60.2% | 76,743 | 78.7% | 20,810 | 21.3% | 78,772 | 80.9% | 18,622 | 19.1% |

Request: 28671

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.
** "Statewides" is a weighted average of the results of all general election statewide contested contests.

Perales Decl.
00368

Texas Legislative Council
07/17/06   10:51 AM
Page  2  of  2

**GENERAL ELECTION ANALYSIS**
**CONGRESSIONAL DISTRICTS - PLAN 01151C**
2004 General Election - Selected Statewide Contests*

RED-M205
Data: 2004 General Election
PLAN 01151C  11/13/01  10:56:42

| DIST | JUSTICE SUPREME CT 9 | | | | CT CRIMINAL APPEALS 6 | | | |
|---|---|---|---|---|---|---|---|---|
| | Brister-R | | Van Os-D | | Keasler-R | | Molina-D | |
| State Totals | 4,094,025 | 59.2% | 2,817,566 | 40.8% | 3,990,353 | 57.9% | 2,906,692 | 42.1% |
| 10 | 85,670 | 35.9% | 152,784 | 64.1% | 83,946 | 35.3% | 153,558 | 64.7% |
| 14 | 143,111 | 63.5% | 82,234 | 36.5% | 138,328 | 61.5% | 86,715 | 38.5% |
| 20 | 66,120 | 41.0% | 95,208 | 59.0% | 61,775 | 38.4% | 99,205 | 61.6% |
| 21 | 228,200 | 68.7% | 104,179 | 31.3% | 225,418 | 68.2% | 105,010 | 31.8% |
| 23 | 114,652 | 56.1% | 89,602 | 43.9% | 107,975 | 52.6% | 97,120 | 47.4% |
| 28 | 63,026 | 40.3% | 93,318 | 59.7% | 58,814 | 37.5% | 97,945 | 62.5% |

Request: 28671

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.
** "Statewide" is a weighted average of the results of all general election statewide contested contests.

Perales Decl.
00369

Request: 28671

RED-M205
Date: 2002 General Election
PLAN 0115IC 11/13/01 10:56:42

GENERAL ELECTION ANALYSIS
CONGRESSIONAL DISTRICTS - PLAN 0115IC
2002 General Election - Selected Statewide Contests*

Texas Legislative Council
07/17/06 10:59 AM
Page 1 of 4

| DIST | VOTER REG TOTAL | VOTER REG %SPAN | TURNOUT TOTAL | TURNOUT TO/VR | STATEWIDES** %Dem | STATEWIDES** %Rep | U.S. SENATOR Cornyn-R | | Kirk-D | | GOVERNOR Perry-R | | Sanchez-D | | LT. GOVERNOR Dewhurst-R | | Sharp-D | | ATTORNEY GENERAL Abbott-R | | Watson-D | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| State Totals | 10,333,426 | 20.4 | 4,592,829 | 44.4 | 42.1 | 57.9 | 2,495,605 | 56.1% | 1,955,300 | 43.9% | 2,632,067 | 59.1% | 1,818,492 | 40.9% | 2,341,300 | 52.9% | 2,081,825 | 47.1% | 2,541,715 | 58.0% | 1,841,504 | 42.0% |
| 10 | 299,372 | 18.9 | 151,528 | 50.6 | 60.0 | 40.0 | 54,195 | 35.9% | 96,811 | 64.1% | 61,754 | 42.9% | 82,334 | 57.1% | 48,245 | 32.9% | 98,411 | 67.1% | 49,502 | 33.1% | 99,931 | 66.9% |
| 14 | 353,802 | 20.3 | 158,046 | 44.7 | 39.8 | 60.2 | 90,591 | 60.0% | 60,340 | 40.0% | 97,107 | 63.9% | 54,867 | 36.1% | 74,850 | 49.4% | 76,807 | 50.6% | 89,567 | 60.2% | 59,203 | 39.8% |
| 20 | 299,731 | 61.5 | 98,413 | 32.8 | 61.5 | 38.5 | 36,316 | 38.5% | 58,004 | 61.5% | 36,931 | 38.9% | 57,992 | 61.1% | 35,028 | 37.5% | 58,479 | 62.5% | 36,576 | 39.3% | 56,457 | 60.7% |
| 21 | 419,726 | 11.4 | 226,340 | 53.9 | 29.2 | 70.8 | 151,780 | 68.4% | 70,159 | 31.6% | 159,349 | 72.8% | 59,417 | 27.2% | 135,286 | 61.4% | 85,015 | 38.6% | 146,134 | 66.5% | 73,524 | 33.5% |
| 23 | 342,673 | 55.3 | 154,365 | 45.0 | 52.5 | 47.5 | 68,119 | 46.8% | 77,540 | 53.2% | 68,822 | 45.7% | 81,659 | 54.3% | 62,182 | 42.8% | 83,077 | 57.2% | 68,008 | 47.5% | 75,074 | 52.5% |
| 28 | 315,285 | 59.6 | 106,702 | 33.8 | 64.8 | 35.2 | 35,035 | 34.7% | 65,941 | 65.3% | 37,059 | 35.7% | 66,653 | 64.3% | 33,996 | 33.9% | 66,392 | 66.1% | 35,415 | 35.7% | 63,655 | 64.3% |

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.
** "Statewides" is a weighted average of the results of all general election statewide contested contests.

Perales Decl.
00370

RED-M205
Data: 2002 General Election
PLAN 0115C  11/13/01  10:56:42

GENERAL ELECTION ANALYSIS
CONGRESSIONAL DISTRICTS - PLAN 0115C
2002 General Election - Selected Statewide Contests*

Texas Legislative Council
07/17/06   10:59 AM
Page  2  of  4

| DIST | COMPTROLLER Rylander-R | | Akins-D | | LAND COMMISSIONER Patterson-R | | Bernsen-D | | AGRICULTURE COMMISSIONER Combs-R | | Ramsay-D | | RAILROAD COMMISSIONER 3 Williams-R | | Boyles-D | | CHIEF JUST SUPREME CT Phillips-R | | Baker-D | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| State Totals | 2,878,271 | 66.1% | 1,477,213 | 33.9% | 2,331,537 | 56.2% | 1,819,291 | 43.8% | 2,636,082 | 61.2% | 1,674,308 | 38.8% | 2,407,110 | 56.9% | 1,821,578 | 43.1% | 2,525,438 | 58.7% | 1,774,082 | 41.3% |
| 10 | 75,136 | 53.1% | 66,453 | 46.9% | 52,103 | 38.5% | 83,280 | 61.5% | 65,690 | 47.1% | 73,837 | 52.9% | 55,324 | 40.0% | 83,049 | 60.0% | 62,255 | 43.0% | 82,692 | 57.0% |
| 14 | 104,566 | 70.3% | 44,141 | 29.7% | 79,365 | 56.5% | 61,026 | 43.5% | 95,409 | 64.9% | 51,629 | 35.1% | 82,532 | 58.1% | 59,609 | 41.9% | 87,844 | 61.0% | 56,186 | 39.0% |
| 20 | 44,301 | 48.6% | 46,776 | 51.4% | 31,376 | 34.9% | 55,614 | 63.1% | 39,209 | 43.1% | 51,805 | 56.9% | 32,276 | 36.8% | 55,533 | 63.2% | 35,382 | 38.5% | 56,488 | 61.5% |
| 21 | 171,285 | 78.6% | 46,735 | 21.4% | 144,981 | 70.2% | 61,411 | 29.8% | 163,002 | 76.5% | 49,986 | 23.5% | 144,887 | 69.0% | 65,065 | 31.0% | 156,921 | 73.5% | 56,706 | 26.5% |
| 23 | 79,910 | 57.5% | 58,980 | 42.5% | 62,486 | 47.5% | 69,167 | 52.5% | 73,835 | 52.2% | 67,526 | 47.8% | 62,602 | 46.4% | 72,366 | 53.6% | 68,131 | 48.2% | 73,255 | 51.8% |
| 28 | 42,185 | 43.3% | 55,284 | 56.7% | 30,791 | 33.2% | 61,934 | 66.8% | 38,361 | 39.0% | 59,882 | 61.0% | 32,354 | 34.1% | 62,397 | 65.9% | 34,174 | 34.9% | 63,673 | 65.1% |

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.
*** "Statewide" is a weighted average of the results of all general election statewide contested contests.

Perales Decl.
00371

RED-M205
Data: 2002 General Election
PLAN 01151C 11/13/01 10:56:42

Texas Legislative Council
07/17/06 10:59 AM
Page 3 of 4

## GENERAL ELECTION ANALYSIS
## CONGRESSIONAL DISTRICTS - PLAN 01151C
### 2002 General Election - Selected Statewide Contests*

| DIST | SUPREME CT 1 | | SUPREME CT 2 | | SUPREME CT 4 | | SUPREME CT 8 | | CT CRIMINAL APPEALS 1 | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Wainwright-R | Parsons-D | Schneider-R | Yanez-D | Smith-R | Mirabal-D | Jefferson-R | Moody-D | Cochran-R | Molina-D |
| State Totals | 2,440,657 57.4% | 1,814,231 42.6% | 2,441,799 57.4% | 1,815,242 42.6% | 2,330,978 54.1% | 1,977,939 45.9% | 2,442,037 56.8% | 1,860,011 43.2% | 2,512,666 59.3% | 1,725,907 40.7% |
| 10 | 55,028 39.6% | 83,787 60.4% | 54,659 38.2% | 88,465 61.8% | 51,842 35.0% | 96,432 65.0% | 58,283 39.4% | 89,769 60.6% | 58,575 41.9% | 81,112 58.1% |
| 14 | 83,766 58.7% | 58,912 41.3% | 86,673 60.6% | 56,338 39.4% | 82,180 56.9% | 62,226 43.1% | 84,264 58.6% | 59,625 41.4% | 89,432 62.7% | 53,206 37.3% |
| 20 | 34,901 38.1% | 56,719 61.9% | 31,127 33.8% | 61,044 66.2% | 31,097 33.3% | 62,260 66.7% | 35,394 38.0% | 57,652 62.0% | 34,882 38.4% | 55,985 61.6% |
| 21 | 150,043 71.2% | 60,764 28.8% | 146,503 69.6% | 63,858 30.4% | 140,232 65.2% | 74,748 34.8% | 152,779 71.2% | 61,692 28.8% | 155,138 74.2% | 53,937 25.8% |
| 23 | 66,261 47.2% | 74,057 52.8% | 65,112 44.5% | 78,815 55.5% | 61,494 43.2% | 80,701 56.8% | 67,213 47.3% | 74,889 52.7% | 66,624 47.4% | 73,865 52.6% |
| 28 | 33,736 34.5% | 63,968 65.5% | 31,527 32.0% | 67,078 68.0% | 31,647 32.0% | 67,138 68.0% | 33,998 34.5% | 64,480 65.5% | 34,464 35.3% | 63,141 64.7% |

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.

** "Statewide" is a weighted average of the results of all general election statewide contested contests.

Request: 28671

Perales Decl.
00372

Texas Legislative Council
07/17/06  10:59 AM
Page  4  of  4

RED-M205
Data: 2002 General Election
PLAN 01151C  11/13/01  10:56:42

# GENERAL ELECTION ANALYSIS
## CONGRESSIONAL DISTRICTS - PLAN 01151C
### 2002 General Election - Selected Statewide Contests*

| DIST | CT CRIMINAL APPEALS 2 | | | | CT CRIMINAL APPEALS 3 | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Womack -R | | Montgomery -D | | Price -R | | Bull -D | |
| State Totals | 2,462,859 | 57.4% | 1,828,171 | 42.6% | 2,493,356 | 59.6% | 1,692,494 | 40.4% |
| 10 | 56,204 | 38.2% | 90,889 | 61.8% | 56,196 | 42.0% | 77,604 | 58.0% |
| 14 | 86,060 | 59.7% | 58,135 | 40.3% | 86,100 | 61.5% | 53,914 | 38.5% |
| 20 | 34,089 | 36.9% | 58,179 | 63.1% | 35,668 | 39.7% | 54,120 | 60.3% |
| 21 | 150,543 | 70.7% | 62,435 | 29.3% | 151,543 | 73.7% | 54,161 | 26.3% |
| 23 | 66,221 | 46.8% | 75,189 | 53.2% | 67,870 | 49.2% | 70,062 | 50.8% |
| 28 | 33,489 | 34.0% | 64,893 | 66.0% | 34,544 | 35.8% | 61,966 | 64.2% |

Request: 28671

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.
** "Statewide" is a weighted average of the results of all general election statewide contested contests.

Perales Decl.
00373

Request: 29415

RED-M205
Data: 2000 General Election
PLAN 01151C  11/13/01  10:56:42

Texas Legislative Council
08/08/06  5:07 PM
Page 1 of 2

# GENERAL ELECTION ANALYSIS
## CONGRESSIONAL DISTRICTS - PLAN 01151C
## 2000 General Election - Selected Statewide Contests*

| DIST | VOTER REG TOTAL | %SPAN | TURNOUT TOTAL | TO/VR | STATEWIDES** %Dem | %Rep | PRESIDENT Bush-R | | Gore-D | | U.S. SENATOR Hutchison-R | | Kelly-D | | CT CRIMINAL APPEALS PRES Keller-R | | Vance-D | | CT CRIMINAL APPEALS 8 Hervey-R | | Barr-D | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| State Totals | 10,267,143 | 19.5 | 6,503,637 | 63.3 | 39.7 | 60.3 | 3,798,855 | 61.0% | 2,433,042 | 39.0% | 4,083,676 | 66.8% | 2,025,229 | 33.2% | 3,311,928 | 56.1% | 2,590,533 | 43.9% | 3,333,925 | 56.9% | 2,525,221 | 43.1% |
| 1 | 348,826 | 1.8 | 225,123 | 64.5 | 39.1 | 60.9 | 142,543 | 64.1% | 79,791 | 35.9% | 149,702 | 68.7% | 68,228 | 31.3% | 112,149 | 55.1% | 91,314 | 44.9% | 110,784 | 54.8% | 91,420 | 45.2% |
| 2 | 358,690 | 3.0 | 216,262 | 60.3 | 41.0 | 59.0 | 133,631 | 63.0% | 78,488 | 37.0% | 137,118 | 65.8% | 71,411 | 34.2% | 105,745 | 53.3% | 92,730 | 46.7% | 105,827 | 53.4% | 91,866 | 46.6% |
| 3 | 319,223 | 5.4 | 221,611 | 69.4 | 26.7 | 73.3 | 154,135 | 72.2% | 59,357 | 27.8% | 167,065 | 79.1% | 44,013 | 20.9% | 142,165 | 69.9% | 61,271 | 30.1% | 143,122 | 71.9% | 56,616 | 28.1% |
| 4 | 349,921 | 2.7 | 229,256 | 65.5 | 31.5 | 68.5 | 157,669 | 70.2% | 66,995 | 29.8% | 166,769 | 75.1% | 55,352 | 24.9% | 134,422 | 63.8% | 76,299 | 36.2% | 134,723 | 64.5% | 74,163 | 35.5% |
| 5 | 310,816 | 6.6 | 196,213 | 63.1 | 39.2 | 60.8 | 118,704 | 62.1% | 72,509 | 37.9% | 127,514 | 67.7% | 60,926 | 32.3% | 100,847 | 55.6% | 80,676 | 44.4% | 102,925 | 57.3% | 76,562 | 42.7% |
| 6 | 333,679 | 6.6 | 224,948 | 67.4 | 33.8 | 66.2 | 146,931 | 67.9% | 72,750 | 32.1% | 151,071 | 72.7% | 59,299 | 27.3% | 130,792 | 62.4% | 78,916 | 37.6% | 130,316 | 62.5% | 78,182 | 37.5% |
| 7 | 288,441 | 10.1 | 200,936 | 69.7 | 31.3 | 68.7 | 130,053 | 67.9% | 61,497 | 32.1% | 137,310 | 73.6% | 49,129 | 26.4% | 118,038 | 65.8% | 61,309 | 34.2% | 120,316 | 67.4% | 58,156 | 32.6% |
| 8 | 357,905 | 6.2 | 249,335 | 69.7 | 22.2 | 77.8 | 187,092 | 77.7% | 53,775 | 22.3% | 191,240 | 81.8% | 43,085 | 18.2% | 171,934 | 75.9% | 55,802 | 24.5% | 172,154 | 75.9% | 54,558 | 24.1% |
| 9 | 361,749 | 8.0 | 270,999 | 74.9 | 46.1 | 53.9 | 124,741 | 55.3% | 100,771 | 44.7% | 171,934 | 75.5% | 55,802 | 24.5% | 106,340 | 49.9% | 106,654 | 50.1% | 105,602 | 50.0% | 105,542 | 50.0% |
| 10 | 326,021 | 17.9 | 221,238 | 67.9 | 53.4 | 46.6 | 89,744 | 44.7% | 101,569 | 59.6% | 133,379 | 60.0% | 89,029 | 40.0% | 84,127 | 42.0% | 116,228 | 58.0% | 115,608 | 58.4% | 115,542 | 58.4% |
| 11 | 308,023 | 9.0 | 197,337 | 64.1 | 35.4 | 64.6 | 129,699 | 67.5% | 62,470 | 32.5% | 136,371 | 72.4% | 52,104 | 27.6% | 103,170 | 57.3% | 76,931 | 42.7% | 107,786 | 60.6% | 70,220 | 39.4% |
| 12 | 317,005 | 8.8 | 217,989 | 68.8 | 33.6 | 66.4 | 141,023 | 66.1% | 70,743 | 33.4% | 153,221 | 73.0% | 56,719 | 27.0% | 127,946 | 63.1% | 74,803 | 36.9% | 126,602 | 62.8% | 75,147 | 37.2% |
| 13 | 342,867 | 11.0 | 214,100 | 62.4 | 28.1 | 71.9 | 156,366 | 74.6% | 53,179 | 25.4% | 161,434 | 78.3% | 44,610 | 21.7% | 130,188 | 66.7% | 64,870 | 33.3% | 130,379 | 67.5% | 62,840 | 32.5% |
| 14 | 352,123 | 19.4 | 214,050 | 60.8 | 36.8 | 63.2 | 136,421 | 65.7% | 71,342 | 34.3% | 144,015 | 70.7% | 59,710 | 29.3% | 111,725 | 57.9% | 81,144 | 42.1% | 110,822 | 58.0% | 80,332 | 42.0% |
| 15 | 291,987 | 65.4 | 146,537 | 50.2 | 54.0 | 46.0 | 63,489 | 45.5% | 76,189 | 54.5% | 68,113 | 52.3% | 62,136 | 47.7% | 52,974 | 43.1% | 69,892 | 56.9% | 52,501 | 42.8% | 56,449 | 30.7% |
| 16 | 296,346 | 64.8 | 145,017 | 48.9 | 57.2 | 42.8 | 56,234 | 40.7% | 81,860 | 59.3% | 66,006 | 49.1% | 68,394 | 50.9% | 54,138 | 40.8% | 78,547 | 59.2% | 53,689 | 40.7% | 78,172 | 59.3% |
| 17 | 354,901 | 11.3 | 228,574 | 64.4 | 27.5 | 72.5 | 161,625 | 72.3% | 61,883 | 27.7% | 168,199 | 76.8% | 50,887 | 23.2% | 126,184 | 61.8% | 77,884 | 38.2% | 126,511 | 62.6% | 75,556 | 37.4% |
| 18 | 317,005 | 13.1 | 196,922 | 59.6 | 73.4 | 26.6 | 47,499 | 25.6% | 138,118 | 74.4% | 56,009 | 31.2% | 123,472 | 68.8% | 44,145 | 24.7% | 134,620 | 75.3% | 44,155 | 24.7% | 134,295 | 75.3% |
| 19 | 328,287 | 22.9 | 202,841 | 61.8 | 26.7 | 73.3 | 138,118 | 74.4% | 48,386 | 25.6% | 155,888 | 79.3% | 40,220 | 20.7% | 127,243 | 68.7% | 57,900 | 31.3% | 127,323 | 69.3% | 56,449 | 30.7% |
| 20 | 312,831 | 59.4 | 157,211 | 50.3 | 56.0 | 44.0 | 64,672 | 42.9% | 86,149 | 57.1% | 76,607 | 51.8% | 71,154 | 48.2% | 59,179 | 40.4% | 87,065 | 59.6% | 59,488 | 40.9% | 86,052 | 59.1% |
| 21 | 411,302 | 10.7 | 298,308 | 72.5 | 27.5 | 72.5 | 206,162 | 72.8% | 77,072 | 27.2% | 222,073 | 79.2% | 58,259 | 20.8% | 185,866 | 67.9% | 87,814 | 32.1% | 189,246 | 70.0% | 81,288 | 30.0% |
| 22 | 341,801 | 12.2 | 237,776 | 69.6 | 31.9 | 68.1 | 156,251 | 68.2% | 72,812 | 31.8% | 165,372 | 73.1% | 60,834 | 26.9% | 140,620 | 65.0% | 75,812 | 35.0% | 141,199 | 65.8% | 73,317 | 34.2% |
| 23 | 329,629 | 53.8 | 166,458 | 56.3 | 41.7 | 58.3 | 74,724 | 48.4% | 74,724 | 41.4% | 113,939 | 65.8% | 59,341 | 34.2% | 90,145 | 53.6% | 77,316 | 46.2% | 91,167 | 54.8% | 75,071 | 45.2% |
| 24 | 255,018 | 16.0 | 158,827 | 62.3 | 53.9 | 46.1 | 70,668 | 45.7% | 83,806 | 54.3% | 79,231 | 51.9% | 73,509 | 48.1% | 64,505 | 43.0% | 83,533 | 57.0% | 64,792 | 43.4% | 84,385 | 56.6% |
| 25 | 270,261 | 13.6 | 177,879 | 65.8 | 50.8 | 49.2 | 81,357 | 48.4% | 86,761 | 51.6% | 90,072 | 55.1% | 73,397 | 44.9% | 72,491 | 45.8% | 85,679 | 54.2% | 74,313 | 47.2% | 83,209 | 52.8% |

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.

** "Statewides" is a weighted average of the results of all general election statewide contested contests.

Perales Decl.
00374

Texas Legislative Council
08/08/06 5:07 PM
Page 2 of 2

REDAX205
Data: 2000 General Election
PLAN 01151C  11/13/01  10:56:42

## GENERAL ELECTION ANALYSIS
## CONGRESSIONAL DISTRICTS - PLAN 01151C
2000 General Election - Selected Statewide Contests*

| DIST | VOTER REG- TOTAL | %SPAN | TURNOUT- TOTAL | TO/VR | STATEWIDE** %Dem | %Rep | PRESIDENT Bush-R | Gore-D | U.S. SENATOR Hutchison-R | Kelly-D | CT CRIMINAL APPEALS PRES Keller-R | Vance-D | CT CRIMINAL APPEALS 8 Hervey-R | Barr-D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 26 | 328,087 | 4.9 | 235,429 | 71.8 | 26.0 | 74.0 | 166,723 73.3% | 60,761 26.7% | 179,050 79.7% | 45,741 20.3% | 154,304 71.1% | 62,675 28.9% | 155,195 71.9% | 60,538 28.1% |
| 27 | 297,016 | 60.3 | 158,387 | 53.4 | 51.1 | 48.9 | 75,576 48.7% | 79,712 51.3% | 85,823 56.9% | 65,069 43.1% | 64,708 44.5% | 80,801 55.5% | 65,254 45.2% | 79,209 54.8% |
| 28 | 320,334 | 38.4 | 156,534 | 48.9 | 59.0 | 41.0 | 62,267 40.8% | 90,194 59.2% | 70,606 48.0% | 76,618 52.0% | 54,296 37.7% | 89,600 62.3% | 53,577 37.4% | 89,821 62.6% |
| 29 | 219,682 | 39.8 | 114,218 | 52.0 | 60.6 | 39.4 | 42,765 39.4% | 65,872 60.6% | 46,130 44.4% | 57,777 55.6% | 37,772 37.1% | 64,057 62.9% | 37,496 36.8% | 64,391 63.2% |
| 30 | 282,106 | 10.1 | 162,445 | 57.6 | 68.5 | 31.5 | 48,915 30.9% | 109,514 69.1% | 56,254 36.0% | 100,191 64.0% | 45,009 29.1% | 109,518 70.9% | 45,922 29.8% | 108,057 70.2% |
| 31 | 326,836 | 8.4 | 233,854 | 71.6 | 29.7 | 70.3 | 160,813 71.5% | 63,984 28.5% | 169,702 76.6% | 51,933 23.4% | 139,127 65.2% | 74,393 34.8% | 142,622 67.6% | 68,353 32.4% |
| 32 | 295,392 | 7.7 | 207,652 | 70.3 | 33.6 | 66.4 | 129,557 64.9% | 70,029 35.1% | 143,864 73.0% | 53,327 27.0% | 119,634 62.3% | 72,328 37.7% | 124,234 65.4% | 65,703 34.6% |

Request: 29415

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.
** "Statewide" is a weighted average of the results of all general election statewide contested contests.

Perales Decl.
00375

RED-M205
Data: 1998 General Election
PLAN 01151C 11/13/01 10:56:42

Request: 29414

# GENERAL ELECTION ANALYSIS
## CONGRESSIONAL DISTRICTS - PLAN 01151C
### 1998 General Election - Selected Statewide Contests*

Texas Legislative Council
08/08/06 5:06 PM
Page 1 of 6

| DIST | VOTER REG- TOTAL | %SPAN | TURNOUT- TOTAL | TO/VR | STATEWIDE** %Dem | %Rep | GOVERNOR Bush-R | Mauro-D | LT. GOVERNOR Perry-R | Sharp-D | ATTORNEY GENERAL Cornyn-R | Mattox-D | COMPTROLLER Rylander-R | Hobby-D |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| State Totals | 9,587,025 | 18.7 | 3,791,352 | 39.5 | 43.1 | 56.9 | 2,550,783 68.6% | 1,165,458 31.4% | 1,858,568 50.9% | 1,789,868 49.1% | 2,002,226 55.1% | 1,630,639 44.9% | 1,820,868 50.3% | 1,800,548 49.7% |
| 1 | 342,984 | 1.5 | 146,706 | 42.8 | 48.1 | 51.9 | 97,320 73.7% | 32,179 25.9% | 67,702 47.5% | 74,969 52.5% | 69,245 48.9% | 72,424 51.1% | 67,012 47.7% | 73,589 52.3% |
| 2 | 346,305 | 2.7 | 140,678 | 40.6 | 49.9 | 50.1 | 91,163 66.0% | 46,976 34.0% | 63,537 46.6% | 72,782 53.4% | 62,990 46.5% | 72,600 53.5% | 60,407 44.9% | 74,068 55.1% |
| 3 | 276,655 | 4.9 | 108,846 | 39.3 | 25.4 | 74.6 | 88,930 82.8% | 18,531 17.2% | 73,390 69.1% | 32,750 30.9% | 78,928 75.0% | 26,343 25.0% | 69,680 66.5% | 35,107 33.5% |
| 4 | 328,226 | 2.4 | 140,721 | 42.9 | 36.4 | 63.6 | 103,200 74.4% | 35,483 25.6% | 78,976 57.6% | 58,061 42.4% | 85,769 63.0% | 50,471 37.0% | 79,229 58.4% | 56,383 41.6% |
| 5 | 293,486 | 5.7 | 115,373 | 39.3 | 40.8 | 59.2 | 79,646 70.2% | 33,746 29.8% | 59,844 53.4% | 52,295 46.6% | 66,300 59.5% | 45,147 40.5% | 58,350 52.5% | 52,700 47.5% |
| 6 | 305,608 | 5.9 | 125,377 | 41.0 | 36.5 | 63.5 | 88,803 80.8% | 21,055 19.2% | 70,441 65.0% | 37,893 35.0% | 77,035 71.5% | 30,773 28.5% | 68,494 64.9% | 37,171 35.1% |
| 7 | 264,844 | 8.8 | 112,666 | 42.5 | 28.0 | 72.0 | 104,726 83.3% | 17,981 14.7% | 87,296 80.8% | 34,305 28.2% | 92,054 76.3% | 28,606 23.7% | 85,130 70.7% | 35,254 29.3% |
| 8 | 317,146 | 7.5 | 125,061 | 39.4 | 22.1 | 77.9 | 113,049 78.2% | 31,576 21.8% | 84,095 59.2% | 38,017 40.8% | 78,017 58.5% | 51,558 53.1% | 78,239 56.6% | 78,239 56.6% |
| 9 | 349,928 | 7.5 | 144,859 | 41.4 | 31.5 | 68.5 | 102,081 72.9% | 26,662 19.0% | 78,169 42.5% | 57,575 57.5% | 71,752 53.1% | 63,468 46.9% | 66,495 49.2% | 53,254 29.3% |
| 10 | 287,188 | 17.3 | 128,267 | 44.7 | 56.8 | 43.2 | 44,577 58.0% | 32,273 42.0% | 44,430 36.1% | 78,800 63.9% | 50,641 41.4% | 71,650 58.6% | 43,373 35.3% | 79,354 64.7% |
| 11 | 286,919 | 8.5 | 114,144 | 39.8 | 41.1 | 58.9 | 81,115 72.3% | 31,131 27.7% | 55,952 50.5% | 54,773 49.5% | 61,045 55.6% | 48,571 44.4% | 58,126 53.0% | 51,643 47.0% |
| 12 | 293,348 | 8.1 | 120,474 | 40.2 | 36.4 | 63.6 | 87,303 73.1% | 32,102 26.9% | 68,517 58.2% | 49,168 41.8% | 76,506 65.3% | 40,710 34.7% | 65,685 56.2% | 51,188 43.8% |
| 13 | 336,373 | 10.0 | 147,320 | 43.8 | 35.9 | 64.1 | 113,049 78.2% | 31,576 21.8% | 84,095 59.2% | 58,017 40.8% | 82,550 58.5% | 58,580 41.5% | 78,111 55.7% | 62,080 44.3% |
| 14 | 331,790 | 18.0 | 143,299 | 43.2 | 44.3 | 55.7 | 102,081 72.9% | 37,909 27.1% | 78,858 57.5% | 51,519 42.5% | 63,468 53.1% | 63,468 46.9% | 66,495 50.8% | 68,617 50.8% |
| 15 | 269,226 | 65.2 | 79,150 | 29.4 | 55.5 | 44.5 | 44,577 55.0% | 28,273 42.0% | 28,782 38.8% | 45,376 61.2% | 28,882 39.4% | 44,504 60.6% | 27,405 37.7% | 45,331 62.3% |
| 16 | 271,402 | 63.5 | 91,689 | 33.8 | 60.5 | 39.5 | 45,067 50.5% | 44,262 49.5% | 29,906 35.2% | 55,011 64.8% | 27,512 31.7% | 59,352 68.3% | 27,811 32.5% | 57,831 67.5% |
| 17 | 338,872 | 10.7 | 157,260 | 46.4 | 40.3 | 59.7 | 117,883 76.2% | 36,731 23.8% | 84,723 57.7% | 67,405 44.3% | 84,111 55.9% | 66,479 44.1% | 77,883 51.9% | 72,212 48.1% |
| 18 | 329,706 | 12.0 | 121,054 | 36.7 | 75.2 | 24.8 | 39,632 34.1% | 76,742 65.9% | 24,774 21.7% | 89,131 78.3% | 27,979 24.5% | 85,999 75.5% | 24,269 21.2% | 90,040 78.8% |
| 19 | 320,537 | 21.4 | 136,639 | 42.6 | 32.3 | 67.7 | 107,353 80.1% | 26,662 19.9% | 78,155 59.8% | 32,475 40.2% | 76,559 58.7% | 53,908 41.3% | 77,216 60.0% | 51,781 40.0% |
| 20 | 296,864 | 58.0 | 85,558 | 28.8 | 57.3 | 42.7 | 46,065 55.0% | 37,651 45.0% | 29,427 36.6% | 51,519 63.6% | 36,751 43.1% | 44,818 54.9% | 31,367 38.5% | 50,162 61.5% |
| 21 | 367,051 | 10.2 | 182,664 | 49.8 | 30.0 | 70.0 | 143,822 80.0% | 35,942 20.0% | 106,511 59.9% | 71,435 40.1% | 122,856 69.8% | 53,254 30.2% | 108,639 61.8% | 67,171 38.2% |
| 22 | 306,061 | 11.7 | 119,875 | 39.2 | 31.7 | 68.3 | 93,025 78.7% | 25,139 21.3% | 84,723 55.7% | 45,629 39.1% | 77,100 66.7% | 38,565 33.3% | 47,896 60.0% | 46,298 40.0% |
| 23 | 296,817 | 53.5 | 107,918 | 36.4 | 46.7 | 53.3 | 69,389 66.6% | 34,753 33.4% | 45,459 45.6% | 54,249 54.4% | 50,895 50.6% | 49,754 49.4% | 47,086 47.2% | 52,612 52.8% |
| 24 | 245,587 | 13.9 | 92,281 | 37.6 | 53.6 | 46.4 | 50,402 55.3% | 40,725 44.7% | 38,024 42.4% | 51,558 57.6% | 42,278 47.2% | 47,274 52.8% | 37,073 41.4% | 52,403 58.6% |
| 25 | 255,095 | 12.1 | 105,500 | 41.5 | 49.4 | 50.6 | 63,746 62.1% | 38,963 37.9% | 44,853 44.5% | 55,948 55.5% | 50,683 50.5% | 49,585 49.5% | 42,685 42.4% | 58,038 57.6% |

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.
** "Statewide" is a weighted average of the results of all general election statewide contested contests.

**Perales Decl. 00376**

RED-M205
Data: 1998 General Election
PLAN 01151C  11/13/01  10:56:42

Texas Legislative Council
08/08/06  5:06 PM
Page 2 of 6

## GENERAL ELECTION ANALYSIS
## CONGRESSIONAL DISTRICTS - PLAN 01151C
### 1998 General Election - Selected Statewide Contests*

| DIST | VOTER REG TOTAL | %SPAN | TURNOUT TOTAL | %TOVR | STATEWIDE** %Dem | %Rep | GOVERNOR Bush-R | | Mauro-D | | LT.GOVERNOR Perry-R | | Sharp-D | | ATTORNEY GENERAL Cornyn-R | | Mattox-D | | COMPTROLLER Rylander-R | | Hobby-D | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 26 | 291,059 | 4.4 | 111,777 | 38.4 | 26.2 | 73.8 | 90,072 | 81.6% | 20,275 | 18.4% | 74,128 | 68.0% | 34,828 | 32.0% | 79,781 | 73.9% | 28,168 | 26.1% | 71,577 | 66.5% | 36,115 | 33.5% |
| 27 | 287,983 | 59.2 | 96,146 | 33.4 | 54.4 | 45.6 | 56,579 | 60.0% | 37,525 | 40.0% | 36,585 | 40.3% | 54,171 | 59.7% | 36,722 | 40.2% | 54,672 | 59.8% | 35,644 | 39.3% | 55,149 | 60.7% |
| 28 | 303,273 | 57.2 | 90,809 | 29.9 | 62.2 | 37.8 | 44,912 | 50.5% | 43,935 | 49.5% | 27,963 | 32.6% | 57,747 | 67.4% | 32,459 | 37.7% | 53,555 | 62.3% | 28,937 | 33.8% | 56,639 | 66.2% |
| 29 | 214,880 | 36.8 | 58,220 | 27.1 | 59.4 | 40.6 | 30,169 | 54.1% | 25,600 | 45.9% | 19,681 | 37.3% | 33,142 | 62.7% | 20,976 | 39.0% | 32,751 | 61.0% | 19,228 | 35.7% | 34,621 | 64.3% |
| 30 | 266,092 | 8.9 | 89,816 | 33.8 | 67.7 | 32.3 | 34,905 | 39.4% | 53,687 | 60.6% | 25,908 | 29.6% | 61,762 | 70.4% | 28,835 | 32.9% | 58,735 | 67.1% | 25,412 | 29.0% | 62,094 | 71.0% |
| 31 | 283,063 | 7.9 | 131,420 | 46.4 | 34.4 | 65.6 | 99,300 | 77.2% | 29,359 | 22.8% | 75,090 | 59.1% | 52,038 | 40.9% | 77,160 | 61.3% | 48,781 | 38.7% | 72,197 | 57.5% | 53,388 | 42.5% |
| 32 | 276,654 | 6.7 | 119,585 | 43.2 | 30.9 | 69.1 | 90,783 | 76.8% | 27,354 | 23.2% | 74,207 | 63.3% | 42,981 | 36.7% | 82,676 | 71.1% | 33,579 | 28.9% | 69,049 | 59.5% | 46,966 | 40.5% |

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.

** "Statewide" is a weighted average of the results of all general election statewide contested contests.

Request 29414

**Perales Decl. 00377**

RED-M205
Data: 1998 General Election
PLAN 0115C 11/13/01 10:56:42

Texas Legislative Council
08/03/06 5:06 PM
Page 3 of 6

## GENERAL ELECTION ANALYSIS
## CONGRESSIONAL DISTRICTS - PLAN 0115C
### 1998 General Election - Selected Statewide Contests*

| DIST | LAND COMMISSIONER Dewhurst -R | Raymond -D | AGRICULTURE COMMISSIONER Combs -R | Patterson -D | RAILROAD COMMISSIONER 3 Garza -R | Henderson -D | SUPREME CT 1 Hankinson -R | Starbrough -D | SUPREME CT 3 Enoch -R | Westergren -D |
|---|---|---|---|---|---|---|---|---|---|---|
| State Totals | 2,072,146 59.0% | 1,438,155 41.0% | 2,020,675 57.2% | 1,510,822 42.8% | 2,050,712 58.3% | 1,464,022 41.7% | 1,995,391 56.9% | 1,511,179 43.1% | 2,049,176 58.2% | 1,473,010 41.8% |
| 1 | 75,863 55.2% | 61,454 44.8% | 64,930 46.8% | 73,697 53.2% | 69,979 51.9% | 65,833 48.5% | 67,626 50.2% | 67,205 49.8% | 71,418 52.9% | 63,663 47.1% |
| 2 | 68,837 52.3% | 62,688 47.7% | 62,194 47.5% | 68,748 52.5% | 60,743 46.9% | 68,795 53.1% | 62,246 47.8% | 67,851 52.2% | 67,375 51.9% | 62,534 48.1% |
| 3 | 77,956 76.3% | 24,187 23.7% | 76,278 74.8% | 25,623 25.2% | 77,867 76.5% | 23,669 23.5% | 77,042 75.7% | 24,794 24.3% | 78,476 76.3% | 24,390 23.7% |
| 4 | 88,303 66.5% | 44,503 33.5% | 80,075 60.6% | 52,035 39.4% | 84,882 64.5% | 46,711 35.5% | 82,357 62.9% | 48,486 37.1% | 85,723 65.3% | 45,478 34.7% |
| 5 | 66,419 61.3% | 41,869 38.7% | 62,106 57.4% | 46,109 42.6% | 64,952 60.2% | 42,876 39.8% | 63,266 58.9% | 44,085 41.1% | 66,255 61.3% | 41,870 38.7% |
| 6 | 78,494 66.2% | 40,033 33.8% | 73,341 61.8% | 45,239 38.2% | 76,109 64.5% | 41,936 35.5% | 74,606 63.3% | 43,391 36.7% | 77,272 65.1% | 41,416 34.9% |
| 7 | 77,432 74.2% | 26,972 25.8% | 76,408 73.8% | 27,141 26.2% | 77,000 73.7% | 27,421 26.3% | 76,663 74.0% | 26,964 26.0% | 77,488 74.6% | 26,447 25.4% |
| 8 | 94,040 79.8% | 23,858 20.2% | 91,304 78.4% | 25,152 21.6% | 91,859 78.3% | 25,516 21.7% | 92,563 78.9% | 24,751 21.1% | 99,843 80.0% | 23,531 20.0% |
| 9 | 67,493 50.1% | 67,139 49.9% | 64,417 48.0% | 69,919 52.0% | 63,286 47.7% | 69,394 52.3% | 63,983 47.7% | 70,261 52.3% | 67,776 50.3% | 66,942 49.7% |
| 10 | 50,389 42.7% | 67,621 57.3% | 57,750 48.2% | 61,956 51.8% | 54,533 46.7% | 62,245 53.3% | 53,738 45.3% | 64,796 54.7% | 52,740 44.4% | 66,116 55.6% |
| 11 | 63,573 59.7% | 42,938 40.3% | 61,950 57.8% | 45,198 42.2% | 64,170 60.4% | 42,074 39.6% | 62,203 58.6% | 43,896 41.4% | 64,990 61.3% | 40,957 38.7% |
| 12 | 75,516 66.3% | 38,576 33.7% | 71,563 62.7% | 42,575 37.3% | 72,679 64.2% | 40,461 35.8% | 72,959 65.9% | 41,147 36.1% | 74,939 65.3% | 39,855 34.7% |
| 13 | 92,558 68.1% | 43,272 31.9% | 87,956 63.9% | 49,686 36.1% | 84,607 62.9% | 49,946 37.1% | 83,410 62.2% | 50,583 37.8% | 90,087 66.8% | 44,743 33.2% |
| 14 | 76,778 59.1% | 53,241 40.9% | 75,652 57.8% | 55,288 42.2% | 70,738 54.9% | 58,132 45.1% | 70,627 55.1% | 57,476 44.9% | 73,715 57.2% | 55,133 42.8% |
| 15 | 31,343 44.8% | 38,652 55.2% | 33,468 46.8% | 38,118 53.2% | 36,740 50.4% | 36,119 49.6% | 30,820 43.6% | 39,792 56.4% | 29,928 41.8% | 41,697 58.2% |
| 16 | 32,808 40.6% | 47,598 59.4% | 34,145 40.7% | 49,688 59.3% | 40,582 47.7% | 44,527 52.3% | 32,938 38.9% | 51,836 61.1% | 33,495 39.5% | 51,198 60.5% |
| 17 | 93,073 64.4% | 51,461 35.6% | 88,557 60.2% | 58,451 39.8% | 83,735 58.2% | 60,105 41.8% | 81,381 57.3% | 60,687 42.7% | 89,001 62.2% | 54,139 37.8% |
| 18 | 27,687 25.0% | 82,850 75.0% | 27,308 24.7% | 83,470 75.3% | 28,528 25.4% | 83,754 74.6% | 27,050 24.2% | 84,919 75.8% | 28,121 25.2% | 83,607 74.8% |
| 19 | 91,623 73.2% | 33,502 26.8% | 85,886 67.2% | 41,915 32.8% | 87,125 68.9% | 39,347 31.1% | 83,380 66.5% | 42,037 33.5% | 89,463 71.1% | 36,451 28.9% |
| 20 | 34,358 43.6% | 44,230 56.4% | 35,617 44.4% | 44,617 55.6% | 38,554 48.0% | 41,740 52.0% | 35,154 43.6% | 45,439 56.4% | 33,559 41.7% | 46,831 58.3% |
| 21 | 123,140 71.7% | 48,618 28.3% | 128,082 74.2% | 44,575 25.8% | 121,958 72.0% | 47,353 28.0% | 122,990 72.4% | 46,786 27.6% | 122,386 71.8% | 48,112 28.2% |
| 22 | 82,354 70.4% | 34,743 29.6% | 76,340 68.6% | 35,042 31.4% | 76,403 68.6% | 34,918 31.4% | 76,502 68.7% | 34,838 31.3% | 78,371 70.1% | 33,483 29.9% |
| 23 | 52,354 54.9% | 43,043 45.1% | 53,866 55.1% | 43,982 44.9% | 51,478 54.4% | 43,149 45.6% | 52,870 54.4% | 44,435 45.6% | 53,607 54.1% | 45,525 45.9% |
| 24 | 41,426 47.7% | 45,410 52.3% | 39,841 45.5% | 47,692 54.5% | 41,840 47.9% | 45,488 52.1% | 40,665 46.3% | 47,089 53.7% | 41,552 47.1% | 46,684 52.9% |
| 25 | 50,016 52.0% | 46,190 48.0% | 49,033 51.3% | 46,467 48.7% | 49,800 51.9% | 46,866 48.5% | 49,637 51.7% | 46,409 48.3% | 50,546 52.5% | 45,767 47.5% |

\* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.

\*\* "Statewide" is a weighted average of the results of all general election statewide contested contests.

Request: 29414

Perales Decl.
00378

Request: 29414

RED-M205
Data: 1998 General Election
PLAN 01151C  11/13/01  10:56:42

**GENERAL ELECTION ANALYSIS**
**CONGRESSIONAL DISTRICTS - PLAN 01151C**
**1998 General Election - Selected Statewide Contests***

Texas Legislative Council
08/08/06    5:06 PM
Page 4 of 6

| DIST | LAND COMMISSIONER Dewhurst -R | Raymond -D | AGRICULTURE COMMISSIONER Combs -R | Patterson -D | RAILROAD COMMISSIONER Garza -R | Henderson -D | SUPREME CT 1 Hankinson -R | Scarbrough -D | SUPREME CT 3 Enoch -R | Westergren -D |
|---|---|---|---|---|---|---|---|---|---|---|
| 26 | 79,773 76.0% | 25,259 24.0% | 77,725 74.0% | 27,282 26.0% | 78,612 75.1% | 26,070 24.9% | 78,587 74.9% | 26,389 25.1% | 79,559 75.2% | 26,215 24.8% |
| 27 | 40,258 46.1% | 47,073 53.9% | 43,777 49.1% | 45,296 50.9% | 48,687 53.9% | 41,590 46.1% | 39,632 44.8% | 48,797 55.2% | 34,571 38.0% | 56,405 62.0% |
| 28 | 31,110 37.3% | 52,323 62.7% | 33,014 39.1% | 51,485 60.9% | 35,686 42.2% | 48,839 57.8% | 32,105 38.1% | 52,269 61.9% | 31,223 37.0% | 53,091 63.0% |
| 29 | 20,532 40.7% | 29,907 59.3% | 20,566 39.5% | 31,442 60.5% | 23,214 43.4% | 30,295 56.6% | 20,629 39.1% | 32,192 60.9% | 21,432 40.7% | 31,222 59.3% |
| 30 | 28,015 32.7% | 57,735 67.3% | 27,141 31.5% | 58,897 68.5% | 28,774 33.4% | 57,326 66.6% | 27,966 32.4% | 58,285 67.6% | 28,395 32.8% | 58,177 67.2% |
| 31 | 82,237 67.4% | 39,740 32.6% | 81,874 67.2% | 39,922 32.8% | 79,953 66.2% | 40,892 33.8% | 79,436 65.9% | 41,079 34.1% | 81,963 67.7% | 39,160 32.3% |
| 32 | 79,967 70.9% | 32,750 29.1% | 78,353 69.7% | 34,110 30.3% | 80,758 71.6% | 32,014 28.4% | 80,500 71.4% | 32,274 28.6% | 81,933 71.8% | 32,171 28.2% |

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.
** "Statewide" is a weighted average of the results of all general election statewide contested contests.

**Perales Decl. 00379**

RED-M205
Data: 1998 General Election
PLAN 01151C 11/13/01 10:56:42

Request: 29414

GENERAL ELECTION ANALYSIS
CONGRESSIONAL DISTRICTS - PLAN 01151C
1998 General Election - Selected Statewide Contests*

Texas Legislative Council
08/08/06 5:06 PM
Page 5 of 6

| DIST | SUPREME CT 4 | | | | SUPREME CT 5 | | | | CT CRIMINAL APPEALS 4 | | | | CT CRIMINAL APPEALS 5 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Abbott-R | | Van Os-D | | O'Neill-R | | Spector-D | | Johnson-R | | Cochran-D | | Keasler-R | | Baird-D | |
| State Totals | 2,104,223 | 60.1% | 1,395,718 | 39.9% | 1,890,912 | 53.5% | 1,641,985 | 46.5% | 2,013,582 | 57.8% | 1,469,841 | 42.2% | 1,888,604 | 54.0% | 1,611,228 | 46.0% |
| 1 | 73,971 | 55.1% | 60,192 | 44.9% | 66,003 | 48.8% | 69,334 | 51.2% | 69,616 | 51.9% | 64,443 | 48.1% | 67,703 | 50.0% | 67,606 | 50.0% |
| 2 | 69,944 | 54.2% | 59,223 | 45.8% | 62,626 | 48.2% | 67,315 | 51.8% | 64,841 | 50.1% | 64,585 | 49.9% | 62,228 | 47.8% | 67,832 | 52.2% |
| 3 | 78,459 | 77.0% | 23,445 | 23.0% | 73,581 | 71.5% | 29,331 | 28.5% | 78,296 | 77.1% | 23,261 | 22.9% | 72,635 | 71.5% | 28,924 | 28.5% |
| 4 | 86,565 | 66.4% | 43,749 | 33.6% | 80,294 | 61.3% | 50,767 | 38.7% | 83,794 | 64.6% | 45,950 | 35.4% | 79,713 | 61.0% | 50,858 | 39.0% |
| 5 | 66,399 | 62.1% | 40,581 | 37.9% | 60,632 | 56.1% | 47,425 | 43.9% | 64,334 | 60.6% | 42,163 | 39.6% | 59,919 | 55.9% | 47,301 | 44.1% |
| 6 | 78,473 | 66.7% | 39,113 | 33.3% | 72,043 | 60.6% | 46,857 | 39.4% | 76,945 | 65.3% | 40,860 | 34.7% | 70,081 | 59.3% | 48,186 | 40.7% |
| 7 | 79,203 | 76.0% | 25,024 | 24.0% | 73,562 | 70.2% | 31,378 | 29.8% | 72,678 | 71.0% | 29,649 | 29.0% | 70,388 | 68.2% | 32,811 | 31.8% |
| 8 | 95,281 | 81.3% | 21,983 | 18.7% | 91,008 | 76.9% | 27,311 | 23.1% | 91,458 | 78.7% | 24,813 | 21.3% | 89,230 | 76.3% | 27,685 | 23.7% |
| 9 | 68,112 | 51.0% | 65,572 | 49.0% | 62,756 | 46.6% | 71,822 | 53.4% | 65,212 | 48.8% | 68,296 | 51.2% | 61,606 | 46.1% | 72,146 | 53.9% |
| 10 | 53,553 | 45.0% | 65,324 | 55.0% | 44,748 | 37.3% | 75,168 | 62.7% | 52,222 | 44.6% | 64,863 | 55.4% | 46,455 | 39.4% | 71,455 | 60.6% |
| 11 | 66,018 | 62.6% | 39,364 | 37.4% | 59,578 | 56.2% | 46,342 | 43.8% | 64,092 | 61.0% | 41,005 | 39.0% | 59,143 | 56.1% | 46,309 | 43.9% |
| 12 | 76,240 | 66.8% | 37,817 | 33.2% | 69,133 | 60.1% | 45,884 | 39.9% | 74,836 | 65.7% | 39,075 | 34.3% | 66,875 | 58.5% | 47,417 | 41.5% |
| 13 | 91,712 | 68.7% | 41,791 | 31.3% | 83,174 | 62.0% | 51,046 | 38.0% | 85,587 | 64.3% | 47,450 | 35.7% | 82,690 | 61.9% | 50,846 | 38.1% |
| 14 | 78,007 | 61.1% | 49,601 | 38.9% | 65,411 | 50.7% | 63,648 | 49.3% | 71,599 | 56.4% | 55,364 | 43.6% | 68,633 | 53.7% | 59,128 | 46.3% |
| 15 | 33,643 | 47.5% | 37,120 | 52.5% | 29,534 | 41.6% | 41,541 | 58.4% | 31,662 | 45.0% | 38,644 | 55.0% | 30,094 | 42.7% | 40,430 | 57.3% |
| 16 | 35,490 | 42.1% | 48,813 | 57.9% | 31,195 | 36.6% | 53,985 | 63.4% | 34,925 | 41.4% | 49,436 | 58.6% | 30,721 | 36.3% | 54,012 | 63.7% |
| 17 | 90,946 | 64.3% | 50,527 | 35.7% | 79,166 | 55.4% | 63,719 | 44.6% | 83,906 | 59.4% | 57,427 | 40.6% | 76,888 | 54.0% | 65,417 | 46.0% |
| 18 | 29,501 | 26.3% | 82,678 | 73.7% | 26,372 | 23.3% | 86,578 | 76.7% | 26,748 | 24.0% | 84,517 | 76.0% | 24,602 | 22.0% | 87,237 | 78.0% |
| 19 | 91,028 | 72.9% | 33,813 | 27.1% | 84,498 | 67.6% | 40,449 | 32.4% | 84,323 | 68.0% | 39,731 | 32.0% | 82,915 | 66.6% | 41,604 | 33.4% |
| 20 | 35,522 | 44.4% | 44,548 | 55.6% | 26,282 | 32.0% | 55,774 | 68.0% | 34,888 | 43.5% | 45,391 | 56.5% | 31,138 | 38.6% | 49,501 | 61.4% |
| 21 | 125,579 | 74.1% | 43,885 | 25.9% | 107,157 | 62.2% | 65,167 | 37.8% | 121,254 | 72.1% | 46,971 | 27.9% | 114,514 | 67.9% | 54,020 | 32.1% |
| 22 | 80,148 | 71.9% | 31,294 | 28.1% | 75,429 | 67.1% | 37,014 | 32.9% | 76,925 | 69.5% | 33,692 | 30.5% | 73,628 | 66.4% | 37,330 | 33.6% |
| 23 | 54,352 | 56.2% | 42,278 | 43.8% | 45,612 | 46.5% | 52,553 | 53.5% | 52,270 | 54.1% | 44,369 | 45.9% | 48,851 | 50.3% | 48,178 | 49.7% |
| 24 | 41,985 | 47.9% | 45,755 | 52.1% | 38,430 | 43.5% | 49,893 | 56.5% | 41,814 | 47.8% | 45,640 | 52.2% | 37,692 | 42.9% | 50,201 | 57.1% |
| 25 | 52,436 | 54.3% | 44,197 | 45.7% | 47,022 | 48.0% | 50,907 | 52.0% | 47,258 | 49.8% | 47,661 | 50.2% | 44,618 | 46.6% | 51,194 | 53.4% |

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.
** "Statewide" is a weighted average of the results of all general election statewide contested contests.

Perales Decl.
00380

RED-M205
Data: 1998 General Election
PLAN 01151C  11/13/01  10:56:42

GENERAL ELECTION ANALYSIS
CONGRESSIONAL DISTRICTS - PLAN 01151C
1998 General Election - Selected Statewide Contests*

Texas Legislative Council
08/03/06  5:06 PM
Page 6 of 6

| DIST | SUPREME CT 4 | | | | SUPREME CT 5 | | | | CT CRIMINAL APPEALS 4 | | | | CT CRIMINAL APPEALS 5 | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Abbott-R | | Van Os-D | | O'Neill-R | | Spector-D | | Johnson-R | | Cochran-D | | Keasler-R | | Baird-D | |
| 26 | 80,147 | 76.3% | 24,865 | 23.7% | 74,952 | 70.8% | 30,977 | 29.2% | 79,656 | 76.0% | 25,121 | 24.0% | 73,962 | 70.6% | 30,870 | 29.4% |
| 27 | 42,880 | 48.5% | 45,497 | 51.5% | 38,101 | 42.8% | 50,930 | 57.2% | 40,826 | 46.3% | 47,415 | 53.7% | 38,226 | 43.4% | 49,946 | 56.6% |
| 28 | 32,964 | 39.3% | 50,910 | 60.7% | 25,787 | 30.3% | 59,428 | 69.7% | 31,729 | 37.8% | 52,259 | 62.2% | 29,595 | 35.1% | 54,719 | 64.9% |
| 29 | 22,455 | 42.4% | 30,479 | 57.6% | 20,545 | 38.5% | 32,841 | 61.5% | 20,852 | 39.8% | 31,563 | 60.2% | 19,650 | 37.2% | 33,168 | 62.8% |
| 30 | 28,266 | 32.8% | 57,938 | 67.2% | 26,010 | 30.0% | 60,617 | 70.0% | 28,715 | 33.4% | 57,211 | 66.6% | 25,889 | 30.0% | 60,366 | 70.0% |
| 31 | 84,298 | 69.9% | 36,351 | 30.1% | 76,719 | 63.1% | 44,949 | 36.9% | 80,428 | 67.1% | 39,463 | 32.9% | 76,015 | 63.1% | 44,527 | 36.9% |
| 32 | 80,652 | 71.6% | 31,991 | 28.4% | 73,152 | 64.1% | 41,035 | 35.9% | 79,893 | 71.7% | 31,553 | 28.3% | 72,307 | 64.4% | 40,004 | 35.6% |

* Texas Legislative Council reports generally do not include results from third party, independent, or write-in candidates. Complete official results are maintained by the office of the secretary of state.

** "Statewide" is a weighted average of the results of all general election statewide contested contests.

Request: 29414

Perales Decl.
00381

EXHIBIT 2 TO THE JACKSON PLAINTIFFS' FEES MOTION

Perales Decl.
00382

| DISTRICT | PLAN | % | TOTAL | %A | %B | %H | %D+H | %O | TOTAL | %SPAN | TOTAL | TO VR | %DEM | %REP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **15** | | | 651,625 | 19.7 | 2.0 | 77.6 | 79.3 | 1.0 | 306,187 | 69.0 | 159,408 | 52.1% | 54.4 | 45.6 |
| | 15 | 84.7% | 551,931 | 19.1 | 1.9 | 78.3 | 79.9 | 1.0 | 254,441 | 69.5 | 131,860 | 51.8% | 54.8 | 45.2 |
| | 25 | 15.3% | 99,694 | 23.1 | 2.4 | 73.6 | 75.8 | 1.1 | 51,746 | 66.5 | 27,548 | 53.2% | 52.5 | 47.5 |
| **21** | | | 651,615 | 68.1 | 6.8 | 21.3 | 27.8 | 4.1 | 436,809 | 15.4 | 327,885 | 75.1% | 34.8 | 65.2 |
| | 21 | 68.4% | 445,708 | 72.5 | 4.7 | 18.1 | 22.6 | 4.9 | 305,567 | 13.7 | 235,771 | 77.2% | 35.1 | 64.9 |
| | 23 | 22.3% | 145,069 | 72.3 | 2.4 | 23.1 | 25.3 | 2.4 | 96,551 | 14.8 | 73,130 | 75.7% | 26.8 | 73.2 |
| | 28 | 9.3% | 60,838 | 25.5 | 33.0 | 40.1 | 72.2 | 2.4 | 34,691 | 31.9 | 18,984 | 54.7% | 61.8 | 38.2 |
| **23** | | | 651,612 | 30.0 | 3.3 | 65.1 | 68.1 | 1.9 | 363,356 | 54.2 | 213,906 | 58.9% | 46.3 | 53.7 |
| | 21 | 0.0% | 213 | 79.3 | 1.4 | 18.8 | 20.2 | 0.5 | 168 | 20.8 | 92 | 54.8% | 31.3 | 68.7 |
| | 23 | 63.4% | 413,210 | 37.7 | 2.2 | 58.0 | 59.9 | 2.4 | 247,856 | 46.6 | 159,094 | 64.2% | 39.9 | 60.1 |
| | 28 | 36.6% | 238,189 | 16.6 | 5.3 | 77.5 | 82.3 | 1.0 | 115,332 | 70.5 | 54,720 | 47.4% | 64.8 | 35.2 |
| **25** | | | 651,618 | 52.9 | 10.4 | 33.9 | 43.9 | 3.2 | 369,248 | 20.3 | 267,784 | 72.5% | 55.5 | 44.5 |
| | 15 | 15.2% | 98,746 | 72.4 | 9.6 | 17.0 | 26.4 | 1.3 | 60,909 | 8.7 | 42,751 | 70.2% | 38.8 | 61.2 |
| | 21 | 29.4% | 191,337 | 74.6 | 3.2 | 18.1 | 21.1 | 4.3 | 138,934 | 12.4 | 114,004 | 82.1% | 49.8 | 50.2 |
| | 25 | 46.7% | 304,410 | 33.7 | 16.1 | 47.7 | 63.1 | 3.2 | 137,797 | 30.4 | 90,423 | 65.6% | 70.9 | 29.1 |
| | 28 | 8.8% | 57,125 | 49.4 | 6.2 | 42.5 | 48.3 | 2.3 | 31,608 | 33.9 | 20,606 | 65.2% | 53.7 | 46.3 |
| **28** | | | 651,627 | 20.3 | 1.5 | 77.5 | 78.8 | 1.0 | 318,542 | 66.3 | 169,840 | 53.3% | 51.2 | 48.8 |
| | 15 | 0.1% | 942 | 3.1 | 1.2 | 96.7 | 96.7 | 0.2 | 107 | 75.7 | 98 | 91.6% | 56.4 | 43.6 |
| | 21 | 2.2% | 14,361 | 71.6 | 7.5 | 18.4 | 25.4 | 2.9 | 7,186 | 14.9 | 4,935 | 68.7% | 26.3 | 73.7 |
| | 23 | 14.3% | 93,341 | 6.4 | 0.5 | 92.4 | 92.6 | 0.9 | 46,796 | 84.8 | 24,136 | 51.6% | 61.5 | 38.5 |
| | 25 | 38.0% | 247,515 | 7.0 | 0.3 | 92.3 | 92.4 | 0.6 | 104,861 | 84.6 | 46,882 | 44.7% | 65.3 | 34.7 |
| | 28 | 45.3% | 295,468 | 33.3 | 2.4 | 63.3 | 65.5 | 1.2 | 159,592 | 51.1 | 93,789 | 58.8% | 43.0 | 57.0 |

Perales Decl.
00383