**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| NORTHWEST AUSTIN MUNICIPAL UTILITY DISTRICT NUMBER ONE, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 1:06-CV-01384 (DST, PLF, EGS) |
| ALBERTO GONZALES, Attorney General of the United States, et al., | ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS

Pursuant to Fed. R. Civ. P. 56 and Local Civil Rules 7.1(h) and 56.1, Defendant Attorney General Alberto Gonzales and Defendant-Intervenors Texas State Conference of NAACP Branches, Austin Branch of the NAACP, Rodney Louis, Nicole Louis, Winthrop Graham, Yvonne Graham, Wendy Richardson, Jamal Richardson, Marisa Richardson, Lisa Diaz, David Diaz and Gabriel Diaz, People for the American Way, Travis County, Nathaniel Lesane, Jovita Casarez, Angie Garcia, Ofelia Zapata (collectively "Defendant-Intervenors," and together with Defendant Attorney General, "Defendants"), set forth the following statement of issues in opposition to Plaintiff Northwest Austin Municipal Utility District Number One's ("District") Statement of Material Facts submitted in support of its Motion for Summary Judgment [Dkt. No. 99-47].

I.    **Response to Items in Plaintiff's "Statement of Material Facts in Support of Plaintiff's Motion for Summary Judgment"**

¶ 1.    The Northwest Austin Municipal Utility District No. 1 is located in northwest Austin, Texas.  Nov. 25, 1986 Preclearance Submission & Response, Ex. 2.

**RESPONSE:**  Not disputed.

¶ 2.    Created in the late 1980s in connection with the development of a residential subdivision now known as Canyon Creek, the district sits wholly within both the city limits of Austin and Travis County.  Nov. 25, 1986 Preclearance Submission & Response, Ex. 2.

**RESPONSE:**  Not disputed.

¶ 3.    The creation of the district and the establishment of the original polling location were submitted to and precleared by the Attorney General.  Nov. 25, 1986 Preclearance Submission & Response, Ex. 2.

**RESPONSE:**  Not disputed (though the similar changes were resubmitted to the Attorney General in 1988).

¶ 4.    The district is a political subdivision of the State of Texas.  *See* TEX. CONST. art. XVI, §59(a), (b) (authorizing creation of conservation and reclamation districts as necessary to conserve and develop State natural resources); *see also* TEX. WATER CODE §54.011 (authorizing creation of Municipal Utility Districts (MUDs)).

**RESPONSE:**  Disputed to the extent that the statement calls for a legal determination of the definition of "political subdivision."  Defendants refer the

Court to the operative definition of "political subdivision" in the Voting Rights

Act, 42 U.S.C. § 1973*l*(c)(2).

¶ 5.    The district is subject to direct supervision by the state through the Texas

Commission on Environmental Quality (TCEQ) (formerly known as the Texas Natural

Resources and Conservation Commission).    TEX. WATER CODE §54.024.

**RESPONSE:** Not disputed.

¶ 6.    Although the district is geographically contained within both the City of Austin

and Travis County, it is independent of both.    Neither the city nor the county exercises any

supervisory authority over the district.    *See* TEX. WATER CODE §54.024; Deposition of Dana

DeBeauvoir, Ex. 14 at 17:13-18:1.

**RESPONSE:** Disputed to the extent that the District's elections are

intertwined with Travis County.    Travis County, pursuant to State law, conducts

voter registration for the District, and pursuant to agreement with the District,

exercises substantial responsibility for the administration of the District's

elections, as well as the elections of numerous other jurisdictions located within

the boundaries of the County.    *See* SMF ¶¶ 1574-1575; DeBeauvoir Dep. 6:24-

7:06; Joint Election Agreement at 1-4 (Feb. 27, 2006 Letter from Reilly to Fisher)

(Def. Dep. Ex. 4); Ferguson Dep. Vol. I at 42:19-45:1; Zimmerman Dep. 67:17-

69:12.    With regard to other matters, Defendants do not believe that the District

has identified adequate support for its contention.    First, Texas Water Code §

54.024 only states that the District "shall be subject to the continuing right of

supervision of the state to be exercised by and through the commission." The statute is silent as to whether the City of Austin or Travis County exercise any supervisory authority over the District. Second, Ms. DeBeauvoir specifically disclaimed any knowledge of the District's relationship with the county beyond the elections contract between Travis County and the District and stated that she was not aware of any situation in which the District was obligated to follow orders given by the county. DeBeauvoir Dep. at 17:13-18.1. Third, the City of Austin is a home rule city and, under Texas law, home rule cities have significant authority over matters concerning so-called in-city Municipal Utility Districts such as the District. *See, e.g.,* TEX. LOC. GOV'T CODE § 43.074 (city may abolish a Municipal Utility District entirely); § 211.003 (municipal zoning authority); § 212.002 (municipal subdivision authority). This factual dispute is immaterial to the resolution of the Defendants' motions for summary judgment in this action.[1]

¶ 7.    The district has never used any "test or device" as a prerequisite for voting or registration for voting. Affidavit of Frank Reilly, Ex. 1.

---

[1]    Because Defendants' believe that the District is as a matter of law statutorily ineligible to obtain bailout, *see* Defendant Attorney General's Opening Memorandum [Dkt. No 98-2] at 3-6; Defendant-Intervenors' Opening Memorandum [Dkt. No. 100-23] at 21-25; and Diaz Defendant Intervenors' Opening Memorandum [Dkt. No. 101-2] at 26-30, any factual disputes relating to the whether the District is eligible for bailout or has satisfied the statutory criteria required to obtain bailout are immaterial and should not preclude this Court from granting Defendants' motions for summary judgment. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) ("As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.").

**RESPONSE:** Disputed to the extent that the District relies solely on the Affidavit of Frank Reilly.[2] Mr. Reilly does not have personal knowledge of the details of the District for the entirety of the District's existence because he has only acted as counsel for the District since "June or July of 2002," and does not live within the District's boundaries. Reilly Dep. at 12:12-13; 14:15-22. *See also* Reilly Dep. at 94:8-95:1 (acknowledging doing no factual investigation of the District's eligibility for bailout). Furthermore, under Texas State law, Travis County–not the District–has the responsibility for registering voters, Tex. Elec. Code § 12.001, and thus the District would have no role in the registration process. This factual dispute is immaterial to the resolution of the Defendants' motions for summary judgment in this action. *See* note 1 *supra*.

¶ 8.    Because the district has never used a test or device, the district has never used a test or device with a discriminatory purpose or effect. Affidavit of Frank Reilly, Ex. 1.

**RESPONSE:** Disputed to the extent that the District relies solely on the Affidavit of Frank Reilly. Mr. Reilly does not have personal knowledge of the details of the District for the entirety of the District's existence because he has only acted as counsel for the District since "June or July of 2002," and does not live within the District's boundaries. Reilly Dep. at 12:12-13; 14:15-22. *See also* Reilly Dep. at 94:8-95:1 (acknowledging doing no factual investigation of the District's eligibility for bailout). Furthermore, under Texas State law, Travis County–not the District–has the responsibility for registering voters, Tex. Elec.

---

[2]    The Affidavit of Frank Reilly is attached as Exhibit 1 to Plaintiff's Motion for Summary Judgment.

Code § 12.001, and thus the District would have no role in the registration process. This factual dispute is immaterial to the resolution of the Defendants' motions for summary judgment in this action. *See* note 1 *supra.*

¶ 9.    The district has never used a literacy test as a prerequisite for voting or registration for voting. Affidavit of Frank Reilly, Ex. 1.

RESPONSE: Disputed to the extent that the District relies solely on the Affidavit of Frank Reilly.  Mr. Reilly does not have personal knowledge of the details of the District for the entirety of the District's existence because he has only acted as counsel for the District since "June or July of 2002," and does not live within the District's boundaries. Reilly Dep. at 12:12-13; 14:15-22. *See also* Reilly Dep. at 94:8-95:1 (acknowledging doing no factual investigation of the District's eligibility for bailout).  Furthermore, under Texas State law, Travis County—not the District—has responsibility for registering voters, Tex. Elec. Code § 12.001, and thus the District would have no role in the registration process. This factual dispute is immaterial to the resolution of the Defendants' motions for summary judgment in this action. *See* note 1 *supra.*

¶ 10.    The district has never used an education or knowledge requirement as a prerequisite for voting or registration for voting.  Affidavit of Frank Reilly, Ex. 1.

RESPONSE: Disputed to the extent that the District relies solely on the Affidavit of Frank Reilly.  Mr. Reilly does not have personal knowledge of the details of the District for the entirety of the District's existence because he has

only acted as counsel for the District since "June or July of 2002," and does not live within the District's boundaries. Reilly Dep. at 12:12-13; 14:15-22. *See also* Reilly Dep. at 94:8-95:1 (acknowledging doing no factual investigation of the District's eligibility for bailout). Furthermore, under Texas State law, Travis County—not the District—has responsibility for registering voters, Tex. Elec. Code § 12.001, and thus the District would have no role in the registration process. This factual dispute is immaterial to the resolution of the Defendants' motions for summary judgment in this action. *See* note 1 *supra*.

¶ 11.    The district has never used a good-moral-character requirement as a prerequisite for voting or registration for voting. Affidavit of Frank Reilly, Ex. 1.

**RESPONSE:** Disputed to the extent that the District relies solely on the Affidavit of Frank Reilly. Mr. Reilly does not have personal knowledge of the details of the District for the entirety of the District's existence because he has only acted as counsel for the District since "June or July of 2002," and does not live within the District's boundaries. Reilly Dep. at 12:12-13; 14:15-22. *See also* Reilly Dep. at 94:8-95:1 (acknowledging doing no factual investigation of the District's eligibility for bailout). Furthermore, under Texas State law, Travis County—not the District—has responsibility for registering voters, Tex. Elec. Code § 12.001, and thus the District would have no role in the registration process. This factual dispute is immaterial to the resolution of the Defendants' motions for summary judgment in this action. *See* note 1 *supra*.

7

¶ 12.    The district has never used a voucher requirement as a prerequisite for voting or registration for voting.  Affidavit of Frank Reilly, Ex. 1.

RESPONSE: Disputed to the extent that the District relies solely on the Affidavit of Frank Reilly.  Mr. Reilly does not have personal knowledge of the details of the District for the entirety of the District's existence because he has only acted as counsel for the District since "June or July of 2002," and does not live within the District's boundaries.  Reilly Dep. at 12:12-13; 14:15-22.  *See also* Reilly Dep. at 94:8-95:1 (acknowledging doing no factual investigation of the District's eligibility for bailout).  Furthermore, under Texas State law, Travis County—not the District—has responsibility for registering voters, Tex. Elec. Code § 12.001, and thus the District would have no role in the registration process.  This factual dispute is immaterial to the resolution of the Defendants' motions for summary judgment in this action.  *See* note 1 *supra*.

¶ 13.    The district has never conducted English-only elections.  The district has always provided election materials in Spanish, as well as English.  Affidavit of Frank Reilly, Ex. 1; *see also, e.g.*, Feb. 26, 2004 Preclearance Submission, Ex. 9; Deposition of Sharlene Collins, Ex. 12 at 99:7-20, Ex. 13 at 157:11-158:7.

RESPONSE: Defendants dispute this statement to the extent that it does not consider that in 1990, 1994, and 2002, the District failed to translate into Spanish its "Order[s] Calling [for] Director Election" as would be required under Section 203 and 4(f)(4) of the Voting Rights Act.  28 C.F.R. § 55.18(b).  *See*

Northwest Austin Municipal Utility District Number One's "Order Calling Director Election" dated March 6, 1990 (Declaration Of Paul R.Q. Wolfson In Support Of Defendant-Intervenors Texas State Conference Of NAACP Branches, Austin Branch Of The NAACP, Rodney Louis, Nicole Louis, Winthrop Graham, Yvonne Graham, Wendy Richardson, Jamal Richardson, Marisa Richardson, Lisa Diaz, David Diaz And Gabriel Diaz, People For The American Way, Travis County, Nathaniel Lesane, Jovita Casarez, Angie Garcia, and Ofelia Zapata's Opposition To Plaintiff's Motion For Summary Judgment ("Second Wolfson Decl."), Ex. 3; Northwest Austin Municipal Utility District Number One's "Order Calling Director Election" dated March 15, 1994 (Second Wolfson Decl. Ex. 4); and Northwest Austin Municipal Utility District Number One's "Order Calling Director Election" dated March 12, 2002 (Second Wolfson Decl. Ex. 5). In addition, the District has not translated its Election Canvass, which informs the public of its election results, into Spanish in any election. *See* 008337-008338; 008775-008785; 009338-009345; 000579-00582; 001384-001386; 002340-002342; 003406-003410; 002703-002706; 004868-004878. This factual dispute is immaterial to the resolution of the Defendants' motions for summary judgment in this action. *See* note 1 *supra*.

¶ 14.    No final judgment of any court of the United States has determined that denials or abridgements of the rights to vote on account of race or color have occurred anywhere in the district's territory. Affidavit of Frank Reilly, Ex. 1.

**RESPONSE:** Not disputed.

¶ 15.   No final judgment of any court of the United States has determined denials or abridgements of the right to vote in contravention of the guarantees of 42 U.S.C. §1973(f)(2) have occurred anywhere in the District.  Affidavit of Frank Reilly, Ex. 1.

>    **RESPONSE:** Not disputed.  Defendants assume that the District is referencing Section 1973b(f)(2).

¶ 16.   The district has not entered into any consent decree, settlement agreement, or other agreement that resulted in any abandonment of a voting practice challenged on grounds that it denied or abridged the rights to vote on account of race or color or in contravention of the guarantees of 42 U.S.C. §1973(f)(2).  Affidavit of Frank Reilly, Ex. 1.

>    **RESPONSE:** Disputed to the extent that the District relies solely on the Affidavit of Frank Reilly.  Mr. Reilly does not have personal knowledge of the details of the District for the entirety of the District's existence because he has only acted as counsel for the District since "June or July of 2002," and does not live within the District's boundaries.  Reilly Dep. at 12:12-13; 14:15-22.  *See also* Reilly Dep. at 94:8-95:1 (acknowledging doing no factual investigation of the District's eligibility for bailout).  Defendants assume that the District is referencing Section 1973b(f)(2).  This factual dispute is immaterial to the resolution of the Defendants' motions for summary judgment in this action.  *See* note 1 *supra.*

¶ 17.    No action that was commenced before the filing of this case is pending against the district alleging any denials or abridgements of the right to vote.  Affidavit of Frank Reilly, Ex. 1.

**RESPONSE:** Not disputed.

¶ 18.    No declaratory judgment has been denied under VRA §5 with respect to any preclearance submission by the district.  No such declaratory-judgment actions are pending. Affidavit of Frank Reilly, Ex. 1.

**RESPONSE:** Not disputed.

¶ 19.    No objections have been interposed with respect to any preclearance submission by the district.  Affidavit of Frank Reilly, Ex. 1.

**RESPONSE:** Not disputed.

¶ 20.    No lawsuit has ever been filed against the district alleging that it denied or abridged the right to vote on account of race or color or in contravention of the guarantees of 42 U.S.C. §1973(f)(2).  Affidavit of Frank Reilly, Ex. 1.

**RESPONSE:** Not disputed.  Defendants assume that the District is referencing Section 1973b(f)(2).

¶ 21.    The United States Government has never assigned an examiner to the district, pursuant to the Voting Rights Act.  Affidavit of Frank Reilly, Ex. 1.

**RESPONSE:** Not disputed.

¶ 22.    No other governmental units are within the district's territory.  Affidavit of Frank Reilly, Ex. 1.

**RESPONSE:** Not disputed to the extent this means that there are no other governmental units wholly located within the district's territory.

¶ 23.    The district has never used any voting procedures or methods of election that inhibited or diluted equal access to the electoral process.  Affidavit of Frank Reilly, Ex. 1.

**RESPONSE:** Disputed to the extent that the District relies solely on the Affidavit of Frank Reilly.  Mr. Reilly does not have personal knowledge of the details of the District for the entirety of the District's existence because he has only acted as counsel for the District since "June or July of 2002," and does not live within the District's boundaries.  Reilly Dep. at 12:12-13; 14:15-22.  *See also* Reilly Dep. at 94:8-95:1 (acknowledging doing no factual investigation of the District's eligibility for bailout).  Furthermore, it appears that in two elections during the 1990's, the Plaintiff implemented numbered posts in its director elections, and did not seek preclearance for that change.  *See* May 2, 1992 Ballot (Statement Material Facts of Defendant Attorney General, Dkt. No.s 98: 3-4, Ex.s 13 & 15); Order Canvassing the Returns and Declaring the Results of Northwest Austin Municipal Utility District No. 1 May 7, 1994 Director Election (Second Wolfson Decl. Ex. 2); *see also, e.g., City of Rome v. United States*, 446 U.S. 156, 185 (1980).

¶ 24.    There is no indication or evidence that any intimidation or harassment of persons exercising rights protected under the VRA in the district's electoral process has ever occurred. Affidavit of Frank Reilly, Ex. 1.

> **RESPONSE:** Disputed to the extent that the District relies solely on the Affidavit of Frank Reilly.  Mr. Reilly does not have personal knowledge of the details of the District for the entirety of the District's existence because he has only acted as counsel for the District since "June or July of 2002," and does not live within the District's boundaries.  Reilly Dep. at 12:12-13; 14:15-22.  *See also* Reilly Dep. at 94:8-95:1 (acknowledging doing no factual investigation of the District's eligibility for bailout).  This factual dispute is immaterial to the resolution of the Defendants' motions for summary judgment in this action.  *See* note 1 *supra*.

¶ 25.    Every minority-group resident of the district who has intervened as a defendant in this case testified that they have no knowledge of any problems relating to the electoral process in the district, or any complaint other than a philosophical objection to this bailout action. Deposition of Jose Gabriel Diaz, Ex. 16 at 27:4-6; 27:22-28; 24:22-25:14; Deposition of Nathaniel Lesane, Ex. 24 at 13:24-14:22; 18:21-19[:]4; Deposition of David Diaz, Ex. 15 at 12:12-15; 14:2-18; 15:1-8; Deposition of Lisa Diaz, Ex. 17 at 16:17-17:6; Deposition of Rodney Louis, Ex. 26 at 25:16-27:7; Deposition of Nicole Louis, Ex. 25 at 16:1-17; Deposition of Winthrop Graham, Ex. 21 at 9:1-11; Deposition of Yvonne Graham, Ex. 22 at 17:18-18:2; Deposition of Jamal Richardson, Ex. 30 at 11:14-12:8; Deposition of Wendy Richardson, Ex. 31 at 12:4-13; 18:13-22; Deposition of Marisa Williams, Ex. 33 at 8:22-9:19.

**RESPONSE:** Disputed to the extent that the statement incorporates the statements of at least one Defendant-Intervenor who testified that he did not know enough about voting regulations to assess the District's electoral process. Jose Gabriel Diaz Dep. at 27:22-25. Furthermore, numerous Defendant-Intervenors who are residents of the District testified to a concern of the danger posed by permitting the District to implement changes to voting regulations without Section 5 oversight. Yvonne Graham Dep. at 15:6-9, 17:15-17; Wendy Richardson Dep. at 18:23-19:16; Jamal Richardson Dep. at 12:12; David Diaz Dep. at 22:6-10; Lisa Diaz Dep. at 18:6-19.

Residents cited specific incidents which gave rise to their concern regarding the District's Board and loss of Section 5 oversight. For example, Wendy Richardson described a Board meeting which she attended on Thursday, April 19, 2007 at 7:00 p.m. *See* Wendy Richardson Dep. at 11:18-20. One Board member asked why "rich white guys" are always blamed for discrimination, *id.* at 26:13, then another suggested that the Board write a $1000 check to make the issue go away, *id.* at 26:15-17, 27:19-22. Finally, a third Board member commented that racial discrimination was "not a middle-class, rich person's issue," *id.* at 27:25, but rather an issue for poor cities, *id.* at 28:1-4. Throughout the meeting, Board members refused to discuss the litigation regarding Section 5, saying that the matter would be addressed at the end of the year. *Id.* at 11:5-12:3, 28:19-29:14.

Multiple residents were effectively precluded from the election process in the District during the years that the polls were held in private residences.

14

Rodney Louis only knew about where to find the District elections in 2002 because he was informed of this fact by candidate Zimmerman. Rodney Louis Dep. at 35:20-36:3. Mr. Louis does not know whether he was given proper information regarding elections. "I don't know what should have been exposed to me that wasn't because … the only reason why I was able to vote in that garage that day was because Mr. Zimmerman was running for District president and he instructed me on where to go and vote. So had he not been there I would not have been able to vote because I didn't know that that's where the voting had taken place." *Id.* at 35:20-36:6. Though he was an active reader of the newsletters, he was not aware of the location for the 2000 election. *Id.* at 36:15-37:4. Additionally, while Wendy Richardson did not live in the District during that time, she stated that she would feel very uncomfortable voting in a private residence. Wendy Richardson Dep. at 18:23-19:16.

Minority resident voters gave other reasons for supporting Section 5 oversight. Yvonne Graham feels that racial prejudice is strong in the District, Yvonne Graham Dep. at 15:6-9. *Id.* at 14:18-21. She also believes that since the District is small, it needs extra oversight in order to protect minorities. *Id.* at 5:13-6:2. Jose Gabriel Diaz, a U.S. citizen who immigrated from Mexico, credits regulations like Section 5 for helping the United States to operate effectively. Jose Gabriel Diaz Dep. at 17:18-21; 5: 6-13; 11:19-21. He does not believe that the people who "are supposed to take care of our parks" ought to be challenging Section 5. *Id.* at 15:9. This factual dispute is immaterial to the resolution of the Defendants' motions for summary judgment in this action. *See note 1 supra.*

¶ 26.    None of the non-resident intervenors have identified any problems relating to the electoral process in the district.  Deposition of Gary Bledsoe, Ex. 10 at 18:15-19:7; 21:15-22; Deposition of Angela Garcia, Ex. 20 at 8:6-11; Deposition of Ofelia Zapata, Ex. 34 at 6:22-7:1; Deposition of Tanya House, Ex. 23 at 20:11-20; Deposition of Jovita Casares, Ex. 11 at 7:10-13.

**RESPONSE:** Disputed to the extent that it does not consider the testimony of Gary Bledsoe, the designee pursuant to Federal Rule of Civil Procedure 30(b)(6) of Defendant-Intervenors Austin Branch of the NAACP and Texas State Conference of NAACP Branches.  Mr. Bledsoe testified to the existence of racially polarized voting in the District, the City of Austin, and throughout the State of Texas.  Bledsoe Dep. at 11:12-17, 12:3-14, 13:5-24:4-25:5; 26:5-28:6, 37:1-3, 42:3-6.  This factual dispute is immaterial to the resolution of the Defendants' motions for summary judgment in this action.  *See* note 1 *supra.*

¶ 27.    In March 1998, the district submitted a preclearance request for approval of two changes potentially affecting voting and the subsequent elections to be held under those changes. The changes submitted for preclearance were (1) moving the district's polling place one- half mile from one private residence within the district to another because the previous location became unavailable and (2) the district's annexation of an uninhabited acre of land used for commercial purposes.  Mar. 26, 1998 Preclearance Submission, Ex. 6.  Those changes were

precleared in a May 19, 1998 letter from the Department of Justice.  May 19, 1998 Resp. Letter, Ex. 6.

      **RESPONSE:** Not disputed.


    ¶ 28.   In March 2002, the district submitted a preclearance request for approval to move its polling place from the private-residence location that was precleared in 1998 to another private residence within the district, one-quarter mile away from the prior polling place.  Mar. 27, 2002 Preclearance Submission, Ex. 7.  The new polling place was precleared in a May 24, 2002 response from the Department.  *Id.*

      **RESPONSE:** Not disputed.


    ¶ 29.   In February 2004, the district sought preclearance to move its polling place from the private residence that was precleared in 2002 to the neighborhood public elementary school.  Feb. 26, 2004 Preclearance Submission, Ex. 9.  That submission also requested preclearance for additional changes connected with the district's decision to hold its elections jointly with Travis County, including different and more numerous locations for early voting and the use of electronic ballots in place of paper ballots.  *Id.*  Those changes were precleared in an April 8, 2004 letter from the Department.  2004 Resp. Letter, Ex. 9.

      **RESPONSE:** Not disputed.


    ¶ 30.   In 2004, the district relocated its polling place from a residential garage to a nearby public school and entered into a concomitant contract to have Travis County run the

district's elections in conjunction with the county's elections.  Feb. 26, 2004 Preclearance

Submission, Ex. 9.

       **RESPONSE:** Not disputed.


       ¶ 31.    The relocation of the polling place from a residential garage to the public school

took effect, after preclearance, for the 2004 elections.  *See* Feb. 26, 2004 Preclearance

Submission and Response, Ex. 9.

       **RESPONSE:** Not disputed.


       ¶ 32.    The district's participation in the joint election ballot gives district residents the

option of casting their ballots at any of numerous early-voting sites maintained at locations

throughout Travis County during the weeks preceding Election Day and expanded access to

Spanish-language assistance.  Feb. 26, 2004 Preclearance Letter, Ex. 9 at 4, Ex. B to letter;

Deposition of Dana DeBeauvior, Ex. 14 at 58:15-18, 67:6-17; 74:14-19.

       **RESPONSE:** Not disputed.


       Additionally, Defendant Attorney General hereby reincorporates all facts included in its

Statement of Uncontested Material Facts, dated May 15, 2007 [Dkt. No. 98-3], as if set forth

fully here.  Defendant-Intervenors hereby reincorporate all facts included in their Joint Statement

Of Material Facts As To Which There Is No Genuine Issue, dated May 15, 2007 [Dkt. Nos. 100-

14 – 100-23], as if set forth fully here.


Respectfully submitted,

Wan J. Kim                          Jeffery A. Taylor
Assistant Attorney General          United States Attorney
Civil Rights Division

John K. Tanner (D.C. Bar #318873)
Chief, Voting Section

/s/ T. Christian Herren Jr.
H. Christopher Coates
Principal Deputy Chief
T. Christian Herren Jr.
Richard Dellheim
Sarah E. Harrington
Christy A. McCormick
Attorneys

Civil Rights Division
UNITED STATES DEPARTMENT OF JUSTICE
Room 7254 - NWB
950 Pennsylvania Ave., N.W.
Washington, DC 20530
Phone: (800) 253-3931
Fax:    (202) 307-3961

Counsel for Defendant Attorney General

*/s/ Seth P. Waxman*
Seth P. Waxman (D.C. Bar No. 257337)
John A. Payton (D.C. Bar No. 282699)
Paul R.Q. Wolfson (D.C. Bar No. 414759)
Ariel B. Waldman (D.C. Bar No. 474429)
Daniel A. Zibel (D.C. Bar No. 491377)
WILMER CUTLER PICKERING HALE and
        DORR LLP
1875 Pennsylvania Ave. N.W.
Washington, D.C. 20006
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Jon M. Greenbaum (D.C. Bar No. 489887)
Jonah H Goldman (D.C. Bar No. 497507)
LAWYERS' COMMITTEE FOR CIVIL
        RIGHTS UNDER LAW
1401 New York Avenue, NW, Suite 400
Washington, D.C. 20005
Telephone: 202-662-8600
Facsimile: 202-628-2858

Dennis C. Hayes (admitted *pro hac vice*)
General Counsel
NATIONAL ASSOCIATION FOR THE ADVANCEMENT
        OF COLORED PEOPLE, INC.
NAACP National Office
4805 Mt. Hope Drive
Baltimore, MD 21215
Telephone: (410) 580-5777
Facsimile: (410) 358-9350

*Counsel for Defendant-Intervenors*
*Texas State Conference of NAACP Branches and Austin Branch of the NAACP*

/s/ Debo P. Adegbile
Debo P. Adegbile

/s/ Norman J. Chachkin
Norman J. Chachkin (D.C. Bar No. 235283)
Theodore Shaw
President and Director-Counsel
Jacqueline A. Berrien
Ryan P. Haygood
Jenigh J. Garrett
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
99 Hudson Street, Suite 1600
New York, New York 10013
(212) 965-2200

Kristen M. Clarke (D.C. Bar No. 973885)
NAACP LEGAL DEFENSE AND
EDUCATIONAL FUND, INC.
1444 Eye Street, N.W., 10th Floor
Washington, D.C. 20005
(202) 682-1300

Samuel Spital
HOLLAND & KNIGHT
195 Broadway, 24th Floor
New York, NY 10007
(212) 513-3454

*Counsel for Defendant-Intervenors*
*Rodney and Nicole Louis; Winthrop and Yvonne Graham;*
*Wendy Richardson, Jamal Richardson, and Marisa Richardson*

*/s/ Nina Perales*

Nina Perales

MEXICAN AMERICAN LEGAL DEFENSE &

AND EDUCATIONAL FUND

Texas State Bar No. 240054046

110 Broadway, Suite 300

San Antonio, Texas 78205

(210) 224-5476 (telephone)

(210) 224-5382 (facsimile)

nperales@maldef.org

*/s/ Joseph E. Sandler*

Joseph E. Sandler

D.C Bar # 255919

Sandler Reiff & Young PC

50 E St SE # 300

Washington, D.C. 20003

Tel: (202) 479 1111

Fax (202) 479-1115

sandler@sandlerreiff.com

*Counsel for Defendant-Intervenors Lisa Diaz, David Diaz and Gabriel Diaz*

_/s/ David J. Becker_
David J. Becker (D.C. Bar No. 496318)
PEOPLE FOR THE AMERICAN WAY FOUNDATION
2000 M Street NW, Suite 400
Washington, DC 20036
Telephone: (202) 467-4999

_Counsel for Defendant-Intervenor People for the American Way_

*/s/ J. Gerald Hebert*
J. Gerald Hebert
5019 Waple Lane
Alexandria, VA 22304
Telephone: (703) 628-4673
Facsimile: (202) 736-2222

Max Renea Hicks
101 West 6th Street
Suite 504
Austin, TX 78801
Telephone: (512) 480-8231
Facsimile: (512) 480-9105

*Counsel for Defendant-Intervenor Travis County, Texas*

*/s/ Laughlin McDonald*
Moffatt Laughlin McDonald
Neil Bradley
AMERICAN CIVIL LIBERTIES UNION
        FOUNDATION, INC.
2600 Marquis One Tower
245 Peachtree Center Avenue
Atlanta, GA 30303-1227
Telephone: (404) 523-2721

Arthur B. Spitzer
AMERICAN CIVIL LIBERTIES UNION
1400 20th Street, NW, Suite 119
Washington, DC 20036
Telephone: (202) 457-0800
Facsimile: (202) 452-1868

Michael J. Kator
KATOR, PARKS & WEISER, PLLC
1020 19th Street, NW, #350
Washington, DC 20036-6101
Telephone: (202) 898-4800
Facsimile: (202) 289-1389

Jeremy Wright
KATOR, PARKS & WEISER, PLLC
812 San Antonio Street, Suite 100
Austin, Texas 78701

Lisa Graybill
Legal Director
ACLU FOUNDATION OF TEXAS
1210 Rosewood Avenue
Austin, Texas 78702

*Counsel for Defendant-Intervenor Nathaniel Lesane*

*/s/ Jose Garza* _____
Jose Garza
Judith A. Sanders-Castro
George Korbel
TEXAS RIOGRANDE LEGAL AID, INC.
1111 N. Main Street
San Antonio, Texas 78212
210-212-3700
210-212-3772 (fax)

*/s/ Michael T. Kirkpatrick* _____
Michael T. Kirkpatrick (DC Bar No. 486293)
Brian Wolfman (DC Bar No. 427491)
PUBLIC CITIZEN LITIGATION GROUP
1600 20th Street NW
Washington, DC 20009
202-588-7728
202-588-7795 (fax)
mkirkpatrick@citizen.org

*Counsel for Defendant-Intervenors Angie Garcia, Jovita Casarez, Ofelia Zapata*

## CERTIFICATE OF SERVICE

I hereby certify that on June 15, 2007, I caused to be served a copy of the foregoing DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS to all counsel of record via the Court's CM/ECF filing system.

/s/ Ariel B. Waldman
Ariel B. Waldman