# Exhibit 5

**POTTS & REILLY, L.L.P.**
ATTORNEYS AND COUNSELORS
401 WEST 15TH STREET, SUITE 850
AUSTIN, TEXAS 78701-1665

Marc A. Levin
E-MAIL: levin@pottsreilly.com
WEB: www.pottsreilly.com

TELEPHONE: (512) 469-7474
PORTABLE: (713) 906-1833
FAX: (512) 469-7480

March 24, 2005

Chief, Voting Section
Civil Rights Division
Room 7254 - NWB
Department of Justice
950 Pennsylvania Ave., N.W.
Washington, DC 20530

To Whom It May Concern:

  I am writing on behalf of my clients, which include the organization Save Our Taxpayers, to request that your office open an investigation into possible violations of the Voting Rights Act associated with an Austin Community College (ACC) election ordered for May 7, 2005[1]. We have spoken with your office and we understand that ACC has failed to file for preclearance to hold this election and is required to do so under federal law. We would request that, if your office finds that it is warranted, an enforcement action be filed to enjoin or invalidate this election.

  Information furnished by ACC concerning this election is available at http://www.austincc.edu/future. ACC has termed the election the "All-of-Austin Annexation Election." The sole ballot measure is whether the portions of Round Rock Independent School District (RRISD), Pflugerville Independent School District (PISD), and Eanes ISD (EISD) within the City of Austin shall be annexed into the Austin Community College district. The proposed annexation would increase the number of registered voters in ACC's district by approximately 12 percent through annexation of 25 percent of RRISD, 31 percent of PISD, and 38 percent of EISD.

  In this election, both the existing district, which encompasses Austin Independent School District (AISD), Leander Independent School District (LISD), Del Valle Independent School District (DISD) and Manor Independent School District (MISD), and the proposed areas to be annexed will vote. If the majority of all voters cast their ballots for the annexation, it will be approved, even if a majority of those in the proposed areas to be annexed vote against the annexation. Upon approval, individuals in the

---

[1] Early voting is scheduled tol begin April 20.

proposed annexation area will pay property taxes to support ACC and be eligible to vote in future ACC Board of Trustees and bond elections.

We believe that the conduct of this election requires preclearance and, furthermore, that it may violate the Voting Rights Act and U.S. Constitution for several reasons. We would initially note that it is well-established that annexations which enlarge the number of voters in a city are changes in a "standard, practice, or procedure with respect to voting," which are covered by the Voting Rights Act. *Perkins v. Matthews*, 400 U.S. 379 (1971); *Georgia v. United States*, 411 U.S. 526 (1973).[2]

First, this election raises serious issues of dilution and retrogression in minority voting strength, implicating Sections 2 and 5 of the Voting Rights Act of 1965. This is because we estimate the areas proposed to be annexed are approximately 80 percent Anglo, 10 percent Hispanic, 5 percent Asian/Other, and less than 5 percent Black. In contrast, we estimate the existing ACC district to be 50 percent Anglo, 35 percent Hispanic, 10 percent Black, and 5 percent Asian/Other. Consequently, in both the proposed May 7 election and in future elections, if this ballot measure passes, minority voting strength will be significantly diluted. As a result, Blacks and Hispanics will find it much more difficult to get elected to the ACC Board of Trustees and to elect a candidate of their choice for any of the nine Trustees positions. Beyond the effect of adding 12 percent more registered voters, who are overwhelmingly Anglo, registered voters in the proposed annexation areas tend to vote in very high numbers in municipal and school board elections, which will further exacerbate minority vote dilution when it comes to the actual votes cast in this election and future elections.

This dilution and retrogression problem that this annexation will create in future elections is compounded by the fact that the Austin Community College Board of Trustees are all elected at-large. In the May 7 election and in future ACC elections, should this ballot measure pass, there will be over 700,000 people in the electorate. The City of Austin is currently the most populous city in the United States with a City Council entirely elected at-large, and the ACC voting district in the May 7 election, and in future elections should this measure pass, will have an even larger population than the City of Austin, because it also includes other cities, such as Leander and Manor.

In *City of Petersburg v. United States*, 354 F. Supp. 1021 (1972), the United States District Court for the District of Columbia held invalid an annexation by a Virginia city, where at-large council elections were the rule both before and after the annexation, due to adverse consequences on black voting strength. This decision was affirmed by the U.S. Supreme Court. *See* 410 U.S. 962 (1973).

We would also request that your office investigate procedural defects and irregularities associated

---

[2] The U.S. Supreme Court has further that the language of Section 5 of the Voting Rights Act was designed "to give the Act the broadest possible scope," and to require "that all changes, no matter how small, be subjected to § 5 scrutiny." *Allen v. State Board of Elections*, 393 U.S. 544, 567-568 (1969).

with the calling of this election. The order approved by the ACC Board of Trustees calling this election is available at http://www.austincc.edu/board/agendas/2005/8031.pdf. First, under state law, this election order should have been issued by March 7 at 5:00 pm. However, the ACC Board of Trustees did not convene on this day until 6:00 pm[3] so the order could not have been issued by this deadline. *See* TEX. EDUC. CODE § 11.055. Secondly, Texas law requires that the dates and hours for early voting and the dates and hours of any Saturday and Sunday early voting be set forth in the election order.[4] The election order at issue fails to designate the dates and hours for early voting and the dates and hours of any Saturday and Sunday early voting.

Finally, my clients believe that the structure of this election may contravene the Voting Rights Act and the constitutional principles of equal protection and "one man, one vote." We believe that, if a ballot measure expanding the ACC district to include these three school districts would even be permissible under the Voting Rights Act, separate elections should be held among both the voters already in ACC's taxing district and those in the proposed areas to be annexed, with the approval of both groups required for the annexation to be effective. By holding the one all-inclusive election that ACC has ordered, the 12 percent of the registered voters whose taxes will be increased as the result of this measure will have their vote diluted by 88 percent, and the 88 percent of the voters in ACC's existing district will have their vote diluted by 12 percent in this election and, if the measure passes, in future ACC Board of Trustees elections. My clients believe that the structure of this election is an intentional attempt to dilute the votes of the 12 percent of registered voters whose taxes will be increased as a result of this measure, thus enabling the measure to pass even without a majority of these voters voting in favor of it.

Thank you for your consideration of this matter and we would be pleased to provide any additional information that may be of assistance in your investigation.


Sincerely,


Marc Levin


Enclosures:

1) Order Calling Special Election
2) ACC District Map Showing Area Proposed to be Annexed
3) ACC News Advisories

---

[3] *See* http://www.austincc.edu/board/agendas/2005/05Calendar.htm

[4] *See* http://www.sos.state.tx.us/elections/laws/advisory2005-01.shtml

## FedEx US Airbill

**FedEx Tracking Number:** 8510 7848 1667

**From:** Date: 3/24/05
Sender's Name: Marc Levin
Phone: (512) 469-7474
Company: Potts and Reilly
Address: 401 W. 15th St, Suite 850
City: Austin  State: TX  ZIP: 78701

**To:**
Recipient's Name: Chief Voting Section
Phone: (800) 253-3931
Company: Civil Rights Division Dept. of Justice
Recipient's Address: Room 7254-NWB
Address: 950 Pennsylvania Ave., N.W.
City: Washington  State: D.C.  ZIP: 20530

**4a Express Package Service:** [X] FedEx Standard Overnight

**5 Packaging:** [X] FedEx Envelope

**6 Special Handling:** No dangerous goods

**7 Payment:** [X] Credit Card — 9d 0228

---

FedEx receipt:
- STANDARD OVERNIGHT
- 8510 7848 1667
- 0.25 lb (S)
- Shipment subtotal: $17.90
- Total Due: $17.90
- (M) Credit Card: ************685825
- $17.90

Location: AUSKK
Device ID: AUSKK-POS1
Employee: 546775
Transaction: 910039067925

327 Congress Ave
AUSTIN, TX 78701

March 24, 2005 7:37:11 PM

Visit us at: www.fedex.com
Or call 1-800-Go-FedEx
(800) 463-3339

# Exhibit 6

1675

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE LOUISIANA HOUSE OF       :
REPRESENTATIVES, et al.,     :
                             :
        Plaintiffs,          :
                             :
    v.                       :  Civil Action No. 02-0062 (JR)
                             :
JOHN ASHCROFT, Attorney General, :
                             :
        Defendant.           :

**MEMORANDUM ORDER**

The joint motion for summary judgment of defendant Ashcroft and defendant-intervenors Louisiana Community Coalition on Fair and Equal Representation and Louisiana Legislative Black Caucus will have to be denied, despite the fact that plaintiffs have subverted what had been an orderly process of narrowing the issues in this case by making a radical mid-course revision in their theory of the case and by blatantly violating important procedural rules.[1]  In a suit between private parties, we would

---

[1] First, much of plaintiffs' effort to create a genuine issue of material fact for trial is based upon a "Rebuttal Declaration" of their expert, filed contemporaneously with plaintiffs' memoranda in opposition to summary judgment and more than two months after the deadline for such filings set by Fed. R. Civ. P. 26(a)(2)(C). This late filing subjected the Attorney General and the intervenors to unfair surprise, and left them without an opportunity to cross-examine the expert. Second, plaintiffs violated LCvR 7.1(h) by failing to file a statement of material facts as to which they contend there are genuine issues necessary to be tried, and by failing to provide citations to the parts of the record upon which they rely. This marks plaintiffs' second violation of LCvR 7.1(h) within the past four months. Third, plaintiffs' memoranda in opposition to summary judgment

1676

not hesitate on a record like this one to grant the defendants' motion, either as conceded or as a sanction for plaintiffs' violation of the rules. See, e.g., SEC v. Banner Fund Int'l, 211 F.3d 602, 616 (D.C. Cir. 2000); Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 153 (D.C. Cir. 1996). We are not inclined to do so, however, in a suit between representatives of a state legislature and of the federal government. Instead, we will afford plaintiffs the opportunity to sustain their burden of proof -- under their new theory of the case -- in a trial that will commence as soon as it can be scheduled. We understand that the next legislative session of the Louisiana House of Representatives is scheduled to begin March 31, 2003; the trial of plaintiffs' new legal theory will be conducted as soon as possible, consistent with the schedules of the parties and the judges of this Court. We must point out, however, that any delay in reaching a resolution of the dispute presented by this case is the direct result of plaintiffs' own

---

represent to the Court two documents as being the "depositions" of Patricia Lowrey-Dufour and Rep. Charles Bruneau. In fact, those documents appear to be transcripts of examinations taken by plaintiffs without notice to and an opportunity for cross-examination by the defendants, in violation of Fed. R. Civ. P. 30(b)(1), (c). Finally, Plaintiffs' Memorandum in Opposition to Defendant Ashcroft's Motion for Summary Judgment was filed, along with a motion to extend page limits, after the filing deadline set by this Court. The memorandum exceeded the page limits of LCvR 7.1(e) by more than 50%.

- 2 -

1677

litigation tactics.[2] Further violations of the Local and Federal Rules will not be tolerated.

"[I]n order to obtain preclearance under § 5, a covered jurisdiction . . . must make two distinct showings: first, that the proposed change 'does not have the purpose . . . of denying or abridging the right to vote on account of race or color,' and second, that the proposed change 'will not have the effect of denying or abridging the right to vote on account of race or color.' The covered jurisdiction bears the burden of persuasion on both points." Reno v. Bossier Parish Sch. Bd., 528 U.S. 320, 328 (2000)(internal citations omitted). We will initially set only the second required showing for trial. The first required showing, that the Louisiana House of Representatives had no retrogressive intent in enacting Act 3, need not be reached and will not be tried unless and until plaintiffs sustain their burden of proving that Act 3 does not have a retrogressive effect.

---

[2] See supra note 1. Another belated argument raised by plaintiffs is the objection to the participation of the Louisiana Community Coalition on Fair and Equal Representation and the Louisiana Legislative Black Caucus as intervenors, on the ground that their intervention subjects plaintiffs "to additional burdens and delays not contemplated by section 5." Pls.' Mem. Opp. Def. Intervenors' Mot. Summ. J. at 28. That objection was waived by plaintiffs' failure to make it when the motions to intervene were under consideration by this Court in April and May of last year. In any event, plaintiffs' objection is without merit. See Georgia v. Ashcroft, 195 F. Supp. 2d 25, 33, 72-73 (D.D.C. 2002); Bossier Parish School Bd. v. Reno, 157 F.R.D. 133, 135 (D.D.C. 1994).

1678

Plaintiffs do not begin with a clean slate on the retrogressive effect element, having made a number of admissions that we will necessarily evaluate along with the proof offered at trial, but we will consider the testimony of their expert, Kimball William Brace, and such other evidence on the point as may properly be offered and received.[3] It is accordingly,

ORDERED that defendants' motion for summary judgment is denied. And it is

FURTHER ORDERED that the Clerk set a pretrial conference as soon as practicable. A trial date will be set at the pretrial conference. The pretrial statements required by LCvR 16.5(a)(2) shall be filed no later than three days prior to the pretrial conference. The parties are directed to set forth succinctly in their pretrial statements the claims they wish to make and the arguments they will advance in support of those claims. Arguments may not be incorporated by reference to previous filings, and previous arguments not restated in the pretrial statements will be deemed waived.

                            JAMES ROBERTSON
                          United States District Judge
                          For the three-judge Court

---

[3] Plaintiffs must make their expert available in advance of trial for deposition on the previously unexamined portion of his expected testimony. The Court will consider an appropriate motion for costs associated with such a deposition.

- 4 -