**MWAMUD NO. 1 Section 5 Submissions Documents**

| Tab | Description |
|-----|-------------|
| A | 11/25/86 Section 5 Submission No 1986-1537 |
| B | 03/21/88 Section 5 Submission No 1988-1404 |
| C | 03/06/90 Section 5 Submission No 1990-1423 |
| D | 04/04/96 Section 5 Submission No 1996-1732 |
| E | 05/30/96 Phone Communication Memo between Collins and DOJ |
| F | 06/03/96 letter from DOJ to Collins re 04/05/96 Section 5 Submission |
| G | 06/06/96 Section 5 Submission No 1996-2595 |
| H | 06/27/96 Phone Communication Memo between Collins and DOJ |
| I | 08/01/96 letter from DOJ to Collins re 06/10/96 Section 5 Submission |
| J | 03/26/98 Section 5 submission no 1998-1264 |
| K | 05/19/98 Letter from DOJ to Armbrust re Annexation adopted 04/14/97 |
| L | 03/21/02 Section 5 Submission No 2002-1980 |
| M | 05/24/02 Letter from DOJ to Armbrust re Polling Place Change |
| N | 02/26/04 Section 5 Submission No 2004-0946 |
| O | 03/18/04 Phone Communication Memo between Qualtrough and DOJ |
| P | 04/08/04 Letter from DOJ to Qualtrough re Polling Place Change |

# Exhibit A

NORTHWEST AUSTIN
MUNICIPAL UTILITY DISTRICT NO. 1

November 25, 1986

Assistant Attorney General
Civil Rights Division
Department of Justice
Washington, D.C.  20530

SUBMISSION UNDER SECTION 5, VOTING RIGHTS ACT

Re:  Northwest Austin Municipal Utility District No. 1

Ladies and Gentlemen:

The Undersigned is the President of the Board of Directors
and Chief Executive Officer of Northwest Austin Municipal Utility
District No. 1 (the "District"). This submission pursuant to
Section 5, Voting Rights Act of 1965, as amended, is made under
the provisions of 28 CFR 51:  Procedures for the administration
of Section 5 of the Voting Rights Act of 1965.

Background and History of the District:

The District is a municipal utility district which was
created pursuant to Article 16, Section 59 of the Constitution on
the State of Texas on April 18, 1986, by the Texas Water
Commission, an agency of the State of Texas exercising the
judicial functions of the Texas Water Commission, pursuant to the
provisions of Chapter 54 of the Texas Water Code.

The District is governed by a board of five (5) directors
elected for two (2) or four (4) year staggered terms on a
District-wide basis by the qualified voters within the District.
The initial board of directors was appointed by the Texas Water
Commission when the District was created.

The District proposes to hold a Confirmation and Director
Election, Bond Election and Maintenance Tax Election on December
7th, 1986. Chapter 54 of the Texas Water Code requires that a
confirmation and director election be held before a municipal
utility district issues any bonds or other obligations. Until
the proposed election is held, the District is not a functioning
legal entity.

MNW-FH.25-1 (11/4/86) 4

There are two (2) people of voting age residing within the District.

There is one black family residing in the District and 0 families with Spanish surnames.

## Changes Affecting Voting.

A.  Creation. As noted above, the District was created on April 18, 1986. A map of the District, which I certify to be true and correct, is attached hereto as Exhibit "A".

1.  Information called for in Paragraph (a) of 28 CFR 51.10:

(a)  The legislative or administrative enactment or order embodying the change affecting voting (i.e., the creation of the District) is the Order of the Texas Water Commission dated April 18, 1986, a copy of which is attached hereto as Exhibit "B". I certify that such attachment is a true and correct copy of such order.

(b)  The Order was adopted on April 18, 1986.

(c)  The authority responsible for the Order is the Texas Water Commission. The mode of decision was by vote of the Commission in formal open meeting.

(d)  The difference between the submitted change affecting voting and the law or practice existing prior to the change (i.e., the creation of the District) is that the District was created where no utility district existed previously. The change will affect the entire District, the boundaries of which are shown on Exhibit "A". I hereby certify that the change affecting voting has not yet been enforced or administered.

(e)  I hereby certify that the Confirmation and Director Election, Bond Election, and Maintenance Tax Election to be held on December 13, 1986, will be the first enforcement of the change affecting voting.

2.  Information called for in Paragraph (b) of 28 CFR 51.10:

(a)  The District was created in order to supply municipal utility services to the land shown on Exhibit "A".

(b)  The effect of the change affecting voting is that there now exists a voting unit, with taxing authority, where none previously existed.

(c)   There is no past or pending litigation concerning the change.

(d)   No other changes in law or administration relating to the April 18, 1986, creation of the District have been put into effect since the time when coverage under Section 4 of the Voting Rights Act began.

(e)   A map of the area affected, which shows the boundaries of the District, is attached hereto as Exhibit "A". There have been no other changes in the voting unit boundaries or in the geographical makeup of the constituency of the District since the time coverage under Section 4 of the Voting Rights Act began. All available information regarding population distribution by race is contained in the introductory statement. There are no natural boundaries or geographical features which influenced the creation of the District. The location of the proposed polling place is indicated on Exhibit "A".

(f)   Population information:

     (i) information concerning the population of the District, voting-age population and the number of registered voters, by race, before creation is not available. Present population information is set forth in the introductory statement;

     (ii) No population estimates, by race, were made in connection with the creation of the District;

     (iii) no particular office or offices are involved in the change; the creation of the District will affect all elections held in the District.

(g)   Evidence of public notice or opportunity for the public to be heard concerning the creation of the District is contained in Exhibit "B".

(h)   None of the information furnished herein reflects any estimation other than my own.

(i)   The information contained herein, to the extent it is not of my own personal knowledge, is contained in the books and records of the District.

    B.   **Polling Place.** The District will use only one polling place in its elections. The Confirmation and Director Election, Bond Election and Maintenance Tax Election to be held on December 13th, 1986, will be the first elections held since the District's creation, and the polling place for said

elections will be 11403 Boulder Lane, Austin, Texas, 78726 which location is within the boundaries of the District.

1. Information called for in Paragraph (a) of 28 CFR 51.10:

   (a) The order embodying the change in voting (i.e., the establishment of a polling place) is the Order Calling Confirmation and Director Election, Bond Election, and Maintenance Tax Election for December 13, 1986, a certified copy of which order is attached hereto as Exhibit "C". I certify that the attachment is a true and correct copy of such Order.

   (b) The Order was adopted on October 7, 1986.

   (c) The order has been adopted by the Board of Directors of the District. The mode of decision was by vote of the Directors in formal open meeting.

   (d) The differences between the submitted change (i.e., the establishment of a polling place) and the prior situation is that there was no polling place within the District prior to the designation of the polling place to be used at the December, 1986, elections.

   (e) I hereby certify that the Confirmation and Director Election, Bond and Maintenance Tax Election to be held on December 13, 1986, will be the first enforcement of the submitted change affecting voting.

2. Information called for in Paragraph (b) of 28 CFR 51.10:

   (a) No polling place within the District existed prior to the designation of the polling place submitted herein for approval. There is no public building within the District which could serve as a polling place. The polling place for which such approval is sought is the (home of the election judge) for the confirmation and director election, bond election and maintenance tax election.

   (b) There is no anticipated effect of the change.

   (c) There is no past or pending litigation concerning the change.

   (d) There have been no other changes in law or administration relating to the location of the district's polling place since the time when

MNW-FH.25-4 (11/4/86) 4

coverage under Section 4 of the Voting Rights Act began, because no polling place previously existed within the District.

(e) The change did not revise the constituency which elects any office or affect the boundaries of any geographic unit or units employed or defined for voting purposes. The location of the polling place is indicated on Exhibit "A".

(f) Population information:

(i) There has been no change in the population of the District, the voting age population, or the number of registered voters by race, caused by the establishment of the polling place for District elections.

(ii) See A(2)(f)(ii) and (iii), above.

(g) The establishment and location of the polling place for the District elections will be decided upon by the Board of Directors of the District at an open meeting held pursuant to the Texas Open Meetings law, at which meeting the public was given the opportunity to be heard. No public comment concerning the above-described change was received at the meeting.

(h) To the best of my knowledge, there is no information relevant to the establishment and location of the polling place for the district elections which is not available.

(i) None of the information furnished reflects any estimation other than my own.

(j) The information contained herein, to the extent it is not of my own personal knowledge, comes from the books and records of the District.

C. Bilingual Election Procedures. The minority language group which brought Texas under the Voting Rights Act of 1965, as amended, is Spanish-speaking. The Board of Directors of the District has adopted an Order Adopting and Implementing Bilingual Election Requirements in formal open meeting on October 7th, 1986. At the meeting, which was held in accordance with the Texas Open Meetings law, the public comment was received. A certified copy of the Order Adopting and Implementing Bilingual Election Requirements is attached hereto as Exhibit "D". I certify that the attachment is a true and correct copy of such Order. The bilingual election procedures which the District follows are:

1. Those set forth in Chapter 213, Acts of the 64th Legislature, 1975 (S.B. 165), previously submitted by the State of Texas, which submission is incorporated herein by reference;

2. Those set forth in the Voting Rights Act of 1965, as amended, 42 U.S.C. 1973 et. seq. (1975).

3. Those set forth in 28 CFR 55 - Implementation of the Provisions of the Voting Rights Act Regarding Language Minority Groups, Subpart D-Minority Language Material and Assistance, §§55.14-55.21, as published in the Federal Register on April 21, 1976. The following information is keyed to §§55.19 and 55.20:

1. Written Materials

   (a) Types of Materials:

   (i) Notice of Board Meetings Dealing with Elections - Notices of Board meetings concerning elections are posted at the places required by State law in Spanish and in English.

   (ii) Notices of Elections - all notices of elections required to be published by state law are published in Spanish and in English in a newspaper of general circulation in the county in which the District is located.

   (iii) Ballots and Other Election Materials Which will be used by the Voter - all ballots and other election materials are printed in Spanish and in English.

   (iv) Absentee Voting Materials - packets of voting materials printed in English and in Spanish are made available to all persons voting absentee.

   (b) Accuracy and completeness: All materials, other than those prepared as standard forms, are translated into Spanish by Fred Lee Castro. Mr. Castro is bilingual in English and in Spanish. It is anticipated that the bilingual election procedures adopted an implemented by the District will allow voters of Spanish heritage to be as informed as and to participate in voting related activities as fully as English speaking voters.

(c) Ballots: See (a)(iii) and (iv) above.

(d) Voting machines: Not applicable.

2. Oral assistance and Publicity

(a) Publicity of Availability of Minority Language Materials: As noted above, all publications and postings required by law relating to elections are made in both English and Spanish and all election materials are supplied both in English and Spanish, resulting in complete availability of minority language printed materials.

(b) Oral assistance will be provided for the District's general and absentee balloting by means of telecommunication with election assistants fluent in both Spanish and English, pursuant to 28 CFR 55.20.

(c) It is the District's intention, pursuant to Section 61.031, 61.032, 61.033, 61.034, 61.035 and 61.036 of the Texas Election Code, to allow any voter unable to read or speak English to be assisted at the polls by any individual of the voter's choice.

D. Legislative Changes. There have been numerous changes in Texas statutory law affecting elections since November 1, 1972. We have been advised that it is the responsibility of the Secretary of State of the State of Texas to make all submissions of Statutory changes on behalf of the State; therefore, no submission of statutory changes affecting voting is made herewith, whether or not previously submitted by the Secretary of State.

The foregoing are the only "changes affecting voting", as such is defined in 28 CFR 51.2, relating to the District.

Clearances Requested.

We hereby respectfully request that the Attorney General make an executive determination that denial or abridgment of the right to vote on account of race or color or in contravention of the guarantees set forth in Section 4(f)(2) of P.L. 89-110 as amended by P.L. 94-73 was not the purpose and is not the effect of the voting changes set forth herein as they relate to:

(a) the existence of the District;

(b) the Confirmation and Director Election, Bond Election and Maintenance Tax Election, to be held by the District on December 13, 1986; and

(c)  subsequent elections to be held by the District.

Procedural Matters.

This is the first submission by the District under Section 5
of the Voting Rights Act.  In the event that further information
would be helpful or required for any reason connected with this
request for clearances, please telephone the District's counsel,
Sharlene Collins at (512) 499-3604.  Correspondence regarding
this submission should be sent, c/o Sharlene Collins, to the
following address:  3600 One American Center, 600 Congress
Avenue, Austin, Texas 78701.

Pursuant to 28 CFR 51.22, the District further requests that
this submission be given expedited consideration in order that
the executive determination requested above be made prior to the
December 13, 1986, elections.

A conference is respectfully requested in the event
clearance is not anticipated by the Attorney General or in the
event that such a conference would be of assistance in the
consideration of this request for clearances.

Very truly yours,

NORTHWEST AUSTIN MUNICIPAL UTILITY
DISTRICT NO. 1

By: _Ted R. Hendricks_

Ted R. Hendricks, President
Board of Directors



NORTHWEST AUSTIN MUDS
LOCATION MAP

ESPEY, HUSTON & ASSOCIATES, INC.
ENGINEERING & ENVIRONMENTAL CONSULTANTS

MAY, 1985

SKETCH ONLY

EXHIBIT A

# Austin American-Statesman

Armbrust & Brown

AFFIDAVIT OF PUBLICATION

THE STATE OF TEXAS
COUNTY OF TRAVIS

Before me, the undersigned authority, a Notary Public in and for the County of Travis, State of Texas, on this day personally appeared:

Henry Guerra

Classified Advertising Agent of the Austin American-Statesman, a daily newspaper published in said County and State, who being duly sworn by me, states that the attached advertisement was published in said newspaper on the following dates, to wit:

November 18th & 25th, 1985

and that the attached is a true copy of said advertisement.

SWORN AND SUBSCRIBED TO BEFORE ME, this the                    26th

Day of        November              A.D. 198  5

Notary Public in and for
TRAVIS COUNTY, TEXAS.

Denise Stegall                                            3/3/86
(Type or Print Name of Notary)              (My Commission Expires:)

166 EAST RIVERSIDE, P. O. BOX 670, AUSTIN, TEXAS 78767, 512-445-3500

**EXHIBIT B**

# TEXAS WATER COMMISSION



AN ORDER granting the Petition for Creation
of Northwest Austin Municipal
Utility District No. 1 and Appointing
Temporary Directors

On December 18, 1985, the Texas Water Commission considered the petition of Nash Phillips/Copus, Inc. (NPC) for creation of Northwest Austin Municipal Utility District No. 1. The Texas Water Commission remanded the matter to the Office of Hearings Examiner in order that a full evidentiary record on the proposal be made. On January 14, 15, 16, 17, and 20, 1986, Claire Patterson, Attorney, a Commission Hearings Examiner, conducted a public hearing concerning the petition for creation.

The Hearings Examiner designated the following as parties to the proceeding: the applicant, Nash Phillips/Copus, Inc.; the Executive Director of the Texas Water Commission; the Public Interest Advocate of the Texas Water Commission; and the protestant, City of Austin.

After considering the Hearings Examiner's Proposal for Decision, and the evidence and argument presented, the Texas Water Commission makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. Nash Phillips/Copus, Inc. a Texas corporation, has petitioned the Texas Water Commission for creation of a municipal utility district, pursuant to Chapter 54 of the Texas Water Code.

2. Proper notice of the public hearing was given pursuant to Section 54.019 of the Texas Water Code, as amended.

   a. Notice of the hearing was published on November 18, 1985 and November 25, 1985 in the Austin-American Statesman, a newspaper regularly published and

EXHIBIT B

generally circulated in Travis County, the county in which the District is to be located.

b.  Notice of the public hearing was mailed on November 15, 1985, by the Chief Clerk of the Texas Water Commission to every city in whose extraterritorial jurisdiction any portion of the District is located and to the commissioner's court of the county in which the District is located;

c.  All property owners in the proposed District were signatories to the petition.

3.  Petitioner paid a deposit of $600.00 as required by Section 54.017, Texas Water Code, as amended, and a filing fee of $60.00 as required by 31 TAC §311.11(2).

4.  The affidavits of five (5) proposed temporary directors of the proposed District have been received, as required by 31 TAC §311.11. They are as follows:

> Theodore R. Hendricks
> James H. Hillyer
> Homer D. Reed
> Robert James Liverman
> Timothy Emile Jamail

5.  The five persons named above are qualified to serve as temporary directors of the proposed District.

6.  The documents required pursuant to 31 TAC §311.11(1) have been received by the Texas Water Commission.

7.  The entire proposed District will be situated within the exclusive extraterritorial jurisdiction of the City of Austin, Texas, and wholly within the boundaries of Travis County, Texas.

8.  The petition contains the matters required by Section 54.015, Texas Water Code, as amended, and has been executed by the duly authorized officers of the petitioners representing a majority in value of the holders of title to the land being included within the proposed District, as indicated by the tax rolls of Travis County, Texas.

EXHIBIT B

9. The metes and bounds description of the proposed District has been checked by the Texas Water Commission's Water Districts Division and was found to form an acceptable closure.

10. Pursuant to Section 54.016, <u>Texas Water Code</u>, as amended, the City of Austin did not consent to the creation of this District nor did the parties come to a mutually acceptable agreement for service during the six-month negotiation period prior to the deliverance of this petition to the Texas Water Commission.

    a. During the negotiation period, NPC negotiated in good faith.

    b. Although there are differences in NPC's petition for consent to the City of Austin, its petition for creation to the Texas Water Commission, and the alternative service plan offered at the hearing, the differences are not so substantial as to preclude the City from having an opportunity to give consent.

11. The proposal as set out in the petition for creation is feasible and practical if the City of Austin provides long range service or if the district acquires service from an alternate source.

    a. The water and wastewater facilities will be designed according to sound engineering principles at reasonable cost.

    b. There is a reasonable expectancy of adequate market demand for the development which will generate tax revenues.

    c. The projected tax and utility rates will not unreasonably burden the prospective property owners.

    d. The projected tax rate is such that bond issuances will be marketable.

12. The proposal is feasible and practical even if the District must provide permanent water and wastewater service.

**EXHIBIT B.**

a.  In the event that the City does not allow water
    service to be provided to the area, the District's
    water needs will be provided by River Place Water
    Treatment Plant, a portion of which is presently
    owned by NPC and which will be transferred to the
    District.

b.  In the event that the City does not allow wastewater
    service to be provided to the area, the District's
    wastewater needs will be provided by a wastewater
    treatment plant owned by the District with disposal
    of effluent on site.

c.  There is a market demand for the proposed develop-
    ment on which to base tax revenues.

d.  The water, wastewater, and drainage facilities will
    be   designed   according   to   sound   engineering
    principles at reasonable cost.

e.  The  projected  tax  and  utility  rates  will  not
    unreasonably burden the prospective property owners.

f.  The projected tax rate is such that bond issuances
    will be marketable.

g.  NPC will absorb some of the capital cost of the
    project if necessary to keep the bonds marketable.

13. The creation of the District is necessary in order that
    the property may be developed to its full potential
    within the time frame desired by the developer, NPC.

    a.  NPC's  plans  for  developing  the  area  include
        amenities, such as greenbelts and park areas, which
        will be reduced if the developer does not have the
        financial benefit which will accrue when NPC conveys
        the service facilities to the District.

    b.  NPC  has  contractual  obligations  and  development
        schedules which could be delayed if it waits on the
        City of Austin to provide service.

EXHIBIT B

(1) Long range water and wastewater service will
not be available from the City for three to
five years.

(2) NPC cannot rely upon the City of Austin for
interim wastewater service in the near future
because financing of interim wastewater service
facilities has not been arranged and because
Austin has in the past been delinquent in
meeting its wastewater service obligations.

14. Creation of the District will be a benefit to the land.

a. The District will provide utility services to the
presently undeveloped area in which utilities are
unavailable.

b. Landowners will have more direct representation over
operation and maintenance of the utilities than if
the City provides service.

c. The landowners will pay the capital costs of
constructing facilities with deductible tax revenues
rather than with nondeductible capital recovery fees
or surcharges.

d. Prospective landowners can utilize the land more
quickly if the District is created than if they
wait for the City to provide services.

15. The District and its system and subsequent development
within the District will not have an unreasonable effect
on land elevation, subsidence, groundwater level within
the region, recharge capability of a groundwater source,
natural runoff rates and drainage, and water quality.

16. The utility rates and the total tax assessment on the
District residents will not be unreasonable.

a. Utility rates are projected to be the same as those
which the City charges.

b. Combined tax assessments on landowners in the area,
under the original proposal and under the Exhibit 40
plan, will not unduly burden the taxpayers.

EXHIBIT B

CONCLUSIONS OF LAW

1. The public hearing regarding this petition was held under the authority of and in accordance with Chapter 54 of the Texas Water Code, as amended, and the applicable provisions of the Texas Department of Water Resources Permanent Rules and the Emergency Rules of the Texas Water Commission.

2. The Texas Water Commission has jurisdiction to consider this petition and is authorized to make and enter its Findings of Fact, Rulings, and Orders in respect to the creation of the proposed District;

3. All of the lands and properties proposed may properly be included within the District.

4. All of the requirements of Section 54.016 of the Texas Water Code, as amended, have been fully complied with.

5. The petition should be granted by the Texas Water Commission.

6. The five persons named above who have requested to be appointed as temporary directors of the proposed District should be appointed temporary directors of Northwest Austin MUD No. 1.

NOW, THEREFORE, BE IT ORDERED BY THE TEXAS WATER COMMISSION THAT:

1. The petition for creation of Northwest Austin Municipal Utility District No. 1 is hereby granted.

2. Said District is created under the terms and conditions of Article XVI, Section 59 of the Constitution of Texas and Chapter 54 of the Texas Water Code, as amended.

3. Said District shall have all the rights, powers, privileges, authority, and functions conferred and shall be subject to all duties imposed by the Texas Water Commission and the General Laws of the State of Texas relating to municipal utility districts.

4. Said District shall be composed of the area situated wholly within Travis County, Texas, described by metes

EXHIBIT B

and bounds in Exhibit "A" attached hereto and incorporated herein for all purposes.

5. The following five persons are hereby named and appointed as temporary directors of said District to serve until their successors are elected or have been appointed in accordance with applicable law:

> Theodore R. Hendricks
> James H. Hillyer
> Homer D. Reed
> Robert James Liverman
> Timothy Emile Jamail

6. The foregoing temporary directors shall, as soon as practical after the date of entry of this Order, execute their official bonds and take their official oath of office, and all such bonds shall be approved by the Board of Directors of the District, and each bond and oath shall be filed with the District and retained in its records.

7. This Order shall in no event be construed as an approval of any proposed agreements or of any particular items in any documents provided in support of the creation petition, nor as a commitment or requirement of the Texas Water Commission in the future to approve or disapprove any particular items or agreements in future applications submitted by the District for Texas Water Commission consideration.

8. The proposed Findings of Fact Nos. 1.1, 1.2, 1.3, 2.1, 2.2, 2.3, 3.1, 3.2, 3.3, 3.4, 4.1, 4.2, 4.3, 4.4, 4.5, 4.6, 4.7, 4.8, 4.9, 5.1, 5.2, 5.3, 5.4, 5.5, 6.1, 6.2, 6.3, 6.4, 6.5, 6.6, 7.1, 7.2, 7.3, 7.4, 7.5, 7.6, 7.7, 7.8, 7.9, 7.10, 9.1, 9.2, 9.3, 9.4, 9.5, 10.1, 10.2, 10.3, 10.4, 10.5, 10.6, 10.7, 10.8 submitted by protestant City of Austin are hereby overruled.

9. The proposed Conclusions of Law Nos. 1, 2, 3, 4, and 5 submitted by protestant City of Austin are hereby overruled.

EXHIBIT C

Signed this ___18th___ day of ___April___, 1986.

TEXAS WATER COMMISSION

*Paul Hopkins*

Paul Hopkins, Chairman

*Ralph Roming*

Ralph Roming, Commissioner

*John O. Houchins*

John O. Houchins, Commissioner

ATTEST:

*Mary Ann Hefner*

Mary Ann Hefner, Chief Clerk

EXHIBIT B

671.65 Acres
MUD No. 1

FN 1380 R (DS)
January 10, 1984
EH&A Job No. 4322-04

NORTHWEST AUSTIN MUD NO. 1

A FIELD NOTE DESCRIPTION OF 671.65 ACRES OF LAND OUT OF THE A. E. LIVINGSTON SURVEY NO. 155, A. E. LIVINGSTON SURVEY NO. 455, W. P. MOORE SURVEY NO. 708 AND JOHN T. SMITH SURVEY NO. 154 IN TRAVIS COUNTY, TEXAS, BEING ALL OF THAT CERTAIN TRACT OF LAND DESCRIBED IN A DEED TO TRIPLE CREEK VENTURE, OF RECORD IN VOLUME 8155, PAGE 602 OF THE DEED RECORDS OF TRAVIS COUNTY, TEXAS, ALL OF THAT CERTAIN TRACT OF LAND DESCRIBED IN A DEED TO HARRY E. MONTANDON OF RECORD IN VOLUME 1597, PAGE 172 OF THE DEED RECORDS OF TRAVIS COUNTY, TEXAS, ALL OF THAT CERTAIN TRACT OF LAND DESCRIBED IN A DEED TO TRIPLE CREEK VENTURE, OF RECORD IN VOLUME 8155, PAGE 608 OF THE DEED RECORDS OF TRAVIS COUNTY, TEXAS, A PORTION OF THAT CERTAIN TRACT OF LAND DESCRIBED IN A DEED TO TRIPLE CREEK VENTURE, OF RECORD IN VOLUME 8155, PAGE 614 OF THE DEED RECORDS OF TRAVIS COUNTY, TEXAS, A PORTION OF THAT CERTAIN TRACT OF LAND DESCRIBED IN A DEED TO TRIPLE CREEK VENTURE OF RECORD IN VOLUME 8155, PAGE 628 OF THE DEED RECORDS OF TRAVIS COUNTY, TEXAS, A PORTION OF THAT CERTAIN 92.28 ACRE TRACT OF LAND DESCRIBED IN A DEED TO TRIPLE CREEK VENTURE OF RECORD IN VOLUME 8155, PAGE 619 OF THE DEED RECORDS OF TRAVIS COUNTY, TEXAS, AND A PORTION OF THAT CERTAIN 19.61 ACRE TRACT OF LAND DESCRIBED IN A DEED TO TRIPLE CREEK VENTURE OF RECORD IN VOLUME 8155, PAGE 582 OF THE DEED RECORDS OF TRAVIS COUNTY, TEXAS, SAID 671.65 ACRES BEING MORE PARTICULARLY DESCRIBED BY METES AND BOUNDS AS FOLLOWS:

BEGINNING at a point at the intersection of east right-of-way line of FM Highway 620 and the south right-of-way line of Boulder Lane, at the northwest corner of that certain tract of land described as "Tract 1" in a deed to Triple Creek Venture of record in Volume 8155, Page 602 of the Deed Records of Travis County, Texas, for a northwest corner of this tract;

THENCE with the south right-of-way line of said Boulder Lane and the north line of said "Tract 1", S 61° 10' E, a distance of 1934.23 feet to a point at the southeast corner of the right-of-way of said Boulder Lane, said point being also in the west line of that certain tract of land described as "Tract 3" in a deed to Triple Creek Venture, of record in Volume 8155, Page 602 of the Deed Records of Travis County, Texas, and at the northeast corner of said "Tract 1" for an interior corner of this tract;

THENCE with the east right-of-way line of said Boulder Lane and the east line of 620 Oaks, a subdivision or record in Book 76, Page 239 of the Plat Records of Travis County, Texas, being also the west line of said "Tract 3" the five, (5) courses and distances which follow:

1.   N 29° 44' E, a distance of 283.51 feet to a point,

2.   N 30° 30' E, a distance of 265.32 feet to a point,

3.   N 30° 42' E, a distance of 278.44 feet to a point,

4.   N 30° 34' E, a distance of 167.39 feet to a point, and

5.   N 29° 28' E, a distance of 294.43 feet to a point in the east line of Lot 1 of said 620 Oaks, said point being also at the southwest corner of that certain 65.65 acre tract of land described in a deed to James B. Arnold, Jr., of record in Volume 3274, Page 2101 of the Deed Records of Travis County, Texas, and at the northwest corner of said "Tract 3", for the most northerly northwest corner of this tract;

EXHIBIT A                    EXHIBIT B

671.65 Acres                                          FN 1580 R (DS)
MUD No. 1                                             January 10, 1984
                                                     EH&A Job No. 4322-04

THENCE with the south line of said Arnold tract and the north line of said "Tract 3"
the five (5) courses and distances which follow:

1.   S 58° 37' E, a distance of 370.00 feet to a point,

2.   S 58° 26' E, a distance of 199.98 feet to a point,

3.   S 58° 40' E, a distance of 511.82 feet to a point,

4.   S 60° 14' E, a distance of 399.16 feet to a point, and

5.   S 58° 54' E, a distance of 346.05 feet to a point in the west line
     of Anderson Mill Estates Section 3, a subdivision of record in
     Book 75, Page 117 of the Plat Records of Travis County, Texas,
     said point being also at the southeast corner of said Arnold
     Tract and at the most northerly northeast corner of said
     "Tract 3", for a corner of this tract;

THENCE with the west line of said Anderson Mill Estates Section 3 and an east line
of said "Tract 3", S 30° 17' W, a distance of 150.21 feet to a point at the southwest
corner of said Anderson Mill Estates, Section 3, being also an interior corner of said
"Tract 3" for an interior corner of this tract;

THENCE with the south line of said Anderson Mill Estates Section 3 and the north
line of said "Tract 3" the two (2) courses and distances which follow:

1.   S 59° 16' E, a distance of 89.94 feet to a point, and

2.   S 59° 24' E, a distance of 41.94 feet to a point at the northeast
     corner of said "Tract 3", being also at the northwest corner of
     that certain tract of land described as "Tract 2" in a deed to
     Triple Creek Venture, of Record in Volume 8155, Page 602 of
     the Deed Records of Travis County, Texas;

THENCE continuing with the south line of said Anderson Mill Estates Section 3 and
the north line of said "Tract 2" the sixteen (16), courses and distances which follow:

1.   S 59° 40' E, a distance of 169.68 feet to a point,

2.   S 59° 19' E, a distance of 248.70 feet to a point,

3.   S 59° 02' E, a distance of 100.25 feet to a point,

4.   S 59° 20' E, a distance of 96.78 feet to a point,

5.   S 59° 09' E, a distance of 309.13 feet to a point,

6.   S 59° 16' E, a distance of 63.80 feet to a point,

7.   S 57° 40' E, a distance of 19.69 feet to a point,

8.   S 65° 04' E, a distance of 86.51 feet to a point,

9.   S 72° 28' E, a distance of 298.26 feet to a point,

10.  S 68° 55' E, a distance of 96.05 feet to a point,

11.  S 47° 32' E, a distance of 28.06 feet to a point,

EXHIBIT A

EXHIBIT B

*Alicia Vincent*

671.65 Acres
MUD No. 1

FN 1380 R (DS)
January 10, 1984
EH&A Job No. 4322-04

12.  S 44° 30' E, a distance of 156.12 feet to a point,

13.  S 40° 08' E, a distance of 38.56 feet to a point,

14.  S 38° 17' E, a distance of 143.73 feet to a point,

15.  S 53° 55' E, a distance of 138.27 feet to a point, and

16.  N 88° 41' E, a distance of 62.11 feet to a point at the southeast corner of said Anderson Mill Estates Section 3, said point being also at the southwest corner of that certain 18.75 acre tract of land described in a deed to Luther E. Smith, et'al., of record in Volume 7093, Page 397, of the Deed Records of Travis County, Texas;

THENCE with the south line of said Smith Tract and the north line of said "Tract 2" the two (2) courses and distances which follow:

1.  S 59° 11' E, a distance of 67.25 feet to a point, and

2.  N 72° 58' E, a distance of 51.26 feet to a point at the most northerly corner of that certain 0.14 acre tract of land described in a deed to Homer Reed, et al., of record in Volume 7902, Page 396 of the Deed Records of Travis County, Texas, for a northeast corner of this tract;

THENCE with the west line of said 0.14 acre tract, being also the east line of said "Tract 2", S 17° 05' E, a distance of 337.34 feet to a point at the most northerly corner of that certain 57.17 acre tract of land described in a deed to Triple Creek Venture, of record in Volume 8155, Page 608 of the Deed Records of Travis County, Texas, said point being also at the most easterly northeast corner of said "Tract 2" and the most southerly corner of said 0.14 acre tract, and being also at an angle point in the west line of that certain 5.80 acre tract of land described in a deed to Homer D. Reed, et al., of record in Volume 7902, Page 396 of Deed Records of Travis County, Texas, for a corner of this tract;

THENCE with the west line of said 5.80 acre tract and the east line of said 57.57 acre Triple Creek Venture tract, the eleven (11) courses and distances which follow:

1.  S 17° 02' E, a distance of 200.58 feet to a point,

2.  S 09° 01' E, a distance of 630.81 feet to a point,

3.  S 02° 44' W, a distance of 538.63 feet to a point,

4.  S 03° 23' W, a distance of 504.33 feet to a point,

5.  S 45° 03' W, a distance of 565.76 feet to a point,

6.  S 00° 31' W, a distance of 247.33 feet to a point,

7.  S 30° 17' E, a distance of 616.59 feet to a point,

8.  S 47° 10' E, a distance of 166.89 feet to a point,

9.  S 17° 00' W, a distance of 269.29 feet to a point,

10.  S 17° 57' W, a distance of 201.07 feet to a point, and

671.65 Acres.
MUD No. 1

FN 1280-R (DS)
January 10, 1984
EH&A Job No. 4322-04

11.   S 13° 50' W, a distance of 435.83 feet to a point at the southwest corner of said 5.80 acre Reqd Tract, said point being also in the north line of that certain 113.006 acre tract of land described in a deed to Roger S. Hanks, of record in Volume 6958, Page 2381 of the Deed Records of Travis County, Texas, and at the southeast corenr of said 57.57 acre Triple Creek Venture Tract, for the southeast corner of this tract;

THENCE with the north line of said Hanks Tract and the south line of said 57.57 acre Triple Creek Venture tract, the eleven (11) courses and distances which follow:

1.    N 62° 16' W, a distance of 60.82 feet to a point,

2.    N 32° 12' W, a distance of 94.26 feet to a point,

3.    N 66° 14' W, a distance of 100.39 feet to a point,

4.    N 88° 51' W, a distance of 83.69 feet to a point,

5.    N 63° 53' W, a distance of 37.98 feet to a point,

6.    N 63° 52' W, a distance of 222.82 feet to a point,

7.    N 63° 04' W, a distance of 161.97 feet to a point,

8.    N 61° 01' W, a distance of 261.01 feet to a point,

9.    N 61° 30' W, a distance of 380.69 feet to a point,

10.   N 62° 02' W, a distance of 325.16 feet to a point, and

11.   N 63° 42' W, a distance of 206.22 feet to a point at the northwest corner of said Hanks Tract, said being also at the southwest corner of said 57.57 acre Triple Creek Venture Tract; and in the east line of that certain 130.77 acre tract of land described in a deed to Triple Creek Venture of record in Volume 8155, Page 614 of the Deed Records of Travis County, Texas;

THENCE, over and across said 130.77 acre, tract, N 88° 42' 18" W, a distance of 2466.22 feet to a point at the southeast corner of that certain tract of land described in a deed to Harry E. Montandon, of record in Volume 1597, Page 172 of the Deed Records of Travis County, Texas, said point being also in the north line of that certain 708.76 acre tract of land described in a deed to Triple Creek Venture, of record in Volume 8155, Page 628 of the Deed Records of Travis County, Texas;

THENCE with the north line of said 708.76 acres and the south line of said Montandon Tract, N 61° 00' W, a distance of 714.22 feet to a point;

THENCE over and across both the Montandon tract and the Triple Creek Venture Property the eight (8) courses and distances which follow:

1.    S 30° 50' W, a distance of 70.00 feet to a point,

2.    N 66° 10' W, a distance of 560.00 feet to a point,

3.    S 23° 50' W, a distance of 365.00 feet to a point,

EXHIBIT A

671.65 Acres
MUD No. 1

FN 1380 R (DS)
January 10, 1984
EH&A Job No. 4322-04

4.    S 49° 10' W, a distance of 325.00 feet to a point;

5.    S 63° 50' W, a distance of 555.00 feet to a point,

6.    N 58° 15' W, a distance of 275.00 feet to a point,

7.    N 29° 25' W, a distance of 250.00 feet to a point, and

8.    N 57° 45' W, a distance of 110.00 feet to a point in that certain
      92.28 acre tract of land described in a deed to Triple Creek
      Venture, of record in Volume 8155, Page 619 of the Deed
      Records of Travis County, Texas;

THENCE over and across said 92.28 acre tract the seven (7) courses and distances
which follow:

1.    N 64° 15' W, a distance of 505.00 feet to a point,

2.    N 68° 20' W, a distance of 470.00 feet to a point,

3.    S 82° 56' 21" W, a distance of 262.75 feet to a point,

4.    N 81° 57' W, a distance of 220.00 feet to a point in the
      centerline of a curve to the left of a proposed road,

5.    a distance of 396.75 feet along the arc of a curve to the left,
      the radius of which is 1218.64 feet, the central angle of which
      is 18° 39' 13", and the chord of which bears S 20° 03' W, a
      distance of 395.00 feet to a point,

6.    leaving proposed road, N 72° 17' W, a distance of 365.00 feet to
      a point, and

7.    S 23° 58' W, a distance of 233.11 feet to a point in that certin
      19.61 acre tract of land described in a deed to the Triple Creek
      Venture, of record in Volume 8155, Page 582 of the Deed
      Records of Travis County, Texas;

THENCE, N 72° 17' W, a distance of 298.98 feet to a point in the west line of said
19.61 acre tract, being also a point in the east right-of-way line of FM Highway 620;

THENCE with the west line of said 19.61 acre tract and the east line of said
FM 620, N 17° 43' E, a distance of 174.71 feet pass a point for the northwest corner
of said 19.61 acre tract, being also the southeast corner of a 92.28 acre tract of land
as described previously in a deed to Triple Creek Venture; continuing with the west
line of said 92.28 acre tract for a total distance of 1635.56 feet to a point for the
northwest corner of said 92.28 acre tract, being also the southwest corner of that
certain 32.57 acre tract of land described in a deed to Samir N. Maamary, of record
in Volume 7651, Page 913 of the Deed Records of Travis County, Texas;

THENCE with the north line of said 92.28 acre tract, and the south line of said
32.57 acre tract the three (3) courses and distances which follow:

1.    S 80° 25' E, a distance of 1153.69 feet to a point,

2.    S 80° 24' E, a distance of 597.66 feet to a point, and

3.    S 80° 27' E, a distance of 710.40 feet to a point in the west line
      of said Montandon Tract being also the southeast corner of said
      32.57 acre tract;

571.65 Acres
MUD No. 1

FN 1380 R (DS)
January 10, 1984
EH&A Job No. 4322-04

THENCE with the west line of said Montandon Tract, the nineteen (19) courses and distances which follow:

1.  N 31° 09' E, a distance of 336.53 feet to a point,

2.  N 30° 47' E, a distance of 185.12 feet to a point,

3.  N 28° 22' E, a distance of 131.72 feet to a point,

4.  N 28° 21' E, a distance of 47.69 feet to a point,

5.  N 31° 45' E, a distance of 213.63 feet to a point,

6.  N 30° 51' E, a distance of 80.16 feet to a point,

7.  N 31° 20' E, a distance of 178.69 feet to a point,

8.  N 37° 07' E, a distance of 153.80 feet to a point,

9.  N 27° 23' E, a distance of 111.62 feet to a point,

10. N 23° 32' E, a distance of 256.37 feet to a point,

11. N 34° 31' E, a distance of 307.22 feet to a point,

12. N 31° 19' E, a distance of 151.56 feet to a point,

13. N 28° 58' E, a distance of 172.05 feet to a point,

14. N 29° 42' E, a distance of 25.25 feet to a point,

15. N 34° 15' E, a distance of 333.78 feet to a point,

16. N 32° 33' E, a distance of 128.33 feet to a point,

17. N 33° 09' E, a distance of 257.81 feet to a point,

18. N 27° 08' E, a distance of 49.75 feet to a point, and

19. N 28° 23' E, a distance of 178.49 feet to a point at the northeast corner of that certain 4.0 acre tract of land described in a deed to Vicki T. Griffin, of record in Volume 6579, Page 1492 of the Deed Records of Travis County, Texas, said point being also at the northwest corner of said Montandon Tract, and being also at the southwest corner of said 76.20 acre "Tract 3" and at the southeast corner of said 15.25 acre "Tract 1", for an interior corner of this tract;

THENCE with the south line of said "Tract 1", the four (4) courses and distances which follow:

1.  N 57° 55' 14" W, a distance of 654.39 feet to a point,

2.  N 58° 04' W, a distance of 424.33 feet to a point,

3.  N 58° 14' W, a distance of 410.59 feet to a point, and

4.  N 58° 15' W, a distance of 416.60 feet to a point in the east right-of-way line of FM Highway 620, said point being at the

Page 6 of 7

EXHIBIT A

EXHIBIT B

671.65 Acres                                          FN 1380 R (DS)
MUD No. 1                                             January 10, 1984
                                                      EH&A Job No. 4322-04

      northwest corner of that certain 4.979 acre tract of land
described in a deed to Anderson Mill Church of Nazarene of
record in Volume 7844, Page 125 of the Deed Records of Travis
County, Texas, and at the southwest corner of said "Tract 1"
for the most westerly southwest corner of this tract;

THENCE, with the east right-of-way line of FM Highway 620 and the west line of
said "Tract 1", N 24° 11' E, a distance of 300.03 feet to the POINT OF BEGINNING
containing 671.65 acres of land, more or less.

THE STATE OF TEXAS  I
                    I    KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF TRAVIS    I

      That I, Carlos M. Jimenez, a Registered Public Surveyor, do hereby
certify that the above description was prepared from public records and not from an
on the ground survey under my direction and supervision and is true and correct to
the best of my knowledge.

      WITNESS MY HAND AND SEAL AT Austin, Travis County, Texas this
the 13th day of January, 1984, A.D.

ESPEY, HUSTON & ASSOCIATES, INC.
Engineering & Environmental Consultants        Carlos M. Jimenez
916 South Loop 360    P.O. Box           Registered Public Surveyor
Austin, Texas 78767                      No. 3950 - State of Texas

[seal: CARLOS M. JIMENEZ 3950 Registered PUBLIC SURVEYOR]

Page 7 of 7

EXHIBIT A

EXHIBIT B

STATE OF TEXAS          )(
COUNTY OF TRAVIS        )(

I, Mary Ann Hefner, Chief Clerk of the Texas Water Commission, do hereby certify that the attached and foregoing is a true and correct copy of an Order of the Commission dated April 18, 1986, granting the petition for creation of Northwest Austin Municipal Utility District No. 1 and appointing temporary directors, the original of which is on file in the office of the Commission.

Given under my hand and the seal of the Texas Water Commission, this the 18th day of April, 1986.


Mary Ann Hefner, Chief Clerk
Texas Water Commission

EXHIBIT B

## CERTIFICATE FOR ORDER CALLING CONFIRMATION AND DIRECTOR ELECTION, BOND ELECTION AND MAINTENANCE TAX ELECTION

STATE OF TEXAS

§

§

COUNTY OF TRAVIS

§

I, the undersigned officer of Northwest Austin Municipal Utility District No. 1 (the "District"), hereby certify as follows:

1. The Board of Directors of the District (the "Board") convened in a special meeting on October 7, 1986 at the special meeting place of said District, and the roll was called of the duly constituted officers and members of the Board, to wit:

|  |  |
|---|---|
| President | Ted R. Hendricks |
| Vice President | Homer D. Reed |
| Secretary | Robert J. Liverman |
| Treasurer | James H. Hillyer |
| Assistant Secretary | Timothy Emile Jamail |

and all of such persons were present except Director Jamail, thus constituting a quorum. Whereupon among other business the following was transacted at the meeting: a written

### CERTIFICATE FOR ORDER CALLING CONFIRMATION AND DIRECTOR ELECTION, BOND ELECTION AND MAINTENANCE TAX ELECTION

(the "Order") was duly introduced for the consideration of the Board and read in full. It was then duly moved and seconded that the Order be adopted, and, after due discussion, said motion, carrying with it the adoption of the Order, carried by the following votes:

AYES:  4

NOES:  0

2. A true and complete copy of the Order adopted at the meeting described in the above and foregoing paragraph is attached to and follows this certificate; the Order has been duly signed and attested by the proper officers and, as signed, has been duly recorded in the Board's minutes of said meeting; the above and foregoing paragraph is a true and complete excerpt from the District's minutes of said meeting pertaining to the adoption of the Order; said meeting was open to the

*EXHIBIT C*

public as required by law; and written notice of the date, place, and subject of said meeting was given as required by law, including particularly Article 6252-17, Texas Revised Civil Statutes, as amended, and Section 54.109, Texas Water Code, as amended.

WITNESS MY HAND and the SEAL of the DISTRICT this __11__ day of November, 1986.

_Robert J. Coverman_
Secretary, Board of Directors

(SEAL)

4089P

_EXHIBIT C_

ORDER CALLING CONFIRMATION AND DIRECTOR ELECTION,
BOND ELECTION, AND MAINTENANCE TAX ELECTION

WHEREAS, Northwest Austin Municipal Utility District No. 1 (the "District") has been duly created by order of the Texas Water Commission (the "Commission"), and the temporary directors of the District have been appointed by the Commission (the "Board of Directors") and have met and organized and have qualified to serve as directors of the District by taking the oath and making the bond required by law; and

WHEREAS, it is now necessary to call an election to confirm the creation and establishment of the District and to elect five (5) permanent directors thereof, each of whom shall serve until the next regular election on April 2, 1988; and

WHEREAS, there has been filed in the office of the District, open to inspection by the public, an engineer's report covering the works, improvements, facilities, treatment plants, equipment and appliances to be purchased, acquired and constructed by the District and the property, contract rights, rights of use, and interests in property to be purchased or acquired, as well as the estimated cost of all the foregoing, together with maps, plats, profiles and data showing and explaining the report and the report has been considered by the Board of Directors; and

WHEREAS, said works, improvements, facilities, treatment plants, equipment, appliances, property, contract rights, rights of use, and interests in property are designed and intended to furnish a water supply and distribution system, sanitary sewer system, and a drainage and storm sewer system for the District; and

WHEREAS, said engineer's report, as supplemented to date, contains an estimate of the cost of the purchase, acquisition and construction of the proposed works, improvements, facilities, treatment plants, equipment, appliances, and an estimate of the District's cost of purchasing and acquiring said property, contract rights, rights of use, and interests in property, and an estimate of the expenses incident thereto, as generally follows:

Construction Cost:

1.  Water Supply, Storage and          $ 6,743,100.00
    Distribution System

2.  Sewage Collection and Treatment
    System                             $ 8,135,400.00

*EXHIBIT C*



| | | |
|---|---|---|
| 3. | Drainage System | $ 1,374,100.00 |
| 4. | Construction Contingencies | $ 1,625,260.00 |
| 5. | Investigation Plan and Engineering Work | $ 1,787,786.00 |
| | TOTAL CONSTRUCTION COST | $19,665,646.00 |

Non-Construction Cost:

| | | |
|---|---|---|
| 1. | Legal and Market Attorney Fees | $ 1,029,000.00 |
| 2. | Fiscal Agent's Fees | $ 686,000.00 |
| 3. | Capitalized Interest | $ 7,546,000.00 |
| 4. | Bond Discount | $ 686,000.00 |
| 5. | Developer Interest | $ 4,326,442.00 |
| 6. | Organizational Expense | $ 200,000.00 |
| 7. | Cost of Issuance of Bonds | $ 160,912.00 |
| | TOTAL NON-CONSTRUCTION COST | $14,634,354.00 |
| | TOTAL BOND AMOUNT | $34,300,000.00 |

and

WHEREAS, the Board of Directors has determined that the above estimate of $34,300,000 is reasonable and proper and wishes to approve the same and all items thereof but reserves the right to authorize amendments to said report and to reallocate said costs to meet the changing requirements of the District's systems; and

WHEREAS, the Board of Directors is of the opinion that it would be of benefit to the District to be authorized to levy and collect a maintenance tax of not to exceed One Dollar and Fifty Cents ($1.50) per one hundred dollars ($100) valuation of taxable property within the District to secure funds for maintenance purposes; and

WHEREAS, Section 54.311(b), Texas Water Code, states that a maintenance tax cannot be levied until such maintenance tax is approved by a majority of the electors voting in an election held for that purpose; and

*EXHIBIT C*



WHEREAS, the District desires to issue its bonds secured by and payable from ad valorem taxes and further to additionally secure the payment of all bonds issued by the District with a pledge of the District's revenues, derived from whatever source, including, but not limited to the revenues that result from the ownership and operation of the District's works, improvements, facilities, plants, equipment and appliances or under specific contracts for the period of time the Board determines; and

WHEREAS, the Board of Directors is of the opinion that an election should be held for the purposes of confirming the creation and establishment of the District and electing five (5) permanent directors thereof, submitting propositions on the issuance of the District's bonds, the levy and collection of an ad valorem tax together with the pledging of revenues to additionally secure Bonds issued by the District.

WHEREAS, Section 54.507, Texas Water Code, provides that a bond election may be held on the same day as the District's confirmation and director election; and

WHEREAS, Section 54.312, Texas Water Code, provides that a maintenance tax election may be held on the same day as the District's bond election; and

WHEREAS, there is no public building of any kind within the boundaries of the District; and

WHEREAS, this Board of Directors wishes to proceed with the ordering of said election; Now, Therefore,

BE IT ORDERED BY THE BOARD OF DIRECTORS OF NORTHWEST AUSTIN MUNICIPAL UTILITY DISTRICT NO. 1 THAT:

Section 1: The matters and facts set out in the preamble of this order are hereby found and declared to be true and are incorporated herein by reference.

Section 2: The engineer's report and estimate of cost, as supplemented, are hereby approved as described above.

Section 3: A special election shall be held within the District on December 13, 1986, between the hours of 7:00 a.m. and 7:00 p.m., at 11403 Boulder Lane, Austin, Texas 78726, within the boundaries of the District, at which there shall be submitted the question of the election of five (5) permanent directors of the District, each of whom shall serve until the next regular election on April 2, 1988, and at which the following propositions shall be submitted.

-3-

*EXHIBIT C*



## PROPOSITION I

SHALL THE CREATION OF NORTHWEST AUSTIN MUNICIPAL UTILITY DISTRICT NO. 1 PURSUANT TO THE ORDER OF THE TEXAS WATER COMMISSION DATED APRIL 18, 1986, BE CONFIRMED?

## PROPOSITION II

SHALL THE BOARD OF DIRECTORS OF NORTHWEST AUSTIN MUNICIPAL UTILITY DISTRICT NO. 1 BE AUTHORIZED TO ISSUE THE BONDS OF SAID DISTRICT IN ONE OR MORE ISSUES OR SERIES IN THE MAXIMUM AGGREGATE PRINCIPAL AMOUNT OF $34,300,000, MATURING SERIALLY OR OTHERWISE, IN SUCH INSTALLMENTS AS ARE FIXED BY SAID BOARD OVER A PERIOD OR PERIODS NOT EXCEEDING FORTY (40) YEARS FROM THEIR DATE OR DATES, BEARING INTEREST AT ANY RATE OR RATES, AND TO SELL SAID BONDS AT ANY PRICE OR PRICES, PROVIDED THAT THE NET EFFECTIVE INTEREST RATE ON ANY ISSUE OR SERIES OF SAID BONDS SHALL NOT EXCEED THE MAXIMUM LEGAL LIMIT IN EFFECT AT THE TIME OF ISSUANCE OF EACH SUCH ISSUE OR SERIES, ALL AS MAY BE DETERMINED WITHIN THE DISCRETION OF THE BOARD OF DIRECTORS OF SAID DISTRICT, FOR THE PURPOSE OR PURPOSES OF PURCHASING, CONSTRUCTING, ACQUIRING, OWNING, OPERATING, REPAIRING, IMPROVING AND EXTENDING A WATERWORKS SYSTEM, SANITARY SEWER SYSTEM AND DRAINAGE AND STORM SEWER SYSTEM FOR THE DRAINAGE OF LANDS WITHIN THE DISTRICT INCLUDING, BUT NOT LIMITED TO, ALL ADDITIONS TO SUCH SYSTEMS AND ALL WORKS, IMPROVEMENTS, FACILITIES, TREATMENT PLANTS, EQUIPMENT, APPLIANCES, INTERESTS IN PROPERTY, AND CONTRACT RIGHTS NEEDED THEREFOR AND ADMINISTRATIVE FACILITIES NEEDED IN CONNECTION THEREWITH AND ORGANIZATIONAL EXPENSES, AND TO PROVIDE FOR THE PAYMENT OF PRINCIPAL OF AND INTEREST ON SUCH BONDS BY THE LEVY AND COLLECTION OF A SUFFICIENT AD VALOREM TAX UPON ALL TAXABLE PROPERTY WITHIN SAID DISTRICT, AND THE PLEDGE OF ALL OR ANY PART OF THE REVENUES OF THE DISTRICT DERIVED FROM WHATEVER SOURCE, INCLUDING BUT NOT LIMITED TO REVENUES THAT RESULT FROM THE OWNERSHIP AND OPERATION OF SAID DISTRICT'S WORKS, IMPROVEMENTS, FACILITIES, TREATMENT PLANTS, EQUIPMENT AND APPLIANCES, OR UNDER SPECIFIC CONTRACTS FOR THE PERIOD OF TIME THE BOARD DETERMINES, ALL AS AUTHORIZED BY THE CONSTITUTION AND LAWS OF THE STATE OF TEXAS?

## PROPOSITION III

SHALL THE BOARD OF DIRECTORS OF NORTHWEST AUSTIN MUNICIPAL UTILITY DISTRICT NO. 1 BE AUTHORIZED TO LEVY AND COLLECT A MAINTENANCE TAX OF NOT TO EXCEED ONE DOLLAR AND FIFTY CENTS ($1.50) PER ONE HUNDRED DOLLARS ($100) VALUATION ON ALL TAXABLE PROPERTY WITHIN SAID DISTRICT TO SECURE FUNDS FOR MAINTENANCE PURPOSES, INCLUDING, BUT NOT LIMITED TO, FUNDS FOR PLANNING, MAINTAINING, REPAIRING AND OPERATING ALL

NECESSARY WORKS, IMPROVEMENTS, FACILITIES, PLANTS, EQUIPMENT AND APPLIANCES OF SUCH DISTRICT, AND FOR THE PAYMENT OF PROPER SERVICES, ENGINEERING AND LEGAL FEES AND ADMINISTRATIVE EXPENSES?

Section 4:  Voting in said election shall be by the use of paper ballots which shall be printed in both English and Spanish and which shall conform to the requirements of the Texas Election Code. Oral bilingual assistance shall be available during the election and may be obtained by contacting the Presiding Judge or the Alternate Presiding Judge. The ballots used in the election shall have printed thereon the following:

OFFICIAL BALLOT

PROPOSITION I

[   ]  FOR          )     THE DISTRICT
       A FAVOR DE   )
                    )
[   ]  AGAINST      )     EL DISTRITO
       EN CONTRA DE )

PROPOSITION II

[   ]  FOR          )     THE ISSUANCE OF BONDS AND THE
       A FAVOR DE   )     PLEDGE OF REVENUES AND THE
                    )     LEVY OF AD VALOREM TAXES
                    )     ADEQUATE TO PROVIDE FOR THE
                    )     PAYMENT OF BONDS
                    )
[   ]  AGAINST      )     LA EMISION DE BONOS Y LA
       EN CONTRA DE )     GRANTIA DE INGRESOS Y EL
                    )     GRAVAMEN DE IMPUESTOS AD
                    )     VALOREM SUFICIENTE PARA
                    )     EFECTUAR PAGO DE LOS BONOS

PROPOSITION III

[   ]  FOR          )     A MAINTENANCE TAX OF NOT TO
       A FAVOR DE   )     EXCEED ONE DOLLAR AND FIFTY
                    )     CENTS ($1.50) PER ONE HUNDRED
                    )     DOLLARS ($100) VALUATION OF
                    )     TAXABLE PROPERTY IN THE
                    )     DISTRICT
                    )
[   ]  AGAINST      )     UN IMPUESTO DE MANTENIMIENTO
       EN CONTRA DE )     A NO EXCEDER UN DOLAR Y
                    )     CINCUENTA CENTAVOS ($1.50) POR
                    )     CADA CIEN DOLARES ($100) DE
                    )     VALUACION DE PROPIEDAD
                    )     IMPONIBLE DENTRO DEL DISTRITO

*EXHIBIT C*

Each voter shall vote on the proposition by placing an "X" in the square beside the statement indicating the way he wishes to vote.

There shall also be placed on the ballots used in the election the names of the five temporary directors appointed by the Commission, and five blank spaces for write-in votes, as follows:

[    ]    Ted R. Hendricks
[    ]    James Hillyer
[    ]    Homer D. Reed
[    ]    Robert J. Liverman
[    ]    Tim Jamail
[    ]    _____
[    ]    _____
[    ]    _____
[    ]    _____
[    ]    _____

The voter may vote for any five persons for director by placing an "X" in the square beside the person's name or by writing the name or names of a person or persons in the blank spaces provided.

Section 5:  The boundaries of the District as established by the Commission are hereby designated as and shall constitute one election precinct and the following are hereby appointed officers of said election:

Yvonne Wright          Presiding Judge and
Fred Rivera            Alternate Presiding Judge

The presiding judge may appoint, as he deems necessary, clerks to assist in the conduct of the election, not to exceed the maximum number of two (2).  Absentee voting in the election by personal appearance shall begin on the 10th day preceding the election and shall continue through the 4th day preceding the election.  The clerk for absentee voting shall be Yvonne Wright and the place at which absentee voting shall be conducted is 11403 Boulder Lane, Austin, Texas 78726, within the boundaries of the District.

The absentee voting clerk's mailing address to which ballot applications and ballots to be voted by mail may be sent is 11403 Boulder Lane, Austin, Texas 78726.  The absentee voting clerk shall keep the absentee voting place open from 7:00 p.m. to 10:00 p.m., on each day for the absentee voting which is not a Saturday, a Sunday or an official state holiday.

Section 6:  The election shall be held and conducted and returns made to this Board of Directors in accordance with the Texas Election Code as modified by Chapter 54, Texas Water Code.

EXHIBIT

Section 7:. All qualified resident electors of the District shall be entitled to vote in the election.

Section 8:  The Secretary of the Board is hereby directed to cause notice of this election to be published in both Spanish and English once a week for two (2) consecutive weeks in a newspaper of general circulation in Travis County, Texas, with the first publication to be at least 14 days before the date of the election.  The notice shall be substantially in the form of Notice of Election attached hereto and made a part hereof for all purposes.

PASSED AND APPROVED the 7th day of October, 1986.

_____
President, Board of Directors

(SEAL).

ATTEST:

_____
Secretary, Board of Directors

.3908P

_EXHIBIT C_

CERTIFICATE FOR ORDER

THE STATE OF TEXAS    :
COUNTY OF TRAVIS     :

The undersigned member of the Board of Directors of Northwest Austin Municipal Utility District No. 1 hereby certifies as follows:

1. The Board of Directors of Northwest Austin Municipal Utility District No. 1 convened in special session on the 7th day of October, 1986, within the boundaries of the District, and the roll was called of the duly constituted officers and/or members of the Board, to wit:

    President - Ted R. Hendricks
    Vice-President - Homer D. Reed
    Secretary - Robert J. Liverman
    Assistant Secretary - Timothy Emile Jamail
    Treasurer - James H. Hillyer

and all of said persons were present except Director Jamail, thus constituting a quorum. Whereupon, among other business, the following was transacted at the meeting: an

ORDER ADOPTING AND IMPLEMENTING BILINGUAL ELECTION REQUIREMENTS

was introduced for the consideration of the Board. It was then duly moved and seconded that the Order be adopted, and, after due discussion, the motion, carrying with it the adoption of the Order, prevailed and carried unanimously

2. A true, full and correct copy of the Order adopted at the meeting described in the above paragraph is attached to this certificate; the Order has been duly recorded in the Board's minutes of the meeting; the persons named in the above and foregoing paragraph are the duly chosen, qualified and acting officers and/or members of the Board as indicated therein, each of the officers and/or members of the Board was duly and sufficiently notified officially and personally, in advance, of the time, place and purpose of the aforesaid meeting, and that the Order would be introduced and considered for adoption at the meeting, and each of the officers and/or members consented, in advance, to the holding of the meeting for such purpose; the meeting was open to the public as required by law; and public notice of the time, place and subject to the meeting was given as required by Vernon's Texas Civil Statutes, Article 6252-17, as amended.

EXHIBIT C

SIGNED AND SEALED the 7th day of October, 1986.

*Robert J. Liverman*

Robert J. Liverman,
Secretary, Board of Directors

(SEAL)
THE STATE OF TEXAS
COUNTY OF TRAVIS

    This instrument was acknowledged before me on October, 1986,
by Robert J. Liverman, Secretary of the Board of Directors of
Northwest Austin Municipal Utility District No. 1, on behalf of
said District.

Notary Public, State of Texas

MNW-FH.31-1

L. W. McLAUGHLIN
Notary Public
State of Texas
My Comm. Exp. 01-31-90

EXHIBIT D

ORDER ADOPTING AND IMPLEMENTING
BILINGUAL ELECTION REQUIREMENTS

THE STATE OF TEXAS    :
COUNTY OF TRAVIS      :

    WHEREAS, Northwest Austin Municipal Utility District No. 1
(the "District") is a political subdivision of the State of
Texas, created by the Texas Water Commission as a municipal
utility district pursuant to Chapter 54, Texas Water Code; and

    WHEREAS, the District is required by the Texas Water Code to
conduct elections for certain statutorily defined purposes; and

    WHEREAS, all elections held within the State of Texas are
governed by the procedures set forth in the Texas Election Code
(the "Code"), except as otherwise noted therein; and

    WHEREAS, the Voting Rights Act of 1965, as amended, 42
U.S.C. 1973 et. seq. (1975) (the "Act") requires that elections
in certain states and political subdivisions be conducted in the
language of certain "language minority groups," as well as in
English; and

    WHEREAS, the regulations promulgated under the Act, 28
C.F.R. 55 et. seq. (the "Regulations"), establish standards and
guidelines for compliance with the provisions of the Act
regarding "language minority groups";

    IT IS, THEREFORE, ORDERED BY THE BOARD OF DIRECTORS OF
NORTHWEST AUSTIN MUNICIPAL UTILITY DISTRICT NO. 1 THAT:

I.

    The requirements of the Act, and the Regulations promulgated
thereunder, and the applicable procedures set forth in the Code
shall be adopted by the District in all respects and implemented
in all elections to be held for and within the District, until
such time as the Code, the Act and the Regulations may be
repealed or become inapplicable to the District. Those
provisions of the Code, the Act and the Regulations which provide
the District with alternatives as to the implementation of
requirements shall be implemented in the manner set out below for
all elections to be held for and within the District, until such
time as the District may designate an alternative method of
implementation permissible under the Code, the Act and the
Regulations.

    1. Written Materials - All pertinent election materials
including notices of board meetings dealing with elections,
notices of elections, ballots and other election materials, and
absentee voting materials will be printed in bilingual form, with
a version in the English language and a version in the language

EXHIBIT

of the applicable "language minority group" appearing on the same or separate documents.

2.   Oral Assistance - Oral assistance at the polls for both general and absentee balloting will be provided in the language of the applicable "language minority group" by the use of telecommunications with election assistants fluent in both the English language and the language of the applicable "minority language group".  In addition, any voter unable to read or speak English shall be allowed to be assisted at the polls by any individual of the voter's choice, pursuant to Section 8.13 and 8.13a of the Code.

II.

Any Director and/or Officer of the Board is authorized to evidence adoption of this Order on behalf of the Board and to do all things necessary and proper to carry out the purposes and intent hereof.

PASSED AND APPROVED this 7th day of October, 1986.


_Ted R. Hendricks_
Ted R. Hendricks
President, Board of Directors

ATTEST:

_Robert J. Liverman_
Robert J. Liverman
Secretary, Board of Directors

(SEAL)


MNW-FH.32


EXHIBIT D

*Vincent Vincent*

A COUNSELOR AT LAW
2500 ONE AMERICAN CENTER
600 CONGRESS AVENUE
AUSTIN, TEXAS 78701

Asst. Attorney General
Dept. of Justice
320 1st St., NW., Rm. 290
Washington, D.C. 20002

Submission Under Section 5, Voting
Rights Act



ANGELA K. MITCHELL

WBR:LLT:QJ:gmh
DJ 166-012-3
R4398-4401
R6184-6185

January 26, 1987

Sharlene Collins, Esq.
Armbrust & Brown
2600 One American Center
600 Congress Avenue
Austin, Texas  78701-3286

Dear Ms. Collins:

    This refers to the April 18, 1986, creation of Northwest Austin Municipal Utility District No. 1; the procedures for conducting the December 13, 1986, confirmation, directors', bond, and maintenance tax election; the bilingual election procedures; the adoption of a majority vote requirement; the implementation schedule; and the establishment of a polling place for the district in Travis County, Texas, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. 1973c.  We received your initial submission on November 26, 1986; supplemental information was received on January 20, 1987.  In accordance with your request, expedited consideration has been given this submission pursuant to the Procedures for the Administration of Section 5 (28 C.F.R. 51.32).

    The Attorney General does not interpose any objections to the changes in question.  However, we feel a responsibility to point out that Section 5 of the Voting Rights Act expressly provides that the failure of the Attorney General to object does not bar any subsequent judicial action to enjoin the enforcement of such changes.  In addition, as authorized by Section 5, the Attorney General reserves the right to reexamine this submission if additional information that would otherwise require an objection comes to his attention during the remainder of the sixty-day review period.  See also 28 C.F.R. 51.42 and 51.48.

                                    Sincerely,

                              Wm. Bradford Reynolds
                            Assistant Attorney General
                                 Civil Rights Division

                              By:

                                 Gerald W. Jones
                              Chief, Voting Section

cc:  Public File

CONFIDENTIAL [ ]                    NON-CONFIDENTIAL [✓]

## MEMORANDUM OF TELEPHONIC COMMUNICATION

Date: Jan 16, 1987    Specialist Q. James    File No. R4398

Other Party Sharlent Collins    Race W    Tel. No. 511 499-3604

Title/Organization atty.

Jurisdiction H. (State)    Travis (County/Parish)    (City/Other)

Subject: Creation

Comments: The initial board was appointed by the Water Commission, they will serve until the next regular election, on April 1988, at which time members will be elected at large to either 2 or 4 year terms to set staggering into effect. All members will serve 4 year terms starting in 1990. Elections are decided by majority vote requirement without parts. One minority member, Mr. James Hildger, was elected to the board.

DOJ-1534-11

CONFIDENTIAL ☐          NON-CONFIDENTIAL ☑

MEMORANDUM OF TELEPHONIC COMMUNICATION

Date: Jan 16, 1987    Specialist  J. Jones    File No. R4398

Other Party Ted Hendricks Race    W    Tel. No. 512 478-9511

Title/Organization  Board of Directors

Jurisdiction  Jil.        Travis
              (State)      (County/Parish)        (City/Other)

Subject:  bilingual election procedures.

Comments: Mr. Hendricks stated that copies
of Spanish notices and newspaper copies
should have been sent with the submission
He suggested that I contact the attorney
to have them forwarded.

DOJ 12411